J64WcitC1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CITY OF ALMATY, KAZAKHSTAN,
*et al.*,

                    Plaintiffs,

            v.                              19 Civ. 2645 (AJN)(KHP)

FELIX SATER,
*et al.*,

                    Defendants.
                                            Conference
------------------------------x
                                            New York, N.Y.
                                            June 4, 2019
                                            2:30 p.m.

Before:

                    HON. KATHARINE H. PARKER,

                                            U.S. Magistrate Judge

                              APPEARANCES

BOIES SCHILLER FLEXNER LLP
        Attorneys for Plaintiffs
BY:   MATTHEW L. SCHWARTZ
        CRAIG A. WENNER

TODD & LEVI LLP
        Attorneys for Defendants Sater, Ridloff,
        Bayrock Group, Global Habitat Solutions and RRMI-DR
BY:   DAVID B. ROSENBERG

MICHAEL S. HORN
        Attorney for Defendant Ferrari Holdings

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon.  We are here for an

3    initial case management conference, and you'll see that I

4    scheduled this case at the same time as the pending case that

5    the plaintiffs have against some other defendants.  I do

6    believe there is some overlap in the cases so I thought it made

7    sense to schedule the cases together, and we can talk about

8    that overlap today.

9          First, I guess I'd like to hear from plaintiffs about

10   how you view the claims to overlap and also whether discovery

11   in the pending case can be used in this case.

12         MR. SCHWARTZ:  Thank you, your Honor.

13         As you're aware from reviewing the complaints, there

14   is a degree of factual overlap insofar as this case and the

15   related case that you'll hear next.  Both deal with moneys that

16   were stolen in Kazakhstan from our clients and laundered into

17   the United States and in some cases the exact same flow of

18   funds.

19         Your Honor has put your finger on an issue that we

20   have been discussing amongst all the parties, which is that

21   while certainly there is discovery that will be unique to this

22   case, a lot of it is not.  We have spent a long time litigating

23   the other case, collecting documents, in order to prove our

24   claims and demonstrate the movement of money, and so we have

25   been discussing with all of the parties how to efficiently

J64WcitC1

1   exchange information.

2          The impediment, which we are working through, is the

3   protective order that exists in the related case, which

4   contains a provision that the defendants have requested saying

5   that confidential discovery material can be used only in that

6   related case.  And let me be clear, as I have been clear to the

7   defendants, we have absolutely honored that provision in the

8   order.  We honored that and did not rely on the confidential

9   discovery material in framing our allegations in this case.

10  We, in fact, had a clean team that framed the allegations based

11  solely upon nonconfidential material in the first instance.

12  But having filed the case, we know that if we were the

13  defendants, we would ask for some of the same material and as

14  plaintiffs we would ask for some of the same material, and

15  rather than going again to third parties, some of whom are

16  overseas, we would like to capitalize on the efficiencies of

17  simply producing what we have already collected to the

18  defendants here.

19         Likewise, we suspect that the defendants in the other

20  case, to the extent that material that is produced from these

21  defendants is responsive to discovery requests to our subpoenas

22  issued in the other case, might want to receive that as a

23  supplementation under our continuing discovery obligations; for

24  example, Triadou served a subpoena on Felix seder.  He produced

25  some documents, not a whole lot of documents, and it may be

J64WcitC1

1    that those were all the documents that he has, and that would

2    be fine.  But it may be that now that he's a party to the case,

3    he'll conduct a more thorough kind of review and produce

4    documents that are responsive to that subpoena, and we would

5    want to produce those in the interest of completeness.

6           And so the proposal that we've brought to everyone is

7    let's simply bring everyone under the single order and just

8    change that one provision from "this case" to "these cases" and

9    put a double caption on it.  We brought that first to the

10   defendants in the other case, because they were the ones who

11   have designated the material confidential.  Mr. Ablyazov had

12   not designated any material confidential.

13          THE COURT:  He didn't produce any documents.

14          MR. SCHWARTZ:  He did not, but he also did not

15   designate his deposition as confidential.  There are things

16   that are confidential in his deposition but other parties have

17   made that designation.

18          THE COURT:  OK.

19          MR. SCHWARTZ:  The Khrapunovs have told us that they

20   have no objection to this proposal.  Triadou is confirming with

21   their client; they have told us they'll get back to us in the

22   next two days.

23          What I would propose is, hopefully this could be

24   consent, we can come back to your Honor next week -- again,

25   hopefully with everyone's consent -- but if not, we will make

J64WcitC1

1   the proposal that I just made and you can hear the

2   counterarguments.

3           THE COURT:  OK.  Now, in the proposed case management

4   conference, I see that you've discussed ESI, you've written not

5   applicable to an ESI protocol.  Why is that?  Do you anticipate

6   that there will be other sources of ESI than the sources you

7   tapped for the pending litigation?

8           MR. SCHWARTZ:  I'll defer to Mr. Wenner on this point,

9   but I think that given the nature of the parties to this case,

10  we don't expect there to be complicated ESI issues.

11          THE COURT:  OK.

12          MR. WENNER:  Your Honor, that's right.  If you look at

13  the complaint and the particular defendants in the Sater

14  lawsuit, it's pretty clear with regard to them what questions

15  we will have, what documents we will request.  We did not

16  anticipate -- do not anticipate -- that there will be any

17  particular ESI burdens or impediments to getting and collecting

18  those documents.  The production from particular plaintiffs --

19  from the defendants we don't anticipate will be voluminous.

20          THE COURT:  How does the scope of the discovery

21  differ?  What areas of discovery would plaintiffs be seeking

22  that weren't already covered in the pending case?

23          MR. WENNER:  The background to how we got to the

24  laundering in the United States is the same.  The money that

25  funded the company Northern Seas Waterage, that story is the

J64WcitC1

1    same, that narrative.

2             The defendants in this case entered into a

3    relationship with Ilyas Khrapunov and agreed to help and

4    facilitate particular investments and particular schemes within

5    the United States.  Those are the five schemes that we've laid

6    out in the complaint.  The Tri-County Mall scheme your Honor

7    will remember, that's the same scheme that's at issue in the

8    main litigation.  Three of the other schemes are new.  So there

9    will be some discovery on these new particular schemes, but

10   otherwise the source of funding, the general money-laundering

11   scheme and the companies involved are largely the same.

12            We've seen the introduction of a handful of new

13   companies.  Again, these are larger shell companies and

14   companies controlled by these particular defendants.  Those

15   will be the subject of discovery.

16            THE COURT:  OK.  And in your belief, what is Ferrari

17   Holdings' role in this scheme as opposed to the other

18   defendants' that are named?

19            MR. WENNER:  It's quite simple.  They were the broker

20   or facilitated the investment in Tri-County Mall scheme.  They

21   received $1,080,000, I believe, and immediately send half of

22   that back to Daniel Ridloff, another defendant in the case, as

23   a kickback.  So they received over a million dollars in illicit

24   funds, put half in their pocket and then turned around and put

25   half in Daniel Ridloff's pocket.

J64WcitC1

1          THE COURT:  You're contending that Ferrari retained

2     approximately half a million dollars of money that can be

3     traceable back to your clients.

4          MR. WENNER:  Right.  They were unjustly enriched by

5     the million, and they retained ultimately over 500,000.

6          THE COURT:  All right.  And you think you'll be able

7     to complete the depositions within a year?

8          MR. WENNER:  Yes, your Honor.

9          We believe, starting discovery today with the initial

10    conference -- we've had lots of experience in the other matter;

11    we hope and do not anticipate that this case will drag on in

12    discovery for the years it has there -- we do expect to start

13    immediately with certain discovery that may involve overseas

14    defendants; for example, custodians.  For example, we had the

15    opportunity to depose and obtain certain documents from people

16    overseas.  The defendants in this case were not present for

17    those depositions.  They may want to ask questions.  They may

18    need to participate in that discovery.  For example, deposition

19    of Ilyas Khrapunov; that would be, I expect, an important

20    request by the defendants in this case.

21         We would want to start immediately with our day

22    requests, start international discovery, start third-party

23    discovery of banks.  All of those things we can start

24    immediately.  We wouldn't be looking to depose defendants

25    immediately -- that can wait -- but we would be asking for

J64WcitC1

1    documents from them to help frame the rest of discovery.

2             THE COURT:  All right.  I'd like to hear from the

3    defendants now because I see that defendants are contemplating

4    Rule 12 motions, so I want to hear the basis of those proposed

5    motions, and then I'll let plaintiffs respond to that.

6             MR. WENNER:  I mean I'm happy to hand the podium over.

7    I just would like to talk for a moment about the proposed

8    discovery plan.

9             THE COURT:  Sure.

10            MR. WENNER:  The parties, I believe, are in agreement

11   on the dates.  There were no disputes.  We talked for a moment

12   about ESI.

13            THE COURT:  Right.

14            MR. WENNER:  We discussed these issues and proposed

15   the dates, and I think the parties are in agreement on them.

16   The question that will be posed is whether or not, and I

17   believe defendants will make a motion, to stay discovery

18   pending their dispositive motions that you just mentioned.

19            We think in this case that there would be no reason to

20   delay that.  If the discovery starts today, we can start all

21   that third-party discovery, avoid the delays we had in the main

22   action, and none of that will have a direct bearing on the

23   defendants' obligations to produce documents, but their actual

24   productions and collections themselves -- for example, as we've

25   seen with Ferrari Holdings -- is very narrow and specific.

J64WcitC1

1    There won't be a burden on them and they would need to overcome

2    and show good cause for the stay, and that would in large part

3    turn on the strength of the motions that they'll explain.  And

4    if you look at the complaint in this case, it's very similar to

5    the one in the main action, and that complaint has survived ten

6    or more motions to dismiss.  And in this case we don't have the

7    jurisdictional impediments.  We don't have the RICO statutory

8    standing problem.  Jurisdictional diversity is not in question.

9    We don't have the fraudulent conveyance.  So all the complexity

10   and nuance from that federal action is not present here, and

11   it's a fairly straightforward laundering of the money that they

12   were not entitled to.

13            We'd welcome the opportunity to argue before your

14   Honor the motion to stay, but we expect they'll talk about that

15   now.

16            THE COURT:  OK.  Great.

17            Mr. Rosenberg, I'll hear from you first, since you're

18   representing more of the defendants.

19            MR. ROSENBERG:  Yes, your Honor.

20            If your Honor would like to hear about the anticipated

21   motion to dismiss, I can address that first.

22            THE COURT:  Yes.

23            MR. ROSENBERG:  Your Honor, we anticipate making a

24   motion to dismiss all of the claims asserted against my

25   defendants, Mr. Sater, Mr. Ridloff, RRMI, Global Habitat

J64WcitC1

Solutions and Bayrock Group.

          The basis for the motions to dismiss will be varied
among their different claims.  There will be failure to state a
claim under 12(b)(6).

          THE COURT:  Speak a little bit louder and slower.

          MR. ROSENBERG:  The basis for the motions will be
varied among the different causes of action.  The first basis
will be a motion to dismiss under 12(b)(6) for failure to state
a claim.

          THE COURT:  Just a failure to plead sufficient facts?

          MR. ROSENBERG:  That's correct.  On the face of the
pleading that the allegations, as pled in the complaint, do not
establish a claim under New York law.

          THE COURT:  Under all of the causes of action.

          MR. ROSENBERG:  That is for the unjust enrichment
claim, that is for the fraud claim and possibly other claims,
which we're currently researching.

          In addition to failure to state a claim under New York
law, we will also be moving to dismiss based on the statute,
the claim as being barred by the applicable statutes of
limitation.  That claim, those claims will also be, including
the unjust enrichment claim -- that claim will include some of
the other claims as well, which we're currently researching.

          THE COURT:  What do you say about the statute of
limitations and how far outside the statute of limitations do

J64WcitC1

you think then, by how much time did plaintiffs --

MR. ROSENBERG:  Well, the unjust enrichment claims, your Honor, as you can see from the pleading, all of the allegations which establish that claim occurred back in 2012 and 2013, according to the pleading filed by plaintiff.  Unjust enrichment the statute of limitations is three years, so even by the face of plaintiffs' own pleading, those claims are time-barred.

THE COURT:  Have you discussed this already with plaintiffs' counsel?

MR. ROSENBERG:  We have not.

THE COURT:  Have you looked into any tolling arguments or defenses they would have to the statute of limitations?

MR. ROSENBERG:  We know that there are issues on the unjust enrichment claims, whether that statute of limitations may apply to either a six-year or three-year statute.  Based on the underlying causes of action in this pleading we believe that the three-year statute applies.

THE COURT:  Other bases for the motion?

MR. ROSENBERG:  Finally, there will be a motion to dismiss based on a release signed by the plaintiffs in this case, and that motion will be based, will be filed only on behalf of defendant Felix Sater, who is the beneficiary of that release.

THE COURT:  Are you referring to the release signed in

J64WcitC1

1     an agreement between Arcanum and plaintiff Mr. Sater?

2            MR. ROSENBERG:  That's correct, your Honor.

3            THE COURT:  And that's the subject of an arbitration

4     proceeding right now?

5            MR. ROSENBERG:  The arbitration proceeding was

6     commenced in order to collect fees owed to Mr. Sater under a

7     recovery assistance agreement.

8            THE COURT:  But isn't there a dispute as to the

9     enforceability of the release now that there's been an alleged

10    violation of the obligations under the contract?

11           MR. ROSENBERG:  I'm not sure if there's a dispute

12    about the enforceability of the release.  There may be a

13    dispute about the enforceability of the fees owed to Mr. Sater,

14    obviously, which is why the arbitration proceeding was

15    commenced.

16           THE COURT:  Right.

17           MR. ROSENBERG:  I don't believe that there's any

18    dispute about the enforceability of that release, which was

19    effective as of the date it was signed.

20           THE COURT:  OK.  What was the consideration for that

21    release?

22           MR. ROSENBERG:  The assistance, I assume, provided by

23    Mr. Sater.  I mean there is a lot of consideration for that

24    release, which is the subject of the arbitration proceeding.

25    The arbitration panel has just been appointed within the past

J64WcitC1

1    week or two.

2              THE COURT:  What's the schedule for that arbitration?

3              MR. ROSENBERG:  I'm not exactly privy to the exact

4    schedule for that arbitration right now, your Honor.

5              THE COURT:  OK.

6              MR. ROSENBERG:  But it's really just started.

7              THE COURT:  OK.

8              MR. ROSENBERG:  There's been no exchange of documents.

9    The panel was just appointed.

10             THE COURT:  OK.  And I see that you also are

11   anticipating a motion related to disqualification of Boies

12   Schiller.

13             MR. ROSENBERG:  Yes, your Honor.

14             As the pleadings and the facts disclosed in the

15   related proceeding show, Boies Schiller, as counsel for

16   plaintiffs in this action, have a longstanding relationship

17   with Mr. Sater.  That relationship commenced in about 2015.

18   During that relationship Mr. Sater met with plaintiffs' counsel

19   numerous times, exchanged numerous communications with

20   plaintiffs' counsel, and I think as plaintiffs' counsel has

21   said today, many of those discussions were tied to the recovery

22   of assets against the defendants in the related proceeding and

23   touched on possibly the assets and allegations in this case as

24   well.

25             We don't know the full extent of those communications

J64WcitC1

1    and what exactly was exchanged in those meetings.  We don't

2    know what notes or memorandum or other documents might have

3    been exchanged between the parties.  We don't know whether

4    plaintiffs' counsel took notes, what was discussed during those

5    meetings.

6              THE COURT:  Your firm wasn't in contact with Moses &

7    Singer about what was going on in those communications?

8              MR. ROSENBERG:  We were not counsel to Mr. Sater in

9    the related proceeding, no.

10             THE COURT:  Well, payments were made to Todd & Levi

11   LLP --

12             MR. ROSENBERG:  Yes.

13             THE COURT:  -- under the Litco agreement,

14             MR. ROSENBERG:  Correct.  Todd & Levi LLP had

15   established an escrow account for those payments under the

16   Litco agreement.  That's correct.

17             THE COURT:  So you established an escrow account for

18   the payment of fees under the Litco agreement but have no idea

19   why?

20             MR. ROSENBERG:  I didn't say we don't have any idea

21   what happened -- what's going on in this case or with respect

22   to Litco.  What I'm saying is that prior to our involvement,

23   Mr. Sater had entered into an agreement with plaintiffs'

24   counsel to provide assistance.

25             THE COURT:  OK.

J64WcitC1

1          MR. ROSENBERG:  And we don't have, plaintiffs' counsel

2     may or may not have evidence.

3          THE COURT:  You mean something separate from the Litco

4     agreement?  Mr. Sater was providing assistance to plaintiffs

5     through the Litco agreement.

6          MR. ROSENBERG:  Correct.

7          THE COURT:  Is that right?

8          MR. ROSENBERG:  Well, as a witness, yes.

9          THE COURT:  That's what he testified to.

10          MR. ROSENBERG:  Correct.

11          THE COURT:  And are you saying that there was a

12     separate agreement between plaintiffs and Mr. Sater personally?

13          MR. ROSENBERG:  No, I'm not saying that.

14          THE COURT:  OK.

15          MR. ROSENBERG:  But what I am saying is that Mr. Sater

16     did meet with plaintiffs' counsel and that the subject of those

17     meetings may be direct evidence that impacts either the claims

18     or defenses in this case.

19          THE COURT:  And Mr. Wolf was also present at those

20     meetings, was he not?

21          MR. ROSENBERG:  I don't know that, your Honor.

22     Standing here today, I don't know that Mr. Wolf was present at

23     those meetings or not.

24          THE COURT:  And no one from your firm was present at

25     those meetings.

J64WcitC1

1          MR. ROSENBERG:  Absolutely not.

2          And your Honor, just to clarify, I'm not standing here

3    today saying that, with certainty that plaintiffs' counsel will

4    have a conflict of interest, but what I am saying is that we're

5    entitled to discovery to see what plaintiffs' counsel may have

6    in their files relating to those communications and meetings

7    with Mr. Sater.  And if it turns out that that discovery shows

8    that there's a conflict of interest -- perhaps plaintiffs'

9    counsel has information or may be called to testify in a way

10   that's adverse to their own client -- then there may be a basis

11   for a motion to disqualify.

12         Again, I don't know that to be a fact, your Honor, but

13   the point is that to the extent plaintiffs' counsel is a fact

14   witness with relevant information, there may be a conflict of

15   interest.

16         THE COURT:  OK.  So those are the two motions you're

17   proposing.

18         MR. ROSENBERG:  That's correct, your Honor.

19         THE COURT:  All right.  And you're also proposing a

20   stay of discovery?

21         MR. ROSENBERG:  I discussed this with counsel to the

22   codefendant.  I believe what we were looking for was a stay of

23   discovery only as to the parties; that we would be happy to

24   engage in any third-party discovery because that is going to be

25   extensive and may call on parties in other parts of the world

J64WcitC1

1    but perhaps a stay of discovery only as to the parties pending

2    the motions to dismiss.

3            THE COURT:  And on what basis should I grant the stay?

4            MR. ROSENBERG:  Only on the basis of judicial

5    efficiency, your Honor.

6            THE COURT:  Why would it be efficient if you're

7    proposing a year of discovery?  My experience with the pending

8    case is that there's a lot of discovery.  You're proposing 20

9    depositions per party, and the three transactions that are

10   unique to this action, I imagine, are going to involve quite a

11   lot of discovery in and of themselves from the parties.

12           Also, why would I stay party discovery and impose a

13   burden on nonparties?  Parties have an obligation to get

14   discovery from each other before imposing discovery on another

15   party.

16           MR. ROSENBERG:  I believe there was a concern that

17   possibly some of these parties may be dismissed as a result of

18   a motion to dismiss earlier than others, and obviously that's

19   pending the filings of the motions both on behalf of my

20   clients, plaintiffs and my clients and as well the

21   codefendants.

22           THE COURT:  Which of the parties you're representing

23   do you believe have the strongest motion to dismiss, or

24   alternatively, do you believe all of them have equal strength?

25           MR. ROSENBERG:  I believe they all have equal

J64WcitC1

1    strength, your Honor.

2              THE COURT:  All right.

3              MR. ROSENBERG:  I believe that Mr. Ridloff and RRMI

4    truly have no place in this proceeding and that their motions,

5    perhaps, may be stronger on the failure to state a claim

6    motion, and obviously as to the statute of limitations motion,

7    those apply equally to all of the defendants.

8              THE COURT:  Is your client, Mr. Sater, adverse to the

9    Khrapunovs and to plaintiffs here?  As I understand it, you're

10   denying the material allegations.

11             MR. ROSENBERG:  Of course.

12             THE COURT:  And you're denying that Mr. Sater had

13   anything to do with any money laundering.  Is that right?

14             MR. ROSENBERG:  That's correct, your Honor.

15             THE COURT:  OK.  But you're not denying that he worked

16   with Ilyas Khrapunov in connection with some of these

17   transactions, for example, the Tri-County Mall, right?

18             MR. ROSENBERG:  I'm not denying that Mr. Sater was

19   involved in the Tri-County Mall project site, your Honor.

20             THE COURT:  Good.

21             MR. ROSENBERG:  As to the allegations concerning money

22   laundering or fraud or unjust enrichment, all of those claims

23   we obviously deny.

24             THE COURT:  But your client was providing material

25   help to plaintiffs in their suit against Ilyas Khrapunov, was

```
 1   he not?
 2              MR. ROSENBERG:  He was, your Honor, as part of the
 3   assistance agreement.
 4              THE COURT:  OK.  Are there any other issues that you'd
 5   like to raise right now?
 6              MR. ROSENBERG:  Not today, your Honor.
 7              THE COURT:  OK.  Very good.
 8              Mr. Horn, I'll hear from you next.
 9              MR. HORN:  Your Honor, there's certainly a detailed
10   complaint here; no question about that.  A lot of facts in the
11   complaint; no question about that.  But when you look
12   specifically at the allegations as to my client, Ferrari
13   Holdings, it's scant.  There's not much there, because there
14   couldn't be much there.
15              The allegations are that my client, Ferrari Holdings,
16   brokered a debt, a debt mortgage deal, trying to find the
17   highest bidder; nothing unusual about that.  Brokered this
18   deal, received money from an attorney escrow account at the
19   closing; nothing unusual about that.  Took commission and split
20   it; nothing unusual about that.  People have bought homes.
21   They see how commissions are split.  It's not unusual in an
22   industry where you receive a commission to split it with
23   somebody else.
24              So the reality of the situation here is that when
25   looking at the complaint as to my client alone, there's just
```

J64WcitC1

1    not sufficient facts to support a finding that my client had

2    any intention, let alone knowledge, or even should have known

3    that these moneys were involved in some type of a

4    money-laundering scheme or some type of a fraud, your Honor.

5    And the problem becomes how far do things like this go?  How

6    far does our jurisprudence allow somebody to have a claim

7    against a party who's just involved in a business transaction

8    without any proof that there was any belief or reason to

9    believe that the moneys at issue were "tarnished," for lack of

10   a better word?  And I think that this is a good case for that.

11           When you look at, also, the issue of statute of

12   limitations with respect to my client, there's a big question

13   as to -- the first is accrual.  When does the statute of

14   limitations accrue in such a case?  In terms of money had and

15   received, do we have a claim against even further parties that

16   received this money that may have had no knowledge?  And how

17   far do we span that out?

18           Certainly the transaction that's the head of this, the

19   transaction that was the improper transaction that my client

20   was so far removed from and may have been in another country,

21   was longer than six years ago, and the question is, do we start

22   from that transaction, or do we start from when my client

23   received the money?  And I think that in this particular case

24   that we start from that transaction, the initial transaction,

25   because again, based upon the allegations in the complaint,

J64WcitC1

1   there's no reason for my client to believe that there was

2   anything improper going on here.  So my client, based upon the

3   allegations in the complaint, should be seen as a party that

4   doesn't have that specific knowledge, and therefore, there's

5   not a break in that statute of limitations and then creating a

6   new accrual of statute of limitations.

7           In terms of unjust enrichment, in this particular case

8   it's a three-year statute of limitations because we're talking

9   about a monetary claim, not an equity claim, but even if it's

10  six years, money had and received has a six-year statute of

11  limitations; the question of accrual comes to mind with that.

12          In terms of the discovery and the scope of discovery,

13  it's really hard for us here to comment on that, because we

14  know that we don't know what was exchanged from the other

15  litigation.  Right?  So we're sitting here and we're hearing

16  about all these exchanges and how broad the scope was, but we

17  have no idea because there's a confidentiality agreement

18  between the parties, and I under that they're honoring that,

19  and that's fine.  But at this point, without seeing that

20  university, we can't comment on what in a broader sense would

21  be needed other than specific to our client because if

22  discovery's not stayed and my client has to participate in

23  discovery, the discovery would also start from the initial

24  chain and then work down, because there has to be, in terms of

25  money had and received, there has to be proof that bad money

J64WcitC1

flowed directly to my client, and so that chain would have to

be something that we would need discovery on.

I would hope that a substantial amount of that

discovery was done in the other case, but I certainly can't say

for certain, and plaintiffs' counsel can't even tell me because

of the general notions of what he said in court,

understandably, because there's a confidentiality order, and we

just had received a copy of that and a proposal in court today

to expand that to our litigation.  Obviously I have to look at

it, talk to my client.

THE COURT:  Right.

MR. HORN:  I understand that there's another party

that's off doing that in the other litigation.

THE COURT:  Was your client involved in all five of

the alleged schemes?

MR. HORN:  No.  It's just the mall.

THE COURT:  Just the Tri-County Mall?

MR. HORN:  That's my understanding, that he was just a

broker for that debt.

THE COURT:  I see.  So the gist of your motion is that

there aren't sufficient facts in the complaint indicating that

your CLIENT had any knowledge of alleged stolen money.

MR. HORN:  Right.  And also unjust enrichment requires

that, it has to be not too far removed from the initial

transaction.  This is so far removed from the initial -- from

J64WcitC1

the bad transaction that -- again, under certain cases it shows

that, I think that there are now --

          THE COURT:  You mean the initial transaction being the

fact of the money --

          MR. HORN:  The bad --

          THE COURT:  -- from plaintiffs?

          MR. HORN:  -- exactly.  That it's so far removed, that

it should be found -- it's similar to proximate cause.  Right?

It can't be so far removed that it's outside the scope of

reasonableness.

          THE COURT:  Have you discussed this issue with

plaintiffs' counsel, and have they indicated that there's an

ability to cure the alleged defect with the pleading as to this

issue?

          MR. HORN:  We discussed the issue of us filing a

motion to dismiss.  I would like to have further discussions on

that and more particular on what we're discussing here, because

I would like that as well as I'd like to talk about the issue

of tolling the statute of limitations and where there are

issues that statute of limitations can be tolled in certain

circumstances, and rather than file my motion, get their

argument on tolling and then do the research on that and

respond, it would be much better to just understand their

position on tolling.

          THE COURT:  Right, because what I'm concerned about is

1   having the parties spend a lot of time and effort on motions

2   when some of the issues could be cured by an amended pleading

3   and then perhaps the issues on the motion narrow.

4           I want to here from plaintiffs, but my thought would

5   be to perhaps give you a short period of time to discuss that

6   and then submit a proposal as to how to go forward on any

7   motion and/or amended pleading.

8           MR. HORN:  Right.

9           THE COURT:  That's all I have to say on that.

10          MR. HORN:  In terms of unjust enrichment also one of

11  the issues is that in order for there to be unjust enrichment

12  my client would have had to not provide services.  Right?  My

13  client would have had to be unjustly enriched, but my client

14  provided services.  My client found this person to purchase

15  this debt, and that's why they achieved -- that's why they

16  earned that money.

17          Anyway, there are certainly issues.  The problem with

18  the discovery stay is that, logistically speaking, I like to

19  focus on one thing at a time unless I'm forced to do -- if

20  we're in an expedited situation, that's one thing.  Seems like

21  we're not.  Discovery's going to be over next year.  I mean

22  we're going to have a discussion with them about the motion,

23  we're going to be briefing the motion.  Maybe we'll resolve it,

24  maybe we won't.  But to have our initial discovery, to have our

25  demands to be sent out and then have responses within probably

J64WcitC1

1    the time that we're going to have that discussion, to me, it's

2    just a lot to do and it's a lot of money to expend.  So we were

3    talking about, we were trying to compromise on this.

4           We recognize that plaintiffs want to go seek documents

5    outside of this jurisdiction, and we have no problem with that.

6    I have no problem with them, because third parties may not be

7    preserving records.  Right?  My client, once he knows about a

8    lawsuit, I'm his attorney, he's told to preserve records.

9    Right?  Everybody else is, but I understand third parties may

10   not be because they don't know about this case.  So I have no

11   problem with them serving a subpoena on these third parties,

12   going to the Hague, going through the Hague Convention, and

13   that takes a tremendous amount of time.  But it seems to me

14   that my experience going through the Hague Convention, and

15   depends on the country, but it just takes a very long time and

16   for us to be rushing to get discovery and to resolve this

17   motion and to brief this motion all at the same time when we

18   all know that discovery outside from this country is going to

19   take a long time, and they don't need stuff from my client at

20   least, from my understanding, to serve those subpoenas.

21   They're not looking for documentation from us to serve foreign

22   subpoenas because we have nothing, and even with the

23   allegations, all the allegations, we have nothing to do with

24   anything that was foreign, outside of the country.  My client

25   didn't have transactions, from my understanding, outside of

J64WcitC1

1    this country relating to this case.

2            For that reason, even if discovery is not stayed in

3    whole, let's get a reasonable discovery schedule together,

4    taking into account the good faith efforts that we're going to

5    make to resolve the motion, the possibility of resolving

6    motions or moving forward.  We could have a conference call

7    after we've made those, had those discussions, trying to

8    resolve the motion.  And then if they're not resolved, we can

9    do a briefing schedule and then party discovery.  I think it's

10   going to take some time for the Court to decide the motion, so

11   we can start discovery between that period of time, and if we

12   resolve the motion, we'll have a conference call, then we can

13   start right away with the party discovery.  That's my

14   suggestion.

15           THE COURT:  Is there a possibility that your client

16   could have an early settlement with the plaintiffs?

17           MR. HORN:  There's always a possibility to try and

18   resolve a case, and I come with no preconditions and I'd be

19   happy to just have confidential settlement discussions with

20   plaintiffs in any forum if they would like.  My client's

21   company is not active now, but they're paying me, so there's

22   some money, and there's a cost going forward, obviously, that

23   we'd also take into consideration.

24           THE COURT:  Right, because if your client's motion

25   isn't granted, there will be a significant expense in the

J64WcitC1

1    litigation.

2              MR. HORN:  Yes.

3              THE COURT:  OK.  I'd like to hear from plaintiffs in

4    terms of thoughts about a discovery schedule and the proposed

5    motions.

6              MR. WENNER:  Your Honor, I believe the only question

7    really now is whether to stay discovery.  That's the only

8    decision that would necessarily need to be made today.

9              THE COURT:  Well, no.  I want to hear your view on my

10   suggestion that the parties be given a brief period of time to

11   talk about the alleged defects in the pleading and whether

12   those alleged defects could be addressed in an amended pleading

13   and the proposed motions narrowed.

14             MR. WENNER:  We absolutely would not want to burden

15   the Court, would not want to burden defendants with motion

16   practice that we would cure with amended pleadings, so I don't

17   think there's any problem with engaging in that discussion with

18   them, identifying defects they may have identified, and we can

19   talk about them, if any.  I don't think that's going to be a

20   problem.

21             I can say, though, that as far as showing good cause

22   for the ultimate merits of the motion to dismiss to make the

23   case go away they ultimately would be unsuccessful.

24             Taking RRMI and Ferrari just as two examples that have

25   come up here in this conference, just one transaction alone

J64WcitC1

1    allows this case to go forward, and that's in connection with

2    the Tri-County Mall, when Ferrari was paid its finder's fee,

3    that million dollars.  What establishes the fraud for notice of

4    a Rule 9 pleading is that they immediately then, the next day,

5    turn around and give half their finder's fee back to the person

6    that they purportedly found as the buyer.  They gave this

7    kickback, the 50 percent of their finder's fee, the same day,

8    and that occurred on May 24, 2013 -- and this is paragraphs 203

9    to 204 in the complaint -- so that's May 2013, and our

10   complaint was filed in March 2019, within six years.

11          So apart from all questions about equitable tolling,

12   apart from all more nuanced arguments about how we get these

13   other causes of action to go forward, receiving a kickback or

14   providing a kickback, which is RRMI and Ferrari, will allow us

15   to go forward to the merits.

16          THE COURT:  And what about the proposed or potential

17   disqualification motion?  That's implicating privileged

18   communications, obviously.

19          MR. WENNER:  It is, and if I understand from the way

20   it was described, I'm not certain that there is going to be a

21   motion to disqualify filed until they've asked for discovery,

22   we've responded, there will be privilege calls, they will get

23   some documents, communications; at that point they can make

24   that decision.  But that question about disqualification

25   concerns events that happened long after the allegations in

1    this case, going to one question about the scope of the release

2    for Litco to which Sater's not a party, and I don't intend to

3    litigate here all the issues about Litco.  But needless to say

4    those events happening in 2015 will have little bearing or

5    impact on the discovery proceeding and the merits of our claims

6    here in this case, and I don't think there will be any

7    conflict-of-interest question with regard to proceeding with

8    discovery on the merits of the case, briefing these issues that

9    predated, and by Mr. Sater's own allegations, he's the one who

10   located Boies Schiller and asked them to involve themselves.

11   So we don't agree with any of Mr. Sater's characterizations

12   about Litco generally, but I think this is not something that

13   the Court needs to tee up today or concern itself with in terms

14   of proceeding to discovery about the allegations in our

15   complaint.

16             THE COURT:  OK.

17             MR. HORN:  Your Honor, if I may just be heard real

18   quickly?

19             THE COURT:  Yes.

20             MR. HORN:  Counsel had mentioned earlier that he was

21   constrained when he wrote the pleading in terms of trying to

22   abided by the confidentiality agreement.  I think that we

23   should have some time where we are able to morph whatever

24   confidentiality agreement they have in the other case to our

25   case so that when we talk to plaintiffs about the sufficiency

J64WcitC1

1    of their pleadings, he can tell me, Oh, I found this document,

2    or I have that document, and it shows your client is definitely

3    responsible, because without talking in that with everything

4    that he knows, I think that we could end up with a motion to

5    dismiss and then he somehow is able to try and amend based upon

6    some confidential records, and why go through that.

7            THE COURT:  OK.  This is what I'm going to do.  I'm

8    going to give the parties two weeks, until June 18, to discuss

9    the overlap of discovery and the joining of the protective

10   order in the pending case, so the parties in both matters can

11   discuss that.  By June 18 I'd like a letter as to what the

12   resolution of that issue is and if it's an adoption of that

13   protective order, in whole or in part, you can let me know that

14   and submit the proposed protective order.  To the extent that

15   order is more extensive than what is in my individual

16   practices, I will except you from my normal rules so that you

17   don't have to reinvent the wheel.

18           I will give you then until July 3 to discuss —— I'm

19   assuming there will be agreement on the protective order and

20   that you then will be able to discuss over a two-week period,

21   and even starting before that you can start to talk about some

22   of the statute of limitations issues and some other things

23   you're not otherwise constrained to discuss, so I'll give you

24   until July 3 to talk about whether or not there needs to be an

25   amended pleading and it may be that defendants don't want an

J64WcitC1

1    amended pleading but you elect not to move to dismiss or you

2    elect to file a partial motion, but why don't you think about

3    that and whether that even makes sense economically for your

4    clients, etc.  I'll give you until July 3, and since it's a

5    holiday weekend, you can let me know on July 9 by letter what

6    the parties' plan is.  Is there going to be an amended pleading

7    and then a motion?  Or will there be no amended pleading and a

8    motion on the existing pleading?  And I'd like then a proposed

9    briefing schedule for that motion.  OK?

10          Right now I'm not going to stay discovery.  I'm going

11   to adopt the outside deadline of June 4, 2020, and I'm going to

12   wait until I see the various correspondence before determining

13   whether or not any kind of stay is warranted.

14          In the meantime, I'll ask that you prepare your

15   initial disclosures and to provide those initial disclosures by

16   July 9.  To the extent there is nonparty discovery that is not

17   redundant, you couldn't get from a party, you can commence that

18   discovery.

19          I also would like the parties to think about document

20   requests -- not interrogatories, document requests -- and to

21   serve those July 9 as well, because I'd like each side to tee

22   up the issues of what are the documents that you would be

23   seeking in this action.  And I want to emphasize Rule 34 and

24   Rule 1 so that you are specific in your requests.  Do not ask

25   for any and all documents.  That is going to raise disputes, so

J64WcitC1

```
1    I don't expect to see any document requests or "any and all,"

2    and objections need to be specific, meaning if something is

3    vague, you need to specify why it is vague, what about it is

4    vague.  If the time period is overbroad, you need to explain

5    what is the time period that is not overbroad.  So I expect you

6    to be very specific in your requests and responses and to meet

7    and confer in good faith.

8         And remember, discovery is an iterative process, so

9    that why don't you start specific and then you will have a

10   chance to serve additional document requests that increase the

11   scope.  I want you to first start with very specific document

12   requests so you get an idea of what you really need in this

13   action and then you can follow up.  OK?

14        I'm also going to set a conference for July 31.

15   That's a Wednesday.  And we will meet at 11:30 a.m.  I'll have

16   received all of the correspondence.  We can talk about where we

17   are at that point, and then most likely I'll schedule monthly

18   conferences after that to make sure that the parties are on top

19   of their discovery and to minimize motion practice.  OK?

20        Anything further?

21        MR. ROSENBERG:  Your Honor, if I just may be heard on

22   one more issue?

23        Under the current stipulation the defendants have

24   until June 19 to answer or move.  Is that date now extended

25   beyond the July 9 date that we report to the Court on our
```

J64WcitC1

1   discussions regarding potential amended pleadings?

2           THE COURT:  Yes.  What I'll do is I'll extend right

3   now to July 9 -- actually, I'll extend it to July 31, and we

4   can talk about it at the conference to the extent needed.  OK?

5           Anything else from plaintiffs?

6           MR. SCHWARTZ:  One thing.

7           There is one defendant that has been served and

8   defaulted quite a while ago.  We don't want to leave that loose

9   end out there, but at the same time, we don't want them popping

10  up and unnecessarily spend time defaulting.  Does your Honor

11  have a preference as to when we submit the default?

12          THE COURT:  No.  I think what you should do is submit

13  it before July 31, and I think that Judge Nathan most likely

14  will address the default motion, although she may refer that to

15  me for an inquest.

16          Anything further?

17          MR. HORN:  No, your Honor.

18          THE COURT:  Then we're adjourned, and we'll hear the

19  next City of Almaty case.

20          Why don't the parties come on up.

21          (Adjourned)

22

23

24

25