**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,<br><br>Plaintiffs,<br><br>v.<br><br>FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR, LLC, FERRARI HOLDINGS LLC and MEM ENERGY PARTNERS LLC,<br><br>Defendants. | No. 19 Civ. 2645 (AJN) (KHP) |

**THE CITY OF ALMATY AND BTA BANK'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST MEM ENERGY PARTNERS LLC**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone (212)446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs City of Almaty, Kazakhstan and BTA Bank*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

RELEVANT BACKGROUND ..................................................................................... 1

    A.    MeM Energy Received $2,250,000 in Stolen Money............................................ 1

    B.    Procedural History ................................................................................ 6

ARGUMENT ................................................................................................................ 7

I.    Legal Standard ..................................................................................................... 8

II.    Discussion ........................................................................................................... 10

    A.    All Jurisdictional and Procedural Standards Are Satisfied ................................. 10

    B.    The Well-Pleaded Allegations and Other Support Amply Demonstrate that MeM Energy Wrongfully Obtained $2,250,000 of the Kazakh Entities' Money ........................................................................................................ 11

    C.    The Court May Enter a Default Judgment for $2,250,000 Plus Prejudgment Interest Running from August 30, 2013 ............................................................. 13

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*3105 Grand Corp. v. N.Y.*,
  288 N.Y. 178 (1942) .................................................................................................. 13

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Asso.*,
  731 F.2d 112 (2d Cir. 1984) ..................................................................................... 12

*Action, S.A. v. Marc Rich & Co., Inc.*,
  951 F.2d 504 (2d Cir. 1991) ..................................................................................... 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002) ..................................................................................... 11

*Beth Isr. Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006) ..................................................................................... 12

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) .................................................................................. 8, 9

*Dow Chem. Pac. Ltd. V. Rascator Mar. S.A.*,
  782 F.2d 329 (2d Cir. 1986) ....................................................................................... 9

*Eagle Associates v. Bank of Montreal*,
  926 F.2d 1305 (2d Cir. 1991) ..................................................................................... 9

*Finkel v. Romanowicz*,
  577 F.3d 79 (2d Cir. 2009) ......................................................................................... 9

*Fustok v. Conticommodity Services, Inc.*,
  873 F.2d 38 (2d Cir. 1989) ....................................................................................... 14

*Grace v. Bank Leumi Trust Co. of N.Y.*,
  443 F.3d 180 (2d Cir. 2006) ....................................................................................... 9

*Howard Johnson Intern., Inc.v. Wang*,
  7 F. Supp. 2d 336 (S.D.N.Y. 1998) ......................................................................... 11

*In re Estate of Witbeck*,
  245 A.D.2d 848 (N.Y. App. Div. 3d Dep't 1997) ....................................................... 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ................................................................................................. 11

*Long Island Hous. Servs. v. Greenview Properties, Inc.*,
  No. 07 Civ. 0352(ADS)(WDW), 2008 WL 150222 (E.D.N.Y. Jan. 11, 2008) ................ 14

*Marfia v. T.C. Ziraat Bankasi*,
  147 F.3d 83 (2d Cir. 1998) ....................................................................................... 14

*New York v. Green*,
  420 F.3d 99 (2d Cir. 2005) ......................................................................................... 8

*SEC v. Research Automation Corp.*,
  521 F.2d 585 (2d Cir. 1975) ....................................................................................... 9

*Shapiro, Bernstein & Co. v. Cont'l Record Co.*,
    386 F.2d 426 (2d Cir. 1967) ............................................................................................... 9

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*,
    619 F.3d 207 (2d Cir. 2010) ............................................................................................. 10

*State v. Park*,
    204 A.D.2d 531 (N.Y. App. Div. 2d Dep't 1994) ............................................................. 13

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
    No. 10-CV-2843 JG ARL, 2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) ................. 12, 13

*Tackie v. Keff Enterprises LLC*,
    No. 14-CV-2074 JPO, 2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014) ............................. 15

*Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004) ............................................................................................... 9

*Zurich Ins. Co. Shearson Lehman Hutton, Inc.*,
    84 N.Y.2d 309 (N.Y. 1994) .............................................................................................. 11

**Statutes**

28 U.S.C. § 1332 ........................................................................................................................ 10

28 U.S.C. § 1391 ........................................................................................................................ 10

28 U.S.C. § 1961 ........................................................................................................................ 15

N.Y. C.P.L.R. § 302 ................................................................................................................... 11

N.Y. C.P.L.R. § 5004 ................................................................................................................. 14

N.Y. C.P.L.R. 5001 .................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................................... 11

Fed. R. Civ. P. 55 .............................................................................................................. 1, 8, 11

**Treatises**

Wright & Miller,
    13E Fed. Prac. & Proc. Juris. § 3604 (3d ed. 2019) ........................................................ 10

Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC (the "Kazakh Entities" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for entry of default judgment against defendant MeM Energy Partners, LLC ("MeM Energy" or "Defendant") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and S.D.N.Y. Local Rule 55.2(b). As set forth below, MeM Energy was properly served but has not answered or appeared in this action.

## RELEVANT BACKGROUND

### A. MeM Energy Received $2,250,000 in Stolen Money

The Court is familiar with the general background of the schemes by Mukhtar Ablyazov and Viktor Khrapunov to steal money from the Kazakh Entities and then, with the help of Ilyas Khrapunov, to launder that money into the United States. *See, e.g.*, Memorandum and Order, *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*, No. 15 Civ. 5345 (S.D.N.Y. Jun. 24, 2016) [ECF No. 175] (granting the Kazakh Entities' motion to attach the assets of Triadou SPV S.A.).

Briefly stated, as relevant to the claims against MeM Energy, from approximately 1998 to 2009, Ablyazov abused his control over BTA Bank to direct billions of dollars in sham loans to valueless entities that Ablyazov secretly owned or controlled. *See* Complaint ¶¶ 16-28 [ECF No. 1] ("Compl.").[1] After the Republic of Kazakhstan's sovereign wealth fund was forced to bail out the bank in 2009 in the wake of the 2008 global financial crisis, Ablyazov's schemes were exposed. *Id.* Ablyazov fled to London where BTA Bank commenced a series of lawsuits alleging Ablyazov misappropriated billions of dollars in various schemes while in control the bank. *Id.* ¶¶

---

[1] The facts below are supported by the well-pleaded allegations in the Complaint and the accompanying declaration of Matthew L. Schwartz ("Schwartz Decl.") and attached exhibits.

1

32-35. In November 2009, the U.K. courts took the nearly-unprecedented legal step of granting BTA Bank a worldwide freezing order against Ablyazov's assets. *Id.* ¶ 36. But as the U.K. courts later noted in holding Ablyazov in criminal contempt, he repeatedly and willfully defied the orders. *Id.* ¶¶ 42-46. Ablyazov fled the United Kingdom shortly before his criminal contempt sentence was handed down in February 2012. *Id.* ¶ 45. After hearing evidence on Ablyazov's schemes to loot money from BTA Bank and striking Ablyazov's defenses in connection with his criminal contempt, the U.K. courts granted BTA Bank more than $4 billion in judgments against him. *Id.* ¶ 47.

Defendant MeM Energy is an entity incorporated in Delaware, with its principal place of business at 405 Lexington Avenue, 26th floor, New York, New York. *Id.* ¶ 12; Schwartz Decl. Exs. E, G, Q, R. Based on corporate and SEC filings, MeM Energy is owned and controlled by Mendel Mochkin, an individual domiciled in the State of New York. *Id.*[2]

Mochkin worked for Ablyazov to help improve Ablyazov's public image after his flight from justice in the United Kingdom and sentence for criminal contempt. *Id.* ¶ 222. Mochkin was to generate negative publicity about the Republic of Kazakhstan and position Ablyazov as a victim of political persecution rather than the mastermind behind one of the largest bank frauds in history. *Id.* Mochkin was a business associate of defendant Felix Sater, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Schwartz Decl. Ex. F at -005; Schwartz Decl. Ex. I (Sater

---

[2] MeM Energy is a shell company with no independent business operations from those of Mochkin. The sole address associated with MeM Energy that the Kazakh Entities have identified – beyond the registered agent for service of process – is that of an affiliate company, Avenue Group, Inc., also owned by Mochkin. That address, 405 Lexington Avenue, 26th floor, is a "virtual office and business address for rent" in the Chrysler building. *See* Schwartz Decl. Ex. H. MeM Energy in fact appears to no longer be in good standing in Delaware as of June 2013 due to a failure to pay taxes. *See* Schwartz Decl. Ex. E.

2

9/13/18 Dep. at 207) (identifying Mochkin). ███████████████████████████ Ilyas – who at that point was overseeing intermingled funds stolen by Ablyazov and his father, Viktor Khrapunov, *see* Compl. ¶ 63 – ████████████████████████████████

████████████████████████████████████████████████████████████

████████████

Meanwhile, Sater and his business associate Daniel Ridloff were helping Ilyas Khrapunov launder tens of millions of dollars of stolen assets through the U.S. financial system. When the U.K. courts imposed the worldwide freezing orders in late 2009, Ablyazov and Ilyas Khrapunov found ways to evade those orders. One such scheme involved an earlier investment in a natural resources company that was originally made with BTA Bank's money. *See* Compl. ¶¶ 66-72. In 2011 and 2012, Ablyazov and Ilyas Khrapunov monetized the investment and directed approximately $440 million away from BTA Bank and into a shell company called Northern Seas Waterage. *Id.* ¶¶ 73-74. The $440 million was wired to Northern Seas Waterage's bank account at FBME Bank – a financial institution designated by the U.S. Treasury Department's Financial Crimes Enforcement Network as a "foreign financial institution of primary money laundering concern." *Id.* ¶¶ 74-75. Ilyas then caused that $440 million to be laundered into the legitimate financial system, which was the basis for a separate U.K. judgment recently entered against Ilyas. *Id.* ¶¶ 74-76 & n.4. Further details concerning this multi-layered money laundering conspiracy, including the asset tracing from Kazakhstan to the United States, is contained in the expert report of Bruce Dubinsky prepared in connection with the related litigation, Case No. 15 Civ. 5345. *See* Schwartz Decl. Ex. J.

By mid-2013, Sater and Ridloff were helping Ilyas identify investments in the United

3

States for the stolen $440 million. One such investment was a debt instrument relating to the Tri-County Mall, located near Cincinnati, Ohio. *See generally* Compl. ¶¶ 181-234. As described further in the Complaint and in the Dubinsky expert report, at Sater's immediate direction, a subsidiary of a company controlled by Ilyas purchased the debt instrument for approximately $30 million in May 2013 using some of the stolen $440 million. *Id.* ¶¶ 195-200, 212; Schwartz Decl. Ex. K. The company used to purchase the debt was Tri-County Mall Investors, LLC, which was managed by Sater and Ridloff. Schwartz Decl. Ex. L (Tri-County Mall complaint PX 29 at 4). Within 60 days, by July 18, 2013, Sater and Ridloff resold the debt instrument to a third party for $45 million. *Id.* ¶ 213. By August 29, 2013, the funds from the resale were transferred to a company controlled by Sater and Ridloff, who immediately began disbursing the funds to their co-conspirators, including Mochkin through MeM Energy. *Id.* ¶¶ 216-222.[3]

Specifically, the account controlled by Sater and Ridloff received the net Tri-County Mall sale proceeds of approximately $43.4 million on August 30, 2013. *See* Schwartz Decl. Ex. M (showing inflow of $43.4 million); *id.* Ex. L (calculating net sale proceeds). On that very same day, Sater (or Ridloff, at Sater's direction) caused two outgoing payments to be made: (1) approximately $2.6 million to defendant Bayrock Group, Inc., an entity wholly controlled by Sater, and (2) $2,250,000 to MeM Energy. *See* Schwartz Decl. Ex. M. The payment of Tri-County Mall proceeds to MeM Energy came approximately two months after ███████████ ████████████████████████████████████████, *see* Schwartz Decl. Ex. F, and without Mochkin or MeM Energy playing any discernable role in the Tri-County Mall

---

[3] The relationship between Ilyas and Sater deteriorated, and Ilyas's companies ultimately sued Sater and Ridloff in New York concerning Sater's unilateral control over the Tri-County Mall proceeds. *Id.* ¶¶ 227-234; Schwartz Decl. Ex. L. The lawsuit was brought on behalf of Tri-County Mall Investors, LLC, which was the subsidiary of Triadou SPV S.A. that acquired the Tri-County Mall debt instrument.

investment, *see* Schwartz Decl. ¶ 13. Moreover, at the time that this $2,250,000 payment was made to MeM Energy in late August 2013, MeM Energy had already fallen out of good standing with the State of Delaware. *See* Schwartz Decl. Ex. E. That is, Sater caused the $2,250,000 to be paid to a defunct shell company owned by Mochkin, who had never done any work in connection with the Tri-County Mall investment but who *had* worked to assist Ablyazov's reputation in the international media.

Notwithstanding the fact that Mochkin and MeM Energy had done nothing in connection with the Tri-County Mall investment, Sater falsely represented to various people in the deal that the payment to MeM Energy was a "commission." Not surprisingly, no one actually involved in the deal believed Sater, or had any information about any role that MeM Energy or Mochkin might have played. For example, the President of the sole member of Tri-County Mall Investors and its authorized representative – who was also the sole director of its parent company, Triadou SPV S.A., *see* Schwartz Decl. Ex. L (Tri-County Mall complaint PX 29 at 18, 29) – stated that the $2,250,000 was paid by Sater to MeM Energy "without the consent of Tri-County Mall Investors, LLC." *Id.* Ex. O; *see also id.* Ex. P (e-mail from lawyer for Tri-County Mall Investors to the President of its sole member: "Contrary to what Felix told me, you informed me yesterday that you did not have any agreement with Felix Sater or MeM regarding the payment and amount of said commission, and therefore, that you never approved the payment of same."). ▇

▇

▇ *See* Schwartz Decl. Ex. N.

In fact, the instruction to pay MeM Energy came directly from Ilyas Khrapunov, based on Ilyas's desire to "maintain a good relationship" with Mochkin. *See* Schwartz Decl. Ex. P (e-mail

5

from lawyer for Tri-County Mall Investors to the President of its sole member: "Felix advised me that that the investor approved the commission as standard and reasonable under the circumstances. . . . He informed me that MeM had done an amazing job and that the Investor [*sic*] wanted to maintain a good relationship with them."); *id.* Ex. I (Sater 2/5/29 Dep. at 28-31) (Sater, ███████████████████████████████████████████████████████████████████████████████████[4] Unsurprisingly, Ilyas Khrapunov's testimony and Sater's testimony are inconsistent. Ilyas claimed that ███████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████ *See* Schwartz Decl. Ex. S (I. Khrapunov 2/1/2018 Dep. at 198).

### B. Procedural History

Plaintiffs commenced this action by filing a complaint on March 25, 2019, alleging six causes of action arising out of defendants' unlawful activities. MeM Energy is a defendant in the first and second causes of action for unjust enrichment and money had and received, respectively.

A summons was issued to MeM Energy on March 26, 2019. [ECF No. 17.] MeM Energy was served on April 9, 2019 at 251 Little Falls, Wilmington, Delaware 19080 by personally serving Lynanne Gares of Corporation Service Company, MeM Energy's Registered Agent. Plaintiffs filed the Affidavit of Service as to MeM Energy on April 25, 2019. *See* ECF No. 24

---

[4] The assertion that a $2,250,000 payment to MeM Energy alone could have been a "standard and reasonable" commission was also false. According to Tri-County Mall Investors, the maximum *total* commission on the sale would have been approximately $1.6 million, *see* Schwartz Decl. Ex. L (Tri-County Mall complaint PX 29 at 33), whereas Sater in fact disbursed nearly $5 million in purported commissions (more than 10% of the gross sale price) on the day the sale closed, *id.* Ex. M (reflecting disbursements of $2,250,000 to MeM Energy and $2,586,382 to Bayrock Group Inc., Sater's entity).

(attached as Schwartz Decl. Ex. C); *see also* Schwartz Decl. Ex. E (Delaware Division of Corporations filing for MeM Energy, showing registered agent information).

MeM Energy's response to the Complaint was due on April 30, 2019, pursuant to Federal Rule of Civil Procedure 12. *See* ECF No. 24; ECF No. 17. Despite being properly served, MeM Energy failed to answer or otherwise respond to the Complaint, did not appear for the Initial Case Management Conference held before Magistrate Judge Parker on June 4, 2019, and has not otherwise appeared in this action. *See* ECF No. 41. The Clerk of the Court entered a Certificate of Default on July 24, 2019. *See* ECF No. 58 (attached as Schwartz Decl. Ex. D). Plaintiffs' counsel has also not been contacted informally by MeM Energy or its representatives. *See* Schwartz Decl. ¶ 7.

## ARGUMENT

The Kazakh Entities' Complaint describes in detail a complex money laundering conspiracy (which itself was part of a much larger and more complicated scheme) to move stolen money through five distinct schemes in the United States. As part of that conspiracy, MeM Energy received $2,250,000 in stolen funds for the benefit of its owner, Mendel Mochkin, in return for his role in mounting a public relations campaign for fugitive Ablyazov. The payment of that $2,250,000 came from the proceeds of the investment in the Tri-County Mall, which was originally made with money stolen from the Kazakh Entities. MeM Energy (and Mochkin) knew that the money it received from the proceeds of the Tri-County Mall investment had nothing to do with MeM Energy's work in connection with that investment – because there was no such work. Instead, the money was traceable to the money stolen from the Plaintiffs, or was otherwise an Ablyazov asset subject to the worldwide freezing orders. MeM Energy was therefore wrongfully enriched at the expense of the Kazakh Entities, and equity demands that MeM Energy be held liable for $2,250,000, plus interest.

With the entry of a default by the Clerk of the Court, the Kazakh Entities' allegations are accepted as true for the purposes of this motion. The Kazakh Entities have also submitted a very small subset of the evidence they would use to prove their case against MeM Energy at trial, should the Court have any question about their ability to establish the truth of their allegations. This showing – the well-pleaded allegations and supporting evidence – easily satisfies the standards under Rule 55 for the entry of a default judgment.

**I.      Legal Standard**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain a default." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of the Court may enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *See* Fed. R. Civ. P. 55(a). The entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The entry of a default, while establishing liability, is not an admission of damages." *Id.* (internal quotation marks omitted).

The second step requires the plaintiff to apply to the Court for the entry of a default judgment against the defendant. Fed. R. Civ. P. 55(b). The entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F. 3d at 129. A district court is nonetheless "empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia,* to determine the amount of damages or establish the truth of the plaintiff's allegations." *Id.* at 129 (quoting Fed. R. Civ. P. 55(b)(2)). Although "default is an admission of all well-pleaded allegations against the defaulting party," *Vt. Teddy Bear Co., Inc.*

*v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), a court is still required to determine whether the plaintiff's allegations "establish the defendant's liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137. However, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).[5]

The Second Circuit regularly holds that a default judgment may be entered against corporate parties for failing to appear. *See Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991); *see also Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006); *Dow Chem. Pac. Ltd. V. Rascator Mar. S.A.*, 782 F.2d 329, 334-36 (2d Cir. 1986); *SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975); *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967).

Under Rule 3(L) of this Court's Individual Practices in Civil Cases, a party seeking the entry of a default judgment must set forth:

1. The basis for entering a default judgment, including a description of the method and date of service of the summons and complaint;

2. The procedural history beyond service of the summons and complaint, if any;

3. Whether, if the default is applicable to fewer than all of the defendants, the Court may appropriately order a default judgment on the issue of damages prior to resolution of the entire action;

4. The proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs; and

5. Legal authority for why an inquest into damages would be unnecessary.

---

[5] A further consequence of MeM Energy's default is that it has waived any affirmative defenses. *See Wachs v. Winter*, 569 F. Supp. 1438, 1442 (E.D.N.Y. 1983) ("Since defendant has defaulted in this matter, it is not necessary to discuss the merits of plaintiff's claims. Any affirmative defenses such as statute of limitations or privilege with regard to the libel must be deemed waived and may not be considered.").

## II. Discussion

### A. All Jurisdictional and Procedural Standards Are Satisfied

The Court has subject matter and personal jurisdiction, and the default was properly entered.

Diversity jurisdiction exists under 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between the parties, and (ii) more than $75,000, exclusive of interest and costs, is at stake. The Kazakh Entities are foreign entities, and all defendants are domiciled or located in the United States. *See* Compl. ¶¶ 4-13; *see also* Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3604 (3d ed. 2019) ("the federal courts have retained jurisdiction over actions between aliens and citizens of more than one state, under the present code and under previous similar statutes."). Venue is proper here because both MeM Energy and its owner Mochkin are in New York, and the transactions concerning the sale and resale of the Tri-County Mall investment occurred using banks and attorneys in New York. *See* Compl. ¶¶ 14-15; *see also Holmes v. Romeo Enterprises, LLC*, No. 15 CV 3915 (VB), 2015 WL 10848308, at *2 (S.D.N.Y. Nov. 2, 2015) ("For venue purposes, a defendant business organization 'resides' in 'any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.'" (quoting 28 U.S.C. § 1391(c)(2)); *see also* 28 U.S.C. § 1391(b)(2) (transactional venue). For the same reasons – because both MeM Energy and its owner, Mochkin, are New Yorkers – this Court has personal jurisdiction over the defendant. *See* Compl. ¶¶ 12, 15. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").[6]

---

[6] Even if MeM Energy could demonstrate that it had a principal place of business separate from Mochkin and Mochkin's other businesses, the Court would still have personal jurisdiction

The Affidavit of Service was filed on April 25, 2019 and constitutes *prima facie* evidence of effective service. *See Howard Johnson Intern., Inc.v. Wang*, 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998). MeM Energy's registered agent for service, Corporation Service Company, Schwartz Decl. Ex. E, was personally served with the summons and Complaint. *See* ECF No. 24. Given that defendants are required to respond to the complaint within 21 days of service under Rule 12(a)(1)(A)(i), the defendant's answer was due on April 30, 2019. It never responded. *See* ECF No. 58 (Clerk's certificate of default). Failure to timely respond to a complaint constitutes a default. Fed. R. Civ. P. 55(a).

### B. The Well-Pleaded Allegations and Other Support Amply Demonstrate that MeM Energy Wrongfully Obtained $2,250,000 of the Kazakh Entities' Money

The Complaint, which must be deemed admitted against MeM Energy based on its default, establishes that the Kazakh Entities have established a *prima facie* case of unjust enrichment and money had and received.

The two claims require similar proof. As to unjust enrichment, under New York law,[7] "a

---

over MeM Energy. Under New York's long-arm statute, jurisdiction is proper over a non-domiciliary who either in person or through an agent, "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). Mochkin, who owns and controls MeM Energy, is an individual domiciled in the State of New York, and he directly engaged in financial transactions in New York in connection with the distributions of the proceeds of the Tri-County Mall investment. Exercising personal jurisdiction over MeM Energy based on its "minimum contacts with the forum" would not "offend traditional notions of fair play and substantial justice." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).

[7]    There should be no dispute that New York law applies to this action. "[I]t is well settled that federal district courts sitting in diversity apply the choice of law principles of the state in which they sit." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Under New York's choice of law rules, the substantive law of the state that has "the most significant relationship to the transaction and the parties" applies. *Zurich Ins. Co. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (N.Y. 1994) (quoting Restatement [Second] of Conflict of Laws § 188 [1]). Here, all of the defendants (as well as MeM Energy's owner) are New York domiciliaries who do or did business in New York. *See* Compl. ¶¶ 6-12. And while the Tri-County Mall is physically located in Ohio, the actual investment was in a debt instrument, and the transactions

plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Similarly, the essential elements in a claim for money had and received under New York law are that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money. *See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Asso.*, 731 F.2d 112 (2d Cir. 1984). As it pertains to both causes of action, "it is a long-standing principle of New York law that a plaintiff may follow stolen assets as far as it can trace them, and can recover its property from those with whom it has had no direct dealings." *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 JG ARL, 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010).

As explained above, on August 30, 2013, defendants Sater and/or Ridloff acting at Sater's direction, transferred at least $2,250,000 of stolen funds to MeM Energy Partners LLC. While Sater claimed this was for a commission in connection with the Tri-County Mall sale, MeM Energy had nothing to do with that sale and was not actually entitled to any commission. Indeed, MeM Energy was not even a corporation in good standing at the time of the transaction on which it purportedly earned its commission. Instead, the money was paid to MeM Energy as a result of Mochkin's media work ████████████ on behalf of Ablyazov just two months prior. Mochkin knew from his work for Ablyazov and ████████████ ████████ that the money his company received actually belonged to the Kazakh Entities, as the allegations of the Complaint and the Dubinsky expert report establish. Having

---

relating to the payment of proceeds to MeM Energy occurred in New York. *See, e.g.*, Schwartz Decl. Ex. L (Tri-County Mall complaint PX 29 at 3-5).

12

worked directly on Ablyazov's media campaign following the U.K. arrest warrant, Mochkin also knew that by receiving $2,250,000 from Ablyazov, he was helping Ablyazov and Ilyas Khrapunov evade the worldwide freezing order entered against Ablyazov. MeM Energy therefore clearly benefited at the Plaintiffs' expense. Equity and good conscience requires restitution for the Plaintiffs. *See, e.g.*, *T.D. Bank*, No. 10-CV-2843 JG ARL, 2010 WL 4038826, at *7 (denying motion to dismiss unjust enrichment and money had and received claims); *see also 3105 Grand Corp. v. N.Y.*, 288 N.Y. 178, 181 (1942) ("Defendant-appellant was not an innocent purchaser and is in the position of retaining the benefits of stolen moneys."); *State v. Park*, 204 A.D.2d 531, 532-33 (N.Y. App. Div. 2d Dep't 1994) (holding that court should have allowed State to bring unjust enrichment and money had and received claims because he improperly received the benefit of money misappropriated from the undercover operation, even if Cho did not know of the existence of the undercover operation); *see also In re Estate of Witbeck*, 245 A.D.2d 848 (N.Y. App. Div. 3d Dep't 1997) ("Petition and documents annexed thereto are sufficient to allege that respondents received moneys belonging to decedent, that respondents benefited from receipt of such moneys and that respondents should not in good conscience be permitted to retain such moneys").

### C. The Court May Enter a Default Judgment for $2,250,000 Plus Prejudgment Interest Running from August 30, 2013

The quantum of damages the Kazakh Entities seek is based on bank records and documents showing that MeM Energy received $2,250,000 from a bank account that was funded with money rightly belonging to the Kazakh Entities. In a case like this, it is not necessary for the Court to hold a hearing to award damages upon a default judgment. *See Action, S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). Instead, the Court may rely upon affidavits and documentary evidence, supplemented by the Court's personal knowledge of the case. *Id.*; *see*

*also Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

Here, Plaintiffs have established that MeM Energy received at least $2,250,000 stolen from the Plaintiffs. *See* Schwartz Decl. Exs. J, K, M. Having made an evidentiary showing of the amount of damages to which the Plaintiffs are entitled, default judgment should be entered against the defendant.[8] While courts may defer the calculation of damages and entry of final judgment when there are non-defaulting defendants, *see e.g.*, *Long Island Hous. Servs. v. Greenview Properties, Inc.*, No. 07 Civ. 0352(ADS)(WDW), 2008 WL 150222, at *1 (E.D.N.Y. Jan. 11, 2008), *report and recommendation adopted*, No. 07 Civ. 0352(ADS)(WDW), 2009 WL 960200 (E.D.N.Y. Apr. 4, 2009), it is unnecessary to delay here because there is no danger of inconsistent damages inquests. The damage award against MeM Energy is based on the precise amount of a single wire transfer of stolen money that MeM Energy received. To the extent that the Court determines that any other defendant is not jointly liable with MeM Energy, this wire transfer can simply be excluded from any damage award granted against any other such defendant to avoid the possibility of a double recovery.

Under New York law, the Court should also award prejudgment interest calculated at the simple statutory rate of nine percent. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998); N.Y. C.P.L.R. § 5004. Courts regularly award prejudgment interest along with a default judgment. *See, e.g.*, *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074 JPO, 2014 WL 4626229, at

---

[8] In seeking a default judgment of $2,250,000 plus interest from MeM Energy, Plaintiffs do not concede that MeM Energy could not be found liable for some larger amount, including by holding it jointly and severally liable for money received by its co-conspirators. Plaintiffs expressly reserve the right to argue that other, non-defaulting defendants are jointly liable in similar circumstances.

*6 (S.D.N.Y. Sept. 16, 2014). "Interest shall be computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. 5001(b), which in this case would be when MeM Energy received the payment on August 30, 2013.

Pursuant to 28 U.S.C. § 1961, Plaintiffs are further entitled to post-judgment interest on the Judgment entered by this Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter the proposed Default Judgment against the Defendant as follows:

An award of damages in the amount to $2,250,000.00, plus pre-judgment interest at the rate of 9% per annum running from August 30, 2013;

Post-judgment interest as appropriate under 28 U.S.C. § 1961; and

For such other and further relief as this Court deems just and proper.


Dated: New York, New York
       July 31, 2019

Respectfully Submitted,

/s/ Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner
Craig Wenner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: 212-446-2300
Facsimile: 212-446-2350

*Attorneys for Plaintiffs City of Almaty, Kazakhstan and BTA Bank*

15