UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CITY OF ALMATY, KAZAKHSTAN and　　　：
BTA BANK, JSC,　　　　　　　　　　　　　：

　　　　　　　　　　　　　　　　　　　　：　Case No. 19-civ-02645
　　　　　　　　　　　　Plaintiffs,　　　　：　(AJN) (KHP)
　　　　　　　　　　　　　　　　　　　　：
　　　　　　-against-　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　：
FELIX SATER, DANIEL RIDLOFF, BAYROCK　：
GROUP INC., GLOBAL HABITAT SOLUTIONS, ：
INC., RRMI-DR LLC, FERRARI HOLDINGS　　：
LLC, and MEM ENERGY PARTNERS LLC,　　：
　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　Defendants.　　　　：

-------------------------------------------------------------X

### MEMORANDUM OF LAW OF DEFENDANT FELIX SATER IN SUPPORT OF MOTION TO STAY ACTION PENDING ARBITRATION OR ALTERNATIVELY, <u>TO STAY THE CLAIMS ASSERTED AGAINST FELIX SATER</u>

TODD & LEVI, LLP

Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400

Attorneys for Defendants
Felix Sater, Daniel Ridloff,
Babyrock Group, Inc., Global Habitat
Solutions, Inc. and RRMI-DR, LLC

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Litco LLC Enters Into a Confidential Assistance Agreement . . . . . . . . . . . . . . . . . . . . . 2

    The Release in the CAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Pending Arbitration and the Scope of the
    Arbitration Clause in the CAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Statement of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    The Status of the Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    The Status of this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    The Filing of the Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Early Discovery and the Dismissal Motions . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE COURT SHOULD ISSUE A STAY
        PURSUANT TO THE FEDERAL ARBITRATION ACT . . . . . . . . . . . . . . . . . . 6

        A.    The Standard For A Stay Pursuant to The
            Federal Arbitration Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Plaintiffs Agreed to Arbitrate the Issue of the Release . . . . . . . . . . . . . . 8

            1.    The Claim To Enforce the Release Arises
                Under the CAA and is Arbitrable . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    There is a Close Relationship Between
                Litco and Sater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.    The Scope of the Arbitration Agreement
            Includes the Release of Sater . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D. No Federal Statutory Claims Have Been Asserted ................ 12

E. All Claims Asserted Against Sater in the Action
Should Be Stayed .......................................... 12

F. The Court Should Stay Claims Against All Defendants
in the Action ............................................. 14

II. THE COURT SHOULD ISSUE A STAY
PURSUANT TO ITS EQUITABLE POWERS ....................... 16

A. The Court Should Grant a Stay Under
Its Equitable Powers ....................................... 16

1. The Plaintiffs Will Not Be Prejudiced By a Stay ........... 17

2. The Defendants Will Be Severely Burdened
Without a Stay ...................................... 17

3. It is in the Court's Interest to Grant a Stay ............... 18

4. No Persons Not Parties to the Litigation Have an Interest ..... 18

5. There is No Public Interest Involved in This Litigation ....... 19

CONCLUSION ......................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

Credit Suisse Securities (USA) LLC v. Laver,
    2019 WL 2325609 (S.D.N.Y. 2019) ........................................... 16

Denney v. BDO Seidman, L.L.P.,
    412 F.3d 58 (2d Cir. 2005) .................................................. 9

Guyden v. Aetna, Inc.,
    544 F.3d 376 (2d Cir. 2008) ................................................. 8

Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd.,
    640 F.Supp. 175 (1988) ................................................ 14, 15

In re A2P SMS Antitrust Litigation,
    972 F.Supp.2d 465 (S.D.N.Y. 2013) .................................. 7-8, 9, 11

In re Currency Conversion Fee Antitrust Litigation,
    361 F.Supp.2d 237 (S.D.N.Y. 2005) ..................................... 6-7, 8

In re Relativity Fashion, LLC,
    2018 WL 2938516 (Bankr. S.D.N.Y. 2018) .................................. 11

Lipford v. New York Life Insurance Co.,
    2003 WL 21313193 (S.D.N.Y. 2003) ..................................... 8, 14

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ............................ 7

Oldroyd v. Elmira Sav. Bank,
    134 F.3d 72 (2d Cir. 1998) .................................................. 8

The Louis Berger Group, Inc. v. State Bank of India,
    802 F.Supp.2d 482 (S.D.N.Y. 2011) .................................. 8, 12, 16

Wells v. Shearson Lehman/American Exp. Inc.,
    72 N.Y.2d 11, 22, 530 N.Y.S.2d 517 (1988) ................................. 11

## **STATUTES**

9 U.S.C.A. §2 et seq. (July 30, 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-7

**MEMORANDUM OF LAW OF DEFENDANT FELIX SATER IN SUPPORT
OF MOTION TO STAY ACTION PENDING ARBITRATION OR ALTERNATIVELY,
TO STAY THE CLAIMS ASSERTED AGAINST FELIX SATER**

Defendant Felix Sater ("Sater") respectfully submits this Memorandum of Law in support
of his motion (the "Motion") to stay this action pending arbitration pursuant to 9 U.S.C.A. §3 et
seq. and the Court's inherent equitable powers or alternatively, if the entire action is not stayed,
then to stay the claims asserted against Sater.

**PRELIMINARY STATEMENT**

Plaintiffs have sued Sater herein based upon events which transpired in 2012 and 2013.
At the time that Plaintiffs commenced this action, they knew that suing Sater was a blatant
violation of a broad general release Plaintiffs signed in 2015 in favor of Litco, LLC ("Litco") and
its members and representatives.  Sater is the sole member of Litco and as such, any claims
against him as alleged in this action have been released.  The release is contained in a
confidential assistance agreement to which Plaintiffs and Litco are parties, which agreement
contains a broad arbitration provision, including all matters relating to the validity and
enforceability of the release.

In October, 2018, Litco commenced an arbitration proceeding under the Confidential
Assistance Agreement against Plaintiffs and others, before the American Arbitration Association.
In the arbitration, Litco seeks, among other things, a determination of the validity and
enforceability of the release and damages arising from Plaintiffs' commencement of this action
against Sater in violation of the release.

It cannot be disputed that Plaintiffs agreed to arbitrate all issues concerning the release
and that the enforceability thereof is front and center in the arbitration proceeding.  Nevertheless,

Plaintiffs commenced this action against Sater, not only as retaliation for Litco's commencement

of the arbitration proceeding, but also to circumvent their agreement to arbitrate all matters

concerning the release.

As explained in detail below, in these circumstances, a stay of this Action (or

alternatively, at a minimum, a stay of the claims against Sater) is warranted both under the

Federal Arbitration Action and pursuant to the inherent equitable powers of this Court.

## STATEMENT OF FACTS

Sater respectfully refer the Court to the accompanying Affidavit of Felix Sater, sworn to

on August 19, 2019 (the "Sater Aff."), and the Exhibits annexed thereto, and the accompanying

Declaration of Jill Levi, dated August 19, 2019 (the "Levi Decl."), and the Exhibit annexed

thereto, for a full recitation of the facts relevant to the Motion. Those facts are briefly

summarized below.

**Litco LLC Enters Into a Confidential Assistance Agreement**

On or about June 12, 2015, Litco, a company of which Sater is the sole member (Sater

Aff., ¶2), entered into a Confidential Assistance Agreement (the "CAA") with the Republic of

Kazakhstan ("Kazakhstan"), Plaintiff, the City of Almaty Kazakhstan ("Almaty"), Plaintiff,

BTA Bank JSC ("BTA," together with Kazakhstan and Almaty, the "Kazakh Entities") and

Arcanum (Asia) Limited ("Arcanum"), a private investigative firm hired by Plaintiffs. (Sater

Aff., ¶3. Ex. A)

Prior to entering into the CAA, Litco was advised by Arcanum that it had been

engaged by the Kazakh Entities directly and/or through counsel or consultants of the Kazakh

Entities, as their agent, to locate, seize and recover billions of dollars in worldwide assets

2

allegedly misappropriated by: (i) the former Chairman of BTA, Mukhtar Ablyazov ("Ablyazov") and members of his family and entities controlled by him (the "Ablyazov Entities") and (ii) Viktor Khrapunov, the former mayor of Almaty and members of his family and entities controlled by him, including Ilyas Khrapunov, the son of Viktor Khrapunov and the son-in-law of Ablyazov (the "Khrapunov Entities"). (Sater Aff., ¶4)

Pursuant to the CAA, Litco agreed to provide information, assistance and cooperation (collectively, the "Litco Assistance") to Arcanum in its investigative efforts to locate and recover assets directly or indirectly related to the Ablyazov Entities and the Khrapunov Entities. The Litco Assistance included identification of witnesses who could testify against the Ablyazov Entities and the Khrapunov Entities. Litco also provided, among other things, litigation strategy for the asset recoveries. In exchange for the Litco Assistance, the Kazakh Entities and Arcanum agreed to pay certain fees to Litco.

**The Release in the CAA**

The CAA also contains a very broad release in favor of Litco and its representatives, including Sater. Specifically, Paragraph 10 of the CAA provides as follows:

> Release. **Upon the execution of this Agreement** by such party, each of Kazakhstan, Almaty and BTA, for itself, and on behalf of its predecessors, successors, past, present, and future officials and citizens, assigns and successors in interest (collectively, the "Releasors"), **hereby releases and discharges Litco, together with its predecessors, successors, direct or indirect parent companies, direct and indirect subsidiary companies, and its past, present, and future officers, directors, shareholders, interest holders, members partners, attorneys, agents, employees, managers and representatives** (collectively, the "Releasees"), from all known and/or unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses, and punitive damages, **of any nature whatsoever, known or unknown, which such Releasors have, or may have**

3

**had, against the Releasees, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from this Agreement, the Releasees' previous, current or future contractual obligations and any other matter between the Parties,** and/or any other claims under applicable local, federal or ethical rules, regulations, statutes and laws.

(Sater Aff., ¶8, Ex. A)

As the sole Member of Litco, Sater is among the Releasees included within the Release contained in Paragraph 10.

**The Pending Arbitration and the Scope of the Arbitration Clause in the CAA**

Pursuant to Paragraph 14 of the CAA, "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be settled by final and binding arbitration, in New York, New York, administered by the American Arbitration Association ("AAA"), in accordance with its Commercial Arbitration Rules, and the procedures required under New York law." (Sater Aff., ¶9, Ex. A).

In October, 2018, when the Kazakh Entities and Arcanum failed to pay Litco amounts due under the CAA (after they received and accepted the Litco Assistance), and when such parties made it clear that they would not pay Litco for the Litco Assistance, Litco filed an arbitration proceeding before the American Arbitration Association (the "Arbitration"), bearing Case Number 01-18-003-7960, which proceeding is now pending.   A formal statement of claim in the Arbitration was filed on August 19, 2019 (the "Statement of Claim") and the Kazakh Entities and Arcanum have until September 30, 2019 to file their response.   (Sater Aff., ¶¶ 9-10, Ex. B ).

4

**The Statement of Claim**

In its Third Claim for Relief in the Statement of Claim, Litco seeks, among other things, a declaratory judgment declaring that any claims by the Kazakh Entities against Sater as alleged in this action are barred by the Release contained in Paragraph 10 of the CAA and that the Release, as well as the CAA, is enforceable by its terms. (Levi Decl., ¶11, Sater Aff., Ex. B )

In its Fourth Claim for Relief, Litco alleges that the Kazakh Entities breached Paragraph 10 of the CAA by commencing this action against Sater, and that since Litco is required to indemnify Sater for, among other things, all costs and expenses incurred in Sater's defense in this Action, Litco has suffered damages as a result of the breach by the Kazakh Entities of Paragraph 10 of the CAA. Accordingly, Litco has asserted a claim against the Kazakh Entities for damages in an amount to be determined by the arbitration panel, which amount is expected to exceed $200,000.00. (Levi Decl., ¶12, Sater Aff., Ex. B ).

The enforceability of the Release, which is a complete defense to the claims brought by the Plaintiffs in this action, is squarely before the arbitration panel in the Arbitration.

**The Status of the Arbitration**

On July 2, 2019, the parties to the Arbitration participated in a scheduling call with the panel and as a result, a schedule was set for the filing of the Statement of Claim and Answers thereto. Pursuant to Procedural Order No. 1 in the Arbitration, it is anticipated that the pleadings will be closed by no later than October 22, 2019. In addition, it is also anticipated that the trial in the Arbitration will occur no later than the second quarter of 2020; (Levi Decl., ¶9).

**The Status of This Action**

**A. The Filing of the Lawsuit**

Plaintiffs filed this action in March, 2019 (the "Action"), well more than two years after

5

Plaintiffs claim Sater admittedly became a target.   (Levi Decl., ¶3, Sater Aff., ¶14, Ex. B). Plaintiffs continued to accept the Litco Assistance from Sater and Litco, well after he became a target, and until such time as they apparently had no further need for Litco and Sater.  Plaintiffs sued Sater in retaliation for Litco having filed the Arbitration pursuant to which Litco demanded to be paid its fees and expenses and in an attempt to browbeat Litco and Sater into withdrawing the Arbitration.

### B.  Early Discovery and the Dismissal Motions

Pursuant to the Court's scheduling orders, initial disclosures and initial document demands have been exchanged among the parties. (Levi Decl., ¶6).

On July 31, 2019, all defendants (including Sater) other than Mem Energy Partners LLC (against which Plaintiffs are seeking a default judgment), moved to dismiss (the "Dismissal Motions") the complaint in its entirety on a variety of grounds, including but not limited to the statute of limitations.  Plaintiffs' opposition, if any to the Dismissal Motions is due on August 30, 2019 and Defendants' replies are due on September 16, 2019.[1] (Levi Decl., ¶4).

## ARGUMENT

## I.

## THE COURT SHOULD ISSUE A STAY
## PURSUANT TO THE FEDERAL ARBITRATION ACT

### A.    The Standard For A Stay Pursuant to The Federal Arbitration Act

"The Federal Arbitration Act ("FAA") governs written contracts concerning commercial transactions that contain an arbitration clause." In re Currency Conversion Fee Antitrust

---

[1] Sater is not seeking a stay of the briefing and argument of the Dismissal Motions, a determination of which motions, if granted, will further streamline the claims in the Action. (Levi Decl., ¶5).

Litigation, 361 F.Supp.2d 237, 248 (S.D.N.Y. 2005).  "The FAA establishes a liberal policy in

favor of arbitration as a means to reduce the expense and delay of litigation." Id. "As a result,

arbitration clauses must be read as broadly as possible, and 'any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration.'" Id., citing Moses H. Cone Mem'l

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

   The FAA, codified at 9 U.S.C. §2 et seq, provides as follows:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal to
> perform the whole or any part thereof, or an agreement in writing to
> submit to arbitration an existing controversy arising out of such a contract,
> transaction, or refusal, shall be valid, irrevocable, and enforceable, save
> upon such grounds as exist at law or in equity for the revocation of any
> contract.

9 U.S.C. §2.

   Furthermore, Section 3 of the FAA provides that

> If any suit or proceeding be brought in any of the courts of the United States **upon
> any issue referable to arbitration** under an agreement in writing for such
> arbitration, **the court in** which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, **shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of the
> agreement,** providing the applicant for the stay is not in default in proceeding
> with such arbitration.

9 U.S.C. §3. (Emphasis Added)

   "This provision requires the court, on application of one of the parties, to stay the action

if it involves an issue referable to arbitration under an agreement in writing. In effect, §3 allows

litigants already in federal court to invoke agreements made enforceable under §2, which itself

makes written arbitration agreements valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of a contract." In re A2P SMS Antitrust

Litigation, 972 F.Supp.2d 465, 474 (S.D.N.Y. 2013) (internal citations omitted). "The FAA is mandatory and a district court may not decline to stay claims encompassed by Section 3." In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d at 266.

In determining whether to issue a stay under Section 3 of the FAA, "[a] court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second it must determine the scope of that arbitration agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." Lipford v. New York Life Insurance Co., 2003 WL 21313193, *4 (S.D.N.Y. 2003), citing Oldroyd v. Elmira Sav. Bank, 134 F.3d 72, 75-76 (2d Cir. 1998). See also, The Louis Berger Group, Inc. v. State Bank of India, 802 F.Supp.2d 482, 489 (S.D.N.Y. 2011), citing Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008).

**B.      Plaintiffs Agreed to Arbitrate the Issue of the Release**

It is undisputed that Plaintiffs and Litco (Arcanum and Kazakhstan) entered into the CAA and that Paragraph 14 thereof contains a very broad arbitration provision mandating that the parties arbitrate "[a]ny dispute, claim or controversy arising out of or relating to [the CAA] or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of [the CAA] to arbitrate. . . ." (Sater Aff, Ex. A, §14). Moreover, it is also undisputed that Plaintiffs and Litco are currently participating in the Arbitration and that the CAA constitutes an enforceable agreement to arbitrate.

Although Sater is not a signatory to the CAA, "courts have recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration

8

agreement, including equitable estoppel." In re A2P SMS, 972 F.Supp.2d at 476. "Under principles of estoppel, signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where a careful review of the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Id., citing Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005). "In addition to the intertwined factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." In re A2P SMS, 972 F.Supp.2d at 476. "Courts in this district have distilled these requirements into a two part 'intertwined-ness' test, under which they examine whether (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a 'close relationship' between the signatory and the non-signatory party." Id.

### 1. The Claim To Enforce the Release Arises Under the CAA and is Arbitrable

At bar, the claims asserted by Litco in the Arbitration include a claim for declaratory relief that Plaintiffs have fully released all claims that Plaintiffs have or ever had against Litco and all of its members and affiliates, including Sater (Sater Aff., Ex. B). Litco's Third Claim for declaratory relief to enforce the Release contained in Paragraph 10 of the CAA signed by Plaintiffs clearly arises under the CAA, and the Release, on its face, includes all claims whatsoever by Plaintiffs (including the claims asserted against Sater in this litigation) against Litco and its, among others "past, present, and future officers, directors, shareholders, interest

holders, members, partners, attorneys, agents, employees, managers and representatives." (Sater Aff., ¶8, Ex. A).

Further, Litco has alleged in the Fourth Claim of the Statement of Claim, a claim against Plaintiffs for a breach of contract for damages, arising from Plaintiffs filing this action against Sater in blatant violation of the Release contained in Paragraph 10 of the CAA. (Sater Aff., Ex. B).

Accordingly, it cannot be disputed that Litco's claims in the Arbitration to enforce the Release and for damages for violating Paragraph 10 of the CAA arise under the subject matter of the CAA, are arbitrable and which claims provide a defense to the claims in this Action.

### 2.   There is a Close Relationship Between Litco and Sater

It is also not disputed by the Plaintiffs that there is a close relationship between Litco and Sater.  Sater is the Sole Member and 100% owner of Litco (Sater Aff., ¶2).  Plaintiffs do not dispute this very close relationship and indeed, they have improperly asserted same as a basis for failing to pay Litco the amounts due under the CAA.  Further, the only representative of Litco (other than Litco's counsel) providing the Litco Assistance was Felix Sater (Sater Aff., ¶6).  As such, there certainly was a close relationship between Plaintiffs (and/or their agent, Arcanum) and Sater regarding the CAA and the obligations of the parties thereunder.[2]

---

[2] Indeed, Sater's primary contact, as Litco's sole member and representative in connection with the performance of Litco's obligations under the CAA was with Arcanum, Plaintiffs' acknowledged agent under the CAA. (Sater Aff, ¶¶ 6-7, Exh A, ¶ 8(b) ("Upon execution of this Agreement. . . each of [the Kazakh Entities] confirms to Litco that Arcanum is authorized to act as [their] agent with respect to the transactions and subject matter of this Agreement.").  Sater also worked with counsel for the Kazakh Entities, Boise Schiller Flexner LLP and so did Litco's and Sater's counsel, Robert Wolf of Moses & Singer LLP. (Sater Aff., ¶6).

Accordingly, based upon the foregoing analysis, the Court should estop Plaintiffs "from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement," In re A2P SMS, supra.   Since the enforcement of the Release contained in the CAA, which is subject to arbitration by its terms, is necessarily intertwined with the claims and defenses asserted by Sater in this action, the Court should compel Plaintiffs to accept arbitration of all issues concerning the Release of Sater and their breach of Paragraph 10 under the CAA.

**C.     The Scope of the Arbitration Agreement Includes the Release of Sater**

Most importantly, one of the central issues in the Arbitration (and two claims therein), relate to the enforceability of the Release provision contained in Paragraph 10 of the CAA, which claims the Plaintiffs have agreed to arbitrate.  There can be no dispute that the Release, if found by the Arbitrators to be enforceable, will constitute a defense to all of Plaintiffs' claims against Sater in this Action.  Sater, as the Sole Member of Litco, is expressly included as a released party under the CAA, which includes "Litco, together with its.... Members" within the definition of the "Releasees" thereunder.  (Sater Aff, Ex. A, §10).

Under well-established law in New York, it is not necessary to specifically name each and every released party in order for the release to be enforceable.  "New York law . . . provides that released parties need not be named or specifically identified in a release provision and may [be] specified by use of a descriptive category of persons (such as attorneys, agents, officers)." In re Relativity Fashion, LLC, 2018 WL 2938516 (Bankr. S.D.N.Y. 2018). See, Wells v. Shearson Lehman/American Exp. Inc., 72 N.Y.2d 11, 22, 530 N.Y.S.2d 517, 523 (1988) (New York law does not demand "that every discharged party be specifically named or identified" in order for the release to be enforceable against non-named parties).  Accordingly, Sater was not

required to be specifically named in the Release in order for the Release to be effective as to him under New York law.

Finally, pursuant to the broad arbitration clause contained in Paragraph 14 of the CAA, the parties must arbitrate all disputes concerning the enforcement of the CAA, including "the scope or applicability of the agreement to arbitrate" (Sater Aff., Ex. A, §14). Accordingly, the enforcement of the Release, which is contained within the CAA, must be arbitrated pursuant to the CAA. Since one of Sater's defenses in this Action is dependent on the enforcement of the Release, the resolution of Sater's defense to the claims asserted in the Complaint is entirely within the scope of the agreement to arbitrate contained in the CAA.

Plaintiffs must not be permitted to do an end run around the CAA and the Release by filing this lawsuit with claims against Sater that were released back in 2015.

**D.   No Federal Statutory Claims Have Been Asserted**

The Plaintiffs have not asserted any claims against Sater which arise under any federal statute that precludes arbitration of the enforceability of the Release signed by Plaintiffs. In fact, all of the claims asserted by Plaintiffs in the Complaint consist of tort claims arising under New York law or claims alleged to arise under English law. Simply put, there are no pending claims against Sater which arise under any federal statute.

**E.   All Claims Asserted Against Sater in the Action Should Be Stayed**

In determining whether to stay all of the claims in the pending Action, if the Court determines that some of the claims are arbitrable, "it must then decide whether to stay the balance of the proceedings pending arbitration." Louis Berger Group v. State Bank of India, 802 F.Supp.2d at 489 (S.D.N.Y. 2011) (citation omitted). "A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide

12

the same facts at issue in the litigation. . . . The movant in such circumstances must establish that 'there are issues common to the arbitration and the courts, and that those issues will be finally determined by the arbitration.' . . . If the movant meets this burden, it must then show that it will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." Id at 489-490 (citations omitted).

At bar, the issue of whether the Release constitutes an effective and enforceable release of all claims asserted by Plaintiffs against Sater, will be finally determined in the Arbitration. The determination of this issue in the Arbitration will be dispositive of *all* of Plaintiffs claims asserted against Sater in the Action; if the Release is found to be enforceable in the Arbitration, then all of the Plaintiffs claims against Sater in the Action must be dismissed. Accordingly, the arbitration of Litco's claims in the Arbitration related to the enforceability of the Release may be entirely dispositive of *all* of Plaintiffs' claims against Sater in the Action.

In addition, if the Court does not stay the claims asserted against Sater in the Action, but continues with the litigation of those claims, then there is a significant risk of inconsistent determinations in the Arbitration and the Action concerning Sater's liability to Plaintiffs. The Arbitration Panel can determine that the Release is enforceable and this Court may decide otherwise. Plaintiffs agreed to arbitrate that issue and they must be held to that agreement.

Litco has expeditiously sought to enforce its claims against Plaintiffs in the Arbitration, has not sought to delay the Arbitration, and expects that the Arbitration will be concluded in a reasonable time (Levi Decl., ¶9). Indeed, Plaintiffs intentionally sought to delay the filing of this Action against Sater for at least two years (Levi Decl., ¶7), no doubt so that they could continue to obtain the Litco Assistance (all without paying for same). Having waited at least two years to

13

commence the Action, Plaintiffs can hardly genuinely claim a prejudice by having the Arbitration decided within the next nine months.

Moreover, the determination of these issues in the Arbitration will not unduly prejudice Plaintiffs, all of whom are parties to the Arbitration, and will not unduly prejudice the other Defendants, some of whom are affiliated with Sater, and whose potential liability and defenses all arise out of same set of operative facts that form the basis of the claims against Sater. Indeed, as explained in Section "F' below, continuing with the prosecution of the claims against the other Defendants in the Action may actually prejudice the other Defendants, and potentially risk inconsistent determinations.

Accordingly, the Court should stay all of the claims asserted against Sater in the Action pending the conclusion of the Arbitration.

**F.**     **The Court Should Stay Claims Against All Defendants in the Action**

Where there are claims against multiple defendants, and the Court must determine the responsibility of each defendant for the alleged claims, "the issue must be litigated in one proceeding in order to avoid the risk of inconsistent determinations." Lipford v. New York Life Insurance, 2003 WL 21313193 (S.D.N.Y. 2013). Accordingly, "a stay as to claims against a non-arbitrating defendant is properly granted where the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against that non-arbitrating defendant." Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., 640 F.Supp. 175, 178 (1988). In this situation, the stay should be extended to all claims against all defendants, to avoid the risk of inconsistent determinations. Lipford, supra.

14

The fact that all of the issues in a pending litigation will not be decided in the arbitration is not a sufficient basis to deny a stay. "All of plaintiff's claims against [non-arbitrating defendant] need not be addressed in the arbitration between plaintiff and [arbitrating defendant] to support a stay of the entire action. A stay as to claims against a non-arbitrating defendant is properly granted where the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against that non-arbitrating defendant." Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd., 640 F.Supp 175, 178 (S.D.N.Y. 1986).

If the Court were to stay the claims against *only* Sater (who is a named defendant under all of Plaintiffs' claims in the Action), but permit Plaintiffs to continue to prosecute their claims against the remaining Defendants other than Sater, then Sater may not be bound by any of the rulings or factual determinations made by the Court in his absence. In the event that the Arbitrators in the Arbitration were to determine that the Release was *not* effective to release Sater from all of Plaintiffs' claims, then the parties in the Action may have to re-litigate the claims as against Sater. Any re-litigation of Plaintiffs' claims against Sater would be a waste of the time and resources of the parties and the Court and would also potentially risk inconsistent determinations of fact or law as a result of separately litigating the same claims, many of which involve identical sets of alleged facts, against different parties. The claims in the Action do not differentiate between Defendants as to their liability and such claims appear to be asserted jointly and severally. (Levi Decl., Ex. D).

Accordingly, based on all of the foregoing, Sater respectfully submits that the Court should stay the entire action, including all claims against all defendants, pending the conclusion of the Arbitration.

## II.

## THE COURT SHOULD ISSUE A STAY
## PURSUANT TO ITS EQUITABLE POWERS

**A.**     **The Court Should Grant a Stay Under Its Equitable Powers**

Finally, even if the Court were to determine that the FAA does not mandate the stay of all

of Plaintiffs' claims pending the conclusion of the Arbitration, the Court should stay the Action

pursuant to its equitable powers.  "The power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants." Credit Suisse Securities (USA) LLC v.

Laver, 2019 WL 2325609, *2 (S.D.N.Y. 2019).  "Stays are particularly appropriate where they

promote judicial economy, avoidance of confusion and possible inconstant results." Louis

Berger Group, 802 F.Supp.2d at 490.

> "In deciding whether to stay proceedings, courts in this Circuit examine
> the following five factors:
>
> (1)     The private interests of the plaintiffs in proceeding expeditiously with the
> civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the
> private interests of and burden on the defendants; (3) the interests of the courts;
> (4) the interests of persons not parties to the civil litigation; and (5) the public
> interest."

Credit Suisse Securities (USA) LLC v. Laver, 2019 WL 2325609, *2 (S.D.N.Y. 2019).  At bar,

all five of these factors weigh in favor of the issuance of a stay pending the conclusion of the

Arbitration.

### 1. **The Plaintiffs Will Not Be Prejudiced By a Stay**

The Plaintiffs will not be prejudiced by a stay pending Arbitration.  As set forth in the
Complaint, the events from which the Plaintiffs' claims allegedly arise all occurred between
2012 and 2013, over six years ago.  Obviously, Plaintiffs have not been in a hurry to prosecute
their claims against the Defendants, and have not alleged any urgent need to litigate their claims
in the Complaint.  Nor have Plaintiffs alleged that they suffered any prejudice resulting from
their long delay in commencing this Action.  Indeed, as explained above, Plaintiffs have
conceded that Sater was a target at least two years prior to the commencement of the Action, but
they inexplicably waited at least two years to bring this Action.  (Levi Decl.,¶7).

Accordingly, in light of the many years that have passed without any action by the
Plaintiffs, an additional, and relatively short stay pending the conclusion of the Arbitration will
not cause any prejudice to Plaintiffs.

### 2. **The Defendants Will Be Severely Burdened Without a Stay**

In juxtaposition to the lack of any prejudice that Plaintiffs may suffer as a result of a stay,
Sater (and likely other Defendants) will be burdened and may be heavily prejudiced absent a stay
of all proceedings in the Action.  As explained above, the issue of whether or not the Release is
enforceable will be finally determined in the Arbitration and could be dispositive of all of
Plaintiffs' claims against Sater.  If the stay is not granted, and the Arbitrators determine that the
Release is an enforceable and an effective release of all claims against Sater, then Sater will have
needlessly incurred massive time and expense in defending against the claims in this Action,
which claims would be rendered moot by the decision in the Arbitration.

Similarly, if a stay is granted as to the claims against only Sater (and not all other
defendants), and the Arbitrators determine that the Release is *not* an enforceable and effective

release of the Plaintiffs' claims against Sater, then the other Defendants may be forced to re-litigate all of the claims to the extent that all discovery and any motion practice relating to the claims against Sater will have to be conducted again, as Sater will not have participated in any proceedings as a party conducted while the stay was in place. All of the parties, including the Plaintiffs, may have to relitigate various issues.

### 3. It is in the Court's Interest to Grant a Stay

The issuance of a stay will also serve the interest of the Court and promote judicial economy. As explained above, if the Arbitration determines that the Release is an enforceable and an effective release of all claims against Sater, then the Court and the parties will not have to expend time and resources litigating claims that are dismissed. In the same vein, proceeding with the litigation in this Action may cause the Court and the parties to expend resources that may be unnecessary, in the event that the claims against Sater are subject to dismissal.

Moreover, the issuance of a stay pending Arbitration will also protect against the possibility of inconsistent results, and the ensuing potential confusion that could arise therefrom. If the triers of fact in the Arbitration and the Action were to reach a different conclusion regarding the enforceability of the Release, the parties may necessarily be compelled to seek an interlocutory appeal of any such decision in order to clarify the viable claims and defenses of all parties to the litigation. This result would surely be avoided by the granting of a stay pending Arbitration.

### 4. No Persons Not Parties to the Litigation Have an Interest

To Sater's knowledge, there are no persons who are not parties to this litigation that have an interest in the immediate prosecution of Plaintiffs' claims in this Action.

**5.  There is No Public Interest Involved in This Litigation**

The Public does not have any interest in the Action.   Although one of the Plaintiffs is the City of Almaty, the City of Almaty is a foreign entity, and the public in the United States has no interest in the prosecution of Plaintiffs' claims herein.   Furthermore, none of the claims asserted against Sater arise from a statutory right under any federal or state statute.

Accordingly, for all of the foregoing reasons, in addition to granting a stay of this Action pending the Arbitration pursuant to the Federal Arbitration Act, this Court should also grant a stay pursuant to its inherent equitable powers.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the accompanying Sater Aff and Levi Decl., Sater respectfully requests that the Motion be granted in its entirety, together with such other relief as the Court deems just and proper.

Dated: New York, New York
       August 19, 2019

TODD & LEVI, LLP
By: _____
       Jill Levi
       David Rosenberg
444 Madison Avenue
Suite 1202
New York, New York 10022
Tel: (212) 308-7400