# Exhibit 9

AMERICAN ARBITRATION ASSOCIATION:
COMMERCIAL ARBITRATION, N.Y. COUNTY
-----------------------------------------------------------x
LITCO, LLC,                                     :
                                                :   Case No. 01-18-0003-7960
                       Claimant,                :
                                                :
                                                :
           -against-                            :   **STATEMENT OF CLAIM**
                                                :
ARCANUM (ASIA) LIMITED, REPUBLIC OF :
KAZAKHSTAN, CITY OF ALMATY,                     :
KAZAKHSTAN,  and  BTA BANK JSC,                 :
                                                :
                                                :
                       Respondents.             :
-----------------------------------------------------------x

LITCO, LLC ("Litco"), by its undersigned counsel, Todd & Levi, LLP and Moses

and Singer, LLP, as and for Litco's Statement of Claim, supplementing the Demand For

Arbitration filed on October 12, 2018 (the "Claim"), respectfully states as follows.

## BRIEF SUMMARY OF LITCO'S  POSITION

1.      Litco provided asset recovery assistance pursuant to which the Respondents

recovered tens of millions of dollars.  Instead of paying Litco its fees for the successful

services Litco provided, as explained in detail below, the Respondents embarked upon a

scheme designed to avoid paying their obligations to Litco and then suing the principal of

Litco (Felix Sater) for some $40 million dollars.  The lawsuit against Sater was brought

in blatant breach of Respondents' contractual agreement (which is the subject of this

arbitration), in which they released Litco and its principals from the very claims for

which Felix Sater is now being sued.

2.      The lawsuit against Felix Sater is a transparent tactic designed to scare

Litco into withdrawing its claims in this Arbitration. The tactic won't work; the claims have been released and Litco is entitled to be paid the millions of dollars it is owed.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

### The Parties and Related Non-Parties

3.      Claimant Litco is a limited liability company organized and existing under the laws of the State of Delaware.

4.      Upon information and belief, Respondent Arcanum (Asia) Limited ("Arcanum"), is a corporation organized and existing under the laws of Hong Kong and is engaged in business as an investigative firm. At all relevant times alleged herein, Arcanum acted individually and as an agent for its co-respondents.

5.      Upon information and belief, the Republic of Kazakhstan ("Kazakhstan") is a country in Central Asia and a former Soviet Republic.

6.      Upon information and belief, the City of Almaty, Kazakhstan ("Almaty") is a legal subdivision of Kazakhstan. Upon information and belief, Almaty is the former capital of Kazakhstan and it continues to be the largest city in Kazakhstan.

7.      Upon information and belief, BTA Bank JSC ("BTA," together with Kazakhstan and Almaty, the "Kazakh Entities"), is a joint stock company organized and existing under the laws of Kazakhstan with its headquarters in Almaty. Upon information and belief, from 2009 until in or about September, 2014, BTA was majority owned and controlled by Kazakhstan and since September, 2014, BTA has been privately held.

8.      Felix Sater ("Sater") is the sole member of Litco.

2

## Choice of Law

9.      Pursuant to Paragraph 13 of the Confidential Assistance Agreement (the "CAA"), which is the subject of this proceeding and more fully described below, such agreement is "governed by, construed, interpreted and [to be] enforced in accordance with the laws of the State of New York, without regard to the principles of conflicts of laws." A copy of the CAA is attached hereto as Exhibit A.

## The Arbitration Provision

10.      Pursuant to Paragraph 14 of the CAA, "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be settled by final and binding arbitration, in New York, New York …."

## The Confidential Assistance Agreement

### (a) The Purpose of the Agreement

11.      Prior to entering into the CAA, Litco was advised by Arcanum that it had been engaged by the Kazakh Entities directly and/or through counsel or consultants of the Kazakh Entities, as their agent, to locate, seize and recover billions of dollars in worldwide assets allegedly misappropriated by: (i) the former Chairman of BTA, Mukthar Ablyazov ("Ablyazov") and members of his family and entities controlled by him (the "Ablyazov Entities") and (ii) Viktor Khrapunov, the former mayor of Almaty and members of his family and entities controlled by him, including Ilyas Khrapunov, the son of Viktor Khrapunov and the son in law of Ablyazov (the "Khrapunov Entities").

3

12.    In June, 2015, Litco, on the one hand and the Kazakh Entities and Arcanum on the other hand entered into the CAA.

13.    Pursuant to the CAA, Litco agreed to provide information, assistance and cooperation (collectively, the "Litco Assistance") to Arcanum in its investigative efforts to locate and recover assets directly or indirectly related to the Ablyazov Entities and the Khrapunov Entities.

### (b) Litco's Compensation

14.    In exchange for Litco's agreement to provide the Litco Assistance, Arcanum and the Kazakh Entities agreed to pay to Litco, as set forth in Paragraph 2 of the CAA, the following:

> a) A monthly fee of $100,000 for a period equal to the greater of twelve months or the duration of the Litco Assistance; and
>
> b) "16% of all monies, remuneration, proceeds, accounts, assets, real estate, art or other economic value recovered ("Recoveries") in Arcanum's asset recovery efforts against the Khrapunov Entities and the Ablyazov Entities, including without limitation, any recoveries by Kazakhstan . . . Almaty . . . and BTA, as a result of, or in connection with, assistance provided by Litco, including without limitation any leads derived, directly or indirectly, therefrom (the "Recoveries Consideration") regardless of whether Arcanum or [the Kazakh Entities] had previous knowledge of the information provided in connection with the Recoveries; provided however, that Litco shall not be entitled to compensation . . . with respect to that portion of assets, if any, recovered wholly independent of any [Litco Assistance]."

15.    The CAA also provides, among other things, in Paragraph 4, that Arcanum shall reimburse Litco for all approved reasonable travel, lodging and other expenses incurred by Litco in the performance of the Litco Assistance.

### (c) The Duty to Report to Litco by Arcanum, the Agent of the Kazakh Entities

16.     Pursuant to Paragraph 8 of the CAA, the Kazakh Entities confirmed to

Litco that Arcanum is their agent and authorized to act on their behalf with regard to the

transactions and subject matter of the CAA.

17.     Pursuant to Paragraph 9 of the CAA, Arcanum was required to deliver to

Litco, monthly, and within thirty days after the end of each month, a report summarizing

the status of the asset recovery efforts, including but not limited to any legal proceedings

commenced by the Kazakh Entities, to the extent such recoveries result from or utilize

information provided by Litco, including providing copies of documentation filed in any

such legal proceedings.

### (d) The Kazakh Entities Release Litco

18.     The CAA also contains a very broad release in favor of Litco and its

representatives.  Specifically, Paragraph 10 of the CAA provides as follows:

> Release.  **Upon the execution of this Agreement** by such party,
> each of Kazakhstan, Almaty and BTA, for itself, and or on behalf of
> its predecessors, successors, past, present, and future officials and
> citizens, assigns and successors in interest (collectively, the
> "Releasors"), **hereby releases and discharges Litco, together with
> its predecessors, successors, direct or indirect parent companies,
> direct and indirect subsidiary companies, and its past, present,
> and future officers, directors, shareholders, interest holders,
> members, partners, attorneys, agents, employees, managers and
> representatives** (collectively the "Releasees"), from all known
> and/or unknown charges, complaints, claims, grievances, liabilities,
> obligations, promises, agreements, controversies, damages, actions,
> causes of action, suits, rights, demands, costs, losses, debts,
> penalties, fees, wages, medical costs, pain and suffering, mental
> anguish, emotional distress, expenses, and punitive damages, **of any
> nature whatsoever, known or unknown, which such Releasors**

5

**have, or may have had, against the Releasees, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from this Agreement, the Releasees' previous, current or future contractual obligations and any other matter between the Parties,** and or any other claims under applicable local, federal or ethical rules, regulations, statutes and laws.

(Emphasis Added).

### (e) Litco Does not Proffer Sater as a Witness

19.     Pursuant to Paragraph 6 (e) of the CAA, Litco agreed that it would not identify and produce to Arcanum in connection with the Litco Assistance, any potential witness who has an ownership interest in Litco or in the payments to be made to Litco pursuant to the CAA.

20.     Sater was never produced or identified by Litco to Arcanum or the Kazak Entities as a potential witness.  Instead, as explained below, after the Kazakh Entities and Arcanum used the Litco Assistance to recover millions of dollars in assets, the Kazakh Entities, without notice to Litco, identified Sater as a witness in their disclosures made in a pending lawsuit brought by the Kazakh Entities against the Ablyazov Entities and the Khrapunov Entities, which lawsuit is described in paragraph 44 below.

### (f) Arcanum Was Aware of Sater's Interest in Litco and the Kazak Entities Performed no Due Diligence Prior To Signing the CAA.

21.     At all relevant times herein, Arcanum and/or counsel for the Kazakh Entities dealt solely with Sater and Moses & Singer LLP, counsel for Litco and

Sater, as Litco's representatives.

22.     At all relevant times herein, Arcanum was aware that Sater was a member of and had the sole ownership interest in Litco.

23.     Indeed, Peder Garske of Arcanum, who negotiated the CAA, expressly inquired of Sater whether Sater had partners in Litco.  In response, Sater advised Mr. Garske the he was the sole "owner" of Litco.

24.     At no time prior to entering into the CAA, did the Kazakh Entities require Litco to disclose the name of Litco's "predecessors, successors, direct or indirect parent companies, direct and indirect subsidiary companies, and its past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers and representatives," which were included in the scope of the Release contained in paragraph 10 of the CAA.

25.     At no time prior to entering into the CAA, did the Kazakh Entities require Litco to name its members or to identity all those who had an ownership interest in Litco or an interest in the payments to be made to Litco pursuant to the CAA.

26.     Upon information and belief, the Kazakh Entities did not conduct any due diligence on Litco prior to signing the CAA in terms of ascertaining: a) the identity of the parties who were included within the scope of the Release set forth in paragraph 10 of the CAA and b) the identity of the members of Litco who would be receiving compensation when Litco was paid pursuant to the CAA.

27.     Upon information and belief, the Kazakh Entities and/or Arcanum knew that Sater was a member of Litco, that he had an ownership interest in Litco and that as a

result thereof, Sater had an interest in the payments to be made to Litco pursuant to the CAA.

28.     In connection with the performance of Litco's obligations under the CAA, Sater met and worked with and provided information to Arcanum and counsel for the Kazakh Entities on a multitude of occasions and at all relevant times, Arcanum, as agent for the Kazakh Entities, was fully aware that Sater was the sole member and representative of Litco.

29.     Indeed, upon presentation by Litco to Arcanum of its invoices, Litco was reimbursed by the Respondents for most of its expenses (including the legal fees of Moses & Singer LLP) and monthly fees for well over a year, for the work Litco (through Sater) performed.

30.     The invoices presented by Litco included references to Sater and expenses he incurred on behalf of Litco. Indeed, some of the invoices of Moses & Singer, LLP which were given to Arcanum, reflected Sater as the Moses & Singer client and some reflected Litco as the Moses & Singer client.

31.     No one other than Sater (or Robert Wolf of Moss & Singer) was ever introduced to Arcanum, to counsel for the Kazakh Entities, Boise Schiller Flexner LLP, or to consultants of the Kazakh Entities, as Litco.

**The Confidentiality and Non-Disclosure Agreement**

32.     Early on in the negotiation of the CAA, Litco was concerned that Sater not be identified as a witness in any proceedings involved in the asset recoveries. Litco's concern was twofold: a) Litco wanted Sater to remain behind the scenes to provide

8

information and witnesses but not to be identified as a witness himself because of the compensation Litco would be receiving for providing the Litco Assistance and b) in light of the well-known and wide spread corruption and violence in Kazakhstan, including the alleged murder of the former head of BTA at the alleged direction of Ablyazov, Sater was concerned that the direct disclosure of his identity might result in harm to him or his family.

33.      As for the security concerns, Sater had reason to believe that the Ablyazov Entities and the Khrapunov Entities had spies within Kazakhstan and Almaty, and Sater had a serious concern that they would seek retribution for the assistance Litco was going to provide pursuant to the CAA.

34.      Accordingly, at all relevant times, Sater wanted his identity, as the force behind Litco, to be kept confidential.

35.      Moreover, because Arcanum wanted the Litco Assistance and was sensitive to Sater's anonymity concerns, Arcanum agreed not to disclose Sater's identity as a witness.

36.      In order to accommodate Litco's privacy and confidentiality concerns, shortly after the CAA was signed, Arcanum and Litco entered into a Confidentiality and Non-Disclosure Agreement, entered into as of July 8, 2015, a copy of which is attached hereto as Exhibit B (the "NDA").

37.      Pursuant to Paragraph 1 of the NDA, Arcanum, as an agent of the Kazakh Entities, and whom the Kazakh Entities confirmed in the CAA was authorized to act for the Kazakh Entities, agreed that "to the extent the identities of Litco's members or other

9

persons having an ownership interest in Litco are disclosed to Arcanum, such information shall be treated as confidential information (the "Confidential Information").

38.     Pursuant to Paragraph 2 of the NDA, Arcanum also agreed that it would not disclose the Confidential Information to the Kazakh Entities and that it would not:

> "proffer any member or, or other person having an ownership interest, in Litco to such counsel as a potential witness in any action contemplated by the Confidential Assistance Agreement, provided that Arcanum shall be permitted to discuss, distribute or to otherwise transfer such Confidential Information to its affiliate entities [who] have a specific need to know such Confidential Information. . . ."

## Litco Provides the Litco Assistance and as a Result, the Kazakh Entities Recover Tens of Millions of Dollars

39.     Beginning in 2015 through and including approximately September, 2018, Litco provided valuable assistance to Arcanum and the Kazakh Entities in helping them to recover tens of millions of dollars in assets misappropriated by the Ablyazov Entities and/or by the Khrapunov Entities. Litco also provided information on other assets worldwide, which assets are estimated, upon information and belief, to be worth hundreds of millions of dollars.

40.     On numerous occasions, Sater met with Arcanum and counsel for the Kazakh Entities and their consultants and identified stolen assets which were converted by the Ablyazov Entities and/or by the Khrapunov Entities into, among other things, real estate investments into the United States.

41.     From 2015 through approximately the Fall of 2018, Litco (through Sater) and its counsel also identified specific witnesses with knowledge of the stolen assets, including but not limited to, Nicolas Bourg, Laurent Foucher, Kevin Meyer, Assim

Sever, Peter Sztyk, Boris Deneli, David Elischakov, all of whom were previously affiliated with the Ablyazov Entities and/or the Khrapunov Entities, and others, including Eeash Aggarwal, the banker for the Khrapunov Entities.

42. Litco (through Sater) also identified numerous assets worth tens of millions of dollars of which the Kazakh Entities and Arcanum were completely unaware, including but not limited to the multitude of assets listed in Exhibit C attached hereto.

43. Indeed, the Kazakh Entities have conceded that countless hours and meetings were conducted between Arcanum, as agent for the Kazakh Entities and Litco (through Sater) to assist in the recovery efforts.

44. Moreover, Litco and its counsel also worked with counsel for the Kazakh Entities to review and revise the pleadings for a lawsuit commenced by the Kazakh Entities in the United States District Court for the Southern District of New York bearing Case No, 15-CV-05345 (AJN) (KHP) (the "Ablyazov Action"), against Ablyazov, Viktor Khrapunov, Ilyas Khrapunov and Triadou SPV. S.A ("Triadou," an entity the Kazakh Entities allege was formed to funnel stolen money into real estate investments in the United States). Litco also provided litigation strategy to the Respondents.

45. Until approximately September 2018, Litco (through Sater) worked closely with Arcanum and counsel for the Kazakh Entities in connection with the Ablyazov Action, including identifying documentation, information and witnesses to support the claims in the Ablyazov Action, which witnesses are referenced in paragraph 41 above.

46. The Ablyazov Action concerns, among other things, the recovery, of Triadou's investment in the New York City based Flathotel and a new condominium

complex being built at the site of the former Cabrini Medical Center.

47.     Early on in the Ablyazov Action, the Chetrit Group, a real estate company, who was involved in the Ablyazov Action and who was identified by Litco as having received misappropriated assets, quickly settled the claims brought against them. As a result of such settlement, the Kazakh Entities recovered two condominium apartments located at 135 West 52nd Street New York, New York (the "Apartments"), which upon information and belief are worth at least $14 million dollars and $1.6 million in cash.

48.     In addition, there is approximately $23,000,000 being held in escrow by a Court Appointed Monitor, Hon. Herman Cahn in connection with Triadou SPVS.A. v. CF 135 Flat LLC, et al (NY State Supreme Court) Index No. 653462/2014, which asset Litco helped to identify as part of the Litco Assistance.

49.     The Litco Assistance also included traveling abroad to meet with and identify witnesses and documents to assist the Kazakh Entities in locating leads to the recovery of the alleged stolen assets.

50.     Upon information and belief, there have been other asset recoveries attributable to the Litco Assistance in other parts of the world, including the United Kingdom and in California.

51.     The amount of such other recoveries is unknown to Litco, as Respondents have failed and refused to account to Litco and provide the details of such recoveries, as required pursuant to the CAA.

**The Monies Owed to Litco**

52,     The Respondents have failed and refused to pay Litco, among other things,

12

16% of any of the assets recovered through the Litco Assistance. Indeed, upon information and belief, the $1.6 million recovered in cash from the Chetrit Group was used to pay the legal fees of Boise Schiller, as counsel for the Kazakh Entities.

53.     Moreover, the Respondents have refused to pay to Litco any portion of the proceeds of the sale of the Apartments and have refused to segregate Litco's share of recoveries while this dispute is pending.

54.     At a minimum, Respondents owe Litco 16% of at least $40 million in recoveries which were procured as a result of the Litco Assistance.

55.     Based upon the records produced by the Kazakh Entities in the Ablyazov Action, between July 15, 2015 and February 26, 2018, the Respondents paid to Litco approximately $2.7 million, which included some monthly fees and reimbursement for most of Litco's expenses, but no monies paid for any percentage of the asset recoveries.

56.     According to Respondents' records, virtually no payments were made to Litco in 2017 and the Respondents ceased to pay anything after February, 2018. And it is undisputed that Respondents failed to pay any sums whatsoever towards the 16% of recoveries required to be paid pursuant to Paragraph 2 of the CAA.

57.     Litco continued to perform the Litco Assistance and Respondents continued to accept the Litco Assistance through at least September, 2018.

58.     Notwithstanding the fact that the Respondents had failed to pay Litco the monies to which it was entitled, incredibly, counsel for the Kazakh Entities continued to seek the assistance of Litco, including requesting that such counsel prepare Sater for the

13

first and second session of his deposition in the Ablyazov case.[1] Even more outrageous, this request was made while counsel for the Kazakh Entities knew full well that Sater was a target for the claims alleged in the Sater Action described in paragraph 66 below.

59. Respondents owe Litco at least $10,000,000, for its monthly fees, expenses and percentage of recoveries, which precise amount will be proved at the hearing of this matter.

**The Retaliation by the Kazakh Entities**

60. After Sater and his counsel met with counsel to the Kazakh Entities in September, 2018 to prepare for Sater's deposition in the Ablyazov Action, on October 9, 2018 (the "October 9 Letter"), counsel for the Kazakh Entities notified Litco (through their counsel) of their claim that Litco allegedly breached the CAA, claiming that it learned, for the first time when Sater testified in the Ablyazov Action, that Sater is the sole member of Litco and that as a result, Litco allegedly breached paragraph 6 (e) of the CAA, referenced in paragraph 19 above.

61. The October 9 Letter ignores entirely that Sater's identity and relationship to Litco was well known to its agent, Arcanum and it strains credulity to believe that counsel for the Kazakh Entities did not know of Sater's affiliation with Litco as well.

62. Further, the October 9 Letter ignores entirely the fact that Litco did not, at any time, proffer Sater as a witness in the Ablyazov Action. Indeed, it was the Kazakh Entities themselves who identified Sater as a witness in the Ablyazov Action, all without

---

[1] Sater was deposed in the Ablyazov Action after Boise Schiller named and proffered Sater as a witness in its mandatory disclosures.

14

the knowledge and consent and participation of Sater.

63.     To the extent that Arcanum proffered Sater as a witness in the Ablyazov

Action, such proffer violated paragraph 2 of the NDA. Moreover, if Arcanum was

required to identify Sater as a witness, the NDA mandated that Arcanum provide prior

notice to Litco, which notice was never provided.

64.     In the October 9 Letter, counsel for the Kazakh Entities also alleged other

meritless claims, including a claim that Litco's cooperation violated an unrelated

agreement, which assertion is completely belied by documentary evidence demonstrating

that Sater was released from any obligations under such unrelated agreement.

**The filing of the Arbitration and the Retaliatory Bad Faith Filing of a Lawsuit
By BTA and Almaty Against Sater**

65.     On October 12, 2018, Litco filed a demand for arbitration.

66.     Once the Kazakh Entities had all of the information they needed from Litco

and had recovered at least $40 million in assets as a result of the Litco Assistance, and

after Sater was forced to testify twice at a deposition in the Ablyazov Action, BTA and

Almaty filed a lawsuit in March, 2019 in the United Stated District Court, Southern

District of New York (Case No, 19-cv-02645 (AJN) KHP) (the "Sater Action")), against

Sater, certain of his affiliated entities and other parties, in which they claimed, among

other things, that Sater had participated in a money laundering scheme with the

Ablyazov Entities and the Khrapunov Entities.

67.     The Sater Action was brought by the Kazakh Entities in retaliation for Litco

having filed the within arbitration proceeding. By filing the Sater Action, the Kazak

15

Entities no doubt sought to pressure Litco into dropping its claims so that they could avoid having to pay Litco for the Litco Assistance it indisputably provided, and which assistance unquestionably led to significant asset recoveries.

68.     Moreover, the Sater Action was brought in bad faith, in total breach of the CAA, which contains the Release by the Kazakh Entities of Litco and its representatives and members (including Sater) for all known and unknown claims of any kind.

69.     Tellingly, the Sater Action was filed in March, 2019, even though the Kazakh Entities claimed in the Ablyazov Action that Sater became an alleged target at least two years earlier, in March, 2017.

70.     Thus, the Kazakh Entities embarked upon a scheme designed to extract as much assistance from Litco as possible, all with the intent of avoiding payment, and then later claiming not to know of Sater's affiliation with Litco, even though Sater was the only individual (other than Litco's counsel), counsel for the Kazakh Entities and Arcanum ever dealt with for Litco.

71.     The Kazakh Entities' claim of ignorance is completely disingenuous. And, in any event, Arcanum knew early on in the process that Sater was Litco. The NDA is but one piece of evidence demonstrating this fact.

**The Boise Schiller Common Interest Agreement**

72.     Regardless of the after-the-fact assertions of the Kazakh Entities regarding Sater, they are required to pay Litco the monies owed under the CAA.  Indeed, to further continue the charade about not knowing that Sater was the sole member of Litco, in May, 2016, Boise Schiller, on behalf of the Kazakh Entities entered into a Confidentiality and

16

Common Interest Agreement with Moses & Singer, on behalf of Sater and Litco (the "Common Interest Agreement.") A copy of the Common Interest Agreement is attached hereto as Exhibit D.

73.     Pursuant to the Common Interest Agreement both parties acknowledge the efforts of the "undisclosed client" of Moses & Singer in identifying certain witnesses and in providing for a sharing of information pursuant to a cloak of confidentiality.

74.     And, after the Common Interest Agreement was signed, Litco's invoices continued to be sent by Litco to Arcanum for payment by the Kazak Entities, which invoices referenced Litco and Sater as clients of Moses & Singer.

<u>**First Claim for Relief Against All Respondents**</u>

<u>**(Breach of the CAA)**</u>

75.     Litco incorporates by reference all of the allegations in paragraph 1 through 74 above as if fully incorporated herein.

76.     Although Litco duly performed its obligations under the CAA, the Respondents did not.

77.     The Respondents breached the CAA by failing and refusing to pay Litco the amounts due thereunder, which amounts include, but are not limited to the following: a) $100,000.00 per month for the period of at least September 2016 to September 2018, b) reimbursement of expenses and c) 16% of at asset recoveries totaling at least  $40 million, subject to an accounting of all asset recoveries worldwide.

78.     By reason of the foregoing, Litco is entitled to an award against the

Respondents, jointly and severally, at least in the amount of $10,000,000 and granting such other and further relief as the panel may deem just and appropriate.

## Second Claim for Relief Against All Respondents

### (An Accounting)

79.     Litco incorporates by reference all of the allegations in paragraph 1 through 78 above as if fully incorporated herein.

80.     Pursuant to Paragraph 9 of the CAA, Arcanum, individually and as the Agent of the Kazakh Entities, was required to provide to Litco a detailed report signed by an officer of Arcanum summarizing, to the best of such officer's knowledge, the status of the asset recovery efforts.

81.     Arcanum never provided a report to Litco as required pursuant to paragraph 9 of the CAA.

82.     On November 15, 2018, Litco served a demand upon Arcanum and the Kazakh Entities (through their counsel), for an accounting, as required pursuant to Paragraph 9 of the CAA (the "Accounting Demand").

83.     The Accounting Demand included a demand for information regarding asset recovery proceedings commenced in the United Kingdom, the United States and any other jurisdiction and was demanded from June 12, 2015, the date of the CAA, because no reporting was ever made to Litco.

84.     Neither Arcanum nor the Kazakh Entities responded to the Accounting Demand. No accounting has ever been provided to Litco.

85.     Litco has been deprived by Respondents of the information needed to fully quantify the amounts it is owed pursuant to the CAA.

86.     By reason of the foregoing, Litco is entitled to an order directing that the Respondents provide a full accounting of all asset recoveries, including but not limited to the status of all asset recovery efforts, stating in reasonable detail the amount of recoveries, and providing copies of litigation documents filed in connection with any such legal proceedings in furtherance of any asset recovery efforts.

## Third Claim for Relief Against the Kazakh Entities

## (Declaratory Relief)

87.     Litco incorporates by reference all of the allegations in paragraph 1 through 86 above as if fully set forth herein.

88.     In the Sater Action, the Kazakh Entities have sued Sater, the sole member of Litco for claims which have been released pursuant to the Release contained in paragraph 10 of the CAA.

89.     The Kazakh Entities have refused to withdraw their claims against Sater.

90.     Pursuant to the CAA, the Kazakh Entities and Litco have agreed to arbitrate all issues concerning the enforceability of the CAA, including the Release.

91.     There exists an actual, ripe and justiciable controversy between Litco and the Kazakh Entities regarding the enforceability of the Release, which must be adjudicated herein.

92.     The Release bars the Kazakh Entities from prosecuting its claims against

19

Sater in the Sater Action.

93.    Accordingly, by reason of the foregoing, Litco seeks a Declaratory Judgment declaring that any claims by the Kazakh Entities against Sater, as alleged in the Sater Action, are barred by the Release and that the CAA, including the Release, is fully enforceable, by its terms.

### Fourth Claim for Relief Against the Kazakh Entities

### (Breach of the CAA by Commencing the Sater Action)

94.    Litco incorporates by reference all of the allegations in paragraph 1 through 93 above as if fully set forth herein.

95.    By commencing the Sater Action, the Respondents breached paragraph 10 of the CAA which released Sater from any liability for all of the claims alleged in the Sater Action.

96.    Litco is required to indemnify Sater for all costs and expenses incurred and damages suffered as a result of the work Sater performed pursuant to the CAA, including for claims asserted in violation of the Release in the CAA.

97.    Litco has suffered damages in having to pay for the costs and expenses attendant to Sater's defense in the Sater Action, in an amount which has not been calculated but which amount is expected to exceed $200,000.00.

98.    By reason of the foregoing, Litco is entitled to an award against the Respondents, jointly and severally, at least in the precise amount which will be proved at the hearing in this matter, but which amount is believed to exceed $200,000.00, and granting such other and further relief as the panel may deem, just and appropriate.

## Fifth Claim for Relief Against the Respondents

### (Attorneys' Fees)

99.     Litco incorporates by reference all of the allegations in paragraph 1 through 98 above as if fully set forth herein.

100.    Pursuant to Paragraph 14 of the CAA, any award issued by the panel shall also grant the prevailing party its reasonable attorneys' fees  and other costs incurred in these proceedings, in addition to any other relief granted.

101.    Pursuant to paragraph 14 of the CAA, the expenses of the Arbitrators shall, in the first instance be borne equally by the parties, except that the Arbitrators may assess, as part of their award, in their discretion, all or any part of their expenses against the non-prevailing party.

102.    By reason of the foregoing, Litco respectfully requests an award of its attorneys' fees and all expenses incurred in this proceeding, including the arbitrators' fees and expenses, in an amount to be proven at the hearing of this matter, together with all costs and expenses and fees incurred by Litco.

## Sixth Claim for Relief Against All Respondents

### (Quantum Meruit)

103.    Litco incorporates by reference paragraphs 1 through 102 above, as if fully set forth herein at length.

21

104.   Litco provided the Litco Assistance at the specific request of the Respondents, which assistance was accepted by the Respondents without objection.

105.   The reasonable value of the Litco Assistance is at least $10,000,000.

106.   By reason of the foregoing, Litco has been damaged and is entitled to an award in its favor against the Respondents, jointly and severally, in the total amount of at least $10,000,000, together with interest accrued and accruing thereon.

## Seventh Cause of Action Against All Respondents

### (Unjust Enrichment)

107.   Litco incorporates by reference paragraphs 1 through 106 above, as if fully set forth herein at length.

108.   Litco provided the Litco Assistance in good faith and at the specific request of the Respondents and with the reasonable expectation of being compensated for the Litco Assistance.

109.   The Respondents benefited from the Litco Assistance and consequently the Respondents have been unjustly enriched.

110.   By reason of the foregoing, Litco has been damaged and is entitled to an award in its favor and against the Respondents, jointly and severally, in an amount to be determined at the hearing of this arbitration, but which amount is estimated to be at least $10,000,000, together with interest accrued and accruing thereon.

**WHEREFORE**, LITCO, LLC, hereby respectfully requests the following relief:

a)   On its First Claim for Relief, an award against the Respondents,

22

jointly and severally, in an amount to be determined by the Panel, after a full accounting has been made by the Respondents, but at least the sum of $10,000,000, together with interest accrued and accruing thereon;

b)     On its Second Claim for Relief, an order directing that the Respondents provide a full accounting of all asset recoveries, including but not limited to the status of all asset recovery efforts in all legal proceedings, and stating in reasonable detail the amount of recoveries, and providing copies of litigation documents filed in connection with any such legal proceedings in furtherance of any asset recovery efforts;

c)     On its Third Claim for Relief, a Declaratory Judgment against the Kazakh Entities declaring that any claims by the Kazakh Entities against Sater as alleged in the Sater Action are barred by the Release and that the CAA, including the Release, is fully enforceable, by its terms;

d)     On its Fourth Claim for Relief an award against the Kazakh Entities jointly and severally, in the precise amount which will be proved at the hearing in this matter, but which amount is believed to exceed $200,000.00;

e)     On its Fifth Claim for Relief, granting an award against the Respondents, jointly and severally, for its attorneys' fees and all arbitration costs, in an amount to be proven at the hearing of this matter, together with all costs and expenses and fees incurred by Litco;

f)     On its Sixth Claim for Relief, an award against the Respondents, jointly and severally, in the total amount of at least $10,000,000, together with interest accrued and accruing thereon;

g)        On its Seventh Claim for Relief, an award against the Respondents, jointly and severally, in an amount to be determined at the hearing of this arbitration, but which amount is estimated to be at least $10,000,000, plus interest accrued and accruing thereon; and

h)        On all Claims for Relief granting such other and further relief as the panel deems just and appropriate

Dated: New York, New York
        August  19 , 2019

TODD & LEVI, LLP
By
        Jill Levi
444 Madison Avenue, Suite 1202
New York, New York 10022
(212) 308-7400

-and-

Robert Wolf
Moses & Singer, LLP
405 Lexington Avenue
New York, New York 10174
(212) 554-7800
Attorneys for Claimant

24