UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CITY OF ALMATY, KAZAKHSTAN and :
BTA BANK, JSC, :
: 19 Civ. 2645 (AJN) (KHP)
                Plaintiffs, :
:
    -against- : **REPLY DECLARATION OF**
: **JILL LEVI IN FURTHER**
FELIX SATER, DANIEL RIDLOFF, BAYROCK : **SUPPORT OF MOTION FOR**
GROUP INC., GLOBAL HABITAT SOLUTIONS, : **A STAY PENDING**
INC., RRMI-DR LLC, FERRARI HOLDINGS : **ARBITRATION**
LLC, and MEM ENERGY PARTNERS LLC, :
:
                Defendants. :
------------------------------------------------------------X

      **JILL LEVI**, declares as follows:

      1.    I am a member of Todd & Levi, LLP, attorneys for Defendants Felix Sater ("Sater"), Daniel Ridloff ("Ridloff"), Bayrock Group Inc., ("Bayrock"), Global Habitat Solutions, Inc. ("GHS") and RRMI-DR LLC ("RRMI") (collectively, the "Todd & Levi Clients"). I submit this Declaration: a) in Reply to Plaintiffs' Memorandum of Law (the "Opp Mem") and the Declaration of Matthew Schwartz (the "Schwartz Decl., together with the Opp Mem, the "Opposition") submitted in opposition to Sater's motion (the "Motion") to stay this action, pending an arbitration proceeding brought by Litco, LLC ("Litco") against Plaintiffs, and b) in further support of the Motion.

      2.    The Plaintiffs have spent approximately half of the Opposition maligning Sater and setting forth distorted and misleading facts, all in an attempt to divert the Court's attention from the law, which compels the grant of a stay.

3. Since many of the alleged "facts" submitted in the Opposition are largely irrelevant to the Motion and nothing other than a false narrative, we need not burden the Court with a point by point refutation. We will, at the appropriate time, and in the appropriate forum, refute the gross misstatements set forth in the Opposition.

4. I submit this affirmation solely to address those facts and/or misstatements which relate to the Motion and which compel the granting thereof.

**The Arbitration Claims and the Progress of the Arbitration**

5. On page 1 of the Opp Mem, Plaintiffs claim that the broad release under Section 10 of the CAA[1] is not "front and center" in the arbitration. Plaintiffs are wrong.

6. In its Third Claim for Relief in the Statement of Claim, Litco seeks, among other things, a declaratory judgment declaring that any claims by the Plaintiffs against Sater as alleged in this Action are barred by the Release contained in Paragraph 10 of the CAA and that the CAA (including the Release) is enforceable by its terms.

7. In its Fourth Claim for Relief, Litco alleges that the Arbitration Respondents, including Plaintiffs, breached Paragraph 10 of the CAA by commencing this Action against Sater, and that since Litco is required to indemnify Sater for, among other things, all costs and expenses incurred in Sater's defense in this Action, Litco has suffered damages as a result thereof. Accordingly, Litco has asserted a claim against the Kazakh Entities for damages in an amount to be determined by the Arbitrators, which amount is expected to exceed $200,000.00.

---

[1] Unless otherwise defined herein, all terms used herein are used as defined in the moving papers.

2

8. These claims make it clear that the release is front and center in the Arbitration proceeding.

9. Moreover, the Arbitration Panel will decide whether the claims are arbitrable as Section 14 of the CAA provides that "the determination of the scope or applicability of this agreement to arbitrate, shall be settled by final and binding arbitration. . . . (Sater Aff, Exh A ).

10. Further, at the initial conference with the panel of arbitrators, which was conducted on July 2, 2019, when I specifically advised that we were bringing claims (in our expanded pleading) based upon the release, the Plaintiffs' conceded that all issues as to arbitrability would be decided by the panel. Notably, Plaintiffs failed to articulate any issue or objection to the scope of the claims to be arbitrated (which claims were briefly described during the July 2, 2019 call, and which description clearly included the issues related to the release).

11. In the Opp Mem, Plaintiffs suggest that the Arbitration may be delayed as the Arbitration Panel may decide to bifurcate the hearing into two hearings: one on liability issues and one on damages. (Opp Mem at p. 9). The Plaintiffs intentionally omit the fact that it is Plaintiffs who wish to delay the arbitration by seeking to bifurcate the arbitration hearing. Litco is opposed to bifurcation and has requested to conduct one hearing on both damages and liability.

12. Plaintiffs have sought to bifurcate the hearing so that they can delay the arbitration and avoid producing the accounting to which Litco is entitled under Section 9 of the CAA and which accounting Litco has been requesting from day one. Litco

believes that the accounting will show the recovery of no less than $40 million dollars due to the assistance provided by Litco under the CAA and likely must more, Plaintiffs refuse to produce this information and hope that by bifurcating the proceedings they will not have to do so.

13.     Further, Plaintiffs, who waited several years to sue Sater and the other defendants, claim that they will be prejudiced by the delay in the arbitration proceedings (Opp Mem at p. 22), but no prejudice has been articulated whatsoever.

14.     Litco is pushing forward as expeditiously as possible with the arbitration and it commits to continue to do so. Moreover, in light of the years that Plaintiffs waited to commence this action, the second quarter of 2020, is not that far away for the conduct of the arbitration hearing.

**The Release**

15.     Section 10 of the CAA, includes a release of Litco and its members, employees, etc, which clearly includes Sater. In order to avoid the Release, Plaintiffs suggest that the release does not include Sater because the release does not include the Khrapunov Entities or the Ablyazov Entities and that Sater had a "relationship" with the Swiss Promotion Group. (Opp Mem at 5, fn2). In order to mislead the Court, Plaintiffs intentionally ignore the definition of the Khrapunov Entities and the Ablyazov Entities which make it clear that Sater was neither a Khrapunov Entity nor an Ablyazov Entity and therefore, Sater was not carved out from the scope of the release.

16.     Pursuant to Paragraph B on page 1 of the CAA, the Khrapunov Entities and the Ablyazov Entities are defined as follows:

4

    a. "the former head of BTA, Mukhtar Ablyazov, members of his family and entities which they own or control (collectively the 'Ablyazov Entities') and

    b. the former Mayor of Almaty, Victor Khrapunov, members of his family and entities which they own or control (collectively the 'Khrapunov Entities')."

17. Sater is neither a Khrapunov Entity nor an Ablyazov Entity, and in any event, these issues related to the scope of the release must be decided in arbitration.

**Plaintiffs' October 9, 2018 Correspondence to Litco**

18. On page 6 of the Opp Mem, Plaintiffs falsely state that on October 9, 2018 they declared Litco in breach of the CAA because Sater admitted that Litco had failed to provide honest information to the Plaintiffs, including failing to disclose that Sater had personally retained more than $20 million of Plaintiffs' alleged stolen money. However, Ex 4 to the Schwartz Declaration, which is the October 9, 2018 letter, makes absolutely no mention of any $20 million dollar claim or the failure to provide this so-called information.

19. Moreover, Plaintiffs point to no obligation in the CAA requiring that Litco or Sater make any specific disclosures to them whatsoever. Instead, the CAA is based upon compensating Litco for the assistance it provided thereunder.

5

**The August 8, 2019 Hearing**

20. Exhibit A contains excerpts from the August 8, 2019 hearing in the City of Almaty, Kazakhstan and BTA Bank JSC v Mukhtar Ablyazov et al, 1:15-cv-95345, which show that Plaintiffs and/ or their counsel intentionally turned a blind eye to Sater, as a member of Litco (Exh. A, pp 82 et seq. though 159), and that Plaintiffs, who are sophisticated parties, claim they conducted no due diligence whatsoever, to determine who the members of Litco were prior to signing the CAA (Exh. A, pp 172 et seq. through 226).

**Conclusion**

21. I have not responded to many of the other misstatements of fact as they do not relate to the issues that are currently before the Court.

22. For the foregoing reasons and those set forth in the Reply Memorandum of Law and the papers submitted with the Motion, I respectfully request that the Motion be granted in its entirety and that the Court grant such other and further relief as it deems just and proper.

I declare under the penalties of perjury that the foregoing is true and correct.

Dated: New York, New York
September 24, 2019

                                                                            s/Jill Levi
                                                                            Jill Levi