UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CITY OF ALMATY, KAZAKHSTAN and
BTA BANK, JSC,

                                      Case No. 19-civ-02645
               Plaintiffs,            (AJN) (KHP)

    -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK
GROUP INC., GLOBAL HABITAT SOLUTIONS,
INC., RRMI-DR LLC, FERRARI HOLDINGS
LLC, and MEM ENERGY PARTNERS LLC,

              Defendants.
------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF DEFENDANT FELIX SATER
IN FURTHER SUPPORT OF MOTION TO STAY ACTION PENDING
ARBITRATION OR ALTERNATIVELY, TO STAY THE
<u>CLAIMS ASSERTED AGAINST FELIX SATER</u>**

TODD & LEVI, LLP

Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400

Attorneys for Defendants
Felix Sater, Daniel Ridloff,
Babyrock Group, Inc., Global Habitat
Solutions, Inc. and RRMI-DR, LLC

# **TABLE OF CONTENTS**

ARGUMENT .................................................................. 1

    A.    **SATER IS ENTTITLED TO A STAY
            UNDER THE FAA** ........................................... 1

           1.    Sater, As a Non-Signatory to The CAA,
                Has A Right to Arbitration ............................... 1

           2.    Sater is Entitled to Enforce the Arbitration
                Provisions of the CAA Under New York Law ................ 3

           3.    The CAA Includes Sater as a Releasee Thereunder .......... 4

           4.    The Cases Cited by Plaintiffs Are Inapposite
                and/or Outdated ........................................ 6

    B.    THE MOTION SHOULD BE GRANTED PURSUANT
            TO THE COURT'S INHERENT AUTHORITY TO
            ISSUE A STAY ............................................. 8

           1.    Plaintiffs' Argument that Sater is Not
                Bound by the Arbitration is Unavailing ................... 9

           2.    Plaintiffs Agreed to Arbitrate All Disputes
                Arising From the CAA .................................. 10

CONCLUSION .............................................................. 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                         **Page(s)**

American Shipping Line, Inc. v. Massan Shipping Industries, Inc.,
    885 F.Supp. 499 (S.D.N.Y. 1995) ................................................... 8

Arthur Andersen LLP v. Carlisle,
    556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ................. 1, 2, 6, 7, 8

Castlewood (US), Inc. v. National Indem. Co.,
    2006 WL 3026039 (S.D.N.Y. 2006) ................................................ 9

Citrus Marketing Bd. Of Israel v. J. Lauritzen A/S,
    943 F.2d 220 (2d Cir 1991) ........................................................ 7

DeGraw Construction Group, Inc. v. McGowan Builders, Inc.,
    152 A.D.3d 567, 56 N.Y.S.3d 152 (2d Dep't 2017) ........................ 3, 8, 10

Downing v. Merrill Lynch,
    725 F.2d 192 (2d Cir 1984) ....................................................... 6, 7

Government Employees Ins. Co. v. Grand Medical Supply, Inc.,
    2012 WL 2577577 (S.D.N.Y. 2012) ................................................ 2

Highland HC, LLC v. Scott,
    113 A.D.3d 590, 978 N.Y.S.2d 302 (2d Dep't 2014) ......................... 3-4, 8

In re Arbitration Between Promotora De Navegacion, S.A.,
    131 F.Supp.2d 412 (S.D.N.Y. 2000) ............................................... 9

Johnston v. Electrum Partners LLC,
    2018 WL 3094918 (S.D.N.Y. 2018) ............................................. 1, 2

Kwatinetz v. Mason,
    356 F.Supp.3d 343 (S.D.N.Y. 2018) ............................................... 4

Nederlandse Erts-Tanksersmaatschappij, N.V. v. Isbrandtsen Co.,
    339 F.2d 440 (2d Cir. 1964) ....................................................... 2

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional,
    991 F.2d 42 (2d Cir. 1993) ......................................................... 4

Roby v. Corporation of Lloyd's,
    996 F.2d 1353 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ross v. American Express Company,
    547 F.3d 137 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Sierra Rutile Ltd. v. Katz,
    937 F.2d 743 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sokol Holdings, Inc. v. BMB Munai, Inc.,
    542 F.3d 354 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## **STATUTES**

9 U.S.C.A. $3 et seq. (July 30, 1947)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 6, 7, 8

Defendant Felix Sater ("Sater") respectfully submits this Reply Memorandum of Law in (i) reply to Plaintiffs' Memorandum of Law in Opposition to Sater's Motion (the "Motion") for a Stay Pending Arbitration (the "Opp Mem") and (ii) further support of the Motion.[1]

## ARGUMENT

### A. SATER IS ENTTITLED TO A STAY UNDER THE FAA

#### 1. Sater, as a Non-Signatory to The CAA, Has A Right to Arbitration

Plaintiffs' opposition to the Motion is predicated on their erroneous assertion that Sater has no right to a stay pursuant to the FAA because he is not a signatory to the CAA and therefore cannot compel arbitration under the FAA. Plaintiffs are wrong.

Ten years ago, the United States Supreme Court ruled that a non-signatory to an arbitration agreement has the right to seek a stay under Section 3 of FAA. It is black letter law that "[a] litigant who was not a party to the arbitration agreement may invoke § 3 (of the FAA) if the relevant state contract law allows him to enforce the agreement." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 129 S.Ct. 1896, 1898, 173 L.Ed.2d 832 (2009). "Indeed, as the Supreme Court has made clear, neither §2 nor §3 of the FAA purports to alter background principles of state contract law regarding the scope of agreements (including who is bound by them), and thus a litigant who was not a party to the relevant arbitration agreement may invoke §3 if the relevant state contract law allows him to enforce the agreement." Johnston v. Electrum Partners LLC, 2018 WL 3094918, *6 (S.D.N.Y. 2018) (granting stay under the FAA where claims were brought by non-signatory officer of company).

---

[1] Unless otherwise defined herein, all defined terms used herein shall be used as defined in Sater's Moving Memorandum of Law (the "Moving Mem"). Sater also refers the Court to the Reply Declaration of Jill Levi dated September 24, 2019 (the "Reply Decl") and the exhibits annexed thereto.

In explaining its reasoning, the Supreme Court in Arthur Andersen further explained:

> Respondents argue that, as a matter of federal law, claims to arbitration by non-parties are 'not referable to arbitration *under* an agreement in writing' 9 U.S.C. §3 (emphasis added) because they 'seek to bind a signatory to an arbitral obligation beyond that signatory's strictly contractual obligation to arbitrate.' Perhaps that would be true if §3 mandated stays only for disputes between parties to a written arbitration agreement. But that is not what the statute says. It says that stays are required if the claims are 'referable to arbitration under an agreement in writing.' If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled.

Andersen, 556 U.S. at 631.

Equally unavailing is Plaintiffs' erroneous reliance on outdated and inapplicable Second Circuit dicta in Nederlandse Erts-Tanksersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440 (2d Cir. 1964), that "granting the stay cannot be justified under the terms of the Arbitration Act … [because] Defendants are not parties to the arbitration agreement." Id. at 441. To the contrary, "the Second Circuit has long recognized that a non-signatory may either be bound by, or may compel a signatory to arbitrate pursuant to … common law principles of contract." Government Employees Ins. Co. v. Grand Medical Supply, Inc., 2012 WL 2577577, *3 (S.D.N.Y. 2012) (surveying Second Circuit law and New York State law supporting the enforceability of arbitration agreements by and against non-signatories to such agreements). "Lower New York courts have consistently agreed, citing Second Circuit precedent [that nonparties can compel and are bound by arbitration] both where a signatory is seeking to compel a non-signatory to arbitrate, as well as in the reverse scenario, present here, in which a non-signatory is seeking to compel arbitration with a signatory to the agreement." Id. Accordingly, "Courts within this Circuit have . . . applied state-law principles to determine whether an arbitration agreement may bind, or be enforced by, nonparties." Johnston v. Electrum Partners LLC, 2018 WL 3094918, * 5 (S.D.N.Y. 2018).

The CAA provides that "it shall be governed by, interpreted and enforced in accordance with the laws of the State of New York." (Sater Moving Aff, Ex. A, ¶13). Accordingly, New York State law determines whether Sater has a right to enforce the CAA, and therefore seek a stay under Section 3 of the FAA. As explained below, under well-established law in New York (which Plaintiffs noticeably fail to mention), Sater has a right to enforce the arbitration clause in the CAA and therefore a right to a stay under the FAA.

2. **Sater is Entitled to Enforce the Arbitration Provisions of the CAA Under New York Law**

Under New York law, "[a] nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and the non-signatory lack an agreement to arbitrate (citations omitted). A non-party to an arbitration agreement may compel a party to arbitration if the relevant state contract law allows the non-party to enforce the arbitration agreement." DeGraw Construction Group, Inc. v. McGowan Builders, Inc., 152 A.D.3d 567, 56 N.Y.S.3d 152 (2d Dep't 2017). "As the Court of Appeals has recognized under similar circumstances, a rule allowing corporate officers and employees to enforce arbitration agreements entered into by their corporation 'is necessary not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement." Id., 58 N.Y.S.3d at 155 (non-signatory officers and employees of corporate party to arbitration agreement had right to enforce arbitration agreement where "any breach of the agreement would necessarily have to occur as a result of some action or inaction attributable to an officer or employee of [the signatory]"). See also, Highland HC, LLC v. Scott, 113 A.D.3d 590, 594, 978 N.Y.S.2d 302 (2d

3

Dep't 2014) (holding that "individual defendants, as officers and directors of [the corporate party to arbitration agreement], are entitled to enforce the arbitration clause").

In addition, "the Second Circuit. . . [has] noted that courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." Kwatinetz v. Mason, 356 F.Supp.3d 343, 349. (S.D.N.Y. 2018), citing Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993). The Second Circuit "adhere[s] to the principle that 'a court will estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Kwatinez, 356 F.2d at 349.[2]

At bar, it is not disputed that Sater is a member and principal of Litco, and that Sater is seeking to enforce the broad release contained in Section 10 of the CAA.

### 3. **The CAA Includes Sater as a Releasee Thereunder**

Plaintiffs also disingenuously repeatedly state in the Opp Mem (p.4) that Sater is not "mentioned" in the CAA and has no "relationship" to the CAA. This claim has apparently been made in an attempt to argue that the release of Sater under Section 10 of the CAA is not within the scope of the parties' agreement to arbitrate.[3] This is simply not true.

---

[2] The elements of the "intertwinedness" test have been fully briefed in the Moving Mem at pp.8-11. Under such test, Sater has demonstrated his right to enforce the arbitration clause in the CAA.

[3] In determining the arbitrability of a dispute, a court must decide "whether the parties agreed to arbitrate, and if so, whether the scope of the agreement encompasses the asserted claims." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 45 (2d Cir. 1993) (applying New York law to determine arbitrability of non-signatory's claims against party to arbitration agreement). As explained above, under the law of New York and the Second Circuit, Sater has demonstrated his right to the arbitration of the dispute with Plaintiffs concerning the enforceability of the release contained in the CAA. Pursuant to Section 14 of the CAA, the arbitration panel determines all claims concerning the release and the arbitrability of such claims.

4

The CAA provides, in relevant part, that upon signing the CAA, Plaintiffs released and discharged "Litco, together with its . . . past, present and future officers, directors, shareholders, interest holders, members, partners, . . . employees, managers, and representatives (collectively the "**Releasees**"), from all known and/or unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, . . . of any nature whatsoever, known or unknown. . . ." (Sater Moving Aff, Ex. A, §10).

Sater, as the sole member of Litco, is expressly included as a released party under the CAA, which includes "Litco, together with its.... Members" within the definition of the "Releasees" thereunder. Id. As explained in the Moving Mem (pp.11-12), under well-established law in New York, it is not necessary to specifically name each and every released party in order for the release to be enforceable. Plaintiffs, by their noticeable silence, have conceded this. Sater was expressly included in the language of the CAA as a member of Litco. Sater was not required to be specifically named in the Release in order for the Release to be effective as to him under New York law. Further, Sater was not carved out of the scope of the release, as Plaintiffs seem to suggest, as the only carve out relates to the Khrapunov Entities and the Ablyazov Entities, which by definition, does not include Sater. (Sater Aff, Ex. B, Paragraph B, p. 1, and Section 10, Reply Decl ¶ 17). [4]

---

[4] Plaintiffs' repeated attempts to malign Sater by alleging that he misled Plaintiffs by never advising them that he was a member of Litco is itself misleading and unavailing. Sater will contest this at the appropriate time and in the appropriate place, meaning in the arbitration. Moreover, any finding on the sanctions motion in the Ablyazov case based upon the August 8, 2019 hearing will not estop Litco and Sater from litigating these issues, as Sater and his counsel were merely witnesses in such proceeding with admittedly no opportunity to present Sater's case, to cross examine witnesses or even to hear the testimony of other witnesses. Further, conspicuously absent from Plaintiff's opposition is any evidence, or even an allegation, that Plaintiffs made any inquiry whatsoever into the ownership structure of Litco. To the contrary, Plaintiffs intentionally turned a blind eye, let their agents (who knew who the members of Litco

5

Accordingly, Plaintiff's repeated statements that Sater is not "mentioned" in the release and has no "relation" thereto (Opp Mem) is disingenuous and misleading.[5] The Release, and its applicability to Sater as a member and principal of Litco, is included within the scope of the arbitration agreement, under both the express terms of the CAA and applicable law in New York and in the Second Circuit.

### 4. The Cases Cited by Plaintiffs Are Inapposite and/or Outdated

The few cases Plaintiffs cite to support their argument that Sater is not entitled to a stay under the FAA are inapposite and were decided prior to Arthur Andersen. Indeed, Plaintiffs failed to cite a single case decided after Arthur Andersen. For example, Downing v. Merrill Lynch, 725 F.2d 192 (2d Cir 1984), was decided twenty-five years before the Supreme Court's seminal decision in Arthur Andersen. In Downing, the Court based its ruling on the fact that Section 4 of the FAA only provides relief to persons "aggrieved by …. the refusal of another to arbitrate" and since the defendant, against whom the plaintiff was seeking to compel arbitration, had *not* commenced litigation against the plaintiff, the plaintiff had not "refused to arbitrate" or otherwise triggered the right to compel arbitration under Section 4 and "had no present right to compel arbitration." Downing, 725 F.2d at 195. At bar, unlike in Downing, Plaintiffs *have*

---

were (Reply Decl, Exh. A) negotiate the CAA, and then executed a release of Litco and its members, employees, etc. Reply Decl ¶ 20, without conducting any due diligence (Reply Decl, Exh. A. at pp 172 et seq.). Plaintiffs, who are sophisticated parties and were represented by sophisticated counsel and sophisticated agents in the negotiation and execution of the CAA, cannot now claim that they were somehow misled; they weren't. Reply Decl ¶ 20.

[5] Equally misleading and completely false are Plaintiffs' statements that the claims in the arbitration do not concern the release. (Opp Mem at p.19). The statement of claim puts the lie to such claim. (Sater Aff, Exh. B, Reply Decl ¶ 5). Moreover, the fact that the initial form statement of claim did not mention the release is meaningless. At the time the arbitration was commenced, in October, 2018, Plaintiffs had not yet breached the CAA by suing Sater in this Action. Reply Decl ¶ 18. Further, as will be proven in the Arbitration, Litco had no obligation to disclose any prior transactions in which Sater was previously involved and Plaintiffs fail to cite to any provision in the CAA containing any such disclosure obligation. See Reply Decl ¶ 19.

6

commenced litigation against Sater in violation of the arbitration agreement, notwithstanding that it had already released Sater and agreed that all disputes concerning such release would be arbitrated, thereby providing Sater rights under the FAA. Downing is inapposite.

Citrus Marketing Bd. Of Israel v. J. Lauritzen A/S, 943 F.2d 220 (2d Cir 1991), was decided almost two decades before Arthur Andersen explicitly recognized a non-signatory's right to enforce an arbitration agreement and seek relief under the FAA. Indeed, the Court explicitly acknowledged that the Second Circuit in another case had "reserved the question of whether a nonparty to an arbitration agreement was entitled to a section 3 stay," because "intervening Supreme Court authorities might have provided a basis for reconsideration of *Nederlandse*." Id., 943 F.2d at 224. Similarly, in Sierra Rutile Ltd. v. Katz, 937 F.2d 743 (S.D.N.Y. 1991), also decided long before Arthur Andersen, the court began and ended its analysis with the bare conclusion that "the various employees, officers, directors and affiliates of [the party] are not parties to an agreement under which issues are referable to arbitration." Id. at 748. Of course, since the Courts' decisions in Citrus Marketing and Sierra Rutile, the Supreme Court, the Second Circuit and numerous District Courts have recognized a non-signatory's rights under the FAA. The Court's rationale in Citrus Marketing and Sierra Rutile does not reflect current law.

In Ross v. American Express Company, 547 F.3d 137 (2008), the Court explicitly recognized the application of the "intertwinedness" test to determine whether a non-signatory is entitled to enforce an arbitration agreement which she did not sign, but which nevertheless may entitle her to enforce the arbitration agreement under certain circumstances. Although the Court in Ross did not find that the non-signatory had a right to enforce the arbitration agreement under the FAA, the Court recognized that whether a non-signatory has such a right is a fact specific

7

inquiry. 547 F.3d at 143-144. At bar, as explained in the Moving Mem and herein, Sater has demonstrated his right to seek a stay under the FAA.

In American Shipping Line, Inc. v. Massan Shipping Industries, Inc., 885 F.Supp. 499 (S.D.N.Y. 1995), the Court rendered its decision based on its finding that "[t]he moving parties have indicated that they will not be bound by the arbitration, rendering it inappropriate to grant a stay of the proceedings involving the moving defendants." Id. at 502. At bar, Sater has expressly indicated that he will be bound by the determination of the arbitrators concerning the effectiveness of the release contained in the CAA. (See pp. 9-10, below).

Finally, in Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354 (2008), the Court did not even consider whether the agreement to arbitrate was enforceable under the state law applicable to the arbitration agreement. There is no discussion in Sokol whether applicable New York law would provide a basis for a non-party to the agreement to enforce the arbitration agreement contained therein, which is the first step in determining whether there is an agreement to arbitrate. Arthur Andersen, supra. Furthermore, the non-party seeking the stay in Sokol was not mentioned anywhere in the arbitration agreement, in any way. The entire decision in Sokol was predicated on the finding that there was no evidence that the defendant "had consented to extend its agreement to arbitrate" to the plaintiff. Here, in contrast, the CAA explicitly includes the members and owners of Litco, which under New York law is sufficient to include such entities as beneficiaries of the contractual provisions contained therein. See DeGraw Construction, supra; Highland HC, supra (See pp.3-4, above).

B. **THE MOTION SHOULD BE GRANTED PURSUANT TO THE COURT'S INHERENT AUTHORITY TO ISSUE A STAY**

In addition to a mandatory stay under Section 3 of the FAA, Sater is also entitled to a stay pending arbitration pursuant to the Court's inherent authority to issue a stay.

8

1. **Plaintiffs' Argument that Sater is Not
   Bound by the Arbitration is Unavailing**

Plaintiffs have argued that Sater is not entitled to a stay under the Court's inherent authority to issue a stay because he is not a party to the pending arbitration proceeding and therefore will not be bound by the decision of the arbitrators concerning the enforceability of the release. (Opp Mem p.17). Plaintiffs' argument is not supported by the facts or the law.

Although Sater is not currently a party to the pending arbitration, Litco's claims for relief in the arbitration seeks a declaratory judgment "declaring that any claims by the [Plaintiffs] against Sater, as alleged in [this action pending in the Southern District of New York], are barred by the Release and that the CAA, including the Release, is fully enforceable, by its terms." (Sater Aff, Ex. B, p.20). Accordingly, Plaintiff's allegation that the enforceability of the release "is not squarely before the arbitration panel" (Opp Mem p. 18) is directly contradicted by the Statement of Claim filed and currently pending before the arbitration panel. Litco also has a claim in the arbitration for damages arising from a breach of the release (Sater Aff., Ex. B, p. 19-20, Reply Decl ¶ 7).

Furthermore, Plaintiffs' claim that Sater will not be bound by the determination of the Arbitrators is also unsupportable. "A non-signatory to an arbitration clause may be bound by an arbitral award if in the course of the arbitration proceeding, or in its dealings with the parties to the arbitration, its conduct demonstrates an intent to arbitrate the submitted dispute." In re Arbitration Between Promotora De Navegacion, S.A., 131 F.Supp.2d 412, 419 (S.D.N.Y. 2000). "Such intent, however, must be clearly and unambiguously demonstrated." Id. See also Castlewood (US), Inc. v. National Indem. Co., 2006 WL 3026039, *5 (S.D.N.Y. 2006). Sater will be bound by the ruling of the arbitrators because he (and Litco) have actively pursued the arbitration of claims concerning the enforceability and breach of the release. To put this issue to

rest, Sater concedes that he is bound by a determination of the arbitrators as to the enforceability of the release.

### 2. Plaintiffs Agreed to Arbitrate All Disputes Arising From the CAA

Finally, Plaintiffs argument (Opp Mem p.13) that they never agreed to arbitrate the issue of the Release *with Sater*, is specious, at best. The issue of the enforceability of the release includes the enforceability by any of the "Releasees" identified thereunder. The CAA provides that "Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be settled by final and binding arbitration...." (Sater Moving Aff., Ex. A, §14). Most importantly, this broad arbitration provision does **not** limit the scope of the arbitration agreement to any dispute, claim or controversy *between the parties*. On the contrary, Plaintiffs agreed to submit all disputes, claims or controversies *arising out of or relating to* the CAA. Because the Plaintiffs expressly released not only Litco, but also all of its members, Plaintiffs cannot now claim that the enforcement of that release by Sater, a member of Litco or the breach of the release by Plaintiffs, is not subject to arbitration because Plaintiffs allegedly "did not agree" to arbitrate these issues with Sater. Plaintiffs explicitly agreed to arbitrate the enforceability of the release with any person or entity claiming the benefit of the release *arising out of* the CAA. See DeGraw Construction, supra.

### CONCLUSION

For all of the foregoing reasons, and those set forth in the accompanying Sater Aff and Levi Decl. and the Reply Decl, Sater respectfully requests that the Motion be granted in its entirety, together with such other relief as the Court deems just and proper.

Dated: New York, New York
      September 24, 2019

TODD & LEVI, LLP

By: _____
Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400
