UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CITY OF ALMATY, KAZAKHSTAN and :
BTA BANK, JSC, :
: Case No. 19-civ-02645
             Plaintiffs, :
:
      -against- :
:
FELIX SATER, DANIEL RIDLOFF, BAYROCK :
GROUP INC., GLOBAL HABITAT SOLUTIONS, :
INC., RRMI-DR LLC, FERRARI HOLDINGS :
LLC, and MEM ENERGY PARTNERS LLC, :
:
            Defendants. :

------------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANTS FELIX SATER, DANIEL RIDLOFF,
BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC. AND RRMI-DR
LLC IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

TODD & LEVI, LLP

Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400

Attorneys for Defendants
Felix Sater, Daniel Ridloff,
Babyrock Group, Inc., Global Habitat
Solutions, Inc. and RRMI-DR, LLC

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    THE AMENDED COMPLAINT, WHICH FAILS TO
STATE VIABLE CLAIMS AGAINST THE MOVING
DEFENDANTS, MUST BE DISMISSED AS A
MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Standard For A Motion to Dismiss
Under FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The First Cause of Action for Unjust Enrichment
Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    The Claim For Unjust Enrichment is Barred by the
Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    The Claim for Unjust Enrichment Fails to State
a Claim as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    The Second Cause of Action for Money Had and Received
Fails as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    The Third Cause of Action for Fraud Should Be Dismissed . . . . . . . . 12

    E.    The Fourth Cause of Action for Conversion Is Time
Barred and Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    F.    The Fifth Cause of Action for Conspiracy Under
English Law Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        1.    There is No Basis For the Application of English Law . . . . . . . 19

        2.    The Kazakh Entities Cannot Prosecute Alleged
Criminal Activity Under U.S. Law . . . . . . . . . . . . . . . . . . . . . . . 21

        3.    The Fifth Cause of Action Is Facially Deficient . . . . . . . . . . . . 22

4.      The Claim Under English Law is Time Barred  . . . . . . . . . . . . . 24

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

Achtman v. Kirby, McInerney & Squire, LLP,
    464 F.3d 328 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC,
    813 F.3d 98 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Boka v. Shafer,
    2016 WL 3866593 (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bullock v. Caesars Entertainment Corp.,
    83 F.Supp.3d 420 (E.D.N.Y., 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,
    637 F.3d 1047 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

City of New York v. Smokes-Spirits.com, Inc.,
    541 F.3d 425 (2d Cir. 2008) certified questions answered
    12 N.Y.3d 616, 883 N.Y.S.2d 772, 911 N.E.2d 834 (2009),
    rev'd and remanded on other grounds, 559 U.S. 1, 130 S.Ct. 983,
    175 L.Ed.2d 943 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cohen v. BMW Investments L.P.,
    144 F.Supp.3d 492 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cohen v. Dunne,
    2017 WL 4516820 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 9. 10

Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.,
    192 A.D.2d 501, 596 N.Y.S.2d 435 (2d Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cromer Finance Ltd. v. Berger,
    137 F.Supp.2d 452 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.,
    414 F.3d 325 (2d. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gansett One, LLC v. Husch Blackwell, LLP,
    168 A.D.3d 579, 93 N.Y.S.3d 276 (1st Dep't 2019) . . . . . . . . . . . . . . . . . . . . . . . . 17

Georgia Malone & Co. v. Rieder,
    19 N.Y.3d 511, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012) . . . . . . . . . . . . . . . . . . 9, 10

Golden Pac. Bancorp v. Fed Deposit Ins. Corp.,
    273 F.3d 509 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Grynberg v. Eni S.p.A.,
    No. 06 Civ. 6495 (RLC), 2007 WL 2584727 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . 5

Hoeffner v. Orrick, Herrington & Sutcliffe LLP,

    85 A.D.3d 457, 924 N.Y.S.2d 376 (1st Dep't 2011) . . . . . . . . . . . . . . . . . . . . . . . . 23

In re LIBOR-Based Financial Instruments Antitrust Litigation,
    27 F.Supp.3d 447 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Jet Star Enterprises, Ltd. v. Soros,
    2006 WL 2270375, No. 05 Civ 6585 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . 9, 10

Jones v. Connecticut Superior Court,
    722 Fed.Appx. 109 (Summary Order) (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . 21, 22

Lazard Freres & Co. v. Protective Life Ins. Co.,
    108 F.3d 1531 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lebovits v. Bassman,
    992 N.Y.S.2d 316, 102 A.D.3d 1198 (2d Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . 11

Legion Lighting Co. Inc. v. Switzer Group, Inc.
    171 A.D.2d 472, 567 N.Y.S.2d 52 (1st Dep't 1991 . . . . . . . . . . . . . . . . . . . . . . . . . 23

Linda R.S. v. Richard D.,
    35 L.Ed.2d 536, 93 S.Ct. 1146, 410 U.S. 614 (1973) . . . . . . . . . . . . . . . . . . . . . 21-22

Mandarin Trading Ltd. v. Wildenstein,
    16 N.Y.3d 173, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011) . . . . . . . . . . . . . . . . . . 9, 17

Manolov v. Borough of Manhattan Community College,
    952 F.Supp.2d 522 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Matana v. Merkin
    957 F.Supp.2d 473 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Maya NY, LLC v. Hagler,
    106 A.D.3d 583, 965 N.Y.S.2d 475 (1st Dep't 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Nagelberg v. Meli,
    299 F.Supp.3d 409 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

New York Tile Wholesale Corp. v. Thomas Fatato Realty Corp.,
    153 A.D.3d 1351, 61 N.Y.S.3d 136 (2d Dep't 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Obstfeld v. Thermo Niton Analyzers, LLC,
    168 A.D.3d 1080, 93 N.Y.S.3d 338 (2d Dep't 2019) . . . . . . . . . . . . . . . . . . . . . . 18, 19

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
    85 F.Supp.2d 282 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Pasternack v. Laboratory Corp. of Am. Holdings,
    27 N.Y.3d 817, 59 N.E.3d 485, 37 N.Y.S.3d 750 (2016) . . . . . . . . . . . . . . . . . 13, 14, 16

Powell v. Kopman,
    511 F. Supp. 700 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Regional Economic Community Action Program, Inc. v.
Enlarged City School District of Middletown,
    18 N.Y.3d 474, N.Y.S.2d 25, 964 N.E.2d 396, 941 (2012) . . . . . . . . . . . . . . . . . . . . . . 12

Rockaway Beverage, Inc. v. Wells Fargo & Company,
    378 F.Supp.3d 150, 2019 WL 1433076 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . 14

Rosenberg v. Pillsbury Co.,
    718 F.Supp. 1146, 1150 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sack v. Low,
    478 F.2d 360 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sperry v. Crompton Corp.,
    8 N.Y.3d 204, 863 N.E.2d 1012, 831 N.Y.S.2d 760 (2007) . . . . . . . . . . . . . . . . . . . . . 8, 9

Tesla Wall Systems, LLC v. Related Companies, L.P.,
    2018 WL 4360777 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

United States v. Bonanno Organized Crime Family of La Cosa Nostra,
    879 F.2d 20 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Vigilant Ins. Co. of America v. Housing Authority of the City of El Paso, Texas,
    87 N.Y.2d 36, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) . . . . . . . . . . . . . . . . . . 18, 19

White Plains Coat & Apron Co., Inc. v. Cintas Corp.,
    460 F.3d 281 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

CPLR 214[3]) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TREATISES

5 Charles A. Wright & Arthur R. Miller,
Federal Practice & Procedure §1217 (3d ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**`MEMORANDUM OF LAW OF DEFENDANTS FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC. AND RRMI-DR LLC IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants Felix Sater ("Sater"), Daniel Ridloff ("Ridloff"), Bayrock Group Inc., ("Bayrock"), Global Habitat Solutions, Inc. ("GHS") and RRMI-DR LLC ("RRMI") (collectively, the "Moving Defendants"), respectfully submit this Memorandum of Law in support of their motion (the "Motion") to dismiss Plaintiffs' First Amended Complaint, dated August 30, 2019 (the "Amended Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP").

## PRELIMINARY STATEMENT

Despite being given a chance to cure the numerous pleading deficiencies contained in their original Complaint, Plaintiffs City of Almaty, Kazakhstan ("Almaty") and BTA Bank, JSC ("BTA," together with Almaty the "Kazakh Entities") have now filed a lengthy Amended Complaint containing allegations largely against parties other than the Moving Defendants and which allegations are still insufficient to state viable claims against the Moving Defendants. Specifically, the Amended Complaint alleges that Mukhtar Ablyazov and his respective family and affiliates (the "Ablyazov Entities") and Viktor and Ilyas Khrapunov and their respective family and affiliates (the "Khrapunov Entities"), allegedly stole millions of dollars from the Kazakh Entities and committed other misdeeds. These claims have nothing to do with the Moving Defendants. Indeed, providing the details of such claims against the Ablyazov Entities and the Khrapunov Entities is nothing other than a sleazy tactic designed to taint the Moving Defendants, by association, and somehow implicate them into a vast money laundering scheme.

And this time around, the Amended Complaint adds further allegations, which amount to nothing other than a claim that the Moving Defendants are allegedly bad people too. The tactic will not work, as even with the opportunity to amend, the new allegations cannot overcome a facially defective and legally insufficient pleading.

It is undisputed that the Moving Defendants had nothing to do with the Kazakh Entities and that the Amended Complaint fails to allege any relationship whatsoever between the Kazakh Entities and the Moving Defendants. Indeed, in response to Sater's recent motion for a stay pending appeal, which is *sub judice,* Plaintiffs conceded that the Kazakh Entities had no relationship whatsoever with the Moving Defendants at the time of the events alleged in the Amended Complaint. Moreover, the claims belatedly asserted against the Moving Defendants are based on events which allegedly transpired some six or seven years ago. As we explain in detail below, such claims (unjust enrichment, money had and received, fraud, conversion, and unlawful conspiracy under English law), fail either because they are time barred or because they are not viable claims as a matter of law.

Accordingly, the Amended Complaint, which added nothing to the original Complaint other than numerous additional malicious and legally irrelevant attacks on the character of the Moving Defendants, still fails to set forth any viable causes of action. This case cries out for dismissal against the Moving Defendants.

## STATEMENT OF FACTS

Moving Defendants respectfully refer the Court to the accompanying Declaration of Jill Levi, dated October 11, 2019 (the "Levi Aff"), and the Exhibit annexed thereto, for a full recitation of the facts relevant to the Motion. In the interest of brevity, those facts shall not be

2

repeated herein. All references to "Am. Cplt." shall be to the Amended Complaint attached to the Levi Aff as Exhibit A.[1]

## ARGUMENT

### THE AMENDED COMPLAINT, WHICH FAILS TO STATE VIABLE CLAIMS AGAINST THE MOVING DEFENDANTS, MUST BE DISMISSED AS A MATTER OF LAW

#### A.    The Standard For A Motion to Dismiss Under FRCP 12(b)(6)

FRCP 8(a)(2) requires that a pleading stating a claim for relief must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion, such a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). In essence, a Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a plaintiff's claim for relief." Manolov v. Borough of Manhattan Community College, 952 F.Supp.2d 522, 530-531 (S.D.N.Y. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545 (internal citations omitted).

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." Ashcroft v.

---

[1] The Moving Defendants have filed an unredacted copy of the Amended Complaint under seal. To the extent that this Memorandum refers to any redacted portions of the Amended Complaint, an unredacted Memorandum will also be filed under seal and the filed copy shall be appropriately redacted.

Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009); See also, United States v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 27 (2d Cir. 1989) (quoting 2A James Wm. Moore *et al.,* Moore's Federal Practice, ¶ 12.07 (2d ed.1987)) ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness"). Accordingly, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citing Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)).

Further, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009). While "the proper length and level of clarity for a pleading cannot be defined with any great precision," Rule 8(a) has "been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §1217 (3d ed. 2010). Such a complaint fails to "put the defendant[s] on notice as to the nature of the claim against [them] and the relief sought," preventing a defendant from adequately responding to the claims levelled against them. Twombly, 550 U.S. at 574.

**B.      The First Cause of Action for Unjust Enrichment Should Be Dismissed**

The Kazakh Entities' First Cause of Action for unjust enrichment is based upon the alleged receipt by the Moving Defendants of "stolen funds" from the Ablyazov Entities and the Khrapunov Entities. As we explain in detail below, such claim must be dismissed for two independent reasons: (1) the unjust enrichment claim is time barred, as the statute of limitations

4

for an unjust enrichment claim seeking monetary relief is three years, and according to the Amended Complaint the claims accrued between six and seven years ago and (2) the allegations in the Amended Complaint fail to set forth a claim for unjust enrichment as a matter of law, because no relationship at all was alleged to exist between the Kazakh Entities and the Moving Defendants during the time period set forth in the Amended Complaint.

### 1. The Claim For Unjust Enrichment is Barred by the Statute of Limitations

"Under New York law, the statute of limitations for unjust enrichment is three years when monetary relief is sought and six years when equitable relief is sought." Cohen v. Dunne, 2017 WL 4516820 at *3, 15 Civ. 3155 (S.D.N.Y. 2017). "The three year statute of limitations begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution." Id. (citations omitted). See Golden Pac. Bancorp v. Fed Deposit Ins. Corp., 273 F.3d 509, 520 (2d Cir. 2001) (quoting Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 192 A.D.2d 501, 596 N.Y.S.2d 435, 437 (2d Dep't 1993)). See also, Matana v. Merkin, 957 F.Supp.2d 473, 494 (S.D.N.Y. 2013) ("Under New York law, the statute of limitations applicable to an unjust enrichment claim depends on the nature of the substantive remedy plaintiff seeks.... The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages."); Grynberg v. Eni S.p.A., No. 06 Civ. 6495(RLC), 2007 WL 2584727 at *3 (S.D.N.Y. 2007) ("New York courts have held that [unjust enrichment] claims are governed by either a three-year statute of limitations when monetary relief is sought or a six-year statute of limitations when equitable relief is sought.").

At bar, as shown in detail below, each and every allegation in the First Cause of Action reveals that the alleged occurrences of the alleged wrongful acts which give rise to the unjust

enrichment claim occurred well more than three years prior to the date this action was commenced. Cohen, 2017 WL 4516820 at *3. The Amended Complaint alleges as follows:

- "The single largest investment of the Stolen Funds by Sater and Ridloff was the Tri - County Mall Scheme, **executed in mid-2013**" (Am. Am. Cplt., ¶ 191) and "Sater and Ridloff jointly received at least $20,000,000 in Stolen Funds from the Tri-County Mall Scheme. . . ." (Am. Cplt., ¶ 288 (a)) (Emphasis Supplied).

- The alleged "Stolen Funds" involved in the Tri-County Mall Scheme, were allegedly received **in 2013**. (Am. Cplt., ¶¶ 191-272) (Emphasis Supplied).

- Money was distributed "from RPM USA to pay for Sater's personal expenses" with such payments made from December 26, 2012 to November 4, 2013 (Am. Cplt., ¶ 150 (a) to (e)).

- "**On or about April 2013**, Ilyas transferred just over $300,000 from his sister's account to the escrow account of Jajan PLLC, a New York real estate law firm which reportedly handled the majority of purchases in the Trump Soho development and worked closely with Sater and Bayrock LLC" (Am. Cplt., ¶ 165), and "**[s]hortly afterwards** ... the conspirators transferred close to $3 million . . . to the same escrow account of Jajan PLLC. . . " (Am. Cplt., ¶ 166) (Emphasis Supplied)

- "Bayrock Inc. received, through wire transfers or checks, at least $3,797,202 in Stolen Funds" (Am. Cplt., ¶ 288 (b)) in connection with the alleged Tri-County Mall Scheme over three dates in **2013, May 30, 2013** (Am. Cplt., ¶ 233) **August 30, 2013** (Am. Cplt., ¶ 258) and **September 24, 2013** (Am. Cplt., ¶ 259) (Emphasis Supplied);

- "**Between 2012 and 2013**, Sater, and/or Ridloff acting at Sater's direction, transferred hundreds of thousands of dollars in Stolen Funds to GHS, Sater's wholly owned and controlled entity (Am. Cplt., ¶ 144) and "GHS received at least 24 transfers of Stolen Funds, totaling at least $1,285,300..." (Am. Cplt., ¶¶ 145, 288 (c)) (Emphasis Supplied). All of such payments are alleged to have been made between **March 19, 2012 and July 29, 2013**. (Am. Cplt., ¶ 145 (a) through (w)) (Emphasis Supplied).

- "**On or about May 23, 2013**.... the Real Estate Law Firm transferred $1,080,000 in Stolen Funds at Ridloff's direction from the Real Estate Law Firm's escrow to an account at Capital One Bank in the name of Ferrari Holdings LLC" (Am. Cplt., ¶ 230), and "**the next day** Ferrari transferred exactly half of the purported finders' fee, $540,000, to a JPMorgan Chase account in the name of RRMI-DR LLC" (Am. Cplt., ¶ 231). As a result, "RRMI received at least $540,000 in Stolen Funds..." (Am. Cplt., ¶ 288 (e) (Emphasis Supplied).

In addition, the Amended Complaint alleges that "with Sater and Ridloff's knowing aid, the conspirators transferred at least $7,274,047 in Stolen Funds into the United States through the WHN Scheme" (Am. Cplt., ¶ 140) in the following amounts and on the following dates:

- "A wire transfer of approximately $999,000… **on or about June 20, 2012**" (Am. Cplt., ¶ 140 (a) (Emphasis Supplied);

- "A wire transfer of $3,000,000… **on or about July 20, 2012**" (Am. Cplt., ¶ 140 (b) (Emphasis Supplied);

- "A wire transfer of $1,274,147.08… **on or about November 7, 2012**" (Am. Cplt., ¶ 140 (c) (Emphasis Supplied);

- "A wire transfer of $1,000,000… **on or about January 9, 2013**" (Am. Cplt., ¶ 140 (d) (Emphasis Supplied);

- "A wire transfer of $300,000… **on or about February 28, 2013**" (Am. Cplt., ¶ 140 (e) (Emphasis Supplied); and

- "A wire transfer of $700,000… **on or about March 1, 2013**" (Am. Cplt., ¶ 140 (f)) (Emphasis Supplied).

Although these transfers were not alleged to have been received by the Moving Defendants, the Amended Complaint generally alleges, without any specifics, that "Sater, Ridloff, and other conspirators" personally benefitted from these above transfers. (Am. Cplt., ¶ 141);

Further, none of the Moving Defendants are alleged to have received any of the funds referenced in the so- called scheme to use a New York based entity known as RPM USA to purchase an interest in a payment card processing business named Creacard (Am. Cplt., ¶¶ 169-181), but even if they had, the alleged transfers of funds in connection with this so-called scheme all transpired in 2012 and 2013. See Am. Cplt., ¶¶ 171, 174 and 179.

Finally, the Syracuse Center Scheme is alleged to have been "funded by $1,900,000 transferred **on or about July 10, 2013**… to the attorney escrow account of Moses & Singer LLP, one of Sater's longtime law firms" (Am. Cplt., ¶ 188) (emphasis added) and that "[t]he transfer

and receipt of $1,900,000 in Stolen Funds… was a knowing violation of the Worldwide Freezing Orders by Sater, Ridloff and their co-conspirators." (Am. Cplt., ¶ 190).

In sum, the allegations in the Amended Complaint make clear that all of the alleged occurrences upon which the Kazakh Entities base their claim for unjust enrichment occurred between 2012 and 2013, roughly **six to seven years prior** to the date that the action was filed.[2] It is equally clear that the Kazakh Entities are seeking "monetary relief" in the return of the alleged "Stolen Funds." Indeed, under well-established law in New York, a Plaintiff cannot seek to extend the statute of limitations from three years to six years by repackaging a claim for monetary relief as one for "equity" in order to avoid the shorter three-year limitations period. "[I]t is not appropriate to substitute unjust enrichment to avoid the statutory limitations on the cause of action created by the Legislature." Sperry v. Crompton Corp., 8 N.Y.3d 204, 215, 863 N.E.2d 1012, 1018, 831 N.Y.S.2d 760, 766 (2007).

Accordingly, the unjust enrichment claim must be dismissed because it is clearly time barred.

### 2.  The Claim for Unjust Enrichment Fails to State a Claim as a Matter of Law

"Under New York law, the elements of unjust enrichment are (1) the other party was enriched, (2) at the party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Cohen v. Dunne, 2017 WL

---

[2] It appears that the unjust enrichment claim is based solely on what the Amended Complaint describes as the World Health Networks Scheme (Am. Cplt., ¶¶ 120-154) and the Tri-County Mall Scheme (Am. Cplt., ¶¶ 191-272). Regardless, as explained above, all of the other actions alleged as to the other so- called schemes took place some six or seven years ago. Moreover, the unjust enrichment claim also fails as to such other "schemes" for the reasons described in Section B. 2 above and because there are no allegations, among other things, that any of the Moving Defendants were enriched by any of the so-called transfers of funds involved in such other schemes. See e.g. Cohen v. Dunne, 2017 WL 4516820 at *4 (S.D.N.Y. 2017), outlining the elements of an unjust enrichment claim.

4516820 at *4 (S.D.N.Y. 2017) (citations omitted). However, " a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party. While a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." Id. "[P]laintiff must have had direct dealings or some sort of quasi-contractual relationship with each defendant," in order to establish an unjust enrichment claim. Jet Star Enterprises, Ltd. v. Soros, 2006 WL 2270375 at *5, No. 05 Civ. 6585 (S.D.N.Y. 2006). "Where plaintiff and defendant simply had no dealings with each other, their relationship is too attenuated to support an unjust enrichment claim." In re LIBOR-Based Financial Instruments Antitrust Litigation, 27 F.Supp.3d 447, 479 (S.D.N.Y. 2014) (internal quotations omitted).

In sum, "the New York Court of Appeals has held that a relationship is too attenuated where the parties simply had no dealings with each other, and the complaint did not allege that the parties had any contact regarding the [subject] transaction." Cohen v. Dunne, 2017 WL 4516820 at *4 (S.D.N.Y. 2017). See Sperry v. Crompton, supra (affirming dismissal by Court of Appeals of unjust enrichment claim where the "connection between the [plaintiffs] and the [defendants] is simply too attenuated to support such a claim").[3]

---

[3] Subsequent to Sperry, the Court of Appeals issued its decision in Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011). In Mandarin, in discussing the need for a relationship between the parties in order to state a claim for unjust enrichment, the Court in *dicta* referenced the need for a plaintiff to allege that a defendant had "at least an awareness" of the plaintiff. Litigants thereafter seized upon this *dicta* to expand the applicability of unjust enrichment claims by referring to the "awareness" language in Mandarin. However, following Mandarin, the New York Court of Appeals issued its decision in Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012), which clarified the standard for pleading unjust enrichment claims under New York law and rejected an expansion of unjust enrichment claims following the Mandarin case. In Georgia Malone, the plaintiff argued that its "unjust enrichment claim should be allowed to proceed because [Defendant] was aware that [Defendant] had used the materials .... [created by Plaintiff] for its own benefit and had not compensated [Plaintiff]." However, the Court held that its prior *dicta* in Mandarin as to the need to have "at least an awareness of the Plaintiff," "was intended to

At bar, the Amended Complaint is completely bereft of any allegation whatsoever that there was *any relationship at all* between the Kazakh Entities on the one hand, and any of Moving Defendants, on the other hand, let alone a relationship that constitutes a "quasi-contractual relationship." See Jet Star Enterprises, Ltd. supra. In fact, a full reading of the Amended Complaint here readily reveals that "the parties simply had no dealings whatsoever with each other and the complaint did not allege that the parties had any contact regarding the subject transaction." Cohen, 2017 WL 4516820 at *4.

Furthermore, the Kazakh Entities' far-fetched allegations that the Moving Defendants were in a conspiracy with other parties cannot, as a matter of New York Law, save its deficient unjust enrichment claim. "Even if a conspiracy between the [defendants] did exist, an allegation of conspiracy would not eliminate plaintiff's requirement to plead the existence of some relationship between the parties." In re LIBOR-Based Financial Instruments Antitrust Litigation, 27 F.Supp.3d at 479-480.

Accordingly, since the Amended Complaint fails to allege the existence of any relationship between the Kazakh Entities and the Moving Defendants, let alone any relationship concerning the alleged transfer of the funds alleged in the Amended Complaint, the Kazakh Entities' unjust enrichment claims fails to state a claim as a matter of law and must be dismissed.

## C.    The Second Cause of Action for Money Had and Received Fails as a Matter of Law

In the Second Cause of Action, the Amended Complaint alleges that all of the Moving Defendants benefitted from the Stolen Funds belonging to the Kazakh Entities (Am. Cplt., ¶ 299)

---

underscore the complete lack of a relationship between the parties in that case." The Georgia Malone Court then affirmed the dismissal of the unjust enrichment claim, stating that "in particular, the complaint does not assert that [Plaintiff] and [Defendant] had any contact regarding the [subject] transaction."

and that it would offend equity and good conscience to permit the Moving Defendants to retain such funds. (Am. Cplt., ¶ 302). This claim for "money had and received" is not viable under New York law.

Under New York law, "[t]he elements for money had and received are similar to the elements of unjust enrichment: (1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Cohen v. BMW Investments L.P., 144 F.Supp.3d 492, 501 (S.D.N.Y. 2015). "It allows plaintiff to recover money which has come into the hands of the defendant impressed with a species of trust because under the circumstances it is against good conscience for the defendant to keep the money." Id.

"Like unjust enrichment, a cause of action for money had and received is one of quasi contract." Id. Accordingly. there must be some relationship between the Kazakh Entities and the Moving Defendants that is not too attenuated, in order to establish a claim for money had and received. Where, as here, the "amended complaint does not plead any relationship between [plaintiff] and [defendant] whatsoever . . . the [plaintiff] fails[s] to state a claim upon which relief can be granted." Cohen v. BMW Investments L.P., 668 Fed.Appx. 373, 374 (2d Cir. 2016) (Summary Order) (affirming dismissal of claims for unjust enrichment and for money had and received). See, Lebovits v. Bassman, 992 N.Y.S.2d 316, 102 A.D.3d 1198 (2d Dep't 2014) (affirming dismissal of claims for unjust enrichment and for moneys had and received). Accordingly, for the same reasons set forth in Section B.2 above, namely because there is no relationship between the Kazakh Entities and the Moving Defendants, the claim for money had and received fails to state a claim as a matter of law and should be dismissed against the Moving Defendants.

Finally, in addition to the Second Cause of Action failing to state a claim as matter of New York law, to the extent that the Second Cause of Action for money had and received seeks the recovery of monies which were allegedly transferred more than six years prior to the date that Plaintiffs filed their initial complaint (March 25, 2019), all claims for the recovery of such monies are barred by the applicable statute of limitations. Claims for money had and received are generally governed by a six-year statute of limitations, measured from the date that the moneys are allegedly received by the Defendants. See Regional Economic Community Action Program, Inc. v. Enlarged City School District of Middletown, 18 N.Y.3d 474, N.Y.S.2d 25, 964 N.E.2d 396, 941 (2012). Accordingly, all of Plaintiff's claims for money allegedly had and received by any of the Moving Defendants prior to March 25, 2013, are barred by the applicable statute of limitations and must be dismissed as a matter of law.

## D.    The Third Cause of Action for Fraud Should Be Dismissed

As explained in greater detail below, the Kazakh Entities have pleaded a claim for fraud against Sater and Ridloff in the Third Cause of Action, predicated upon the submission of a "false and misleading" Bid Package to a third-party Real Estate Advisor (who had nothing to do with the Kazakh Entities), which resulted in the Tri-County Mall Property being purchased with Stolen Funds. (Am. Cplt., ¶¶ 312, 314). Simply stated, the allegations that allegedly false and misleading statements were submitted to a third party upon which such third party relied, do not constitute fraud against the Kazakh Entities as a matter of law.

It is well settled under New York law that "[t]he elements of a fraud cause of action consist of "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."

Pasternack v. Laboratory Corp. of Am. Holdings, 27 N.Y.3d 817, 827, 59 N.E.3d 485, 491, 37 N.Y.S.3d 750, 756 (2016). At bar, the Amended Complaint is utterly devoid of any allegation that Sater and Ridloff made any misrepresentations to the Kazakh Entities or that the Kazakh Entities relied on any such alleged misrepresentations. Instead, the fraud claim is predicated on the allegations that Sater and Ridloff made misrepresentations to third parties which somehow caused injury to the Kazakh Entities.

In Pasternack, supra, the Court considered the precise issue applicable at bar, which question was certified by the Second Circuit. The New York Court of Appeals considered the question of "whether a plaintiff may establish the reliance element of a fraud claim under New York law by showing that a third party relied on a defendant's false statements resulting in injury to the plaintiff." Pasternack, 27 N.Y.3d at 820. The answer to this question is "no." As stated in Pasternack,

> Federal courts applying New York law and the Appellate Division Departments
> have come to varying conclusions as to whether a plaintiff may state a fraud
> claim, despite the absence of reliance by the plaintiff on the alleged
> misrepresentations, where a non-plaintiff third party is alleged to have relied on
> the misrepresentations in a manner that caused injury to the plaintiff. The Second
> Circuit has held that "allegations of third-party reliance . . . are insufficient to
> make out a common law fraud claim under New York law. Pasternack, 37
> N.Y.S.3d at 757, citing City of New York v. Smokes-Spirits.com, Inc., 541 F.3d
> 425 (2d Cir. 2008), certified questions answered 12 N.Y.3d 616, 883 N.Y.S.2d
> 772, 911 N.E.2d 834 (2009), rev'd and remanded on other grounds, 559 U.S. 1,
> 130 S.Ct. 983, 175 L.Ed.2d 943 (2010).

The Pasternack Court held that "this Court has stated on a number of occasions that a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment. This is both consistent with other rules governing fraud claims [internal citations omitted], and logical insofar as the tort of fraud is intended to protect a party from being induced to act or refrain from acting based on false representations—a situation which does not occur

where, as here, the misrepresentations **were not** communicated to, or relied on, by plaintiff. **We, therefore, decline to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff.**" Pasternack, 27 N.Y.3d at 829 (emphasis supplied).

Indeed, the United States District Courts in New York have expressly followed the precedent established by Pasternack. See, Rockaway Beverage, Inc. v. Wells Fargo & Company, 378 F.Supp.3d 150, 2019 WL 1433076, *10 (E.D.N.Y. 2019) (dismissing fraud claim "where, as here, the relevant misrepresentations were not communicated to, or relied on, by the plaintiff"); Tesla Wall Systems, LLC v. Related Companies, L.P., 2018 WL 4360777 at *4 (S.D.N.Y. 2018) (dismissing fraud claim "as the misrepresentation alleged in the complaint was not made to plaintiff and *a fortiori* plaintiff did not rely on it, the allegations in the complaint are facially deficient to state a fraud claim"); Boka v. Shafer, 2016 WL 3866593 at *7 (S.D.N.Y. 2016) (dismissing fraud claim based upon alleged reliance by third party causing injury to plaintiff).

At bar, the Amended Complaint does not contain any allegations that Sater and/or Ridloff communicated any misrepresentations or made material omissions to the Kazakh Entities or that they relied on any such misrepresentations. According to the Amended Complaint, not a single misrepresentation was made to, or relied upon, by the Kazakh Entities.[4] In fact, the Kazakh Entities have conceded that there was absolutely no relationship of any kind between the Kazakh Entities and any of the Moving Defendants, and admitted in a Memorandum of Law submitted in opposition to Sater's motion for a stay pending arbitration that "it is undisputed that the Kazakh

---

[4] The Third Cause of Action focuses only on alleged misrepresentations related to the alleged "Tri-County Mall Scheme," but since this Cause of Action incorporates by reference essentially all of the allegations in the Amended Complaint related to other claim, we discuss such allegations as well.

Entities and their agents had no interaction with Sater prior to the formation of the CAA." See

Doc #91, p.16 (the "Plaintiffs Stay Opposition").[5]

In fact, rather than alleging any communications at all between the Moving Defendants

and Plaintiffs, the Amended Complaint alleges that **ALL** of the misrepresentations were made to

third parties, and **NOT** to Plaintiffs:

- The WHN scheme "was an act of fraud on the United States Immigration Authorities (Am. Cplt., ¶ 133) and "Sater and Ridloff knowingly misrepresented Kudrayashova's involvement in WHN [to U.S. immigration authorities] in order to secure her an investor visa which permitted her to remain in the United States (Am. Cplt., ¶ 133);

- "Sater agreed to present LaMarca as the buyer, while knowing that LaMarca was simply a straw purchaser used to conceal Ilyas and Ablyazov's role in the transaction from French banking and regulatory authorities." (Am. Cplt., ¶ 177);

- "Ridloff, on behalf of TCMI and at Sater's direction, submitted by e-mail a bid package for the purchase of the Note to the Real Estate Advisor (the 'Bid Package')." (Am. Cplt., ¶ 202);

- "The Bid Package was materially false and misleading in multiple respects . . . ." (Cplt, ¶ 203);

- "**The Real Estate Advisor relied** on the Bid Package in critical respects." (Am. Cplt., ¶ 205) (Emphasis Supplied);

- "Sater and Ridloff also submitted false documents to the law firm representing TCMI in the Tri-County deal (the "Real Estate Law Firm')." (Am. Cplt., ¶ 220);

- "Ridloff, at Sater's direction, provided copies of the same Bid Package... to the Real Estate Law Firm." (Am. Cplt., ¶ 221);

- "The Real Estate Law Firm would not have accepted the wire transfers from Telford or RPM USA to fund the Tri-County Deal if the conspirators had disclosed the true nature of the Stolen Funds." (Am. Cplt., ¶ 228);

- "It was Ridloff who personally communicated with the Real Estate Advisor and submitted TCMI's bid." (Am. Cplt. ¶ 237);

---

[5] The "CAA" refers to a Confidential Assistance Agreement executed by Litco LLC, a company wholly owned by Sater and the Plaintiffs, among others, in 2015, years after the events alleged in the Complaint, which CAA is the subject of Sater's motion for a stay pending arbitration.

- "Ridloff, at Sater's direction, caused the false and misleading Bid Package to be sent to the Real Estate Advisor." (Am. Cplt., ¶ 310);

- **"The Real Estate Advisor relied** on the fraudulent Bid Package" (Am. Cplt., ¶ 314) (Emphasis Supplied);

- "Plaintiffs were damaged as a result of this fraudulent Bid Package, as the Real Estate Advisor would not have selected TCMI's bid had the Bid Package truthfully disclosed involvement of the Stolen Funds, and at least $30,800,045 would not have been transferred in violation of the Worldwide Freezing Orders." (Am. Cplt., ¶ 316).

As shown above, since all of the alleged misrepresentations were made to third parties, and none of the alleged misrepresentations were made to or relied upon by the Kazakh Entities, and the Plaintiffs have conceded that the Kazakh entities and their agents had no interactions of any kind with Defendants (see Doc # 91 supra), "the allegations in the Complaint are facially deficient to state a fraud claim." Tesla Wall Systems, supra. It is black letter law that "allegations of third-party reliance . . . are insufficient to make out a common law fraud claim under New York law." Pasternack, 27 N.Y.3d at 827. [6]

---

[6] The Kazakh Entities may try to argue that its fraud claim should survive under the "conduit" exception recognized in Pasternack, where a "third party acted as a conduit to relay the false statement to plaintiff, who then relied on the misrepresentation to his detriment." Pasternack, 27 N.Y.3d at 828. Thus, "[u]nder New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that defendant intended the misrepresentation to be conveyed to him." Nagelberg v. Meli, 299 F.Supp.3d 409 (S.D.N.Y. 2017). However, any such argument is fatally flawed here for at least three reasons: (1) The Kazakh Entities have not alleged that Sater and Ridloff *intended* the misrepresentations to be communicated to the Kazakh Entities by a third party; (2) The Amended Complaint does not allege that any misrepresentations were *actually* communicated to the Kazakh Entities by a third party; and (3) The Kazakh Entities have not alleged that they relied on any such alleged misrepresentations. In fact, Plaintiffs allege that Sater and Ridloff intended that the information it provided to third parties would **not** be communicated to the Kazakh Entities, by alleging that the communications were designed "not to arouse the suspicions of the Kazakh Entities or a class of persons including them." (Am. Cplt., ¶ 315). Accordingly, the "conduit" exception to the rule set forth in Pasternack is inapplicable to the case at bar. See, New York Tile Wholesale Corp. v. Thomas Fatato Realty Corp., 153 A.D.3d 1351, 61 N.Y.S.3d 136 (2d Dep't 2017) (affirming dismissal of fraud claim where "there is no allegation that the [third party] acted as a conduit to relay the alleged misrepresentation to [plaintiff]").

Finally, to the extent that Plaintiffs may argue that they have stated a claim for fraudulent concealment or fraudulent omission, such claim also fails as a matter of law. "A cause of action for fraudulent concealment, requires, in addition to the four foregoing elements (of fraudulent misrepresentation), an allegation that the defendant had a duty to disclose material information and that it failed to do so." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179, 944 N.E.2d 1104, 1108, 919 N.Y.S.2d 465, 469 (2011) (citations omitted) (dismissing claim for fraudulent concealment where "the complaint fails to allege that [defendant] owed a fiduciary duty to [plaintiff]"). Under New York law, a "complaint fails to state a claim for fraudulent omission or concealment, [where] it fails to allege that defendants had a duty to disclose material information to Plaintiffs." Gansett One, LLC v. Husch Blackwell, LLP, 168 A.D.3d 579, 93 N.Y.S.3d 276, 278 (1st Dep't 2019) (dismissing claim for fraudulent concealment). Here, Plaintiffs have failed to allege that any of the Defendants had a duty to disclose anything to any of the Plaintiffs. On the contrary, Plaintiffs have not even alleged any relationship at all between Plaintiffs and Defendants and have admitted that they had no interaction at all with Moving Defendants. (Docket No. 91, p. 16).[7]

---

[7] Plaintiffs made a feeble attempt at establishing a relationship between Sater and the Plaintiffs by adding an allegation in the Amended Complaint that "Sater had been in communication with an investigatory firm since early 2015" and "had been in communication with [Boies Schiller Flexner] concerning Triadou's investments since late 2016." (Am. Cplt., ¶271). However, such general and wholly conclusory allegations fall far short of alleging that Sater, or any of the other Moving Defendants, had a specific duty (fiduciary or otherwise) to disclose anything to Plaintiffs at any time, as necessary to successfully allege a claim for fraudulent omission or fraudulent concealment under New York law. See Mandarin, supra.; Gansett One, supra. Accordingly, any claim that any of the Moving Defendants allegedly took actions to avoid detection or failed to disclose alleged wrongdoing, (i.e Am. Cplt., ¶ 269- "Sater actively concealed from the Kazakh Entities the fact that Sater and Ridloff had received Stolen Funds until March 2017"), fails to state a claim, as there was no duty owed by Sater or Ridloff to make any disclosures and Plaintiffs concede that they had no interaction with Sater and Ridloff.

17

Accordingly, for all of the foregoing reasons, the Third Cause of Action for Fraud against Sater and Ridloff should be dismissed.

**E.     The Fourth Cause of Action for Conversion Is Time Barred and Should Be Dismissed**

The Fourth Cause of Action alleges a claim for conversion against Sater and Ridloff based upon the allegation that they "exercised dominion and control over funds rightfully belonging to the City of Almaty and BTA Bank," (Am. Cplt., ¶ 324) and that "[t]hrough the Tri-County Settlement, Sater and Ridloff reportedly obtained at least $20,000,000 in Stolen Funds . . . ." (Am. Cplt., ¶ 325).

Under New York law, "[a] cause of action alleging conversion is subject to a three year limitations period (See CPLR 214[3]). Accrual runs from the date the conversion takes place… and not from discovery or the exercise of diligence to discover." Obstfeld v. Thermo Niton Analyzers, LLC, 168 A.D.3d 1080, 1083, 93 N.Y.S.3d 338, 341 (2d Dep't 2019) (affirming dismissal of conversion cause of action as time barred), citing Vigilant Ins. Co. of America v. Housing Authority of the City of El Paso, Texas, 87 N.Y.2d 36, 44-45, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995). See Maya NY, LLC v. Hagler, 106 A.D.3d 583, 965 N.Y.S.2d 475 (1st Dep't 2013) (affirming dismissal of cause of action where "the conversion claim is untimely as it was brought more than three years after the cause of action accrued).

At bar, all of the allegations in the Amended Complaint allege that the "Stolen Funds" were transferred into the United States and invested in the various investments during 2012 and 2013. (See e.g. Am. Cplt., ¶¶ 140, 144, 145, 157, 159, 165, 166, 171, 174, 179, 188, 191, 222, 227, 230, 233, 248 and 264). It is beyond dispute that the Fourth Cause of Action for conversion accrued between six and seven years ago, well beyond the three year statute of limitations

applicable to conversion claims under New York law. Vigilant, supra; Obstfeld, supra; Maya NY, supra. Accordingly, the Fourth Cause of Action for Conversion should be dismissed.

## F. The Fifth Cause of Action for Conspiracy Under English Law Should Be Dismissed

Plaintiff's Fifth Cause of Action for 'Unlawful Means Conspiracy' under English Law is completely without merit and should be dismissed. In an obvious attempt to do an end run around applicable New York law, under which the Kazakh Entities have no viable claims, the Kazakh Entities now attempt to concoct a claim under English law, despite the indisputable fact that neither Sater nor Ridloff are alleged to have, or ever had, any contacts whatsoever with the English forum or that they are subject to the orders which the Kazakh Entities allege have been issued by the English courts. The Fifth Cause of Action is plainly without any merit and fails to state any cognizable claims against Sater and Ridloff.

### 1. There is No Basis For the Application of English Law

In determining which jurisdiction's law to apply "New York courts have adopted a flexible choice of law approach and 'seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'" White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) citing Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997). The interest analysis is "flexible" and seeks "to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence of the parties, has the greatest concern with the specific issue raised in the litigation." Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 337 (2d. Cir. 2005) (citation and internal quotation marks omitted). The significant contacts are generally the parties' domiciles and the locus of the tort. Cromer Finance Ltd. v. Berger, 137 F.Supp.2d 452 (S.D.N.Y. 2001).

The Second Circuit has held that "[a] tort's locus—also known as the *locus delicti,* or 'place of wrong'—is the place 'where the last event necessary to make an actor liable for an alleged tort takes place.'" Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC, 813 F.3d 98, 109 (2d Cir. 2016) citing to Restatement of Conflict of Laws § 377 (1934).

The Second Circuit has stated further that, "[s]ince a tort action traditionally has not been viewed as complete until the plaintiff suffers injury or loss," the cause of action has generally "been considered to arise at the place where this damage was sustained." Atlantica Holdings, 813 F.3d at 109. Thus, a determination that a tort's locus is the United States is, in effect, often a determination that the plaintiff has been injured in this country by the defendant's tortious actions—meaning that those actions caused a "direct effect" (the plaintiff's injury) in this country. Atlantica Holdings, 813 F.3d at 109.

In particular, for claims based on fraud, a court's "paramount" concern is the locus of the fraud, that is, "'the place where the injury was inflicted,' as opposed to the place where the fraudulent act originated." Rosenberg v. Pillsbury Co., 718 F.Supp. 1146, 1150 (S.D.N.Y. 1989) (citing Sack v. Low, 478 F.2d 360, 365–66 (2d Cir. 1973) (interpreting New York law)). The place in which the injury is deemed to have occurred "is usually where the plaintiff is located." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 292 (S.D.N.Y. 2000).

At bar, according to the allegations in the Amended Complaint, it is clear that none of the alleged acts taken by Sater and Ridloff took place in England. It is also equally clear that neither the "fraudulent act originated," nor the "place where the injury was inflicted," nor "the place where the damage was sustained" by Plaintiffs, was in England. Atlantic Holdings, supra.; Rosenberg, supra.; Odyssey Re (London), supra. And it is beyond dispute that the domicile and/or location of Plaintiffs is not in England. Simply put, under the New York conflicts of laws

analysis, the Amended Complaint is completely devoid of any allegations which would support the application of English law to the "unlawful means conspiracy" claim alleged in the Fifth Cause of Action. Accordingly, there is no basis for this Court to apply the laws of England, and even if the Court were to apply such law, as explained below, the claim for 'Conspiracy Under English Law" cannot be sustained as a matter of law.

## 2. The Kazakh Entities Cannot Prosecute Alleged Criminal Activity Under U.S. Law

The Kazakh Entities' Fifth Cause of Action is predicated on their baseless assertion that they supposedly have standing to "to hold the Defendants responsible for their illegal conduct in the United States in violation of U.S. law" (Am. Cplt., ¶ 286) and that Sater and Ridloff allegedly "violate[d] numerous U.S. federal criminal laws" (Am. Cplt., ¶ 341). Indeed, the Kazakh Entities go to great lengths to cite to a multitude of criminal statutes they claim Sater and Ridloff violated (Am. Cplt., ¶¶ 341-354). However, the Kazakh Entities "identify no statutory basis for a private right of action under the alleged criminal statutes." Jones v. Connecticut Superior Court, 722 Fed.Appx. 109, 110 (Summary Order) (2d Cir. 2018) (affirming dismissal of private cause of action based, in part, on alleged violation of criminal statute). It is well established law in this country that there is "no private action under criminal statutes absent clear statutory basis for such inference." Id. (citations omitted). [8] "In American jurisprudence, at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution

---

[8] None of the criminal statutes cited by the Kazakh Entities in the Fifth Cause of Action in the Amended Complaint create a private right of action that can be asserted in a civil proceeding by private citizens. See, 18 U.S.C. §1343 (Am. Cplt., ¶ 342); 18 U.S.C. §1349 (Am. Cplt., ¶ 343); 18 U.S.C. §371 (Am. Cplt., ¶ 346); 18 U.S.C. §1546 (Am. Cplt., ¶ 347); 18 U.S.C. §1956 (Am. Cplt., ¶ 349);18 U.S.C. §1957 (Am. Cplt., ¶ 351) and 18 U.S.C. §1956 (c) (Am. Cplt., ¶¶ 351-354)

of another." <u>Linda R.S. v. Richard D.</u>, 35 L.Ed.2d 536, 93 S.Ct. 1146, 1150, 410 U.S. 614, 619 (1973).

Accordingly, since the Kazakh Entities have not alleged any basis for asserting a private right of action based upon the alleged violation by Sater and Ridloff of the criminal statutes cited in the Amended Complaint, it is clear that these allegations cannot form the basis for any claims against Sater and Ridloff. These allegations are nothing more than a cheap and transparent ploy by the Kazakh Entities to slander and malign Sater and Ridloff.

Furthermore, the Amended Complaint does not allege that any criminal proceedings have ever been commenced against Sater or Ridloff in connection with the allegations in the Amended Complaint (they haven't been), and certainly does not allege that either of Sater or Ridloff have been found guilty of violating any of the alleged criminal statutes or been convicted of any of the crimes alleged by the Kazakh Entities in the Amended Complaint. Neither the Kazakh Entities *nor their counsel,* who are effectively private citizens, are empowered to prosecute a criminal proceeding on behalf of the United States Government or any other governmental authority. <u>See,</u> <u>Jones, supra;</u> <u>Linda R.S., supra.</u>

The sheer gall of the Kazakh Entities and their counsel to suggest that they are somehow empowered to prosecute and obtain a criminal conviction of Sater and Ridloff on behalf of the United States Government is offensive and presumptuous. Since the Kazakh Entities cannot prosecute or convict Sater and Ridloff which, by their own Amended Complaint is a predicate for liability under the alleged English tort of "conspiracy," the Fifth Cause of Action also fails as a matter of law and should be dismissed.

### 3. The Fifth Cause of Action Is Facially Deficient

The Amended Complaint is completely devoid of any allegations from which this Court could conclude that the alleged orders of a foreign court in proceedings as to which Sater and

22

Ridloff were admittedly not parties, are somehow binding on Sater and Ridloff. The Kazakh Entities make a passing reference to a provision of an alleged order issued by a court in England (the "English Court") that "[i]t is a contempt of court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined or have their assets seized." (Am. Cplt., ¶ 40). However, the Amended Complaint conspicuously fails to allege (i) that Sater and Ridloff were *ever* served with a copy of this alleged order, or notified of such order, and certainly not prior to the events of 2012 and 2013 alleged in the Amended Complaint, or (ii) that any proceeding was ever commenced before the English Court to find Sater and Ridloff in "contempt" of such order.

Simply put, there is no allegation that the English Court has determined that Sater and Ridloff violated any such order or were in contempt of the English Court or had engaged in any other "unlawful activity" necessary to establish any liability under the alleged English tort of conspiracy. As explained above, English Law does not apply and there can be no liability of Sater and Ridloff for "unlawful means conspiracy." And, even if English law could apply, the Amended Complaint fails to allege the elements which are a predicate for liability under the alleged orders.

In sum, the Kazakh Entities have obviously asserted a claim under English law because none of their other claims are viable under New York law. The Kazakh Entities are grasping at straws to create causes of action against Sater and Ridloff where no such causes of action exist.[9]

---

[9]We also note that there is no viable claim under New York Law for conspiracy. *See* Legion Lighting Co. Inc. v. Switzer Group, Inc. 171 A.D.2d 472, 567 N.Y.S.2d 52 (1ˢᵗ Dep't 1991 (holding that "civil conspiracy causes of action are not cognizable under New York law." (citations omitted). See also, Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) ("in New York there is no substantive tort of civil conspiracy"). Thus, "[w]hile a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit fraud or tort is not, of itself, a cause of action." Hoeffner v. Orrick, Herrington & Sutcliffe LLP, 85 A.D.3d 457, 458, 924 N.Y.S.2d 376, 377 (1ˢᵗ Dep't 2011).

The Court should firmly reject the Kazakh Entities' desperate attempts to concoct claims against Sater and Ridloff, which claims are not legally viable. The Fifth Cause of Action for Conspiracy Under English Law should be dismissed.

### 4. The Claim Under English Law is Time Barred.

Although as indicated above, there is no claim under English Law, among other things, because English Law does not apply,[10] if a claim under English Law can be stated, which Sater and Ridloff dispute, to the extent that such claim relates to actions taken prior to six years from the date this action was commenced, the claim is time barred. Under England's Limitation Act of 1980 (2) (1980, Ch 58), claims grounded in tort are governed by a six year limitation. Here, the Amended Complaint alleges that Sater "joined the conspiracy no later than early 2012" and Ridloff "no later than June, 2012" (Am. Cplt., ¶¶ 336, 337). Accordingly, since the conspiracy is alleged to have been entered into more than six years prior to the commencement of the action, any such claim under English law, is time barred.

---

[10] Furthermore, in cases where a conflict exists between the law of two different jurisdictions, "when the tortfeasors conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed on him under the tort law of the state of the victim's domicile." Bullock v. Caesars Entertainment Corp., 83 F.Supp.3d 420, 423 (E.D.N.Y., 2015). Here, the fact that Defendants cannot be held liable for "conspiracy" under New York law, means that Plaintiffs cannot elect the law of England to salvage a conspiracy claim which is not viable in New York.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the accompanying Levi Aff, we respectfully request that the Motion be granted in its entirety, together with such other relief as the Court deems just and proper, including an award to the Moving Defendants of costs and expenses.

Dated: New York, New York
October 11, 2019

TODD & LEVI, LLP

By: /s/ Jill Levi
Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400

Attorneys for Defendants
Felix Sater, Daniel Ridloff, Bayrock Group
Inc., Global Habitat Solutions, Inc. and
RRMI-DR LLC