UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CITY OF ALMATY, KAZAKHSTAN and
BTA BANK, JSC,

                                Plaintiffs,

            -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK
GROUP INC., GLOBAL HABITAT SOLUTIONS,
INC., RRMI-DR LLC, FERRARI HOLDINGS
LLC, and MEM ENERGY PARTNERS LLC,

                                Defendants.
-------------------------------------------------------------X

Case No. 19-civ-02645 (AJN) (KHP)

## REPLY MEMORANDUM OF LAW OF DEFENDANTS FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC. AND RRMI-DR LLC IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

TODD & LEVI, LLP

Jill Levi
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
Tel: (212) 308-7400

Attorneys for Defendants
Felix Sater, Daniel Ridloff,
Babyrock Group, Inc., Global Habitat
Solutions, Inc. and RRMI-DR, LLC

# **TABLE OF CONTENTS**

ARGUMENT ................................................................. 1

    A.    The First Claim for Unjust Enrichment Should Be Dismissed ................ 1

        1.    The Unjust Enrichment Claim is Time Barred ..................... 1

        2.    The Unjust Enrichment Claim Also Fails as a Matter of Law ......... 4

    B.    The Fraud Claim Should Be Dismissed ................................ 5

    C.    The Conversion Claim Should Be Dismissed ........................... 9

    D.    The English "Unlawful Means Conspiracy" Claim
        Should Be Dismissed ............................................. 10

CONCLUSION ............................................................. 11

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                           **Page(s)**

Amusement Industries, Inc. v. Midland Avenue Associates, LLC,
    820 F.Supp.2d 510 (S.D.N.Y. 2011) .................................... 4

Burton v. Iyogi, Inc.,
    2015 WL 4385665 (S.D.N.Y. 2015) ...................................... 3

Carlingford Ctr. Point Assocs. V. MR Realty Assocs. L.P.,
    772 N.Y.S.2d 273 (App.Div.2004) ....................................... 3

Cohen v. Dunne,
    2017 WL 4516820 (S.D.N.Y. 2017) ...................................... 3

Cooper v. Parsky,
    140 F.3d 433 (2d Cir. 1998) ............................................. 3

Corsello v. Verizon New York, Inc.,
    18 N.Y.3d 777, 967 N.E.2d 1177 (2012) ................................. 9

CPS International, Inc. v. Dresser Industries, Inc.,
    911 S.W.2d 18 (Ct.App.Tx 1995) ....................................... 10

Credit Alliance Corp. v. Arthur Andersen & Co.,
    493 N.Y.S.2d 435 N.E.2d 110 (1985) .................................... 7

De Sole v. Knoedler Gallery, LLC,
    137 F.Supp.3d 387 (S.D.N.Y. 2015) .................................. 9, 10

Fezzani v. Bear Stearns,
    2004 WL 1781148 (S.D.N.Y. 2004) .................................... 2, 3

Gansett One, LLC v. Husch Blackwell, LLP,
    168 A.D.3d 579, 93 N.Y.S.3d 276 (1st Dep't 2019) ....................... 8

Golden Pacific Bancorp v. FDIC,
    273 F.3d 509 (2d Cir. 2001) .......................................... 2, 3

Granite Partners L.P. v. Bear, Sterns & Co. Inc.,
    17 F.Supp.2d 275 (S.D.N.Y. 1998) .................................... 5

Grynberg v. Eni S.p.A.
    2007 WL 2584727 (S.D. N.Y. 2007) .................................. 3

In re Windsor Plumbing Supply Co., Inc.,
    170 B.R. 503 (Bankr. E.D.N.Y. 1994) ................................. 7

Jenny Yoo Collection, Inc. v. Watters Design Inc.,
    2017 WL 4997838 (S.D.N.Y. 2017) .................................. 5

Kermanshah v. Kermanshah,
    580 F.Supp.2d 247 (S.D.N.Y. 2008) ............................... 1, 2

Loengard v. Santa Fe Indus., Inc.,
    514 N.E.2d 113 (N.Y.1987 ........................................ 2, 3

M & T Mortg. Corp. V. White,
    736 F.Supp.2d 538 (E.D.N.Y. 2010) .................................. 8

Mandarin Trading Ltd. v. Wildenstein,
    16 N.Y.3d 173, 944 N.E.2d 1104 (2011) ............................ 5, 8

Merced Irrigation District v. Barclays Bank PLC,
    165 F.Supp.3d 122 (S.D.N.Y. 2016) .................................. 5

Moss v. BMO Harris Bank, N.A.,
    258 F.Supp.3d 289 (S.D.N.Y. 2017) .................................. 4

Nagelberg v. Meli,
    299 F.Supp.3d 409 (S.D.N.Y. 2017) .................................. 6

New York Tile Wholesale Corp. v. Thomas Fatato Realty Corp.,
    153 A.D.3d 1351, 61 N.Y.S.3d 136 (2d Dep't 2017) ..................... 7

Northern Tankers (Cyprus) Ltd v. Backstrom,
    934 F.Supp. 33 (D.Conn. 1996) ..................................... 10

Padula v. Lilarn Properties Corp.,
       84 N.Y.2d 519, 644 N.E.2d 1001 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pasternak v. Laboratory Corp of Am. Holdings,
       27 N.Y.3d 817, 59 N.E.3d 485 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Sejin Precision Industry Co., Ltd. V. Citibank, N.A.,
       235 F.Supp.3d 542 (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

C.P.L.R. 213(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
C.P.L.R. 214(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Defendants Felix Sater, Daniel Ridloff, Bayrock Group Inc., Global Habitat Solutions, Inc. and RRMI-DR LLC (collectively "Defendants") respectfully submit this Reply Memorandum of Law in (i) response to the Kazakh Entities' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the First Amended Complaint (the "Opp Mem") and (ii) further support of the Defendants' dismissal motion (the "Motion").[1]

## ARGUMENT

### A. The First Claim for Unjust Enrichment Should Be Dismissed

#### 1. The Unjust Enrichment Claim is Time Barred

In response to the Motion, the Kazakh Entities cite to a random group of cases in support of their contention that the applicable statute of limitations for their unjust enrichment claim is six years, not three. The Kazakh Entities are wrong, and the cases upon which they rely do not support the application of a six-year statute of limitations.

The Kazakh Entities cite to Kermanshah v. Kermanshah, 580 F.Supp.2d 247 (S.D.N.Y. 2008), for the proposition that "New York's statute of limitations for unjust enrichment is six years..." (Opp Mem, p.28). However, the Court in Kermanshah applied the six-year limitations period because the unjust enrichment claim sought equitable relief, namely an accounting. In fact, Kermanshah actually supports the application of a three-year statute of limitations, as the Court specifically held that "the unjust enrichment limitations period, however, is three years if plaintiff seeks monetary damages." Kermanshah, 580 F.Supp.2d at 264. At bar, the Kazakh Entities concede that they are seeking monetary damages, namely the recovery of $20 million

---

[1] Unless otherwise defined herein, all defined terms used herein shall be used as defined in Sater's Moving Memorandum of Law (the "Moving Mem").

allegedly transferred to various defendants and as such, the limitations period is "three years." Id.

Despite the explicit holding in Kermanshah, the Kazakh Entities argue (Opp. Mem at 29), that there is a split in authority in the New York appellate courts regarding the applicable statute of limitation for unjust enrichment claims, largely relying on the decision in Golden Pacific Bancorp v. FDIC, 273 F.3d 509 (2d Cir. 2001). The Kazakh Entities' argument is misguided and wrong. In Golden Pacific, the Second Circuit held that "the statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is **generally** six years." Golden Pacific, 273 F.3d at 518 (emphasis supplied). Golden Pacific did not address the history of New York decisions which apply a three year statute when monetary relief is sought, because the Court was considering claims based on breach of breach of fiduciary duty which sought, among other things, equitable relief to which the six year statute applied.

And more importantly, subsequent cases recognize that Golden Pacific is limited to claims seeking equitable relief based upon breach of fiduciary duties. As aptly explained in Fezzani v. Bear Stearns, 2004 WL 1781148 (S.D.N.Y. 2004):

> [Plaintiffs] argue in their reply that the Court overlooked the controlling precedent of Golden Pacific Bank Corp. v. FDIC, 273 F.3d 509 (2d Cir.2001). (internal citations omitted). In Golden Pacific the Second Circuit noted, "The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years." Id. at 518. The statutory provision that the Second Circuit cited in coming to this conclusion states in relevant part, "The following must be commenced within six years: 1. an action for which no limitation is specifically prescribed by law...." N.Y. C.P.L.R. 213(1). However, Golden Pacific is not controlling here because C.P.L.R. 213(1) only governs claims for breach of fiduciary duties when the plaintiff is seeking equitable, not monetary, relief. See Loengard v. Santa Fe. Indus., Inc., 514 N.E.2d 113 (N.Y.1987).

2

> In Loengard, a case on which the Golden Pacific court relied, the Second Circuit certified to the New York Court of Appeals the question whether claims for unjust enrichment from a breach of fiduciary duty were governed by a six-year statute of limitations under C.P.L.R. 214(4) or a three-year limitations period under C.P.L.R. 213(1).2 See id. at 114. The Court of Appeals first stated, "We have held that the choice of the applicable Statute of Limitations depends on the substantive remedy which the plaintiff seeks." Id. at 115.
>
> \*      \*      \*
>
> The Court of Appeals held that the plaintiffs sought equitable relief and therefore the six-year statute of limitations applied rather than the three-year period. See Id.; see also Carlingford Ctr. Point Assocs. v. MR Realty Assocs, L.P., 772 N.Y.S.2d 273, 274 (App.Div.2004) ("A breach of fiduciary duty claim is governed by either a three-year or six-year limitation period, depending on the nature of the relief sought.... The shorter time period applies where monetary relief is sought, the longer where the relief sought is equitable in nature....").
>
> The Second Circuit has recognized that a six-year statute of limitations only controls claims for breach of fiduciary duties seeking equitable relief. See Cooper v. Parsky, 140 F.3d 433, 440-41 (2d Cir.1998). . . . When the court in Golden Pacific noted that the New York statute of limitations on claims for breach of fiduciary duty is "generally" six-years, it was speaking of claims for equitable remedies consistent with Loengard, which it cited, and with its earlier decision in Cooper. See Golden Pacific, 273 F.3d at 518.

Fezzani v. Bear, Stearns and Co., Inc., 2004 WL 1781148 at *2-3.

Accordingly, not only is Golden Pacific inapposite, but the New York Court of Appeals case upon which it relies, Loengard v. Santa Fe. Indus., Inc., 80 N.Y.2d 262 (1987), explicitly recognized that "the choice of the applicable Statute of Limitations depends on the substantive remedy which the plaintiff seeks." Loengard, 519 N.Y.S.2d at 803. See also, Burton v. Iyogi, Inc., 2015 WL 4385665, *6 (S.D.N.Y. 2015) ("For an unjust enrichment claim, the applicable statute of limitations depends on the nature of the substantive remedy which the plaintiff seeks. The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages."); Grynberg v. Eni S.p.A., 2007 WL 2584727 (S.D.N.Y. 2007); Cohen v. Dunne, 2017 WL 4516820 (S.D.N.Y. 2017).

3

### 2. The Unjust Enrichment Claim Also Fails as a Matter of Law

The Kazakh Entities also argue that they have alleged a sufficient relationship with the Defendants that is not too attenuated to support a claim for unjust enrichment, primarily relying on Amusement Industries, Inc. v. Midland Avenue Associates, LLC, 820 F.Supp.2d 510 (S.D.N.Y. 2011). However, this argument is misguided and Amusement is distinguishable.

In Amusement, the Court held that the relationship of the parties was not "too attenuated" because the defendants were alleged to have wrongfully taken specific monies from an escrow account into which the plaintiffs had deposited the funds, and that defendants knew the funds they had taken from the escrow account were the specific monies plaintiffs deposited. Thus, the relationship between the parties was not *too attenuated* because the funds were taken *directly* from an escrow account established to hold Plaintiffs' funds. Amusement, 820 F.Supp.2d at 521-522. Similarly, in Moss v. BMO Harris Bank, N.A., 258 F.Supp.3d 289, 311 (S.D.N.Y. 2017), the court denied a motion to dismiss based upon the plaintiff's allegation that the money was transferred to defendants directly "from her own funds." At bar, the monies allegedly received by the Defendants did not come directly from an escrow account holding the Kazakh Entities' funds, or from any other account held in the name of, or for the benefit of, the Kazakh Entities. To the contrary, at bar, the Kazakh Entities specifically allege that *all* of the monies were directly transferred to the Defendants from **other** entities, including Vilder (Am. Cplt ¶140), Adlux (Am. Cplt ¶145), RPM USA (Am. Cplt ¶150), Adlux (Am. Cplt ¶188), and Telford (Am. Cplt ¶222). Even more significantly, there is not a single allegation that any of the monies allegedly received by Defendants came directly from the Kazakh Entities or any account belonging to the Kazakh Entities, or any funds held in escrow for the Kazakh Entities, or that there was any relationship of any kind between the Kazakh Entities and Defendants. Under such circumstances, the Kazakh

Entities have clearly failed to allege a relationship that is not "too attenuated." Indeed, the Kazakh Entities have failed to allege any relationship at all.

Furthermore, any argument that there is no necessity of *any* relationship between the Kazakh Entities and Defendants (Opp Mem, p.19) to support a claim for unjust enrichment, is unsupportable.[2] Indeed, numerous Courts have held that although *privity* is not needed, there still must be some relationship between the parties to support such a claim. See Merced Irrigation District v. Barclays Bank PLC, 165 F.Supp.3d 122, 146 (S.D.N.Y. 2016) ("Under New York law, there is no requirement that the aggrieved party be in privity with the party enriched at his or her expense, but an unjust enrichment claim requires some type of direct dealing or actual substantive relationship with a defendant"); Jenny Yoo Collection, Inc. v. Watters Design Inc., 2017 WL 4997838, *11 (S.D.N.Y. 2017) ("an unjust enrichment claim requires some type of direct dealing or actual substantive relationship").

**B.     The Fraud Claim Should Be Dismissed**

As for the fraud claim, the Kazakh Entities do not argue that the decisions in Pasternak v. Laboratory Corp of Am. Holdings, 27 N.Y.3d 817, 59 N.E.3d 485 (2016) and Mandarin Trading Ltd v. Wildenstein, 16 N.Y.3d 173, 944 N.E.2d 1104 (2011) are not controlling law. Instead, they argue that this Court should expand the rationale employed by the Courts in those seminal decisions, without any basis in law or fact, to encompass the facts and circumstances pleaded in the Amended Complaint. The Kazakh Entities argue that a fraud claim should be expanded to include misrepresentations made to a third party that were never communicated to the Kazakh

---

[2] The Kazakh Entities cite to Granite Partners L.P. v. Bear, Sterns & Co. Inc., 17 F.Supp.2d 275, 313 (S.D.N.Y. 1998), which case is inapposite. In Granite, the unjust enrichment claim was dismissed, among other things, because the parties had a contractual relationship and because plaintiff had no right to the monies claimed.

5

Entities and where such third parties have absolutely no relation to the Kazakh Entities. (Opp Mem pp. 25-27). As explained below, the Kazakh Entities' arguments are not supported by governing law.

The Kazakh Entities intentionally obfuscate two different and distinct theories of fraud—one based upon alleged fraudulent misrepresentation and a second based upon alleged fraudulent concealment. Neither theory of fraud is legally viable under the facts at bar.

With respect to a claim based upon an alleged fraudulent misrepresentation, the Kazakh Entities concede that a claim based upon a fraudulent misrepresentation made to someone other than the Kazakh Entities can only be sustained in limited circumstance where the third party acted as a "conduit" to relay the false statement to Plaintiffs. (Opp Mem, p.26). Such a claim can **only** survive "where a third party acted as a conduit to relay the false statement to plaintiff, who then relied upon the misrepresentation to his detriment." Pasternak, 27 N.Y.3d at 828. Thus, "[u]nder New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that defendant intended the misrepresentation to be conveyed to him." Nagelberg v. Meli, 299 F.Supp.3d 409, 414 (S.D.N.Y. 2017).

However, there is absolutely no allegation that any misrepresentations were *actually* communicated to the Kazakh Entities by a third party or that the Kazakh Entities relied on any such alleged misrepresentations. The Kazakh Entities only argue that the real estate advisor relied on the alleged misrepresentation, but never allege that any misrepresentation was communicated to the Kazakh Entities (Opp Mem p. 23-24). Accordingly, the "conduit" exception to the rule set forth in Pasternack is inapplicable. See also, New York Tile Wholesale Corp. v. Thomas Fatato Realty Corp., 153 A.D.3d 1351, 1354, 61 N.Y.S.3d 136 (2d Dep't 2017)

6

(affirming dismissal of fraud claim where "there is no allegation that the [third party] acted as a conduit to relay the alleged misrepresentation to [plaintiff]").

The Kazakh Entities also cite to In re Windsor Plumbing Supply Co., Inc., 170 B.R. 503 (Bankr. E.D.N.Y. 1994), to expand their fraud claim to include misrepresentations made to a third party that were never communicated to the Kazakh Entities or communicated to third parties having absolutely no relation to the Kazakh Entities. Windsor Plumbing does not support this theory. First, in Windsor Plumbing, the allegedly fraudulent financial statements upon which plaintiff based its fraud claim were *actually received* by the plaintiff, unlike at bar, where none of the alleged misrepresentations were *actually communicated* to the Kazakh Entities. Second, notwithstanding that the allegedly false representations were actually received by plaintiff in Windsor Plumbing, the Court still dismissed the fraud claim because there was no evidence that the defendants intended to deceive the plaintiff. Third, in the seminal New York Court of Appeals case upon which Windsor Plumbing relies, Credit Alliance Corp. v. Arthur Andersen & Co., 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), both the fraud and negligence claims that were based upon misrepresentations to a third party were dismissed because "there [was] no allegation that [defendant] had any direct dealings with plaintiff, had specifically agreed with [a third party] to prepare the report for plaintiff's use. . . or had specifically agreed with [third party] to provide plaintiffs with a copy or actually did so." Id., 493 N.Y.S.2d at 444. Similarly, at bar, there is no allegation that the Kazakh Entities had any direct dealings with Defendants, or even any allegation that the real estate advisor had any dealings or communications with the Kazakh Entities. In fact, it is undisputed that the Kazakh Entities had no relationship, dealings or contact of any kind with the real estate adviser or Defendants.

7

Perhaps realizing that the fraud claim is fatally flawed, as the "conduit" exception does not apply, the Kazakh Entities concoct a claim based upon fraudulent concealment. (Opp Mem. at p. 27). However, "a cause of action for fraudulent concealment, requires, in addition to the four foregoing elements (of fraudulent misrepresentation), an allegation that the defendant had a duty to disclose material information and that it failed to do so." Mandarin Trading, 919 N.Y.S.2d at 469 (citations omitted). Under New York law, a "complaint fails to state a claim for fraudulent omission or concealment, [where] it fails to allege that defendants had a duty to disclose material information to Plaintiffs." Gansett One, LLC v. Husch Blackwell, LLP, 168 A.D.3d 579, 93 N.Y.S.3d 276, 278 (1st Dep't 2019) (dismissing claim for fraudulent concealment). At bar, there is no alleged duty owed by Defendants to the Kazakh Entities and in fact, the Kazakh Entities concede that they had no interaction with Defendants. (Docket No. 91, p. 16). Instead, they baldly argue that Defendants had a duty to the real estate advisor,[3] but conspicuously missing from the Amended Complaint is any allegation that there was any relationship, communication or contact between the real estate advisor and the Kazakh Entities (there was none) or that the real estate advisor had any duty to forward the Bid Package to the Kazakh Entities (there was no such duty or reason).

Plaintiffs have failed to cite to a single case where a fraud claim was predicated on an alleged omission made to a third party who had no communication or relationship with, let alone a duty to, the alleged victim of the fraud. The alleged fraud claim is not viable under applicable

---

[3] Defendants cannot owe a duty to the real estate advisor because the allegations in the Amended Complaint establish only an arm's length transaction, which cannot create the special duty necessary for establishing a fraudulent concealment claim. See M & T Mortg. Corp. v. White, 736 F.Supp.2d 538 (E.D.N.Y. 2010). In any event, any duty owed to the real estate advisor is irrelevant, because it is undisputed that no person or entity owed any duty *to the Plaintiffs*.

8

law. The Kazakh Entities simply had no connection to any fraud allegedly committed by Defendants.

### C. The Conversion Claim Should Be Dismissed

The Kazakh Entities argue that the statute of limitations on its conversion claim should be equitably tolled based entirely on its fraud claim against Sater and Ridloff. (Opp Mem at p.33-35). However, "[t]o benefit from the equitable tolling doctrine under New York law, a plaintiff must establish that subsequent and specific actions were taken by defendants, separate from those that provide the factual basis for the underlying cause of action, and that these subsequent actions by defendants somehow kept plaintiff from timely bringing suit." De Sole v. Knoedler Gallery, LLC, 137 F.Supp.3d 387, 424 (S.D.N.Y. 2015), citing Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 789, 967 N.E.2d 1177 (2012). Thus, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." Sejin Precision Industry Co., Ltd. v. Citibank, N.A., 235 F.Supp.3d 542, 553 (S.D.N.Y. 2016). In addition, "where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, New York courts have held that the defendants were not estopped from pleading a statute of limitations defense." De Sole, 137 F. Supp at 387.

At bar, the Kazakh Entities' argument for equitable tolling, based on the underlying fraud allegations, is insufficient because it provides no factual basis separate and subsequent from the underlying claims and because they have failed to allege any duty whatsoever which could form the basis of a fraudulent concealment claim.[4] Accordingly, there is no basis for equitable tolling

---

[4] Moreover, the Kazakh Entities concede that they had knowledge of these claims at least back in 2017, yet they waited another two years to bring the conversion claim. (Opp Mem at p. 34).

9

of the conversion claim based upon fraud claims which are not viable.

Furthermore, all of the allegations upon which the Kazakh Entities' rely for equitable tolling allege only that Sater and Ridloff failed to disclose their own wrongdoing. Failure to disclose one's alleged wrongdoings, without more, is insufficient to invoke the doctrine of equitable tolling "[b]ecause mere silence or failure to disclose the wrongdoing is insufficient." De Sole, 137 F.Supp at 387. The unjust enrichment claim must be dismissed as it is time barred.

### D.  The English "Unlawful Means Conspiracy" Claim Should Be Dismissed

The Kazakh Entities' entire argument to salvage their legally defective Unlawful Means Conspiracy claim under English law is based upon their tortured analysis of New York choice of law rules and their claim that the "tort occurred" in England. (Opp Mem, p.36-37). Despite the their citation to case law on the general choice of law rules in New York, see Padula v. Lilarn Properties Corp, 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1003 (1994) ("the law of the jurisdiction where the tort occurred should apply"), the Kazakh Entities fail to provide any cogent analysis for their conclusion that the "tort occurred" in England. The Kazakh Entities fail to allege that any actions were taken by Defendants in England, that any of the parties are domiciled in England, or that any losses or damages were sustained in England. Simply stated, no tort occurred in England. And, the cases cited by the Kazakh Entities do not support their argument.

For example, In Northern Tankers (Cyprus) Ltd v. Backstrom, 934 F.Supp. 33 (D.Conn. 1996), the Court applied foreign law because plaintiff suffered damages in the foreign state. Similarly, in CPS International, Inc. v. Dresser Industries, Inc., 911 S.W.2d 18 (Ct.App.Tx. 1995), the foreign law applied because the tortious conduct was directed at Saudi Arabia, and the damages were incurred by the plaintiff in Saudi Arabia. Here, English law does not apply and the Unlawful Means Conspiracy claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Motion be granted in its entirety, together with such other relief as the Court deems just and proper.

Dated: New York, New York
December 3, 2019

                                        TODD & LEVI, LLP

                                        By: _____
                                        Jill Levi
                                        David Rosenberg
                                        444 Madison Avenue, Suite 1202
                                        New York, New York 10022
                                        Tel: (212) 308-7400

                                        Attorneys for Defendants
                                        Felix Sater, Daniel Ridloff, Bayrock Group
                                        Inc., Global Habitat Solutions, Inc. and
                                        RRMI-DR LLC