2

J64WcitC1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CITY OF ALMATY, KAZAKHSTAN,
     et al.,
4
                    Plaintiffs,
5
            v.                              19 Civ. 2645 (AJN)(KHP)
6
     FELIX SATER,
7    et al.,

8                   Defendants.
                                           Conference
9    ------------------------------x
                                           New York, N.Y.
10                                         June 4, 2019
                                           2:30 p.m.
11
     Before:
12
                      HON. KATHARINE H. PARKER,
13
                                       U.S. Magistrate Judge
14

15                      APPEARANCES

16   BOIES SCHILLER FLEXNER LLP
            Attorneys for Plaintiffs
17   BY:  MATTHEW L. SCHWARTZ
          CRAIG A. WENNER
18
     TODD & LEVI LLP
19          Attorneys for Defendants Sater, Ridloff,
            Bayrock Group, Global Habitat Solutions and RRMI-DR
20   BY:  DAVID B. ROSENBERG

21   MICHAEL S. HORN
            Attorney for Defendant Ferrari Holdings
22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

J64WcitC1

1          (Case called; appearances noted)

2          THE COURT:  Good afternoon.  We are here for an

3     initial case management conference, and you'll see that I

4     scheduled this case at the same time as the pending case that

5     the plaintiffs have against some other defendants.  I do

6     believe there is some overlap in the cases so I thought it made

7     sense to schedule the cases together, and we can talk about

8     that overlap today.

9          First, I guess I'd like to hear from plaintiffs about

10    how you view the claims to overlap and also whether discovery

11    in the pending case can be used in this case.

12         MR. SCHWARTZ:  Thank you, your Honor.

13         As you're aware from reviewing the complaints, there

14    is a degree of factual overlap insofar as this case and the

15    related case that you'll hear next.  Both deal with moneys that

16    were stolen in Kazakhstan from our clients and laundered into

17    the United States and in some cases the exact same flow of

18    funds.

19         Your Honor has put your finger on an issue that we

20    have been discussing amongst all the parties, which is that

21    while certainly there is discovery that will be unique to this

22    case, a lot of it is not.  We have spent a long time litigating

23    the other case, collecting documents, in order to prove our

24    claims and demonstrate the movement of money, and so we have

25    been discussing with all of the parties how to efficiently

J64WcitC1

1    exchange information.

2            The impediment, which we are working through, is the

3    protective order that exists in the related case, which

4    contains a provision that the defendants have requested saying

5    that confidential discovery material can be used only in that

6    related case.  And let me be clear, as I have been clear to the

7    defendants, we have absolutely honored that provision in the

8    order.  We honored that and did not rely on the confidential

9    discovery material in framing our allegations in this case.

10   We, in fact, had a clean team that framed the allegations based

11   solely upon nonconfidential material in the first instance.

12   But having filed the case, we know that if we were the

13   defendants, we would ask for some of the same material and as

14   plaintiffs we would ask for some of the same material, and

15   rather than going again to third parties, some of whom are

16   overseas, we would like to capitalize on the efficiencies of

17   simply producing what we have already collected to the

18   defendants here.

19           Likewise, we suspect that the defendants in the other

20   case, to the extent that material that is produced from these

21   defendants is responsive to discovery requests to our subpoenas

22   issued in the other case, might want to receive that as a

23   supplementation under our continuing discovery obligations; for

24   example, Triadou served a subpoena on Felix seder.  He produced

25   some documents, not a whole lot of documents, and it may be

J64WcitC1

1    that those were all the documents that he has, and that would

2    be fine.  But it may be that now that he's a party to the case,

3    he'll conduct a more thorough kind of review and produce

4    documents that are responsive to that subpoena, and we would

5    want to produce those in the interest of completeness.

6         And so the proposal that we've brought to everyone is

7    let's simply bring everyone under the single order and just

8    change that one provision from "this case" to "these cases" and

9    put a double caption on it.  We brought that first to the

10   defendants in the other case, because they were the ones who

11   have designated the material confidential.  Mr. Ablyazov had

12   not designated any material confidential.

13        THE COURT:  He didn't produce any documents.

14        MR. SCHWARTZ:  He did not, but he also did not

15   designate his deposition as confidential.  There are things

16   that are confidential in his deposition but other parties have

17   made that designation.

18        THE COURT:  OK.

19        MR. SCHWARTZ:  The Khrapunovs have told us that they

20   have no objection to this proposal.  Triadou is confirming with

21   their client; they have told us they'll get back to us in the

22   next two days.

23        What I would propose is, hopefully this could be

24   consent, we can come back to your Honor next week -- again,

25   hopefully with everyone's consent -- but if not, we will make

J64WcitC1

1    the proposal that I just made and you can hear the

2    counterarguments.

3         THE COURT:  OK.  Now, in the proposed case management

4    conference, I see that you've discussed ESI, you've written not

5    applicable to an ESI protocol.  Why is that?  Do you anticipate

6    that there will be other sources of ESI than the sources you

7    tapped for the pending litigation?

8         MR. SCHWARTZ:  I'll defer to Mr. Wenner on this point,

9    but I think that given the nature of the parties to this case,

10   we don't expect there to be complicated ESI issues.

11        THE COURT:  OK.

12        MR. WENNER:  Your Honor, that's right.  If you look at

13   the complaint and the particular defendants in the Sater

14   lawsuit, it's pretty clear with regard to them what questions

15   we will have, what documents we will request.  We did not

16   anticipate -- do not anticipate -- that there will be any

17   particular ESI burdens or impediments to getting and collecting

18   those documents.  The production from particular plaintiffs --

19   from the defendants we don't anticipate will be voluminous.

20        THE COURT:  How does the scope of the discovery

21   differ?  What areas of discovery would plaintiffs be seeking

22   that weren't already covered in the pending case?

23        MR. WENNER:  The background to how we got to the

24   laundering in the United States is the same.  The money that

25   funded the company Northern Seas Waterage, that story is the

J64WcitC1

1   same, that narrative.

2          The defendants in this case entered into a

3   relationship with Ilyas Khrapunov and agreed to help and

4   facilitate particular investments and particular schemes within

5   the United States.  Those are the five schemes that we've laid

6   out in the complaint.  The Tri-County Mall scheme your Honor

7   will remember, that's the same scheme that's at issue in the

8   main litigation.  Three of the other schemes are new.  So there

9   will be some discovery on these new particular schemes, but

10  otherwise the source of funding, the general money-laundering

11  scheme and the companies involved are largely the same.

12         We've seen the introduction of a handful of new

13  companies.  Again, these are larger shell companies and

14  companies controlled by these particular defendants.  Those

15  will be the subject of discovery.

16         THE COURT:  OK.  And in your belief, what is Ferrari

17  Holdings' role in this scheme as opposed to the other

18  defendants' that are named?

19         MR. WENNER:  It's quite simple.  They were the broker

20  or facilitated the investment in Tri-County Mall scheme.  They

21  received $1,080,000, I believe, and immediately send half of

22  that back to Daniel Ridloff, another defendant in the case, as

23  a kickback.  So they received over a million dollars in illicit

24  funds, put half in their pocket and then turned around and put

25  half in Daniel Ridloff's pocket.

J64WcitC1

1        THE COURT:  You're contending that Ferrari retained

2    approximately half a million dollars of money that can be

3    traceable back to your clients.

4        MR. WENNER:  Right.  They were unjustly enriched by

5    the million, and they retained ultimately over 500,000.

6        THE COURT:  All right.  And you think you'll be able

7    to complete the depositions within a year?

8        MR. WENNER:  Yes, your Honor.

9        We believe, starting discovery today with the initial

10   conference -- we've had lots of experience in the other matter;

11   we hope and do not anticipate that this case will drag on in

12   discovery for the years it has there -- we do expect to start

13   immediately with certain discovery that may involve overseas

14   defendants; for example, custodians.  For example, we had the

15   opportunity to depose and obtain certain documents from people

16   overseas.  The defendants in this case were not present for

17   those depositions.  They may want to ask questions.  They may

18   need to participate in that discovery.  For example, deposition

19   of Ilyas Khrapunov; that would be, I expect, an important

20   request by the defendants in this case.

21       We would want to start immediately with our day

22   requests, start international discovery, start third-party

23   discovery of banks.  All of those things we can start

24   immediately.  We wouldn't be looking to depose defendants

25   immediately -- that can wait -- but we would be asking for

J64WcitC1

1   documents from them to help frame the rest of discovery.

2                THE COURT:  All right.  I'd like to hear from the

3   defendants now because I see that defendants are contemplating

4   Rule 12 motions, so I want to hear the basis of those proposed

5   motions, and then I'll let plaintiffs respond to that.

6                MR. WENNER:  I mean I'm happy to hand the podium over.

7   I just would like to talk for a moment about the proposed

8   discovery plan.

9                THE COURT:  Sure.

10               MR. WENNER:  The parties, I believe, are in agreement

11  on the dates.  There were no disputes.  We talked for a moment

12  about ESI.

13               THE COURT:  Right.

14               MR. WENNER:  We discussed these issues and proposed

15  the dates, and I think the parties are in agreement on them.

16  The question that will be posed is whether or not, and I

17  believe defendants will make a motion, to stay discovery

18  pending their dispositive motions that you just mentioned.

19               We think in this case that there would be no reason to

20  delay that.  If the discovery starts today, we can start all

21  that third-party discovery, avoid the delays we had in the main

22  action, and none of that will have a direct bearing on the

23  defendants' obligations to produce documents, but their actual

24  productions and collections themselves -- for example, as we've

25  seen with Ferrari Holdings -- is very narrow and specific.

J64WcitC1

1    There won't be a burden on them and they would need to overcome

2    and show good cause for the stay, and that would in large part

3    turn on the strength of the motions that they'll explain.  And

4    if you look at the complaint in this case, it's very similar to

5    the one in the main action, and that complaint has survived ten

6    or more motions to dismiss.  And in this case we don't have the

7    jurisdictional impediments.  We don't have the RICO statutory

8    standing problem.  Jurisdictional diversity is not in question.

9    We don't have the fraudulent conveyance.  So all the complexity

10   and nuance from that federal action is not present here, and

11   it's a fairly straightforward laundering of the money that they

12   were not entitled to.

13       We'd welcome the opportunity to argue before your

14   Honor the motion to stay, but we expect they'll talk about that

15   now.

16       THE COURT:  OK.  Great.

17       Mr. Rosenberg, I'll hear from you first, since you're

18   representing more of the defendants.

19       MR. ROSENBERG:  Yes, your Honor.

20       If your Honor would like to hear about the anticipated

21   motion to dismiss, I can address that first.

22       THE COURT:  Yes.

23       MR. ROSENBERG:  Your Honor, we anticipate making a

24   motion to dismiss all of the claims asserted against my

25   defendants, Mr. Sater, Mr. Ridloff, RRMI, Global Habitat

J64WcitC1

1    Solutions and Bayrock Group.

2              The basis for the motions to dismiss will be varied

3    among their different claims.  There will be failure to state a

4    claim under 12(b)(6).

5              THE COURT:  Speak a little bit louder and slower.

6              MR. ROSENBERG:  The basis for the motions will be

7    varied among the different causes of action.  The first basis

8    will be a motion to dismiss under 12(b)(6) for failure to state

9    a claim.

10             THE COURT:  Just a failure to plead sufficient facts?

11             MR. ROSENBERG:  That's correct.  On the face of the

12   pleading that the allegations, as pled in the complaint, do not

13   establish a claim under New York law.

14             THE COURT:  Under all of the causes of action.

15             MR. ROSENBERG:  That is for the unjust enrichment

16   claim, that is for the fraud claim and possibly other claims,

17   which we're currently researching.

18             In addition to failure to state a claim under New York

19   law, we will also be moving to dismiss based on the statute,

20   the claim as being barred by the applicable statutes of

21   limitation.  That claim, those claims will also be, including

22   the unjust enrichment claim -- that claim will include some of

23   the other claims as well, which we're currently researching.

24             THE COURT:  What do you say about the statute of

25   limitations and how far outside the statute of limitations do

J64WcitC1

1    you think then, by how much time did plaintiffs --

2         MR. ROSENBERG:  Well, the unjust enrichment claims,

3    your Honor, as you can see from the pleading, all of the

4    allegations which establish that claim occurred back in 2012

5    and 2013, according to the pleading filed by plaintiff.  Unjust

6    enrichment the statute of limitations is three years, so even

7    by the face of plaintiffs' own pleading, those claims are

8    time-barred.

9         THE COURT:  Have you discussed this already with

10   plaintiffs' counsel?

11        MR. ROSENBERG:  We have not.

12        THE COURT:  Have you looked into any tolling arguments

13   or defenses they would have to the statute of limitations?

14        MR. ROSENBERG:  We know that there are issues on the

15   unjust enrichment claims, whether that statute of limitations

16   may apply to either a six-year or three-year statute.  Based on

17   the underlying causes of action in this pleading we believe

18   that the three-year statute applies.

19        THE COURT:  Other bases for the motion?

20        MR. ROSENBERG:  Finally, there will be a motion to

21   dismiss based on a release signed by the plaintiffs in this

22   case, and that motion will be based, will be filed only on

23   behalf of defendant Felix Sater, who is the beneficiary of that

24   release.

25        THE COURT:  Are you referring to the release signed in

J64WcitC1

1    an agreement between Arcanum and plaintiff Mr. Sater?

2         MR. ROSENBERG:  That's correct, your Honor.

3         THE COURT:  And that's the subject of an arbitration

4    proceeding right now?

5         MR. ROSENBERG:  The arbitration proceeding was

6    commenced in order to collect fees owed to Mr. Sater under a

7    recovery assistance agreement.

8         THE COURT:  But isn't there a dispute as to the

9    enforceability of the release now that there's been an alleged

10   violation of the obligations under the contract?

11        MR. ROSENBERG:  I'm not sure if there's a dispute

12   about the enforceability of the release.  There may be a

13   dispute about the enforceability of the fees owed to Mr. Sater,

14   obviously, which is why the arbitration proceeding was

15   commenced.

16        THE COURT:  Right.

17        MR. ROSENBERG:  I don't believe that there's any

18   dispute about the enforceability of that release, which was

19   effective as of the date it was signed.

20        THE COURT:  OK.  What was the consideration for that

21   release?

22        MR. ROSENBERG:  The assistance, I assume, provided by

23   Mr. Sater.  I mean there is a lot of consideration for that

24   release, which is the subject of the arbitration proceeding.

25   The arbitration panel has just been appointed within the past

J64WcitC1

1      week or two.

.2              THE COURT:  What's the schedule for that arbitration?

3              MR. ROSENBERG:  I'm not exactly privy to the exact

4      schedule for that arbitration right now, your Honor.

5              THE COURT:  OK.

6              MR. ROSENBERG:  But it's really just started.

7              THE COURT:  OK.

8              MR. ROSENBERG:  There's been no exchange of documents.

9      The panel was just appointed.

10             THE COURT:  OK.  And I see that you also are

11     anticipating a motion related to disqualification of Boies

12     Schiller.

13             MR. ROSENBERG:  Yes, your Honor.

14             As the pleadings and the facts disclosed in the

15     related proceeding show, Boies Schiller, as counsel for

16     plaintiffs in this action, have a longstanding relationship

17     with Mr. Sater.  That relationship commenced in about 2015.

18     During that relationship Mr. Sater met with plaintiffs' counsel

19     numerous times, exchanged numerous communications with

20     plaintiffs' counsel, and I think as plaintiffs' counsel has

21     said today, many of those discussions were tied to the recovery

22     of assets against the defendants in the related proceeding and

23     touched on possibly the assets and allegations in this case as

24     well.

25             We don't know the full extent of those communications

J64WcitC1

1   and what exactly was exchanged in those meetings.  We don't

2   know what notes or memorandum or other documents might have

3   been exchanged between the parties.  We don't know whether

4   plaintiffs' counsel took notes, what was discussed during those

5   meetings.

6           THE COURT:  Your firm wasn't in contact with Moses &

7   Singer about what was going on in those communications?

8           MR. ROSENBERG:  We were not counsel to Mr. Sater in

9   the related proceeding, no.

10          THE COURT:  Well, payments were made to Todd & Levi

11  LLP --

12          MR. ROSENBERG:  Yes.

13          THE COURT:  -- under the Litco agreement,

14          MR. ROSENBERG:  Correct.  Todd & Levi LLP had

15  established an escrow account for those payments under the

16  Litco agreement.  That's correct.

17          THE COURT:  So you established an escrow account for

18  the payment of fees under the Litco agreement but have no idea

19  why?

20          MR. ROSENBERG:  I didn't say we don't have any idea

21  what happened -- what's going on in this case or with respect

22  to Litco.  What I'm saying is that prior to our involvement,

23  Mr. Sater had entered into an agreement with plaintiffs'

24  counsel to provide assistance.

25          THE COURT:  OK.

J64WcitC1

1          MR. ROSENBERG:  And we don't have, plaintiffs' counsel

2    may or may not have evidence.

3          THE COURT:  You mean something separate from the Litco

4    agreement?  Mr. Sater was providing assistance to plaintiffs

5    through the Litco agreement.

6          MR. ROSENBERG:  Correct.

7          THE COURT:  Is that right?

8          MR. ROSENBERG:  Well, as a witness, yes.

9          THE COURT:  That's what he testified to.

10         MR. ROSENBERG:  Correct.

11         THE COURT:  And are you saying that there was a

12   separate agreement between plaintiffs and Mr. Sater personally?

13         MR. ROSENBERG:  No, I'm not saying that.

14         THE COURT:  OK.

15         MR. ROSENBERG:  But what I am saying is that Mr. Sater

16   did meet with plaintiffs' counsel and that the subject of those

17   meetings may be direct evidence that impacts either the claims

18   or defenses in this case.

19         THE COURT:  And Mr. Wolf was also present at those

20   meetings, was he not?

21         MR. ROSENBERG:  I don't know that, your Honor.

22   Standing here today, I don't know that Mr. Wolf was present at

23   those meetings or not.

24         THE COURT:  And no one from your firm was present at

25   those meetings.

J64WcitC1

1          MR. ROSENBERG:  Absolutely not.

2          And your Honor, just to clarify, I'm not standing here

3    today saying that, with certainty that plaintiffs' counsel will

4    have a conflict of interest, but what I am saying is that we're

5    entitled to discovery to see what plaintiffs' counsel may have

6    in their files relating to those communications and meetings

7    with Mr. Sater.  And if it turns out that that discovery shows

8    that there's a conflict of interest -- perhaps plaintiffs'

9    counsel has information or may be called to testify in a way

10   that's adverse to their own client -- then there may be a basis

11   for a motion to disqualify.

12         Again, I don't know that to be a fact, your Honor, but

13   the point is that to the extent plaintiffs' counsel is a fact

14   witness with relevant information, there may be a conflict of

15   interest.

16         THE COURT:  OK.  So those are the two motions you're

17   proposing.

18         MR. ROSENBERG:  That's correct, your Honor.

19         THE COURT:  All right.  And you're also proposing a

20   stay of discovery?

21         MR. ROSENBERG:  I discussed this with counsel to the

22   codefendant.  I believe what we were looking for was a stay of

23   discovery only as to the parties; that we would be happy to

24   engage in any third-party discovery because that is going to be

25   extensive and may call on parties in other parts of the world

J64WcitC1

1    but perhaps a stay of discovery only as to the parties pending

2    the motions to dismiss.

3            THE COURT:  And on what basis should I grant the stay?

4            MR. ROSENBERG:  Only on the basis of judicial

5    efficiency, your Honor.

6            THE COURT:  Why would it be efficient if you're

7    proposing a year of discovery?  My experience with the pending

8    case is that there's a lot of discovery.  You're proposing 20

9    depositions per party, and the three transactions that are

10   unique to this action, I imagine, are going to involve quite a

11   lot of discovery in and of themselves from the parties.

12           Also, why would I stay party discovery and impose a

13   burden on nonparties?  Parties have an obligation to get

14   discovery from each other before imposing discovery on another

15   party.

16           MR. ROSENBERG:  I believe there was a concern that

17   possibly some of these parties may be dismissed as a result of

18   a motion to dismiss earlier than others, and obviously that's

19   pending the filings of the motions both on behalf of my

20   clients, plaintiffs and my clients and as well the

21   codefendants.

22           THE COURT:  Which of the parties you're representing

23   do you believe have the strongest motion to dismiss, or

24   alternatively, do you believe all of them have equal strength?

25           MR. ROSENBERG:  I believe they all have equal

1   strength, your Honor.

2          THE COURT:  All right.

3          MR. ROSENBERG:  I believe that Mr. Ridloff and RRMI

4   truly have no place in this proceeding and that their motions,

5   perhaps, may be stronger on the failure to state a claim

6   motion, and obviously as to the statute of limitations motion,

7   those apply equally to all of the defendants.

8          THE COURT:  Is your client, Mr. Sater, adverse to the

9   Khrapunovs and to plaintiffs here?  As I understand it, you're

10  denying the material allegations.

11         MR. ROSENBERG:  Of course.

12         THE COURT:  And you're denying that Mr. Sater had

13  anything to do with any money laundering.  Is that right?

14         MR. ROSENBERG:  That's correct, your Honor.

15         THE COURT:  OK.  But you're not denying that he worked

16  with Ilyas Khrapunov in connection with some of these

17  transactions, for example, the Tri-County Mall, right?

18         MR. ROSENBERG:  I'm not denying that Mr. Sater was

19  involved in the Tri-County Mall project site, your Honor.

20         THE COURT:  Good.

21         MR. ROSENBERG:  As to the allegations concerning money

22  laundering or fraud or unjust enrichment, all of those claims

23  we obviously deny.

24         THE COURT:  But your client was providing material

25  help to plaintiffs in their suit against Ilyas Khrapunov, was

J64WcitC1

1    he not?

2            MR. ROSENBERG:   He was, your Honor, as part of the

3    assistance agreement.

4            THE COURT:   OK.   Are there any other issues that you'd

5    like to raise right now?

6            MR. ROSENBERG:   Not today, your Honor.

7            THE COURT:   OK.   Very good.

8            Mr. Horn, I'll hear from you next.

9            MR. HORN:   Your Honor, there's certainly a detailed

10   complaint here; no question about that.   A lot of facts in the

11   complaint; no question about that.   But when you look

12   specifically at the allegations as to my client, Ferrari

13   Holdings, it's scant.   There's not much there, because there

14   couldn't be much there.

15           The allegations are that my client, Ferrari Holdings,

16   brokered a debt, a debt mortgage deal, trying to find the

17   highest bidder; nothing unusual about that.   Brokered this

18   deal, received money from an attorney escrow account at the

19   closing; nothing unusual about that.   Took commission and split

20   it; nothing unusual about that.   People have bought homes.

21   They see how commissions are split.   It's not unusual in an

22   industry where you receive a commission to split it with

23   somebody else.

24           So the reality of the situation here is that when

25   looking at the complaint as to my client alone, there's just

J64WcitC1

1    not sufficient facts to support a finding that my client had

2    any intention, let alone knowledge, or even should have known

3    that these moneys were involved in some type of a

4    money-laundering scheme or some type of a fraud, your Honor.

5    And the problem becomes how far do things like this go?  How

6    far does our jurisprudence allow somebody to have a claim

7    against a party who's just involved in a business transaction

8    without any proof that there was any belief or reason to

9    believe that the moneys at issue were "tarnished," for lack of

10   a better word?  And I think that this is a good case for that.

11          When you look at, also, the issue of statute of

12   limitations with respect to my client, there's a big question

13   as to -- the first is accrual.  When does the statute of

14   limitations accrue in such a case?  In terms of money had and

15   received, do we have a claim against even further parties that

16   received this money that may have had no knowledge?  And how

17   far do we span that out?

18          Certainly the transaction that's the head of this, the

19   transaction that was the improper transaction that my client

20   was so far removed from and may have been in another country,

21   was longer than six years ago, and the question is, do we start

22   from that transaction, or do we start from when my client

23   received the money?  And I think that in this particular case

24   that we start from that transaction, the initial transaction,

25   because again, based upon the allegations in the complaint,

J64WcitC1

 1   there's no reason for my client to believe that there was

 2   anything improper going on here.  So my client, based upon the

 3   allegations in the complaint, should be seen as a party that

 4   doesn't have that specific knowledge, and therefore, there's

 5   not a break in that statute of limitations and then creating a

 6   new accrual of statute of limitations.

 7           In terms of unjust enrichment, in this particular case

 8   it's a three-year statute of limitations because we're talking

 9   about a monetary claim, not an equity claim, but even if it's

10   six years, money had and received has a six-year statute of

11   limitations; the question of accrual comes to mind with that.

12           In terms of the discovery and the scope of discovery,

13   it's really hard for us here to comment on that, because we

14   know that we don't know what was exchanged from the other

15   litigation.  Right?  So we're sitting here and we're hearing

16   about all these exchanges and how broad the scope was, but we

17   have no idea because there's a confidentiality agreement

18   between the parties, and I under that they're honoring that,

19   and that's fine.  But at this point, without seeing that

20   university, we can't comment on what in a broader sense would

21   be needed other than specific to our client because if

22   discovery's not stayed and my client has to participate in

23   discovery, the discovery would also start from the initial

24   chain and then work down, because there has to be, in terms of

25   money had and received, there has to be proof that bad money

J64WcitC1

1   flowed directly to my client, and so that chain would have to

2   be something that we would need discovery on.

3        I would hope that a substantial amount of that

4   discovery was done in the other case, but I certainly can't say

5   for certain, and plaintiffs' counsel can't even tell me because

6   of the general notions of what he said in court,

7   understandably, because there's a confidentiality order, and we

8   just had received a copy of that and a proposal in court today

9   to expand that to our litigation.  Obviously I have to look at

10  it, talk to my client.

11       THE COURT:  Right.

12       MR. HORN:  I understand that there's another party

13  that's off doing that in the other litigation.

14       THE COURT:  Was your client involved in all five of

15  the alleged schemes?

16       MR. HORN:  No.  It's just the mall.

17       THE COURT:  Just the Tri-County Mall?

18       MR. HORN:  That's my understanding, that he was just a

19  broker for that debt.

20       THE COURT:  I see.  So the gist of your motion is that

21  there aren't sufficient facts in the complaint indicating that

22  your CLIENT had any knowledge of alleged stolen money.

23       MR. HORN:  Right.  And also unjust enrichment requires

24  that, it has to be not too far removed from the initial

25  transaction.  This is so far removed from the initial -- from

J64WcitC1

1   the bad transaction that -- again, under certain cases it shows

2   that, I think that there are now --

3           THE COURT:  You mean the initial transaction being the

4   fact of the money --

5           MR. HORN:  The bad --

6           THE COURT:  -- from plaintiffs?

7           MR. HORN:  -- exactly.  That it's so far removed, that

8   it should be found -- it's similar to proximate cause.  Right?

9   It can't be so far removed that it's outside the scope of

10  reasonableness.

11          THE COURT:  Have you discussed this issue with

12  plaintiffs' counsel, and have they indicated that there's an

13  ability to cure the alleged defect with the pleading as to this

14  issue?

15          MR. HORN:  We discussed the issue of us filing a

16  motion to dismiss.  I would like to have further discussions on

17  that and more particular on what we're discussing here, because

18  I would like that as well as I'd like to talk about the issue

19  of tolling the statute of limitations and where there are

20  issues that statute of limitations can be tolled in certain

21  circumstances, and rather than file my motion, get their

22  argument on tolling and then do the research on that and

23  respond, it would be much better to just understand their

24  position on tolling.

25          THE COURT:  Right, because what I'm concerned about is

J64WcitC1

 1   having the parties spend a lot of time and effort on motions

 2   when some of the issues could be cured by an amended pleading

 3   and then perhaps the issues on the motion narrow.

 4        I want to here from plaintiffs, but my thought would

 5   be to perhaps give you a short period of time to discuss that

 6   and then submit a proposal as to how to go forward on any

 7   motion and/or amended pleading.

 8        MR. HORN:  Right.

 9        THE COURT:  That's all I have to say on that.

10        MR. HORN:  In terms of unjust enrichment also one of

11   the issues is that in order for there to be unjust enrichment

12   my client would have had to not provide services.  Right?  My

13   client would have had to be unjustly enriched, but my client

14   provided services.  My client found this person to purchase

15   this debt, and that's why they achieved -- that's why they

16   earned that money.

17        Anyway, there are certainly issues.  The problem with

18   the discovery stay is that, logistically speaking, I like to

19   focus on one thing at a time unless I'm forced to do -- if

20   we're in an expedited situation, that's one thing.  Seems like

21   we're not.  Discovery's going to be over next year.  I mean

22   we're going to have a discussion with them about the motion,

23   we're going to be briefing the motion.  Maybe we'll resolve it,

24   maybe we won't.  But to have our initial discovery, to have our

25   demands to be sent out and then have responses within probably

J64WcitC1

1     the time that we're going to have that discussion, to me, it's

2     just a lot to do and it's a lot of money to expend.  So we were

3     talking about, we were trying to compromise on this.

4            We recognize that plaintiffs want to go seek documents

5     outside of this jurisdiction, and we have no problem with that.

6     I have no problem with them, because third parties may not be

7     preserving records.  Right?  My client, once he knows about a

8     lawsuit, I'm his attorney, he's told to preserve records.

9     Right?  Everybody else is, but I understand third parties may

10    not be because they don't know about this case.  So I have no

11    problem with them serving a subpoena on these third parties,

12    going to the Hague, going through the Hague Convention, and

13    that takes a tremendous amount of time.  But it seems to me

14    that my experience going through the Hague Convention, and

15    depends on the country, but it just takes a very long time and

16    for us to be rushing to get discovery and to resolve this

17    motion and to brief this motion all at the same time when we

18    all know that discovery outside from this country is going to

19    take a long time, and they don't need stuff from my client at

20    least, from my understanding, to serve those subpoenas.

21    They're not looking for documentation from us to serve foreign

22    subpoenas because we have nothing, and even with the

23    allegations, all the allegations, we have nothing to do with

24    anything that was foreign, outside of the country.  My client

25    didn't have transactions, from my understanding, outside of

J64WcitC1

1    this country relating to this case.

2           For that reason, even if discovery is not stayed in

3    whole, let's get a reasonable discovery schedule together,

4    taking into account the good faith efforts that we're going to

5    make to resolve the motion, the possibility of resolving

6    motions or moving forward.  We could have a conference call

7    after we've made those, had those discussions, trying to

8    resolve the motion.  And then if they're not resolved, we can

9    do a briefing schedule and then party discovery.  I think it's

10   going to take some time for the Court to decide the motion, so

11   we can start discovery between that period of time, and if we

12   resolve the motion, we'll have a conference call, then we can

13   start right away with the party discovery.  That's my

14   suggestion.

15          THE COURT:  Is there a possibility that your client

16   could have an early settlement with the plaintiffs?

17          MR. HORN:  There's always a possibility to try and

18   resolve a case, and I come with no preconditions and I'd be

19   happy to just have confidential settlement discussions with

20   plaintiffs in any forum if they would like.  My client's

21   company is not active now, but they're paying me, so there's

22   some money, and there's a cost going forward, obviously, that

23   we'd also take into consideration.

24          THE COURT:  Right, because if your client's motion

25   isn't granted, there will be a significant expense in the

J64WcitC1

1    litigation.

2              MR. HORN:  Yes.

3              THE COURT:  OK.  I'd like to hear from plaintiffs in

4    terms of thoughts about a discovery schedule and the proposed

5    motions.

6              MR. WENNER:  Your Honor, I believe the only question

7    really now is whether to stay discovery.  That's the only

8    decision that would necessarily need to be made today.

9              THE COURT:  Well, no.  I want to hear your view on my

10   suggestion that the parties be given a brief period of time to

11   talk about the alleged defects in the pleading and whether

12   those alleged defects could be addressed in an amended pleading

13   and the proposed motions narrowed.

14             MR. WENNER:  We absolutely would not want to burden

15   the Court, would not want to burden defendants with motion

16   practice that we would cure with amended pleadings, so I don't

17   think there's any problem with engaging in that discussion with

18   them, identifying defects they may have identified, and we can

19   talk about them, if any.  I don't think that's going to be a

20   problem.

21             I can say, though, that as far as showing good cause

22   for the ultimate merits of the motion to dismiss to make the

23   case go away they ultimately would be unsuccessful.

24             Taking RRMI and Ferrari just as two examples that have

25   come up here in this conference, just one transaction alone

J64WcitC1

```
 1    allows this case to go forward, and that's in connection with

 2    the Tri-County Mall, when Ferrari was paid its finder's fee,

 3    that million dollars.  What establishes the fraud for notice of

 4    a Rule 9 pleading is that they immediately then, the next day,

 5    turn around and give half their finder's fee back to the person

 6    that they purportedly found as the buyer.  They gave this

 7    kickback, the 50 percent of their finder's fee, the same day,

 8    and that occurred on May 24, 2013 -- and this is paragraphs 203

 9    to 204 in the complaint -- so that's May 2013, and our

10    complaint was filed in March 2019, within six years.

11            So apart from all questions about equitable tolling,

12    apart from all more nuanced arguments about how we get these

13    other causes of action to go forward, receiving a kickback or

14    providing a kickback, which is RRMI and Ferrari, will allow us

15    to go forward to the merits.

16            THE COURT:  And what about the proposed or potential

17    disqualification motion?  That's implicating privileged

18    communications, obviously.

19            MR. WENNER:  It is, and if I understand from the way

20    it was described, I'm not certain that there is going to be a

21    motion to disqualify filed until they've asked for discovery,

22    we've responded, there will be privilege calls, they will get

23    some documents, communications; at that point they can make

24    that decision.  But that question about disqualification

25    concerns events that happened long after the allegations in
```

1    this case, going to one question about the scope of the release

2    for Litco to which Sater's not a party, and I don't intend to

3    litigate here all the issues about Litco.  But needless to say

4    those events happening in 2015 will have little bearing or

5    impact on the discovery proceeding and the merits of our claims

6    here in this case, and I don't think there will be any

7    conflict-of-interest question with regard to proceeding with

8    discovery on the merits of the case, briefing these issues that

9    predated, and by Mr. Sater's own allegations, he's the one who

10   located Boies Schiller and asked them to involve themselves.

11   So we don't agree with any of Mr. Sater's characterizations

12   about Litco generally, but I think this is not something that

13   the Court needs to tee up today or concern itself with in terms

14   of proceeding to discovery about the allegations in our

15   complaint.

16          THE COURT:  OK.

17          MR. HORN:  Your Honor, if I may just be heard real

18   quickly?

19          THE COURT:  Yes.

20          MR. HORN:  Counsel had mentioned earlier that he was

21   constrained when he wrote the pleading in terms of trying to

22   abided by the confidentiality agreement.  I think that we

23   should have some time where we are able to morph whatever

24   confidentiality agreement they have in the other case to our

25   case so that when we talk to plaintiffs about the sufficiency

J64WcitC1

1    of their pleadings, he can tell me, Oh, I found this document,

2    or I have that document, and it shows your client is definitely

3    responsible, because without talking in that with everything

4    that he knows, I think that we could end up with a motion to

5    dismiss and then he somehow is able to try and amend based upon

6    some confidential records, and why go through that.

7         THE COURT:  OK.  This is what I'm going to do.  I'm

8    going to give the parties two weeks, until June 18, to discuss

9    the overlap of discovery and the joining of the protective

10   order in the pending case, so the parties in both matters can

11   discuss that.  By June 18 I'd like a letter as to what the

12   resolution of that issue is and if it's an adoption of that

13   protective order, in whole or in part, you can let me know that

14   and submit the proposed protective order.  To the extent that

15   order is more extensive than what is in my individual

16   practices, I will except you from my normal rules so that you

17   don't have to reinvent the wheel.

18        I will give you then until July 3 to discuss -- I'm

19   assuming there will be agreement on the protective order and

20   that you then will be able to discuss over a two-week period,

21   and even starting before that you can start to talk about some

22   of the statute of limitations issues and some other things

23   you're not otherwise constrained to discuss, so I'll give you

24   until July 3 to talk about whether or not there needs to be an

25   amended pleading and it may be that defendants don't want an

J64WcitC1

```
1   amended pleading but you elect not to move to dismiss or you

2   elect to file a partial motion, but why don't you think about

3   that and whether that even makes sense economically for your

4   clients, etc.  I'll give you until July 3, and since it's a

5   holiday weekend, you can let me know on July 9 by letter what

6   the parties' plan is.  Is there going to be an amended pleading

7   and then a motion?  Or will there be no amended pleading and a

8   motion on the existing pleading?  And I'd like then a proposed

9   briefing schedule for that motion.  OK?

10          Right now I'm not going to stay discovery.  I'm going

11  to adopt the outside deadline of June 4, 2020, and I'm going to

12  wait until I see the various correspondence before determining

13  whether or not any kind of stay is warranted.

14          In the meantime, I'll ask that you prepare your

15  initial disclosures and to provide those initial disclosures by

16  July 9.  To the extent there is nonparty discovery that is not

17  redundant, you couldn't get from a party, you can commence that

18  discovery.

19          I also would like the parties to think about document

20  requests -- not interrogatories, document requests -- and to

21  serve those July 9 as well, because I'd like each side to tee

22  up the issues of what are the documents that you would be

23  seeking in this action.  And I want to emphasize Rule 34 and

24  Rule 1 so that you are specific in your requests.  Do not ask

25  for any and all documents.  That is going to raise disputes, so
```

J64WcitC1

1     I don't expect to see any document requests or "any and all,"

2     and objections need to be specific, meaning if something is

3     vague, you need to specify why it is vague, what about it is

4     vague.  If the time period is overbroad, you need to explain

5     what is the time period that is not overbroad.  So I expect you

6     to be very specific in your requests and responses and to meet

7     and confer in good faith.

8              And remember, discovery is an iterative process, so

9     that why don't you start specific and then you will have a

10    chance to serve additional document requests that increase the

11    scope.  I want you to first start with very specific document

12    requests so you get an idea of what you really need in this

13    action and then you can follow up.  OK?

14             I'm also going to set a conference for July 31.

15    That's a Wednesday.  And we will meet at 11:30 a.m.  I'll have

16    received all of the correspondence.  We can talk about where we

17    are at that point, and then most likely I'll schedule monthly

18    conferences after that to make sure that the parties are on top

19    of their discovery and to minimize motion practice.  OK?

20             Anything further?

21             MR. ROSENBERG:  Your Honor, if I just may be heard on

22    one more issue?

23             Under the current stipulation the defendants have

24    until June 19 to answer or move.  Is that date now extended

25    beyond the July 9 date that we report to the Court on our

J64WcitC1

1    discussions regarding potential amended pleadings?

2            THE COURT:  Yes.  What I'll do is I'll extend right

3    now to July 9 -- actually, I'll extend it to July 31, and we

4    can talk about it at the conference to the extent needed.   OK?

5            Anything else from plaintiffs?

6            MR. SCHWARTZ:  One thing.

7            There is one defendant that has been served and

8    defaulted quite a while ago.  We don't want to leave that loose

9    end out there, but at the same time, we don't want them popping

10   up and unnecessarily spend time defaulting.  Does your Honor

11   have a preference as to when we submit the default?

12           THE COURT:  No.  I think what you should do is submit

13   it before July 31, and I think that Judge Nathan most likely

14   will address the default motion, although she may refer that to

15   me for an inquest.

16           Anything further?

17           MR. HORN:  No, your Honor.

18           THE COURT:  Then we're adjourned, and we'll hear the

19   next City of Almaty case.

20           Why don't the parties come on up.

21           (Adjourned)

22

23

24

25