**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CITY OF ALMATY, KAZAKHSTAN and BTA
BANK JSC,

                Plaintiffs,

     -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK
GROUP INC., GLOBAL HABITAT SOLUTIONS,
INC., RRMI-DR LLC, FERRARI HOLDINGS LLC,
and MEM ENERGY PARTNERS LLC,

            Defendants.

19 Civ. 2645 (AJN) (KHP)

**PLAINTIFFS' RESPONSES TO DEFENDANT FELIX SATER'S OBJECTIONS TO**
**MAGISTRATE JUDGE PARKER'S OPINION & ORDER ON MOTION TO STAY**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350

*Attorneys for Plaintiffs*
*City of Almaty, Kazakhstan and*
*BTA Bank JSC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

THE FACTUAL RECORD PRESENTED TO AND CONSIDERED BY
MAGISTRATE JUDGE PARKER ...................................................................................... 2

    A.   Magistrate Judge Parker Carefully Reviewed the Facts Bearing on the
         Confidential Assistance Agreement that the Kazakh Entities and Litco Signed in
         2015. ................................................................................................................. 3

    B.   Magistrate Judge Parker Carefully Reviewed the Record Bearing on When Sater
         First Revealed his Ownership of Litco. ............................................................ 4

    C.   As Magistrate Judge Parker Noted, Following Sater's Deposition, the Kazakh
         Entities Declared Litco in Breach of the CAA, and Litco Responded by
         Initiating an Arbitration. ................................................................................... 6

    D.   Magistrate Judge Parker Properly Understood and Considered the Status and
         Anticipated Future Timing of the Pending Arbitration. ................................... 9

    E.   Following Extensive Briefing and Oral Argument, Magistrate Judge Parker
         Denied Sater's Motion to Stay Pending Arbitration in its Entirety. ................. 10

ARGUMENT ................................................................................................................... 12

  I.   MAGISTRATE JUDGE PARKER CORRECTLY CONCLUDED THAT THE
      KAZAKH ENTITIES NEVER CONSENTED TO ARBITRATION WITH SATER
      AND THAT SATER IS NOT A THIRD-PARTY BENEFICIARY OF THE
      ARBITRATION PROVISION, WHICH IS LIMITED TO CLAIMS BETWEEN
      THE PARTIES TO THE CAA. ................................................................................ 12

  II.  MAGISTRATE JUDGE PARKER CORRECTLY CONCLUDED THAT SATER
      CANNOT ENFORCE THE ARBITRATION PROVISION ON THE BASIS OF
      EQUITABLE ESTOPPEL. ...................................................................................... 17

    A.   Magistrate Judge Parker Carefully Analyzed the Issues in this Lawsuit and the
         Arbitration and Correctly Concluded that They Are Not Sufficiently
         Intertwined. ...................................................................................................... 17

    B.   Magistrate Judge Parker Properly Found that There Is Not a Sufficiently Close
         Relationship Between the Kazakh Entities and Sater to Warrant Estoppel. ............ 19

  III.  MAGISTRATE JUDGE PARKER PROPERLY REFRAINED FROM INVOKING
      THE COURT'S INHERENT DISCRETIONARY POWER TO ORDER A STAY. ...... 22

CONCLUSION ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*,
  885 F. Supp. 499 (S.D.N.Y. 1995) .................................................................................. 22, 24

*Anderson v. Bessemer City*,
  470 U.S. 564 (1985) ............................................................................................................ 1

*Bankers Conseco Life Ins. Co. v. Feuer*,
  16 Civ. 7646 (ER), 2018 WL1353279 (S.D.N.Y. Mar. 15, 2018) ................................... 18, 19

*Begonja v. Vornado Realty Tr.*,
  159 F. Supp. 3d 402 (S.D.N.Y. 2016) ................................................................................ 12

*Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*,
  523 F. App'x 738 (2d Cir. 2013) ........................................................................................ 23

*Dormitory Auth. v. Samson Construction Co.*,
  30 N.Y.3d 704 (2018) ........................................................................................................ 16

*Easley v. Cromartie*,
  532 U.S. 234 (2001) ....................................................................................................... 1, 13

*Fiat S.p.A. v. Ministry of Fin. & Planning of Republic of Surin.*,
  No. 88 CIV. 6639 (SWK), 1989 WL 122891 (S.D.N.Y. Oct. 12, 1989) ............................... 25

*Flinn v. Bank of Am. Corp.*,
  Case No. 5:15-cv-193, 2016 WL 9334709 (D. Vt. June 1, 2016) ..................................... 23, 24

*Greater N.Y. Mut. Ins. Co. v. Rankin*,
  298 A.D.2d 263 (1st Dep't 2002) ....................................................................................... 14

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
  808 F. Supp. 2d 552 (S.D.N.Y. 2011) ................................................................................ 23

*In re A2P SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2013) (Nathan, *J.*) ......................................................... 19, 20

*Johnston v. Electrum Partners LLC*,
  17 Civ. 7823 (KPF), 2018 WL 3094918 (S.D.N.Y. June 21, 2018) ...................................... 2

*Marcus v. Collins*,
  16-CV-4221 (GBD) (BCM), 2016 WL 8201629 (S.D.N.Y. Dec. 30, 2016) .......................... 12

*Marquez v. Hoffman*,
  18-CV-7315 (ALC), 2019 WL 5940151 (S.D.N.Y. Oct. 25, 2019) ........................................ 1

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*
  330 F.3d 843 (6th Cir. 2003) ............................................................................. 25

*Ortiz v. Fireboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................ 25

*Oursler v. Women's Interart Center, Inc.*,
  170 A.D.2d 407 (1st Dep't 1991) ....................................................................... 16

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
  497 F.3d 133 (2d Cir. 2007) ............................................................................... 24

*PowerShare, Inc. v. Syntel, Inc.*,
  597 F.3d 10 (1st Cir. 2010) ................................................................................ 12

*Republic of Iraq v. ABB AG*,
  769 F. Supp. 2d 605 (S.D.N.Y. 2011) ..................................................... 13, 14, 15

*Republic of Iraq v. BNP Paribas USA*,
  472 F. App'x 11 (2d Cir. 2012) .......................................................................... 13

*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008) ..................................................................... 17, 19, 20

*Sierra Rutile Ltd. v. Katz*,
  937 F.2d 743 (2d Cir. 1991) ......................................................................... 22, 23

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
  542 F.3d 354 (2d Cir. 2008) ..................................................................... 17, 19, 21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
  559 U.S. 662 (2010) ............................................................................................ 25

*Techcapital Corp. v. Amoco Corp.*,
  No. 99 CIV. 5093(AGS), 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001) ................... 25

*Thompson v. Keane*,
  95 CIV 2442, 1996 WL 229887 (S.D.N.Y. May 6, 1996) ....................................... 2

*United States v. U.S. Gypsum Co.*,
  333 U.S. 364 (1948) .............................................................................................. 1

*Weiss v. La Suisse*,
  161 F. Supp. 2d 305 (S.D.N.Y. 2001) .................................................................... 2

*Williams v. Progressive Ne. Ins. Co.*,
  41 A.D.3d 1244 (4th Dep't 2007) ........................................................................ 14

**Statutes**

28 U.S.C. § 636 ................................................................................................................. 12

**Other Authorities**

Fed. R. Civ. P. 72 ............................................................................................................. 1, 2

Plaintiffs City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA," and together with Almaty, "Plaintiffs" or the "Kazakh Entities") respectfully submit this memorandum in response to defendant Felix Sater's objections [ECF Nos. 146 & 147] to Magistrate Judge Katharine H. Parker's December 6, 2019 Opinion & Order on Motion to Stay [ECF No. 144].

<u>**PRELIMINARY STATEMENT**</u>

Defendant Felix Sater moved to stay this litigation pending the outcome of an arbitration to which he is not a party. Magistrate Judge Parker denied the motion after careful consideration and after allowing Sater's counsel to submit three separate briefs in support of the motion. Magistrate Judge Parker addressed Sater's motion in a well-reasoned and meticulous 37-page opinion that sets forth the relevant factual record in detail and applies the governing law objectively and with close attention to the precise language and holdings of the controlling cases.

Sater's objections to the Opinion & Order do not meet the standard for overturning a magistrate judge's decision on a non-dispositive motion. "Pursuant to Federal Rule of Civil Procedure 72(a), a magistrate judge's ruling on a non-dispositive pretrial matter should not be disturbed unless such ruling is 'clearly erroneous or contrary to law.'" *Marquez v. Hoffman*, 18-CV-7315 (ALC), 2019 WL 5940151, at *2 (S.D.N.Y. Oct. 25, 2019) (quoting Fed. R. Civ. P. 72(a)). A ruling is clearly erroneous when "'on the entire evidence'" the reviewing court "is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "In applying this standard," a reviewing court "will not reverse a lower court's finding of fact simply because [it] 'would have decided the case differently.'" *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). "An order is 'contrary to law' when it 'fails to apply

or misapplies relevant statutes, case law or rules of procedure.'" *Weiss v. La Suisse*, 161 F. Supp.

2d 305, 321 (S.D.N.Y. 2001) (quoting *Thompson v. Keane*, 95 CIV 2442, 1996 WL 229887, at

*1 (S.D.N.Y. May 6, 1996)).

Magistrate Judge Parker's well-reasoned and objective Opinion & Order itself

demonstrates a thoughtful review and application of the governing law. It is in no way "clearly

erroneous or contrary to law" as Federal Rule 72(a) requires.

### THE FACTUAL RECORD PRESENTED TO AND CONSIDERED BY MAGISTRATE JUDGE PARKER

Magistrate Judge Parker carefully considered and analyzed the extensive factual

background bearing on Sater's motion to stay this litigation pending an arbitration to which he is

not a party. As this Court is aware, the factual background of this case is extensive, as are the

facts bearing on Sater's motion. Magistrate Judge Parker reviewed and evaluated the record

objectively. As a matter of law, on a motion to stay litigation pending arbitration, the court must

"draw all reasonable inferences in favor of the non-moving party" – here, the Kazakh Entities.

[ECF No. 144 (hereinafter "Op.") at 15 & 28.] *See, e.g.*, *Johnston v. Electrum Partners LLC*, 17

Civ. 7823 (KPF), 2018 WL 3094918, at *5 (S.D.N.Y. June 21, 2018).

This case arises out of the theft by Mukhtar Ablyazov and Viktor Khrapunov of billions

of dollars in Kazakhstan ("Stolen Funds"), which they and their co-conspirators then laundered

throughout the world. As alleged in the Complaint, Felix Sater helped Ablyazov, his son-in-law

Ilyas Khrapunov (who had day-to-day control over much of the intermingled Stolen Funds), and

others launder the Stolen Funds into the United States, in violation of British worldwide freezing

orders. [*See generally* ECF No. 120.][1] Ablyazov and Ilyas Khrapunov are defendants in a related

---

[1]     Pursuant to an order from Magistrate Judge Parker, [ECF No. 111], the Kazakh Entities

2

case, *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*, No. 15 Civ. 5345 (S.D.N.Y.) (the "Related Case").

The Kazakh Entities, in developing asset recovery cases and tracing the Stolen Funds, sought the help of numerous witnesses, sources, governments, investigators, law firms, consultants, and experts. One such consultant was an entity named Litco LLC, which held itself out as an asset recovery specialist through its lawyer, Robert Wolf.

### A. Magistrate Judge Parker Carefully Reviewed the Facts Bearing on the Confidential Assistance Agreement that the Kazakh Entities and Litco Signed in 2015.

On June 12, 2015, the Kazakh Entities entered into a Confidential Assistance Agreement ("CAA") with Litco LLC. [Op. 7-8; ECF No. 121-2.][2] Under the CAA, Litco agreed to "provide information, assistance and cooperation" in locating and recovering assets, including by, among other things, identifying witnesses with information about the Kazakh Entities' stolen funds and who could potentially testify in legal proceedings. [Op. 8; ECF No. 121-2 at §§ B, 6(e).] In exchange, Litco was to be paid a monthly fee and percentage of any recovery that Litco helped to obtain. [Op. 8; ECF No. 121-2 at § 2.] As an important element of the CAA, Litco made a representation that "[n]o potential witness which Litco identifies and produces . . . in connection with assistance to be provided under this Agreement shall have any ownership interest in Litco

---

filed the above-cited unredacted version of their First Amended Complaint, [originally filed as ECF No. 83].

[2]     Pursuant to an order from Magistrate Judge Parker, [ECF No. 112], the Kazakh Entities filed unredacted versions of the Declaration of Matthew L. Schwartz, [ECF No. 121], and exhibits thereto, [ECF Nos. 121-1 through -11], that were submitted in opposition to Sater's motion to stay. [That declaration and its exhibits were originally filed as ECF Nos. 89 & 89-1 through -11.]

or in the Monthly Fees or Recoveries Consideration payable to Litco under this Agreement."
[Op. 8; ECF No. 121-2 at § 6(e).]

The CAA provides for the release of certain claims against Litco and its officers, directors, shareholders, and others. However, the release does "not apply under any circumstances or in any way to any of the Khrapunov Entities or Ablyyazov [sic] Entities," as those terms are broadly defined in the CAA. [Op. 10; ECF No. 121-2 at § 10.][3]

The CAA also provides for the arbitration of disputes "arising out of or relating to" the agreement, and specifies that any award issued in arbitration "shall be conclusive and binding upon the Parties." [Op. 10; ECF No. 121-2 at § 14.] Under the CAA, the "Parties" are the Plaintiffs here (*i.e.*, BTA Bank and the City of Almaty), the Republic of Kazakhstan, an investigative firm called Arcanum (Asia) Limited, and Litco. [Op. 10; ECF No. 121-2 at p. 1 (introductory paragraph).] As Magistrate Judge Parker noted, the CAA does not mention Sater at all: he is not listed in the release language, he is not mentioned in the arbitration provision, he is not identified as having any relationship to Litco, and he did not sign the CAA. [Op. 8.] Instead, the CAA was signed on behalf of Litco by Kalsom Kam, whose title is listed on the CAA as "director" of Litco. [Op. 8; ECF No. 121-2 at p. 9.]

**B. Magistrate Judge Parker Carefully Reviewed the Record Bearing on When Sater First Revealed his Ownership of Litco.**

After the CAA was signed, Litco introduced Felix Sater to Arcanum as a witness and source of information. [Op. 7-9; ECF No. 121-1, Day 2 at 164:13-165:25.] Sater had long been

---

[3]    Sater's quotation of the release omits this sentence and fails to note the omission. [ECF No. 147 (hereinafter "Br.") 4-5.] That is presumably because, even if the CAA and its release are otherwise valid, the release does not apply to Sater, who – through his relationship with Ablyazov, the Khrapunovs, and their entities including but not limited to the Swiss Promotion Group, [*see* Op. 6] – falls within this essential carve-out from the release, which was obviously intended to ensure that wrongdoers such as Sater could not benefit from the release.

associated with the Khrapunov family and their various unlawful activities, assisting Ilyas

Khrapunov in laundering Stolen Funds. [Op. 6-7; *see also* ECF No. 121-1, Day 1 at 45:11-48:6;

301:2-19.] Under the CAA, Sater provided information and strategic intelligence to the Kazakh

Entities, mainly relating to the so-called Flatotel real estate investment in Manhattan. [Op. 10;

*see* ECF No. 121-1, Day 1 at 359:4-11.]

At a September 2018 deposition in the Related Case, Sater testified and revealed to the

Kazakh Entities' counsel for the first time that he was the sole owner of Litco. [Op. 11; ECF No.

121-1, Day 1 at 31:23-32:3.] This revelation blind-sided the Kazakh Entities, who had never

dealt directly with Litco or its counsel, and who had no idea that Sater owned Litco. [Op. 11;

ECF No. 121-11 at 215:22-216:5; 235:1-3.][4] Arcanum, which had been the primary point of

contact with Litco, has likewise declared that it had no idea that Sater owned Litco. [Op. 28; ECF

Nos. 121-5, -6, & -11 at 183:13-184:18.] Nor did counsel for the Kazakh Entities. [Op. 16; ECF

No. 121-11 at 15:17-17:3.] Indeed, Litco's counsel Robert Wolf – who was the primary point of

contact for Litco – admitted that he told counsel for the Kazakh Entities *the day before Sater's*

*deposition* that he did not know who owned Litco, [ECF No. 121-11 at 86:21-87:13], even

though he well knew that Sater owned it, [*id.* at 87:14-17; *see also* Op. 7-9].

---

[4]     On August 8, 2019, Magistrate Judge Parker held an evidentiary hearing in the Related
Case on the question of when the Kazakh Entities or their agents learned that Sater owns Litco.
Prior to that hearing, the Kazakh Entities submitted declarations from two Arcanum employees
attesting that neither Sater nor anyone else ever disclosed to them that Sater owned Litco, and
that they did not become aware of this fact until they were informed of it after Sater's September
2018 deposition. [ECF Nos. 121-5 & -6; *see also* Op. 28.] At the hearing, representatives of
Arcanum, BTA Bank, the City of Almaty, and their (undersigned) counsel likewise testified
before Magistrate Judge Parker that they had no knowledge of Sater's ownership of Litco prior
to his deposition. [ECF No. 121-11 at 183:13-184:18 (Arcanum); 215:22-216:5 (BTA); 235:1-3
(Almaty); and 15:17-17:3 (counsel).]

To the contrary, the Kazakh Entities had every reason to believe that Sater – like other witnesses and sources of information that Litco claims credit for – had no such interest. Sater had not signed the CAA and is not mentioned in it, and no one ever disclosed his ownership interest to the Kazakh Entities. [Op. 8, 16, 28 & 32.] Moreover, Sater's apparent ownership of Litco was directly at odds with Litco's contractual representations in the CAA that no witness produced by Litco would have a direct or indirect economic interest in the fees paid to Litco. [*See* Op. 8; ECF No. 121-2 at § 6(e).] Indeed, Sater himself confirmed at his September 2018 deposition that the Kazakh Entities and their agents had no idea of his ownership of Litco. At this first deposition, Sater testified that he never discussed Litco with Arcanum or anyone else, aside from his counsel. [ECF No. 121-1, Day 1 at 358:24-359:3 (testifying that he "did not" "ever discuss Litco with Arcanum," and that "the name [Litco] never came up"); *id.* at 359:17-22 (responding "I don't believe so, no" to the question of whether he had "ever disclosed that agreement [CAA] to anyone" "[o]utside of [his] counsel"); *see also id.* at 18:3-8 (testifying that he never met or communicated in the past with any representative of Almaty or BTA); *id.*, Day 2 at 144:13-24 (responding "I don't know" to the question of whether he knew "whether the attorneys or other representatives of Almaty, BTA and Kazakhstan knew of your identity as owner of Litco").] As Magistrate Judge Parker stated, Sater testified that he deliberately sought to hide his affiliation with Litco. [Op. 8, 16 & 32.]

### C. As Magistrate Judge Parker Noted, Following Sater's Deposition, the Kazakh Entities Declared Litco in Breach of the CAA, and Litco Responded by Initiating an Arbitration.

On October 9, 2018, soon after Sater's revelation, the Kazakh Entities terminated the CAA and demanded the return of all consideration paid to Litco. [Op. 11; ECF No. 121-4.] The Kazakh Entities declared that Litco had breached the CAA by "ma[king] false representations in the Agreement" that "caused money to be paid to witnesses in violation of the express terms of

the Agreement." [ECF No. 121-4 at 1.] In addition, the Kazakh Entities declared Litco in breach because Sater admitted that Litco had failed to provide honest information to the Kazakh Entities, including failing to disclose that Sater had personally retained more than $20 million of Stolen Funds, [ECF No. 121-4 at 1-2; ECF No. 121-1, Day 1 at 257:3-19; *see also id.*, Day 2 at 18:23-19:11], and that Litco had failed to disclose certain confidentiality obligations that Sater had to Ilyas Khrapunov and his companies, [ECF No. 121-4 at 2; ECF No. 121-1, Day 1 at 250:24-251:7].

Three days later, on October 12, 2018, Litco responded by preemptively filing a demand for arbitration with the American Arbitration Association ("AAA"). [Op. 11; ECF No. 121-7.] In its demand, Litco claimed $9.5 million in fees and other compensation purportedly owed to it. [ECF No. 121-7 at 1.] Litco's demand named all of the signatories to the CAA as respondents. [ECF No. 121-7 at 1 & 3.] Sater is not and has never been a party to the arbitration. [Op. 31.]

In February 2019, Sater was deposed again in the Related Case. At this continued deposition, after the Kazakh Entities had declared Litco in breach of the CAA and with Litco's arbitration pending, Sater altered much of his testimony. While Sater had previously testified that he never discussed Litco with Arcanum or anyone else (except his counsel), he testified at his continued deposition that he "believe[d]" that he had communicated with Peder Garske, Arcanum's now-deceased General Counsel, concerning his ownership of Litco. [ECF No. 121-1, Day 2 at 145:14-23.] When pressed, however, Sater testified that he did not know whether his ownership of Litco "was something [he] discussed or was . . . something inferred from these meetings with Arcanum." [ECF No. 121-1, Day 2 at 249:5-10.] Sater also testified that he did not interact with the Kazakh Entities themselves or their agents (including Arcanum) during the negotiation of the CAA. [ECF No. 121-1, Day 2 at 99:19-23 (stating that "[t]he entire agreement

7

negotiations, items in the agreement, conversations about took place between myself and my attorney, Robert Wolf, and him and representatives of all the various entities"); *see also* Op. 7-8.]

Following the February 2019 deposition, and only after the Kazakh Entities had developed sufficient non-confidential evidence of Sater's role in profiting from the money-laundering scheme, the Kazakh Entities filed this action against Sater and his co-conspirators for conduct that predated the existence of Litco and the CAA.[5] Following the initiation of this lawsuit, in an evidentiary hearing in the Related Case in August 2019, Sater changed his testimony yet again. Sater had initially denied discussing Litco with Arcanum at all, [ECF No. 121-1, Day 1 at 358:24-359:3], and subsequently asserted that Arcanum must have known about his ownership of Litco but could not say whether it was something discussed or "inferred," [ECF No. 121-1, Day 2 at 249:5-10]. After being sued by the Kazakh Entities, Sater changed his testimony to assert more definitively that he had told Garske, who died in January 2016, about his ownership of Litco. [ECF No. 121-11 at 159:19-21.] Sater, of course, knew that, because Garske is deceased, Sater could make uncontradicted assertions about his dealings with Garske. Even so, Sater was necessarily consistent throughout that he had never disclosed his ownership

---

[5]     Sater accuses the Kazakh Entities of waiting two years to file this action and of doing so only to pressure Litco to drop the arbitration. [Br. 2 & 7.] This accusation is baseless. As the Kazakh Entities have previously explained, [*see* Case No. 15 Civ. 5345, ECF No. 993], although "Sater went from being witness to target" in 2017 after they learned that Sater had pocketed more than $20 million in Stolen Funds, that fact was learned through confidential discovery in the Related Case that, under the protective order in that case, could not be used in other matters, [*see* Case No. 15 Civ. 5345, ECF No. 253]. The Kazakh Entities therefore had to build a case against Sater and the other defendants based on their own investigation, which required time to develop. There was no basis for Sater's accusation of deliberate delay, and Magistrate Judge Parker did not credit it. [Op. 35.] Sater's allegation that this case was brought to pressure Litco to drop the arbitration is also baseless. To the contrary, it was the Kazakh Entities that sent a breach letter to Litco and would have initiated the arbitration, [*see* ECF No. 121-4], had Litco not done so by preemptively filing a bare-bones one-page demand for arbitration.

of Litco to BTA, Almaty, or their counsel, knowing that otherwise he would be directly

contradicted. [ECF No. 121-11 at 148:25-149:7; 150:20-151:5.]

### D.  Magistrate Judge Parker Properly Understood and Considered the Status and Anticipated Future Timing of the Pending Arbitration.

On July 2, 2019, the arbitration panel conducted its very first procedural hearing, and

stated that the arbitrators would be available to begin hearing evidence in May 2020. On August

19, 2019, Litco submitted its Statement of Claim in the arbitration, a week ahead of the August

26, 2019 deadline set by the panel in its first procedural order. [ECF No. 121-8 at § 1.] The same

day, Sater filed his motion to stay this action. [ECF Nos. 77-80.] In its Statement of Claim, Litco

raised claims that purport to seek declaratory relief finding that Plaintiffs' claims in this case

have been released (Litco's Third Claim) and monetary damages for Sater's legal fees in this

action, for which Litco purportedly has agreed to indemnify him (Litco's Fourth Claim). [Op. 11;

ECF No. 121-9 at 19-20.]

In accordance with the arbitrators' first procedural order, the Kazakh Entities submitted

their Answering Statement and Counterclaims on September 30, 2019. [Declaration of Matthew

L. Schwartz ("Decl."), Ex. 2.] The Kazakh Entities objected to Litco's Third and Fourth Claims

for Relief by arguing, among other things, that the question of whether the CAA's release

provision applies to or is enforceable as to Sater is not properly before the panel, because Sater is

not a party to the arbitration. [Op. 11-12; Decl., Ex. 2 at 21-24.] The Kazakh Entities also argued

that the CAA is void *ab initio* as to Litco because Litco fraudulently induced the Kazakh Entities

to enter into the agreement by concealing Sater's dual status as both a witness and the sole owner

of Litco, and by concealing his receipt of more than $20 million of the Kazakh Entities' stolen

funds. [Op. 11-12; Decl., Ex. 2 at 23-33.]

On November 6, 2019, the arbitration panel requested briefing from the parties on whether to bifurcate the proceeding into separate hearings on liability and damages, respectively, as contemplated by its first procedural order. [Op. 12; Decl., Ex. 3 at § A.4.]  In November and December, the parties filed written submissions, with Litco opposing bifurcation, and the Kazakh Entities supporting it as the most efficient and cost-effective way to resolve the arbitration. [Decl., Ex. 3 at § A.5.]

Subsequent to Magistrate Judge Parker's Opinion & Order, on January 2, 2020, the panel issued its second procedural order, which states that the proceeding will not be bifurcated "in the usual sense," but which requests threshold briefing and a hearing to address the issue of whether it has jurisdiction over Litco's Third and Fourth Claims for Relief, which concern Sater's claim to a release. [Decl., Ex. 3 at § B.5.] The parties must submit their briefs on that question by March 31, 2020. [Decl., Ex. 3 at p. 6 § 4.] The second procedural order also sets a new timeline for the merits hearing in the arbitration, which now will occur sometime between October 1, 2020 and January 22, 2021, several months after the May 2020 date discussed during the first procedural hearing. [Decl., Ex. 3 at p. 6 §§ 2-3.]

### E.  Following Extensive Briefing and Oral Argument, Magistrate Judge Parker Denied Sater's Motion to Stay Pending Arbitration in its Entirety.

On August 19, 2019, Sater moved to stay this action pending arbitration. [ECF Nos. 77 & 80.] On September 11, 2019, the Kazakh Entities filed their opposition to Sater's motion to stay [ECF Nos. 89 & 90],[6] and on September 24, 2019, Sater filed his reply [ECF Nos. 93 & 94]. At Magistrate Judge Parker's request, extensive oral argument was held on the motion on November

---

[6]     As referenced in note 2, pursuant to an order from Magistrate Judge Parker, [ECF No. 112], the Kazakh Entities filed unredacted versions of their memorandum of law in opposition to Sater's motion to stay, [ECF No. 122], as well as the related declaration and exhibits, [ECF Nos. 121 & 121-1 through -11].

18, 2019. [ECF No. 115; Decl., Ex. 1.] Following the oral argument, Magistrate Judge Parker permitted Sater to file a further ten-page supplemental brief in support of his motion, which he did on November 25, 2019. [ECF No. 131.] On December 6, 2019, Magistrate Judge Parker issued a 37-page Opinion & Order denying Sater's motion to stay. [ECF No. 144.] Sater filed his objections to Magistrate Judge Parker's Opinion & Order on December 20, 2019. [ECF Nos. 146 & 147 (the latter hereinafter "Br.").]

Magistrate Judge Parker ruled that the Kazakh Entities "cannot be compelled to arbitrate Sater's affirmative defense of waiver and release" under any of the theories that Sater presented (theories based on his undisclosed role as an officer or member of Litco, purported third-party beneficiary status, or equitable estoppel). [Op. 33-34.] Magistrate Judge Parker stressed that the arbitration provision on its face "pertains only to arbitration between the 'Parties,' and the 'Parties' are defined as the signatories to the CAA" – thereby excluding Sater, who is not a signatory. [Op. 23.] Further, Magistrate Judge Parker noted that the arbitration provision "states that any arbitration award is binding only on the Parties to the CAA," leading to the conclusion that "[n]othing in the arbitration provision indicates that" Sater, as "a non-signatory officer of Litco," may arbitrate claims or defenses "unrelated to [his] work for Litco under the CAA." [Op. 23-24.] In light of the emphasis on the "Parties" in the arbitration provision, Magistrate Judge Parker held that Sater failed to establish that he is a third-party beneficiary of the arbitration provision, as required to obtain a stay pending arbitration. [Op. 26-27.] Magistrate Judge Parker also held that, because Sater admitted to hiding his ownership of Litco, his relationship with the Kazakh Entities was not sufficiently close and the claims in the lawsuit were not sufficiently intertwined with the CAA to permit Sater to compel arbitration under an equitable estoppel theory. [Op. 29-33.] Finally, Magistrate Judge Parker declined to issue a discretionary stay

11

pursuant to the court's inherent powers, because, among other things, Sater had failed to show that the arbitration would conclude within a reasonably expeditious time frame and delay could result in deterioration of witnesses' recollections. [Op. 33-37.]

As Magistrate Judge Parker noted in her Opinion & Order, a "ruling on a motion to stay litigation pending arbitration is a non-case-dispositive motion properly before [Magistrate Judge Parker] under the Honorable Alison Nathan's general pretrial supervision referral under 28 U.S.C. § 636(b)(1)." [Op. 2 n.1 (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010); *Marcus v. Collins*, 16-CV-4221 (GBD) (BCM), 2016 WL 8201629, at *1 n.1 (S.D.N.Y. Dec. 30, 2016)).]

## ARGUMENT

I.  **MAGISTRATE JUDGE PARKER CORRECTLY CONCLUDED THAT THE KAZAKH ENTITIES NEVER CONSENTED TO ARBITRATION WITH SATER AND THAT SATER IS NOT A THIRD-PARTY BENEFICIARY OF THE ARBITRATION PROVISION, WHICH IS LIMITED TO CLAIMS BETWEEN THE PARTIES TO THE CAA.**

Because the obligation to arbitrate requires consent, the presumption in favor of arbitrability under the Federal Arbitration Act ("FAA") "has no application to the threshold question of whether an arbitration agreement *exists*." *Marcus*, 2016 WL 8201629, at *8 (citing *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 413 (S.D.N.Y. 2016) ("[T]he presumption of arbitrability does not bear on the threshold issue of whether the parties entered into a binding agreement to arbitrate at all.")). [*See also* Op. 16-17.]

Magistrate Judge Parker correctly noted that Sater is not a party to the agreement containing the arbitration provision and further correctly concluded that "New York law does not support Sater's argument" that he is a third-party beneficiary entitled to enforce the CAA "because the arbitration provision itself does not extend to non-parties and because there are factual issues that preclude a finding that Sater is an intended third-party beneficiary of the

CAA." [Op. 28.] Crucially, Magistrate Judge Parker recognized that courts in this Circuit, applying New York law, have held that even if a litigant is a third-party beneficiary of a contract, the litigant cannot enforce an arbitration provision that, on its face, applies only to disputes arising between the "Parties" to the contract, as the CAA does. [Op. 26-27 (citing *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605 (S.D.N.Y. 2011) (applying New York law), *aff'd sub nom. Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012)).] Specifically, the CAA's arbitration provision states that: "[t]he award rendered by the arbitrators shall be conclusive and binding *upon the Parties*"; arbitration expenses "shall be borne in the first instance equally *by the Parties*"; the provision "shall not prevent *the Parties* from settling any dispute by mutual agreement at any time"; and, regarding enforcement of arbitral awards, "*[e]ach of the Parties* hereby consents to the jurisdiction of the State and Federal Courts located in" New York County. [ECF No. 121-2 at § 14 (emphases added).] In addition, Magistrate Judge Parker rightly found that "serious factual disputes as to whether Plaintiffs knew that Sater was affiliated with Litco before his deposition in the Ablyazov Action" "preclude[] a finding on this motion that Sater was an intended third-party beneficiary of *any* provision in the CAA." [Op. 28 (emphasis added).] Such factual disputes do not provide a basis to arrive at a "definite and firm conclusion that a mistake has been committed," as would be necessary to conclude that the findings were clearly erroneous. *Easley*, 532 U.S. at 242. Thus, neither the law nor the facts support Sater's claim to third-party beneficiary status, and this Court should uphold Magistrate Judge Parker's ruling on this issue.

 *First*, Magistrate Judge Parker is correct that "[p]arties to a contract can intend for a third party to benefit from some provisions of a contract and not others," and that therefore "Sater must demonstrate that the parties to the CAA intended him to benefit from the arbitration

provision specifically" to enforce it under this theory. [Op. 26-27 (citing *Republic of Iraq*, 769 F. Supp. 2d at 612; *Williams v. Progressive Ne. Ins. Co.*, 41 A.D.3d 1244 (4th Dep't 2007); *Greater N.Y. Mut. Ins. Co. v. Rankin*, 298 A.D.2d 263 (1st Dep't 2002)).] When parties to an agreement draft an arbitration provision that specifically names the "Parties" but fails to make any mention of the non-party litigant seeking to enforce the provision, such omission supports the conclusion that the parties did not intend to extend the right of arbitration to the litigant, who consequently cannot enforce it as a third-party beneficiary. [Op. 27 (quoting *Republic of Iraq*, 769 F. Supp. 2d at 613-14).] Thus, even if Sater were correct that he is a third-party beneficiary of the CAA's release (he is not), it does not follow that he is also a third-party beneficiary of the agreement to arbitrate.

In *Republic of Iraq v. ABB AG*, a significant case that Magistrate Judge Parker cited, [*e.g.*, Op. 26-27], the court held that the plaintiff, which was not a party to the contract containing the arbitration provision, could not compel arbitration under the FAA because, even if it were a third-party beneficiary of the contract "in a general sense," it had not established that the parties to the contract intended it to have the right to enforce the arbitration provision, 769 F. Supp. 2d at 613. In reaching this conclusion, the court relied on the language of the arbitration provision, which referred to the rights and obligations of "either Party," "one Party," and "the other Party," and the well-settled principle that arbitration is a matter of consent, meaning that "a court will not resort to 'construction or implication' to find that a contract invests a third-party with a right to compel arbitration." [Op. 27 (quoting *Republic of Iraq*, 769 F. Supp. 2d at 612-14).]

As Magistrate Judge Parker observed, the arbitration provision here likewise refers to the "Parties," defined in the CAA as the Kazakh Entities, the Republic of Kazakhstan, Arcanum, and

Litco. [Op. 10 & 27.] Sater is *not* within the definition of "Parties" as that term is used in the arbitration provision or elsewhere in the CAA. The arbitration provision refers to "Each of the Parties," which is language similar to the "either Party" terminology in *Republic of Iraq* that prevented Iraq, a non-party, from enforcing the provision as a third-party beneficiary. [ECF No. 121-2 at § 14.] As Magistrate Judge Parker noted specifically, the arbitration provision states that any arbitration award "shall be conclusive and binding upon the Parties," reinforcing her conclusion that the Parties to the agreement did not intend to grant Sater – who is not a party to the CAA and not named in its arbitration provision or elsewhere – the right to arbitration. [Op. 27; ECF No. 121-2 at § 14.] Absent the expression of such intent in the plain language of the arbitration provision, Sater is not a third-party beneficiary entitled to a stay under the FAA.

Sater's arguments to the contrary are unavailing. Specifically, whether Sater is a beneficiary of the CAA's release provision has no bearing on whether he is a third-party beneficiary of CAA's *arbitration* provision, which is essential to obtaining an FAA stay under a third-party beneficiary theory, as the court held in *Republic of Iraq*. Aside from misstating the Kazakh Entities' position on his entitlement to a release – which the Kazakh Entities have made clear they will contest [Decl., Ex. 1 at 43:19-24] – Sater mistakenly claims that, if he is a beneficiary of the release, then he must *also* be a beneficiary of the arbitration provision [Br. 11-14]. But Magistrate Judge Parker correctly explained that New York law does not conflate these questions. Rather, New York law requires that a litigant prove that he is a third-party beneficiary of an arbitration provision specifically – not of another provision, or of the contract in a general sense – to stay litigation under the FAA. [Op. 26-28 (citing *Republic of Iraq*, 769 F. Supp. 2d at 612-14).] Thus, on the issue of whether Sater is entitled to an FAA stay as a third-party beneficiary, it is of no consequence that he claims to be a beneficiary of the CAA's release

provision; the fact that he is not a third-party beneficiary of the arbitration provision is dispositive.

*Second*, Magistrate Judge Parker concluded properly that Sater failed to meet his burden of demonstrating that he is a third-party beneficiary of the CAA more generally. [Op. 26 & 28.] New York courts have sanctioned a third party's right to enforce a contract in just two situations, neither of which applies here: when the third party is the only one who could recover for the breach of contract; or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party. [Op. 25-26.] *See also Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018); *Oursler v. Women's Interart Ctr., Inc.*, 170 A.D.2d 407, 408 (1st Dep't 1991).

Here, the first situation does not apply, because Litco seeks to recover for alleged breach of the CAA. [Op. 26 & 28; ECF No. 121-9.] *See Oursler*, 170 A.D.2d at 408. The second situation does not apply, because, as Magistrate Judge Parker specifically noted, there are no indicia on the face of the contract of an intent to permit enforcement by Sater – who did not sign the CAA, is not mentioned within it, and admitted to actively concealing his ownership of Litco from the Kazakh Entities. [Op. 25-26 & 28.] On the contrary, as far as the Kazakh Entities knew and intended, Sater was part of the group of people expressly intended *not* to benefit from the CAA – *i.e.*, potential witnesses, who, under § 6(e), were barred from receiving any compensation. Magistrate Judge Parker – drawing all reasonable inferences in favor of the Kazakh Entities, as required [Op. 28; *see supra* p. 2] – accurately determined that Sater did not satisfy his burden of showing third-party beneficiary status. This factual determination was plainly not clearly erroneous.

## II.   MAGISTRATE JUDGE PARKER CORRECTLY CONCLUDED THAT SATER CANNOT ENFORCE THE ARBITRATION PROVISION ON THE BASIS OF EQUITABLE ESTOPPEL.

Magistrate Judge Parker correctly applied the "intertwinedness" test from *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008). [Op. 29.] Sater concedes that this test governs whether he is entitled to participate in the pending arbitration based on equitable estoppel. [Br. 14.] As noted in the Opinion & Order, it is telling that "Sater cites no case in which a court granted a motion to compel arbitration or stay pending arbitration in similar circumstances under an estoppel theory (*i.e.*, when a non-signatory to an arbitration agreement sought to compel a signatory to arbitrate an affirmative defense to claims that are not arbitrable) under the *Sokol* test or New York law." [Op. 33.] Nor are the Kazakh Entities aware of such a case, and Sater yet again fails to cite any in his brief objecting to the Opinion & Order.

Although the absence of either sufficiently intertwined issues *or* a sufficiently close relationship would suffice to defeat Sater's claim to equitable estoppel under the *Sokol* test, [Op. 30 (citing *Ross v. Am. Express Co.*, 547 F.3d 137, 145-46 (2d Cir. 2008))], Magistrate Judge Parker's Opinion & Order provides a full explanation of how Sater failed to satisfy both prongs of this test, [Op. 29-33]. Given the considerable factual disputes between the parties, and the requirement that, on a stay motion, all reasonable inferences be made in favor of the non-moving party (the Kazakh Entities) – which inferences cannot be overturned absent a definite and firm conviction that they were mistaken – this Court should uphold Magistrate Judge Parker's well-founded conclusion that Sater cannot invoke equitable estoppel.

### A.  Magistrate Judge Parker Carefully Analyzed the Issues in this Lawsuit and the Arbitration and Correctly Concluded that They Are Not Sufficiently Intertwined.

Regarding the first prong of the *Sokol* test, Sater mischaracterizes Magistrate Judge Parker's reasoned ruling that the dispute between Sater and the Kazakh Entities in this lawsuit is

not sufficiently intertwined with the CAA to permit equitable estoppel. [Op. 31-32.] Rather than having "summarily determined" that issue [Br. 15], the Opinion & Order faithfully adheres to the principle that "mere . . . similarities in subject matter will not justify estoppel," *Bankers Conseco Life Ins. Co. v. Feuer*, 16 Civ. 7646 (ER), 2018 WL1353279, at *4 (S.D.N.Y. Mar. 15, 2018).

Magistrate Judge Parker reasonably found that, in contrast to *Bankers Conseco Life Insurance Co. v. Feuer* – where the court permitted estoppel because it found that the arbitration and lawsuit concerned "almost identical causes of action," and it was "difficult to see a basis for Plaintiffs' claims [in the lawsuit] without the existence of the agreements [containing the arbitration provisions]," *id.* at *5-6 – "Sater's affirmative defense of release and waiver in this action is too attenuated from the CAA to meet the *Sokol* intertwined-ness test," [Op. 31]. Indeed, Magistrate Judge Parker observed that, unlike *Bankers Conseco*, there is no legitimate overlap in the causes of action at issue in this lawsuit and the arbitration, and neither Litco nor the CAA forms any part of the Kazakh Entities' claims in this action. [*See* Op. 31 (noting that the dispute between Sater and the Kazakh Entities in this lawsuit "relates to Sater's conduct before the CAA was signed and has nothing to do with Litco or Sater's ownership and efforts on behalf of Litco," and that "Sater himself is not a party to the Litco arbitration, and the reason Litco is seeking a ruling on the release appears to pertain to its obligation of indemnification to Sater").] Sater argues in his objections to the Opinion & Order that his affirmative defense of release in this action is sufficiently intertwined with the CAA. [Br. 17.] But Sater does not cite, and we are not aware of, a single case holding that a defense to claims that are not arbitrable would suffice to establish intertwinedness under the *Sokol* test or New York law. Magistrate Judge Parker carefully noted the absence of any such authority. [Op. 33.] There is a reason why there is no case supporting Sater's position: if Sater's argument were correct, then a defendant could always

try to manipulate a non-arbitrable claim into arbitration by raising a defense that was somehow related to the subject matter of the contract containing an arbitration provision. Magistrate Judge Parker's analysis of the *Sokol* test's first prong – which "is heavily dependent on the facts and circumstances surrounding Plaintiffs' claims and the underlying agreement" – is well-reasoned and not clearly erroneous or contrary to law. *Bankers Conseco*, 2018 WL 1353279, at *5.

### B. Magistrate Judge Parker Properly Found that There Is Not a Sufficiently Close Relationship Between the Kazakh Entities and Sater to Warrant Estoppel.

Regarding the second prong of the *Sokol* test, Magistrate Judge Parker correctly concluded that there is not a sufficiently close relationship between the Kazakh Entities, signatories to the CAA, and Sater, a non-signatory, to justify estoppel – which alone is enough to defeat Sater's attempt to enforce the CAA's arbitration provision under this theory. [Op. 30 (citing *Ross*, 547 F.3d at 145-46); *see also* Br. 15 (citing *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (Nathan, *J.*)).] It is well established that just because "a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them" does not mean that "that party will be estopped from refusing to arbitrate." *Sokol*, 542 F.3d at 359. As the Opinion & Order explained, "the non-signatory and signatory must have a relationship that is close enough to conclude that the signatory effectively consented to extend its agreement to arbitrate to the non-signatory or that it would be inequitable to allow the signatory to avoid arbitration." [Op. 29 (citing *Sokol*, 542 F.3d at 361).] Magistrate Judge Parker explained that courts in this Circuit have found a sufficiently close relationship when the signatories to an arbitration agreement conducted themselves as if the non-signatory was also party to that agreement. Such cases involve (1) the signatories treating a non-signatory corporate affiliate or successor as a party performing the contract for one of the signatories, and (2) the signatories all dealing directly with

a *known* non-signatory affiliate or successor. [Op. 30-31 (collecting cases).] *Accord Ross*, 547

F.3d at 144-45. By contrast, the Opinion & Order notes that estoppel is inappropriate where a

signatory was unaware that by signing an agreement it entered into a relationship with the non-

signatory that is subsequently seeking to compel arbitration. [Op. 31 (citing *In re A2P*, 972 F.

Supp. 2d at 477-80 (applying equitable estoppel where plaintiffs-signatories "cannot claim that

they were unaware that by signing onto the Agreement they were entering into a relationship

with" the non-signatories, and plaintiffs-signatories had failed to argue "that they were anything

but aware of this fact").]

Magistrate Judge Parker properly found that the relationship between the Kazakh Entities

and Sater "is not close," and therefore that Sater cannot invoke equitable estoppel to obtain an

FAA stay. [Op. 32.] The Opinion & Order aptly analogized this case to cases such as *Ross v.

American Express Co.*, in which the Second Circuit rejected estoppel because the non-signatory

was not mentioned anywhere in the agreements containing the arbitration provision, had no

disclosed role in the formation of the agreements, and its only relation to the agreements "was as

a third party allegedly attempting to subvert the integrity" of the agreements. [Op. 30-32.] 547

F.3d at 146. As in *Ross*, "nothing about the formation of the CAA suggests that Plaintiffs

implicitly consented to extend their agreement to arbitrate" to the non-signatory Sater, who in

fact admits that he hid his ownership of Litco from the Kazakh Entities and their agents. [Op. 32;

*see also* ECF No. 121-1, Day 2 at 99:19-23.] "Likewise nothing in the CAA suggests that

Plaintiffs implicitly consented to extend their agreement to arbitrate to non-Parties to the CAA,"

let alone to Sater, whom the CAA does not name or otherwise reveal as both a potential witness

and the owner of Litco, in violation of Litco's express representation in § 6(e). [Op. 32; *see

generally* ECF No. 121-2.] In light of this evidence and drawing all reasonable inferences in

favor of the Kazakh Entities, Magistrate Judge Parker reached the only sound conclusion: that Sater lacked a sufficiently close relationship with the Kazakh Entities to rely on estoppel to obtain a stay under the FAA. This factual determination is entitled to deference, and is not clearly erroneous.

As with the first prong of the *Sokol* test, Sater mischaracterizes Magistrate Judge Parker's analysis of the relevant relationship. In particular, it is not the closeness of the relationship between Litco and Sater that matters for estoppel purposes, [Br. 17], but rather what matters is the relationship between Sater – the non-signatory seeking to enforce the arbitration provision – and the Kazakh Entities – the signatories against which he is attempting to enforce it, [*see* Op. 29 (relationship must be "close enough to conclude that the signatory effectively consented to extend its agreement to arbitrate to the non-signatory or that it would be inequitable to allow the signatory to avoid arbitration") (citing *Sokol*, 542 F.3d at 361)]. Likewise, the fact that the Kazakh Entities' agents had some interaction with Sater after the CAA and Confidentiality and Non-Disclosure Agreement ("CNDA") were executed, [Br. 17], does not suffice to establish a close relationship, since – as those agents and Sater himself have testified – the true nature of Sater's affiliation with Litco (*i.e.*, owner as well as witness) was deliberately concealed until Sater was asked about it under oath at his September 2018 deposition in the Related Case, [Op. 32-33].[7] Nor was Sater "the primary contact with Plaintiffs' agent, Arcanum." [Br. 17.] Rather, it

---

[7]     Magistrate Judge Parker noted that "Sater concedes" that he "insisted that Arcanum, Plaintiffs' investigative firm, enter into" the CNDA, [ECF No. 121-3], precisely so that he could "shield his affiliation from Plaintiffs and their counsel," [Op. 16]. As Magistrate Judge Parker described, the CNDA, which Wolf negotiated with Arcanum, provided that *if* Arcanum were to learn the identity of Litco's owner in the course of its work, it would not reveal the identity to the Kazakh Entities or their counsel. [Op. 9.] As representatives of Arcanum have sworn, they never learned that Sater owned Litco until after Sater's September 2018 deposition. [ECF Nos. 121-5, -6, & -11 at 183:13-184:18.] Litco and Arcanum are parties to the CNDA, which – like the CAA

was Wolf, Litco's attorney, who was the primary contact, [*see* Op. 7-9; *see also* ECF No. 121-11 at 12:10-19], and who testified that he told the Kazakh Entities' counsel *the day before Sater's deposition* that he did not know who owned Litco, [ECF No. 121-11 at 86:21-87:13], even though Wolf knew full well that Sater was the sole owner of Litco, [*id.* at 87:14-17]. As Magistrate Judge Parker rightly concluded, the relationship between the Kazakh Entities and Sater – marked by coordinated efforts to conceal his true affiliation with Litco – is simply not close and does not warrant equitable estoppel.

Finally, this Court should not be swayed by Sater's attacks on Magistrate Judge Parker's reliance on the record concerning whether Sater deliberately concealed his ownership of Litco from the Kazakh Entities. [Br. 14, 18.] Magistrate Judge Parker properly based her analysis on the testimony in the record – including Sater's own admissions – and adhered to the dictate that all reasonable inferences be drawn in favor of the Kazakh Entities as the non-moving party. [Op. 15, 28 & 32.] There is no basis to reverse Magistrate Judge Parker's well-supported findings under the clear error standard.

## III.   MAGISTRATE JUDGE PARKER PROPERLY REFRAINED FROM INVOKING THE COURT'S INHERENT DISCRETIONARY POWER TO ORDER A STAY.

The issuance of a stay pursuant to the court's inherent powers "is firmly within the district court's discretion," *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995), and the movant "bears a heavy burden of showing necessity" for such a stay, [Op. 34 (quoting *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991))]. Given these standards, Magistrate Judge Parker's denial of Sater's request for a discretionary stay was neither clearly erroneous nor contrary to law.

---

– does not mention and was not signed by Sater; neither the Kazakh Entities nor their counsel were parties to the CNDA. [ECF No. 121-3.]

In his objections to the Opinion & Order, Sater argues that the risk of inconsistent decisions single-handedly undermines Magistrate Judge Parker's denial of a discretionary stay. [Br. 20-21.] But Sater's argument ignores the fact that the decision of whether to issue a discretionary stay concerns multiple factors: judicial economy, unreasonable delay, undue prejudice to the parties resulting from any delay, and the court's "responsibility to adjudicate disputes." [Op. 33-34 (citing *Sierra Rutile*, 937 F.2d at 749-50; *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 564 (S.D.N.Y. 2011)).] Magistrate Judge Parker properly addressed these factors and reasonably concluded that "*all* factors weigh against a stay." [Op. 36 (emphasis added).]

The Opinion & Order explains that a stay would not advance judicial economy because "[n]one of the claims against Sater or the other defendants are before the arbitrator[s], thus none of the direct claims will be addressed at all in the arbitration." [Op. 34.] Similarly, because "Sater is a fact witness who will need to produce documents and testify in this action" regardless of whether the claims against him are stayed, "staying this action would not minimize costs to Sater or limit the scope of discovery." [Op. 35.] The Opinion & Order also notes that a stay would "prejudic[e] all parties to this litigation" because the "[f]ading memories of witnesses will only continue to fade with further delay." [Op. 35.] On the issue of delay, Magistrate Judge Parker referenced the applicable case law and concluded that "[a] delay of this litigation of potentially a year would be unreasonable and unfair to the other parties who are not moving for a stay." [Op. 34-35 (citing *Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013); *Flinn v. Bank of Am. Corp.*, Case No. 5:15-cv-193, 2016 WL 9334709, at *2 (D. Vt. June 1, 2016)).] The arbitration panel's recently issued second procedural order, which

reschedules the earliest possible date of the merits hearing from May 2020 to October 2020, reinforces Magistrate Judge Parker's concern.

Magistrate Judge Parker's analysis of the foregoing factors alone would suffice to defeat Sater's request for a discretionary stay. *See Flinn*, 2016 WL 9334709, at *2 ("The court's conclusion [of unreasonable delay] makes it unnecessary to consider the other elements that [the movant] would have to show to obtain a stay . . . ."). Nonetheless, Magistrate Judge Parker explained that there is no risk of inconsistent decisions because, as previously discussed, the claims at issue in this lawsuit and the arbitration are wholly distinct, and "the CAA states that the arbitrator's decision is not binding on Sater." [Op. 36.] "Sater's self-serving agreement" to abide by the arbitration panel's rulings "is not contractually enforceable," nor is it clear that any ruling from the panel on the release would have any preclusive effect in this action. [Op. 36 & n.8 (citing *Am. Shipping Line*, 885 F. Supp. at 502 ("It makes no sense to stay proceedings pending the end of an arbitration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in the federal courts anyway.")).]

Although the arbitration panel's most recent procedural order states that it has not yet reached any conclusion as to its jurisdiction over the release-related claims that Litco seeks to assert on Sater's behalf, [Decl., Ex. 3 at § B.5], the Kazakh Entities expect to demonstrate to the panel that, under governing law, Magistrate Judge Parker correctly ruled that Sater's claim to a release must be decided by the Court or a jury, not the arbitration panel, [Op. 34]. *See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 140-41 (2d Cir. 2007) ("Where the arbitrator goes beyond that self-limiting agreement *between consenting parties*, it acts inherently without power, and an award ordered under such circumstances must be vacated." (emphasis added)); *Techcapital Corp. v. Amoco Corp.*, No. 99 CIV. 5093(AGS), 2001 WL 267010, at *5-7

(S.D.N.Y. Mar. 19, 2001) (stating that "arbitrators exceed their authority when they determine the rights and obligations of one who is not a party to the arbitration proceeding," rendering any such award unenforceable); *Fiat S.p.A. v. Ministry of Fin. & Planning of Republic of Surin.*, No. 88 CIV. 6639 (SWK), 1989 WL 122891, at *4-5 (S.D.N.Y. Oct. 12, 1989) (holding that "the arbitration panel exceeded its authority when it purported to bind a non-signatory who was not expressly covered by the arbitration agreement," and that "[t]he proper forum would have been before the Court on a motion to compel arbitration"); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846-47 (6th Cir. 2003) ("An arbitration panel may not determine the rights or obligations of non-parties to the arbitration," nor "assert jurisdiction over non-parties to the arbitration."); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (reciting "the general rule that 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process'" (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999))). Because Sater's claim to a release is properly before the Court or a jury, not the arbitrators, there is no serious risk of inconsistent decisions.

## **CONCLUSION**

Because Magistrate Judge Parker's Opinion & Order is well-reasoned and adheres to the governing law – and is plainly not "clearly erroneous or contrary to law" – this Court should reject Sater's objections to the Opinion & Order and affirm the denial of Sater's motion to stay this action pending arbitration in its entirety.

Dated:  New York, New York
       January 8, 2020

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz
Alexandra C. Jumper

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
E-mail:  mlschwartz@bsfllp.com