# Exhibit 5

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the Agreement ), dated as of December 23, 2013 (the Effective Date ), is made and entered into by

(i)     **Triadou SPV SA**, a Luxemburgish company, having its business address at 15, Rue du Fort Bourbon, L-1249 Luxembourg; and its affiliates, **Argon Holding Corp.**, a Delaware corporation, having its business address in care of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; **Argon OPCO Inc.**, a domestic corporation, having its business address in care of Rosabianca & Associates, PLLC, 40 Wall Street, 30th Floor, New York, NY 10005; **Tri-County Mall Investors, LLC**, a Delaware limited liability company, having its business address in care of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; **Syracuse Center LLC**, a domestic limited liability company, having its business address in care of Rosabianca & Associates PLLC, 40 Wall Street, 30th Floor, New York, NY 10005 (hereinafter collectively referred as to  **Triadou** ); and

(ii)    **Felix Sater**, an individual, having his address at 130 Shore Road, Port Washington, NY 11050 ( **Sater** );

(hereinafter collectively referred to as the  Parties  and individually as a  Party ).

### RECITALS

WHEREAS, on or about July 18, 2013, the Sheriff of Hamilton County, Ohio, (the Sheriff ) sold at a public sale certain property located at 11700 Princeton Pike, Cincinnati, Ohio 45246 (the  Property );

WHEREAS, according to an order dated August 29, 2013 (the  Order ) from the Court of Common Pleas of Hamilton County, Ohio, the Sheriff sent by wire transfer USD $42,720,529.55 (the Sale Proceeds ) to a bank account opened by Sater and Daniel Ridloff ( Ridloff ) in the name of Tri-County Mall Investors, LLC ( Tri-County ), at JP Morgan Chase Bank (the  Tri-County s Bank Account );

WHEREAS, Sater and/or Ridloff transferred and delivered the entirety of the Sale Proceeds from the Tri-County s Bank Account to another bank account under the exclusive control of Sater;

WHEREAS, Sater claims his entitlement to the entirety of the Sale Proceeds, plus additional funds, from Triadou and other individuals and entities he claims are related to Triadou;

WHEREAS, the Parties are in dispute regarding Sater s claim of entitlement; and



1012663v5  014140.0102

Almaty-BTA0243613
Almaty-BTA_FS00243613

WHEREAS, the Parties have concluded that it is desirable and beneficial to them that their dispute be completely settled and released;

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Settlement Payments</u>.

1.1. The Parties agrees that Sater shall make a payment of Twenty Million Dollars (USD $20,000,000.00), as set forth in Section 2.5 below, to Argon Holding Corp. on behalf of Tri-County ( Settlement Payment ). The Settlement Payment is to be made by wire transfer to the following account:

| | |
|---|---|
| Bank Name: | JP Morgan Chase Bank |
| Account Number: | 526083022 |
| Routing Number: | 021000021 |
| Account Name: | Argon Holding Corp. |
| Address: | 40 Wall ST FL 30 |
| | New York, NY 10005-1304 |

1.2. The Parties agree that Sater shall be entitled, and has the right, to keep the remaining amount of the Sale Proceeds, net of the Settlement Payment described above, in the amount of USD $22,720,529.55. Triadou forever waives and relinquishes any and all claims it may have with regard to that USD $22,720,529.55

2. <u>Mutual Release</u>.

2.1. Triadou to Sater. In consideration of, and effective upon, receipt of the Settlement Payment as set forth in Section 1.1., Triadou hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Triadou ever had or now may have which may have arisen at any time on or prior to the date of execution of this Agreement. Notwithstanding anything contained in this paragraph or elsewhere in this Agreement to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, Sater from the performance of his obligations under this Agreement.



Almaty-BTA0243614
Almaty-BTA_FS00243614

2.2.  **Sater to Triadou.** Effective upon the Agreement being fully executed by the Parties, Sater hereby releases and fully and forever discharges Triadou from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which they ever had or now may have which may have arisen at any time on or prior to the date of execution of this Agreement.  Notwithstanding anything contained in this paragraph or elsewhere in this Agreement to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, Triadou from the performance of its obligations under this Agreement.

2.3.  The Parties agree that Triadou shall provide to Sater general releases, as set forth in Section 2.5 hereinafter, in the forms attached as Exhibit A, from the following entities and individuals:

(i)  **CF 135 West Member LLC**, a Delaware limited liability company, ( **Flatotel** );

(ii)  **Payment Card Systems**, an entity ( **PCS** );

(iii)  **Adlux**, an entity;

(iv)  **World Health Networks**, an entity;

(v)  **Bespoke**, an entity;

(vi)  **SDG Capital SA**, a Swiss entity ( **SDG** );

(vii)  **Swiss Promotion Group**, a Swiss limited liability company ( **SPG** );

(viii)  **Peter Sztyk**, an individual ( **Sztyk** ) ;

(ix)  **Nicolas Bourg**, an individual ( **Bourg** ) ;

(x)  **Lloyd LaMarca**, an individual ( **LaMarca** ) ;

(xi)  **Philippe Glatz**, an individual ( **Glatz** ) ;

(xii)  **Maxim Interbrick**, an individual ( **Interbrick** ) ;

(xiii)  **Laurent Foucher**, an individual ( **Foucher** ) ;

(xiv)  **Ilias Khrapunov**, an individual ( **Khrapunov** );

(xv)  **Alexander Yassik**, an individual ( **Yassik** ); and



Almaty-BTA0243615
Almaty-BTA_FS00243615

(xvi)   **Daniel Ridloff,** an individual ( **Ridloff** ).

2.4.   The Parties agree that Sater shall provide to Triadou reciprocal general releases, in the forms attached as Exhibits B, from Sater in favor of the individuals and entities listed in Section 2.3 above, and that he shall also provide Triadou with general releases, in the forms attached as Exhibits C, from Daniel Ridloff in favor of Triadou and the individuals and entities listed in Section 2.3 above.

2.5.   Sater s counsel will provide Triadou s counsel, no later than December 23, 2013 at 6:00pm Eastern time, with Sater s signature on this Agreement and any Accompanying Release, to be held in escrow by Triadou s counsel as set forth herein; Sater s counsel will notify Triadou s counsel, no later than December 23, 2013 at 6:00pm Eastern time, when the Settlement Payment is in its escrow account; upon receipt of that notification, but in no event later than December 23, 2013, Triadou s counsel will then transmit to Sater s counsel all signatures (other than Sater s) on this Agreement and the Accompanying Releases, to be held in escrow by Sater s counsel as set forth herein; upon receipt of such signatures, but in no event later than December 24, 2013 at 12:00pm (noon) Eastern time, Sater s counsel shall transmit the Settlement Payment as set forth in Section 1.1 above; and that upon receipt of the Settlement Payment as set forth in Section 1.1 herein above, all documents referred to herein as being held in escrow by the Parties  respective counsel shall be deemed released from escrow; Triadou s counsel will notify Sater's counsel in writing when the Settlement Payment is received.  For the avoidance of doubt, the receipt of Settlement Payment shall be a condition precedent to the effectiveness of this Agreement and the Accompanying Releases, all being exchanged in connection therewith. The Accompanying Releases shall mean for the purpose of this Agreement, the general releases contemplated in Sections 2.3 and 2.4 above.

2.6.   Nicolas Bourg, as agent, represents and warrants that he has obtained the necessary authority to sign this Agreement on behalf of Triadou and on behalf of the entities and individuals set forth in the Mutual General Release attached as Exhibits B and C.  The parties hereby agree that all releases shall not be effective unless reciprocal and that any individual or entity who or which may later be deemed not to have validly released any stated release shall not receive the benefit of a release from that stated releasee.  Nicolas Bourg and Triadou hereby agree to indemnify and hold Sater and Ridloff harmless from any liability, loss, or damages including reasonable attorneys  fees arising out of a breach of the warranties and representations contained in this Section.

3.   <u>No Admission</u>. Neither the transfer of any consideration, the doing of any of the acts referred to in this Agreement, nor anything else contained in this Agreement shall be taken or construed to be an admission on the part of any of the Parties to any claims, counterclaims, demands, causes of action, obligations, damages or liabilities asserted by any of the other Parties.  The Parties expressly deny any and all such claims, counterclaims, demands, causes of action, obligations, damages and liabilities.

Almaty-BTA0243616
Almaty-BTA_FS00243616

4.   Collateral duties to cooperate. Sater hereby represents and warrants that he will, at any time hereafter, take any and all steps and execute, acknowledge and deliver any and all instruments and assurances that Tri-County may need for accounting purpose.

5.   Confidentiality.  The parties agree that, unless required to be disclosed by law, the terms of this Agreement and the matters related to the Disputes shall be kept entirely confidential and neither party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The parties agree that unless required by law, neither party, nor its agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Agreement, except as expressly set forth herein. In the event a party receives a subpoena or other lawful request to disclose any of the terms of this Agreement, such party shall give prompt notice of such subpoena or request to the other party, so that such party has a sufficient opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish.  A breach of this provision may be prosecuted as a breach of contract, provided, however, that the party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure.  Nothing in this Paragraph shall prohibit the parties or their agents from disclosing the terms of this Agreement, to the parties  counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Agreement.

6.   Non-Disparagement.  In consideration of the respective obligations of the parties hereunder, the parties agree that they shall not directly or indirectly (i) engage in any conduct or make any statement, whether written or oral, disparaging, harassing, or criticizing in any way the other, either personally or relating to business, or (ii) engage in any other conduct or make any statement, whether written or oral, which could be reasonably expected to impair the goodwill, harass, or damage the reputation of the other, either personally or relating to business.   A party alleging a breach of this provision must allege and prove actual damages.

7.   Additional Documents.  The Parties shall execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

8.   Expenses.  Each party shall be responsible for its own costs and expenses (including fees and disbursement of counsel and other professionals) arising in connection with the action and incurred up to and including the drafting and

Almaty-BTA0243617
Almaty-BTA_FS00243617

execution of this Agreement.  The parties hereby agree to indemnify and hold each other harmless for any and all costs and expenses, including reasonable legal fees, that either party incurs due to the other party s failure to abide by all of the terms, obligations and conditions of this Agreement.

9.   <u>Notice</u>. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand, by Federal Express courier or by registered or certified mail, return receipt requested, with postage prepaid to either Party, as the case may be, at their addresses as first written above, or at such other addresses as they may designate by notice given hereunder, and in addition to the Parties  respective lawyers, as follows:  For Triadou, Rosabianca & Associates, Attn.: Diane Artal, Esq., 40 Wall Street, 30th Floor, New York NY 10005; and for Sater, Moses & Singer LLP, Attn.: Robert S. Wolf, Esq., The Chrysler Building, 405 Lexington Avenue, New York NY 10174.

10.   <u>Miscellaneous</u>.

10.1.   This Agreement represents the entire agreement of the Parties with respect to the subject matter hereof.  Each Party acknowledges that no representation or promise not expressly set forth in this Agreement has been made by any Party or any of their agents, employees, representatives or attorneys.  No modification of, or amendment to, this Agreement shall be valid unless it is in writing and signed by the Parties.

10.2.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Agreement by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Agreement.

10.3.   This Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties, and all provisions of this Agreement have been negotiated by the Parties at arm s length.  The Parties stipulate and agree that this Agreement shall not be construed against any Party as the drafter thereof, but rather shall be construed as if drafted by all Parties.

10.4.   This agreement shall be governed by, and construed in accordance with the law of the State of New York and any proceeding to enforce its terms shall be brought in Supreme Court of the State of New York, County of New York or the United States District Court in the Eastern or Southern Districts of New York.

Almaty-BTA0243618
Almaty-BTA_FS00243618

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed ad delivered by their respective duly authorized officers as of the day and year first written above:

**Triadou SPV SA**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Argon Holding Corp.**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Argon OPCO Inc.**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Tri-County Mall Investors, LLC**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Syracuse Center LLC**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

1012663v5  014140.0102

7

Almaty-BTA0243619
Almaty-BTA_FS00243619

Nicolas Bourg

_____

Felix Sater

_____

Almaty-BTA0243620
Almaty-BTA_FS00243620

Nicolas Bourg

_____

Felix Sater

_____

1012663v5  014140.0102

8

Almaty-BTA0243621
Almaty-BTA_FS00243621

## EXHIBITS A, B, C

### Mutual General Releases

1012663v5   014140.0102

9

Almaty-BTA0243622
Almaty-BTA_FS00243622

## MUTUAL GENERAL RELEASE

**This Mutual General Release** (the "Mutual General Release"), dated as of December 23, 2013 (the "Effective Date"), is made and entered into by

(i)     **Triadou SPV SA,** a Luxemburgish company, having its business address at 15, Rue du Fort Bourbon, L-1249 Luxembourg; and its affiliates, **Argon Holding Corp.,** a Delaware corporation, having its business address in care of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; **Argon OPCO Inc.,** a domestic corporation, having its business address in care of Rosabianca & Associates, PLLC, 40 Wall Street, 30th Floor, New York, NY 10005; **Tri-County Mall Investors, LLC,** a Delaware limited liability company, having its business address in care of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; **Syracuse Center LLC,** a domestic limited liability company, having its business address in care of Rosabianca & Associates PLLC, 40 Wall Street, 30th Floor, New York, NY 10005 (hereinafter collectively referred as to "**Triadou**");

(ii)    **Payment Card Systems,** an entity, having it business address in care of Groupe CreaCard, 17, Rue d'Orléans, 92200 Neuilly-sur-Seine, France ("**PCS**");

(iii)   **Adlux S.A.,** an entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**Adlux**");

(iv)    **World Health Networks,** an entity, having its business address at 45 Rockefeller Plaza, Suite 2300, 630 Fifth Avenue, New York, New York 10111 ("**WHN**");

(v)     **Bespoke,** an entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**Bespoke**");

(vi)    **SDG Capital S.A.,** a Swiss limited liability entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**SDG**")

(vii)   **Swiss Promotion Group S.A.,** a Swiss limited liability company, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**SPG**");

(viii)  **Peter Sztyk,** an individual, having an address at 6860, Rue Daveluy, St-Leonard, Quebec, H1T4C4, Canada ("**Sztyk**");

(ix)    **Nicolas Bourg,** an individual, having an address at 36, Rue de Dormans, L-1421 Luxembourg ("**Bourg**");

Page 1/13

Almaty-BTA0243623
Almaty-BTA_FS00243623

(i)  **Lloyd LaMarca,** an individual, having an address at 31, Chemin du Nantet, 1245 Collonge-Bellerive, Switzerland ("**LaMarca**");

(ii)  **Philippe Glatz,** an individual, having an address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**Glatz**");

(iii)  **Maxim Interbrick,** an individual, having an address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland ("**Interbrick**");

(iv)  **Laurent Foucher,** an individual, having an address at 96, Route de Suisse, 1290 Versoix, Switzerland ("**Foucher**");

(i)  **Iliyas Khrapunov,** an individual, having an address at 10, rue Pedro Meylan, 1208, Geneva, Switzerland ("**Khrapunov**");

(ii)  **Alexander Yassik,** an individual, having an address in care of Regus, Rue du Rhône 14, 1204 Geneva, Switzerland ("**Yassik**");

(iii)  **Felix Sater,** an individual, having his address at 130 Shore Road, Port Washington, NY 11050 ("**Sater**"); and

(x)  **Daniel Ridloff,** an individual, having his address at 403 East 62nd Street, Apt 9A, New York, NY 10065 ("**Ridloff**");

(hereinafter collectively referred to as the "Parties" and individually as a "Party").

## RECITALS

WHEREAS, Triadou and Sater entered into a Settlement Agreement and General Release on December 23, 2013 (the "Settlement Agreement"); and

WHEREAS, in connection with the Settlement Agreement, Triadou and Sater request that all the Parties first written above grant to, and receive from, each other a mutual general release as set forth hereinafter, which shall be annexed to the Settlement Agreement as Exhibit C.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## RELEASES

1. <u>Release from Triadou to Ridoff</u>.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Triadou hereby releases and fully and forever discharges Ridloff from and against

Page 2/13

Almaty-BTA0243624
Almaty-BTA_FS00243624

any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Triadou ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

2. <u>Release from Ridloff to Triadou</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Triadou from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

3. <u>Release from PCS to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, PCS hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which PCS ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

4. <u>Release from Ridloff to PCS</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges PCS from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

5. <u>Release from Adlux to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Adlux hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Adlux ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

Page 3/13

Almaty-BTA0243625
Almaty-BTA_FS00243625

6. <u>Release from Ridloff to Adlux</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Adlux from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

7. <u>Release from WHN to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, WHN hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which WHN ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

8. <u>Release from Ridloff to WHN</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges WHN from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

9. <u>Release from Bespoke to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bespoke hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bespoke ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

10. <u>Release from Ridloff to Bespoke</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Bespoke from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims,

Almaty-BTA0243626
Almaty-BTA_FS00243626

6.  Release from Ridloff to Adlux. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Adlux from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

7.  Release from WHN to Ridloff. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, WHN hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which WHN ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

8.  Release from Ridloff to WHN. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges WHN from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement,

9.  Release from Bespoke to Ridloff. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bespoke hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bespoke ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

10. Release from Ridloff to Bespoke. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Bespoke from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims,

⊛... except with regard to any compensation, bonus and/or stock options, which may Page 4/13
be due or bespoke deg (from WHN to Ridloff, as to which this release shall not be
effective to alter whatever the parties respective rights and obligations in that regard
may be as of the date hereof.

Almaty-BTA0243627
Almaty-BTA_FS00243627

6. <u>Release from Ridloff to Adlux</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Adlux from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

7. <u>Release from WHN to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, WHN hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which WHN ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

8. <u>Release from Ridloff to WHN</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges WHN from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.⊗

9. <u>Release from Bespoke to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bespoke hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bespoke ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

10. <u>Release from Ridloff to Bespoke</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Bespoke from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims,



⊗... except with regard to any compensation, bonus and/or stock options, which may Page 4/13
be due or become due from WHN to Ridloff, as to which this release shall not be
effective to alter whatever the parties respective rights and obligations in that regard
may be as of the date hereof.

Almaty-BTA0243628
Almaty-BTA_FS00243628

whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

11. <u>Release from SDG to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, SDG hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which SDG ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

12. <u>Release from Ridloff to SDG</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges SDG from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

13. <u>Release from SPG to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, SPG hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which SPG ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

14. <u>Release from Ridloff to SPG</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges SPG from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

15. <u>Release from Sztyk to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Sztyk

Almaty-BTA0243629
Almaty-BTA_FS00243629

hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sztyk ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

16. <u>Release from Ridloff to Sztyk</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Sztyk from and against any and all liabilities, obligations, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

17. <u>Release from Bourg to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bourg hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bourg ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

18. <u>Release from Ridloff to Bourg</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Bourg from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

19. <u>Release from LaMarca to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, LaMarca hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or

Almaty-BTA0243630
Almaty-BTA_FS00243630

under statute, which LaMarca ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

20. Release from Ridloff to LaMarca. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges LaMarca from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

21. Release from Glatz to Ridloff. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Glatz hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Glatz ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

22. Release from Ridloff to Glatz. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Glatz from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

23. Release from Interbrick to Ridloff. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Interbrick hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Interbrick ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

24. Release from Ridloff to Interbrick. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Interbrick from and against any and all liabilities, obligations,

Almaty-BTA0243631
Almaty-BTA_FS00243631

losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

25. Release from Foucher to Ridloff.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Foucher hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Foucher ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

26. Release from Ridloff to Foucher. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Foucher from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

27. Release from Khrapunov to Ridloff.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Khrapunov hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Khrapunov ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

28. Release from Ridloff to Khrapunov. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Khrapunov from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in

Page 8/13

Almaty-BTA0243632
Almaty-BTA_FS00243632

equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

29. <u>Release from Yassik to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Yassik hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Yassik ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

30. <u>Release from Ridloff to Yassik</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Yassik from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

31. <u>Release from Sater to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Sater hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

32. <u>Release from Ridloff to Sater</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

Almaty-BTA0243633
Almaty-BTA_FS00243633

33. Collateral duties to cooperate. Ridloff hereby represents and warrants that he will, at any time hereafter, take any and all steps and execute, acknowledge and deliver any and all instruments and assurances that Tri-County may need for accounting purpose.

34. Confidentiality. The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish. A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure. Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

35. Counterparts. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

Triadou SPV SA

By: _____
Name: Nicolas Bourg
Title: Authorized representative

Page 10/13

Almaty-BTA0243634
Almaty-BTA_FS00243634

*reasonable*

33. <u>Collateral duties to cooperate</u>. Ridloff hereby represents and warrants that he will, at any time hereafter, take any and all steps and execute, acknowledge and deliver any and all instruments and assurances that Tri-County may need for accounting purpose.

34. <u>Confidentiality</u>. The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish. A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure. Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

35. <u>Counterparts</u>. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

**Triadou SPV SA**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

Page 10/13

Almaty-BTA0243635
Almaty-BTA_FS00243635



*reasonable*

33. **Collateral duties to cooperate.** Ridloff hereby represents and warrants that he will, at any time hereafter, take any and all steps and execute, acknowledge and deliver any and all instruments and assurances that Tri-County may need for accounting purposes.

*reasonably*

34. **Confidentiality.** The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish. A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure. Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

35. **Counterparts.** This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

     IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

                    **Triadou SPV SA**

                    By: _____
                    Name: Nicolas Bourg
                    Title: Authorized representative

Almaty-BTA0243636
Almaty-BTA_FS00243636



*reasonable*

33. <u>Collateral duties to cooperate</u>. Ridloff hereby represents and warrants that he will, at any time hereafter, take any and all steps and execute, acknowledge and deliver any and all instruments and assurances that Tri-County may need for accounting purpose.

*reasonably*

34. <u>Confidentiality</u>.  The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish.  A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure.  Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

35. <u>Counterparts</u>. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

　　　IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

Triadou SPV SA

By: _____
Name: Nicolas Bourg
Title: Authorized representative

Page 10/13

Almaty-BTA0243637
Almaty-BTA_FS00243637

**Argon Holding Corp.**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Argon OPCO Inc.**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Tri-County Mall Investors, LLC**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**Syracuse Center LLC**

By: _____
Name: Nicolas Bourg
Title: Authorized representative

**PCS**

By: _____
Name: Nicolas Bourg, as authorized agent

**Adlux**

By: _____
Name: Maxim Interbrick, as Director

Page 11/13

Almaty-BTA0243638
Almaty-BTA_FS00243638

**World Health Networks**

By: _____
Name: Nicolas Bourg, as authorized agent

**Bespoke**

By: _____
Name: Nicolas Bourg, as authorized agent

**Swiss Development Group**

By: _____
Name: Nicolas Bourg, as authorized agent

**Swiss Promotion Group**

By: _____
Name: Nicolas Bourg, as authorized agent

**Peter Styck**

_____

**Lloyd LaMarca**

By: _____
Name: Nicolas Bourg, as authorized agent

**Philippe Glatz**

By: _____
Name: Nicolas Bourg, as authorized agent

Page 12/13

Almaty-BTA0243639
Almaty-BTA_FS00243639

**Maxim Interbrick**

_____

**Laurent Foucher**

_____

**Iliyas Khrapunov**

_____

**Alexander Yassik**

By: _____
Name: Nicolas Bourg, as authorized agent

**Nicolas Bourg**

_____

**Felix Sater**

_____

**Daniel Ridloff**

_____

Page 13/13

Almaty-BTA0243640
Almaty-BTA_FS00243640

Jul 10 12 02:56p    Richard Ridloff         5612413995              p.13

**Maxim Interbrick**

_____

**Laurent Foucher**

_____

**Illyas Khrapunov**

_____

**Alexander Yassik**

By: _____
Name: Nicolas Bourg, as authorized agent

**Nicolas Bourg**

_____

**Felix Sater**

_____

**Daniel Ridloff**

_____

Page 13/13

Almaty-BTA0243641
Almaty-BTA_FS00243641

# MUTUAL GENERAL RELEASE

**This Mutual General Release** (the "Mutual General Release"), dated as of December 23, 2013 (the "Effective Date"), is made and entered into by

(i)  **Payment Card Systems,** an entity, having its business address in care of Groupe CreaCard, 17, Rue d'Orléans, 92200 Neuilly-sur-Seine, France (**"PCS"**);

(ii)  **Adlux S.A.,** an entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"Adlux"**);

(iii)  **World Health Networks,** an entity, having its business address at 45 Rockefeller Plaza, Suite 2300, 630 Fifth Avenue, New York, New York 10111 (**"WHN"**);

(iv)  **Bespoke,** an entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"Bespoke"**);

(v)  **SDG Capital S.A.,** a Swiss limited liability entity, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"SDG"**)

(vi)  **Swiss Promotion Group S.A.,** a Swiss limited liability company, having its business address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"SPG"**);

(vii)  **Peter Sztyk,** an individual, having an address at 6860, Rue Daveluy, St-Leonard, Quebec, H1T4C4, Canada (**"Sztyk"**);

(viii)  **Nicolas Bourg,** an individual, having an address at 36, Rue de Dormans, L-1421 Luxembourg (**"Bourg"**);

(i)  **Lloyd LaMarca,** an individual, having an address at 31, Chemin du Nantet, 1245 Collonge-Bellerive, Switzerland (**"LaMarca"**);

(ii)  **Philippe Glatz,** an individual, having an address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"Glatz"**);

(iii)  **Maxim Interbrick,** an individual, having an address at 20, Rue Philippe-Plantamour, 1201 Geneva, Switzerland (**"Interbrick"**);

(iv)  **Laurent Foucher,** an individual, having an address at 96, Route de Suisse, 1290 Versoix, Switzerland (**"Foucher"**);

(i)  **Iliyas Khrapunov,** an individual, having an address at 10, rue Pedro Meylan, 1208, Geneva, Switzerland (**"Khrapunov"**);

Page 1/11

Almaty-BTA0243642
Almaty-BTA_FS00243642

(ii) **Alexander Yassik,** an individual, having an address in care of Regus, Rue du Rhône 14, 1204 Geneva, Switzerland ("**Yassik**"); and

(iii) **Felix Sater**, an individual, having an address at 130 Shore Road, Port Washington, NY 11050 ("**Sater**");

(hereinafter collectively referred to as the "Parties" and individually as a "Party").

## RECITALS

WHEREAS, Triadou SPV SA, a Luxemburgish company, and all of its affiliates in the United States of America (hereinafter collectively referred to as "Triadou") and Sater entered into a Settlement Agreement and General Release on December 23, 2013 (the "Settlement Agreement"); and

WHEREAS, in connection with the Settlement Agreement, Triadou and Sater request that the Parties first written above grant to, and receive from, each other a mutual general release as set forth hereinafter, which shall be annexed to the Settlement Agreement as Exhibits A and B.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## RELEASES

1. <u>Release from PCS to Sater</u>.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, PCS hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which PCS ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

2. <u>Release from Sater to PCS</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges PCS from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

Page 2/11

Almaty-BTA0243643
Almaty-BTA_FS00243643

3. <u>Release from Adlux to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Adlux hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Adlux ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

4. <u>Release from Sater to Adlux</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Adlux from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

5. <u>Release from WHN to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, WHN hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which WHN ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

6. <u>Release from Sater to WHN</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges WHN from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

7. <u>Release from Bespoke to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bespoke hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and

Page 3/11

Almaty-BTA0243644
Almaty-BTA_FS00243644

other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bespoke ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

8.  Release from Sater to Bespoke. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Bespoke from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

9.  Release from SDG to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, SDG hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which SDG ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

10. Release from Sater to SDG. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges SDG from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

11. Release from SPG to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, SPG hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which SPG ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

Almaty-BTA0243645
Almaty-BTA_FS00243645

12. <u>Release from Sater to SPG</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges SPG from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

13. <u>Release from Sztyk to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Sztyk hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sztyk ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

14. <u>Release from Sater to Sztyk</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Sztyk from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

15. <u>Release from Bourg to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Bourg hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Bourg ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

16. <u>Release from Sater to Bourg</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Bourg from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known,

Page 5/11

suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

17. Release from LaMarca to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, LaMarca hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which LaMarca ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

18. Release from Sater to LaMarca. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges LaMarca from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

19. Release from Glatz to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Glatz hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Glatz ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

20. Release from Sater to Glatz. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Glatz from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

21. Release from Interbrick to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement,

Almaty-BTA0243647
Almaty-BTA_FS00243647

Interbrick hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Interbrick ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

22. <u>Release from Sater to Interbrick</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Interbrick from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

23. <u>Release from Foucher to Sater</u>.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Foucher hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Foucher ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

24. <u>Release from Sater to Foucher</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Foucher from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

25. <u>Release from Khrapunov to Sater</u>.  In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Khrapunov hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or

Page 7/11

Almaty-BTA0243648
Almaty-BTA_FS00243648

under statute, which Khrapunov ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

26. <u>Release from Sater to Khrapunov</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Khrapunov from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

27. <u>Release from Yassik to Sater</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, Yassik hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Yassik ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

28. <u>Release from Sater to Yassik</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges Yassik from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

29. <u>Confidentiality</u>. The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall

Page 8/11

Almaty-BTA0243649
Almaty-BTA_FS00243649

furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish. A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure. Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel, accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

30. <u>Counterparts.</u> This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

    IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

**PCS**

By: _____
Name: Nicolas Bourg, as authorized agent

**Adlux**

By: _____
Name: Maxim Interbrick, as Director

**World Health Networks**

By: _____
Name: Nicolas Bourg, as authorized agent

Almaty-BTA0243650
Almaty-BTA_FS00243650

**Bespoke**

By: _____
Name: Nicolas Bourg, as authorized agent

**Swiss Development Group**

By: _____
Name: Nicolas Bourg, as authorized agent

**Swiss Promotion Group**

By: _____
Name: Nicolas Bourg, as authorized agent

**Peter Styck**

_____

**Lloyd LaMarca**

By: _____
Name: Nicolas Bourg, as authorized agent

**Philippe Glatz**

By: _____
Name: Nicolas Bourg, as authorized agent

Almaty-BTA0243651
Almaty-BTA_FS00243651

Maxim Interbrick

Laurent Foucher

Iliyas Khrapunov

Alexander Yassik

By: _____
Name: Nicolas Bourg, as authorized agent

Nicolas Bourg

Felix Sater

Page 11/11

Almaty-BTA0243652
Almaty-BTA_FS00243652

Maxim Interbrick

_____

Laurent Foucher

_____

Iiyas Khrapunov

_____

Alexander Yatsik

By: _____
Name: Nicolas Bourg, as authorized agent

Nicolas Bourg

_____

Felix Sater

_____

Almaty-BTA0243653
Almaty-BTA_FS00243653

## MUTUAL GENERAL RELEASE

**This Mutual General Release** ("Mutual General Release"), dated as of December 23, 2013 (the "Effective Date"), is made and entered into by **CF 135 West Member LLC**, a Delaware limited liability company, having its business address at 512 Seventh Avenue, 15th Floor, New York, NY 10018; **Daniel Ridloff**, an individual, having his address at 403 East 62nd Street, Apt 9A, New York, NY 10065 ("**Ridloff**"); and **Felix Sater**, an individual, having his address at 130 Shore Road, Port Washington, NY 11050 (hereinafter collectively referred to as the "Parties" and individually as a "Party").

### RECITALS

WHEREAS, Triadou SPV SA, a Luxemburgish company, and all of its affiliates in the United States of America (hereinafter collectively referred to as "Triadou") and Felix Sater ("Sater") entered into a Settlement Agreement and General Release on December 23, 2013 (the "Settlement Agreement"); and

WHEREAS, in connection with the Settlement Agreement, Triadou and Sater request that the Parties first written above grant to, and receive from, each other a mutual general as set forth hereinafter, which shall be annexed to the Settlement Agreement as Exhibits A, B and C.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### RELEASES

1. Release from CF 135 West Member LLC to Sater. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, CF 135 West Member LLC hereby releases and fully and forever discharges Sater from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which CF 135 West Member LLC ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

2. Release from Sater to CF 135 West Member LLC. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Sater hereby releases and fully and forever discharges CF 135 West Member LLC from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever,

Almaty-BTA0243654
Almaty-BTA_FS00243654

including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Sater ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

3. <u>Release from CF 135 West Member LLC to Ridloff</u>. In consideration of, and effective upon, receipt of the Settlement Payment set forth in Section 1.1. of the Settlement Agreement, CF 135 West Member LLC hereby releases and fully and forever discharges Ridloff from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which CF 135 West Member LLC ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

4. <u>Release from Ridloff to CF 135 West Member LLC</u>. Effective upon the Settlement Agreement being fully executed by and between Triadou and Sater, Ridloff hereby releases and fully and forever discharges CF 135 West Member LLC from and against any and all liabilities, obligations, losses, damages, claims, penalties, actions, judgments, suits, costs, expenses (including fees and disbursements of counsel and other professionals) or disbursements of any kind or nature whatsoever, including the counterclaims, whether now known, suspected or claimed, whether arising under common law, in equity or under statute, which Ridloff ever had or now may have which may have arisen at any time on or prior to the date of execution of the Settlement Agreement.

5. <u>Confidentiality</u>. The Parties agree that, unless required to be disclosed by law, the terms of this Mutual General Release shall be kept entirely confidential and no Party shall disclose such terms to any third party whatsoever, or furnish copies or information contained therein, in whatever form, for whatever purpose to any third party whatsoever except as expressly set forth herein. The Parties agree that unless required by law, no Party, nor their agents, affiliates, or employees shall provide information, directly or indirectly to any third party whatsoever with respect to any of the matters which are the subject of this Mutual General Release, except as expressly set forth herein. In the event a Party receives a subpoena to disclose any of the terms of this Mutual General Release, such Party shall give prompt notice of such subpoena to the other Party, so that such Party has an opportunity to seek a protective order against disclosure from a court of competent jurisdiction. In the event that such protective order or other remedy is not obtained, the Party shall furnish only that portion of the information or documents referenced in this Agreement they are legally required to furnish. A breach of this provision may be prosecuted as a breach of contract, provided, however, that the Party alleging such breach must allege and prove actual damages arising out of unauthorized disclosure. Nothing in this Paragraph shall prohibit the Parties or their agents from disclosing the terms of this Mutual General Release, to the Parties' counsel,

Almaty-BTA0243655
Almaty-BTA_FS00243655

accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

6. <u>Counterparts</u>. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

CF 135 West Member LLC

By: _____
Name: Joseph Chetrit
Title: Manager

**Daniel Ridloff**

_____

**Felix Sater**

_____

Page 3/3

Almaty-BTA0243656
Almaty-BTA_FS00243656

accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

6. <u>Counterparts</u>. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

   IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

**CF 135 West Member LLC**

By: _____
Name: Joseph Chetrit
Title: Manager

**Daniel Ridloff**

_(signature)_
_____

**Felix Sater**

_____

Page 3/3

Almaty-BTA0243657
Almaty-BTA_FS00243657

accountant, or representatives or as otherwise may be required to effectuate the intent and purpose of this Mutual General Release.

6. Counterparts. This Mutual General Release may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Mutual General Release by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of this Mutual General Release.

IN WITNESS WHEREOF, the Parties have caused this Mutual General Release to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above:

**CF 135 West Member LLC**

By: _____
Name: Joseph Chetrit
Title: Manager

**Daniel Ridloff**

_____

**Felix Sater**

_____

Almaty-BTA0243658
Almaty-BTA_FS00243658