UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/22/2021

City of Almaty, et al.,

                          Plaintiffs,

            –v–

Felix Sater, et al.,

                          Defendants.

19-cv-2645 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Felix Sater filed a motion to stay this action pending an ongoing arbitration. Magistrate Judge Parker denied that non-dispositive motion in an Opinion and Order dated December 6, 2019. Sater filed objections and the parties have since submitted supplemental briefing on the issue. For the reasons that follow, the Court adopts Judge Parker's Opinion and Order and overrules Sater's objections.

## I.      Background

The Court presumes the parties' familiarity with the facts of this case, which are summarized in Judge Parker's opinion. Op. & Order ("Op.") at 3–13, Dkt. No. 144; *see also* Dkt. No. 244. According to Plaintiffs City of Almaty, Kazakhstan, and BTA Bank, JSC, Defendant Felix Sater in 2011 assisted the transfer of funds stolen from Plaintiffs into various U.S. investments. Op. at 6. Plaintiffs allege that in 2015, Litco, a company founded and solely owned by Sater, offered to assist Plaintiffs to recover their stolen funds. *Id.* at 8. Plaintiffs' private investigative firm, Arcanum, negotiated the terms of Litco's assistance on Plaintiffs' behalf with Robert Wolf, Litco's counsel. *Id.* at 7–8. Plaintiffs and Litco's arrangement was memorialized in a Confidential Assistance Agreement ("CAA"). *Id.*; *see also* Sater Aff., Ex. A

("CAA"), Dkt. No. 78.  Relevant here, the CAA contains a broad release provision by Plaintiffs against Litco and related entities and persons for all claims "for any acts or omissions related to or arising from this Agreement, the Releasees' previous, current or future contractual obligations and any other matter between the Parties."  CAA ¶ 10.  The CAA also contains an arbitration provision that requires "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach" be "settled by final and binding arbitration" by the American Arbitration Association in New York, New York.  *Id.* ¶ 14.

Acting under the CAA, Litco referred Sater to Arcanum to act as a witness in Plaintiffs' efforts to recover their stolen funds, which Plaintiffs are pursuing in an action that is also pending before the Court.  Op. at 10–11; *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345 (AJN) (S.D.N.Y.).  In a 2018 deposition for that action, Sater stated that he owned Litco.  Op. at 11.  Plaintiffs claim that this is the first time they learned of Sater's ownership, shortly after which they terminated their agreement with Litco.  *Id.*  In October 2018, Litco commenced an arbitration against Plaintiffs for payments due under the CAA as well as, in its Third Claim, for a declaratory judgment that the CAA's release provision protects Sater in the present action and, in its Fourth Claim, for attorneys' fees and costs for defending Sater in this action.  *Id.*; *see also* Sater Decl., Ex. B at 19–20.

Plaintiffs filed this action against Sater and other Defendants in March 2019.  Dkt. No. 1.  Litco is not a party in this case, nor is Sater a party to the arbitration.  On August 19, 2019, Sater filed a motion to stay this action pending the arbitration.  Motion, Dkt. No. 77.  The Honorable Katharine H. Parker, U.S. Magistrate Judge, acting on general pretrial authority from the Court, held oral argument and considered the parties' initial and supplemental briefing.  Op. at 2.  On December 6, 2019, Judge Parker issued an Opinion and Order denying Sater's motion.  Op. at 1–

2. Sater filed objections to Judge Parker's Opinion and Order, Objections, Dkt. No. 147, and Plaintiffs filed a response, Pls. Resp., Dkt. No. 151.

On November 11, 2019, Sater and other Defendants filed a motion to dismiss the first amended complaint, arguing that Plaintiffs failed to allege fraud among other claims. Dkt. Nos. 105, 107. The Court on November 30, 2020, granted in part and denied in part Defendants' motion, declining to dismiss Plaintiffs' claims for unjust enrichment, money had and received, and conversion. Dkt. No. 244 at 8–14.

On March 18, 2021, Plaintiffs filed a supplemental letter that attached a recent partial award of the arbitration panel that concluded the panel had jurisdiction to arbitrate Litco's Third and Fourth Claims regarding Sater. Pls. Suppl. Letter, Attach. 1 ("Partial Award"), Dkt. No. 287. Plaintiffs argue that the partial award validated Judge Parker's conclusion because it clarified that Sater was not a party to the arbitration. Pls. Suppl. Letter at 1–3. Sater filed a response, arguing that the award undermined Judge Parker's reasoning. Sater Suppl. Resp., Dkt. No. 290. Plaintiffs filed a reply, Pls. Suppl. Reply, Dkt. No. 291, and Sater a response to that reply, Sater Sur-Reply, Dkt. No. 292.

While Sater's objections to Judge Parker's Opinion and Order have been pending, the parties have engaged in extensive discovery. *E.g.*, Dkt. Nos. 301, 285, 223. Fact discovery is scheduled to be completed by January 31, 2022. Dkt. No. 309.

## II.   Legal standards

A motion to stay litigation pending arbitration is a non-dispositive motion. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); *Marcus v. Collins*, No. 16CV4221GBDBCM,

2016 WL 8201629, at *1 n.1 (S.D.N.Y. Dec. 30, 2016).[1]  When a magistrate judge enters a non-dispositive order and a party objects, a district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  A finding is "clearly erroneous" if "on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed."  *Easley v. Cromartie*, 532 U.S. 234, 243 (2001) (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A finding is "contrary to law" if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 459 (S.D.N.Y. 2019) (quoting *MASTR Adjustable Rate Mortgs. Tr. v. UBS Real Estate Sec. Inc.*, No. 12-CV-7322, 2013 WL 6840282, at *1 (S.D.N.Y. Dec. 27, 2013)).

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Further, under Section 3 of the FAA, if any suit is brought in federal court "upon any issue referable to arbitration" the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  *Id.* § 3.  "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  Specifically, whether the parties here agreed to arbitrate is a matter of New York state law.  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

---

[1] Though this question is not settled by binding precedent, neither party objected to Judge Parker's conclusion.  Op. at 2 n.1; *see* Objections at 8–9.

In considering a motion to stay pending arbitration, a court must determine "(1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Porcelli v. JetSmarter, Inc.*, No. 19 CIV. 2537 (PAE), 2019 WL 2371896, at *3 (S.D.N.Y. June 5, 2019) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).  As the moving party, Sater carries the burden of proving that an agreement to arbitrate exists by the preponderance of the evidence. *Fleming v. J. Crew*, No. 16-cv-2663 (GHW), 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016).  In assessing the relevant facts, "the court applies a standard similar to that applicable for a motion for summary judgment." *Id.* (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  If satisfied, Section 3 requires a stay, though the Court may impose "stays on a claim-by-claim basis." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 265–66 (S.D.N.Y. 2005).

Independent of the FAA, "district courts have 'inherent power' to grant stays in certain circumstances," including when issues at stake in the case may be decided in a pending arbitration. *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991).  In exercising its discretion, a court considers, among other factors, the interests of plaintiffs and the prejudice that may result from delay, the interests of defendants, the interests of the courts, the interests of non-parties, and the public interest. *Credit Suisse Sec. (USA) LLC v. Laver*, No. 18 CIV. 2920 (AT), 2019 WL 2325609, at *2 (S.D.N.Y. May 29, 2019) (collecting cases); *see also Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489–90 (S.D.N.Y. 2011) (considering judicial economy and the risk of inconsistent decisions).

### III.    Discussion

In denying Sater's motion, Judge Parker first concluded that Sater, a nonsignatory to the CAA, could not compel Plaintiffs to arbitrate his claims pursuant to the CAA arbitration provision.  In doing so, Judge Parker rejected Sater's theories that he could invoke the arbitration provision (a) as an officer of signatory Litco, Op. at 20–25; (b) as an intended third-party beneficiary of the CAA, *id.* at 25–28, or (c) by equitably estopping Plaintiffs from avoiding arbitration, *id.* at 29–33.  Second, Judge Parker declined to exercise any inherent powers to stay the case, concluding that "the arbitration will not resolve Sater's affirmative defense of waiver and release" and that a stay would significantly delay proceedings for Plaintiffs and the other Defendants.  *Id.* at 34–36.

Sater raises three primary objections, each of which, he argues, demonstrate clear error.  First, Sater contends that although he is not identified in the CAA, he is nevertheless an intended third-party beneficiary who may enforce the arbitration provision.  Objections at 11–14.  Second, he argues that the facts of this case and the arbitration are sufficiently intertwined, and his relationship to Plaintiffs sufficiently close, as to estop Plaintiffs from avoiding arbitration.  *Id.* at 14–19.  And third, Sater argues that the risk of inconsistent results between this case and the arbitration requires the Court to impose a discretionary stay.  *Id.* at 20–21.  Additionally, Sater argues that throughout her opinion, Judge Parker erroneously assumed that the arbitration provision "is limited to claims between the parties."  *Id.* at 19.

In their supplemental letter, Plaintiffs argue that the partial award issued by the arbitration panel after Judge Parker's opinion further vindicates her conclusion, as the panel stated that its finding of jurisdiction over Litco's Third and Fourth Claims is "consistent with [Judge Parker's] finding that" only signatories of the CAA, and not Sater, may enforce the arbitration provision.  Pls. Suppl. Letter at 3 (quoting Partial Award ¶ 24); *see also* Partial Award

¶ 22 (stating that the panel's finding of jurisdiction "is not in conflict with the decision of [Judge Parker]").  Sater argues that the panel's partial award proves that Judge Parker failed to appreciate the risk of inconsistent decisions because in deciding Litco's Third and Fourth Claims, the panel could reach a different outcome as to the validity or scope of the CAA's release provision.  Sater Suppl. Resp. at 3; *see* Partial Award ¶¶ 28–29 (acknowledging that a decision in Litco's favor on these claims "would benefit Sater" and "that the District Court and Tribunal could end up issuing decisions that appear to be inconsistent").

The Court addresses in turn Sater's objections.

### A.  Arbitration as an intended third-party beneficiary

As Judge Parker recounted, under New York law, "an intended third-party beneficiary has standing to enforce an agreement entered into between others." *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 336 (S.D.N.Y. 2005).  "The contract must 'clearly evidence' an intent by the parties to permit enforcement by the third party, such that the benefit to the third party was 'sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit was lost.'" *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (cleaned up).  In identifying the parties' intent, "a court 'should consider the circumstances surrounding the transaction as well as the actual language of the contract.'" *Id.* (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005)).

Because the inquiry turns on the parties' intentions, "the parties can obviously intend for a third party to benefit from certain promises in a contract and not others." *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011), *aff'd*, 472 F. App'x 11 (2d Cir. 2012); *see also Sony Corp. v. Fujifilm Holdings Corp.*, No. 16 CIV. 5988 (PGG), 2017 WL 4342126, at *7

(S.D.N.Y. Sept. 28, 2017).  Additionally, "because 'the threshold for clarity of an agreement to arbitrate is greater than with respect to other contractual terms,' a court will not resort to 'construction or implication' to find that a contract invests a third-party with a right to compel arbitration."  *Republic of Iraq*, 769 F. Supp. 2d at 612 (cleaned up) (quoting *Waldron v. Goddess*, 461 N.E.2d 273, 275 (N.Y. 1984)).  "If a signatory to an agreement is to be required to arbitrate with a nonsignatory party, the agreement must so provide in express language."  *Id.* (cleaned up) (quoting *H.I.G. Cap. Mgmt., Inc. v. Ligator*, 233 A.D.2d 270, 271 (App. Div. 1996)).

Sater argues that Judge Parker clearly erred in concluding that he was not an intended third-party beneficiary because the CAA's broad release provision protects from Plaintiffs' claims not only Litco but also "its past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers and representatives," a list that includes Sater.  Objections at 11 (quoting CAA ¶ 14).  Sater observes that New York law does not require that a contract identify a third party by name to designate them as an intended beneficiary.  *Id.* at 12 (citing, e.g., *In re Relativity Fashion, LLC*, No. 15-11989 (MEW), 2018 WL 2938516, at *5 (Bankr. S.D.N.Y. June 7, 2018)).

The Court agrees with Judge Parker's conclusion that Sater is not an intended third-party beneficiary that may invoke the arbitration provision.  First, Sater's objections do not address Judge Parker's determination that even if Sater was an intended beneficiary of the release provision, he was not an intended beneficiary of the arbitration provision.  Op. at 27–28; *see Republic of Iraq*, 769 F. Supp. 2d at 612–14.  Sater's interpretation of the release provision proves, at most, that he may seek to enforce the release provision.  Second, Sater has not shown, based on the language of the CAA and circumstances of its formation, that the parties mutually *intended* Sater to benefit from the arbitration provision or "any provision in the CAA."  Op. at

28; *see Bayerische Landesbank*, 692 F.3d at 52.  Sater emphasizes Judge Parker's statement that he was not "mentioned" in the CAA.  Objections at 13 (quoting Op. at 28).  Even assuming that New York law does not require an intended third-party beneficiary to be identified by name, *e.g.*, *Wells v. Shearson Lehman/Am. Exp., Inc.*, 526 N.E.2d 8, 12 (N.Y. 1988), that does not end the matter.  Here, Judge Parker found that Sater "actively hid his affiliation with Litco from Plaintiffs," a finding supported by sworn affidavits from Plaintiffs and Sater's own deposition testimony.  Op. at 28.  The Court agrees that Judge Parker did not clearly err in finding that this factual dispute prevented Sater from invoking an intended third-party beneficiary theory.

Sater responds first that Judge Parker erred in distinguishing cases like *Degraw Construction Group, Inc. v. McGowan Builders, Inc.*, 58 N.Y.S.3d 152 (App. Div. 2017), which held that nonsignatory officers of a company could compel arbitration pursuant to an arbitration provision in a contract signed by the company.  Judge Parker concluded that such case law was inapplicable here where "the claims against Sater in this action do not pertain to his conduct in carrying out Litco's obligations" but instead "center on actions taken by Sater in his personal capacity or as a consultant . . . well before Litco ever was formed."  Op. at 22.  Sater argues that the release provision is sufficiently broad as to release Sater from all claims "whether such claims arose from [his] employment" or even if they predated Litco's formation.  Objections at 13.  The release provision, however, is not without limits.  The language that Sater emphasizes refers to claims "for any acts or omissions related to or arising from this Agreement, the Releasees' previous, current or future contractual obligations and any other matter between the Parties . . . ."  *Id.* (quoting CAA ¶ 14).  Plaintiffs' claims are not about Sater's acts or omissions under the CAA, nor about Sater's contractual obligations with Plaintiffs, and Sater is not a "Party," which is defined as a signatory to the CAA.  CAA at 1.  More importantly, this

9

argument again conflates the parties' intentions as to the release provision with their intentions as to the arbitration provision, which is at issue here.

Sater also argues that Judge Parker clearly erred in determining that the arbitration provision "is limited to claims *between the parties*." Objections at 19. In support, Sater emphasizes that "there is no such limitation in the language of the arbitration clause." *Id.* at 19–20. The Court disagrees that this conclusion was clearly erroneous. First, the operative provisions of the CAA, including the arbitration provision, are preceded by a recital that "in consideration of the mutual covenants and promises herein set forth, *the parties hereto agree as follows . . . .*" CAA at 1 (emphasis added). Second, the arbitration provision makes repeated reference to "the Parties" and a "Party." *Id.* ¶ 14. Most notably, it states that an "award rendered by the arbitrators shall be conclusive and binding upon the Parties." *Id.* Again, the CAA defines "the Parties" as the signatories to the CAA. *Id.* at 1. Third, the arbitration panel's partial award reached the same conclusion. *See* Partial Award ¶ 27 ("Therefore, and for the avoidance of any doubt, the Tribunal wishes to state that it agrees with the District Court that Sater, as a nonparty to the CAA, is not a party to this Arbitration and the Tribunal does not claim to subject him to its jurisdiction as a party.").

In sum, the Court concludes that Judge Parker did not clearly err in rejecting Sater's motion for a stay as an intended third-party beneficiary of the CAA's arbitration provision.

### B.  Arbitration by equitable estoppel

To estop a signatory to an arbitration agreement from avoiding arbitration, a nonsignatory must satisfy two requirements. First, "the subject matter of the dispute was intertwined with the contract providing for arbitration." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 185 n.1 (2d Cir. 2021) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir.

2008)).  "Second, there must be 'a relationship among the parties of a nature that justifies [the]

conclusion' that the court should compel arbitration."  *Id.* (quoting *Sokol*, 542 F.3d at 359).  At

bottom, the Court "ask[s] whether the party 'consented to extend its agreement to arbitrate to the

non-party, or, otherwise put, made it *inequitable* for the party to refuse."  *Id.*  (cleaned up)

(quoting *Sokol*, 542 F.3d at 361); *see also Doe v. Trump Corp.*, 6 F.4th 400, 412–13 (2d Cir.

2021).

Sater argues that Judge Parker clearly erred in applying this two-part test.  First, Sater

argues that the subject matter of this case is intertwined with the CAA because Sater seeks to

enforce the CAA's release provision against Plaintiffs to avoid liability.  Objections at 16.

Because "Sater's affirmative defense of release and waiver is *entirely* dependent on the Release

contained in the CAA," he argues, the requirement that subject matter be intertwined is

necessarily satisfied.  *Id.* at 17.  Second, Sater argues that as "the Sole Member and 100% owner

of Litco," he has a "very close relationship" with Litco.  *Id.*  And in that role, Sater continues, he

"was the primary contact with Plaintiffs' agent, Arcanum" and "worked with counsel for the

[Plaintiffs] . . . for *years*" to provide assistance under the CAA.  *Id.* at 17–18.  It is unnecessary,

Sater argues, that he have a "direct 'contractual or quasicontractual' relationship with Plaintiffs."

*Id.* at 18.

The Court concludes that Judge Parker's conclusions were not clearly erroneous,

beginning with her conclusion that Sater did not have a sufficiently close relationship with

Plaintiffs to invoke estoppel.  Sater's objections do not address Judge Parker's determination that

Sater failed to demonstrate by a preponderance of the evidence "that he and Plaintiffs had a close

relationship in the formation of the CAA or that Plaintiffs knew that Sater was affiliated with

Litco at that time."  Op. at 32.  Rather, "Sater admits that he hid his Litco affiliation from

Plaintiffs." *Id.*  In fact, "Sater . . . insisted that Arcanum, Plaintiffs' investigative firm, enter into the [non-disclosure agreement] to shield his affiliation from Plaintiffs and their counsel."  Op. at 16; *see* Schwartz Decl., Ex. 3, Dkt. No. 89.  What's more, Litco represented in the CAA that "[n]o potential witness which Litco identifies and produces to Arcanum . . . shall have any ownership interest in Litco."  CAA ¶ 6(e).  That express representation cuts directly against a finding that Plaintiffs understood the CAA to extend contractual benefits to Sater.  In these circumstances, Judge Parker did not clearly err in concluding that Plaintiffs did not have a sufficiently close relationship with Sater as to infer their consent to arbitrate with him.  Sater's insistence that Sater and *Litco* had a close relationship is beside the point because the inquiry turns on the closeness between Sater and the consent of the signatories he wishes to estop, Plaintiffs.  *See Sokol*, 542 F.3d at 361.

   The Court also concludes that Judge Parker did not clearly err in concluding that the subject matter of this case is not sufficiently intertwined with the CAA because, as explained, Plaintiffs' claims concern "Sater's conduct before the CAA was signed and has nothing to do with Litco or Sater's ownership and efforts on behalf of Litco."  Op. at 31.  Therefore, Plaintiffs' "claims in this matter do not arise from the subject matter of the" CAA.  *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16 CIV. 7646 (ER), 2018 WL 1353279, at *5 (S.D.N.Y. Mar. 15, 2018). But even if the Court were to conclude that the intertwined-subject-matter requirement were met, the absence of a close relationship is sufficient to reject Sater's estoppel argument.  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013).

   Ultimately, Judge Parker did not clearly err in concluding that it would not be unfair to allow Plaintiffs to insist that they consented to arbitrate only with Litco and not with Sater, an individual that sought persistently to hide his identity from Plaintiffs.  *See Schreiber v.*

*Friedman*, No. 15-CV-6861 (CBA), 2017 WL 5564114, at *16–17 (E.D.N.Y. Mar. 31, 2017) (finding no "close relationship" to compel arbitration where the plaintiff "had no reason to believe he was entering into any agreement with those defendants" that owned a signatory but "were not mentioned" in the arbitration agreement); *cf. Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 1:08-CV-623 GLS/DRH, 2009 WL 790962, at *4 (N.D.N.Y. Mar. 20, 2009) ("Nothing in the Circuit's jurisprudence indicates that a nonsignatory to an arbitrable agreement may compel arbitration on the basis of such an *undisclosed* agency relationship with a signatory . . . ." (emphasis added)).

### C.  Inherent powers to stay this action

Last, Sater argues that Judge Parker clearly erred in concluding that the Court ought not exercise its discretion to stay the case pending arbitration.  Specifically, Sater contends that Judge Parker's conclusion that there is "no risk of inconsistent verdicts" is incorrect because "the enforceability of the release against Plaintiffs *must* be decided in the Arbitration."  Objections at 20–21.  In his supplemental letters, Sater further argues that the panel's partial award proves the point: "the Tribunal could declare that the CAA and the Release are fully enforceable by their terms, and thus, the claims against Mr. Sater in the Action would be barred by the Release, while this Court could rule against Mr. Safer on his Release defense in this Action."  Sater Suppl. Resp. at 3.  An arbitration in Litco's favor on its Third and Fourth Claims, Sater contends, "should collaterally estop the Plaintiffs in this action from relitigating such issues."  *Id.*; *see also* Sater Sur-Reply at 2 ("[I]f the CAA is enforceable, as the Panel will find, Sater is released and the claims against him in [this case] fail.").

The Court concludes that Judge Parker did not clearly err.  At the outset, Sater did not object to any other piece of Judge Parker's analysis that weighs on the propriety of a stay,

including that a stay (1) could delay the action by more than a year, resulting in "unreasonable and unfair" delay to both Plaintiffs and the other Defendants, Op. at 34–36; (2) would be against "the interests of the court, non-parties, and the public," *id.* at 36; and (3) would not limit the scope of discovery or fully remove Sater from this litigation, as he would continue to be a witness, *id.* at 35.

The interests of the Court and the other parties in avoiding a stay have only increased since Judge Parker's opinion.  The parties have expended significant time and resources in conducting discovery and the Court has played an active role in overseeing those efforts and adjudicating disputes.  This expenditure of resources, and the continuing need to settle discovery disputes lest evidence be lost during arbitration, weighs in favor of denying Sater's motion.  *See Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 503 (S.D.N.Y. 1995). Nor does Sater explain how his alternative request, that a stay be imposed only as to him, would mitigate prejudice to other parties or permit the completion of discovery.[2]

Additionally, the Court is not persuaded that Judge Parker clearly erred in concluding that there was little to no risk of inconsistent results between this action and the arbitration.  The arbitration panel's partial award determined that it has jurisdiction over Litco's Third and Fourth Claims that would construe the scope and validity of the CAA's release provision.  Partial Award ¶ 19.  But the arbitration panel had the benefit of Judge Parker's opinion and expressed repeated agreement with it.  *E.g.*, *id.* ¶¶ 22 (the panel's exercise of jurisdiction "is not in conflict with the decision of the district Court"); 24 ("This holding is consistent with the District Court's finding . . . ."); 27 ("Therefore, and for the avoidance of any doubt, the Tribunal wishes to state that it

---

[2] In fact, Sater's initial brief in support of a stay explained the unworkability of a partial stay, as it would require re-litigation of claims and issues as to Sater, which "would be a waste of the time and resources of the parties and the Court."  Dkt. No. 80 at 15.

agrees with the District Court that Sater, as a nonparty to the CAA, is not a party to this Arbitration and the Tribunal does not claim to subject him to its jurisdiction as a party.").  The arbitration panel will determine Litco's rights, but not Sater's, as "Sater's claims and defenses are not before the [panel]."  *Id.* ¶ 27.

Sater's argument that there could be inconsistent results additionally requires showing that the arbitration panel could reach a different assessment on the merits, on which the Court can only speculate, and that any award of the arbitration panel would collaterally estop Plaintiffs in this litigation.  *See* Sater Suppl. Resp. at 3 (stating that an award in Litco's favor "should collaterally estop the Plaintiffs in this Action from relitigating such issue").  Whether Sater could later invoke collateral estoppel in an offensive manner against Plaintiffs is, in part, a discretionary determination of the Court that can be resolved only after the arbitration award is issued.  *See Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ont., Inc.*, 409 F.3d 87, 91–92 (2d Cir. 2005); *Am. Shipping Line*, 885 F. Supp. at 502 ("[I]t is never possible to determine the preclusive effects of a given arbitration on a proceeding until after the arbitration has ended.").  Relevant to that inquiry, the Court takes note of the fact that in this action, Sater has taken inconsistent positions on whether he himself would be bound by any adverse award in arbitration.  *Compare, e.g.*, Objections at 21 ("The CAA provides that the decision of the arbitrator will be binding on the parties . . . and certainly does not say that it will not be binding on Sater (particularly where Sater agreed to be bound)."); Dkt. No. 94 at 10 ("Sater concedes that he is bound by a determination of the arbitrators as to the enforceability of the release."), *with* Sater Suppl. Resp. at 3 n.1 ("However, any decision in the Litco Arbitration should not be binding on Mr. Sater whom Plaintiffs have fought hard to exclude from being made a party to the Litco Arbitration.").

Even if Sater demonstrated a real risk that the panel and the Court could reach inconsistent results, the Court would conclude that the other facts relevant to a stay determination, which Sater has not challenged, would be a sufficient basis for denying Sater's request.

The Court therefore overrules Sater's objections to the Opinion and Order's denial of a stay based on the Court's inherent powers.

**IV.    Conclusion**

For the above reasons, the Court adopts Judge Parker's Opinion and Order and overrules Sater's objections.

As stated in Judge Parker's orders, the parties shall complete fact discovery by January 31, 2022, and expert discovery by March 5, 2022.  Dkt. Nos. 309, 299.  The Court shall hold a post-discovery conference on March 18, 2022, AT 3:15 P.M.

SO ORDERED.

Dated: October 22, 2021
         New York, New York

_____

ALISON J. NATHAN
United States District Judge