UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CITY OF ALMATY, KAZAKHSTAN, and BTA BANK, JSC,

                               Plaintiffs,

    -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,

                               Defendants.
-----------------------------------------------------------------------X

19 Civ. 2645 (AJN) (KHP)

# NON-PARTY MOSES & SINGER LLP'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
# OF ITS MOTION TO QUASH
# THE SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

John V. Baranello
MOSES & SINGER LLP
405 Lexington Avenue
New York, NY  10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
jbaranello@mosessinger.com

Attorneys for MOSES & SINGER LLP

Non-party Moses & Singer LLP ("M&S") submits this reply memorandum of law in further support of its motion to quash the Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena").

Notwithstanding Plaintiffs' "kitchen sink" approach in their opposition, the governing law and undisputed factual history require the granting of Moses & Singer's Motion to Quash the Deposition Subpoena, which incredibly is now the third subpoena served upon the law firm. As more fully set forth below, and in the moving papers, through these multiple subpoenas, Plaintiffs have engaged in impermissible harassment and an unjustified pursuit of M&S, which has already completely responded at length, after significant effort, to two prior subpoenas from Plaintiffs, the compliance of which is not legitimately contested. Court intervention is required to put an end to this unending and improper abuse by Plaintiffs in this case where Judge Nathan has already dismissed the main claims brought and described Plaintiffs' remaining allegations of their deceptive conduct as "thin." (*See* ECF Dkt. No. 244 at P. 23)[1]

Caught up in their own voracity in impermissibly seeking deposition testimony from M&S, Plaintiffs will say whatever needs to be said: even the opposition papers themselves (the "Opp. Br.") remarkably exceed the already ridiculously overbroad topics in the Deposition Subpoena. This includes (i) ignoring and distorting the enormous time and effort M&S has already expended responding to two earlier document subpoenas, going back over 8 years, including one during the middle of the COVID-19 shutdown, (ii) downplaying those earlier document subpoenas in order

---

[1] This Court should also recall previous attempts by Plaintiffs to ignore and downplay the prior cooperation and responsiveness this non-party law firm has provided to Plaintiffs. Instead, Plaintiffs distort the record. As detailed in prior correspondence with this Court, Plaintiffs have a history of deliberately seeking to ambush M&S into unnecessary and harassing non-party discovery. *See* Exhibit A, the M&S January 8, 2021 letter to this Court concerning the first of now three subpoenas on M&S.

to mislead this Court that M&S has done little to nothing up to this point – which is factually untrue and improperly argued, as this Court is familiar with this firm's unnecessary participation in this case, (iii) abusing our prior complete and full cooperation in responding to subpoenas, to try to punish M&S, and (iv) expanding the already improperly overbroad Deposition Subpoena, as revealed in their opposition papers. As reflected in the moving papers, and as further demonstrated below, M&S is not a fact witness despite the desperate "kitchen sink" narrative contained in Plaintiffs' opposition.

First, it is undisputed that this is now Plaintiffs' third subpoena on M&S, and a deposition subpoena, which would unreasonably require more hours and hours of review to prepare, and to provide testimony. M&S previously provided full cooperation searching for, and producing, records from our physical offices despite the closures and safety risks associated with COVID-19. Plaintiffs just ignore those extraordinary efforts and complete production, which does not serve their illicit purpose, and brush aside the substantial record with this Court in connection with full compliance with that subpoena. Moving Br., pp. 2-3.

Not only do Plaintiffs ignore the compliant efforts of M&S, a non-party, they actually seek to capitalize on such efforts, claiming, that because M&S cooperated and did not object, it's now obligated to do more. *See* Opp. Br. 5 (noting that because M&S cooperated, and did not move to quash, M&S is now on the hook for a deposition on those previously produced documents); Opp. Br. 13 (conceding that M&S has already complied with the prior document subpoenas, and since it has done so, a deposition would not be a burden); Opp. Br. 22 (arguing that M&S remains on the hook for testimony about the response to the first document subpoena because Plaintiffs essentially "said so" in a letter to the Court). Plaintiffs callously ignore this law firm's history of

full cooperation and compliance, and instead attempt to use that as an opportunity to potentially fish for more information.

Plaintiffs' rude harassment of this law firm is additionally clearly evident in the very opposition papers themselves. Take, for example, the audio recordings. First, those recordings are the subject of a separate document subpoena, which M&S has already completely responded to. These same recordings are now additionally covered in the Deposition Subpoena. Although the Deposition Subpoena seeks testimony concerning "efforts to enhance" those recordings, ECF No. 324-1, Topic No. 12, in their opposition, Plaintiffs now seek testimony from M&S as to the actual content of the recordings, because Plaintiffs cannot find the recordings and Mr. Sater, the owner of those recordings, has not produced them. Opp. Br. 2 (Plaintiffs now, for the first time, seek testimony concerning "the contents of the audio recordings."). Such a request is nonsense – asking M&S to testify about the content of audio recordings that it does not possess, that M&S does not own, that it was not party to, that M&S has already addressed in a separate document subpoena, and that isn't even covered in their already overbroad Deposition Subpoena. There is no basis, either in the Deposition Subpoena itself (as it's not asked for) or any other reasonable explanation as to why "Moses & Singer should be required to explain what was on the tapes, what they did to search for the tapes, how many there were, and what Ilyas and Sater said." Opp. Br. 11.

Plaintiffs' cavalier position is way beyond the pale and even further beyond the scope of the overbroad Deposition Subpoena. This one example – the manhunt for these recordings, a topic literally not even covered in the Deposition Subpoena – clearly evidences that Plaintiffs will

3

continue to abuse the process until judicial intervention forces an end to it. That is simply not within the bounds of professional responsibility or legally justified.[2]

Additionally, a further example of Plaintiffs' abuse with this improper subpoena is their claim that certain transactions relevant to their case involve transfers to or from M&S escrow accounts. Simply put, M&S has long ago produced the documentation concerning the incoming and outgoing wires. Whatever M&S knows is reflected in the ample documentation already provided. The M&S response to the first document subpoena provided the documents M&S possess in connection with the transfers to and from the M&S escrow accounts. Mr. Sater also provided ample testimony about the transfers. *See* Opp. Br. 3-4. Plaintiffs also cite ample evidence concerning the sale of a note on the Tri-County Mall in Cincinnati, Ohio and the dispute between Sater and Ilyas Khrapunov and his company, Triadou SPV S.A. Opp. Br. 9-10. Indeed, Plaintiffs go through a storied selective narrative of what it contends that the documents show concerning this transaction and resulting dispute. *Id.* However, neither that narrative nor Plaintiffs' opposition contains any discussion as to why the *testimony* of M&S is relevant to any of it, despite that "Robert Wolf directly negotiated with Triadou and Khrapunov's counsel," (Opp. Br. 9), despite that Sater wired money to M&S, and despite that M&S confirmed as much to Triadou's counsel. *Id.* at 9-10. While Plaintiffs have documents and other testimony evidencing such transactions from relevant parties involved therein and which they have not disclosed herein, no explanation is provided justifying why M&S should be compelled to provide additional testimony.

---

[2] M&S just learned for the first time that, according to Plaintiffs, non-party Audio Paint purportedly did not produce any recordings. Plaintiffs saved sharing this information for the Opp. Br. M&S had asked counsel for Plaintiffs for a courtesy copy of Audio Paint's subpoena response. Counsel refused to provide a copy. Regardless, this does not change any facts, or M&S' otherwise complete response to the document subpoena concerning the recordings.

4

Indeed, it is undisputed that M&S did not represent Mr. Sater, and was otherwise utterly uninvolved, in the sale of the note on the Tri-County Mall. M&S would have no knowledge of whether or how Khrapunov or Mukhtar Ablyazov stole money from Plaintiffs. M&S' only information is reflected and contained in what it has already provided, and what is not in dispute. Mr. Sater's settlement funds came from the Tri-County Mall transaction. And M&S has already produced the documents evidencing the transfers of funds into and out of the M&S escrow account, so that Plaintiffs can follow that money. There are simply no "events" in the case to which M&S is a fact witness, possessing non-privileged information, and Plaintiffs cannot legitimately contest that. The only remote explanation Plaintiffs can provide of forcing M&S to testify is in a footnote, Opp. Br. n. 1, where Plaintiffs off-handedly remark that "[t]he purpose and manner of [the escrow] payments is [] relevant." However, Mr. Sater can, should, and presumably already has provided testimony as to the purpose of the payments, and M&S has already provided the information evidencing the manner.

And Plaintiffs' last example of Moses & Singer's "relevant knowledge" concerns the "Litco agreement and subsequent non-disclosure agreement, which is relevant to Sater's release-based defense." As Plaintiffs know, Litco never produced Sater as a witness, and Sater's release defense is going to be determined in a separate arbitration, as is the Litco agreement's enforceability. That agreement was signed by Plaintiffs and their investigation firm Arcanum, was negotiated by them and their counsel, and contains broad release language that includes Mr. Sater. That is undisputed. Judge Nathan's recognition that Plaintiffs' allegations regarding Sater's deceptive conduct are "thin" is quite telling, if not damning. They barely survived "pleading stage" scrutiny. If in the arbitration it is determined that Litco did not breach the arbitration agreement, then it releases Mr. Sater and others in the broad release. The one-sided and accusatory narrative

5

does not discount that it is in the binding arbitration where it will be determined whether Sater is released, notwithstanding any of the remaining claims against him herein. Moreover, the Litco agreement, and subsequent NDA, involved Plaintiffs themselves, and Plaintiffs confirm that M&S has already given testimony on this topic in another proceeding concerning the alleged misconduct of Plaintiffs' counsel. Opp. Br. 11.

On the law, Plaintiffs would have this Court disregard the strong presumption against depositions of attorneys and would have the Court believe that lawyers are regularly called as fact witnesses. (Indeed, even Diana Artal-Burger, a non-party attorney who was deposed in this case, was counsel to Triadou, Khrapunov's company, and Khrapunov is the individual directly alleged to have stolen from Plaintiffs). However, in the cases cited by Plaintiffs, the testimony of the deponent-attorney was limited to specific, narrow issues in the particular case. The testimony was nowhere near the overbroad and expansive testimony requested in the instant Deposition Subpoena, and the *Friedman* factors weigh heavily against forcing M&S to again respond to another subpoena. Indeed, there is no evidence in the cases cited by Plaintiffs that the deponent-attorney had already responded to not one, but two document subpoenas.

For example, in *Doe v. Town of Greenwich*, the court allowed defendants to depose the attorney on <u>one specific topic</u>: "the August 19, 2016, conversation between Attorney Braxton and Reeves, that is memorialized and characterized in the August 23, 2016, letter." 2019 WL 4267692, at *4 (D. Conn. Sept. 10, 2019); *see also Kleiman ex rel. Kleiman v. Jay Peak, Inc.*, No. 1:10-CV-83, 2012 WL 2498872, at *4 (D. Vt. June 27, 2012) (allowing the deposition of an attorney "for <u>three limited</u> purposes.") (emphasis added); *Carey v. Textron, Inc. (E-Z-Go Textron)*, 224 F.R.D. 530, 531 (D. Mass. 2004) (allowing the "<u>limited</u> deposition" of an attorney because "[t]he crucial piece of evidence (i.e. the product in a products liability case) ha[d] gone missing and [the attorney]

6

was, possibly, the only person to examine it) (emphasis added); *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, *4 (Bankr. S.D.N.Y. June 28, 2017) ("The proposed discovery requests are <u>limited to</u> documents and communications regarding … (i) Thiel's relationship with [attorney] and causes of action against the Debtors") (emphasis added); *Aco Fabrica de Calcado S.A. v. Tic-Tac-Toes Mfg. Corp.*, No. 06:06-CV-0819, 2008 WL 11355382, at *1 (N.D.N.Y. Apr. 22, 2008) (allowing the deposition of an attorney regarding only his knowledge of Plaintiff's "purchase of intellectual and tangible property" and registration of a relevant trademark); *Nakash v. United States Department of Justice*, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) (allowing the deposition of attorneys for the limited purpose of discovering "the process by which the government disclosed [Plaintiff's] privileged information"); *Goldberg v. Dufour*, No. 16-21301, 2020 WL 373206, at * 7 (D. Vt. Jan. 23, 2020) ("The court further exercises its discretion to limit [the attorneys'] depositions to the communications, issues, and subject matter set forth in Plaintiff's Offer of Proof.").

In addition, *Cooper v. Welch Foods, Inc.* is inapplicable to the instant litigation. In that case, Plaintiff sought to depose the general counsel of a corporate defendant, which in any event was again a limited deposition. 105 F.R.D. 4, 5 (W.D.N.Y. 1984). That factual scenario is not presented in the instant litigation.

The Deposition Subpoena asks M&S to testify on no less than eighteen different all-encompassing topics that span the course of nearly ten years. ECF No. 324-1 (listing the eighteen different topics and clarifying that "[u]nless otherwise specified, the topics below refer to the time period from January 1, 2012, to the present."). None of Plaintiffs' cases permit such an overly broad and all-encompassing Deposition Subpoena which, as described above, Plaintiffs continue to expand unilaterally and at their own discretion.

Plaintiffs do not dispute, because they cannot, that the Deposition Subpoena is wildly overbroad, concerns topics covered by prior subpoenas, seeks testimony covered by the attorney-client privilege, and will just never end unless this Court intervenes. Plaintiffs' opposition improperly seeks expansion of the Deposition Subpoena, and even goes so far as to suggest that multiple M&S attorneys sit for deposition. Court intervention is appropriate to quash the Deposition Subpoena.

For the reasons stated herein, and in its moving papers, the Court should grant the motion of M&S to quash the Deposition Subpoena, and should award costs and fees against Plaintiffs and their counsel.

Dated: December 1, 2021
New York, New York

Respectfully submitted,

MOSES & SINGER LLP

By:  /s/ John Baranello

John Baranello
Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 554-7800
jbaranello@mosessinger.com

*Attorneys for Moses & Singer LLP*

8