UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>                      Plaintiffs,<br>-against-<br><br>FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,<br><br>                      Defendants. | 19 Civ. 2645 (AJN) (KHP)<br><br>**DECLARATION OF<br>JOHN H. SNYDER, ESQ.** |

       JOHN H. SNYDER, counsel of record for Defendant Felix Sater, respectfully submits this Declaration in support of Mr. Sater's motion for leave to amend his Answer (Docket No. 266) for the purpose of asserting the [Proposed] Counterclaims and Third-Party Complaint (the ***Proposed Amended Pleading***) submitted herewith.

       1.      This action was commenced in 2019 against Felix Sater and several other defendants. In this action, the City of Almaty (***Almaty***) and BTA Bank JSC (***BTA***) assert claims against Sater relating to funds that Sater allegedly received that, they claim, belong to Almaty and/or BTA.

       2.      In parallel, Mr. Sater's company (Litco LLC) asserted contract claims in a AAA Arbitration against the Republic of Kazahkstan (***Kazakhstan***), Almaty, BTA, as well as Arcanum (Asia) Limited (***Arcanum***). For ease of reference, Kazakhstan, Almaty, and BTA are referred to as the ***Kazakh Parties***.

       3.      Pursuant to this Court's order, Mr. Sater filed his Answer in this matter on January 15, 2021. *See* **Exhibit A**.

1

4.      After he filed his Answer, Mr. Sater became aware of a certain FBI Form 302 dated September 18, 2017 (the **FBI 302**) that was made public on or about January 21, 2021.

5.      As the Proposed Amended Pleading explains, the FBI 302 shows that prior to September 2017, Arcanum (the long-time agent of the Kazakh Parties) was secretly collecting intelligence about Mr. Sater and transmitting the information (much of it false) to Christopher Steele, the former UK intelligence officer infamous for authoring the discredited dossier that was central in the Russian collusion hoax of 2016-2019.

6.      As the FBI 302 confirms, Arcanum, as agent for the Kazakh Parties, provided a PowerPoint presentation to Christopher Steele, which was then provided to the FBI, with the intention of having Mr. Sater prosecuted for RICO. Arcanum evidently intended for RICO charges against Sater to be used against Sater's long-time business partner, President Trump.

7.      Among the false and defamatory statements made by Arcanum to Christopher Steele (on the Kazakh Parties behalf), according to the FBI 302, were assertions:

   a. That Sater was involved in embezzlement from BTA Bank;
   b. That Sater was involved in pyramid schemes;
   c. That Sater was involved in official US corruption;
   d. That Sater committed misconduct with respect to the Trump SoHo project;
   e. That Sater had committed RICO violations;
   f. That Sater, a married man, was "involved" with Ablyazov's daughter.

8.      Mr. Sater was surprised to learn about Arcanum's treachery. For several years, from 2015 to 2018, Mr. Sater worked closely with Arcanum, the Kazakh Parties, and their counsel Boies Schiller to find and recover funds allegedly stolen from the Kazakh Parties by Mukhtar Ablyazov. They were, in effect, teammates in their common effort to recover allegedly

stolen Ablyazov money. Mr. Sater was completely unaware of his teammates' secret agenda to stab Sater in the back in the hope of harming President Trump.

9. Mr. Sater learned about the FBI 302 and Arcanum's efforts to have him prosecuted for the first time in early 2021.

10. When Mr. Sater learned about Arcanum's treachery, he made every effort to discuss the matter with the Kazakh Parties. This included retaining new counsel with significant experience dealing with senior Kazakhstan officials and leaders. Shortly after Mr. Sater engaged his new counsel, the Kazakh Parties engaged Greenburg Traurig to act as their settlement counsel.

11. Mr. Sater's counsel worked with Greenburg Traurig productively over seven (7) months in a good faith effort to resolve their disputes privately. This included engaging a retired Federal judge to serve as mediator. The Parties entered into an interim tolling agreement in January 2022 to enable the Parties to continue settlement discussions.

12. In early January 2022, mass protests erupted across Kazakhstan. Kazakhstan's president, Kassym-Jomart Tokayev (**Tokayev**), fired his cabinet in response to the increasingly violent demonstrations, throwing the Kazakhstan government into chaos. Days later, Russian special forces were invited onto the streets of Kazakhstan to crush the protests and permitted to shoot to kill without warning. In a bloodbath reminiscent of the 1989 Tiananmen Square massacre,[1] over 160 Kazakhs were killed, some by the Russian forces.

13. On or about January 26, 2022, counsel for the Kazakh Parties informed Mr. Sater's counsel that the Kazakhs were abandoning settlement discussions. The Kazakhs also refused to agree to a further tolling agreement, effectively forcing Mr. Sater to file his Proposed Amended Pleading or lose his claims.

---

[1] https://www.rferl.org/a/kazakhstan-torture-abuse-human-rights-watch/31681024.html

14. On or about January 28, 2022, in a last-ditch effort to avoid having to make this filing, Mr. Sater's counsel sent a draft of his proposed amended pleading to Greenberg Traurig (settlement counsel for the Kazakh Parties) and Kirby McInerney (counsel for Arcanum). Mr. Sater made clear that he was willing to continue settlement discussions if the Parties would agree to a tolling agreement.

15. The Kazakh Parties made clear that they are not interested in further discussions. Consequently, Mr. Sater must respectfully request that the Court grant him leave to file the Proposed Amended Pleading pursuant to Fed. R. Civ. P. 15(a)(2).

16. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 3, 2022.

_____
John H. Snyder