# Exhibit A



CRAIG WENNER
Tel.: (212) 909-7625
E-mail: cwenner@bsfllp.com

January 26, 2022

**BY ELECTRONIC MAIL**

Thomas C. Sima
2 Park Avenue, 20th Floor
New York, NY 10016
tom@tsima.com

John H. Snyder
John H. Synder PLLC
555 Fifth Avenue, Suite 1700
New York, NY 10017
john@jhsnyderlaw.com

Re:   *City of Almaty, Kazakhstan, et ano. v. Felix Sater, et al.*,
Case No. 19 Civ. 2645 (AJN) (KHP)

Dear Counsel:

I am writing to bring to your attention several outstanding discovery issues.

*First*, it has become obvious that Mr. Sater has not conducted a reasonable or adequate search for documents responsive to our clients' discovery requests, and that Mr. Sater is in violation of the Court's order on this subject. After Mr. Sater's prior deposition where he appeared as a representative of Bayrock and Global Habitat, Mr. Sater was ordered to look for and produce certain additional documents. (ECF No. 242.) At his personal deposition, Mr. Sater testified that he located a single hard drive that he happened to have with him in Guyana and searched that drive and his computer based on search terms that he could not recall but were purportedly based on "all the related names from the litigation." (Jan. 29, 2021 Dep., 46:14-18.) Mr. Sater admitted that other than the one hard drive and computer that he physically brought with him to Guyana, he had not done anything else to search for responsive documents. (*Id.* at 47:22-48:6.) He testified that he "didn't bring any paperwork" and "didn't bring any files with" him to Guyana. (*Id.* at 47:6-17.) Mr. Sater also admitted that he maintained two storage facilities in New York that contained his personal belongings following his recent home move, and that the storage facilities likely had other papers and hard drives. (*Id.* at 47:22-49:9; 52:24-57:16.) Mr. Sater also represented to the Court that responsive information exists in those storage facilities, including potentially the still-unproduced recordings that Mr. Sater made of Ilyas Khrapunov. (*Id.* at 52:18-54:5.) Nonetheless, Mr. Sater conceded that he had done nothing to cause a search in those storage facilities. (*Id.* at 57:5-16.)

As you know, Mr. Sater has an obligation to conduct a diligent search for documents responsive to our clients' discovery demands. *Mintz Fraade Law Firm, P.C. v. Brady*, 2021 WL 621206, at *4 (S.D.N.Y. Feb. 17, 2021) ("Rule 34(a)(1) allows for discovery of documents in a party's 'possession, custody, or control,' and requires a party 'to conduct a reasonable and diligent search for responsive documents.'"). Mr. Sater's use of undisclosed



"names" from the litigation that he selected to search only those two data sources that he brought with him to Guyana was not a reasonable search. The inadequacy of his search is not in dispute either, at least with regard to the storage units that he concedes contain responsive information but that have gone unsearched. Please disclose the search terms that were used to identify responsive documents on the hard drive and computer that Mr. Sater has with him within one week, and also please provide a date certain by which he will search and produce documents from his storage units and any other sources within his control.

*Second*, on three separate occasions during his deposition, Mr. Sater refused to answer questions, but promised to provide Plaintiffs with information and supplement his deposition testimony after research or further consultation with his attorney. Mr. Sater indicated he would:

(1) supplement his response to questions about the ways Plaintiffs were complicit in their own wrongdoing, including purported examples of "payoffs" by Plaintiffs. (Jan. 29, 2021 Dep. 25:23-32:18.)

(2) "definitely supplement [his] answer" "if [he] remember[ed] anyone" else that co-invested with Ilyas in any other investment deals or transactions. (*Id.* at 121:12-122:9.)

(3) needed to "rereview" his answer to the complaint in this action with his attorney in order to determine the basis in which he denied that the bid package contained false and misleading statements. (*Id.* at 130:21-131:4.)

While Mr. Sater indicated that he needed "one week" to supplement his testimony to certain of these inquiries (*Id.* 33:21-34:3), to date, Mr. Sater has not submitted any additional information or otherwise supplemented his deposition with any of the information he testified he would provide. Please provide Mr. Sater's sworn written supplemental responses to his testimony within one week.

*Third*, during both of Mr. Sater's depositions, Mr. Sater's prior counsel improperly instructed Mr. Sater not to answer certain questions on the basis of relevance or questioning that, in her view, was otherwise objectionable. At his individual deposition, among other things, Mr. Sater's prior counsel instructed Mr. Sater not to answer questions about:

(1) communications Mr. Sater had with then-President Trump approximately one week prior to the January 29, 2021 deposition, (Jan. 29, 2021 Dep., 88:19-89:25), notwithstanding Mr. Sater's concession that he sought a pardon from President Trump;

(2) the behavior for which Mr. Sater sought a pardon from then-President Trump, (*Id.* at 90:8-93:14); and

(3) whether among the reasons Mr. Sater remains in Guyana was fear of being arrested, (*Id.* at 98:22-99:9);

Mr. Sater's prior counsel similarly instructed Mr. Sater not to answer certain questions when he was deposed under Rule 30(b)(6) as a representative of Bayrock Group and Global Habitat Solutions, including about:

(1) whether he or his entities paid taxes on the significant profit he retained in the various deals he had with Ilyas Khrapunov. (Felix Sater 30(b)(6) Oct. 29, 2020 Dep. 259:2-260:10.)

2



    (2) whether he or his entities reported income or capital gain on money he received from his dealings with Ilyas Khrapunov.  (*Id.* at 262:13-22.)

These instructions not to answer were inappropriate and violate the Federal Rules of Civil Procedure.  As you well know, any objections at a deposition "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  Absent a claim of privilege, a prior court order, or a motion to terminate or limit, instructions not to answer questions at a deposition are improper. *Gould Inv'rs, L.P. v. Gen. Ins. Co. of Trieste & Venice*, 133 F.R.D. 103, 104 (S.D.N.Y. 1990) ("It is not the prerogative of counsel, but of the court, to rule on objections.").  Instead of allowing Plaintiffs' counsel to obtain the necessary evidence, Mr. Sater's prior counsel improperly instructed Mr. Sater not to answer based on relevance and other impermissible grounds, notwithstanding the fact that "it is improper to instruct a witness not to answer a question on the basis of relevance." *In re Omeprazole Patent Litig.*, 2005 WL 818821, at *11 (S.D.N.Y. Feb. 18, 2005).

    While these objections were raised by Mr. Sater's prior counsel, the refusal to answer remains improper and Mr. Sater is still required to answer these questions under oath.  Within one week, please confirm that Mr. Sater will respond to the above questions and the others about which his prior attorney instructed him not to answer.  If you share in the contention and maintain that the questions called for some sort of privileged information, we are happy to meet and confer on that issue, as well as on the form of obtaining this additional evidence from Mr. Sater (*e.g.*, through re-opening his deposition, written questions, or some other form).

    We look forward to your response.

    Sincerely,

    /s/ Craig Wenner
    Craig Wenner

3