**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

CITY OF ALMATY, KAZAKHSTAN and
BTA BANK JSC,

                                          Plaintiffs,

                         -against-

FELIX SATER, et al.,

                                          Defendants.

---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _4/1/2022_

**19-CV-2645 (AJN) (KHP)**

**ORDER and REPORT AND
RECOMMENDATION ON MOTION
TO AMEND**

**TO: THE HONORABLE ALISON J. NATHAN, UNITED STATES DISTRICT JUDGE**

**FROM: THE HONORABLE KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        Defendant Felix Sater ("Sater") has moved to amend his responsive pleading to assert

counterclaims of defamation, breach of fiduciary duty, fraudulent misrepresentation, and

breach of professional ethics, against proposed new counterclaim Defendants Arcanum Limited

("Arcanum") and the Republic of Kazakhstan ("Kazakhstan") as well as against the existing

Plaintiffs.  (ECF No. 361.)  For the reasons below, I respectfully recommend that Defendant's

motion be DENIED.

## BACKGROUND

        Plaintiffs brought this action against Sater, two companies he owns, Bayrock Group Inc.

and Global Habitat Solutions, Inc., Daniel Ridloff, a former business associate of Sater's, RRMI-

DR LLC, a company owned by Ridloff, Ferrari Holdings LLC, and MEM Energy Partners LLC.

Plaintiffs allege that Sater and Ridloff assisted Mukhtar Ablyazov, former chair of BTA Bank, JSC

("BTA"), and Viktor Khrapunov, former mayor of the City of Almaty, Kazakhstan, to launder

money that Ablyazov and Khrapunov stole from Plaintiffs.  They allege that the stolen funds

were laundered through shell entities into various U.S. investments, and that Sater and Ridloff,

through the defendant entities they control, knowingly accepted and still possess millions of

dollars of the stolen funds.  Plaintiffs bring claims for unjust enrichment and money had and

received against all defendants.  They also assert claims for fraud, conversion, conspiracy under

English law, and punitive damages against Sater and Ridloff individually.  The allegations in this

action are intertwined to some extent with those in another action pending in this Court,

captioned *City of Almaty, Kazahkstan, et al. v. Mukhtar Ablyazov, et al*., 15-cv-5345 (AJN)(KHP)

(the "Ablyazov Action").  They are also intertwined in part with a pending arbitration involving

fees due to Sater's company Litco LLC ("Litco") pursuant to the terms of a Confidential

Assistance Agreement ("CAA") between and among Litco, Plaintiffs, and Kazakhstan.  The Court

assumes familiarity with the underlying facts of these actions and does not repeat them here.[1]

*Factual Allegations Supporting Sater's Proposed Counterclaims*

On or around January 21, 2021, the Federal Bureau of Investigation ("FBI") released a

FBI Form 302 (hereinafter "FBI 302") dated September 18, 2017.  The report details information

collected during Robert Muller's Russian collusion investigation.  (Proposed Amended Pleading

("PAP") ¶ 7.)  In relevant part, the FBI 302 document stated that the FBI interviewed

Christopher Steele, a former British intelligence officer, and learned that he was investigating:

> an individual by the name of ABLYAZOV, embezzlement from BTA
> BANK, pyramid schemes, and connections to FELIX SATER and
> TRUMP SOHO.  STEELE said they want RICO up and running in the
> United States (NFI).  STEELE brought along a PowerPoint
> presentation from the company ARCANUM explaining the SATER
> connection.  STEELE provided a copy of this PowerPoint
> presentation to [redacted] and [redacted] (see attached).  This

---

[1] For additional background on this action see *City of Almaty v. Sater*, 503 F. Supp. 3d 51 (S.D.N.Y. 2020);ECF No.
144.  For additional background on the Ablyazov Action, see *City of Almaty, Kazakhstan v. Ablyazov*, 15-cv-5345,
2019 WL 4747654 (S.D.N.Y. Sept. 30, 2019); 2019 WL 4126445 (S.D.N.Y. Aug. 30, 2019); 2019 WL 1430155 (S.D.N.Y.
Mar. 29, 2019); 2018 WL 3579100 (S.D.N.Y. July 25, 2018); 2018 WL 1583293 (S.D.N.Y. Mar. 27, 2018); 278 F. Supp.
3d 776 (S.D.N.Y. 2017); 226 F. Supp. 3d 272 (S.D.N.Y. 2016); 2016 WL 5945912 (S.D.N.Y. June 24, 2016).

information was slated to be provided to the US Department of
Justice and the FBI as it involves a corrupt American official (NFI).
SATER is also involved with the daughter of ABLYAZOV (NFI).

(PAP ¶ 61.)

This document, which Sater learned about in early 2021, forms the basis for Sater's
proposed counterclaims.  Sater now asserts that "this case is about a nefarious plot by the
Kazakhstan National Security Committee (the Kazakh KGB) and their long-time agents Arcanum
to interfere in the 2016 U.S. Presidential Election in favor of Hillary Clinton."  (PAP ¶ 1.)
According to Sater, "Arcanum is a private intelligence firm staffed by Clinton administration
associates[.]"  (PAP ¶ 39.)  Based solely on the one paragraph in the FBI 302 document, Sater
alleges that Arcanum, Kazakhstan (not mentioned in the FBI document), and the Plaintiffs (only
one of whom is mentioned in the FBI document as a victim of embezzlement) conspired to leak
false and defamatory information about him to media outlets including ABC News.  (PAP ¶ 3).
Sater further alleges in or about 2016, Arcanum prepared a defamatory PowerPoint
presentation about him and provided it to Steele, who then gave it to the FBI in the hope the
FBI would pursue a criminal racketeering case against Sater and then-candidate Donald Trump,
who was Sater's long-time business partner, to harm Trump's campaign for president.  (PAP ¶¶
4, 9, 33, 37.)

The gravamen of Sater's proposed counterclaims is that BTA, the City of Almaty,
Kazakhstan, and Arcanum engaged Litco "in bad faith" and "intended to use the CAA as a
pretext for gathering intelligence against Sater, with the intent of harming Donald Trump's
Presidential campaign."  (PAP ¶¶ 8, 61.)  The CAA signed in June 2015, before Trump
announced he was running for President, tasked Litco with assisting Plaintiffs in recovering
assets stolen by Ablyazov and his associates.  (PAP ¶ 25.)  Sater alleges that he had multiple

meetings with Arcanum personnel and Plaintiffs' attorneys while working under the CAA.  (PAP ¶ 34.)  Sater alleges that Plaintiffs were feeding information to Kazakhstan's intelligence service, which was coordinating the plot to smear him and Trump and help Hillary Clinton get elected.  (PAP ¶¶ 10, 38.)  The plot failed, however, because Trump was elected President. Sater asserts that due to the failure of the plot and pressure from the Russian Kremlin, Kazakhstan and Plaintiffs decided not to pay Litco money owed under the CAA.  (PAP ¶¶ 38, 66.)

In July 2021, Sater's attorneys prepared a draft version of his amended pleading which Sater showed to Karim Massimov, the former Prime Minister of Kazakhstan, through an intermediary.  (PAP ¶ 46.)  Sater's counsel worked with Kazakhstan's counsel to resolve this dispute privately.  In January 2022, the settlement discussions failed.  Sater's "objective now is to recover the US $50-$800 million or more that is owed to him [for his work under the CAA], and to restore his good name by exposing the Kazakhs' treachery" through prosecution of the proposed counterclaims.  (PAP ¶ 70.)

**PROCEDURAL HISTORY**

Plaintiffs filed this action three years ago, on March 25, 2019.  (Compl., ECF No. 1.) Under the Court's original scheduling order, the parties had until July 17, 2019 to amend their pleadings or join additional parties.  (Scheduling Order, ECF No. 41.)  Sater answered the First Amended Complaint on January 15, 2021.  (ECF Nos. 254, 266.)

Discovery in this matter has been extensive and closely supervised by the undersigned. The parties have exchanged documents and taken approximately nine depositions, although a few discovery items remain outstanding, including document production from third-party

witnesses and a deposition of a non-party who is outside of the United States.  (ECF No. 364.)

Discovery is set to expire on June 25, 2022.

On February 3, 2022, Sater filed the instant motion to amend.  (ECF No. 356.)  Shortly

thereafter, Plaintiffs filed a letter objecting to the motion on procedural grounds and moved to

strike.  (ECF No. 357.)  Before the Court ruled on Plaintiff's motion to strike, Sater filed a

corrected motion, which he argues corrected the procedural deficiencies identified by Plaintiffs.

The undersigned held oral argument on March 24, 2022.

### LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its

pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is

one to which a responsive pleading is required, 21 days after service of a responsive pleading or

21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ.

P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave.  The court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated that "[t]his permissive

standard is consistent with our strong preference for resolving disputes on the merits."

*Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted).  Under Rule 15,

leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive

on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v.*

*N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).

Where, as here, there is a scheduling order in place that establishes a deadline for

seeking leave to amend and to join parties, "the lenient standard under Rule 15(a), which

provides leave to amend 'shall be freely given,' must be balanced against the requirement

under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a

showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); *see also*

Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the

judge's consent."). The determination of whether "good cause" exists under Rule 16(b) largely

turns on the diligence of the moving party. *Holmes*, 568 F.3d at 335. Generally, the moving

party fails to show good cause when the proposed amendments rely on information "that the

party knew, or should have known, in advance of the deadline." *King-Devick Test Inc. v. NYU

Langone Hosps.*, 2019 WL 3071935, at *3 (S.D.N.Y. July 15, 2019) (citation omitted).

**DISCUSSION**

### A.  *Good Cause*

As a threshold matter, Sater must show good cause to amend his pleading because a

scheduling order was issued in this case that set deadlines to join parties and amend pleadings,

which has long elapsed. Fed. R. Civ. P. 16(b)(4). Sater does not make this showing because he

was not diligent. By his own admission he learned of the facts allegedly underlying his

proposed counterclaims– the FBI 302 document – in early 2021, which is shortly after he filed

his answer to the operative complaint. Sater's one-year delay in moving to amend after

learning of the purported basis for his counterclaims and failing to bring it to the Court's

attention demonstrates the lack of diligence. *See Geo-Grp. Commc'ns, Inc. v. Shah*, 2020 WL

5743516, at *17 (S.D.N.Y. Sept. 25, 2020) (no good cause when "Plaintiff waited 14 months

from when it discovered the new evidence to notify the Court of its intent to bring this

motion"); *Tardif v. City of New York*, 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (denying

motion to amend because plaintiff was not diligent in waiting five months between discovering new information and seeking leave to amend); *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 36 (S.D.N.Y. 2020) (denying motion to amend even though defendant did not discover new information until after deadline to amend in scheduling order because defendant "waited over three months" "without uttering a word to the Court about its intentions to amend"); *Abrams v. HBM Prenscia Inc.*, 2020 WL 6482881, at *2 (S.D.N.Y. Nov. 4, 2020) (no good cause for amendment after deadline even though plaintiff obtained new information after deadline, because plaintiff waited six months to move to amend).

That Sater prepared a draft version of the counterclaims in July 2021 only underscores his lack of diligence.  That is, even though the proposed pleading was drafted in July 2021, Sater did not mention to the Court that he wished to amend his answer and assert counterclaims against Plaintiffs as well as against other entities and a foreign country.  He had multiple opportunities to do so given that the Court has held regular conferences and requested status letters during this time.  Sater's only excuse for his lack of diligence is that he was engaging in private mediation to settle the claims he now seeks to add.  As the Second Circuit has recognized, this excuse is invalid.  *See Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (settlement discussions did not excuse delay in seeking leave to amend where plaintiffs waited over three months after learning information to seek leave); see also *Thorpe v. Duve*, 2020 WL 372676, at *2-3 (N.D.N.Y. Jan. 23, 2020) (pursuing "discovery, mediation, and settlement proposals" did not excuse delay in seeking leave to amend because "[p]arties often engage in settlement discussions during the course of discovery").  At oral argument, Sater's counsel offered no other basis for finding good cause to allow the amendment.

7

Furthermore, allowing an amendment at this late stage of the case would be prejudicial to Plaintiffs insofar as the proposed counterclaims would entail extensive discovery, including foreign discovery and discovery from parties who have not participated in the case thus far, and would significantly delay the resolution of this case.  At oral argument, Sater's counsel did not refute Plaintiffs' argument regarding prejudice.

In sum, Sater has failed to demonstrate good cause for amending his pleading at this late stage of the case and offered no rebuttal to Plaintiffs' claim of prejudice.

**B.  Joinder**

Not only does Sater fail to demonstrate good cause under Rule 16, but joinder of Arcanum and Kazakhstan is not proper under Rule 20.  Under Rule 20, defendants may be joined if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  *CF 135 Flat LLC v. Triadou SPY S.A.*, 2016 WL 5945933, at *2 (S.D.N.Y. June 21, 2016) (quoting Fed. R. Civ. P. 20(a)(2)).  Sater's proposed claims do not arise out of the same transaction or occurrence as the claims currently being litigated in this action.  This action involves Sater's (and others') alleged involvement in laundering money stolen from Plaintiffs by the former Chairman of BTA Bank (Mukhtar Ablyazov) and the City of Almaty's former Mayor (Viktor Khraponov) and profiting therefrom. The money laundering occurred through various real estate transactions entered into by shell companies controlled by Ablyazov.  Thus, the focus of discovery has centered on ownership of the companies involved in the transactions and the source of the funds used in those transactions.  In contrast, Sater's proposed counterclaims center on an alleged politically

motivated spying and a reputation smearing campaign against Sater and Donald Trump.  Sater describes his counterclaims as being about "a nefarious plot by the Kazakhstan National Security Committee (the Kazakh KGB) and their long-time agents Arcanum to interfere in the 2016 U.S. Presidential Election in favor of Hillary Clinton."  (PAP ¶ 1.)  Needless to say, international espionage and election interference has nothing to do with the Plaintiffs' claims to recover money stolen from them.

During oral argument, Sater's attorney suggested that the claims somehow related to his affirmative defense of release and waiver.  This is nonsensical.  Sater's defense relies on release language in the CAA and is independent from his proposed counterclaims.  What Sater really appears to be doing is to find a way to delay this case further and collect discovery on his defenses that he has so far failed to collect.  Sater has had nearly three years to gather evidence relating to his affirmative defense of release and waiver.  His failure to develop evidence through discovery on that defense cannot be cured by the assertion of counterclaims that do not arise out of the money laundering and real estate transactions at issue in this case.  In any event, most if not all of the evidence relevant to the enforceability of the CAA and its provisions was developed in the Ablyazov Action.

In addition, joinder at this time would prejudice Plaintiffs.  "Courts maintain broad discretion concerning whether to permit joinder." *CF 135 Flat LLC*, 2016 WL 5945933, at *2 (quoting *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 168 (S.D.N.Y. 2012).  In assessing whether joinder is appropriate, courts primarily consider whether it will "delay the proceedings or prejudice" the opposing party" but may also consider "the closeness of the

relationship between the present parties and the parties to be joined." *Id.* (quoting *Novak v. TRW, Inc.*, 822 F. Supp. 963, 973 (E.D.N.Y. 1993)).

In this action, even if Sater can show that joinder would be permissible under Rule 20, he has not countered Plaintiffs' claim of prejudice.  Discovery is nearly complete, and the counterclaims would exponentially expand discovery, delaying this case potentially for years. This is particularly so given that the new proposed parties have not participated in any of the extensive discovery that already has occurred and would need time to catch up, but also because one of the new proposed parties is the sovereign nation of Kazakhstan.  This would likely lead to extensive motion practice about jurisdiction.  Further, this Court is well familiar with the extensive delays attendant to obtaining documents and information from parties in Kazakhstan from its supervision of the Ablyazov Action.

Because Sater's proposed pleading should be rejected for the reasons set forth above, I do not address other arguments in the briefing.

## CONCLUSION

For the reasons set forth above, I respectfully recommend Defendant Sater's Motion to Amend at ECF No. 361 be denied.  The original motion to amend at ECF No. 356 and the motion to strike at ECF No. 357 are terminated as moot.

Dated:      April 1, 2022
            New York, New York

Respectfully Submitted,

*Katharine H. Parker*

KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).

If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Nathan.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).