**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>      Plaintiffs,<br><br>      -against-<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>      Defendants, | 15 Civ. 5345(JGK) (KHP)<br><br>(The Ablyazov Case) |
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>      Plaintiffs,<br><br>      -against-<br><br>FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC and MEM ENERGY PARTNERS LLC,<br><br>      Defendants. | 19 Civ. 2645 (JGK) (KHP)<br><br>(The Sater Case) |

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| LITCO, LLC,<br><br>      Claimant,<br><br>      -against-<br><br>ARCANUM (ASIA) LIMITED, REPUBLIC OF KAZAKHSTAN, CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,<br><br>      Respondents. | No. 01-18-0003-7960<br><br>(The Litco Arbitration) |

<u>**NOTICE OF OFFER OF JUDGMENT**</u>
<u>**PURSUANT TO FRCP RULE 68**</u>

PLEASE TAKE NOTICE that pursuant to Rule 68 of the Federal Rules of Civil Procedure, Felix Sater hereby offers to allow judgment to be entered in the above-captioned matter of *City of Almaty, et ano. v. Sater, et al.*, 19-cv-2645 (the **Sater Case**) on the terms set forth in the accompanying Offer of Judgment dated April 29, 2022.

PLEASE TAKE FURTHER NOTICE, pursuant to Rule 68, Parties may accept Sater's Offer of Judgment on or before May 13, 2022.

Dated:   New York, New York
         April 29, 2022

JOHN H. SNYDER PLLC

_____
John H. Snyder, Esq.
157 East 81st Street, Suite 3A
(917) 292-3081
john@jhs.nyc

*Counsel for the Sater Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC, | |
| Plaintiffs, | |
| -against- | 15 Civ. 5345(JGK) (KHP) |
| MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A., | (The Ablyazov Case) |
| Defendants, | |

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC, | |
| Plaintiffs, | |
| -against- | 19 Civ. 2645 (JGK) (KHP) |
| FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC and MEM ENERGY PARTNERS LLC, | (The Sater Case) |
| Defendants. | |

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| LITCO, LLC, | |
| Claimant, | |
| -against- | No. 01-18-0003-7960 |
| ARCANUM (ASIA) LIMITED, REPUBLIC OF KAZAKHSTAN, CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC, | (The Litco Arbitration) |
| Respondents. | |

**OFFER OF JUDGMENT PURSUANT TO FRCP RULE 68**

On this 29th day of April, 2022, Felix Sater (Sater) hereby makes an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the above-captioned *Almaty, et ano. v. Sater, et al.*, 19-CV-2645 (the ***Sater Case***).  Sater will allow judgment to be entered on the terms set forth below.  Pursuant to Rule 68, the Parties shall have 14 days (i.e., until May 13, 2022) to accept this Offer of Judgment.[1]

## I.    RECITALS

a.    Sater is a defendant in the matter of *City of Almaty, et ano. v. Sater, et al.*, 19-cv-2645 (the ***Sater Case***), where the plaintiffs are the City of Almaty (***Almaty***) and BTA Bank JSC (***BTA***).[2]

b.    In the Sater Case, Almaty and BTA contend (and the defendants deny) that Sater and other defendants received money as a result of transactions occurring in 2011-2012 that rightfully belongs to the Kazakh Parties.

c.    Sater is currently seeking to interpose a set of Proposed Counterclaims against Almaty, BTA, and possibly two additional parties, Arcanum (Asia) Limited (***Arcanum***) and the Republic of Kazakhstan (***Kazakhstan***) (the ***Proposed Counterclaims***).

d.    The Sater Case is closely intertwined with another pending matter entitled *City of Almaty, et ano. v. Ablyazov, et al.*, 15-cv-5345 (the ***Ablyazov Case***), in which the plaintiffs are Almaty and BTA, with Triadou SPV S.A. (***Triadou***) the remaining defendant.

e.    The Sater Case and the Ablyazov Case are related to an arbitration proceeding entitled *Litco v. Arcanum, et al.*, AAA Arb. No. 01-18-0003-7960 (the ***Litco Arbitration***), wherein the claimant is Litco LLC, a company owned by Sater, and wherein the respondents are Almaty, BTA, Kazakhstan, and Arcanum.

---

[1]    Sater is aware that 14 days may not be sufficient time for counsel to discuss this proposal with clients, particularly overseas clients.  Sater is amenable to extending the time upon request.  In order to facilitate communications with Russian speaking clients, we have prepared a Russian language translation of this Offer of Judgment (see **Schedule A** hereto).  To the extent there is a conflict between the English and Russian version, the English version shall control.

[2]    Almaty, BTA, and where applicable, Kazakhstan are referred to as the ***Kazakh Parties***.

f.     In the Litco Arbitration, Litco seeks to enforce a certain Confidential Assistance Agreement (the *CAA*) which contains, at paragraph 2(b):

> **Consideration.** In consideration for Litco's assistance hereunder, Arcanum, Kazakhstan, Almaty, and BTA jointly and severally agree to pay Litco (1) a monthly fee equal to $100,000 each calendar month for a period equal to the greater of (a) twelve calendar months or (b) the duration of such assistance, commencing the date of execution of this Agreement (the "Monthly Fee"), plus (ii) an amount equal to *sixteen percent (16%) of all monies, remuneration, proceeds, accounts, assets, real estate, art, or other economic value recovered* ("Recoveries") in Arcanum's asset recovery efforts against the Khrapunov Entities and/or the Ablyazov Entities, including, without limitation, any recoveries by Kazakhstan, its governmental agencies, municipalities, subdivisions and government owned or controlled entities including but not limited to Almaty (collectively the "Kazakhstan Governmental Authorities") and BTA, *as a result of, or in connection with, assistance provided by Litco, including without limitation, any leads derived, directly or indirectly, therefrom (the "Recoveries Consideration"), regardless of whether Arcanum or the Kazakhstan Governmental Authorities or BTA had previous knowledge of the information provided in connection with the Recoveries*; provided, however, that Litco shall not be entitled to compensation hereunder with respect to that portion of assets, if any, *recovered wholly independent of any assistance or information provided by Litco.* Litco shall be entitled to such compensation in accordance with all applicable rules, regulations, statutes and laws.

g.     In the Litco Arbitration, Litco also seeks to enforce on behalf of itself and its sole owner, Felix Sater, the following release provision contained in the CAA:

> Release. Upon the execution of this Agreement by such party, each of Kazakhstan, Almaty and BTA, for itself, and or on behalf of its predecessors, successors, past, present, and future officials and citizens, assigns and successors in interest (collectively, the "Releasers"), *hereby releases and discharges Litco, together with its predecessors, successors, direct or indirect parent companies, direct and indirect subsidiary companies, and its past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers and representatives* (collectively the "Releasees"), from all known and/or unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental

anguish, emotional distress, expenses, and punitive damages, ***of any nature whatsoever, known or unknown, which such Releasors have, or may have had, against the Releasees, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from this Agreement, the Releasees' previous, current or future contractual obligations and any other matter between the Parties***, and or any other claims under applicable local, federal or ethical rules, regulations, statutes and laws.  This release shall not apply under any circumstances or in any way to any of the Khrapunov Entities or Ablyazov Entities.

h. Litco's assistance under the CAA directly resulted in the recovery, *inter alia*, of two penthouse apartments valued at approximately $30 million, cash in the amount of $1.6 million,as well as potential recovery by Almaty and BTA of approximately $24 million in the Ablyazov Case.[3]

i. The Ablyazov Case and the Sater Case are part of a worldwide effort undertaken by the Nazarbayev regime over the last 13 years to neutralize Ablyazov as a political opponent by keeping him occupied with lawsuits and depriving him of access to financial resources that might otherwise fund political opposition.

j. The Ablyazov Case and the Sater Case have consumed prodigious amounts of judicial resources as illustrated by the dockets in both cases, with nearly 1,500 and 400 docket entries respectively.

k. Due to the recent elevation of Judge Nathan to the Second Circuit Court of Appeals, the Ablyazov and Sater Cases have been re-assigned to Judge Koeltl, who will be required to devote hundreds of hours to learning the massive record in the Ablyazov and Sater Cases.

l. A jury trial in the Ablyazov Case – expected to last three weeks – was scheduled for July 2022 prior to Judge Nathan's elevation to the Second Circuit.

m. The Sater Case – if and when it is tried to a jury – will likely also require at least three weeks due to the number and complexity of the transactions at issue.

n. The Sater Case, the Ablyazov Case, and the Litco Arbitration are logically, factually, and legally intertwined in a manner that makes piecemeal settlement exceedingly difficult.

---

[3] Litco's claim to 16% of the $24 million in dispute in the Ablyazov Case arises only if the Kazakh Parties prevail at trial in the Ablyazov Case.  On the other hand, if the Kazakhs lose the Ablyazov Case, and it is determined that those funds were not stolen, their claims in the Sater Case will be undermined.

o.   The Ablyazov Case is a dispute over approximately $24 million to which Almaty and BTA (on the one hand) and Triadou (on the other) both claim entitlement.

p.   The Sater Case seeks disgorgement of $20-40 million, primarily from Sater, who is judgment proof.

q.   The Litco Arbitration involves claims by Litco (owned by Sater) against the Kazakh Parties and Arcanum worth at least $25 million.

r.   In January 2022, the Republic of Kazakhstan experienced significant civil unrest that resulted in Kazakhstan's President Tokayev firing his entire cabinet and purging loyalists of the predecessor Nazarbayev regime from positions of authority, charging one very senior official with treason.

s.   As a result of the political upheaval, the Ablyazov and Sater Cases are (or soon will be) managed by a new set of people in Kazakhstan who, unlike Nazarbayev's loyalists, have no personal investment in pursuing Ablyazov and are instead focused on recovering assets from Nazarbayev and his cronies, including 28 individuals living in London who were recently "named and shamed" by the UK Labor Party.  Complicating matters further, news is coming out of Kazakhstan that BTA's owner, Kenes Rakishev, has been questioned about his role in the unrest of January 2022 and his ties to the organized crime boss accused of orchestrating the attempted coup.[4]

## II.   TERMS OF THE PROPOSED JUDGMENT

1.   **Dismissal of the Sater Case.**  Almaty and BTA shall dismiss the Sater Case with prejudice as against all defendants.

2.   **Withdrawal / Dismissal of Sater's Proposed Counterclaims.**  Sater shall withdraw and/or dismiss his Proposed Counterclaims with prejudice as against Almaty, BTA, Arcanum, and Kazakhstan.

3.   **Dismissal of the Litco Arbitration.**  Sater shall cause his company, Litco, to dismiss all claims asserted in the Litco Arbitration with prejudice as against Almaty, BTA,

---

[4] *See* https://dispatchweekly.com/2022/04/kenes-rakishev-questioned-over-links-to-ringleader-of-attempted-coup/

Arcanum, and Kazakhstan, including Litco's claim of entitlement to 16% of all funds recovered with Litco's assistance.

4.    **Dismissal of the Ablyazov Case.**  Almaty and BTA shall dismiss the Ablyazov Case with prejudice as against Triadou.

5.    **Distribution of Disputed Funds.**  In consideration for each party's agreement to compromise their claims, and with the understanding that all parties seek to avoid the cost and distraction of years of additional litigation, the approximately $24 million in cash or more that is the subject of the Ablyazov Case will be distributed as follows:

    a.    40% to BTA Bank and the City of Almaty;

    b.    40% to Triadou SPV S.A.

    c.    20% to Litco LLC

6.    **Release of Sater Defendants and Related Parties.**  Almaty, Arcanum, Kazakhstan, and BTA shall each execute a global release in the form set forth below (***Global Release***) of all defendants in the Sater Case and Litco, LLC.

7.    **Release of Triadou and Related Parties.**  Almaty, Kazakhstan, and BTA shall each execute a Global Release of Triadou and all related parties.

8.    **Release of the Kazakh Parties.**  Each of the defendants in the Sater Case (and Litco, LLC) shall execute a Global Release of Almaty, BTA, Arcanum, and Kazakhstan.

9.    **Release of Law Firms.**  In view of the litigious nature of the parties and the desire for finality, each of Litco, Felix Sater, BTA, Arcanum, Almaty and Kazakhstan shall execute Global Releases in favor of the attorneys of record in the Sater Case or the Ablyazov Case, including John H. Snyder PLLC, Thomas C. Sima, Jason Cyrulnik, and Boies Schiller & Flexner.

10.    **No Release of Ablyazov.**  Nothing herein shall be construed as waiving any claims or causes of action that Almaty, BTA, or Kazakhstan may have against Mukhtar Ablyazov, Viktor

Khrapunov, Ilyas Khrapunov, any members of their family and any entities that they control (collectively, the ***Ablyazov and Khrapunov Parties***) nor shall any release provided by any party to this judgment be construed in any way as acting to release any of the Ablyazov or Khrapunov Parties if it is proven that any Ablyazov or Khrapunov Party would otherwise be released as a result of the releases made pursuant to this judgment.

11.     **Parties Bear Their Own Fees and Costs.**  Each Party shall bear its own fees and costs incurred in the Ablyazov Case, the Sater Case, and/or the Litco Arbitration.

12.     **Form of Release.**  The form of release shall be as follows for individuals and entities, respectively:

**Individual Release:**

1.(a)    For purposes of this release, the Releasor shall mean [name of individual] and the Releasees shall mean [name of party releasees], their subsidiaries, parent companies and other affiliated companies (as "affiliate" is defined in the Securities Exchange Act of 1934, as amended), as well as all of their respective shareholders, officers, directors, members, managers, predecessors and successors, assigns, attorneys and agents and, in the case of any sovereign Releasee, any current or former governmental official whose actions were in any way related to the subject matter of the lawsuits being released hereby.

(b)    Releasor hereby represents and warrants to [party releasees] and their respective successors and assigns that he is over eighteen years of age, of sound and disposing mind and memory, not acting under the duress, menace, overreaching, fraud or undue influence of any person or persons whomsoever, and is entering into this agreement freely and voluntarily.  Releasor further represents and warrants to the [party releasees] and their respective successors and assigns that he is not suffering from any emotional, physical or mental handicap or condition which affects or diminishes his understanding and comprehension of this agreement.

(c)    Releasor hereby represents and warrants to the [party releasees] and their respective successors and assigns that he fully understands and accepts the provisions of this agreement and believes them to be fair, just, adequate and reasonable and coinciding with his best interests, and Releasor understands the meaning and effect of the provisions of this agreement.

(d)    Releasor hereby represents and warrants to the [party releasees] and their respective successors and assigns that the consideration granted by this agreement is sufficient to enter into this agreement, and no additional consideration was promised to Releasor to induce Releasor to enter into this agreement.

2.(a)   Releasor hereby releases and forever discharges the Releasees from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, attorneys' fees and demands whatsoever, in law or equity, against any Releasee which Releasor ever had, now has or hereafter can, shall or may have, for, on account of, or by any reason of any action, transaction, occurrence, omissions, relationship, matter, cause or thing whatsoever related to Releasor's relationship with the Releasees arising from the inception of time up to the day of the date of this agreement; **provided, however**, that nothing in this release shall preclude the Releasor from enforcing the terms of this agreement.

(b)   Releasor hereby covenants to the [party releasees] and their respective successors, assigns, attorneys and agents that, with the exception of claims that may arise under this agreement, Releasor will never bring, commence, maintain, make, assert, assist, request, or prosecute, directly or indirectly, against any individual or entity released in this agreement, any claim (including claims for indemnity and/or contribution in any form), demand, action, suit, request, proceeding, or cause of action, in law or equity, for damages or other relief (including court and attorneys' fees) arising out of or in connection with Releasor's relationship with the [party releasees] in violation of his release set forth in Section 2(a), above.

(c)   Releasor hereby further agrees that in the event that Releasor shall breach any of the promises or covenants made by Releasor in this Section 2, any affected Releasee shall be entitled to recover, in addition to any other damages sought, court costs and attorneys' fees incurred in connection with defending against such action by Releasor.

**Entity Release:**

1.(a)    For purposes of this release, the Releasor shall mean [name of entity], acting on behalf of itself, its subsidiaries, parent companies and other affiliated companies (as "affiliate" is defined in the Securities Exchange Act of 1934, as amended), as well as all of the foregoing's respective shareholders, officers, directors, members, managers, predecessors and successors, assigns, attorneys and agents and, in the case of any sovereign Releasor, any current or former governmental official whose actions were in any way related to the subject matter of the lawsuits being released hereby, and the Releasees shall mean [name of party releasees], their subsidiaries, parent companies and other affiliated companies (as "affiliate" is defined in the Securities Exchange Act of 1934, as amended), as well as all of their respective shareholders, officers, directors, members, managers, predecessors and successors, assigns, attorneys and agents and, in the case of any sovereign Releasee, any current or former governmental official whose actions were in any way related to the subject matter of the lawsuits being released hereby.

(b)    Releasor hereby represents and warrants to the [party releasees] that Releasor is a [entity type] duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation.  Releasor has duly authorized the execution and delivery of this agreement and the consummation of the transactions contemplated by this agreement. This agreement constitutes a legal, valid, and binding obligation of Releasor, enforceable against Releasor in accordance with its terms, and the execution, delivery, and performance by the Releasor of this agreement and the consummation of the transaction contemplated by this agreement do not and will not (with the giving of notice or the passage of time or both) (i) conflict with the constituent documents of the Releasor; (ii) violate any provision of any law applicable to the Releasor; (iii) violate any order, judgment, or decree applicable to the Releasor; or (iv) result in the creation of any lien, charge, or encumbrance upon the assets or properties of the Releasor.

(c)    Releasor hereby represents and warrants to the [party releasees] and their respective successors and assigns that its duly authorized representatives fully understand and accept the provisions of this agreement and believe them to be fair, just, adequate and reasonable and coinciding with the Releasor's best interests, and such representatives understand the meaning and effect of the provisions of this agreement.

(d)    Releasor hereby represents and warrants to the [party releasees] and their respective successors and assigns that the consideration granted by this agreement is sufficient to enter into this agreement, and no additional consideration was promised to Releasor to induce Releasor to enter into this agreement.

(e)    If Releasor is a governmental entity, the Releasor hereby agrees to waive all sovereign immunity by whatever name or title with respect to disputes, controversies or claims arising out of or in relation to or in connection with this agreement, including without limitation, the jurisdiction of the court, the enforcement and execution of any judgment and award, and the issuance of any attachment or other interim remedy.

2.(a)    Releasor hereby releases and forever discharges the Releasees from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, attorneys' fees and demands whatsoever, in law or equity, against any Releasee which Releasor ever had, now has or hereafter can, shall or may have, for, on account of, or by any reason of any action, transaction, occurrence, omissions, relationship, matter, cause or thing whatsoever related to Releasor's relationship with the Releasees arising from the inception of time up to the day of the date of this agreement; **provided, however**, that nothing in this release shall preclude the Releasor from enforcing the terms of this agreement.

(b)     Releasor hereby covenants to the [party releasees] and their respective successors, assigns, attorneys and agents that, with the exception of claims that may arise under this agreement, Releasor will never bring, commence, maintain, make, assert, assist, request, or prosecute, directly or indirectly, against any individual or entity released in this agreement, any claim (including claims for indemnity and/or contribution in any form), demand, action, suit, request, proceeding, or cause of action, in law or equity, for damages or other relief (including court and attorneys' fees) arising out of or in connection with Releasor's relationship with the [party releasees] in violation of its release set forth in Section 2(a), above.

(c)     Releasor hereby further agrees that in the event that Releasor shall breach any of the promises or covenants made by Releasor in this Section 2, any affected Releasee shall be entitled to recover, in addition to any other damages sought, court costs and attorneys' fees incurred in connection with defending against such action by Releasor.

**SCHEDULE A**
**RUSSIAN TRANSLATION**

**ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ**
**ЮЖНЫЙ ОКРУГ НЬЮ-ЙОРКА**

| | |
|---|---|
| ГОРОД АЛМАТЫ (КАЗАХСТАН) и АО «БТА БАНК», <br><br> Истцы, <br><br> -против- <br><br> МУХТАРА АБЛЯЗОВА, ВИКТОРА ХРАПУНОВА, ИЛЬЯСА ХРАПУНОВА, и АО «ТРИАДУ СПВ», <br><br> Ответчиков | 15 Civ. 5345(JGK) (KHP) <br><br> (Дело Аблязвоа) |
| ГОРОД АЛМАТЫ (КАЗАХСТАН) и АО «БТА БАНК», <br><br> Истцы, <br><br> -против- <br><br> ФЕЛИКСА САТЕРА, ДАНИЭЛА РИДЛОФФА, АО «БЕЙРОК ГРУП», АО «ГЛОБАЛ ХАБИТАТ СОЛУШНС», ООО «RRMI-DR», ООО «ФЕРРАРИ ХОЛДИНС» и ООО «МЕМ ЭНЕРДЖИ ПАРТНЕРС», <br><br> Ответчиков | 19 Civ. 2645 (JGK) (KHP) <br><br> (Дело Сатера) |

**АМЕРИКАНСКАЯ АРБИТРАЖНАЯ АССОЦИАЦИЯ**

| | |
|---|---|
| ООО «ЛИТКО», <br><br> Истец, <br><br> -against- <br><br> АРКАНУМ (АЗИЯ) ЛИМИТЕД, РЕСПУБЛИКИ КАЗАХСТАН, ГОРОДА АЛМАТЫ (КАЗАХСТАН) И АО «БТА БАНК», <br><br> Ответчиков | No. 01-18-0003-7960 <br><br> (Арбитражное дело Литко) |

**УВЕДОМЛЕНИЕ О ПРЕДЛОЖЕНИИ СУДЕБНОГО РЕШЕНИЯ**

### СОГЛАСНО ПРАВИЛУ 68 FRCP

ПОЖАЛУЙСТА, ОБРАТИТЕ ВНИМАНИЕ, что в соответствии со статьей 68 Федеральных правил гражданского судопроизводства Феликс Сатер настоящим предлагает разрешить вынесение судебного решения по вышеуказанному делу г. Алматы и др. против Сатера и др., 19-cv-2645 (*дело Сатера*) на условиях, изложенных в сопроводительном предложении решения от 29 апреля 2022 г.

ПОЖАЛУЙСТА, ОБРАТИТЕ ВНИМАНИЕ, что в соответствии с правилом 68 Стороны могут принять предложение Сатера о разрешении споров не позднее 13 мая 2022 года.

Датировано:  г. Нью-Йорк, шт. Нью-Йорк
            29-е апреля, 2022 г.

ДЖОН Х. СНАЙДЕР ПЛЛК

_____
Джон Х. Снайдер, адвокат
157 восточной 81ᵃ улицы, № 3А
(917) 292-3081
john@jhs.nyc

*Адвокат ответчиков Сатера*

**ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
ЮЖНЫЙ ОКРУГ НЬЮ-ЙОРКА**

| | |
|---|---|
| ГОРОД АЛМАТЫ (КАЗАХСТАН) и АО «БТА БАНК», | 15 Civ. 5345(JGK) (KHP) |
| Истцы, | |
| -против- | (Дело Аблязвоа) |
| МУХТАРА АБЛЯЗОВА, ВИКТОРА ХРАПУНОВА, ИЛЬЯСА ХРАПУНОВА, и АО «ТРИАДУ СПВ», | |
| Ответчиков | |

| | |
|---|---|
| ГОРОД АЛМАТЫ (КАЗАХСТАН) и АО «БТА БАНК», | 19 Civ. 2645 (JGK) (KHP) |
| Истцы, | |
| -против- | (Дело Сатера) |
| ФЕЛИКСА САТЕРА, ДАНИЭЛА РИДЛОФФА, АО «БЕЙРОК ГРУП», АО «ГЛОБАЛ ХАБИТАТ СОЛУШНС», ООО «RRMI-DR», ООО «ФЕРРАРИ ХОЛДИНС» и ООО «МЕМ ЭНЕРДЖИ ПАРТНЕРС», | |
| Ответчиков | |

**АМЕРИКАНСКАЯ АРБИТРАЖНАЯ АССОЦИАЦИЯ**

| | |
|---|---|
| ООО «ЛИТКО», | No. 01-18-0003-7960 |
| Истец, | |
| -against- | (Арбитражное дело Литко) |
| АРКАНУМ (АЗИЯ) ЛИМИТЕД, РЕСПУБЛИКИ КАЗАХСТАН, ГОРОДА АЛМАТЫ (КАЗАХСТАН) И АО «БТА БАНК», | |
| Ответчиков | |

## ПРЕДЛОЖЕНИЕ СУДЕБНОГО РЕШЕНИЯ В СООТВЕТСТВИИ С ПРАВИЛОМ 68 FRCP

Сего 29-го апреля 2022 года Феликс Сатер (***Сатер***) настоящим предлагает судебное решение в соответствии со статьей 68 Федеральных правил гражданского судопроизводства по вышеуказанному делу *г. Алматы и др. против Сатера и др.*, 19-CV-2645 (***дело Сатера***). Сатер позволит вынести решение на условиях, изложенных ниже. В соответствии с Правилом 68 у Сторон есть 14 дней (т. е. до 2 мая 2022 г.), чтобы принять это Предложение о разрешении споров.[1]

## III.    ПРЕАМБУЛА

a.   Сатер является ответчиком по делу *г. Алматы и др. против Сатера и др.*, 19-cv-2645 (***Дело Сатера***), где истцами являются город Алматы (***Алматы***) и АО «БТА Банк» (***БТА***).[2]

b.   В деле Сатера Алматы и БТА утверждают (а ответчики отрицают), что Сатер и другие ответчики получили деньги в результате сделок, имевших место в 2011-2012 годах, которые по праву принадлежат Казахстанским Сторонам.

c.   В настоящее время Sater пытается подать ряд предложенных встречных исков против Алматы, БТА и, возможно, еще двух сторон, Арканум (Азия) Лимитед (***Арканум***) и Республики Казахстан (***Казахстан***) (такие иски в совокупности, ***Предлагаемые Встречные Иски***).

d.   Дело Сатера тесно переплетено с другим незаконченным делом, озаглавленным *г. Алматы и др. против Аблязова и др.*, 15-cv-5345 (***Дело Аблязова***), в котором истцами являются Алматы и БТА, а АО «Триаду СПВ» (***Триаду***) остается ответчиком.

e.   Дело Сатера и Дело Аблязова связаны с арбитражным разбирательством *Литко против Арканум и др.*, AAA Arb. № 01-18-0003-7960 (***Арбитражное дело Литко***), в котором истцом является ООО «Литко», компания, принадлежащая Сатеру, а ответчиками являются Алматы, БТА, Казахстан и Арканум.

---

[1]    Сатер понимает, что 14 дней может быть недостаточно для обсуждения этого предложения с клиентами, особенно с иностранными клиентами. Сатер может продлить время по запросу. Чтобы облегчить общение с русскоязычными клиентами, мы подготовили перевод настоящего Предложения о решении на русский язык (см. **Приложение A** к настоящему документу). В случае противоречия между английской и русской версиями английская версия имеет преимущественную силу.

[2]    Алматы, БТА и, где применимо, Казахстан именуются ***Казахстанскими Сторонами***.

f. В Арбитражном деле Литко компания Литко стремится обеспечить соблюдение определенного Соглашения о конфиденциальной помощи (*CAA*), которое в пункте 2(b) гласит:

**Вознаграждение.** Принимая во внимание помощь Литко по настоящему Соглашению, Арканум, Казахстан, Алматы и БТА совместно и по отдельности соглашаются выплачивать Литко (1) ежемесячную плату в размере 100 000 долларов США каждый календарный месяц в течение периода, равного большему из (а) двенадцати календарных месяцев или (б) продолжительности такой помощи, начиная с даты подписания настоящего Соглашения («Ежемесячная плата»), плюс (ii) сумму, *равную шестнадцати процентам (16%) всех денежных средств, вознаграждения, выручки, счетов, активов, недвижимости, предметов искусства или других экономических ценностей, возвращенных* («Возращенные активы») в рамках усилий Арканум по возвращению активов в отношении Субъектов Храпунова и/или Субъектов Аблязова, включая, помимо прочего, любые взыскания Казахстаном, его государственными органами, муниципалитетами, подразделениями и организациями, находящимися в собственности Казахстана или под его контролем, включая, помимо прочего, г. Алматы (совместно именуемые «Государственные органы Казахстана») и БТА, *в результате или в связи с помощью, оказываемой компанией Литко, включая, помимо прочего, любые расходы, прямо или косвенно полученные от них («Вознаграждение за Возвращенные активы»), независимо от того, было ли ранее известно компании Арканум, государственным органам Казахстана или БТА об информации, предоставленной в связи с Возвращенными активами*; при условии, однако, что Литко не имеет права на компенсацию по настоящему Соглашению в отношении той части активов, если таковая имеется, *возмещенная полностью независимо от какой-либо помощи или информации, предоставленной компанией Литко*. Литко имеет право на такую компенсацию в соответствии со всеми применимыми правилами, положениями, законами и законами.

g. В Арбитражном деле Литко компания Литко также стремится обеспечить соблюдение от своего имени и своего единственного владельца, Феликса Сатера, следующего положения об освобождении от ответственности, содержащегося в CAA:

Освобождение от ответственности. При заключении настоящего Соглашения такой стороной, каждый из Казахстана, Алматы и БТА от своего имени и/или от имени своих предшественников, правопреемников, бывших, настоящих и будущих должностных лиц и граждан, общих правопреемников и правопреемников в интересах (совместно «Освобождающие стороны»), *настоящим освобождают и отпускают Литко вместе с ее предшественниками, правопреемниками, прямыми или косвенными материнскими компаниями, прямыми и косвенными дочерними компаниями, а также с ее бывшими, настоящими и будущими должностными лицами, директорами, акционерами, дольщиками,*

*членами, партнерами, поверенными, агентами, сотрудниками, менеджерами и представителями* (совместно именуемые «Освобожденные лица»), от всех известных и/или неизвестных обвинений, жалоб, претензий, споров, обязательств, претензий, обещаний, соглашений, разногласий, убытков, действий, причин действий, исков, прав, требований, расходов, потерь, долгов, штрафов, гонораров, заработной платы, медицинских расходов, возмещения за боль и страдания или за душевные или эмоциональные страдания, оплат и штрафных санкций любого характера, известных или неизвестных, которые такие Освобождающие стороны имеют или могли иметь в отношении Освобожденных лиц, *независимо от того, являются ли они очевидными или еще не обнаруженными, или которые могут впоследствии развиться, за любые действия или бездействие, связанные с настоящим Соглашением или вытекающие из него, а также за предыдущие, текущие или будущие договорные обязательства и любые другие разногласия между Сторонами*, а также за любые другие претензии в соответствии с применимыми местными, федеральными или этическими правилами, положениями, уставами и законами. Это освобождение от ответственности ни при каких обстоятельствах и никоим образом не распространяется на Субъектов Храпунова или Субъектов Аблязова.

h. Помощь Литко в соответствии с САА непосредственно привела к возврату, в частности, двух квартир-пентхаус стоимостью приблизительно 30 миллионов долларов США, и 1.6 миллион долларов США в деньгах, а также потенциальному возврату Алматы и БТА примерно 24 миллионов долларов США по Делу Аблязова.[3]

i. Дело Аблязова и Дело Сатера являются частью всемирных усилий, предпринятых режимом Назарбаева за последние 13 лет, чтобы нейтрализовать Аблязова как политического оппонента, заставив его заниматься судебными процессами и лишив его доступа к финансовым ресурсам, которые в противном случае могли бы финансировать политическую оппозицию.

j. Дело Аблязова и Дело Сатера потребовали огромного количества судебных ресурсов, о чем свидетельствуют досье по обоим делам, с почти 1500 и 400 записями в досье соответственно.

k. В связи с недавним переводом судьи Натан во Второй окружной апелляционный суд, Дела Аблязова и Сатера были переданы судье Кёльтлю, который должен будет посвятить сотни часов изучению огромного материала по Делам Аблязова и Сатера.

---

[3]     Претензия Литко на 16% от 24 миллионов долларов США в споре по Делу Аблязова возникает только в случае победы Казахстанских Сторон в суде по Делу Аблязова. С другой стороны, если Казахи проиграют Дело Аблязова и будет установлено, что эти средства не были украдены, их претензии в Деле Сатера будут подорваны.

l.  Суд присяжных по делу Аблязова, который, как ожидается, продлится три недели, был назначен на июль 2022 года до повышения судьи Натан до должности второго округа.

m. Дело Сатера — если и когда оно будет рассмотрено присяжными — вероятно, также потребует не менее трех недель из-за количества и сложности рассматриваемых транзакций.

n.  Дело Сатера, Дело Аблязова и Арбитражное дело Литко логически, фактически и юридически переплетены таким образом, что частичное урегулирование чрезвычайно сложно.

o.  Дело Аблязова представляет собой спор на сумму около 24 миллионов долларов, на которые претендуют Алматы и БТА (с одной стороны) и Триаду (с другой).

p.  Дело Сатера требует взыскания 20-40 миллионов долларов, в первую очередь от Сатера, который не обладает средствами, достаточными для удовлетворения претензий.

q.  Арбитражное дело Литко включает претензии Литко (которая принадлежит Сатеру) против Казахстанских Сторон и Арканум на сумму не менее 25 миллионов долларов.

r.  В январе 2022 года в Республике Казахстан произошли серьезные гражданские беспорядки, в результате которых президент Казахстана Токаев уволил весь свой кабинет и убрал с руководящих должностей сторонников режима-предшественника Назарбаева, обвинив одного высокопоставленного чиновника в государственной измене.

s.  В результате политических потрясений Дело Аблязова и Сатера находятся в ведении (или скоро будет) в ведении новой группы людей в Казахстане, которые, в отличие от сторонников Назарбаева, не имеют личного интереса в преследование Аблязова и вместо этого сосредоточены на возвращении активов от Назарбаева и его приспешников, в том числе 28 человек, живущих в Лондоне, которые недавно были «названы и пристыжены» Лейбористской партией Великобритании.  Ситуацию еще больше усложняют новости из Казахстана о том, что владельца БТА Кенеса Ракишева допрашивают о его роли в январских беспорядках 2022 года и его связях с авторитетом организованной преступности, обвиняемым в организации попытки государственного переворота.[4]

---

[4] См. https://dispatchweekly.com/2022/04/kenes-rakishev-questioned-over-links-to-ringleader-of-attempted-coup/

## IV.    УСЛОВИЯ ПРЕДЛАГАЕМОГО РЕШЕНИЯ

1.    **Закрытие Дела Сатера.** Алматы и БТА прекращают Дело Сатера без права повторного возбуждения против всех ответчиков.

2.    **Снятие / отклонение предложенных встречных претензий Сатера.** Сатер должен отозвать и/или отклонить свои предложенные встречные претензии без права повторного возбуждения против Алматы, БТА, Арканум, и Казахстана.

3.    **Прекращение Арбитражного Дела Литко.** Сатер обяжет свою компанию Литко отклонить все иски, заявленные в Арбитражном деле Литко, без права повторного возбуждения против Алматы, БТА, Арканум и Казахстана, включая требование Литко о праве на 16% всех средств, возвращенных с помощью Литко.

4.    **Прекращение Дела Аблязова.** Алматы и БТА прекращают Дело Аблязова без права повторного возбуждения против Триаду.

5.    **Распределение оспариваемых средств.** Принимая во внимание согласие каждой стороны пойти на компромисс со своими претензиями и при том понимании, что все стороны стремятся избежать затрат и отвлечения внимания на годы дополнительных судебных разбирательств, приблизительно 24 миллиона долларов наличными, являющиеся предметом Дела Аблязова, будут распределены следующим образом:

a. 40% Банку БТА и г.Алматы;

b. 40% Триаду; и

c. 20% компании Литко.

6.    **Освобождение Ответчиков Сатера и сторон, связанных с ними, от ответственности.** Алматы, Арканум, Казахстан и БТА должны выполнить глобальное освобождение от ответственности в форме, изложенной ниже (*Глобальное Освобождение*) всех ответчиков по Делу Сатера, а также компании Литко.

7.    **Освобождение Триаду и сторон, связанных с ней, от ответственности.** Алматы, Казахстан и БТА должны выполнить Глобальное Освобождение компании Триаду и всех сторон, связанных с ней.

8.    **Освобождение Казахстанских Сторон от ответственности.** Каждый из ответчиков по Делу Сатера,  а также компания Литко, должны оформить Глобальное Освобождение города Алматы, БТА, Арканум и Казахстана.

9.    **Освобождение юридических фирм от ответственности.** Ввиду судебного характера сторон и стремления к завершенности, каждая из сторон Литко, Феликса Сатера, БТА, Арканум, Алматы и Казахстана должна оформить Глобальное Освобождение от ответственности в пользу официальных поверенных по Делу Сатера или Делу Аблязова, включая John H. Snyder PLLC, Thomas C. Sima, Jason Cyrulnik, и Boies Schiller & Flexner.

10.    **Отсутствие освобождения от ответственности Аблязова.** Ничто в настоящем документе не может быть истолковано как отказ от каких-либо требований или

оснований для действий, которые Алматы, БТА или Казахстан могут предъявить Мухтару Аблязову, Виктору Храпунову, Ильясу Храпунову, любым членам их семей и любым организациям, которые они контролируют (совместно, *Стороны Аблязова и Храпунова*) и никакое освобождение от ответственности, предоставленное какой-либо стороной настоящего решения, не должно толковаться каким-либо образом как действие, направленное на освобождение какой-либо из Сторон Аблязова или Храпунова от ответственности, если будет доказано, что какая-либо Сторона Аблязова или Храпунова в противном случае была бы освобождена от ответственности в результате освобождений, отданных в соответствии с этим документом.

11.   **Стороны несут собственные расходы и затраты.** Каждая Сторона несет свои собственные расходы и затраты, понесенные по Делу Аблязова, Делу Сатера и/или Арбитражному Делу Литко.

12.   **Форма Освобождения от ответственности.**   Форма освобождения от ответственности для физических и юридических лиц соответственно следующие:

**Освобождение от ответственности для физических лиц:**

1.(а)   Для целей данного освобождения от ответственности Освобождающее Лицо означает [имя физического лица], а Освобожденное Лицо означает [имя освобожденной стороны], их дочерние компании, материнские компании и другие аффилированные компании (как «аффилированное лицо» определено в Законе о фондовых биржах 1934 г. с поправками), а также всех их соответствующих акционеров, должностных лиц, директоров, членов, менеджеров, предшественников и преемников, правопреемников, поверенных и агентов, а в случае любого суверенного Освобожденного Лица - любого действующего или бывшего государственного должностного лица, действия которого каким-либо образом были связаны с предметом судебных исков, разрешенных настоящим документом.

(b)   Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что он старше восемнадцати лет, находится в здравом и располагающем уме и памяти, не действует под принуждением, угрозой, злоупотреблением, мошенничеством или неправомерным влиянием любого лица или лиц, кого бы то ни было, и заключает настоящее соглашение свободно и добровольно. Освобождающее Лицо также заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что он не страдает от каких-либо эмоциональных, физических или умственных недостатков или состояний, которые влияют или уменьшают его понимание и понимание настоящего соглашения.

(c)   Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что он полностью понимает и принимает положения настоящего соглашения и считает их справедливыми, правильными, адекватными, разумными и соответствующими его интересам, и Освобождающее Лицо понимает значение и действие положений настоящего соглашения.

(d)      Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что вознаграждение, предоставляемое по настоящему соглашению, достаточно для заключения настоящего соглашения, и Освобождающему Лицу не было обещано никакого дополнительного вознаграждения, чтобы побудить Освобождающее Лицо заключить настоящее соглашение.

2.      (a)      Настоящим Освобождающее Лицо освобождает и навсегда отпускает Освобожденных Лиц от всех действий, исков, долгов, сборов, денежных сумм, счетов, расчетов, облигаций, счетов, специальных требований, заверений, контрактов, разногласий, соглашений, обещаний, разногласий, нарушений, убытков, судебных решений, степени наказания, исполнений, исков, гонораров адвокатов и любых требований, по закону или по праву справедливости, против любого Освобожденного Лица, которое когда-либо было, есть сейчас или может быть в будущем, должно или может быть, по причине или посредством любой причины любого действия, транзакции, происшествия, упущения, отношений, вопроса, причины или чего-либо, связанного с отношениями Освобождающего Лица с Освобожденными Лицами, возникающего с момента начала времени до дня даты настоящего соглашения; при условии, однако, что ничто в этом освобождении от ответственности не препятствует Освобождающему Лицу обеспечивать соблюдение условий настоящего соглашения.

(b)      Освобождающее Лицо настоящим обязуется [освобожденным сторонам] и их соответствующим преемникам, правопреемникам, поверенным и агентам, что, за исключением претензий, которые могут возникнуть в соответствии с настоящим соглашением, Освобождающее Лицо никогда не будет предъявлять, начинать, поддерживать, делать, утверждать, помогать , запрашивать или преследовать в судебном порядке, прямо или косвенно, любое физическое или юридическое лицо, освобожденное в настоящем соглашении, в виде любых претензий (включая требования о возмещении убытков и/или вкладе в любой форме), требований, исков, жалоб, запросов, разбирательства или основания для иска, по закону или по праву справедливости, за ущерб или другую судебную санкцию (включая судебные издержки и гонорары адвокатов), возникающих в результате или в связи с отношениями Освобождающего Лица с [освобожденными сторонами] в нарушение его освобождения от ответственности, изложенного в Разделе 2 (а) выше.

(c)      Освобождающее Лицо настоящим также соглашается с тем, что в случае нарушения Освобождающим Лицом любого из обещаний или обязательств, данных Освобождающим Лицом в настоящем Разделе 2, любой пострадавшее Освобожденное Лицо имеет право на возмещение, в дополнение к любым другим испрашиваемым убыткам, судебных издержек и услуг адвокатов, и судебных сборов, понесенных в связи с защитой от таких действий со стороны Освобождающего Лица.

**Освобождение от ответственности для юридических лиц:**

1.(a)      Для целей данного освобождения от ответственности Освобождающее Лицо означает [название юридического лица], его дочерние компании, материнские компании и другие аффилированные компании (как «аффилированное лицо» определено в Законе о

фондовых биржах 1934 г. с поправками), а также все их соответствующие акционеры, должностные лица, директора, члены, менеджеры, предшественники и преемники, правопреемники, поверенные и агенты, а в случае любого суверенного Освобождающего Лица - любое действующее или бывшее государственное должностное лицо, действия которого каким-либо образом были связаны с предметом судебных исков, разрешенных настоящим документом, а Освобожденные Лица означают [имена и/или названия освобожденных сторон], их дочерние компании, материнские компании и другие аффилированные компании (как «аффилированное лицо» определено в Законе о фондовых биржах 1934 г. с поправками), а также всех их соответствующих акционеров, должностных лиц, директоров, членов, менеджеров, предшественников и преемников, правопреемников, поверенных и агентов, а в случае любого суверенного Освобожденного Лица - любого действующего или бывшего государственного должностного лица, действия которого каким-либо образом были связаны с предметом судебных исков, разрешенных настоящим документом.

(b)     Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам], что Освобождающее Лицо является [типом юридического лица], должным образом организованным, законно существующим и имеющим хорошую репутацию в соответствии с законами юрисдикции его создания. Освобождающее Лицо должным образом одобрило заключение и исполнение настоящего соглашения, а также транзакций, предусмотренных для завершения этим соглашением. Настоящее соглашение представляет собой юридическое, действительное и имеющее юридическую силу обязательство Освобождающего Лица, подлежащее исполнению в отношении Освобождающего Лица в соответствии с его условиями, а заключение, предоставление и исполнение Освобождающим Лицом настоящего соглашения и завершение транзакций, предусмотренных настоящим соглашением, и не будет (с уведомлением или по прошествии времени, или и тем, и другим) (i) конфликтовать с учредительными документами Освобождающего Лица; (ii) нарушать любое положение любого закона, применимого к Освобождающему Лицу; (iii) нарушать любой приказ, судебное решение или указ, применимый к Освобождающему Лицу; или (iv) привести к созданию каких-либо залогов, обвинений или обременений в отношении активов или собственности Освобождающего Лица.

(c)     Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что его должным образом уполномоченные представители полностью понимают и принимают положения настоящего соглашения и считают их правильными, справедливыми, адекватными и разумными и соответствующими наилучшим интересам Освобождающего Лица, и такие представители понимают значение и действие положений этого соглашения.

(d)     Освобождающее Лицо настоящим заявляет и гарантирует [освобожденным сторонам] и их соответствующим правопреемникам и иным преемникам, что вознаграждение, предоставляемое по настоящему соглашению, достаточно для заключения настоящего соглашения, и Освобождающему Лицу не было обещано никакого дополнительного вознаграждения, чтобы побудить Освобождающее Лицо заключить настоящее соглашение.

(e)   Если Освобождающее Лицо является государственным органом, настоящим Освобождающее Лицо соглашается отказаться от любого суверенного иммунитета под любым именем или титулом в отношении споров, разногласий или претензий, возникающих из настоящего соглашения, в связи с ним или сопряженных каким-либо образом с ним, включая, помимо прочего, споры относительно юрисдикции суда, приведения в исполнение и исполнения любого судебного решения и присуждения вознаграждения, а также выдачи любого ареста имущества или других временных средств правовой защиты.

2.   (a)   Настоящим Освобождающее Лицо освобождает и навсегда отпускает Освобожденных Лиц от всех действий, исков, долгов, сборов, денежных сумм, счетов, расчетов, облигаций, счетов, специальных требований, заверений, контрактов, разногласий, соглашений, обещаний, разногласий, нарушений, убытков, судебных решений, степени наказания, исполнений, исков, гонораров адвокатов и любых требований, по закону или по праву справедливости, против любого Освобожденного Лица, которое когда-либо было, есть сейчас или может быть в будущем, должно или может быть, по причине или посредством любой причины любого действия, транзакции, происшествия, упущения, отношений, вопроса, причины или чего-либо, связанного с отношениями Освобождающего Лица с Освобожденными Лицами, возникающего с момента начала времени до дня даты настоящего соглашения; при условии, однако, что ничто в этом освобождении от ответственности не препятствует Освобождающему Лицу обеспечивать соблюдение условий настоящего соглашения.

(b)   Освобождающее Лицо настоящим обязуется [освобожденным сторонам] и их соответствующим преемникам, правопреемникам, поверенным и агентам, что, за исключением претензий, которые могут возникнуть в соответствии с настоящим соглашением, Освобождающее Лицо никогда не будет предъявлять, начинать, поддерживать, делать, утверждать, помогать , запрашивать или преследовать в судебном порядке, прямо или косвенно, любое физическое или юридическое лицо, освобожденное в настоящем соглашении, в виде любых претензий (включая требования о возмещении убытков и/или вкладе в любой форме), требований, исков, жалоб, запросов, разбирательства или основания для иска, по закону или по праву справедливости, за ущерб или другую судебную санкцию (включая судебные издержки и гонорары адвокатов), возникающих в результате или в связи с отношениями Освобождающего Лица с [освобожденными сторонами] в нарушение его освобождения от ответственности, изложенного в Разделе 2 (a) выше.

(c)   Освобождающее Лицо настоящим также соглашается с тем, что в случае нарушения Освобождающим Лицом любого из обещаний или обязательств, данных Освобождающим Лицом в настоящем Разделе 2, любой пострадавшее Освобожденное Лицо имеет право на возмещение, в дополнение к любым другим испрашиваемым убыткам, судебных издержек и услуг адвокатов, и судебных сборов, понесенных в связи с защитой от таких действий со стороны Освобождающего Лица.

## CERTIFICATION OF TRANSLATION


### TRANSLATION CERTIFICATION

Pursuant to U.S. Federal Regulation (59 F.R. 1900, § 3.33) regarding the translation of documents, I the undersigned, THOMAS C. SIMA, hereby certify that I am fluent in the English and Russian languages, and affirm my competency to translate documents in English and in Russian, including the attached document, consisting of 12 pages and representing a Russian translation of the Notice of Offer of Judgment Pursuant to FRCP Rule 68 and the Offer of Judgment Pursuant to FRCP Rule 68, dated as of April 29, 2022.  The attached translation is a complete, accurate and faithful translation of the original English language record.


By: _____
      Name:    Thomas C. Sima
      Address:  102 Park Ridge Lane
                 White Plains, NY 10603