**UNITED STATES DISTRICT COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

CITY OF ALMATY, KAZAHKSTAN
and BTA BANK JSC,

               Plaintiffs,

               v.

FELIX SATER, DANIEL RIDLOFF, BAYROCK
GROUP INC., GLOBAL HABITAT SOLUTIONS,
INC., RRMI-DR LLC, FERRARI HOLDINGS LLC,
and MEM ENERGY PARTNERS LLC,

               Defendants.

No. 19 Civ. 2645 (AJN) (KHP)


**PLAINTIFFS' OPPOSITION TO DEFENDANT FELIX SATER'S OBJECTION TO
JUDGE PARKER'S REPORT AND RECOMMENDATION DENYING HIS MOTION FOR
LEAVE TO AMEND**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................... 1

    I.      PLAINTIFFS' CLAIMS AGAINST SATER ........................................................... 1

    II.    THE CONFIDENTIAL ASSISTANCE AGREEMENT BETWEEN
            LITCO LLC AND PLAINTIFFS ............................................................................. 4

    III.   SATER'S PROPOSED COUNTERCLAIMS ......................................................... 4

    IV.   PROCEDURAL HISTORY ...................................................................................... 6

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT .............................................................................................................................. 9

    I.      SATER FAILED TO SHOW GOOD CAUSE FOR AMENDING THE
            SCHEDULING ORDER. ......................................................................................... 9

    II.    JUDGE PARKER DID NOT CLEARLY ERR IN FINDING THAT
            JOINDER OF KAZAKHSTAN AND ARCANUM IS IMPROPER. .................. 15

    III.   JUDGE PARKER DID NOT CLEARLY ERR IN FINDING THAT
            AMENDMENT AND JOINDER WOULD BE PREJUDICIAL. ...................... 17

    IV.   OTHER INDEPENDENT GROUNDS SUPPORTED DENYING
            SATER'S MOTION ............................................................................................... 21

CONCLUSION ......................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist.*,
650 F. Supp. 2d 289 (S.D.N.Y. 2009)................................................................. 9, 16

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
No. 08 CIV. 6469 DAB JCF, 2011 WL 830624 (S.D.N.Y. Mar. 9, 2011) .......................... 17

*CF 135 Flat LLC v. Triadou SPY S.A.*,
No. 15-CV-5345 (AJN), 2016 WL 5945933 (S.D.N.Y. June 21, 2016) ........................ 19, 20

*City of Almaty v. Ablyazov*,
278 F. Supp. 3d 776 (S.D.N.Y. 2017).................................................................... 9

*City of Almaty, Kazakhstan v. Sater*,
No. 19 Civ. 2645(AJN) (KHP), 2019 WL 6681560 (S.D.N.Y. Dec. 6, 2019),
*objections overruled*, 2021 WL 4940304 (S.D.N.Y. Oct. 22, 2021) ...................................... 19

*Crowhurst v. Szczucki*,
No. 16-CV-0182 (JGK), 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020) .............................. 8, 18

*DiPilato v. 7-Eleven, Inc.*,
662 F. Supp. 2d 333 (S.D.N.Y. 2009).................................................................... 8

*Doran v. New York State Dep't of Health Off. of the Medicaid Inspector Gen.*,
No. 15-CV-7217 (PKC)(SN), 2018 WL 5095670 (S.D.N.Y. Oct. 18, 2018)...................... 11

*Fielding v. Tollaksen*,
510 F.3d 175 (2d Cir. 2007)................................................................................ 7

*Fischer v. OBG Cameron Banfill LLP*,
No. 08 Civ. 7707(RJH)(KNF), 2010 WL 3733882 (S.D.N.Y. Sept. 24, 2010).................... 13

*Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*,
No. 11 CIV. 1456 THK, 2011 WL 6034481 (S.D.N.Y. Dec. 5, 2011) ................................ 13

*Geo-Grp. Commc'ns, Inc. v. Shah*,
No. 15 CIV. 1756 (KPF), 2020 WL 5743516 (S.D.N.Y. Sept. 25, 2020)............................ 11

*GEOMC Co. v. Calmare Therapeutics Inc.*,
918 F.3d 92 (2d Cir. 2019)................................................................................ 20

*Guan Ming Lin v. Benihana Nat. Corp.*,
No. 10 CIV. 1335 VM JCF, 2010 WL 4007282 (S.D.N.Y. Oct. 5, 2010) ............................ 17

*Gullo v. City of New York*,
540 F. Appx 45 (2d Cir 2013)................................................................................ 13

ii

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  No. 1:15-CV-2457-GHW, 2019 WL 1245013 (S.D.N.Y. Mar. 18, 2019),
  *aff'd*, 850 F. App'x 38 (2d Cir. 2021) ............................................................................... 18, 20

*Jackson v. Odenat*,
  No. 09 Civ. 5583(JFK) (AJP), 2012 WL 505551 (S.D.N.Y. Feb. 14, 2012) ........................ 9

*Jhagroo v. Brown*,
  2020 WL 3472424 (S.D.N.Y. June 25, 2020) ...................................................................... 8

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ............................................................................................. 20

*Lory v. Gen. Elec. Co.*,
  179 F.R.D. 86 (N.D.N.Y. 1998) ......................................................................................... 13

*Martell Strategic Funding LLC v. Am. Hosp. Acad.*,
  No. 12-CV-627 (VSB), 2017 WL 2937649 (S.D.N.Y. July 10, 2017) .................................. 9

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ............................................................................................. 11

*Morgan Art Found. Ltd. v. McKenzie*,
  No. 18CV4438ATBCM, 2021 WL 863264 (S.D.N.Y. Jan. 22, 2021) .................................. 8

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
  262 F. Supp. 2d 134 (S.D.N.Y. 2003) ................................................................................ 9

*Silva v. Peninsula Hotel*,
  509 F. Supp. 2d 364 (S.D.N.Y.2007) ................................................................................ 10

*Tardif v. City of New York*,
  No. 13 Civ. 4056, 2016 WL 2343861 (S.D.N.Y. May 3, 2016) .......................................... 11

*Thorpe v. Duve*,
  2020 WL 372676 (N.D.N.Y Jan. 23, 2020) ........................................................................ 13

*Toliver v. Dep't of Corr.*,
  No. 10 CIV. 6298 LAP JCF, 2012 WL 4513435 (S.D.N.Y. Sept. 30, 2012) ...................... 12

*Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*,
  150 F. Supp. 2d 556 (S.D.N.Y. 2001) ........................................................................... 19, 20

*United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*,
  2020 WL 2530180 (S.D.N.Y. May 19, 2020) ...................................................................... 8

*United States v. Gladden*,
  394 F. Supp. 3d 465 (S.D.N.Y. 2019) ............................................................................... 16

iii

*Xie v. JPMorgan Chase Short-Term Disability Plan*,
    2018 WL 501605 (S.D.N.Y. Jan. 19, 2018) .......................................................... 8

*Yunus v. Robinson*,
    No. 17-cv-5839 (AJN), 2019 WL 168544 (S.D.N.Y. Jan. 11, 2019) .................................... 16

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments ................................ 17

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................... 8

Fed. R. Civ. P. 14 ..................................................................................................... 6

Fed. R. Civ. P. 15 ..................................................................................................... 6

Fed. R. Civ. P. 20 ..................................................................................................... 15

Fed. R. Civ. P. 72 ..................................................................................................... 7, 21

Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC (the "Kazakh Entities" or "Plaintiffs") respectfully submit this memorandum of law in opposition to defendant Felix Sater's Objection to Judge Parker's Report and Recommendation on Sater's Motion to Amend, Assert Supplemental Counterclaims, and Join Additional Counterclaim Defendants. [ECF No. 379 (the "R&R").]

## PRELIMINARY STATEMENT

The Court should adopt Judge Parker's R&R and reject Sater's attempt to join two new parties and to amend his answer to add counterclaims that have nothing to do with the claims that have been litigated in this matter for more than three years. Judge Parker's R&R was primarily based on a finding that Sater failed to exercise diligence in seeking leave to amend right before the close of fact discovery and a year after purportedly learning new facts supporting counterclaims. That finding, in addition to Judge Parker's finding that allowing amendment and joinder at this late stage would be prejudicial, was based on a well-developed factual record, extensive briefing by the parties, and oral argument. Sater points to no legal or factual error in Judge Parker's R&R, and instead summarily restates certain of the arguments he made in his original motion and makes new arguments that he failed to make before Judge Parker. Sater's objection identifies no errors in and provides no good reason to disturb Judge Parker's carefully considered decision. To the contrary, Sater's own objection admits his lack of diligence, including by waiting more than six months after he first claims to have shown his counterclaims to Plaintiffs before filing his motion to amend.

## RELEVANT BACKGROUND

I.   **Plaintiffs' Claims Against Sater**

Plaintiffs filed this action more than three years ago, on March 25, 2019, bringing unjust enrichment, fraud, conversion, and other claims against the Defendants for their respective roles

1

in laundering millions of dollars stolen from Plaintiffs into the United States.  [ECF No. 1.]  As alleged in the operative complaint (Plaintiffs' First Amended Complaint filed in November 2019), Sater joined a conspiracy to launder stolen money into the United States and in violation of freezing orders issued by the courts of the United Kingdom.  Sater was personally enriched through a combination of kickbacks and sometimes even outright theft from his own co-conspirators. The Amended Complaint describes five specific schemes that Sater helped further in the United States. The purpose of the schemes generally was to obscure the source of the stolen funds, help the foreign co-conspirators establish a foothold in the United States, and move assets beyond the reach of Plaintiffs and the U.K. courts.

The money – billions of dollars – was originally stolen from Plaintiffs by Mukhtar Ablyazov, BTA Bank's former controlling shareholder and Chairman, and Viktor Khrapunov, Almaty's former mayor.  [ECF No. 120 ("FAC") ¶¶ 16, 53-62.]  Ablyazov and Khrapunov pooled their stolen billions (the "Stolen Funds") and laundered them throughout the world.  [FAC ¶¶ 51–52.]  The Amended Complaint describes Ablyazov's and Khrapunov's crimes in great detail, how their crimes were finally revealed, and how, in November 2009, the courts of the United Kingdom issued the first of a series of Worldwide Freezing Orders over Ablyazov's assets and appointed a receiver over those assets.   [FAC ¶¶ 36.]   Ablyazov responded by giving Ilyas Khrapunov – Viktor's son and Ablyazov's son-in-law – control over portions of the Stolen Funds.  [FAC ¶¶ 50–52.] Ilyas caused approximately $440 million of that money to be transferred to an account in Cyprus at a bank recognized by the U.S. government as a known money laundering concern. [FAC ¶¶ 73-75, 81.]

Sater and the other Defendants in this matter assisted Ablyazov and Ilyas in laundering Stolen Funds into the United States through multiple schemes: (1) the World Health Networks

scheme, which although held out as an investment in a medical start-up, was actually intended to provide cover to move the Stolen Funds into the United States and perpetuate a visa fraud scheme [FAC ¶¶ 120–25]; (2) the Trump SoHo scheme, where Ilyas directed millions of Stolen Funds to the United States through a project developed by Sater and his company Bayrock [FAC ¶¶ 155–68]; (3) the Creacard scheme, where Sater and Ilyas conspired to launder funds through the purchase of an interest in a payment card processing business [FAC ¶ 169]; (4) the Syracuse Center scheme, where Sater conspired with Ilyas and Ablyazov to launder nearly $2,000,000 through a real estate investment in Syracuse, New York [FAC ¶¶ 182–90]; and (5) the Tri-County Mall scheme, where Sater laundered approximately $30,000,000 in Stolen Funds through the purchase and rapid resale of debt on a shopping mall located in Cincinnati, Ohio.  [FAC ¶ 192.]

When Sater agreed to help Ilyas and Ablyazov move money through the U.S. financial system, Sater knew that he was helping to launder stolen funds.  Sater has admitted that he knew about the Worldwide Freezing Orders concerning Ablyazov's misappropriation of assets from BTA Bank, and that he had discussed it with Ilyas.  [FAC ¶¶ 113–14.]  And Sater knew that Ilyas's schemes in the United States were funded with money traceable to Ablyazov and, ultimately, Plaintiffs.  [FAC ¶ 103; *see also id*. ¶¶ 175, 189, 226.]  To name just a few indicia of Sater's knowledge: he requested a false document attesting that Ilyas's sister was the source of the funds for the World Health Networks scheme, rather than Ablyazov [FAC ¶¶ 134–36]; he traveled to Moscow in 2013 at Ilyas's request for, by his own admission, the explicit purpose of aiding Ilyas and Ablyazov in dissipating assets in breach of the Worldwide Freezing Orders [FAC ¶¶ 116–17]; and, again by his own admission, he and Ilyas regularly discussed the use of "shills" to hide and move assets that were subject to the freezing orders [FAC ¶ 118].

## II.      The Confidential Assistance Agreement Between Litco LLC and Plaintiffs

In June of 2015, several years before Plaintiffs sued Sater in this case, Plaintiffs entered into a Confidential Assistance Agreement ("CAA") with an entity called Litco LLC.  [ECF No. 372-3.]  Under the CAA, Litco was to provide assistance in Plaintiffs' asset recovery efforts against Ablyazov and the Khrapunovs, including identifying witnesses with information about the Stolen Funds and who could potentially testify in legal proceedings.  [*Id.*].  As part of the agreement, Litco made a contractual representation that no potential witness that it identified and produced would have an ownership interest in Litco or a right to any of the compensation paid to Litco.  [*Id.* at 3.]  Litco operated through its counsel, Robert Wolf of Moses & Singer.  [*See, e.g.*, *City of Almaty, Kazahkstan, et al. v. Mukhtar Ablyazov, et al*., No. 15-cv-5345, ECF No. 1248 at 14.]

Sater was one of the witnesses whom Litco identified as having information about the Stolen Funds.  In a September 2018 deposition in a related case, and in direct contravention of Litco's representation that no witness it identified would have an ownership interest in Litco, Sater revealed for the first time that he owned Litco.  [*Id.* at 17.]  Sater had not signed the CAA, is not mentioned in it, and (as Judge Parker found after an evidentiary hearing) no one ever disclosed his ownership interest to Plaintiffs or their counsel.  [*Id.* at 29–31.]  Moreover, Robert Wolf testified at that hearing that he and Sater did not want Plaintiffs to know that Sater was involved with Litco, and actively hid that fact from Plaintiffs.  [*Id.* at 14, 16.]  Following Sater's revelation, the Plaintiffs declared Litco in breach of the CAA, and Litco responded by filing a demand for arbitration seeking amounts purportedly owed to it.  [*Id.* at 11.]

## III.     Sater's Proposed Counterclaims

While Plaintiffs' claims against Sater are about his participation "in an international criminal conspiracy to launder and conceal at least $440 million that was stolen from the Plaintiffs in Kazakhstan," Sater's proposed counterclaims are "about a nefarious plot by the Kazakhstan

4

National Security Committee (the Kazakh KGB) and their long-time agents Arcanum to interfere in the 2016 U.S. Presidential Election in favor of Hillary Clinton." [ECF Nos. 120 ¶ 2, 362-2 ¶ 1.] The central premise of Sater's proposed counterclaims rests on the absurd and demonstrably false accusation that BTA, Almaty, the Republic of Kazakhstan, and private investigations firm Arcanum engaged Litco under the CAA "in bad faith" and "intended to use the CAA as a pretext for gathering intelligence against Sater, with the intent of harming Donald Trump's Presidential campaign." [ECF No. 362-2 ¶¶ 8, 61.] As Plaintiffs explained to Sater's counsel in a letter warning of the materially false and legally baseless allegations in the counterclaim, this conspiracy theory is inconsistent with Sater's and his attorney's own sworn statements as well as the underlying CAA itself. [ECF No. 357-1.]

Sater's proposed counterclaims depend heavily on farfetched allegations that lack any basis in fact, and that have nothing to do with Plaintiffs' claims against him, such as:

- The "Kremlin had directed the Kazakhs not to pay Sater because of his espionage activities against Russia." [ECF No. 362-2 ¶ 6.]
- The "plot against Sater was coordinated by . . . the Kazakh KGB." [*Id.* ¶ 10.]
- "The Kazakhs' objective was to illegally influence the 2016 U.S. Presidential Election by obtaining information from Sater to politically damage Donald Trump." [*Id.* ¶ 37.]
- The "Kazakh KGB" agent allegedly directing Plaintiffs was "taking orders from his old bosses at the Kremlin," *id.* ¶ 38, and "was instructed by the FSB in Moscow to never pay Sater any money under the CAA," *id.* ¶ 53.
- "Sater finds himself across the table from former KGB agent Vladimir Putin and his cronies at the Kremlin, with the Kazakhs reduced to puppets." [*Id.* ¶ 15.]

Aside from Sater's say-so, the only purported factual basis for these claims is an FBI 302 report that was made public in January 2021 documenting an interview with Christopher Steele, which stated that "Steele was investigating:"

> an individual by the name of ABLYAZOV, embezzlement from BTA BANK, pyramid schemes, and connections to FELIX SATER and TRUMP SOHO. STEELE said they want RICO up and running in the United States (NFI). STEELE brought along a PowerPoint presentation from the company ARCANUM

> explaining the SATER connection. STEELE provided a copy of this PowerPoint presentation to [redacted] and [redacted] (see attached). This information was slated to be provided to the US Department of Justice and the FBI as it involves a corrupt American official (NFI). SATER is also involved with the daughter of ABLYAZOV (NFI).

[*Id.* ¶ 61.] According to Sater, who admits to learning of the 302 later in January 2021, it reflects a defamatory plot to "entrap Sater and Trump," and he now seeks to insert counterclaims into this money laundering case for defamation, breach of fiduciary duty, fraudulent misrepresentation, and breach of professional ethics.  [*Id.*]

**IV.   Procedural History**

Discovery on Plaintiffs' claims in this matter has been extensive and is near its end: the parties have conducted no less than nine depositions and exchanged hundreds of thousands of documents concerning an international money-laundering scheme spanning nearly a decade.  *None* of the discovery has related to Sater's proposed counterclaims.  [ECF No. 372 ¶ 2.]

Under the Court's original scheduling order, the parties could "amend the pleadings or join additional parties until July 17, 2019."  [ECF No. 41 at 1.]  Later, based on a stipulated schedule, the Court reset Sater's deadline to answer the First Amended Complaint to January 15, 2021.  [ECF No. 254.]  On that day, Sater filed his Answer.  [ECF No. 266.]  By Rule, and putting the prior scheduling order aside, Sater could have amended his answer within 21 days, Fed. R. Civ. P. 15(a)(1)(A), and filed third-party claims within 14 days, Fed. R. Civ. P. 14(a)(1).

Instead, more than a year later, on February 3, 2022, Sater filed his motion for "leave to amend" [ECF No. 356], which attached proposed counterclaims against Almaty, BTA, and two nonparties – Kazakhstan and Arcanum.  After Plaintiffs pointed out the numerous deficiencies with Sater's motion and moved to strike it [*see* ECF No. 357], Sater abandoned his first motion and on February 18, 2022 filed a second "corrected notice of motion to amend his answer" in which he tried, but failed, to cure the deficiencies Plaintiffs set out.  [ECF No. 361.]  On March 4,

2022, Judge Parker issued an order stating that "any requests to amend pleadings outside the dates set by the Court must be submitted to the undersigned," and ordering Plaintiffs to respond to Sater's motion by March 18, 2022. [ECF No. 367.] Plaintiffs filed their opposition to Sater's motion on that date. [ECF No. 371.] Sater did not file a reply brief in support of his motion.

On March 24, 2022, Judge Parker held oral argument on Sater's motion to amend. [ECF No. 376.] On April 1, 2022, Judge Parker issued an Order and Report and Recommendation recommending that Sater's motion be denied. [ECF No. 379.] Specifically, Judge Parker found that Sater had not shown good cause to amend his answer because he had not acted diligently in waiting more than a year from learning the facts underlying his claims to move for leave to amend. [*Id.* at 6–7.] Judge Parker separately found that allowing an amendment and joining two new parties would be prejudicial because Sater's new claims would entail extensive additional discovery at a late stage in the litigation, and Sater had not offered any rebuttal of Plaintiffs' claims of prejudice. [*Id.* at 8.] Finally, Judge Parker found that joinder of Arcanum and Kazakhstan was not proper under Rule 20 because "Sater's proposed claims do not arise out of the same transaction or occurrence as the claims currently being litigated in this action," and because joinder would prejudice Plaintiffs. [*Id.* at 8–10.] Sater filed an objection to Judge Parker's R&R on April 15, 2022. [ECF No. 387-1 ("Sater Obj.").]

## STANDARD OF REVIEW

Sater's objection states that the Court's standard of review of Judge Parker's Report and Recommendation is de novo under Rule 72(b). [Sater Obj. at 1.] The standard of review, however, is de novo only as to "dispositive motions." Fed. R. Civ. P. 72(b). The Second Circuit has stated that a motion to amend is a "nondispositive" matter subject to review under the "clearly erroneous" standard of Rule 72(a). *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). Courts in this District have thus "applied the 'clearly erroneous' standard to evaluate the denial of leave to amend

by a magistrate judge." *Xie v. JPMorgan Chase Short-Term Disability Plan*, 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018); *see also Jhagroo v. Brown*, 2020 WL 3472424, at *2 & n.1 (S.D.N.Y. June 25, 2020); *United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co*., 2020 WL 2530180, at *7 & n.1 (S.D.N.Y. May 19, 2020); *DiPilato v. 7-Eleven, Inc*., 662 F. Supp. 2d 333, 341 (S.D.N.Y. 2009). "Other courts within our Circuit make a distinction between denials based on undue delay or prejudice, viewed as non-dispositive, and denials based on futility, viewed as akin to the grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and therefore dispositive." *Morgan Art Found. Ltd. v. McKenzie*, No. 18CV4438ATBCM, 2021 WL 863264, at *1 n.1 (S.D.N.Y. Jan. 22, 2021) (collecting cases).

Here, Judge Parker denied Sater's motion for leave to amend based on his lack of diligence in seeking leave and prejudice. [R&R at 6, 8.] Judge Parker did not base her decision on futility, or otherwise comment on the merits of Sater's claims (which are, in fact, futile). Accordingly, her decision was non-dispositive and should be reviewed for clear error. This is also consistent with the Court's Order of Reference for "General Pretrial" purposes, including "non-dispositive pretrial motions." [ECF No. 32; *see also* ECF No. 367 (Order noting that under the referral for "general pretrial management," "Any requests to amend pleadings outside the dates set by the Court must be submitted to" Judge Parker).] There was no separate Order of Reference for a dispositive ruling, such as with another defendant's motion to dismiss. [*See* ECF No. 346.]

If the Court instead determines that the R&R was dispositive and that it must review the portions of the R&R to which Sater objects de novo under Rule 72(b), it should still review the portions of the report to which Sater failed to object for clear error. *See Crowhurst v. Szczucki*, No. 16-CV-0182 (JGK), 2020 WL 133509, at *1 (S.D.N.Y. Jan. 11, 2020) (Koeltl, *J*.) (explaining that the district court may adopt those portions of an R&R "to which no 'specific written objection'

is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law"). Further, "when a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Alaimo v. Bd. of Educ. of the Tri-Valley Cent. Sch. Dist.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009).

## ARGUMENT

### I.   Sater Failed to Show Good Cause for Amending the Scheduling Order.

Because the Court's scheduling order contained a deadline to amend the pleadings and join parties that lapsed, in order to amend and join parties, Sater was required – and admitted that he was required [ECF No. 362 at 12] – to meet the good cause requirement of Rule 16(b). *See, e.g.*, *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 790 (S.D.N.Y. 2017) (denying motion for joinder made after deadline to join parties in scheduling order pursuant to Rule 16(b)); *Jackson v. Odenat*, No. 09 Civ. 5583(JFK) (AJP), 2012 WL 505551, at *2 (S.D.N.Y. Feb. 14, 2012). As Judge Parker explained, "[t]he determination of whether 'good cause' exists under Rule 16(b) largely turns on the diligence of the moving party." [R&R at 6.] *See also NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150–51 (S.D.N.Y. 2003) (Koeltl, *J.*) (denying motion to amend under Rule 16 based on "lack of diligence and absence of good cause for such a delay"). "Where the deadline for asserting additional claims or defenses set forth in the scheduling order has passed, courts commonly find that a party acts diligently if it seeks leave to amend within approximately two months of acquiring information of a new claim or defense, . . . and deny leave to amend where the party delayed more than five months." *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12-CV-627 (VSB), 2017 WL 2937649, at *2 (S.D.N.Y. July 10, 2017) (collecting cases).

In his objection to the portion of Judge Parker's R&R finding that he failed to demonstrate

good cause, Sater simply repeats his prior positions, makes conclusory objections, and points to no error whatsoever in Judge Parker's opinion. Accordingly, the Court should review this portion of the R&R for clear error. *See Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y.2007) ("If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks omitted)).

Here, Judge Parker did not err in finding that Sater did not meet the good cause standard because the record demonstrates that Sater was not diligent in seeking leave to amend or file a supplemental pleading a year after he learned the facts underlying his proposed counterclaims. Under the scheduling order, the deadline to "amend the pleadings or join additional parties" was July 17, 2019. [ECF No. 41 at 1.] Sater admits that the purported factual basis for his counterclaims – the FBI 302 report – became public on January 21, 2021, just days after he filed his answer. [ECF Nos. 266, 356-1 ¶¶ 4, 9.] Further, Sater concedes that he actually became aware of the FBI 302 "in early 2021," within "several weeks" of when it became publicly available. [ECF Nos. 356-1 ¶ 9, 362 at 13 n.13; *see also* Sater Obj. at 15 (admitting that Sater learned of the 302 in "Late January 2021").] According to Sater, "[i]n July of 2021, Sater's attorneys prepared a draft version" of the counterclaims and showed it to a Kazakh government official. [ECF No. 362-2 ¶ 46.]

Instead of promptly seeking leave to amend or supplement his answer at any of those points, Sater waited more than a year to file his motion. [ECF No. 361.] The only thing he did in the meanwhile, by his own admission, was to try to force Plaintiffs and others into settlement talks. [ECF Nos. 356-1 ¶¶ 11–15, 362 at 13–14.] Then he waited until less than three weeks before the March 2, 2020 discovery deadline to try to add counterclaims that have nothing to do with

Plaintiffs' claims or the intensive fact discovery that the Plaintiffs have been conducting for years. [ECF Nos. 366, 372 ¶¶ 2–5.]  Accordingly, Sater did not meet his burden of demonstrating good cause to modify the scheduling order.  [ECF No. 254.]  *See, e.g.*, *Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15 CIV. 1756 (KPF), 2020 WL 5743516, at *17 (S.D.N.Y. Sept. 25, 2020) (no good cause when "Plaintiff waited 14 months from when it discovered the new evidence to notify the Court of its intent to bring this motion"); *Tardif v. City of New York*, No. 13 Civ. 4056, 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (denying motion to amend because plaintiff was not diligent in waiting five months between discovering new information and seeking leave to amend).[1]

Sater reiterates two arguments from his motion, but the Court should reject them for the same reasons Judge Parker did.  First, he again claims that he exercised diligence because he was investigating "the facts rather than rushing to get something on file."  [Sater Obj. at 17.]  But, as

---

[1]     Sater's objection does not address these authorities, which were cited in Plaintiffs' opposition brief and the R&R.  Further, numerous other cases demonstrate that waiting a full year from learning information that might support an amendment constitutes a lack of diligence under Rule 16(b).  *See, e.g.*, *Doran v. New York State Dep't of Health Off. of the Medicaid Inspector Gen.*, No. 15-CV-7217 (PKC)(SN), 2018 WL 5095670, at *2 (S.D.N.Y. Oct. 18, 2018) (no good cause where new claims "were known or knowable nine or ten months before plaintiffs first raised with the Court the possibility of moving for leave to file a Third Amended Complaint"); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201–02 (2d Cir. 2007) (affirming denial of leave to amend under Rule 15 where "Plaintiffs became aware of the need to consider a possible [additional] claim . . . more than seven months before moving to amend their complaint").

Judge Parker highlighted, Sater himself states that he was able to present a Kazakh official with a draft version of his proposed counterclaims in July 2021. [R&R at 7.] Sater still does not explain why he was unable to file the "draft" of his proposed counterclaims before the eve of the discovery deadline. Further, in moving for leave to amend, Sater did not explain what "inquiry" he was conducting during the year between learning about the FBI 302 and filing this motion, or even the seven months between completing his "draft" proposed supplemental counterclaims and filing this motion. There is absolutely no factual basis to conclude that Sater or his counsel conducted any "investigation" into his far-fetched counterclaims, let alone exercised appropriate diligence.[2]

Second, Sater again highlights the fact that the parties were discussing settlement of this

---

[2]       Sater for the first time says in his Objection that "counsel's investigation of the potential claims required extensive review of Russian language documents and interviews of individuals in Kazakhstan." [Sater Obj. at 18.] Even if this conclusory explanation of his "investigation" were enough to demonstrate good cause to wait a full year to seek leave to amend (it is not), Sater provides no compelling reason why the Court should consider these new facts in reviewing his Objection. *See Toliver v. Dep't of Corr.*, No. 10 CIV. 6298 LAP JCF, 2012 WL 4513435, at *1 (S.D.N.Y. Sept. 30, 2012) ("Although a district court may receive further evidence in reviewing objections to a report and recommendation, doing so is disfavored absent a most compelling reason for the failure to present such evidence or arguments in the first instance." (citations omitted)). And the suggestion that Sater's lengthy delay should be excused because it required review of Russian-language documents is particularly galling given that Sater and his counsel are both fluent in Russian. [*E.g.*, Sater Obj. at 16 (noting that "Sater engage[d] counsel experienced in Kazakhstan matters and capable of reading and writing in Russian.").]

12

dispute in justifying his lack of diligence.  [Sater Obj. at 18.]  But, as Judge Parker correctly concluded, the fact that the parties were engaged in some sort of mediation process for a portion of the year during which Sater failed to file his motion does not constitute good cause.  [R&R at 7.]  Sater attempts to distinguish the two cases that Judge Parker cites for this proposition by merely explaining that those cases did not involve the same exact factual circumstances of this case.  [Sater Obj. at 18 (citing *Gullo v. City of New York*, 540 F. Appx 45, 47 (2d Cir 2013) and *Thorpe v. Duve*, 2020 WL 372676 (N.D.N.Y Jan. 23, 2020).]³  But Sater does nothing to counter the broader principle supported by those cases (and others):  the mere possibility of settlement does not constitute good cause for failing to alert the court to potential amendments and counterclaims when the deadline for seeking leave has long passed.  *See, e.g.*, *Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc*., No. 11 CIV. 1456 THK, 2011 WL 6034481, at *8 (S.D.N.Y. Dec. 5, 2011) ("Defendants have not been diligent in asserting their counterclaims" even though "they sought to save the expense and effort of filing their counterclaims by waiting until settlement proved futile."); *cf. Lory v. Gen. Elec. Co*., 179 F.R.D. 86, 88 (N.D.N.Y. 1998) ("[Plaintiff's] unfounded belief that settlement was likely affords no basis

---

³       Further, because Plaintiffs cited these cases in their opposition brief, Sater could have filed a reply to address these cases or provide additional authority and chose not to.  [ECF No. 371 at 10.]  "Objections to magistrate judge's report and recommendation are not opportunities to receive a second bite at the apple, as the goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary."  *Fischer v. OBG Cameron Banfill LLP*, No. 08 Civ. 7707(RJH)(KNF), 2010 WL 3733882, at *4 (S.D.N.Y. Sept. 24, 2010) (internal quotation marks omitted).

for a finding of good cause. The possibility of settlement is ever present in virtually all civil cases. Only in the rarest of cases will such a possibility suffice to demonstrate good cause.").

Notably, Sater still cites not a single case in which any court has held that litigants have good cause to ignore deadlines in a scheduling order because they are discussing settlement. Regardless of any settlement discussions in this case, Sater was well aware of court-imposed deadlines requiring him to amend his answer, join parties, and complete fact discovery by a date certain. He never once alerted the Court to the fact that he might need to adjust the deadline to amend his pleadings or join parties, or ask Plaintiffs to include such information in their joint status letters to the Court, despite the parties agreeing to extend the fact discovery deadline multiple times in the interim.[4] Further, by Sater's own admission, the parties did not begin settlement discussions until July 2021, approximately six months after he learned of the facts underlying his proposed counterclaims and *after* his lawyers had drafted the counterclaims. [ECF Nos. 356-2 ¶ 46, 362 at 13–14.] And even though Sater argues it would have been "wildly inappropriate" to raise

---

[4] Sater says that the parties advised Judge Parker of the ongoing settlement discussions, but he never raised the fact that he had potential counterclaims and that he might need to modify that deadline in the scheduling order. The parties only advised Judge Parker of their efforts to try to resolve the overall litigation and the Litco case. [ECF No. 349 (advising court of parties' "ongoing efforts to mediate this dispute as well as the somewhat-related arbitration involving Litco LLC").] This is not to mention that prior extensions of the fact discovery deadlines were sought to accommodate discovery being sought from Sater and other non-parties, not discovery Sater was himself seeking. Sater not once sought any discovery relating to his proposed counterclaims until days before the discovery period was set to end. [*See* ECF No. 372 ¶¶ 2–9.]

counterclaims while in mediation with a retired judge, that mediation did not commence until the fall of 2021, months after he learned of the information purportedly supporting his counterclaims and months after he had prepared his draft counterclaims.  [ECF No. 362 at 8.]  Finally, even if it were true (and it most certainly is not) that Sater's counterclaims have "serious potential geopolitical ramifications for a foreign nation" such that he was wary of filing them on the public docket, there was absolutely nothing preventing Sater from seeking relief from the deadline for amendment of pleadings while mediation played out.

The simple and undisputed fact is that Sater waited more than a year after he knew about the purported basis for his claims, and more than six months after his lawyers actually drafted those claims, to seek leave to file them – and sought absolutely no relief from the Court in the meanwhile.  Under any standard of review, Judge Parker's recommendation that Sater's motion be denied because he failed to exercise diligence is well-supported by the record and the law, and the Court should adopt it.

## II.     Judge Parker Did Not Clearly Err in Finding That Joinder of Kazakhstan and Arcanum Is Improper.

Even if Sater had met the standard to modify the scheduling order under Rule 16, he still needed to demonstrate that Kazakhstan and Arcanum may be joined at this late date.  Permissive joinder of parties as defendants is permitted under Rule 20(a) where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any questions of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Judge Parker found that joinder of Arcanum and Kazakhstan was not proper under Rule 20 because "Sater's proposed claims do not arise out of the same transaction or occurrence as the claims currently being litigated in this action."  [R&R at 8–10.]

Sater states that he "objects to Magistrate Judge Parker's determination that the proposed new counterclaim defendants (Arcanum and the Republic of Kazakhstan) cannot be joined under Rule 20," but he fails to state a basis for that objection. [Sater Obj. at 19.] Accordingly, the Court should review Sater's objection to this portion of the R&R for clear error. *See Alaimo*, 650 F. Supp. 2d at 291. The Court need look no further than Sater's proposed counterclaims and Plaintiffs' First Amended Complaint to find support in the record for Judge Parker's findings that Sater's proposed claims against Arcanum and Kazakhstan about interference in the 2016 election have nothing to do with Plaintiffs' claims against the Defendants for participating in a money laundering conspiracy years earlier. [R&R at 9; ECF Nos. 120, 362-2.] Accordingly, Judge Parker did not clearly err in finding that joinder of Arcanum and Kazakhstan is improper.

In addition to his conclusory objection, Sater now for the first time proposes a "compromise position" that the court defer on the joinder issue or deny the motion without prejudice, and permit him to conduct discovery "to determine whether viable claims exists against Arcanum and Kazakhstan that would permit (or require) bringing them into the case." [Sater Obj. at 19.] But Sater did not make this argument in his motion to amend, and he cannot now make new arguments in objecting to Judge Parker's R&R (especially when he did not file a reply brief). *See, e.g.*, *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."); *Yunus v. Robinson*, No. 17-cv-5839 (AJN), 2019 WL 168544, at *6 (S.D.N.Y. Jan. 11, 2019) ("arguments made for the first time in objection are waived").

Sater's request that the Court defer ruling on his joinder motion and permit him to take discovery unrelated to any claim or defense in this case is simply a request for permission to harass

Plaintiffs and non-parties Kazakhstan and Arcanum.  This sort of fishing expedition is not permitted under Rule 26, especially because Judge Parker already found that discovery into Sater's purported claims against Kazakhstan and Arcanum "would exponentially expand discovery, delaying this case potentially for years."  [R&R at 10.]  *See also* Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments ("The rule change signals to the court that it has authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."); *Blue Angel Films, Ltd. v. First Look Studios, Inc*., No. 08 CIV. 6469 DAB JCF, 2011 WL 830624, at *2 (S.D.N.Y. Mar. 9, 2011) ("Since Millennium is not now a party to this action, information relevant only to potential claims against that entity is not discoverable."); *Guan Ming Lin v. Benihana Nat. Corp*., No. 10 CIV. 1335 VM JCF, 2010 WL 4007282, at *3 (S.D.N.Y. Oct. 5, 2010) ("[I]nformation relating to potential claims or defenses is not within the typical scope of discovery and can be obtained only upon a showing of good cause.").  Sater's new request also appears to be an attempt to directly circumvent Judge Parker's explicit denial of Sater's request to subpoena Arcanum.  [Tr. of Mar. 24, 2022 Conf. at 46:2–6 ("I'm not going to allow any subpoena of Arcanum right now. . . . [T]here's too much overlap with your counterclaims, and I'm not extending discovery for that.  So the answer is no to subpoenaing Arcanum.").]  Accordingly, the Court should reject Sater's "compromise position."

### III.   Judge Parker Did Not Clearly Err in Finding That Amendment and Joinder Would Be Prejudicial.

In addition to finding that Sater had not met the good cause standard or demonstrated that joinder of new parties was appropriate under Rule 20, Judge Parker also found that Sater failed to counter Plaintiffs' claims that amendment and joinder would be prejudicial at this stage.  [R&R at 8, 10].  As Judge Parker found:

> allowing an amendment at this late stage of the case would be prejudicial to
> Plaintiffs insofar as the proposed counterclaims would entail extensive discovery,
> including foreign discovery and discovery from parties who have not participated
> in the case thus far, and would significantly delay the resolution of this case.  At
> oral argument, Sater's counsel did not refute Plaintiffs' argument regarding
> prejudice.

[R&R at 8.]  Sater has not objected to Judge Parker's finding of prejudice – instead, he concedes

that "new parties would delay the case and likely involve motion practice concerning jurisdiction

and other matters."  [Sater Obj. at 19.]  Because Sater has not objected to Judge Parker's finding

of prejudice, the Court may adopt those findings unless they are clearly erroneous.  *See Crowhurst*,

2020 WL 133509, at *1.

Judge Parker's finding that permitting Sater's proposed counterclaims and joinder of two

new parties would be prejudicial to Plaintiffs was not clearly erroneous.  "In determining what

constitutes 'prejudice' courts consider whether the assertion of a new claim would [] require the

opponent to expend significant additional resources to conduct discovery and prepare for trial" or

"significantly delay the resolution of the dispute."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd*., No.

1:15-CV-2457-GHW, 2019 WL 1245013, at *5 (S.D.N.Y. Mar. 18, 2019), *aff'd*, 850 F. App'x 38

(2d Cir. 2021) (internal quotation marks omitted).

Again, the record supports Judge Parker's conclusion that Sater's proposed counterclaims

bear no relationship whatsoever to the claims that the parties have been litigating since 2019.

Sater's proposed counterclaims are "about Arcanum and the Kazakh Parties using Felix Sater as a

pawn to interfere in the 2016 U.S. Presidential Election and damage Donald Trump politically"

[ECF No. 362 at 1], while Plaintiffs' claims against Sater are about his participation in a money

laundering scheme years earlier.  [*Compare* ECF No. 356-1 ¶ 1, *with* ECF No. 356-2 ¶ 1.][5] Accordingly, at this late stage in the case, permitting the counterclaims and joinder of two new parties would be prejudicial.  First, the counterclaims would involve extensive foreign discovery, including in and of Russia and "the Kremlin," which Sater contends is behind everything.  [ECF No. 356-2 ¶¶ 6, 15, 38, 62, 104.]   The counterclaims could also include attempts to obtain Christopher Steele's communications with the FBI, foreign and potentially privileged discovery into Arcanum's and counsel's communications with Plaintiffs, and the purported "confidential information" Plaintiffs obtained about Sater.   Thus, the counterclaims would require the expenditure of substantial resources and significantly delay resolution of this dispute.  *Compare CF 135 Flat LLC v. Triadou SPY S.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945933, at *3 (S.D.N.Y. June 21, 2016) (permitting joinder of BTA Bank, Ablyazov, and the Khrapunovs at the outset of the related action because joinder "will not meaningfully expand the scope of the case, delay discovery, or otherwise prejudice Triadou"), *with Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 565 (S.D.N.Y. 2001) (denying joinder where joinder would necessitate the reopening of discovery and cause significant delay).

Second, that Sater waited a year after allegedly learning information to support his

---

[5]     In ruling on a prior motion to stay this matter based on the pending arbitration with Litco, the Court determined that "the dispute between Sater and the Plaintiffs in this lawsuit is not intertwined with the CAA.  Rather, the dispute relates to Sater's conduct before the CAA was signed and has nothing to do with Litco or Sater's ownership and efforts on behalf of Litco."  *City of Almaty, Kazakhstan v. Sater*, No. 19 Civ. 2645(AJN) (KHP), 2019 WL 6681560, at *13 (S.D.N.Y. Dec. 6, 2019), *objections overruled*, 2021 WL 4940304, at *6 (S.D.N.Y. Oct. 22, 2021).

counterclaims to file his motion only compounds the prejudice because "the risk of substantial prejudice increases with the passage of time." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (internal citations and quotations marks omitted).  Third, permitting Sater to add Kazakhstan and Arcanum, foreign entities, could lead to substantial motion practice relating to sovereign immunity, personal jurisdiction, and service of process.  Fourth, Kazakhstan and Arcanum have not been involved in this litigation for the past three years at all, and would by definition have to "expend significant additional resources to conduct discovery and prepare for trial" to defend against Sater's meritless claims. *See Int'l Techs. Mktg.,* 2019 WL 1245013, at *5. Finally, as Judge Parker highlighted, Sater made no attempt whatsoever to rebut Plaintiffs' claims of prejudice, nor does he in his Objection.  [R&R at 8, 10.]

Prejudice is an independent reason to deny leave to amend and joinder.  As to leave to amend under Rule 16(b), "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors," including prejudice to the opposing parties. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  And as to joinder, "courts maintain broad discretion concerning whether to permit joinder" and "[t]he Court should primarily consider whether joinder will delay the proceedings or prejudice the opposing party but may also consider the closeness of the relationship between the present parties and the parties to be joined." *CF 135 Flat LLC*, 2016 WL 5945933, at *2; *see also Losco*, 150 F. Supp. 2d at 565 ("A district court may deny a motion for joinder where the addition of the defendants would cause prejudice, expense, and delay by opening up a 'Pandora's box' of discovery.").  Thus, because Sater did not object to Judge Parker's conclusions about prejudice, and because prejudice provides independent grounds for denying Sater's motion, the Court could adopt Judge Parker's R&R on the basis of her findings relating to prejudice alone.

**IV.     Other Independent Grounds Supported Denying Sater's Motion**

Finally, Plaintiffs advanced several other independent grounds for denying Sater's motion that Judge Parker did not decide because doing so was unnecessary in resolving the motion.  Each of these arguments was fully presented to Judge Parker, is part of the record, and is properly before the Court.  *See* Fed. R. Civ. P. 72.  Thus, even if the Court were to determine that Judge Parker clearly erred or if the Court reviews her decision *de novo* and comes to a different conclusion, each of these arguments would provide an additional, independent basis to deny Sater's motion:

1.  Sater's proposed counterclaims are procedurally improper because they are not incorporated into a proposed amended answer.  [ECF No. 371 at 5–7.]

2.  Sater's counterclaims are made in bad faith as an effort to publicly embarrass Plaintiffs to leverage a settlement.  [*Id.* at 14.]

3.  Sater's counterclaims would be futile because they are all time barred and fail to state a claim under Rule 12(b)(6).  [*Id.* at 14–20.]

4.  The proposed counterclaims allege no facts establishing that the City of Almaty and the Republic of Kazakhstan – both sovereign entities – are subject to Sater's claims based on sovereign immunity.  [*Id.* at 20.]

5.  Sater's proposed amendment fails to allege the jurisdictional bases for any of his counterclaims.  [*Id.* at 24–25.]

## CONCLUSION

The Court should overrule Sater's objections.

## CERTIFICATE OF COMPLIANCE

Pursuant to Individual Rule II(D), I hereby certify that the foregoing brief contains 6,999 words, excluding the cover page, certification of compliance, table of contents, and table of authorities.

Dated: New York, New York
   April 29, 2022

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz
Craig Wenner
Sabina Mariella
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs City of Almaty, Kazakhstan and BTA Bank*