```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
-----------------------------------------------------------
```
CITY OF ALMATY, KAZAKHSTAN, and BTA
BANK JSC,
                          Plaintiffs,          19-cv-2645 (JGK)

         - against -                           MEMORANDUM OPINION
                                                   AND ORDER
FELIX SATER, et al.,
                          Defendants.
```
-----------------------------------------------------------

JOHN G. KOELTL, District Judge:

  The plaintiffs, the City of Almaty, Kazakhstan, and BTA Bank JSC ("BTA"), brought this action against the defendants, Felix Sater; Bayrock Group Inc. and Global Habitat Solutions, Inc., companies that Sater owns; Daniel Ridloff, a former business associate of Sater's; RRMI-DR LLC, a company owned by Ridloff; Ferrari Holdings LLC; and MEM Energy Partners LLC. The plaintiffs allege that Sater and Ridloff assisted Mukhtar Ablyazov, the former chair of BTA, and Viktor Khrapunov, the former mayor of the City of Almaty, Kazakhstan, launder money that Ablyazov and Khrapunov stole from the plaintiffs. The plaintiffs bring claims for unjust enrichment and money had and received against all of the defendants. The plaintiffs also assert claims for fraud, conversion, conspiracy under English law, and punitive damages against Sater and Ridloff individually.

  Sater now moves to amend his responsive pleading to assert claims for defamation, breach of fiduciary duty, fraudulent

1

misrepresentation, and breach of professional ethics against the plaintiffs, and two new proposed third party defendants, Arcanum Limited ("Arcanum") and the Republic of Kazakhstan ("Kazakhstan"). ECF No. 361. On April 1, 2022, Magistrate Judge Parker issued a Report and Recommendation (the "Report"), ECF No. 379, recommending that the Court deny Sater's motion to amend. Sater timely objected to the Report on April 15, 2022. ECF No. 387. For the reasons that follow, Sater's objections are **overruled**, and the Report is adopted in full.

I.

A.

The Court presumes general familiarity with the allegations in this case and the proposed amending pleading, which are summarized in relevant part in the Report.

In brief, on or around January 21, 2021, the Federal Bureau of Investigation (the "FBI") released an FBI Form 302 (the "FBI 302"), detailing information collected by Robert Mueller during his investigation into Russian interference into the United States election in 2016. Report 2. In relevant part, the FBI 302 stated that the FBI had interviewed Christopher Steele, a former British intelligence officer, and learned that he was investigating

> an individual by the name of ABLYAZOV, embezzlement from
> BTA BANK, pyramid schemes, and connections to FELIX
> SATER and TRUMP SOHO. STEELE said they want RICO up and

2

> running in the United States (NFI). STEELE brought along a PowerPoint presentation from the company ARCANUM explaining the SATER connection. STEELE provided a copy of this PowerPoint presentation to [redacted] and [redacted] (see attached). This information was slated to be provided to the US Department of Justice and the FBI as it involves a corrupt American official (NFI). SATER is also involved with the daughter of ABLYAZOV (NFI).

Id. at 2-3 (quoting proposed amended pleading).[1] The FBI 302 forms the basis of Sater's proposed claims, in which Sater contends that he was the subject of a "nefarious plot by the Kazakhstan National Security Committee (the Kazakh KGB) and their long-time agents Arcanum to interfere in the 2016 U.S. Presidential Election in favor of Hillary Clinton." Id. at 3 (quoting proposed amended pleading). Sater alleges that Arcanum, Kazakhstan, and the plaintiffs conspired to leak false and defamatory information about Sater to the media, and that in or about 2016, Arcanum prepared a defamatory PowerPoint presentation about Sater and provided it to Steele, who then gave it to the FBI in the hope that the FBI would pursue a criminal case against Sater and then-candidate Donald Trump, Sater's longtime business partner. Id. The goal of this alleged plot was to harm Trump's campaign for president. Id. Sater learned of the FBI 302 in early 2021. Id.

At the heart of Sater's proposed claims is the 2015

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

3

Confidential Assistance Agreement (the "CAA") between Sater's company, Litco LLC ("Litco"), the plaintiffs, and Kazakhstan. Id. at 2, 3. Sater alleges that BTA, the City of Almaty, Kazakhstan, and Arcanum engaged Litco "in bad faith" and "intended to use the CAA as a pretext" for their intelligence gathering campaign. Id. at 3 (quoting proposed amended pleading). Sater alleges that the plaintiffs fed information that they learned about Sater while working under the CAA to Kazakhstan's intelligence service, which, according to Sater, was coordinating the plot to smear Sater and Trump in order to help Clinton. Id. at 4.

**B.**

The plaintiffs filed this action on March 25, 2019. ECF No. 1. Under the original scheduling order, the parties could amend the pleadings or join additional parties until July 17, 2019. ECF No. 41. A revised scheduling order extended Sater's deadline to answer the plaintiffs' complaint to January 15, 2021. ECF No. 254. Sater filed his answer on that day. ECF No. 266.

In July 2021, counsel for Sater prepared a draft version of his amended pleading and showed it to Karim Massimov, the former Prime Minister of Kazakhstan, through an intermediary. Report 4. Sater's counsel attempted to work with Kazakhstan's counsel to resolve this dispute privately. Id. In January 2022, the settlement discussions failed. Id.

4

On February 3, 2022, Sater filed a motion to amend his pleading. ECF No. 356. After the plaintiffs moved to strike Sater's motion, ECF No. 357, Sater filed the amended motion to amend on February 18, 2022, ECF No. 361. The plaintiffs filed their opposition brief on March 18, 2022, ECF No. 371, to which Sater never replied.

On April 1, 2022, Magistrate Judge Parker issued the Report. ECF No. 379. Sater filed his objections to the Report on April 15, 2022, ECF No. 387, which the plaintiffs opposed on April 29, 2022, ECF No. 390.

## II.

### A.

Federal Rule of Civil Procedure 72(a) requires this Court to set aside any portion of a magistrate judge's report and recommendation under review "that is clearly erroneous or is contrary to law." As a "nondispositive" matter, a magistrate judge's ruling on a motion to amend is reviewed under this highly deferential standard. See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007); Xie v. JPMorgan Chase Short-Term Disability Plan, No. 15-cv-4546, 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018).[2] "An order is clearly erroneous if the reviewing

---

[2] While some courts in this circuit "make a distinction between denials based on undue delay or prejudice, viewed as non-dispositive, and denials based on futility, viewed as akin to the grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and therefore dispositive," Morgan Art Found. Ltd. v. McKenzie, No. 18-cv-4438, 2021 WL 863264, at *1 n.1 (S.D.N.Y. Jan. 22, 2021),

5

court is 'left with the definite and firm conviction that a mistake has been committed.'" Frydman v. Verschleiser, No. 14-cv-8084, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." Xie, 2018 WL 501605, at *1.

**B.**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading shall be freely given "when justice so requires." However, where there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," or other "justifying reason," the Court may exercise its discretion to deny leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962). The court of appeals has held that another such

---

the Report in this case did not recommend denying the motion to amend based on futility. Accordingly, this matter is properly considered nondispositive. However, even under the de novo standard applicable to dispositive matters, the Report should be adopted and Sater's objections overruled.

6

justifying reason to deny leave exists where the movant seeks "leave to amend the pleadings after the deadline set in the scheduling order," if the moving party has failed to establish "good cause" for his or her delay. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "[A] finding of 'good cause' depends on the diligence of the moving party." Id. "Leave to amend should also be denied if the amendment seeks to add a new defendant in violation of the limits on permissive joinder of defendants." Vializ v. Dzurenda, No. 3:11-cv-59, 2011 WL 5374133, at *1 (D. Conn. Nov. 8, 2011). Permissive joinder is governed by Federal Rule of Civil Procedure 20(a)(2), which provides that defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and "any question of law or fact common to all defendants will arise in the action."

### III.

In this case, the Report recommended that the Court deny Sater leave to amend his pleading to add new counterclaims because Sater had failed to demonstrate good cause for his failure to comply with the scheduling order's deadline, and because Sater's amendment would prejudice the plaintiffs. The Report also recommended that the Court deny Sater leave to amend

7

his pleading to join Arcanum and Kazakhstan because Sater's proposed joinder was improper under Federal Rule of Civil Procedure 20, and because the proposed joinder would prejudice the plaintiffs. Sater objects to Magistrate Judge Parker's recommendation that he not be permitted to add new counterclaims against the plaintiffs, but does not object to the basic recommendation that he not be permitted to add new parties. Instead, as to the latter point, Sater objects only "to a limited extent," and argues that the Court should either defer ruling on the joinder of Arcanum and Kazakhstan, or else deny his motion to join these parties <u>without</u> prejudice. <u>See</u> Objections 19-20, ECF No. 387-1.

### A.

Magistrate Judge Parker's recommendation that Sater be denied leave to amend his pleading to add new counterclaims against the plaintiffs is plainly correct. Sater learned of the facts underlying his proposed counterclaims in early 2021 — around the same time that had been set in the scheduling order for amendments — but delayed moving to amend his pleadings until February 2022. This one-year delay, in which Sater failed even to mention the possibility of amending his pleading to the Court, evinces a lack of diligence that is fatal to Sater's attempts belatedly to amend. <u>See</u> <u>Gullo v. City of New York</u>, 540

8

F. App'x 45, 47 (2d Cir. 2013); Tardif v. City of New York, No. 13-cv-4056, 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016).

Sater argued before Magistrate Judge Parker, and reiterates in his objections, that his delay was sufficiently justified to satisfy the good cause standard because, first, he was investigating the facts underlying his counterclaims "rather than rushing to get something on file," see Objections 17, and, second, because he was engaged in mediation to settle the claims he now seeks to add. Sater's first proffered excuse is unavailing. Sater prepared a draft of his proposed amended pleading in July 2021, and plainly had "something on file" by this time. Sater's second excuse is also insufficient. That the parties were engaged in settlement discussions or mediation does not demonstrate good cause for a year-long delay. See Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc., No. 11-cv-1456, 2011 WL 6034481, at *8 (S.D.N.Y. Dec. 5, 2011). Sater could have simply asked the Court for an extension of time to file counterclaims. The "unique circumstances" of Sater's case — including the facts that his proposed counterclaims allegedly presented "serious potential geopolitical ramifications," and that the mediation was overseen by a retired federal judge, see Objections 18 — do not otherwise excuse Sater's year-long delay.

9

Moreover, granting Sater leave to amend his pleading would prejudice the plaintiffs, which also justifies denial of his motion. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Sater's counterclaims would require extensive discovery, and would delay significantly the resolution of this case. Tellingly, Sater's objections do not address this point.

On these facts, Magistrate Judge Parker committed no error — much less clear error — in recommending that the Court deny Sater leave to amend his pleading to assert new counterclaims against the plaintiffs. Sater's objection to this recommendation is therefore **overruled**.

### B.

Magistrate Judge Parker was also correct in recommending that the Court deny Sater leave to join Arcanum and Kazakhstan as third party defendants. First, Sater's proposed claims against Arcanum and Kazakhstan do not arise out of the same transaction or occurrence as the claims being litigated in this action. This action involves an alleged scheme by Sater and others to launder money stolen from the plaintiffs, whereas Sater's proposed claims involve an alleged "nefarious plot by the Kazakhstan National Security Committee . . . and their long-time agents Arcanum to interfere in the 2016 U.S. Presidential Election." Report 3. Sater's claims do not arise out of the same transaction or occurrence as the claims being litigated in this

action, and the requirements of Rule 20 are not met. Sater does not appear to object to Magistrate Judge Parker's finding in this regard.

Second, as Magistrate Judge Parker rightly reasoned, joinder is additionally improper because joining the new parties would prejudice the plaintiffs. See Republic Nat. Bank v. Hales, 75 F. Supp. 2d 300, 311 (S.D.N.Y. 1999), aff'd sub nom. HSBC Bank USA v. Hales, 4 F. App'x 15 (2d Cir. 2001). The proposed new third party defendants have not participated in the case, which has been ongoing for years, and their addition would likely lead to extensive motion practice, discovery, and delay. As such, the plaintiffs would be prejudiced by the joinder of the proposed new parties, and joinder is improper. Accordingly, Magistrate Judge Parker's recommendation that joinder be denied was not an abuse of discretion, and Sater's objection is **overruled**.

Sater's unsolicited recommendation that the Court alternatively deny this motion without prejudice so that Sater may take discovery on the issues is also rejected. Such a ruling would encourage discovery on issues that are not part of the current case, and would lead to prejudicial delay. Sater's inability to sue Arcanum and Kazakhstan in this action does not prevent him from asserting such claims in another action against those parties if he has viable claims to assert.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the reasons explained above, Sater's objections are **overruled**. The Court adopts Magistrate Judge Parker's Report and Recommendation. The Clerk is directed to close Docket No. 361.

**SO ORDERED.**

Dated:   New York, New York
         May 6, 2022

_____
John G. Koeltl
United States District Judge