UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

        Plaintiffs,

  -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC and MEM ENERGY PARTNERS LLC,

        Defendants.

19 Civ. 2645 (JGK) (KHP)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND .................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

I.  The Court Should Limit the Scope of the Depositions of the City of Almaty and BTA Bank. ................................................................................................................................. 7

   A.  Sater Improperly Seeks to Depose Plaintiffs on Topics that Are Irrelevant and Outside the Scope of Plaintiffs' Knowledge. ........................................................... 8

   B.  Certain Deposition Topics Are Not Sufficiently Specific. .................................... 11

II. The Rakishev Notice of Deposition Is Improperly Directed at Plaintiffs and Should Be Vacated. ...................................................................................................................... 13

CONCLUSION ............................................................................................................................ 15

CERTIFICATE OF SERVICE .................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*City of Almaty v. Sater*,
    503 F. Supp. 3d 51 (S.D.N.Y. 2020) ................................................................................. 9

*Dealer Computer Servs. v. Curry*,
    2013 WL 499520 (S.D.N.Y. Feb. 7, 2013) ....................................................................... 11

*Doe v. Yorkville Plaza Assocs.*,
    1996 WL 343038 (S.D.N.Y, Jun. 21, 1996) .................................................................... 11

*Dove v. Atl. Cap. Corp.*,
    963 F.2d 15 (2d Cir. 1992) ................................................................................................. 7

*Duling v. Gristede's Operating Corp.*,
    266 F.R.D. 66 (S.D.N.Y. 2010) ......................................................................................... 7

*Eng-Hatcher v. Sprint Nextel Corp.*,
    2008 WL 4104015 (S.D.N.Y. Aug. 28, 2008) ................................................................. 12

*Inv. Properties Int'l, Ltd. v. IOS, Ltd.*,
    459 F.2d 705 (2d Cir. 1972) ......................................................................................... 7, 14

*Main St. Am. Assurance Co. v. Savalle*,
    No. 3:18 Civ. 02073 (JCH), 2021 WL 1399685 (D. Conn. Apr. 14, 2021) ................... 7, 9

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ......................................................................................................... 14

*Sanofi-Synthelabo v. Apotex Inc.*,
    2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009) ................................................................. 11

*United States v. Afram Lines (USA), Ltd.*,
    159 F.R.D. 408 (S.D.N.Y. 1994) ..................................................................................... 13

*Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*,
    No. 10 Civ. 6147 PAC, 2012 WL 3055863 (S.D.N.Y. July 24, 2012) .............................. 7

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 6, 7, 11

Fed. R. Civ. P. 30 ............................................................................................................ 11, 12, 14

Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC, pursuant to the Court's August 23, 2022 Order, [ECF No. 420,] and Rule 26(c)(1) of the Federal Rules of Civil Procedure, respectfully submit this memorandum of law in support of their motion for a protective order (1) striking certain topics from Defendant Felix Sater's Notices of Rule 30(b)(6) Depositions to Plaintiff City of Almaty, Kazakhstan and Plaintiff BTA Bank (together, "30(b)(6) Deposition Notices") and (2) precluding Sater from deposing non-party witness Kenes Rakishev by a notice of deposition served on Plaintiffs (the "Rakishev Deposition Notice").

## PRELIMINARY STATEMENT

Despite the Court squarely rejecting Felix Sater's attempts to assert fantastical counterclaims accusing Kazakhstan of interfering in U.S. presidential politics, Sater continues to try to press his conspiracy theories in discovery. Because those theories are – as the Court has already held – totally irrelevant to the claims and defenses in this lawsuit, the Court should issue a protective order forbidding Sater from subjecting BTA and Almaty's corporate representatives from questioning about them, along with other irrelevant and overbroad topics.

And the Court should bar Sater altogether from deposing BTA's majority shareholder, Kenes Rakishev. Mr. Rakishev has no personal knowledge about any of the claims or defenses in this lawsuit, as his prior deposition in the related case demonstrated conclusively. But Sater does not wish to ask him about anything relevant. Rather, when pressed, Sater's counsel admitted that they wish to question Mr. Rakishev about things such as his purported relationship with Vladimir Putin or the Chechen dictator Ramzan Kadryov – topics, amongst others, calculated to harass Mr. Rakishev and which are relevant only to Sater's now-rejected counterclaims (if they are even relevant to that). In any case, Mr. Rakishev is not a party to this litigation and holds no position at BTA Bank, and Sater's attempts to secure his testimony by notice are improper. If Sater had any valid basis on which to depose Mr. Rakishev, he would

1

have to use appropriate third party process under Rule 45 or international treaty. Because Sater has not even attempted to do that, the Court should strike the deposition notice as a nullity and issue a protective order barring Sater from attempting to depose Mr. Rakishev.

## RELEVANT BACKGROUND

Three and a half years ago, Plaintiffs filed this action against Sater and certain of his co-conspirators for their respective roles in laundering into the United States millions of dollars stolen from Plaintiffs. [ECF No. 1; *see also* ECF No. 399 (Second Amended Complaint).] Sater filed a motion to dismiss, which the Court denied in substantial part on November 30, 2020. [ECF No. 244.] On January 15, 2021, Sater filed an answer. [ECF No. 266.] The parties engaged in substantial discovery concerning Plaintiffs' allegations, including no less than ten depositions and the exchange of hundreds of thousands of documents concerning an international money-laundering scheme spanning nearly a decade.

While discovery proceeded, the parties engaged in several settlement discussions, both formal and informal. This included a telephonic mediation before this Court in February 2021 and a separate mediation before a retired judge in December 2021. Though the December 2021 mediation failed, Sater continued to press for a settlement, including by threatening to file inflammatory allegations against Plaintiffs for the sole purpose of publicly embarrassing them unless they terminated the litigation and acceded to Sater's demands in an arbitration his company, Litco LLC, brought against Plaintiffs and other parties.[1] For example, Sater's counsel warned that Sater would be having lunch with Donald Trump and would "give him a copy of the case, and once that happens, there's no going back." [ECF No. 372 (Schwartz Decl. ¶ 13).]

---

[1] As Plaintiffs previously advised the Court, the Litco arbitration was terminated earlier this year after Litco failed to pay its share of the tribunal's fees.

2

Sater made good on his threat, and on February 3, 2022, he filed proposed counterclaims replete with conspiratorial and outrageous allegations concerning a purported plot by Kazakhstan to interfere with a U.S. presidential election. [*See* ECF No. 356-2.] Plaintiffs opposed Sater's motion to file new counterclaims, and before that motion could be decided, Sater served deposition notices on BTA and Almaty pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure—the first discovery that Sater had served since new counsel had appeared for him approximately 8 months earlier. [*See* Sept. 15, 2022 Declaration of Craig Wenner ("Wenner Decl.") ¶ 3.][2] The topics in each of the 30(b)(6) deposition notices clearly and overwhelmingly relate solely to Sater's proposed counterclaim, or topics meant to embarrass a BTA shareholder, Kenes Rakishev. For example, Sater seeks to depose BTA on "Kenes Rakishev's relationship with Karim Massimov," [Wenner Decl. Ex. B, topic 11,] the senior government official that Sater contended was involved in the conspiracy to interfere with the U.S. election, and who has since been imprisoned in Kazakhstan on charges of treason.[3] Sater also seeks to depose BTA on its "knowledge of the FBI 302 and Arcanum's communications with Christopher Steele"—a reference to an FBI interview report through which Sater allegedly learned about the factual basis for his proposed counterclaims. [*Id.*, topic 18.][4] Other topics put to BTA and Almaty are so overbroad that it would be impossible to adequately prepare any representative to testify on behalf of them. For example, Sater seeks to depose BTA on all "Lawsuits prosecuted by BTA in connection with its worldwide asset recovery efforts," [*Id.*, topic 9,] which would necessarily involve over 13 years of complex litigations in jurisdictions around the world. And other topics

---

[2]   Sater's notices of deposition mistakenly use an incorrect case caption.

[3]   *See* https://www.nytimes.com/2022/01/08/world/asia/kazakhstan-protests-karim-masimov-arrest.html

[4]   Arcanum was a consultant retained by BTA to assist in asset recovery efforts.

3

are not just irrelevant and harassing; they are simply not within the scope of BTA's knowledge, such as "Kenes Rakishev's relationship with Ramzan Kadryov," the head of the Chechen Republic. [*Id.*, topic 14.]

After hearing oral argument, the Court issued an Order and Report and Recommendation on April 1, 2022, recommending that Sater's motion for leave to file his counterclaim be denied. [ECF No. 379.] Judge Koeltl overruled Sater's objections and adopted the Report and Recommendation on May 6, 2022. [ECF No. 392.] In recommending the denial of Sater's motion, which included a request to join the Republic of Kazakhstan and Arcanum, the Court observed that

> Sater's proposed claims do not arise out of the same transaction or occurrence as the claims currently being litigated in this action. This action involves Sater's (and others') alleged involvement in laundering money stolen from Plaintiffs by the former Chairman of BTA Bank (Mukhtar Ablyazov) and the City of Almaty's former Mayor (Viktor Khrapunov) and profiting therefrom. The money laundering occurred through various real estate transactions entered into by shell companies controlled by Ablyazov. Thus, the focus of discovery has centered on ownership of the companies involved in the transactions and the source of the funds used in those transactions. In contrast, Sater's proposed counterclaims center on an alleged politically motivated spying and a reputation smearing campaign against Sater and Donald Trump.

[ECF No. 379 at 8-9.] At the earlier oral argument on Sater's motion, the Court also denied Sater's request to extend discovery to include the allegations he raised in his proposed counterclaim. [*See* Mar. 24, 2022 Hr'g Tr. at 46:2-6.]

After the Court denied Sater's request to expand discovery to include his counterclaims, Plaintiffs met and conferred with Sater's counsel on multiple occasions concerning the overbroad deposition topics. Sater's counsel responded initially that they "do not believe that any of the topics for Almaty are inappropriate or over broad. Regarding BTA, we withdraw topic #13 pertaining to Hunter Biden and stand by the rest." [Wenner Decl. ¶ 14, Ex. F.] Plaintiffs

4

continued to engage with Sater's counsel, including telephonically and with a June 3, 2022 email describing each topic to which Plaintiffs objected on the grounds of irrelevance or overbreadth. Plaintiffs noted that these were topics on which Plaintiffs were prepared to move for a protective order. Plaintiffs did not receive a response.

After the most recent status conference, Plaintiffs raised their objections to the topics again in an email on August 31, asking to continue the meet and confer. Sater's counsel responded with one word, "Acknowledged." [Wenner Decl. Ex. F.] Plaintiffs' counsel followed up again on September 6, asking to speak with Sater's counsel about the deposition topics. Plaintiffs noted that the corporate representatives of Almaty and BTA were available to be deposed on specific dates at the end of September, consistent with the Court's instruction that the depositions should occur before the end of the month. Sater's counsel did not respond nor confirm the deposition dates. [Wenner Decl. ¶ 18, Ex. F.][5] Then, on September 15, at 9:10 p.m., when Plaintiffs' counsel was preparing to file this motion, Sater's counsel wrote an email asking to meet and confer "next week." Sater's counsel did not discuss the deposition topics, Rakishev's deposition, or the scheduling of the depositions. [Wenner Decl. ¶ 20.]

At the same time that Sater served deposition notices on BTA and Almaty, Sater also served a purported deposition notice for the deposition of non-party Kenes Rakishev. Rakishev is a former chairman of the board of directors of BTA, but he has not held that position since at least March 2018, nor did he have any position at BTA during the period that Ablyazov controlled the bank.[6] While he remains the majority shareholder of BTA, he holds no executive,

---

[5]  As Plaintiffs note in an accompanying cover letter, they notified Sater's counsel that because of the now-pending motion for a protective order, Plaintiffs would be rescheduling the depositions to occur after the Court resolves this motion. Sater's counsel did not respond.

[6]  *See* Board of Directors, BTA Bank, https://bta.kz/en/about/directors/ (last accessed, Sept. 15, 2022).

director, or managerial position within the bank. During the meet and confer process with Sater's counsel, Plaintiffs noted that Rakishev was no longer the chair of the bank and that the Bank did not have control over him, and that his deposition could not be secured by notice but would require third party practice. Sater's counsel did not identify any basis on which he could demand Rakishev's deposition by means of a notice. Further, Plaintiffs provided Sater's counsel with Rakishev's prior testimony from the related case, *City of Almaty and BTA Bank v. Ablyazov, et al.*, Case No. 15 Civ. 5345 (S.D.N.Y.) – which was taken in 2017 at a time when Rakishev was chairman of the Bank – and noted that Rakishev had no first-hand knowledge of any of the facts relating to BTA's money laundering allegations against the defendants in that case, who were part of the same conspiracy that Sater joined. In response, Sater's counsel proffered several topics that they contended were relevant and within Rakishev's knowledge. Like with Sater's deposition notices for BTA and Almaty, many of the topics on which he wishes to examine Rakishev concern Sater's election interference conspiracy or are simply harassing. For example, Sater intends to examine Rakishev concerning his alleged connections to Karim Massimov and Ramzan Kadyrov, the January 2022 social unrest in Kazakhstan, and any sanctions that have ever been threatened against him, presumably referring to economic and trade sanctions of some sort. [Wenner Decl. Ex. F.] As far as Plaintiffs are aware, Sater has not served Rakishev with a subpoena or otherwise sought to secure his testimony through a foreign discovery request.

On August 23, 2022, the Court issued an Order providing that Plaintiffs shall "move for a protective order with respect to any deposition" by September 15. [ECF No. 420.]

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." A court is given broad discretion regarding whether to issue a protective

6

order under Rule 26(c). Rule 26(c)(1)(D) permits an order that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters. Also included within the Court's power under Rule 26(c)(1) is the power to vacate a notice of deposition. *Inv. Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707 (2d Cir. 1972).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26. With regard to protective orders, "Relevance is a threshold issue." *Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, No. 10 Civ. 6147 PAC, 2012 WL 3055863, at *11 (S.D.N.Y. July 24, 2012), *aff'd*, 592 F. App'x 8 (2d Cir. 2014). "When a protective order is sought, the party seeking discovery must first establish that the discovery sought is relevant." *Main St. Am. Assurance Co. v. Savalle*, No. 3:18 Civ. 02073 (JCH), 2021 WL 1399685, at *2 (D. Conn. Apr. 14, 2021). "Where the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (cleaned up). "Good cause is established by demonstrating a particular need for protection." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010).

## ARGUMENT

### I. The Court Should Limit the Scope of the Depositions of the City of Almaty and BTA Bank.

The relief that Plaintiffs seek is narrowly tailored and concerns highly problematic topics about which Sater seeks to depose Plaintiffs' corporate representatives. To be clear, Plaintiffs are not challenging Sater's entitlement generally to depose Plaintiffs and to examine them on topics relevant to the case. But Sater's 30(b)(6) Deposition Notices include three categories of topics that the Court should strike from the notices. These topics are (1) irrelevant to the claims or defenses; (2) so overbroad and lacking in particularity as to create an undue burden and expense

7

on Plaintiffs in preparing for their testimony; and/or (3) concern matters outside Plaintiffs' knowledge that are better suited for depositions of other individual witnesses.

      A.      **Sater Improperly Seeks to Depose Plaintiffs on Topics that Are Irrelevant and Outside the Scope of Plaintiffs' Knowledge.**

In spite of the Court's orders limiting discovery to this case and denying Sater's motion for leave to file his contemplated counterclaims, Sater continues to seek discovery into his conspiratorial allegations about election interference and other irrelevant topics that are intended to harass and embarrass Plaintiffs. Plaintiffs respectfully request that the Court strike the following topics from the deposition notices as irrelevant:

Notice of Deposition of BTA, Topics:[7]

    8.     Assets recovered by BTA in its worldwide effort to recover assets purportedly stolen by Ablyazov.

    10.    BTA's relationship with Kenes Rakishev and Karim Massimov.

    11.    Kenes Rakishev's relationship with Karim Massimov.

    12.    Kenes Rakishev's relationship with Vladimir Putin.

    14.    Kenes Rakishev's relationship with Ramzan Kadyrov.

    15.    Kenes Rakishev's compensation received from BTA.

    16.    Kenes Rakishev's personal net worth and the location of his assets.

    18.    BTA's knowledge of the FBI 302 and Arcanum's communications with Christopher Steele.

[Wenner Decl. Ex. B.]

Notice of Deposition of Almaty, Topics:

    8.     Assets recovered by Almaty in its worldwide effort to recover assets purportedly stolen by Ablyazov.

---

[7]   As noted above, during the initial meet and confer, Sater's counsel agreed to drop topic 13 from the BTA deposition, concerning "Kenes Rakishev's relationship with Hunter Biden."

8

10. Corruption and attempted bribery committed by agents of Almaty.[8]

11. Almaty's knowledge of the FBI 302 and Arcanum's communications with Christopher Steele.

[Wenner Decl. Ex. A.]

Sater cannot meet his burden to demonstrate that these topics are relevant. *See Main St. Am. Assurance Co.*, No. 3:18 Civ. 02073(JCH), 2021 WL 1399685, at *2. Indeed, the Court has already denied Sater's request to seek discovery into the FBI 302 interview of Christopher Steele and other topics grounded in Sater's now-defunct counterclaim, which the Court has expressly held are unrelated to the claims and defenses at issue in this case. [*See* Mar. 24, 2022 Hr'g Tr. at 42:23-43:8.] For example, Sater claimed in his counterclaim that he "finds himself across the table from former KGB agent Vladimir Putin and his cronies at the Kremlin, with the Kazakhs reduced to puppets." [ECF No. 362-2 ¶ 15; *see also id.* ¶ 54 (claiming that Rakishev has a relationship with "Putin's enforcer, Ramzan Kadyrov.").] Sater references Massimov over 35 times in his proposed counterclaim and attempts to dirty up Rakishev by suggesting he was using money and influence to affect the outcome of a U.S. presidential election. [*See, e.g.*, *id.* ¶¶ 54, 63.] None of this is relevant to this case, in which "Kazakhstan's largest city and a Kazakhstani bank seek to recover millions of dollars in stolen funds from those who allegedly helped the culprits launder them." *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 55 (S.D.N.Y. 2020).

With respect to Sater's attempt to depose Plaintiffs on assets they have recovered in their global asset recovery efforts, this too is irrelevant to the claims against Sater. Information about what Plaintiffs may or may not have recovered does not make any claim or defense any more

---

[8] We assume that "agents of Almaty" does not include its former mayor, Viktor Khrapunov, whose corruption is certainly fair game in this case.  Viktor Khrapunov's crimes as mayor of Almaty is covered by other topics noticed by Sater, to which Plaintiffs have no objection.

9

likely.

And while Sater may attempt to draw some tenuous connection of these topics to his defense that he was released from liability in connection with the so-called Litco Confidential Assistance Agreement, Plaintiffs are not challenging his deposition topics that directly concern that defense. For example, there is no disagreement that Sater can depose Plaintiffs on the "execution of the Confidential Assistance Agreement" and Plaintiffs' "knowledge of Litco and Felix Sater's role with Litco." [Wenner Decl. Ex. B, topics 6 and 7.] In other words, because Sater will already be obtaining discovery into his defense, the inclusion of the otherwise clearly irrelevant topics serves only to harass Plaintiffs with wild accusations and waste time at the depositions. Notably, the Court already criticized Sater's use of filing belated counterclaims as a roundabout way of obtaining discovery on his affirmative defense of release and waiver. [*See* ECF No. 379 at 9 ("His failure to develop evidence through discovery on that defense cannot be cured by the assertion of counterclaims that do not arise out of the money laundering and real estate transactions at issue in this case.").]

In addition, the topics that concern actions taken by individuals in their personal capacity are also irrelevant and not properly the subject of a corporate deposition. For example, even if Rakishev had a relationship of some sort with Putin or Kadyrov, or even if an agent of Almaty somewhere in the world at some point in time attempted to commit bribery or accept bribes, it is not information that is reasonably available to Plaintiffs. Even if relevant, it would still be unreasonable to demand that Plaintiffs prepare to testify as a proxy for individuals whom Sater could have attempted to depose in the first instance.

The Court should strike the irrelevant topics from the notices, thereby protecting Plaintiffs "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.

10

Civ. P. 26(c); *see also Sanofi-Synthelabo v. Apotex Inc.*, 2009 WL 5247497, at *2-3 (S.D.N.Y. Dec. 30, 2009) (granting plaintiff's protective order because the defendant's notice of 30(b)(6) deposition "addresses topics that are not relevant to the current damages phase of this litigation and thus pose an undue burden")

### B. Certain Deposition Topics Are Not Sufficiently Specific.

In addition to irrelevant and harassing topics, many of Sater's deposition topics are too broad to permit Plaintiffs to be adequately prepared to testify.

For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters. *See Dealer Computer Servs. v. Curry*, 2013 WL 499520, at *5 (S.D.N.Y. Feb. 7, 2013) (holding that "it would be burdensome to have to prepare a witness to address a [30(b)(6) deposition] topic so undefined in scope"). A party seeking a Rule 30(b)(6) deposition has a duty to "properly focus [his] inquiry." *Doe v. Yorkville Plaza Assocs.*, 1996 WL 343038, *8 (S.D.N.Y, Jun. 21, 1996).

A number of Sater's designated topics are so overbroad and lacking in particularity that Plaintiffs could not possibly adequately prepare a witness to testify on these matters. Plaintiffs seek a protective order limiting the following topics to facts relevant to the claims or defenses in this case:

Notice of Deposition of BTA, Topics:

9. Lawsuits prosecuted by BTA in connection with its worldwide asset recovery efforts.

17. Misappropriation of assets from BTA by Ablyazov.

19. BTA's relationship with Arcanum.

21. BTA's legal actions against Viktor Khrauponov [*sic*] and Ilyas Khrauponov [*sic*].

11

[Wenner Decl. Ex. B.]

>Notice of Deposition of Almaty, Topics:
>
>9. Lawsuits prosecuted by Almaty in connection with its worldwide asset recovery efforts.
>
>12. Almaty's relationship with Arcanum.
>
>14. Almaty's legal actions against Viktor Khrauponov [*sic*] and Ilyas Khrauponov [*sic*].

[Wenner Decl. Ex. A.]

Without any limitation or some specificity about what Sater seeks to learn from Plaintiffs' corporate representatives regarding these areas of inquiry, Plaintiffs cannot adequately prepare witnesses to testify in response to these 30(b)(6) Deposition Notices. For instance, it would be virtually impossible for Plaintiffs to prepare corporate witnesses to become knowledgeable regarding every misappropriation of assets from BTA by Ablyazov —in a scheme that by all accounts involved at least thousands of shell entities—or every lawsuit BTA has undertaken against him around the world over a thirteen-year period. These requests completely ignore the scope and complexity of Ablyazov's fraud, including the number of years over which it occurred and the extensive litigation involved in recovering those assets.

It would be squarely within the Court's discretion to issue a protective order when, as here, Plaintiffs are asked to respond to overly broad and unfocused Rule 30(b)(6) notices. *See Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) ("[A]n overly broad Fed.R.Civ.P. 30(b)(6) notice subjects the noticed party to an impossible task, because, where it is not possible to identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."). As such, Plaintiffs have good cause for a protective order narrowing the scope of Sater's unspecific and excessively broad 30(b)(6) Deposition Notices to the claims and defenses in this case. Such an order would not deprive Sater of relevant

12

discovery, as Plaintiffs would still be prepared to testify to the frauds committed by Ablyazov and Viktor Khrapunov and the resulting litigations as they relate to the assets Plaintiffs seek to recover in this case. Plaintiffs will also be prepared to testify to their relationship with Arcanum insofar as it related to facts concerning their agreement to enter into the Litco Confidential Assistance Agreement. Anything more than that would cease to be relevant to this case, and would be effectively impossible to prepare for.

**II.     The Rakishev Notice of Deposition Is Improperly Directed at Plaintiffs and Should Be Vacated.**

As an initial matter, Plaintiffs note that while Sater has served a notice of deposition for the testimony of Kenes Rakishev, Rakishev is no longer a chairman of the board of directors of BTA. His testimony is not subject to deposition by notice under Rule 30 of the Federal Rules of Civil Procedure. *See United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994) ("[A] corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. . . . Such a witness must be subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure, or, if the witness is overseas, the procedures of the Hague Convention or other applicable treaty must be utilized."); *id.* ("[T]he burden is on the discovering party to establish the status of the witness").

Sater has not served Rakishev with a Rule 45 subpoena or otherwise secured his testimony pursuant to the procedures of the Hague Convention or other applicable international treaty, as he is required to do.  As a shareholder, even as majority shareholder, Rakishev's rights are limited to matters of high level corporate governance.  He has no ability to control decision-making at the corporate level or to exercise judgment or discretion on the part of the corporation. Nor can the corporation exert any control over him. Sater cannot point to any evidence to suggest otherwise. Because Rakishev cannot be compelled to appear for a deposition by notice served on

13

BTA alone, Sater's notice of deposition is a nullity.

Even if that were not so, Rakishev has no relevant, non-redundant information. To the extent that Sater seeks information about Rakishev's knowledge or conduct during his tenure at BTA Bank, those questions may be directed to BTA's representative. Any information Sater seeks from Rakishev in his individual capacity is demonstrably irrelevant to the claims and defenses in this case, and serves only to harass and attempt to embarrass him. As a result, there is good cause to issue a protective order to preclude Rakishev's deposition. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-54 (1978) (finding that although the discovery requirement has been construed broadly, the information sought must be relevant to an actual claim or defense).

Here, Sater is impermissibly seeking information from non-party Rakishev in an attempt to gain information not presently subject to any claim or defense between the parties and publicly embarrass the Plaintiffs in an attempt to try to leverage a settlement. The topics for Rakishev's deposition that Sater's counsel proffered concern his personal affairs or largely track the irrelevant Rule 30(b)(6) topics, such as Rakishev's alleged connections to Karim Massimov and Ramzan Kadyrov, the January 2022 social unrest in Kazakhstan, and any economic or trade sanctions that have ever been threatened against him. [Wenner Decl. Ex. F.] These and other topics Sater identified are each irrelevant to the claims and defenses of this action and should be precluded by protective order. Rakishev is not a party to this litigation and any questions related to his personal relationship with other non-parties is clearly not relevant to the claims or defenses of this action.

The Court should vacate the Rakishev deposition notice. *See Inv. Properties Int'l, Ltd.*, 459 F.2d at 707.

## CONCLUSION

Plaintiffs respectfully request that the Court issue an order striking irrelevant topics and limiting overbroad topics from the Rule 30(b)(6) Deposition Notices, and vacating the deposition notice of non-party Kenes Rakishev.

Dated: New York, New York
September 15, 2022

        Respectfully Submitted,

        */s/ Craig Wenner*
        Matthew L. Schwartz
        Craig Wenner
        Erica Sweeting
        BOIES SCHILLER FLEXNER LLP
        55 Hudson Yards
        New York, NY 10001
        Telephone: 212-446-2320
        Facsimile: 212-446-2350
        E-mail: cwenner@bsfllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2022, copies of Plaintiffs' Motion for Protective Order were served by electronic mail on all of the following:

Thomas C. Sima
2 Park Avenue, 20th Floor
New York, NY 10016
tom@tsima.com

and

John H. Snyder
John H. Synder PLLC
555 Fifth Avenue, Suite 1700
New York, NY 10017
john@jhsnyderlaw.com

*Counsel for Felix Sater, Daniel Ridloff, Bayrock Group Inc., Global Habitat Solutions, Inc., and RRMI-DR LLC*

Jason Cyrulnik
CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, NY 10006
jcyrulnik@cf-llp.com

*Counsel for MeM Energy Partners LLC*

Respectfully Submitted,

*/s/ Craig Wenner*
Craig Wenner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: 212-446-2320
Facsimile: 212-446-2350
E-mail: cwenner@bsfllp.com