

MATTHEW L. SCHWARTZ
Tel: (212) 303-3646
Email: mlschwartz@bsfllp.com

June 18, 2024

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   ***City of Almaty, Kazakhstan, et ano. v. Felix Sater, et al.*,**
      **Case No. 19 Civ. 2645 [rel. 15 Civ. 5345] (JGK) (KHP)**

Dear Judge Koeltl:

We represent Plaintiffs City of Almaty, Kazakhstan and BTA Bank ("Plaintiffs") and write in response to the letter submitted this evening by counsel for the Sater Defendants, seeking leave to introduce unspecified evidence concerning "the full content of the Maurizio Molinari article and the events surrounding the international kidnapping of Alma Shalabayeva and Alua Ablyazova." [ECF No. 628]. The Court should deny that request.

## RELEVANT BACKGROUND

In their third motion *in limine*, Plaintiffs sought to preclude evidence of political persecution, including specifically evidence related to the so-called Italian episode—but to permit evidence concerning Mendel Mochkin and Felix Sater's efforts to help Mukhtar Ablyazov's public relations campaign. [ECF Nos. 530-531]. MeM Energy Partners did not oppose at all, and the Sater Defendants did not oppose as the motion pertained to the Italian episode. [ECF No. 543]. At the final pretrial hearing, the Court granted the motion, explaining that the defendants "do not oppose the exclusion of evidence of political persecution . . . [a]nd, therefore, no such evidence should be introduced." 5/16/2024 Tr. at 11.

During the course of questioning Mendel Mochkin at trial, Plaintiffs' counsel did exactly what they previewed in their motion *in limine*, and inquired about (a) various news articles of which the Defendants were aware, which discussed the allegations of theft and money laundering against Mukhtar Ablyazov and Viktor and Ilyas Khrapunov, as well as the English judgments and freezing orders against Ablyazov; and (b) instances in which the Defendants sought to assist Mukhtar Ablyazov's efforts to burnish his own international reputation and to tarnish the English orders through allegations that the English courts were corrupt—which evidences the Defendants' knowledge of the English proceedings, including the worldwide freezing orders. Mochkin's recommendations were favorably received by Ablyazov's "point man," and in fact repeated by both Ablyazov and Viktor Khrapunov in their own testimony in this case.



Plaintiffs did *not* elicit any testimony about the Italian episode. The only time Plaintiffs inquired into the substance of the public relations advice provided by Mochkin and Sater, it pertained to their efforts to undermine the legitimacy of the English High Court of Justice judgments and freezing orders against Ablyazov. *See* Trial Tr. at 679-80 (discussing claim that Justice Blair was corrupt—a claim that mirrored exactly testimony provided by Ablyazov and Viktor Khrapunov). Indeed, Plaintiffs specifically highlighted the Court's *in limine* ruling in cutting off the witness when he erroneously interpreted one question to concern the subject matter of a conversation he had with Ablyazov's lawyer. *See* Trial Tr. at 676.[1]

## APPLICABLE LAW

Defendants' argument cites a single legal authority: "Federal Rule of Evidence 4.08(1)," which Defendants contend "specifically contemplates permitting the presentation of such evidence where a party 'has given an incomplete and misleading impression on an issue.'" [ECF No. 628 at 2 (purporting to cite Fed. R. Evid. 4.08(1))].

To begin with, there is no Federal Rule of Evidence 4.08(1). We believe that Defendants are referring to Section 4.08(1) of the "Guide to New York Evidence," which is an unofficial guide to evidence under New York State law, which does not have codified rules of evidence.[2] To state the obvious, Defendants' citation to the Guide has no application in this trial, which is governed by the Federal Rules of Evidence.

Under the Federal Rules, evidence must also be relevant, otherwise admissible, and not so prejudicial, confusing, time-consuming, or misleading that its probative value is substantially outweighed. *See, e.g.,* Fed. R. Evid. 401-403, 602, 802. Federal evidence law, of course, also recognizes the concept of "opening the door." As the Second Circuit has explained:

> The concept of "opening the door," or "curative admissibility," gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence. ***To be admissible under the doctrine of curative admissibility, the evidence that allegedly opened the door must in fact have been inadmissible.***

---

[1]     The original question was "So you were involved in a conference call with Mr. Ablyazov's French lawyer, his Italian lawyer, and perhaps others concerning his general situation?" In light of the witness beginning to respond to this question by focusing on what the conversations "concerned," counsel withdrew the question "to stay on the right side of an *in limine* ruling" and rephrased to ask the yes-or-no question, "You were involved in a conference call with Mr. Sahlas, who was Mr. Ablyazov's French lawyer, as well as an Italian lawyer, correct?" Trial Tr. at 676.

[2]     *See* https://www.nycourts.gov/judges/evidence/index.shtml.



> *Properly admitted evidence does not open the door to inadmissible evidence.*

*United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (citations omitted). *See, e.g., Bell v. Constr. & Gen. Bldg. Laborers' Loc. 79*, No. 04 CIV. 6520 RJH, 2011 WL 3796355, at *3 (S.D.N.Y. Aug. 24, 2011) (rejecting contention that party "opened the door" because question directed at witness did not "elicit inadmissible evidence" and "[p]roperly admitted evidence does not open the door to inadmissible evidence").

## ARGUMENT

The sort of evidence that Defendants wish to admit is not appropriate. There is no competent evidence of what happened in Italy; the Court has already excluded that evidence for good reason; Defendants fail to point to what specific aspect of Mochkin's examination they believe "opened the door" to this evidence let alone how Plaintiffs somehow elicited inadmissible testimony to open the door; nor have they identified what "misleading impression" must be corrected; and regardless, the evidence's probative value is far outweighed by the risk of prejudice and jury confusion, not to mention waste of time.

Most fundamentally, Defendants fail to explain how this evidence is relevant to any issue in dispute in this case. Plaintiffs carefully questioned Mochkin about his contacts with Ablyazov's French attorney, Peter Salhas, and an Italian journalist—but never inquired into the subject matter of that assistance or what the underlying reporting in Italy was about. And while one of the Italian articles was admitted into evidence, it was untranslated—underscoring that the relevance of the evidence was not the substance of the article, but in Mochkin's making the connection between Ablyazov's "point man" and a friendly journalist. The relevant issue is simply not whether Mochkin was helping to secure "false good press"—it is whether he was knowingly dealing in funds stolen by Ablyazov. The fact that he was enthusiastically informing and involving himself of Ablyazov's legal troubles is highly relevant to that question; the substance of the press is not.

Further, Defendants have no admissible way to introduce what they say is the "reality" of the situation. Defendants contend that "the abduction of Mukhtar Ablyazov's wife, Alma Shalabayeva, and their daughter, Alua Ablyazova, then only six years old at the time, was accomplished through bribery of Italian officials. This ultimately led to the conviction of 6 Italian law enforcement officers involved, the resignation of Giuseppe Procaccini, chief of staff of the Minister of the Interior of Italy, and a motion of no confidence against then Minister of the Interior, Angelino Alfano." [ECF No. 628 at 1]. It is obvious that none of the Defendants has personal knowledge of the facts underlying these allegations, nor will any other trial witness. Nonetheless, Defendants propose to elicit "the full content of the Maurizio Molinari article"—which no Defendant can read—and the events surrounding the international kidnapping of Alma Shalabayeva and Alua Ablyazova—at which no Defendant was present. The proposed testimony is hearsay, pure and simple.

Nor is it admissible for any appropriate non-hearsay purpose. The reality is, the Court already excluded this evidence for that reason. Knowing that Defendants would seek to introduce



irrelevant and prejudicial evidence of political persecution, and at the same time knowing that evidence of Mochkin's involvement in Ablyazov's public relations efforts was highly relevant to his knowing participation in a scheme with Ablyazov, Plaintiffs specifically moved *in limine* and discussed the importance of introducing the latter while excluding the former.  [ECF No. 531 at 4-5 (discussing importance of Mochkin emails coordinating with Sater, Ilyas Khrapunov, and Peter Salhas), 8-9 (discussing irrelevance of "the Italian immigration episode")]. [3] As Plaintiffs explained:

> The only relevant issues for trial in this regard are *why* MeM received funds—whether as a duly earned commission or for MeM's helping Sater and Ilyas launder the Kazakh Entities' money—and which it knew about the source of that money and the worldwide freezing orders.  Thus, the Court should preclude all evidence and argument about the Italian incident that is not probative of MeM or Mochkin's state of mind.  In other words, evidence of alleged political persecution beyond Mochkin's own emails is irrelevant to his state of mind.

[ECF No. 531 at 9].  This argument tracked Judge Parker's prior holding that while the fact of Mochkin's "helping Ablyazov in a public relations campaign" was relevant, "[w]hat happened to Ablyazov's wife and daughter in Italy is simply not relevant to the claims and defenses in this action."  [ECF No. 458 at 5-6; *see also id.* (adding "[f]inding out why Italy did what it did is not necessary or important to the prosecution and defense of this case.")].

MeM did not oppose this motion *in limine*, and Sater's limited opposition stated that "[t]he Sater Defendants do not oppose the exclusion of claims of political persecution generally," but opposed certain specific instances—none of which related to the so-called Italian episode.  [ECF No. 543 at 2].  Recognizing this, at the final pretrial conference, the Court explained that "the Sater defendants do not oppose the exclusion of evidence of political persecution.  And, therefore, no such evidence should be introduced."  5/16/2024 Tr. at 11.

Plaintiffs did precisely what they said they intended to do in their motion *in limine*.  No defendant objected insofar as the Italian episode is concerned.  The Court should not now hold that the Plaintiffs have somehow opened the door to irrelevant evidence and rank hearsay about what allegedly happened in Italy to Ablyazov's wife and daughter.

Finally, even if there were some theoretical probative value to this testimony, and even if the door to its introduction had somehow been opened, and even if the Defendants had some admissible way to introduce evidence of what happened in Italy, it should still be excluded under Rule 403.  The information that the Defendants seek to elicit is all deeply misleading and confusing, and horribly prejudicial.  For example, they want to elicit that the Italian episode resulted in the "conviction of 6 Italian law enforcement officers involved"—but that occurred in

---

[3]      Page numbers refer to the internal pagination of the document, not the PDF pages.



October 2020, more than a year after this lawsuit was filed, and those convictions were all subsequently overturned and judgments of acquittal entered by the Court of Appeal.[4]  The "facts" that Defendants seek to admit are hardly facts at all, and will invite an irrelevant detour through highly confusing and prejudicial material, including the alleged "kidnapping" of a six year old.

**<u>CONCLUSION</u>**

The Court should adhere to its ruling *in limine* and deny Defendants' requests to introduce testimony concerning what allegedly happened in Italy.

Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*
Matthew L. Schwartz

---

[4]     *See* https://www.eureporter.co/kazakhstan-2/2022/06/21/italian-court-acquits-police-officers-who-detained-wife-of-fugitive-kazakh-oligarch-mukhtar-ablyazov/.