O6analm1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     CITY OF ALMATY, KAZAKHSTAN, ET
 3   AL.,

 4                  Plaintiffs,

 5             v.                          19-CV-2645 (JGK)
     FELIX SATER, ET AL.,
 6
                  Defendants.              Jury Trial
 7   ------------------------------x
                                           New York, N.Y.
 8                                         June 10, 2024
                                           9:15 a.m.
 9
     Before:
10                     HON. JOHN G. KOELTL,

11                                         District Judge

12                          APPEARANCES

13   BOISE SCHILLER & FLEXNER LLP
          Attorneys for Plaintiffs
14   BY:  CRAIG A. WENNER
          MATTHEW LANE SCHWARTZ
15        SOPHIE ROYTBLATT

16

17   RICHARD L. YELLEN & ASSOCIATES, LLP
          Attorneys for Defendant MeM ENERGY PARTNERS LLC
18   BY:  BRENDAN C. KOMBOL

19   LAW FIRM OF THOMAS C. SIMA
          Attorneys for Defendant Felix Sater
20   BY:  THOMAS CARL SIMA

21   JOHN H. SNYDER PLLC
          Attorneys for Defendant Felix Sater
22   BY:  JOHN HOOVER SNYDER

23   ALSO PRESENT:  Zhadyra Nartay

24

25
```

O6analm1

```
 1              (Case called)

 2              THE DEPUTY CLERK:  All parties please state who they

 3    are for the record.

 4              MR. SCHWARTZ:  Good morning, Judge.  For the

 5    plaintiffs, Matthew Schwartz, John Zach, Craig Wenner, Sophie

 6    Roytblatt.  And we are joined by our clients from BTA Bank,

 7    Zhadyra Nartay, and from the City of Almaty, Baurzhan

 8    Darmanbekov.

 9              MR. SNYDER:  Good morning, your Honor.  John Snyder,

10    for Sater, as well as Tom Sima, also for Mr. Sater.  And

11    Mr. Sater is sitting down at the table right now.

12              We are still waiting for Mr. Kombol.  I don't know

13    where he is, but I expect he will be here soon.

14              What can I say, your Honor?

15              THE COURT:  Hope springs eternal.

16              Today was supposed to begin at 9:00.  It is now 9:20.

17    So we will wait a moment for Mr. Kombol.

18              MR. SNYDER:  Your Honor?

19              THE COURT:  Yes.

20              MR. SNYDER:  While we are all waiting, I submitted a

21    request for permission to bring my phone and computer.  I am

22    not sure I --

23              THE COURT:  I had signed it.

24              MR. SNYDER:  Oh, all right.

25              I will double check that.  Thank you, your Honor.
```

O6analm1

```
1            THE COURT:  It may not have gone on ECF.

2            MR. SNYDER:  Is there a --

3            THE COURT:  Mr. Fletcher is checking now.

4            MR. SNYDER:  Okay.  Thank you, your Honor.

5            THE COURT:  I will be back in five minutes.

6            (Recess)

7            THE COURT:  Please be seated.

8            Mr. Snyder went downstairs to retrieve his phone,

9    which is fine.  I think we have resolved the issue of the

10   order.  And we are still waiting for Mr. Kombol.

11           While we are waiting, let me confirm.  Where is

12   counsel for Mr. Ridloff?  Where is the judgment for

13   Mr. Ridloff?

14           MR. SCHWARTZ:  As I said on Friday, I anticipate we

15   will be seeking voluntary dismissal of Mr. Ridloff.  I will put

16   in a proposed -- as I said on Friday, we anticipate seeking a

17   little bit later today dismissal of Mr. Ridloff.  I will

18   submit -- I will hand up a proposed order.

19           THE COURT:  It was supposed to be before trial was

20   beginning, not during trial.

21           MR. SCHWARTZ:  I appreciate that.  I think I carefully

22   said on Friday before the jury was impaneled, but I will hand

23   it up as soon as possible.

24           THE COURT:  I really didn't note that your undertaking

25   was before the jury was impaneled.  I thought it was before
```

O6analm1

 1    trial.  If I have to parse your statements that way, that is

 2    unfortunate.

 3              MR. SCHWARTZ:  No.  I understand that, Judge.

 4              THE COURT:  I was carefully following the e-mail and

 5    the ECF all weekend, or had them followed.

 6              MR. SCHWARTZ:  Understood.

 7              THE COURT:  While we are waiting, let me just confirm,

 8    because you went fairly quickly, so, for the plaintiffs,

 9    Matthew Schwartz, John Zach, Craig Wenner, Sabina Mariella.

10              MR. SCHWARTZ:  Ms. --

11              THE COURT:  I'm sorry.

12              MR. SCHWARTZ:  Sophie. your Honor.

13              THE COURT:  I have Sophie Roytblatt, not Sabina

14    Mariella.

15              MR. SCHWARTZ:  She will be participating in the trial,

16    but I don't anticipate that she will be sitting at counsel

17    table every day.

18              THE COURT:  So I will mention her.

19              Lindsey Ruff?

20              MR. SCHWARTZ:  Yes, same thing.

21              THE COURT:  Sophie Roytblatt.

22              Also seated at counsel table are the paralegals,

23    Sophia Cullinane?

24              MR. SCHWARTZ:  Yes, she's --

25              THE COURT:  But not at counsel table.

O6analm1

1          And Olivia Mackenzie.

2          Also seated the counsel table from BTA, Zhadyra Nartay

3   and a representative from Almaty, Baurzhan Darmanbekov.

4          MR. SCHWARTZ:  Correct.

5          THE COURT:  I have the representative, Mr. Sater, John

6   Snyder, Thomas Sima.  Also seated at counsel table is

7   Mr. Sater.

8          Okay.  Mr. Snyder has returned.

9          MR. SNYDER:  Thank you, your Honor, for letting me go

10  get my phone.  I appreciate that.

11         THE COURT:  Sure.  No problem.

12         I'm sorry that there was -- there must have been some

13  confusion about getting you your order.

14         MR. SNYDER:  A lot was going back and forth.

15         Your Honor, I don't know if this is helpful or not,

16  but there is a motion *in limine* that I put in a letter that

17  doesn't necessarily concern Mr. Kombol.  If that would be

18  something that can be profitably done right now, I submit it

19  for your consideration.

20         THE COURT:  Thank you.  Mr. Fletcher attempted to get

21  in touch with Mr. Kombol, who advises that he is en route and

22  will be here in 25 minutes, which would make him an hour late

23  for the first day of trial.

24         So you're right, Mr. Snyder.  You had two motions *in*

25  *limine*.  One doesn't concern MeM, Mr. Kombol's client.  Unless

O6analm1

1    there's disagreement, I will deal with that motion *in limine*.

2              MR. ZACH:  Your Honor, we were going to submit a

3    letter to the Court in response.

4              THE COURT:  You can.

5              MR. ZACH:  Okay.  I'm happy to argue it now.  But if

6    it's beneficial to you, we can submit something by lunch.

7              THE COURT:  Yes.  With respect to the letter you can

8    certainly submit a response, but I think Mr. Sater should be

9    entitled to some response at the outset.  Of course you can

10   respond.

11             Mr. Snyder, the issue is the admissibility of

12   Mr. Sater's prior conviction.  As an overview -- and I will

13   listen to both of you -- there are two issues, right?  They get

14   mixed up in the letter.  The first issue is can the prior

15   conviction about 15 years ago be used to impeach Mr. Sater if

16   Mr. Sater decides to testify in his own defense?  That would be

17   a question of, can the prior felony conviction of about 15

18   years ago be used for purposes of impeachment.

19             So Rule 609 tells us under (a), 609(a)(1), with

20   respect to attacking a witness's character for truthfulness by

21   evidence of a criminal conviction (1) for a crime that, in the

22   convicting jurisdiction, was punishable by death or by

23   imprisonment for more than one year, the evidence:

24             (A) must be admitted, subject to Rule 403, in a civil

25   case or in a criminal case in which the witness is not a

O6analm1

1    defendant.

2              (b)  Is the limit with respect to ten years.

3              This subdivision (b) applies if more than ten years

4    have passed since the witness' conviction or release from

5    confinement for it, whichever is later.

6              More than ten years, evidence of the conviction is

7    admissible only if its probative value, supported by specific

8    facts and circumstances, substantially outweighs its

9    prejudicial effect and the proponent gives an adverse party

10   reasonable written notice of the intent to use it.

11             So that's the rule if Mr. Sater testifies.

12             If Mr. Sater doesn't testify, then the question is, is

13   the prior conviction admissible under Rule 404(b)?

14             The letter by Mr. Snyder keeps on talking about

15   propensity.  It would be surprising if the plaintiff said that

16   the reason for the admissibility of the prior conviction is

17   "propensity," which is not a permissible reason for using a

18   prior conviction.  But rather under the inclusive rule in the

19   Second Circuit, it is admissible providing it is for a proper

20   purpose, such as motive, intent, modus operandi, opportunity,

21   knowledge, identity, absence of mistake, all of which the

22   plaintiffs would have to set out with some specificity.

23             It is not sufficient for plaintiffs to simply list,

24   motive, opportunity, intent, particularly with a conviction

25   that's 15 years old.

O6analm1

```
 1              Then of course it's limited by Rule 403.

 2              So the simple answer to all of this at this point

 3    would be that the prior conviction shouldn't be referred to

 4    until it becomes clear whether Mr. Sater is testifying and,

 5    secondly, what the proffered reason is if the plaintiffs are

 6    relying on 404(b).

 7              There is also the issue whether there should even be a

 8    ruling on that, as opposed to reserving judgment or reserving a

 9    ruling until after the plaintiffs have rested, after the

10    defendants have determined what, if any, case they are putting

11    on, and whether at that point the plaintiffs should be allowed

12    to offer that evidence as part of a rebuttal.

13              So those are my observations on the letter.

14              But I'm happy to listen while we are waiting for

15    Mr. Kombol.

16              Mr. Snyder, it's your letter.

17              MR. SNYDER:  Sure.  Thank you, your Honor.

18              I think your commentary will likely be very useful in

19    navigating the issue, so I thank you very much.

20              Secondly, I did my very best to communicate the meet

21    and confer, but if I missed one with Mr. Schwartz, I apologize

22    for that.

23              The other point I want to make is of course your Honor

24    is well aware that telling the jury about a conviction is a

25    very heavy thing to have happen.  I will have my work cut out
```

O6analm1

1    for me rehabilitating the witness.  So I hope your Honor will

2    give me at least a little bit of leeway to do that should it

3    come up, but I guess we will address that as and when it comes.

4        THE COURT:  When you talk about rehabilitation, that

5    assumes that you are going to call Mr. Sater or Mr. Sater will

6    be called as a witness.  I don't know if Mr. Sater will be

7    called as a witness in either case.

8        Mr. Zach?

9        MR. ZACH:  I was going to say, your Honor, I do think

10   it's likely that he is going to be called.  We will probably

11   call him in our case in chief.  In our letter we intend to set

12   forth the core, sort of our theories specifically under 404(b),

13   which, as your Honor sort of anticipated, we would link to

14   knowledge, intent, and modus operandi.

15       MR. SNYDER:  Your Honor, I am very happy to meet and

16   confer with them on this in light of the commentary you very

17   helpfully provided.  So there we are.

18       THE COURT:  It's still not so clear to me -- I am sure

19   the plaintiffs will make it clear in their letter -- assuming

20   that the plaintiffs are calling Mr. Sater as part of that case,

21   whether the purpose of introducing the conviction would be for

22   purposes of impeachment or under Rule 404(b), and if 404(b),

23   why.

24       MR. ZACH:  Sure, your Honor.

25       I mean, just to give a preview, I think I will start

O6analm1

1    with 404(b).  You know, Mr. Sater has given a number of

2    depositions in this case.  To explain his prior conviction, his

3    prior conviction was a racketeering conviction, and it included

4    predicate acts of money laundering and securities fraud.  And

5    in the money laundering there were sort of offshore bank

6    accounts that were used and the actual owners of assets were

7    hidden behind other people.

8            In his deposition Mr. Sater repeatedly denies knowing

9    that Ilyas Khrapunov who was -- taking us back to our prior

10   trial, your Honor -- the individual that was setting up shell

11   companies and using offshore bank accounts to hide the money,

12   he denies knowing that what he was doing was wrong or that the

13   use of nominees was wrong or in any way concerning, essentially

14   saying, well, I looked at these things, that they were using

15   the shell companies, that they were using, you know, what

16   Mr. Sater refers to as shills as fronts for that, that that

17   didn't really raise any concern for me.

18           So what we would argue is knowing, having had his

19   experience and conviction in money laundering, having been

20   convicted for using some of those same tools, he should very

21   well know and did know that that sort of those were -- the

22   tools and methods were in fact likely to be indicia of money

23   laundering.

24           THE COURT:  So you are not relying on 609?

25           MR. ZACH:  Well, there's overlap between the two.  We

O6analm1

```
1    are going to argue in the alternative, but I think in some ways
2    the cleaner argument is 404(b) if we are calling him in our
3    case.  We could also -- the impeachment, 609 doesn't
4    distinguish between if you're calling him in your case or if it
5    is a defendant.
6           I think it's equally relevant there because what the
7    courts look at there is how the prior conviction relates to
8    truthfulness, how much did it include lies and sort of
9    deceptive acts.  And in Mr. Sater's case, his conviction, you
10   know, was for securities fraud and for money laundering, and
11   there's a whole series of sort of deceptive acts that were part
12   of that.  So I think it's equally relevant for that.
13          I think the simpler thing to articulate is at this
14   point, when the court is trying to consider it as it's coming
15   in, the purpose is under 404B.  Just to add one, to sort of tee
16   it up, because we have the time --
17          THE COURT:  My one caution is there is some case law
18   that says before you admit a prior conviction or prior bad act
19   under 404(b), the Court should be reasonably confident of the
20   admissibility.  In some cases there is a preference to defer
21   until a rebuttal case, whereas impeachment is something that is
22   dealt with at the time of the testimony.
23          MR. SNYDER:  I would only point out that Mr. Sater is
24   only going to be arguing statute of limitations and release.
25   To the extent the prior conviction is relevant to anything, it
```

O6analm1

```
1    is probably relevant to did he engage in these transactions,

2    which that's not our point.  Our point is statute of

3    limitations and release.

4              THE COURT:  On the other hand, it's part of the

5    plaintiffs' case to prove the defendant's knowledge, right?

6              Just because you argue statute of limitations and

7    release doesn't foreclose the necessity of the plaintiff

8    proving knowledge.  I will listen to the evidence.  I will

9    listen to the opening statements.

10              I'll listen.  I am anxious to hear whether the

11    defendant, Mr. Sater, would say, of course I knew or we don't

12    contest that he knew.  The case is about reserving the issue

13    until it is clear that the prior conviction is relevant to that

14    issue.

15              To talk about the ability of the party to take the

16    issue out of the case, I don't know whether the defendant will

17    take issues of his knowledge intent out of the case.  I mean, I

18    fully appreciate that the arguments you intend to stress are

19    statute of limitations and release.  But that is a long way

20    away from saying that other issues in the case are stipulated

21    or not at issue.

22              So I pass that along.  We will see how the case

23    develops.  I look forward to the plaintiffs' prompt letter on

24    this issue, and you will have an opportunity to respond.

25              MR. SNYDER:  Thank you very much, your Honor.
```

O6analm1

1          Advice taken.

2          MR. SCHWARTZ:  Judge, while we are here, the one

3    other, I think, unresolved complication on the docket, which is

4    not controversial, related to the live remote testimony of some

5    witnesses.  Of the three witnesses that we --

6          THE COURT:  I decided that.  I endorsed the letter.

7          MR. SCHWARTZ:  I think I may have missed that.

8          THE COURT:  I hope it went out on ECF.

9          MR. WENNER:  It did.  It was my mistake this morning,

10   your Honor.  You did.

11          MR. SCHWARTZ:  Let me provide by way of update that of

12   the three witnesses, two of them are here in the United States

13   and will be appearing live.  It will only be Ms. Junussova, as

14   last time, who will appear by live remote.

15          On a logistical point, what we did last time, that

16   worked very well I think, was Mr. Fletcher brought in a large

17   screen so the jury could see the witness on the large screen

18   and the exhibits on their personal screens just as if she was

19   testifying live.  If it's possible to arrange for those

20   logistics again, that would be appreciated.

21          THE COURT:  Of course.

22          MR. SCHWARTZ:  Thank you.

23          THE COURT:  Just talk to Mr. Fletcher about getting

24   the equipment brought in.

25          MR. SCHWARTZ:  Of course.

O6analm1

| 1 | MR. SNYDER:  Judge as long as there's 20 lawyers here, |

1        MR. SNYDER:  Judge as long as there's 20 lawyers here,

2    I wonder if I could get the Wi-Fi password for this.  Is there

3    a Wi-Fi access?

4        THE COURT:  I am sure I initialed the order, so the

5    plaintiffs can provide it.

6        MR. SCHWARTZ:  The district executive provides a

7    unique login for every person.

8        MR. SNYDER:  Okay.  So we can try.

9        THE COURT:  Could I ask when the plaintiffs would

10    otherwise intend to call Mr. Sater as a witness?

11        MR. ZACH:  It would not be this week, your Honor if

12    that's --

13        THE COURT:  Well, when can you have your response to

14    the defendants' motion with respect to the prior conviction?

15        MR. ZACH:  I think by lunch.

16        THE COURT:  By lunch?

17        MR. ZACH:  Yeah, I have been working on it.  Lucky

18    I've got 20 minutes to edit it.

19        THE COURT:  That's fine.  You can give it to me by

20    4:30 today if that's reasonable.

21        MR. ZACH:  That's reasonable, your Honor.

22        THE COURT:  And then Mr. Sater's counsel can give me a

23    response by --

24        MR. SNYDER:  When would you like it, your Honor?  Can

25    I have 24 hours after.

O6analm1

1              THE COURT:  Sure.

2              MR. SNYDER:  If you can give me -- one day is fine.

3              THE COURT:  So by 7:00 tomorrow, p.m.  7:00 p.m.

4      tomorrow.

5              MR. SNYDER:  Right.  7:00 a.m. in the night is not

6      good, but, yes, 7:00 p.m., Judge.

7              THE COURT:  You view 7 a.m. as the night?

8              MR. SNYDER:  Well, I worked in a big firm, and they

9      had all-nighters back then, so that is what I was referring to.

10             THE COURT:  It's not healthy.

11             MR. SNYDER:  I try not to do those anymore.

12             Judge, if they call Mr. Sater for cross in their case,

13     am I required to do his testimony then or can I reserve the

14     direct for my case?

15             THE COURT:  You can do whatever you want to do on

16     cross, and you can certainly reserve matters to be dealt with

17     in your case.

18             MR. SNYDER:  Thank you, Judge.

19             Your Honor, I should say if it makes this morning 1

20     percent easier for Mr. Kombol, I will be happy to take this

21     hour out of our time.

22             THE COURT:  No.  That's very generous of you, but the

23     clock is only running when the parties are offering testimony.

24     So the clock isn't running now.  But you've given me an idea

25     about how to deal with the situation in the future.

O6analm1

1           MR. SNYDER:  I would rather that than you be mad at

2   Mr. Kombol.  He is a very good lawyer.

3           THE COURT:  I don't get mad.  My patience, as I like

4   to say, is inexhaustible.

5           MR. SNYDER:  I appreciate that, your Honor.  Thank

6   you.

7           THE COURT:  But one way to deal with lateness, because

8   after we have impaneled the jury it is really disrespectful to

9   the jury when I tell them to be here on time, so there may come

10  a time when I call the jury to the box and we wait for a lawyer

11  or a client who is not here.  And the jury will appreciate why

12  it is that they're waiting and the clock isn't running.

13  Running the clock is certainly another alternative.

14          MR. SNYDER:  Your Honor, would it be okay if we took a

15  break.

16          THE COURT:  Okay.  We will take a break and

17  Mr. Fletcher will tell me when Mr. Kombol has arrived.

18          It is now 10:08.

19          (Recess)

20          THE COURT:  Please be seated.

21          It is now 20 after 10:00, 22 after 10.

22          Mr. Kombol, you have arrived.

23          MR. KOMBOL:  My apologies, your Honor.  I had this

24  scheduled for 10 a.m. on my calendar.  That was not correct.

25          THE COURT:  Could you use the mic.

O6analm1

1          MR. KOMBOL:  My apologies, your Honor.

2          I am so sorry.  In my calendar, I had this scheduled

3    for 10 a.m.  Clearly that was improper.  I was even late for

4    that.  There is no excuse.  I promise it will not happen again.

5    I only ask the Court's forgiveness.  It was not intentional.

6          THE COURT:  Okay.

7          You would be late by 22 minutes even if this was

8    scheduled for 10:00.

9          MR. KOMBOL:  Acknowledged, your Honor.  I understand.

10         THE COURT:  Okay.

11         Is your client coming today?

12         MR. KOMBOL:  My client is not coming today.  He will

13   be here to provide testimony.  In fact, I recently learned that

14   a subpoena was offered on my client.

15         We don't oppose the subpoena.  However, the problem is

16   it was scheduled for his testimony to be here during the two

17   high holy holidays of Shavuot, which conflicts with the days

18   that he was requested to be here.  We don't object to him being

19   here.  Obviously he can't be here for those two days.  We will

20   work with his schedule as the majority of the testimony does

21   not involve him.

22         THE COURT:  Fine.  I will introduce him to the jury.

23   There are other participants, paralegals and the like, who are

24   not here that I will mention to the jury.

25         So it is not a problem that he is not here.  I just

O6analm1

 1    want to mention his name for the jury.

 2          With respect to the time limit, I accept your

 3    statement.  If this occurs during trial, I may bring the jury

 4    out and then the jury can assess who it is who is keeping them

 5    here.  But I appreciate your statement.

 6          MR. KOMBOL:  And, your Honor, any reservations, I

 7    apologize.  There was an error.  I hate to burden the Court.

 8          THE COURT:  No.

 9          Your prior statement was perfect.  I never ask lawyers

10    to "apologize."  All I ask is that lawyers acknowledge that it

11    will not happen again.

12          MR. KOMBOL:  It will not.  Unless something --

13          MR. SNYDER:  It will not happen.

14          MR. KOMBOL:  It will not happen.

15          THE COURT:  So in your absence we talked about

16    impeachment or the admissibility of Mr. Sater's prior

17    conviction, and the defense will give me a letter in response

18    to Mr. Snyder's letter on that issue.  Mr. Snyder will have an

19    opportunity to reply by tomorrow.

20          We didn't discuss the other issue, which is

21    Mr. Snyder's request on behalf of Mr. Sater to adjourn the

22    trial from today based on the allegation that the defendants

23    did not file answers to the second amended complaint.  This was

24    a letter filed early in the morning today, very early in the

25    morning today.

O6analm1

1     Anything else you would like to tell me in connection

2     with that letter, Mr. Snyder?

3         MR. SNYDER:  Nothing in particular other than, your

4     Honor, I set it all out for you.  I am not sure I have ever

5     seen a situation like this before.  I found out about it Friday

6     after court.  So under the circumstances I am doing the best I

7     can do.

8         THE COURT:  Okay.  So the request for the adjournment

9     is based upon the fact that there was a second amended

10    complaint and that the defendants didn't answer the second

11    amended complaint.  Right?

12        MR. SNYDER:  That is part of it.  But I would also

13    like to allow Mr. Kombol to argue the point, because I think

14    he's probably more versed in it than I am, although we're both

15    versed in it.

16        THE COURT:  Mr. Kombol.

17        MR. SNYDER:  Do you want to switch?

18        THE COURT:  No.  Mr. Kombol didn't file a letter on

19    this issue, but I will listen to him.

20        MR. KOMBOL:  Your Honor, what I did do last night was

21    I filed an answer to the second amended complaint with various

22    affirmative defenses.

23        THE COURT:  That's about two years after the second

24    amended complaint was filed.

25        MR. KOMBOL:  Absolutely correct, your Honor.  Forgive

O6analm1

1    me.  I am about three weeks into this trial.  I am replacement

2    counsel to my prior counsel, who Jason -- I forgot his last

3    name.

4              THE COURT:  Cyrulnik.

5              MR. KOMBOL:  He was actually a former colleague of

6    Mr. Schwartz's and all other counsel at Boies.  I don't now how

7    an answer was not filed.  Honestly, this is unprecedented.  I

8    didn't even anticipate it until I started researching the

9    issue.

10             If your Honor would like, I can even show you e-mails

11   between me and Jason where I asked, for example, I don't see

12   how the summary judgment was determined.  It is a locked file.

13   I don't have access to it.  Whereas the answer, even as late as

14   Thursday evening, I have e-mails asking him where is the

15   answer?  I'm still missing some in my file.

16             After he literally refused or failed to respond to

17   that, I researched the docket again and again and again.  I

18   interacted with my cocounsel on the defense side, or I guess

19   counsel for the other defendants who are seated with me.  They

20   confirmed that no answer had been filed.  I am procedurally

21   unaware of any situation -- I apologize I didn't want to cut

22   you off.  What were you saying, your Honor?

23             THE COURT:  Did you do a comparison of the second

24   amended complaint to the first amended complaint and see what

25   changes were made in the second amended complaint?

O6analm1

1     MR. KOMBOL:  Here's the unique thing, your Honor.

2 With respect to my client, apparently no answer was ever filed

3 somehow.  I don't understand --

4     THE COURT:  No.

5     MR. KOMBOL:  Forgive me.

6     What were you saying, your Honor?

7     THE COURT:  My question is did you check to see what

8 the differences were in the second amended complaint from the

9 first amended complaint?

10     MR. KOMBOL:  I didn't --

11     THE COURT:  Apparently Mr. Snyder did.

12     MR. SNYDER:  He is new to the case.  We have been

13 around a bit longer.  We have, and it's substantive.

14     THE COURT:  It's what?

15     MR. SNYDER:  It is substantive changes.  It is not

16 minor.

17     THE COURT:  Did the substantive changes go to the

18 issue of equitable estoppel as it applied to MeM?

19     MR. KOMBOL:  Your Honor, that is literally what the

20 substantive changes were directed at.  But more importantly --

21     THE COURT:  In order to overcome the dismissal of

22 unjust enrichment claim against MeM?

23     MR. KOMBOL:  Your Honor --

24     THE COURT:  So they were more specific allegations.

25     MR. KOMBOL:  I did not do a redline comparison to the

O6analm1

1    prior order that directed the second amended complaint, that

2    did specifically state please expand on those concerns.

3            THE COURT:  Okay.

4            MR. KOMBOL:  What is unique here, and I would ask the

5    Court to observe, somehow apparently there was even a prior

6    summary judgment motion that was entertained by this court that

7    was prosecuted by my prior counsel that was directed at the

8    prior pleading.  And even that summary judgment motion was

9    promoted in the absence of an answer even to that first

10   pleading.

11           I don't understand -- and I will just give you, you

12   know, kind of a more personal perspective -- how we could be

13   here today without an answer having been on file, literally to

14   the point that I not only conferenced with my colleagues, but

15   my father's is an attorney as well.  And last night at 10:30,

16   11 p.m., before I filed the amended, answer I called him, and I

17   said I'm kind of on a road uncharted.

18           I don't understand how we can be here.  I asked for

19   his advice, because this is not a situation that is I have ever

20   encountered.  But as counsel for a party who is about to be

21   engaged in a trial, I think joinder is a critical issue.

22           There is a protocol to address this.  It appears that

23   plaintiffs simply did not move for default, which would have

24   been the customary course.  I don't know how or why we are here

25   today.  Again, I was three weeks ago retained in this matter,

O6analm1

1    but here we are.

2              THE COURT:  I'm sorry.  Do you want a default entered

3    now because for two years you didn't file an answer?

4              MR. KOMBOL:  I have researched that as well, your

5    Honor.  I don't think that's a procedural option, because prior

6    to the entry of any default there has to be, pursuant to the

7    local rules of both the Eastern and Southern Districts a

8    clerk's certificate of default, and only then is a default

9    entertained.

10             And when, as here, a late-filed answer, as I

11   understand from my research under the rules of this district,

12   including the local rules, so long as you file an answer before

13   a clerk's certificate of default and a related application for

14   default is entertained, that answer is deemed essentially a

15   motion in support of a request to vacate a default.

16             Any late-filed answer is in that context essentially

17   interpreted and considered in that lens.  And when, as here,

18   there is no existing clerk's certificate of default, there is a

19   procedural impediment to basically issuing a default.

20             I may be wrong on this.  Again, this is uncharted

21   territory.  But I cannot imagine how I can proceed to trial

22   without an answer on file.

23             So good, bad, or ugly -- and this is, again I ask the

24   Court to appreciate, no fault of my own.  I'm brand-new counsel

25   three weeks in.

O6analm1

1          After apprising myself and appreciating the issue of,

2     I guess, having failed to receive any further clarity from

3     prior counsel on this despite repeated requests, it followed a

4     review of the docket, I find myself here and I have to protect

5     myself and my client.  And I ask the Court to accept the

6     answer.  And obviously absent the answer, if the Court says a

7     default is warranted, those are the waters we will navigate

8     next.  But here we are.

9          THE COURT:  Okay.  Thank you.

10          Plaintiffs?

11          MR. SCHWARTZ:  Just one observation before I get to

12     the substance of the argument.

13          We had last night answers filed on behalf of MeM

14     energy and Felix Sater.  For reasons I don't quite understand,

15     even in this particular procedural posture, no answer was filed

16     for Global Habitat Solutions or Bayrock, which are represented

17     by Mr. Snyder and Mr. Sima.  So I am not sure what they contend

18     is the impact of that.

19          But the reality is none of this matters because we are

20     here on the eve of trial, and the Court has entered the joint

21     pretrial order.  Under Rule 16, the joint pretrial order

22     "controls the cause of the action unless the court modifies

23     it."  And courts have held over and over again that, regardless

24     of the pleadings, what is in the pretrial order controls.

25          So, for example, in *Rockwell v. United States* 2007,

O6analm1

```
1    it's 549 U.S. 457, the Supreme Court explained that the final

2    pretrial order "superseded all prior pleadings."  The Supreme

3    Court has explained that, for example, when a party fails to

4    plead in any pleading a claim or defense, but that claim or

5    defense is contained in the final pretrial order, that is what

6    controls and that's what we go to trial on.  I cite, for

7    example, in addition to some of the cases cited in the *Rockwell*

8    decision*, Curtis v. Lother*, 415 U.S., 189, at note 1, a Supreme

9    Court case from 1974.

10           There is no shortage of cases that are all to the same

11    effect, that in this procedural posture, once we have a joint

12    pretrial order that spells out as the parties have stipulated

13    or set forth their claims and defenses and the Court has

14    ordered, that's what controls the trial of the action.  Nothing

15    else is required to quote-unquote join issue.

16           MR. KOMBOL:  If I can respond to that?

17           THE COURT:  No.  Hold on.

18           Anything further, Mr. Schwartz?

19           MR. SCHWARTZ:  No, your Honor.  Only to explain that

20    the reason we didn't seek defaults is, number one, these

21    parties were actively litigating; and, number two, we did seek

22    a default against defendant Ferrari, and Judge Nathan declined

23    to enter the default pending adjudication of the claims against

24    these defendants.

25           So it didn't seem like it would have been fruitful to
```

O6analm1

1    pursue default.  These parties have been litigating actively

2    for years.  We know what their claims and defenses are.

3            MeM moved to dismiss, they moved for summary judgment

4    on theories of statute of limitations that are well explained

5    in the papers, and, as the Court held on Friday, well explained

6    in the final pretrial order and endorsed by the Court.  Again,

7    that's what controls.

8            MR. KOMBOL:  Your Honor, if I may?

9            THE COURT:  Yes.

10           MR. KOMBOL:  I would be shocked, not having seen

11   whatever case law Mr. Schwartz just briefly broadly referred

12   to, I would be shocked to find that any of those cases deal

13   with a situation where, as here, we are at trial without

14   joinder.  I don't think there is a procedural mechanism to

15   support even such a thesis.

16           As he stated and as he referenced in the case law, if

17   it relates to prior pleadings, except that is in prior

18   pleadings, the pretrial order controls.

19           There are no pleadings.  There have been no pleadings

20   on file.  Again, I don't understand how we've gotten here.  But

21   there is no mechanism where you proceed to trial at a federal

22   level of this magnitude without joinder of issue.

23           THE COURT:  Okay.

24           MR. KOMBOL:  It's frustrating.  It's literally

25   confounding.  Here we are.

O6analm1

1          His vehicle was to move for default.  He probably

2      should have.  But now there is an answer on file, and we ask

3      the Court to accept it, again, all within the context that they

4      recognize, that this is an uncharted arena.  I have never

5      anticipated or seen this in my entire experience or in my

6      entire career.

7          THE COURT:  Okay.

8          The motion for an adjournment is denied.

9          First of all, the trial is controlled by the terms of

10     the joint pretrial order, which sets out the claims and

11     defenses of the parties.

12         To the extent that the defendants now claim that they

13     didn't file an answer earlier in the case to the second amended

14     complaint, they have waived that argument or forfeited that

15     argument by having failed to make it for the two years after

16     the second amended complaint was filed, which was filed in

17     order for the plaintiff to respond to MeM's argument that there

18     were insufficient allegations of equitable estoppel.

19         Up until literally the night before trial was to

20     begin, MeM asserted for the first time that the trial should

21     not go forward because it hadn't filed an answer for --

22         MR. KOMBOL:  Your Honor, excuse me.

23         THE COURT:  Hold on.

24         MR. KOMBOL:  I never --

25         THE COURT:  No.  Hold on.  When I am talking, you just

O6analm1

 1    don't interrupt.  What is there about that that you don't

 2    understand?

 3             MR. KOMBOL:  Your Honor, you have suggested that I

 4    argued or requested the trial not go forward.  That was not our

 5    request.  We requested that the answer be accepted.  We were

 6    happy to move forward with the trial.  We never requested,

 7    suggested, or in any way applied for a suspension of the trial.

 8    My colleague did.  That was not my client.

 9             THE COURT:  Thank you.  It was Mr. Sater who moved to

10    adjourn the trial.  You are absolutely right.  So I stand

11    corrected on that issue.

12             It doesn't change the fact that none of remaining

13    defendants, prior to the letter sent by the Sater defendants on

14    the morning of trial, suggested that there was a procedural

15    defect that had to be remedied before trial could go forward.

16             MeM is right.  MeM didn't even ask for that last night

17    or early this morning and just joined the argument this

18    morning.

19             No?  That's not right?

20             MR. KOMBOL:  Incorrect, your Honor.  I did not join

21    argument or move for an adjournment.  I merely asked the Court

22    to accept our answer to allow joinder.

23             This is a procedural impasse that I believe cannot be

24    overcome by even accepting or somehow aggregating what amounts

25    to an answer to a pretrial order and other pretrial actions.

O6analm1

1          Joinder through a formal entry is strictly controlled

2     by the federal rules, and the rules of this district literally

3     determine and set forth how this must be done in the context of

4     a situation where an answer is offered late, even on the eve of

5     trial, prior to the request for a default.

6          THE COURT:  Okay.

7          MR. KOMBOL:  If your Honor is inclined, if your Honor

8     is inclined to hodgepodge together what amounts to an answer

9     from our prior action in the other trial without a formal

10    answer of joinder, if that's where this is going, I ask the

11    Court only to specifically expressly rule to that extent,

12    because I believe, and I have reviewed this extensively, that

13    it will result in essentially a mistrial that proceeds without

14    authority because joinder has not been achieved.

15         THE COURT:  I --

16         MR. KOMBOL:  And later joinder --

17         (Continued on next page)

18

19

20

21

22

23

24

25

O6AQalm2

1          THE COURT:  Stop.  Please.  By joinder, you mean the

2     filing of a defense.

3          MR. KOMBOL:  Incorrect, your Honor.  Under the federal

4     rules, an answer is a specific instrument and specific

5     standards that must be filed in a specific manner, not a

6     defense that was argued in other pretrial filings or --

7          THE COURT:  Hold on.  Hold on.  The argument is

8     because there was no answer to the second amended complaint,

9     the trial shouldn't go forward.

10          MR. KOMBOL:  Incorrect, your Honor.  What I'm saying

11     is, there are two options.  We have two roads --

12          THE COURT:  Okay.

13          MR. KOMBOL:  -- quoting Robert Frost, that we can

14     follow.

15          THE COURT:  Hold on.

16          Unlike the Sater defendants, the only thing that

17     you've done is to file an answer to the second amended

18     complaint.  You haven't given me a letter or a motion with

19     respect to adjournment or the inability to go forward.  You've

20     simply filed a first amended answer.

21          MR. KOMBOL:  In answer to the second amended

22     complaint, not a first amended answer.  In fact, this is the

23     first answer on file in this matter in any context by my

24     client.

25          THE COURT:  Okay.  Thank you.

O6AQalm2

1          So as I was saying, the motion to adjourn the trial

2    which was made by the Sater defendants and the motion -- well,

3    it's not even a motion.

4          MR. KOMBOL:  Correct, your Honor.

5          THE COURT:  Hold on.

6          MR. KOMBOL:  I apologize.

7          THE COURT:  Hold on.  What is it that you don't

8    understand about interrupting the Court?  What is it that you

9    don't understand?  Please sit down.

10          MeM has filed a first answer to the second amended

11    complaint.  That answer is stricken as too late.  The

12    opportunity to file such a document has long since passed.  The

13    trial is controlled by the joint pretrial order which was

14    signed by representatives of all of the parties and signed by

15    the Court.  To the extent that there are any arguments that the

16    failure earlier in the case, or now, to have filed an answer,

17    any such argument is waived or forfeited.

18          The trial will be controlled by the joint pretrial

19    order.  All of the parties had an ample opportunity to

20    contribute to the joint pretrial order, to object to anything

21    in the joint pretrial order, and there were no objections to

22    the joint pretrial order, and I have signed the joint pretrial

23    order.

24          So to the extent that there is any motion to adjourn

25    the trial, it is denied.  To the extent that MeM is attempting

O6AQalm2

1    to argue that there should now be a mistrial, that motion is

2    also denied.  All right.

3              MR. KOMBOL:  Thank you, your Honor.

4              In light of your Honor's ruling, MeM declines to

5    further participate in this trial.  We rest on our pleading,

6    and we will deal with everything further through an appeal of

7    your Honor's current order in the absence of the ability or

8    acceptance of an answer and joinder in this matter, and we

9    disagree, and we will strongly address on appeal these rulings.

10             We accept your Honor's rulings today.  However, in the

11   absence of joinder, an answer, defenses or anything further,

12   and if in fact the Court is relying upon essentially a joint

13   pretrial order in lieu of answer and joinder, we accept your

14   Honor's analysis, we respectfully disagree, and we will reserve

15   all pending and further matters from appeal.  However, absent

16   an answer, I am unable as counsel for my client to proceed to

17   trial, and I rest on that basis.

18             THE COURT:  I'm sorry, but your predecessor signed the

19   joint pretrial order.

20             MR. KOMBOL:  Your Honor, I disagree that that has any

21   impact on whether joinder is achieved in this matter.

22   Mr. Schwartz had an obligation to proceed to default.  He did

23   not.  If this is your Honor's order, I will appeal this

24   promptly, we will address this, and we reserve, but I decline

25   to proceed to trial absent joinder in the answer on file which

O6AQalm2

```
 1    I have offered.  And as the Court is aware, you xxx trial
 2    answers in pleadings that may be amended.  If the Court is
 3    unwilling to accept our answer and accept joinder, then we will
 4    proceed as I just addressed, and we decline to further
 5    participate in this proceeding.
 6              THE COURT:  All right.  Mr. Snyder.
 7              MR. SNYDER:  Just one very brief point of
 8    clarification or just pointing something out, I should say.
 9              On, for example, page 2 of the pretrial order, it
10    cites the plaintiffs referred to their second amended
11    complaint, ECF 399 right in the middle of the page, page 2.
12    But then you go on to the, for example, the Ridloff -- let me
13    see if I can get to it.  Give me one second.  Well, I will -- I
14    can't find it in the moment, but I will just tell you my point.
15              My point is, when referring to the complaint,
16    plaintiffs refer to the second amended complaint.  When
17    referring to the answer, the defendants are referring to the
18    answer to the first amended complaint.  And whatever importance
19    that has, I just wanted to make sure that fact was clear; that
20    there were sort of two ships passing in the night.  We have the
21    second amended complaint answered by the first amended -- the
22    answer to the first.  So that's my point, and I'll sit down.
23              THE COURT:  Plaintiff?
24              MR. SCHWARTZ:  Thank you.  With respect to the last
25    point, I don't think it matters what is cited in the final
```

O6AQalm2

1    pretrial order.  It recites the claims and defenses to be

2    tried, and, again, all the parties signed it and your Honor

3    signed it.  That's what controls.

4         With respect to Mr. Kombol's assertion that he doesn't

5    intend to participate in this trial, I suppose it is his right

6    to sit here and not give an opening and not examine any

7    witness, but unless his client is consenting to entry of

8    judgment on all claims against it and the amounts we are

9    seeking, this is a trial defendant, and he should be required

10   to be here, and his client is under subpoena.

11        MR. KOMBOL:  Your Honor, with respect to that, again,

12   I am unable and unwilling to proceed absent joinder in this

13   matter.

14        Mr. Schwartz had an opportunity to move for default.

15   He did not.  Procedurally, I have researched the rules.  I am

16   confident in how I rest and how I stand.

17        If he requires my client as a witness after the Jewish

18   holidays have passed, he is free and willing to call him, and I

19   will be here, and I will stand with him as he testifies.  But I

20   will not participate in the trial without joinder.  I cannot as

21   counsel.  And if Mr. Schwartz wants to apply for default or

22   seek whatever procedure he feels he is able to pursue in

23   support of default, even orally requesting it right now before

24   your Honor, I will address all of those matters through appeal.

25        But I will not participate and proceed to trial and

O6AQalm2

1   give the color and credibility to a proceeding without joinder,

2   and I will not budge on that.  And whatever Mr. Schwartz wants

3   to pursue, whatever relief he believes he's entitled to, he is

4   entitled to pursue, and I will address all of that on appeal.

5   If he is subpoenaing my client, which I will acknowledge he

6   has, we will present him for whatever worth it may be in a

7   matter in which I literally decline to proceed without joinder,

8   we will present him at a time that the high holy holidays

9   allow, which is probably early next week, or I believe possibly

10   Friday of this week.  But beyond, that I cannot ethically or as

11   a petitioner proceed in a hearing in a proceeding in which

12   there is no joinder.

13          And I firmly disagree that a joinder can be somehow

14   cobbled together through a pretrial order and prior motion

15   practice.  Joinder is a specific act that was not achieved in

16   this matter.  I don't know why.  I don't know how.  Yet, here

17   we are, and I stand firm.

18          MR. SNYDER:  Your Honor, on behalf of the Sater

19   parties, I am not authorized to take the position that my

20   colleague did, certainly not without a real discussion.  So I

21   am not inviting you to default me.  If he wants you to, that is

22   fine, but I am not making that request.

23          THE COURT:  Thank you, Mr. Snyder.

24          Mr. Schwartz.

25          MR. SCHWARTZ:  It is somewhat unorthodox, but I have a

O6AQalm2

1    question.  Mr. Kombol keeps saying he researched the rules and

2    they inflexibly require joinder.  I'm curious which rules he is

3    pointing to and which he has researched because the only

4    reference to joinder in the federal rules that I'm aware of is

5    in Rule 15 and thereabouts, and that's joinder in a totally

6    different context.

7            So I'm unclear even the basis for this argument.  But

8    to the extent, again, that the point is the claims and defenses

9    have to be identified, that's been done pursuant to Rule 16 in

10   the final pretrial order.

11           MR. KOMBOL:  Your Honor, if Mr. Schwartz would like me

12   to elaborate, I can refer the Court to the matter Seaford

13   Avenue Corp. v. --

14           THE COURT:  He asked for a rule.  He asked for a rule.

15   A rule has a number.

16           MR. KOMBOL:  I will expound on that, your Honor,

17   briefly.  One moment.

18           Pursuant to Local Rule 55.2, which addresses the

19   manner in which a default may be secured pretrial, the

20   procedures and protocols necessary to secure such relief is

21   expressly and specifically set out, and this has been addressed

22   in --

23           THE COURT:  No.  No.  You're addressing the wrong

24   issue.  You're addressing the requirements under the local

25   rules to obtain a default.

O6AQalm2

1          MR. KOMBOL:  Correct, your Honor.

2          THE COURT:  The question was where are you coming up

3    with your notions that the failure to file an answer in and of

4    itself is somehow a jurisdictional defect, and that the other

5    side must move for a default?

6          MR. KOMBOL:  Your Honor --

7          THE COURT:  So the question was, what rule?

8          MR. KOMBOL:  Rule 7, your Honor.

9          THE COURT:  Rule 7.

10          MR. KOMBOL:  Also Rule 10.

11          THE COURT:  Whatever the unspecific allegations are,

12    the joint pretrial order was signed and consented to by the

13    parties and governs the trial.  The only issue in my mind at

14    this point is whether at this point, given the position of MeM,

15    judgment should be entered against MeM which MeM invites.  But

16    it's not so clear to me what the judgment would be against MeM,

17    which would require a trial or an inquest.

18          MR. KOMBOL:  An inquest, your Honor.

19          THE COURT:  So the plaintiffs say if MeM is a party at

20    the moment pursuant to the joint pretrial order, if MeM decides

21    to stay silent during the trial and present no defense, so be

22    it.  The jury will determine whether there is liability against

23    MeM and what the damages are against MeM.  But MeM concedes

24    that there is liability.  The only issue is what's the amount

25    of damages.

O6AQalm2

1              MR. KOMBOL:  Your Honor, I disagree.  MeM does not

2       concede any liability.  What we do is decline to proceed in the

3       absence of joinder.

4              THE COURT:  MeM says they are plainly not going to

5       defend, they are not going to proceed.  So the question is

6       whether I should simply enter the default against MeM now or

7       proceed to trial with MeM declining to proceed to trial.

8              MR. KOMBOL:  Your Honor, I'd like to specify.  We --

9              THE COURT:  I think I've heard you out.

10             MR. KOMBOL:  We are happy to proceed to trial if our

11      answer is accepted and joinder is accepted, but absent joinder,

12      I cannot proceed to trial.

13             THE COURT:  I've heard you.  I've heard you, all

14      right?

15             Plaintiffs, what is the amount that's being sought

16      against MeM?

17             MR. SCHWARTZ:  One moment.

18             THE COURT:  I will take a ten minute break.

19             (Recess)

20             (Continued on next page)

21

22

23

24

25

o6analm3

1          THE COURT:  Plaintiffs, do you have any observations?

2          Let me begin before asking.  It is plain to me that

3     the plaintiffs are entitled to a default against MeM.  MeM has

4     announced that it will not proceed to defend the claims against

5     it in the trial that was scheduled to begin today, and that

6     failure to defend with a plain basis for a default judgment

7     against MeM under Rule 55(b)(2), Default Judgment by the Court.

8          Similarly, under the Second Circuit cases, *New York v.*

9     *Mickalis Pawn Shop LLC*, 645 F.3d 114 (2d Cir. 2011), where the

10    Court said among other things, we cannot permit the defendant

11    to short circuit the normal litigation process by withdrawing,

12    inducing a default judgment to be entered against them, and

13    then obtaining de facto interlocutory review over otherwise

14    nonappealable decisions.

15         Similarly in *Brock v. Unique Racquetball and Health*

16    *Clubs Inc.* 786 F.2d 61 (2d Cir. 1986), where the Court of

17    Appeals said this is the unusual case where a default is

18    entered because counsel fails to appear during the course of a

19    trial.  In this context the trial judge responsible for the

20    orderly and expeditious conduct of litigation must have broad

21    latitude to impose sanctions for default for nonattendance

22    occurring after a trial has begun.

23         So the next issues are --

24         MR. KOMBOL:  Your Honor, briefly, if I could respond

25    to that.

o6analm3

1              THE COURT:  No.

2              MR. KOMBOL:  My apologies.  If you will allow me an

3      opportunity after you are done, I would appreciate it.

4              THE COURT:  I'm sorry?

5              MR. KOMBOL:  My apologies for jumping in.

6              THE COURT:  Go ahead.

7              MR. KOMBOL:  If you would allow me to respond after

8      you finish, I would appreciate that.

9              THE COURT:  What should the next step be?

10              I would listen to the plaintiffs with respect to this,

11      because it is the plaintiffs' case against the defendants.

12      There is case law for continuing a trial that's begun so that

13      there can be a determination of damages.  In this case the

14      trial hasn't begun and the amount of damages could be

15      determined at an inquest, including with the benefit of the

16      trial record.  That's why I want to listen to the plaintiffs.

17      It would seem to me that the -- well, what is the plaintiffs

18      position?

19              MR. SCHWARTZ:  So, if it is the Court's intention to

20      enter default judgment against MeM Energy, the question is how

21      to determine the appropriate measure of damages.  I would

22      suggest to the Court that the evidence that we will put on at

23      trial, even if trial is only against Mr. Sater and his

24      entities, will either necessarily or without doing violence to

25      the presentation of evidence or extending things, include all

o6analm3

1    of the evidence necessary to make findings with respect to the

2    damages against MeM Energy.

3          For example, much of the, or some of the money that

4    was received by Mr. Sater or his entities through this money

5    laundering scheme was routed through MeM Energy accounts.  So

6    we have to tell that story anyway.

7          So I would suggest if the question is simply how to

8    determine the appropriate measure of damages, we will put on

9    that proof, and the question of damages as to MeM can be a

10   question for the Court to resolve based on that record rather

11   than a jury question.  Just this last time around we had

12   equitable claims and legal claims.

13         THE COURT:  So I wouldn't identify MeM as a defendant

14   for the trial or introduce it as a defendant?  This would be a

15   case of the plaintiffs against Mr. Sater and related entities,

16   and any determination of damages would await after the trial,

17   and I would give sufficient notice, again, to MeM with respect

18   to the issue of damages after trial?

19         MR. SCHWARTZ:  That certainly is a way that you could

20   proceed.  I will say, without having an opportunity to research

21   the question, I have a little bit of hesitation about entry of

22   default judgment to the extent that it could be determined a

23   judgment other than on the merits.  Because that would be

24   subject to subsequent attack by MeM or its principal.

25         I think a different way you could go about this

o6analm3

1    potentially, seeing as how the defendant doesn't intend to

2    contest any issues at trial, even though notwithstanding the

3    absence of an answer Mr. Kombol has not identified any factual

4    or legal issue he would raise at trial that he is impaired from

5    raising, but if he intends not to participate at trial, not to

6    put on a defense, if there's no answer on the file and he

7    doesn't want to be bound by the pretrial order, then the

8    natural consequences, having failed to timely answer and not

9    being bound by the pretrial order are that all of the

10    allegations of the complaint are deemed admitted, and no

11    affirmative answers have been interposed.  In that case your

12    Honor could also grant summary judgment on liability to the

13    plaintiff and again address damages in the way that you have

14    just suggested.

15            THE COURT:  I would get a response from the defendant

16    with respect to an application for --

17            You can sit down, sir.

18            -- with respect to an application for summary

19    judgment.  So do the plaintiffs think that it is appropriate

20    and I should enter a default judgment based upon what MeM has

21    told me today, which is it does not intend to proceed with the

22    trial in this case?

23            That's my question.

24            We had scheduled trial for this morning.  It is now 5

25    after 12:00.  MeM has so far succeeded, by a combination of

o6analm3

1    being late and a late application, to delay the trial.  It

2    seems to me clear that a default judgment based upon everything

3    that MeM has said is justified.

4          But if the plaintiffs tell me, no, they don't want a

5    default judgment, we can proceed, MeM will be a party, it can

6    say nothing if it chooses, we will go forward from there.

7          MR. SCHWARTZ:  I appreciate the question.  Without

8    wanting to cause any further delay, I agree that --

9          THE COURT:  And I can delay the case until tomorrow

10   while you look at all of the possibilities or I can delay the

11   case until this afternoon while you look at all of the

12   possibilities.

13         MR. SCHWARTZ:  I was simply going to suggest that

14   perhaps, not even delay, perhaps we can look at the issues over

15   lunch and respond after lunch.

16         THE COURT:  Okay.

17         Mr. Kombol.

18         MR. KOMBOL:  Mr. Trump?

19         THE COURT:  No, Mr. Kombol.

20         MR. KOMBOL:  I think you elevated my stature there

21   very slightly.

22         Your Honor I just want to reaffirm to the Court we are

23   ready, willing, and able to proceed should our answer be

24   accepted.  In the absence of joinder of issue, we are unable, I

25   am unable to see, because joinder has not been achieved -- and

o6analm3

I disagree affirmatively that any attempt to cobble together an
answer effectuates the equivalent of an answer as is strictly
required by the federal rules.

I also refer this court to its Local Rule 55.2, which
under these circumstances requires that only the plaintiff may
request a default, and in order to request a default the
plaintiff must first secure a clerk's certificate of default,
which is a predicate necessary to requesting default in the
context where there is not an answer that has been offered, as
we have here.

If the Court on its own initiative *sua sponte* is
rejecting our answer, then absent joinder I am procedurally
advising the Court that I am unable to proceed because I do not
have issue joined adequate to proceed to trial.

If our answer is accepted, we will proceed in due
court to trial. Under the local rules otherwise, the way I
perceive them -- and I believe I am correct and I can brief
this on appeal, and obviously that is where this is heading, I
will have to address this on appeal -- as counsel for a party
absent joinder I am unable to proceed. There is an answer on
file. I have proffered I don't know why no prior answer was
filed. Plaintiff was required and it was incumbent upon
plaintiff to have previously sought default, because it is
impossible, implausible, and illogical for a party to proceed
to trial absent joinder. That is literally the procedure that

o6analm3

1    is promulgated by Local Rule 55.1 and the associated federal

2    rules.

3          Having failed to do so, our answer, which has now been

4    offered, docketed, and is on file, we believe is a fully valid

5    and viable answer in support of trial.  Upon acceptance, we are

6    willing to proceed to trial.

7          Absent an answer, absent joinder, then Mr. Schwartz

8    and his team, the plaintiffs' counsel, has a mechanism to

9    pursue a default.  First they must request a clerk's

10   certificate of default.  Then they must proceed from there.

11         They did not.  We have filed an answer.  We are here

12   ready, willing, and able to proceed so long as joinder is

13   acknowledged and accepted.  Absent jointer, you are correct,

14   the default is the only mechanism.

15         If that is how the court proceeds, despite the fact

16   that we have know filed an answer and have offered it and we

17   are standing on the local rules and procedures, absent joinder

18   of issue and an answer, I agree that would be a default.  If

19   the Court wants to rule a default under these circumstances, I

20   can't stop it.  I can't change it.  That's something we will

21   appeal.

22         THE COURT:  Okay.

23         Yes, Mr. Snyder.

24         MR. SNYDER:  Very quickly.  Just two points.  My

25   client asked me to put this on the record, so I will.

o6analm3

1          Number one, Mr. Sater and the Sater parties are not

2     waiving an appeal on the record, on the joinder issue that was

3     discussed a moment ago.  So he is not waiving that.

4          In addition, he is not waiving the issue of the Kazakh

5     three-year statute of limitations issue.  He's preserving that.

6          THE COURT:  Okay.

7          Yes?

8          MR. SCHWARTZ:  Just a few things, Judge.

9          First of all, I don't think any of this is an issue as

10    to Mr. Sater and his companies.  They did answer, albeit an

11    earlier version of the complaint.  I think the case law is at

12    least trending in the direction of saying, the better reasoned

13    case law says that when a defendant answers a prior iteration

14    of a complaint, unless there are substantial amendments, that

15    controls and that's sufficient.

16         Any amendments to the second amended complaint were

17    really to address MeM Energy's motion to dismiss and not

18    Mr. Sater.  I point your Honor to *KST Data v. DXC Technology,*

19    980 F.3d 709 (9th Cir. 2020).

20         As to MeM Energy, the argument that we somehow failed

21    in our responsibilities to seek a default makes no sense.

22         First of all, we actually did default MeM Energy.

23    They were in default, and they came and they moved to vacate

24    the default.  That was granted because they wanted to defend

25    the case.

o6analm3

1          Under Local Rule 55.1, if I wanted to seek a default,

2     I would have to file an affidavit saying that MeM Energy had

3     "failed to plead or otherwise defend the action."  They plainly

4     have otherwise defended the action up until today.  If today

5     Mr. Kombol is announcing that MeM Energy has no intention of

6     otherwise defending this action and they want to lay down, then

7     a default is entirely appropriate.  I can make that

8     application, or I think that's what your Honor has said is

9     happening.  I agree with that.

10          The notion that MeM Energy cannot proceed to trial

11     because issue is not joined again is at best form over

12     substance.  MeM Energy has not identified a single issue,

13     factual or legal, that they want to present to the Court or to

14     the jury that they are impaired from presenting.

15          They fully presented their claims, factual and legal,

16     and defenses in the final pretrial order.  This is nothing more

17     than an attempt to resuscitate arguments, presumably the

18     statute of limitation arguments, that the Court already held on

19     Friday was waived.

20          That final pretrial order controls.  The issue is not

21     joinder.  The issue is that they want interpose new arguments.

22     For example, I don't think Mr. Kombol would be happy if your

23     Honor did what you could do, which is accept their answer for

24     filing, but still deem the joint pretrial order to control.

25     That would allow us to go forward with all of the claims and

o6analm3

1    defenses that the parties agreed, but not with the arguments

2    that were waived and forfeited by the parties, as the court

3    held on Friday.

4              THE COURT:  So no --

5              MR. SCHWARTZ:  Anyway, I agree --

6              THE COURT:  Hold on.

7              Mr. Kombol says if you just accept our answer to the

8    second amended complaint, including the defense, they'll go

9    forward.  And you say that's fine, accept the answer, Judge,

10   but also say the parties are bound by the joint pretrial order,

11   and by all of the prior rulings in the case, including relating

12   to the statute of limitations, and the claims and defenses

13   which are set out in the joint pretrial order.

14             MR. SCHWARTZ:  In other words, you could accept the

15   answer but strike the affirmative defenses, and I guess I would

16   move to strike the affirmative defenses.

17             THE COURT:  I would strike any defenses that are

18   inconsistent with the claims and defenses that the parties

19   agreed to in the joint pretrial order.

20             MR. SCHWARTZ:  Exactly.  I think that's another

21   solution here.  If I could have lunch to think about it, given

22   the time, but I think in any case, there are multiple ways to

23   go forward.

24             THE COURT:  All right.

25             What is it?

o6analm3

1          MR. KOMBOL:  Your Honor, obviously if all parties

2     reserve all rights and the ability to appeal from any

3     determinations, which is clearly something that we would

4     reserve, that would be something that I would be willing to

5     accommodate.

6          Obviously I would disagree with the striking of any

7     affirmative defenses and the viability of any such order, but

8     that is something we can reserve for appeal.  Otherwise that is

9     something I am willing to consider.  Perhaps when we come back

10    from lunch we might have a resolution.

11         THE COURT:  All right.

12         Be back at 1:15.

13         Mr. Snyder?

14         MR. SNYDER:  Very quickly, because I haven't gotten

15    this on the record, and I would like to.  Rule 7 of the Federal

16    Rules of Civil Procedure states at (a), only these pleadings

17    are allowed, and then it lists complaint, answer to complaint,

18    and so forth.

19         This is Rule 7.  You can see it.

20         Notably, pretrial order is not listed as a pleading

21    that is allowed.  So to the extent that it is being interpreted

22    as a pleading, that is, at least to my eye, potentially

23    inconsistent with Rule 7.

24         I have now said that on the record, your Honor.

25         THE COURT:  But there is a Rule 16 that applies to

o6analm3

1    joint pretrial orders.  Yes?

2              MR. SNYDER:  Yes.

3              THE COURT:  And it succeeds Rule 7.  It has provisions

4    and it has cross-references to a sanctions rule for failure to

5    abide by a joint pretrial order.

6              So you have made your point.

7              MR. SNYDER:  Thank you, your Honor.

8              THE COURT:  No.  I have listened patiently to all of

9    the parties.  I will see you all at 1:15.

10             MR. SNYDER:  Your Honor, would it be if we can 1:30,

11   just given the fact --

12             THE COURT:  Okay.  1:30.

13             1:30 is fine.

14             MR. SNYDER:  Thank you, your Honor.

15             (Luncheon recess)

16

17

18

19

20

21

22

23

24

25

o6analm3

                        AFTERNOON SESSION

                           (1:30 p.m.)

1       THE COURT:  Good afternoon.

2       Please be seated.

3       Where are we?

4       MR. SCHWARTZ:  Judge, having looked at it over the
lunch, I think that in terms of the Court's options, we are in
the same place as we were before, which is either the Court can
proceed by entering a default, since Mr. Kombol has made very
clear that unless the Court grants him leave to file his
out-of-time and waived answer, he doesn't intend to
participate, and therefore given a chance to participate in
these proceedings MeM Energy is declining to do so and is in
default, or the Court can accept that pleading but strike any
portions of it that don't conform with the later-filed pretrial
order.  It is clear that simply by being later in time it
doesn't mean that that answer controls.

        For example, putting aside the defenses, that answer
denies or denies knowledge as to each and every allegation in
the second amended complaint, including factual allegations as
to Mr. Mochkin as a 30(b)(6) representative of MeM Energy
testified about and agreed with.

        For example, in the answer MeM energy denies that it
is owned or controlled by Mr. Mochkin, but in his deposition he
of course admitted that fact.  The fact that this purported

o6analm3

1   answer is offered afterwards doesn't mean they can somehow

2   relitigate his admissions in and control of that entity.

3         So the Court would certainly be within its discretion

4   to strike from the proposed answer anything that is

5   inconsistent with the joint pretrial order and the findings

6   that the Court made on Friday as to waiver and forfeiture as to

7   affirmative defenses.

8         If the question is what is the preference of the

9   plaintiffs, I think the preference of the plaintiffs, given

10  Mr. Kombol's explicit statement that MeM Energy does not intend

11  to participate in these proceedings and will not participate in

12  trial unless the Court accepts his pleading and it being

13  inappropriate to accept that pleading, the default is

14  appropriate.

15        As I said before, damages issues, the evidence can be

16  put in at trial and the Court can subsequently hold an inquest

17  based on that record.

18        THE COURT:  And I simply wouldn't list MeM as a party

19  for the jurors?

20        MR. SCHWARTZ:  Correct.

21        THE COURT:  And they would not be asked to make any

22  findings with respect to MeM?

23        MR. SCHWARTZ:  Correct.

24        MR. KOMBOL:  Your Honor, if I may, the answer is on

25  file.  But I believe Mr. Schwartz is asking the Court to strike

o6analm3

1    the answer.  That is what we object to.  If there is an

2    inclination of this Court to strike or not recognize the now

3    of-record answer with affirmative defenses, we do object.

4         With respect to the, I guess, potshot that

5    Mr. Schwartz just took at our answer, we respond to the

6    allegations as set forth and as they are pled.  We respond

7    either by admitting denying or denying all information adequate

8    to respond.  That's based on the way they've phrased the

9    allegation, and I stand by the response.

10        There is no challenge or question that Mendel Mochkin

11   at one point obviously while it was an active entity was a

12   representative owner and principal of MeM, but again we are

13   splitting hairs here.

14        When it comes to the pretrial conference,

15   Mr. Schwartz's efforts to, I guess, supersede the substance of

16   the now of-record answer that was filed before any application

17   for a default, which would have been the proper avenue, was

18   made against my client.

19        I again dispute that.  Procedurally it is improper, as

20   everyone knows answers, and pleading can be amended up to and

21   even during trial.  More importantly, there is, based on my

22   review, nothing in the pretrial order that in any way

23   compromises any defense or response that we have asserted

24   through our answer.  I don't know where Mr. Schwartz derives

25   that understanding.  If I'm misreading the pretrial order, I

o6analm3

1    apologize.

2            But even assuming gratuitously that is correct, that

3    still does not alter our as-of-right ability to assert defenses

4    and affirmative defenses through an answer, which we have.

5            Beyond that, I maintain and retain my position that I

6    am unable to proceed to trial without joinder on behalf of the

7    client.

8            THE COURT:  Okay.

9            Mr. Kombol filed a first answer and affirmative

10   defenses, so it is filed.  I will accept the filing except to

11   the extent that it's inconsistent with any of the Court's prior

12   rulings on motions to dismiss or for summary judgment against

13   MeM and inconsistent with the joint pretrial order.  The trial

14   will be conducted in accordance with the joint pretrial order.

15           There are new allegations and claims in this answer

16   and second amended complaint, including a request for

17   arbitration, which has long since been waived.  The parties

18   can't ask for arbitration on the day of trial, having litigated

19   the case for lo these many years.

20           So MeM filed this answer.  As I've said, the trial

21   will be conducted in accordance with the joint pretrial order

22   and all of the prior rulings of the Court, including the

23   rulings on the motions to dismiss and for summary judgment and

24   most recently on the Court's ruling last week rejecting many of

25   the new claims which were raised by MeM.

o6analm3

1           If MeM decides not to proceed with the trial, then

2      there will be a default against MeM.  Originally, that's what I

3      thought MeM was doing, but then MeM said, oh, no, just take the

4      answer and we will proceed to trial.

5           So it is up to MeM now to tell me, are they proceeding

6      to trial or not proceeding to trial?  That is the question.

7           MR. KOMBOL:  Your Honor, if the answer is now

8      accepted, we will proceed to trial.  Obviously there will be

9      some dispute over whether your prior orders in any way impact

10      our affirmative defenses.  I addressed that in my e-mail to the

11      Court last night.  I carefully reviewed every single decision

12      in this matter.  While there were arguments that were raised

13      about statute of limitations, they do not impact the

14      affirmative defenses that we asserted.

15           THE COURT:  You also, by the way, filed requests to

16      charge.

17           MR. KOMBOL:  I did not.

18           THE COURT:  I'm sorry?

19           MR. KOMBOL:  I did not.

20           THE COURT:  I mean prior counsel did.

21           MR. KOMBOL:  I am not aware if he did.  I can reread

22      the docket.  If he did, I'm happy to review it.

23           THE COURT:  Well, you can't reject what your prior

24      counsel did I take it.

25           MR. KOMBOL:  Obviously, my prior counsel filed

o6analm3

1    something that is on the docket of record.

2              THE COURT:  Okay.

3              MR. KOMBOL:  As much as I try, I can't memorize every

4    single filing in this action, but if there is something my

5    prior counsel filed, it is of record.

6              THE COURT:  The requests to charge, by the way, set

7    out what the claims are and what the defenses are and what the

8    jury should be charged on with respect to those claims and

9    defenses.  It would be a good idea for you to review the

10   record.

11             MR. KOMBOL:  Again, your Honor, even notwithstanding

12   that, an amended pleading and an amended answer essentially

13   wipes the slate clean to a large extent.  The case law is very

14   expansive on that.  Obviously this is something we will have to

15   brief posttrial if we get there.

16             But if the Court's inclination, as has been my

17   request, is that the answer be accepted and the parties reserve

18   all other rights and defenses based on the prior rulings of the

19   Court, that is acceptable to my office.

20             THE COURT:  I have told you what my ruling was.  And

21   your decision is to proceed, correct?

22             MR. KOMBOL:  I am not aware of anything in your ruling

23   that in any way alters the affirmative defenses that we have

24   asserted.  That is something that I believe we can brief

25   afterwards.  But I do agree that to the extent --

o6analm3

1              THE COURT:  I've told you --

2              MR. KOMBOL:  -- there was a prior ruling --

3              THE COURT:  I have told you what my ruling is.

4        Your decision is to proceed?

5              MR. KOMBOL:  With that reservation, correct,

6    obviously, your Honor.

7              THE COURT:  Okay.  Look, I have made my ruling clear.

8    Don't attempt, deliberately, to muddy the waters.

9        What I have said is your answer and affirmative

10   defenses have been filed.  If there is anything in there that's

11   inconsistent with the joint pretrial order and the prior

12   rulings of the Court, including rulings on motions to dismiss

13   and summary judgment and my ruling on your numerous

14   applications last week, all of those will prevail.  Follow?

15             That is an easy question.  Yes or no?

16             MR. KOMBOL:  The answer is absolutely, your Honor.  I

17   agree.  I have reviewed all of those rulings and I stand by my

18   prior defenses.

19             THE COURT:  Do plaintiffs want to say anything else?

20             MR. SCHWARTZ:  No.  Thank you, Judge.

21             THE COURT:  Then it's time to bring up the jury.

22             MR. SCHWARTZ:  Judge, when the jury comes up, when you

23   introduce the trial participants, if you want, Ms. Mackenzie

24   and Ms. Cullinan are sitting in the gallery if you wanted them

25   to stand when you say their names.

o6analm3

1      MR. SNYDER:  Your Honor, you stated your decision with

2   respect to the recently filed answer for MeM.  Does the same

3   apply to Sater?

4      THE COURT:  Did Sater file a new answer?

5      MR. SNYDER:  Yes.

6      THE COURT:  Yes.  The same thing would apply to Sater.

7   It's filed, but if there's anything in there that's

8   inconsistent with the prior rulings on motions to dismiss,

9   motions for summary judgment, the joint pretrial order, the

10   parties' requests to charge, all of those will prevail.

11      MR. SNYDER:  Thank you.

12      THE COURT:  And if there is something that I am

13   missing, you can bring it to my attention.  Litigation is not a

14   game and efforts to smuggle in new claims or defenses that have

15   been waived by the failure to raise them in a timely way is

16   unacceptable.  If the parties attempt to do that, it would not

17   be welcome.

18      So if your statement has some significance beyond the

19   fact that it's said, why don't you tell me.

20      MR. SNYDER:  Your Honor, I am afraid I am not

21   following your question.

22      THE COURT:  We have a joint pretrial order.

23      MR. SNYDER:  Yes.

24      THE COURT:  We have numerous rulings in the case.  You

25   now say:  Well, we filed an answer.  Does everything that you

o6analm3

1    say apply to our answer?

2            And the response to that is your answer was filed.

3    It's on the record.  But there is nothing in that answer that

4    can contradict what my prior rulings have been, what the joint

5    pretrial order is, what the parties have argued in their

6    requests to charge.

7            If you're trying to smuggle in a new defense, tell me.

8    And the plaintiffs will then have an opportunity to address

9    that and to explain, for example, why it's been waived in a new

10   answer filed on the day of trial.

11           MR. SNYDER:  Right.

12           THE COURT:  But if all you are doing is to say you

13   have filed the answer, yes, it's been filed.

14           MR. SNYDER:  Understood, your Honor.

15           MR. SCHWARTZ:  At the risk of prolonging this, just to

16   repeat something I said before, for reasons I don't understand,

17   Mr. Snyder filed an answer only on behalf of Mr. Sater and not

18   on behalf of his companies, Bayrock and Global Habitat

19   Solutions.

20           That's fine.  It is not going to affect the way that

21   we prosecute this trial.  I just want to be clear that they

22   don't think there is any significance to that.  We are not

23   going to come into some dispute later on that those entities

24   haven't answered.

25           MR. SNYDER:  Both of those entities are defunct and

o6analm3

1    have no operations.  However, if it causes anybody

2    consternation that I did not include them, I'm happy to include

3    them.  It makes no difference to me.

4                THE COURT:  You're representing them even if they're,

5    as you put it, defunct?

6                MR. SNYDER:  Yes.

7                THE COURT:  All right.

8                Mr. Kombol would want the plaintiffs to rush to file a

9    default against those defendants because they were not included

10   in the answer, but the plaintiff is perfectly prepared to go to

11   trial against those defendants.

12               MR. KOMBOL:  Your Honor, I have no opinion on his

13   clients and the procedure with them.

14               THE COURT:  I was about to say before you interrupted

15   that that required no response from you.

16               All right.  We will wait for the jury to be brought

17   up.

18               (Jury selection follows)

19

20

21

22

23

24

25