**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

September 9, 2024

**BY ECF**

Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *City of Almaty v. Sater,* 19-cv-2645 (JGK)(KHP)

Dear Judge Koeltl:

Defendant Felix Sater, together with Bayrock, GHS, and MeM, respectfully submits this Letter-Motion[1] in response to Plaintiffs' submissions dated August 30, 2024. Defendants request a conference with the Court and an Order:

1. Directing Plaintiffs to respond to the argument set forth in Defendants' July 24, 2024 letter (the ***July 24 Letter***, ECF 677).

2. Striking Plaintiffs' Proposed Judgment (the ***Proposed Judgment***, ECF 681-1) under Rule 11 as contrary to the Special Verdict Form returned by the jury on June 26, 2024 (the ***Jury Verdict***).

3. Striking Plaintiffs' Proposed Findings of Fact and Conclusions of Law (the ***Findings and Conclusions***, ECF 684-686) under Rule 11 as contrary to the Jury Verdict; and further, because they are unnecessary, unduly burdensome, and contrary to the Court's Order dated July 17, 2024.

4(a). Striking Plaintiffs' Motion for Contempt, Sanctions, and a Criminal Referral (the ***Contempt Motion***, ECF 686-688) under Rule 11 as without merit and calculated to harass.

      – or alternatively –

4(b). Granting Defendants leave to file a Rule 11 sanctions motion against Plaintiffs and promptly scheduling a hearing on both motions.

---

[1] This Letter-Motion is filed subject to our application to exceed the three-page limit set forth in Your Honor's Individual Practices.

Hon. John G. Koeltl
September 9, 2024
Page 2 of 14

**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

## BACKGROUND

### 1. Felix Sater Won the Trial

In 2013, Felix Sater sourced and managed an extremely successful real estate investment involving the Tri-County Mall, achieving a 521% IRR by turning $28.5 million into $43 million in three months.

Mr. Sater and his business partner, Ilyas Khraponov (*Ilyas*), had a disagreement over the Tri-County Mall sale proceeds. Mr. Sater, who mistrusted Ilyas, used "self help" to divert $36.5 million of the sale proceeds to an account that he controlled. Ilyas sued Mr. Sater and, shortly thereafter, they settled their lawsuit. Mr. Sater kept $16.5 million and sent $20 million back to Ilyas. They signed releases and parted ways.

Almost six years later, in March 2019, Plaintiffs filed this action alleging that the $16.5 million Mr. Sater received in 2013 was stolen and belonged to Almaty and/or BTA. Five years of litigation followed.

Shortly before our June 2024 trial, Mr. Sater, who is judgment-proof and in bankruptcy, filed an Offer of Judgment to accept a $20 million judgment (stricken for technical reasons) to avoid a lengthy trial. Mr. Sater later increased his offer to a $42 million judgment. Everyone acknowledged that Mr. Sater's offer was better than Plaintiffs' best-case-scenario at trial.

Plaintiffs rejected all settlement offers. They demanded a three-week trial.

They pursued a trial strategy of smearing Mr. Sater. They introduced Mr. Sater's criminal conviction for 30-year-old crimes without allowing Mr. Sater to tell the Jury about his extraordinary service to the U.S. government. They played a video deposition of Mr. Sater being trashed by his ex-wife Viktoria. They repeatedly showed the Jury decade-old emails identifying Mr. Sater as a senior advisor to Donald Trump.

Mr. Sater testified about his dispute with Ilyas. Mr. Sater told the Jury why he took the $36.5 million and why it was "rough justice" for him to keep $16.5 million.

The Jury agreed with Mr. Sater, rejecting 97% of Plaintiffs' claim.

Almaty, BTA, and the Republic of Kazakhstan (which calls the shots) have been humiliated on the world stage. They paid tens of millions of dollars waging a pointless five-year war against Mr. Sater that enriched only their lawyers. They came to New York to prove that Mr. Sater stole $16.5 million. They limped home with a $504,213 verdict against Mr. Sater that won't survive Rule 50.

Felix Sater is vindicated.

Hon. John G. Koeltl
September 9, 2024
Page 3 of 14



JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

### 2. Plaintiffs' Deafening Silence

Immediately following the Jury Verdict, *Bloomberg* published a misleading story entitled *Ex-Trump Associate Felix Sater Loses Money-Laundering Trial* in which Mr. Schwartz takes a victory lap, boasting of his $32 million verdict. The next day, because of the *Bloomberg* story, Mr. Sater lost a valuable deal.

But then – very weird – Boies Schiller went silent.

Usually a plaintiff who wins even a small verdict will quickly submit a proposed judgment. Yet days turned into weeks; not a word from Boies Schiller. They must have realized the problem and hoped to slip it past the Defendants and the Court. Finally on July 17, 2024, after three weeks of silence, the Court nudged the Plaintiffs, issuing a *sua sponte* order:

> After the jury returned its verdict on June 26, 2024, the Court gave the parties the opportunity to file post-verdict motions or ask for extensions of time to do so. See ECF No. 671, at 123. The Court also advised the parties that it would seek input into any judgment to be entered. See id. The parties have not requested any relief at this time.
>
> Therefore, the plaintiffs should file a proposed judgment by July 24, 2024, together with a supporting memorandum explaining why the proposed judgment is supported by the jury verdict and the relevant law. The defendants may file any counter-judgment and objections by July 31, 2024. The plaintiffs may reply by August 5, 2024.
>
> The Court reminds the parties that the Federal Rules of Civil Procedure provide strict time limits for post-judgment motions….

On July 23, 2024, Plaintiffs requested an adjournment, citing the size of the record.

Under these strange circumstances, and in an abundance of caution to avoid procedural default, Defendants filed our Notice of Motion on July 24, 2024 (***Notice of Motion***, ECF 676) to place on record our intended grounds for seeking post-trial relief.

JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

### 3.  **Defendants' July 24 Letter**

The same day, Defendants filed our July 24 Letter highlighting Defendants' position:

> The Jury Verdict in this case clearly establishes that Plaintiffs' claims for Conversion (against Sater) and Unjust Enrichment (against all Defendants) are time barred.
>
> In the Special Verdict Form, the jury was asked, with respect to each claim against each defendant: "What do you find was the earliest ascertainable date that the plaintiffs had a claim for _____ against Defendant _____?"
>
> In every instance, the Jury responded with a date in 2013.
>
> That means that the Conversion claim against Sater and the Unjust Enrichment claim against All Defendants were, as a matter of law, time-barred under the three-year statute of limitations that the Court instructed the Jury to apply.
>
> As the Special Verdict Form clearly demonstrates, the Jury disregarded the Court's instructions by answering in the negative the question:
>
> > *Do you find that Defendant Sater has proven by a preponderance of the evidence his affirmative defense of the statute of limitations, as that defense is defined for you in the Court's instructions?*
>
> The evidence at trial was undisputed: every challenged transaction happened in 2013. The Court may recall, during my cross-examination of Mr. Schectman, I was careful to walk through each challenged payment and establish that each occurred in 2013.
>
> Having incorrectly found that the Statute of Limitations did not bar Plaintiffs' claims for Conversion and Unjust Enrichment, the Jury then followed the instructions and skipped the next question, which concerned Equitable Tolling.
>
> Faced with a Jury Verdict that clearly established our Statute of Limitations defense, the Plaintiffs had every opportunity to ask the Court to send the Jury back to decide upon Equitable Tolling. Plaintiffs instead allowed the Jury to be discharged without making a determination on that issue.



JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

> When the smoke clears, at the absolute maximum, the Plaintiffs' only
> potentially surviving claims will be for Money Had and Received.
> Everything else is time-barred without a finding of equitable tolling.

On July 30, 2024, the Court directed Plaintiffs to respond to the July 24 Letter, which Plaintiffs never did. (ECF 678.)

We met and conferred with Boies Schiller on July 31, 2024 and agreed to file our post-trial submissions on August 30, 2024. (ECF 679.) For five weeks, we waited on the edge of our seats: *How would Boies Schiller respond to our July 24 Letter?*

### 4. <u>Boies Schiller Submits a Bad-Faith Proposed Judgment</u>

Plaintiffs' August 30, 2024 submissions, remarkably, ignore our July 24 Letter.

Plaintiffs did not submit a "memorandum explaining why the proposed judgment is supported by the jury verdict and the relevant law" as the Court ordered on July 17, 2024. The reason is clear.

The Jury Verdict and applicable law cannot support the defective Proposed Judgment that Plaintiffs submitted on August 30, 2024.

Instead of a memorandum, Plaintiffs submitted an improper and gratuitous 76-page set of Proposed Findings & Conclusions with 259 paragraphs of self-serving assertions. The Findings & Conclusions, in turn, incorporate a whopping 57 trial exhibits and transcripts. Despite the excessive length, the Proposed Findings & Conclusions –

- never mention Defendants' July 24 Letter.

- never mention "equitable tolling" or "equitable estoppel."

- mention only once, *en passant*, on page 71, our Statute of Limitations defense; *see id.* at ¶ 245 ("The jury expressly rejected Sater's defense of release, and it also expressly rejected the Defendants' statute of limitations defense.").

- never explain how the Court can enter judgment (i) in a case filed in March 2019; (ii) for claims with a three-year statute of limitations; (iii) that accrued in 2013; (iv) with no jury finding of equitable tolling.

In the wee hours the next morning, August 31, 2024, Plaintiffs filed a Motion For Contempt, Sanctions, and Criminal Referral against Mr. Sater and his counsel (the ***Contempt Motion***). The Contempt Motion is sour grapes from defeated opponents who lost on the merits. We address it separately at the end of this letter.

Hon. John G. Koeltl
September 9, 2024
Page 6 of 14



JOHN H. SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

## ARGUMENT

### 1. Plaintiffs Must Respond To Our July 24 Letter

Plaintiffs have never responded to our July 24 Letter, despite the Court's order of July 30, 2024 directing that "[t]he plaintiffs should respond to the defendants' July 24, 2024 letter…by July 31, 2024."

Plaintiffs' August 30, 2024 submissions continue to ignore our July 24 Letter. Instead, Plaintiffs submit a Proposed Judgment that asks the Court to enter judgment for Plaintiffs on Conversion and Unjust Enrichment claims that are time-barred.

We are litigating in parallel universes. Plaintiffs should respond substantively to the argument in our July 24 Letter.

### 2. The Proposed Judgment and Proposed Findings & Conclusions Must Be Stricken

The Court should strike the Proposed Findings & Conclusions because (a) they are unnecessary; (b) they invite the Court to commit legal error; (c) they are contrary to the Court's order of July 17; and (d) they impose an enormous burden on Defendants and the Court.

#### a. The Findings & Conclusions Are Unnecessary

Plaintiffs' Proposed Findings & Conclusions are unnecessary.

Plaintiffs filed the Proposed Findings & Conclusions on the pretense of preemptively addressing Defendants' affirmative defenses of Unclean Hands and *In Pari Delicto*. However, as Defendants' Memorandum in Support of our Rule 50 motion (***Rule 50 Brief***, ECF 685) indicates, we are not asking the Court to rule upon Unclean Hands or *In Pari Delicto* or make any findings of fact or conclusions of law regarding them.

Plaintiffs are trying to "jam in" these Findings & Conclusions and use them as a vehicle to manufacture support for their Proposed Judgment, which is not supported by the Jury Verdict.

#### b. The Findings & Conclusions Invite Clear Legal Error

Plaintiffs' Findings & Conclusions invite the Court to commit legal error. Among other things, Plaintiffs ask the Court to (i) enter Final Judgment for Plaintiffs on time-barred claims; (ii) retroactively alter the Jury Instructions to allow for double-counting of damages; and (iii) enter an illogical and clearly erroneous $20 million punitive damages award.

Hon. John G. Koeltl
September 9, 2024
Page 7 of 14



**JOHN H. SNYDER** | 157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

     **i.**   **The Court Must Not Enter Judgment for Plaintiffs on Time-Barred Claims**

     The Findings & Conclusions address Defendants' statute of limitations defense only once, saying: "The jury expressly rejected Sater's defense of release, and it also expressly rejected the Defendants' statute of limitations defense." (*Id.* at ¶ 245.)

     As explained in our July 24 Letter, the Jury disregarded the Court's instructions to apply a three-year statute of limitations for Conversion and Unjust Enrichment.

     The Findings & Conclusions would have the Court defer to the Jury's legally erroneous conclusion that the Conversion and Unjust Enrichment claims accrued in 2013 but were somehow timely filed in 2019. *See* Rule 50 Brief at 4-9.

     **ii.**   **The Court Must Not Double-Count (or Triple Count) Damages**

     The Court clearly instructed the Jury to award, with respect to each claim, the full amount of damages proven. Regarding the Conversion claim, the Court instructed the Jury:

> Damages for conversion are measured by the value of the property at the time the property was taken. ***On your verdict sheet, the amount of damage you indicate should be equal to that amount.*** The plaintiffs' claim for conversion seeks damages for the amount of allegedly misappropriated money traceable to the plaintiffs that Defendant Sater received. It is the plaintiffs' burden to prove this amount by a preponderance of the evidence.

The Court's instruction regarding the Unjust Enrichment and Money Had and Received claims was nearly identical:

> If you find for the plaintiffs on the unjust enrichment and/or money had and received claims, you must separately determine the amount of damages that should be awarded to plaintiffs on these claims. To do so, you must determine the amount of money rightfully belonging to the plaintiffs that the defendants knowingly received. The measure of damages for these claims is the value of the property, money, or benefit that the defendants received at the plaintiffs' expense. ***On your verdict sheet, the amount of damages you indicate should be equal to that amount.***

     Plaintiffs claimed at trial that Mr. Sater stole $16.5 million. They asserted three different legal theories for recovering this allegedly stolen money. The Jury awarded the same verdict for all three legal theories: $504,213.

Hon. John G. Koeltl
September 9, 2024
Page 8 of 14



**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

Under clearly established law, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery. *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995).

Paragraph 232 proposes that the Court adopt the following with regard to the damages award against Sater for Conversion:

> The jury's conclusion is amply supported by the record. Sater exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiffs and began receiving stolen funds as early as April 2, 2013. To cite just one example, Sater diverted over $36 million in stolen funds from the account of a Delaware-based Triadou subsidiary – Tri-County Mall Investors LLC – to a New York-based company with the same name – Tri-County Mall Investors LLC – that Sater himself owned and controlled exclusively. (See Findings of Fact ("FOF") ¶ 152.) ***The fact that the jury awarded less than the total amount of converted funds shows that the jury was following the Court's instructions to ensure that dollars were not double counted across claims.*** (See, e.g.,1753:9-11 ("Remember that the amount of damages that you award may not exceed the total amount of damages incurred by the plaintiffs."))

This is completely improper. Plaintiffs should not ask the Court to speculate about the reasons why the Jury might have chosen a particular damages figure.

It is particularly improper in this context, because Plaintiffs are asking the Court to assume (and find as a factual matter) that the Jury, contrary to its instructions, allocated its damage award across the various claims. The result would be *triple* damages against Mr. Sater and *double* damages against the other defendants. *See* Rule 50 Brief at 16-18.

### iii.   The Court Must Not Enter a Punitive Damages Award

In 2013, Mr. Sater retained $16.5 million in proceeds from the Tri-County Mall deal. Plaintiffs claimed that money was stolen. The Jury concluded that Mr. Sater was entitled to keep 97% of the allegedly stolen money.

The Proposed Findings & Conclusions attempt to justify the patently absurd $20 million punitive damages award (40 times the compensatory damages award), asserting: "Sater exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiffs and began receiving stolen funds as early as April 2, 2013."

This directly contradicts the Jury Verdict.



**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

The Jury found that Mr. Sater, in his 2013 settlement, received $504,213 too much. Mr. Sater could not have possibly known that a jury – 11 years later – would find that Mr. Sater's settlement with Ilyas was 3% too favorable. Even if the Conversion claim were timely (and it is not), the punitive damages is logically incompatible with the compensatory damages award. *See* Rule 50 Brief at 12-15.

### c. The Findings & Conclusions Violate the Court's Order

The Court's July 17, 2024 Order was simple: "file a proposed judgment…together with a supporting memorandum explaining why the proposed judgment is supported by the jury verdict and the relevant law."

Plaintiffs never submitted a "supporting memorandum" because the Jury Verdict does not support entry of judgment for Plaintiffs on either the Conversion or the Unjust Enrichment claims.

Instead, Plaintiffs submitted their defective Proposed Judgment and 76-page Proposed Findings & Conclusions, which is contrary to the Court's Order.

### d. The Findings & Conclusions Impose A Massive Burden on Defendants and the Court

Many of the Proposed Findings & Conclusions are seriously misleading if not outright false. They should not be given the imprimatur of the Court or future *res judicata* effect.

Moreover, Defendants should not be required to respond in detail to 259 paragraphs, along with 57 exhibits and transcripts. This exercise is unnecessary and would be enormously burdensome.

### THE CONTEMPT MOTION

They might have called it: "The Cross Examination We Could Have Done."

In their "sour grapes" Contempt Motion, Boies Schiller attempts to re-litigate an issue already raised and addressed by the Court at sidebar on June 25, 2024 during Mr. Sater's testimony. It relates to the date of an audio recording that was never admitted into evidence.

### 1. Background & Context

Mr. Sater contended at trial that Plaintiffs released their claims against him under the Confidential Assistance Agreement dated June 12, 2015 (the *CAA*). The Release, by its terms, covered the "members" of Litco LLC.

Hon. John G. Koeltl
September 9, 2024
Page 10 of 14



JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

At trial, Defendants tried unsuccessfully to admit into evidence an email dated May 28, 2015 where Mr. Sater's lawyer, Robert Wolf, advised Almaty's attorneys at Latham & Watkins: "Felix Sater is the sole member of Litco LLC."[2] The document was filed in the *Triadou* case by Mr. Schwartz.

Plaintiffs presented only one witness, Ms. Nartay (of BTA), who testified that Plaintiffs did not know that the CAA would release Mr. Sater. She claimed that Plaintiffs would never have released Mr. Sater because he stole $16.5 million from them (which the Jury found was not true).

On cross-examination, Ms. Nartay was forced to admit that she was not involved in the negotiation or execution of the CAA and had no personal knowledge. The only witnesses with personal knowledge of the negotiations of the CAA were Mr. Wolf and Mr. Sater. Nobody from the City of Almaty testified regarding its knowledge of the CAA, nor did anyone from the Republic of Kazakhstan.[3]

During my cross-examination of Ms. Nartay, the Court abruptly called counsel to sidebar. The Court rebuked Mr. Schwartz for attempting to visually signal to Ms. Nartay how she should answer my questions.

Mr. Schwartz's coaching tainted Ms. Nartay's testimony. Her coached testimony was the only evidence that the Jury could have relied upon to find that Plaintiffs' claims were not released.

The May 28, 2015 email proves that Almaty knew that Mr. Sater owned Litco. On this point, Mr. Sater's testimony was clearly correct; Ms. Nartay's coached testimony to the contrary was not accurate.

Mr. Sater testified at trial that he met with Peder Garske of Arcanum (agent for Almaty, BTA, and the Republic of Kazakhstan) on June 5, 2015 and discussed in detail how he could help with the Ablyazov asset recovery effort.

The purpose of Sater's testimony was to reinforce the indisputably correct point that Plaintiffs knew that Litco was owned by Mr. Sater before they signed the CAA. He referred to an audio recording he had made of the meeting, which he used to confirm his recollection.

---

[2]   Case No. 15-cv-05345-JGK-KHP, ECF 1237-1 at 10.

[3]   Peder Garske of Arcanum was present at the meeting. Although Garske is deceased, Arcanum's records might have resolved the confusion over the date. Plaintiffs were afraid to call Arcanum as a witness because Defendants would have cross-examined Arcanum on a particular FBI 302 showing that Arcanum provided a report about Mr. Sater to Christopher Steele in connection with purported "Russia Collusion." The circumstances suggest bad faith and ulterior motives.



**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

Plaintiffs jumped up and objected.

At sidebar, Boies Schiller angrily accused Mr. Sater of perjury and me of sponsoring perjured testimony. They had a binder of documents they said proved that the audio recording was from July 8, 2015 rather than June 5, 2015.

The Court explained at sidebar that Plaintiffs' remedy was to cross-examine Mr. Sater.

At a break shortly after Mr. Zach accused me of suborning perjury, I confronted Mr. Zach and told him it was bush league to make such accusations without raising them with me first.

I explained to Mr. Zach that Mr. Sater had carefully reviewed the audio recording and identified specific substantive aspects of the recording that convinced him that the recording was from June and not July. I encouraged Mr. Zach to play the recording to the Jury, allow Mr. Sater to explain why he believed the meeting was from June 5, and cross-examine Mr. Sater about it.

Mr. Sater fully expected to be cross-examined on this point. Mr. Sater brought to court a USB memory stick containing the audio recording and was ready to explain why the recording was from June 5. The Court may recall, Mr. Zach had to ask the Court to instruct Mr. Sater to stop waving his USB memory stick in front of the Jury. Mr. Sater was practically begging Mr. Zach to ask him about the audio recording.

Mr. Zach focused his cross-examination on other topics.

2. **The Court Should Strike Plaintiffs' Contempt Motion**

   a. **Plaintiffs Fail to Establish Falsity**

Plaintiffs' Contempt Motion does not remotely establish that Mr. Sater's trial testimony was false.

The May 28, 2015 email referenced above proves that Almaty knew that Mr. Sater was the sole owner of Litco.

Moreover, the CAA called for Litco to be paid at least $1.2 million plus 16% of potentially billions of dollars of recoveries. The Republic of Kazakhstan, Almaty, and BTA would not have entered into the CAA without some understanding of who was behind Litco. Ms. Nartay's coached testimony to the contrary beggars belief.

The Contempt Motion, at most, demonstrates conflicting evidence regarding the date of an audio recording from nine years ago that was never admitted into evidence. Mr. Sater's overall point (i.e., that Plaintiffs knew that Litco was owned by Mr. Sater) was clearly correct and supported by other evidence and testimony (and common sense).



JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

Plaintiffs refer to Mr. Sater's earlier deposition testimony, where he said that the recording was made in July 2015. However, this does not prove that Sater's trial testimony was false. His earlier testimony could have been mistaken. This could have been explored on cross-examination.

Mr. Sater waved the USB memory stick in front of the Jury hoping Mr. Zach would cross-examine him about it. Mr. Sater wanted to explain why the recording was from June.

Mr. Zach ran away from the fight.

### b.  Plaintiffs Fail to Establish Intent

The conduct of Mr. Sater and his counsel bespeaks good faith.

Defendants attempted to offer the audio recording into evidence so that Mr. Sater could explain why he believed the recording was from June 5, 2015. Mr. Sater came to court with a USB memory stick, hoping to be asked about the audio recording.

Shortly after the trial, on June 29, 2024, I sent a personal note to Mr. Zach. Because it was intended to be private, I have not attached it. However, I will quote one sentence that is relevant for our purposes:

> Sorry for going a little "beast mode" on Tuesday. Now you see why I got out of lawyering; I much prefer being nice. If you want, we can sit down together with a bottle of scotch (settlement purposes only), listen to the tape, and I believe you'll agree it was from before the CAA was signed.

My email to Mr. Zach was sent in a friendly spirit following a long and difficult trial. I care about my personal reputation. I have great respect for Mr. Zach as a lawyer. I specifically reached out to Mr. Zach, invited him for a drink, and offered to listen to the audio together. Mr. Zach ignored my message. The circumstances are consistent with good faith.

### c.  The Challenged Testimony Did Not Affect the Verdict

It is worth noting that the challenged testimony had no impact on the Jury Verdict.

Defendants' purpose for offering testimony about the June 5, 2015 meeting was to establish our defense of Release, which was unsuccessful. Assuming *arguendo* that Mr. Sater's recollection of the date of the recording was in error, the Jury did not rely upon it.

On the other hand, Mr. Schwartz's improper coaching of Ms. Nartay's testimony did affect the Jury Verdict. The Jury clearly (and we believe erroneously) relied upon Ms. Nartay's coached testimony in finding the claims were not released.

JOHN H.
SNYDER

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

**3.  In the Alternative, Defendants Should Be Allowed to File Our
    Own Rule 11 Motion Against Boies Schiller**

Defendants prefer not to litigate Rule 11 issues. However, if the Court is inclined to allow
Plaintiffs' Contempt Motion to proceed, Defendants must be allowed to respond with our own
meritorious Rule 11 motion.

**a.  Boies Schiller Filed the Proposed Judgment Without a
    Good Faith Basis**

On August 30, 2024, Mr. Schwartz signed a letter asking Your Honor to enter the
Proposed Judgment (ECF 681) knowing that their Conversion and Unjust Enrichment claims are
time-barred under the Jury Verdict.

In submitting the Proposed Judgment, Plaintiffs never explain how the Court can enter
judgment (i) in a case filed in March 2019; (ii) for claims with a three-year statute of limitations;
(iii) that accrued in 2013; (iv) with no jury finding of equitable tolling.

It was sanctionable for Boies Schiller to file their Proposed Judgment without a good
faith basis.

**b.  Mr. Schwartz Got Caught Giving Signals to Ms. Nartay**

In the middle of my cross-examination of Ms. Nartay, the Court stopped the proceedings
and called counsel to sidebar.

Your Honor dressed down Mr. Schwartz. As Your Honor noted on the record, Mr.
Schwartz was visually signaling to Ms. Nartay how to answer my questions. I could not see from
my vantage point, but judging from Your Honor's reaction in the moment, Mr. Schwartz must
have been quite brazen about it.

It was sanctionable – and utterly hilarious – for Mr. Schwartz to get caught sending
signals to the struggling Ms. Nartay in the middle of her cross-examination.

It is not my practice to burden the Court with Rule 11 motions. I never asked the Court to
sanction Mr. Schwartz or Ms. Nartay for sending signals during my cross-examination, even
though there was no dispute that it happened. Instead, I came to court the next day bearing a gift
for Ms. Nartay: an official replica Jose Altuve game jersey from the 2019 World Series.

When an opponent does something unethical – such as giving signals to witnesses, or
submitting a bad faith Proposed Judgment – they mark themselves as losers. The best response is
not to file a Rule 11 motion. The best response is to beat them on the merits.

Hon. John G. Koeltl
September 9, 2024
Page 14 of 14

**JOHN H. SNYDER**

157 East 81st Street, Suite 3A
New York, NY 10028
917.292.3081
john@jhs.nyc

Nevertheless, if the Court is inclined to let the sore losers at Boies Schiller hurl their frivolous Rule 11 motions, Defendants must be allowed to respond (reluctantly) with our meritorious ones.

**CONCLUSION**

Based upon the foregoing, Defendants request that the Court schedule a conference to discuss the above.

Respectfully,

John H. Snyder