UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

    Plaintiffs,

        -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,

    Defendants.

19 Civ. 2645 (GJK) (KHP)

---

# MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PROPOSED JUDGMENT

Dated:   New York, New York
           September 30, 2024

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel: (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.
Brendan C. Kombol, Esq
Kombol Law Group, P.C.
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*

**PRELIMINARY STATEMENT**

Defendants submit this Memorandum in opposition to Plaintiffs' Proposed Judgment (***Proposed Judgment***) which incorporates by reference Plaintiffs' Findings of Fact and Conclusions of Law (***Proposed Findings & Conclusions***), both submitted on August 30, 2024.

The Court should reject the Proposed Judgment and Proposed Findings & Conclusions for the reasons set forth below.

The Court will note that many of the arguments discussed below are also covered in our Rule 50 motion, which is being briefed in parallel. This brief is intentionally summary in nature. We will argue the case law comprehensively in our reply brief on our Rule 50 motion, once we have had the benefit of seeing Plaintiffs' opposition brief.

**THE VERDICT**

In 2013, Felix Sater sourced and managed an extremely successful real estate investment involving the Tri-County Mall, achieving a 521% IRR by turning $28.5 million into $43 million in three months.

Mr. Sater and his business partner, Ilyas Khraponov (***Ilyas***), had a disagreement over the Tri-County Mall sale proceeds. Mr. Sater, who mistrusted Ilyas, used "self help" to divert $36.5 million of the sale proceeds to an account that he controlled. Ilyas sued Mr. Sater and, shortly thereafter, they settled their lawsuit. Mr. Sater kept $16.5 million and sent $20 million back to Ilyas. They signed releases and parted ways.

Almost six years later, in March 2019, Plaintiffs filed this action alleging that the $16.5 million Mr. Sater received in 2013 was stolen and belonged to Almaty and/or BTA. Five years of litigation followed.

1

Plaintiffs pursued a trial strategy of smearing Mr. Sater. They introduced Mr. Sater's criminal conviction for 30-year-old crimes without allowing Mr. Sater to tell the Jury about his extraordinary service to the U.S. government. They played a video deposition of Mr. Sater being trashed by his ex-wife Viktoria. They repeatedly showed the Jury decade-old emails identifying Mr. Sater as a senior advisor to Donald Trump.

Mr. Sater testified about his dispute with Ilyas. Mr. Sater told the Jury why he took the $36.5 million and why it was "rough justice" for him to keep $16.5 million. The Jury agreed with Mr. Sater, rejecting 97% of Plaintiffs' claim.

Almaty, BTA, and the Republic of Kazakhstan (which calls the shots) have been humiliated on the world stage. They paid tens of millions of dollars waging a pointless five-year war against Mr. Sater that enriched only their lawyers. They came to New York to prove that Mr. Sater stole $16.5 million. They limped home with a $504,213 verdict against Mr. Sater that won't survive Rule 50.

Felix Sater is vindicated.

## POST-VERDICT

Defendants filed a letter on July 24, 2024 (the ***July 24 Letter***) stating Defendants' position:

> The Jury Verdict in this case clearly establishes that Plaintiffs' claims for Conversion (against Sater) and Unjust Enrichment (against all Defendants) are time barred.
>
> In the Special Verdict Form, the jury was asked, with respect to each claim against each defendant: "What do you find was the earliest ascertainable date that the plaintiffs had a claim for _____ against Defendant _____?"
>
> In every instance, the Jury responded with a date in 2013.

2

> That means that the Conversion claim against Sater and the Unjust Enrichment claim against All Defendants were, as a matter of law, time-barred under the three-year statute of limitations that the Court instructed the Jury to apply.
>
> As the Special Verdict Form clearly demonstrates, the Jury disregarded the Court's instructions by answering in the negative the question:
>
> *Do you find that Defendant Sater has proven by a preponderance of the evidence his affirmative defense of the statute of limitations, as that defense is defined for you in the Court's instructions?*
>
> The evidence at trial was undisputed: every challenged transaction happened in 2013. The Court may recall, during my cross-examination of Mr. Schectman, I was careful to walk through each challenged payment and establish that each occurred in 2013.
>
> Having incorrectly found that the Statute of Limitations did not bar Plaintiffs' claims for Conversion and Unjust Enrichment, the Jury then followed the instructions and skipped the next question, which concerned Equitable Tolling.
>
> Faced with a Jury Verdict that clearly established our Statute of Limitations defense, the Plaintiffs had every opportunity to ask the Court to send the Jury back to decide upon Equitable Tolling. Plaintiffs instead allowed the Jury to be discharged without making a determination on that issue.
>
> When the smoke clears, at the absolute maximum, the Plaintiffs' only potentially surviving claims will be for Money Had and Received. Everything else is time-barred without a finding of equitable tolling.

On July 30, 2024, the Court directed Plaintiffs to respond to the July 24 Letter, which Plaintiffs never did. (ECF 678.) We met and conferred with Boies Schiller on July 31, 2024 and agreed to file our post-trial submissions on August 30, 2024. (ECF 679.) For five weeks, we waited on the edge of our seats: *How would Boies Schiller respond to our July 24 Letter?*

Plaintiffs' August 30, 2024 submissions, remarkably, ignore our July 24 Letter. Plaintiffs did not submit a "memorandum explaining why the proposed judgment is supported by the jury verdict and the relevant law" as the Court ordered on July 17, 2024. The reason is clear. The

3

Jury Verdict and applicable law cannot support the defective Proposed Judgment that Plaintiffs submitted on August 30, 2024.

Instead of a memorandum, Plaintiffs submitted an improper and gratuitous 76-page set of Proposed Findings & Conclusions with 259 paragraphs of self-serving assertions. The Findings & Conclusions, in turn, incorporate a whopping 57 trial exhibits and transcripts. Despite the excessive length, the Proposed Findings & Conclusions:

- never mention Defendants' July 24 Letter.
- never mention "equitable tolling" or "equitable estoppel."
- mention only once, *en passant*, on page 71, our Statute of Limitations defense; *see id.* at ¶ 245 ("The jury expressly rejected Sater's defense of release, and it also expressly rejected the Defendants' statute of limitations defense.").
- never explain how the Court can enter judgment (i) in a case filed in March 2019; (ii) for claims with a three-year statute of limitations; (iii) that accrued in 2013; (iv) with no jury finding of equitable tolling.

## I. The Findings & Conclusions Are Unnecessary

Plaintiffs' Proposed Findings & Conclusions are unnecessary.

Plaintiffs filed the Proposed Findings & Conclusions on the pretense of preemptively addressing Defendants' affirmative defenses of Unclean Hands and *In Pari Delicto*. However, as Defendants' Memorandum in Support of our Rule 50 motion (**Rule 50 Brief**, ECF 685) indicates, we are not asking the Court to rule upon Unclean Hands or *In Pari Delicto* or make any findings of fact or conclusions of law regarding them. Plaintiffs are trying to "jam in" these Findings & Conclusions and use them as a vehicle to manufacture support for their Proposed Judgment, which is not supported by the Jury Verdict.

## II. The Findings & Conclusions Invite Clear Legal Error

Plaintiffs' Findings & Conclusions invite the Court to commit legal error. Among other things, Plaintiffs ask the Court to (i) enter Final Judgment for Plaintiffs on time-barred claims; (ii) retroactively alter the Jury Instructions to allow for double-counting of damages; and (iii) enter an illogical and clearly erroneous $20 million punitive damages award.

### A. The Court Must Not Enter Judgment for Plaintiffs on Time-Barred Claims

The Findings & Conclusions address Defendants' statute of limitations defense only once, saying: "The jury expressly rejected Sater's defense of release, and it also expressly rejected the Defendants' statute of limitations defense." (*Id.* at ¶ 245.)

As explained in our July 24 Letter, the Jury disregarded the Court's instructions to apply a three-year statute of limitations for Conversion and Unjust Enrichment. The Findings & Conclusions would have the Court defer to the Jury's legally erroneous conclusion that the Conversion and Unjust Enrichment claims accrued in 2013 but were somehow timely filed in 2019. *See* Rule 50 Brief at 4-9.

5

B.  **The Court Must Not Double-Count (or Triple Count) Damages**

At the conference on September 18, 2024, Your Honor speculated about the Jury's thought process. In particular, Your Honor noted the fact that the Jury made awards of 50% of the amount requested on each of the claims against GHS, Bayrock, and MeM and asserted that the Jury intended to apportion the award across the claims.

Respectfully, the Court should not be engaging in speculation regarding what the Jury might have been thinking. Plaintiffs asked the Jury to award $16.5 million against Mr. Sater. The Jury awarded $504,213 on all three claims – rejecting the vast majority of Plaintiffs' claim. From Defendants' perpective, the Jury followed the Court's instructions and gave Plaintiffs 3% of what they were seeking from Sater and 50% of what they were seeking from GHS, Bayrock, and MeM.

The Court clearly instructed the Jury to award, with respect to each claim, the full amount of damages proven. Regarding the Conversion claim, the Court instructed the Jury:

> Damages for conversion are measured by the value of the property at the time the property was taken. ***On your verdict sheet, the amount of damage you indicate should be equal to that amount.*** The plaintiffs' claim for conversion seeks damages for the amount of allegedly misappropriated money traceable to the plaintiffs that Defendant Sater received. It is the plaintiffs' burden to prove this amount by a preponderance of the evidence.

The Court's instruction regarding the Unjust Enrichment and Money Had and Received claims was nearly identical:

> If you find for the plaintiffs on the unjust enrichment and/or money had and received claims, you must separately determine the amount of damages that should be awarded to plaintiffs on these claims. To do so, you must determine the amount of money rightfully belonging to the plaintiffs that the defendants knowingly received. The measure of damages for these claims is the value of the property, money, or benefit that the defendants received at the plaintiffs' expense. ***On your verdict***

6

> *sheet, the amount of damages you indicate should be equal to that amount.*

Plaintiffs claimed at trial that Mr. Sater stole $16.5 million. They asserted three different legal theories for recovering this allegedly stolen money. The Jury awarded the same verdict for all three legal theories: $504,213. Under clearly established law, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery. *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995).

Paragraph 232 proposes that the Court adopt the following with regard to the damages award against Sater for Conversion:

> The jury's conclusion is amply supported by the record. Sater exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiffs and began receiving stolen funds as early as April 2, 2013. To cite just one example, Sater diverted over $36 million in stolen funds from the account of a Delaware-based Triadou subsidiary – Tri-County Mall Investors LLC – to a New York-based company with the same name – Tri-County Mall Investors LLC – that Sater himself owned and controlled exclusively. (See Findings of Fact ("FOF") ¶ 152.) ***The fact that the jury awarded less than the total amount of converted funds shows that the jury was following the Court's instructions to ensure that dollars were not double counted across claims.*** (See, e.g.,1753:9-11 ("Remember that the amount of damages that you award may not exceed the total amount of damages incurred by the plaintiffs."))

This is completely improper. Plaintiffs should not ask the Court to speculate about the reasons why the Jury might have chosen a particular damages figure. It is particularly improper in this context, because Plaintiffs are asking the Court to assume and find as a factual matter that the Jury disregarded the Court's instructions.

Plaintiffs had every opportunity to review the Special Verdict Form. If Plaintiffs believed that the Jury had incorrectly allocated its award across the various claims, then Plaintiffs' remedy was to have the Court re-instruct the Jury on this point and make certain that the Jury's verdict was unambiguous and consistent with the Court's instructions.

7

### C. The Court Must Not Enter a Punitive Damages Award

In 2013, Mr. Sater retained $16.5 million in proceeds from the Tri-County Mall deal. Plaintiffs claimed that money was stolen. The Jury concluded that Mr. Sater was entitled to keep 97% of the allegedly stolen money.

The Proposed Findings & Conclusions attempt to justify the patently absurd $20 million punitive damages award (40 times the compensatory damages award), asserting: "Sater exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiffs and began receiving stolen funds as early as April 2, 2013."

This directly contradicts the Jury Verdict.

The Jury found that Mr. Sater, in his 2013 settlement, received $504,213 too much. Mr. Sater could not have possibly known that a jury – 11 years later – would find that Mr. Sater's settlement with Ilyas was 3% too favorable. Even if the Conversion claim were timely (and it is not), the punitive damages is logically incompatible with the compensatory damages award. *See* Rule 50 Brief at 12-15.

8

**CONCLUSION**

Based upon the foregoing, and based upon our Rule 50 Motion briefing that covers many of the same issues, the Court should reject the Proposed Judgment and Proposed Findings & Conclusions.

Dated:    New York, New York
            September 30, 2024

By: _____
     John H. Snyder

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel: (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.

Brendan C. Kombol, Esq
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*

9