UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>       Plaintiffs,<br><br>          -against-<br><br>FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,<br><br>       Defendants. | 19 Civ. 2645 (GJK) (KHP) |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CONTEMPT MOTION

Dated:    New York, New York
           October 11, 2024

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel:  (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.
Brendan C. Kombol, Esq
Kombol Law Group, P.C.
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*

Defendants submit this Memorandum in opposition to Plaintiffs' Motion for Contempt, Sanctions, and Criminal Referral (**Contempt Motion**) (ECF 686). Defendants previously addressed the Contempt Motion in our letter dated September 9, 2024 (ECF 689), which was followed by a conference with the Court on September 18, 2024.

## Background & Context

Mr. Sater contended at trial that Plaintiffs released their claims against him under the Confidential Assistance Agreement dated June 12, 2015 (the **CAA**). The Release, by its terms, covered the "members" of Litco LLC.

At trial, Defendants tried unsuccessfully to admit into evidence an email dated May 28, 2015 where Mr. Sater's lawyer, Robert Wolf, advised Almaty's attorneys at Latham & Watkins: "Felix Sater is the sole member of Litco LLC." The document was filed in the *Triadou* case by Mr. Schwartz.

Plaintiffs presented only one witness, Ms. Nartay (of BTA), who testified that Plaintiffs did not know that the CAA would release Mr. Sater. She claimed that Plaintiffs would never have released Mr. Sater because he stole $16.5 million from them (which the Jury found was not true).

On cross-examination, Ms. Nartay was forced to admit that she was not involved in the negotiation or execution of the CAA and had no personal knowledge. The only witnesses with personal knowledge of the negotiations of the CAA were Mr. Wolf and Mr. Sater. Nobody from the City of Almaty testified regarding its knowledge of the CAA, nor did anyone from the Republic of Kazakhstan.

During my cross-examination of Ms. Nartay, the Court abruptly called counsel to sidebar. The Court rebuked Mr. Schwartz for attempting to visually signal to Ms. Nartay how she should answer my questions.

Mr. Schwartz's coaching tainted Ms. Nartay's testimony. Her coached testimony was the only evidence that the Jury could have relied upon to find that Plaintiffs' claims were not released.

The May 28, 2015 email proves that Almaty knew that Mr. Sater owned Litco. On this point, Mr. Sater's testimony was clearly correct; Ms. Nartay's coached testimony to the contrary was not accurate.

Mr. Sater testified at trial that he met with Peder Garske of Arcanum (agent for Almaty, BTA, and the Republic of Kazakhstan) on June 5, 2015 and discussed in detail how he could help with the Ablyazov asset recovery effort.

The purpose of Sater's testimony was to reinforce the indisputably correct point that Plaintiffs knew that Litco was owned by Mr. Sater before they signed the CAA. He referred to an audio recording he had made of the meeting, which he used to confirm his recollection.

Plaintiffs jumped up and objected.

At sidebar, Boies Schiller angrily accused Mr. Sater of perjury and me of sponsoring perjured testimony. They had a binder of documents they said proved that the audio recording was from July 8, 2015 rather than June 5, 2015. The Court explained at sidebar that Plaintiffs' remedy was to cross-examine Mr. Sater.

At a break shortly after Mr. Zach accused me of suborning perjury, I confronted Mr. Zach and told him it was bush league to make such accusations without raising them with me first.

I explained to Mr. Zach that Mr. Sater had carefully reviewed the audio recording and identified specific substantive aspects of the recording that convinced him that the recording was from June and not July. I encouraged Mr. Zach to play the recording to the Jury, allow Mr. Sater to explain why he believed the meeting was from June 5, and cross-examine Mr. Sater about it.

Mr. Sater fully expected to be cross-examined on this point. Mr. Sater brought to court a USB memory stick containing the audio recording and was ready to explain why the recording was from June 5. The Court may recall, Mr. Zach had to ask the Court to instruct Mr. Sater to stop waving his USB memory stick in front of the Jury. Mr. Sater was practically begging Mr. Zach to ask him about the audio recording.

Mr. Zach focused his cross-examination on other topics.

## The Court Should Deny Plaintiffs' Contempt Motion

### I.    Plaintiffs Fail to Establish Falsity

Plaintiffs' Contempt Motion does not remotely establish that Mr. Sater's trial testimony was false.

The May 28, 2015 email referenced above proves that Almaty knew that Mr. Sater was the sole owner of Litco. Moreover, the CAA called for Litco to be paid at least $1.2 million plus 16% of potentially billions of dollars of recoveries. The Republic of Kazakhstan, Almaty, and BTA would not have entered into the CAA without some understanding of who was behind Litco. Ms. Nartay's coached testimony to the contrary beggars belief.

The Contempt Motion, at most, demonstrates conflicting evidence regarding the date of an audio recording from nine years ago that was never admitted into evidence. Mr. Sater's overall point (i.e., that Plaintiffs knew that Litco was owned by Mr. Sater) was clearly correct and supported by other evidence and testimony (and common sense).

Plaintiffs refer to Mr. Sater's earlier deposition testimony, where he said that the recording was made in July 2015. However, this does not prove that Sater's trial testimony was false. His earlier testimony could have been mistaken. This could have been explored on cross-examination.

Mr. Sater waved the USB memory stick in front of the Jury hoping Mr. Zach would cross-examine him about it. Mr. Sater wanted to explain why the recording was from June. Mr. Zach ran away from the fight.

Obviously, Mr. Sater and counsel were aware of conflicting testimony regarding the date of the recording, and that Mr. Sater had previously indicated his belief that the recording was from July, not June. Mr. Sater was ready to address questions on that topic if Mr. Zach had asked them.

## II.    Plaintiffs Fail to Establish Intent

The conduct of Mr. Sater and his counsel bespeaks good faith.

Defendants attempted to offer the audio recording into evidence so that Mr. Sater could explain why he believed the recording was from June 5, 2015. Mr. Sater came to court with a USB memory stick, hoping to be asked about the audio recording.

Shortly after the trial, on June 29, 2024, I sent a personal note to Mr. Zach. Because it was intended to be private, I have not attached it. However, I will quote one sentence that is relevant for our purposes:

> Sorry for going a little "beast mode" on Tuesday. Now you see why I got out of lawyering; I much prefer being nice. If you want, we can sit down together with a bottle of scotch (settlement purposes only), listen to the tape, and I believe you'll agree it was from before the CAA was signed.

My email to Mr. Zach was sent in a friendly spirit following a long and difficult trial. I care about my personal reputation. I have great respect for Mr. Zach as a lawyer. I specifically reached out to Mr. Zach, invited him for a drink, and offered to listen to the audio together. Mr. Zach ignored my message. The circumstances are consistent with good faith.

**III.    The Challenged Testimony Did Not Affect the Verdict**

It is worth noting that the challenged testimony had no impact on the Jury Verdict.

Defendants' purpose for offering testimony about the June 5, 2015 meeting was to establish our defense of Release, which was unsuccessful. Assuming *arguendo* that Mr. Sater's recollection of the date of the recording was in error, the Jury did not rely upon it.

On the other hand, Mr. Schwartz's improper coaching of Ms. Nartay's testimony did affect the Jury Verdict. The Jury clearly (and we believe erroneously) relied upon Ms. Nartay's coached testimony in finding the claims were not released.

## **CONCLUSION**

Plaintiffs' Contempt Motion should be denied.


Dated:     New York, New York
           October 11, 2024



By: _____
            John H. Snyder

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel:  (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.

Brendan C. Kombol, Esq
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*