UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK, JSC,

                    Plaintiffs,

    -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,

                    Defendants.

19 Civ. 2645 (JGK) (KHP)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PLAINTIFFS' PROPOSED JUDGMENT</u>**

 

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs City of Almaty,
Kazakhstan and BTA Bank, JSC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    The Court Should Enter Plaintiffs' Proposed Judgment. ................................................... 1

        A.    Defendants' Statute of Limitations Argument Fails ............................................. 1

        B.    The Jury Did Not "Double Count" Damages. ....................................................... 3

        C.    The Jury's Punitive Damages Award Was Appropriate ....................................... 4

    II.   Defendants Abandoned Their Affirmative Defenses of Unclean Hands and *In Pari Delicto* ................................................................................................................................ 6

    III.  Defendants May Not Raise New Arguments on Reply. ................................................... 6

CONCLUSION ............................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Cases**

*Am Bldg. Maint. Co. of Cal. Inc. v. Federation Bank & Trust Co.*,
    213 F. Supp. 412 (S.D.N.Y. 1963) ................................................................................... 2

*Blackledge v. Carlone*,
    126 F. Supp. 2d 224 (D. Conn. 2001) ............................................................................ 5

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996) ........................................................................................................ 5

*Day Vill. Ltd. P'ship v. CW Cap. L.L.C.*,
    No. 06CIV. 3424(LTS)(HBP), 2006 WL 2572118 (S.D.N.Y. Sept. 7, 2006) .................. 6

*Greenbaum v. Handelsbanken*,
    67 F. Supp. 2d 228 (S.D.N.Y. 1999) ............................................................................. 5

*Keawsri v. Ramen-Ya Inc.*,
    No. 17-CV-2406 (LJL), 2022 WL 3152572 (S.D.N.Y. Aug. 8, 2022) .......................... 6

*Knipe v. Skinner*,
    999 F.2d 708 (2d Cir. 1993) .......................................................................................... 6

*Scala v. Moore McCormack Lines, Inc.*,
    985 F.2d 680 (2d Cir. 1993) .......................................................................................... 5

*TXO Prod. Corp. v. All. Res. Corp.*,
    509 U.S. 443 (1993) ....................................................................................................... 5

*Van Vliet v. Kanter*,
    124 N.Y.S. 63 (1st Dep't 1910) ..................................................................................... 2

Plaintiffs respectfully submit this reply memorandum of law in further support of their Proposed Judgment, [ECF No. 681-1].

## PRELIMINARY STATEMENT

After a three-week trial, Plaintiffs prevailed on every claim. Based on overwhelming evidence, a jury found Felix Sater liable for conversion, and found Sater, Bayrock Group, Global Habitat Solutions, and MeM Energy Partners liable for unjust enrichment and money had and received. The jury carefully applied the Court's legal instructions and parsed the verdict form, awarding Plaintiffs non-duplicative damages on each claim against each Defendant, with additional punitive damages against Sater for his "especially shocking and offensive conduct." [Trial Tr. 1733:6-15 (Jury Charge)]. Defendants' attempts to resist entry of judgment reflecting the jury's verdict rest on a series of fundamentally flawed misinterpretations of the verdict form and should be rejected out of hand.

## ARGUMENT

### I. The Court Should Enter Plaintiffs' Proposed Judgment.

#### A. Defendants' Statute of Limitations Argument Fails.

Defendants fail to identify any flaw in Plaintiffs' Proposed Judgment, let alone a flaw that rises to the level of "legal error." [ECF No. 696 ("Opp.") at 5]. Defendants first argue that Plaintiffs' Proposed Judgment "would have the Court defer to the Jury's legally erroneous conclusion that the Conversion and Unjust Enrichment claims accrued in 2013 but were somehow timely filed in 2019." [*Id.*] This is the same non-sensical argument Defendants raised in their motion to vacate the verdict, again without citing any authority to support their position.

As Plaintiffs explained in their opposition to Defendants' motion to vacate the verdict, [*see* ECF No. 697 at 7-9], Defendants confuse the jury's factual determination of the "earliest ascertainable date that the plaintiffs had a claim," with the jury's entirely separate determination

1

that Defendants failed to prove their statute of limitations affirmative defense. [*See* Trial Tr. 1704:3-9 ("The verdict sheet will ask for the earliest ascertainable date on which the plaintiffs had a claim against each defendant. This has nothing to do with the statute of limitations. What this has to do with is how interest would be calculated.")].

As the jury was properly instructed, the "earliest ascertainable date" determines the date from when prejudgment interest begins to run under the N.Y. C.P.L.R. based on Defendants' conduct alone. [*See* Trial Tr. 1773:17-20]. In contrast, the statute of limitations begins to run when Plaintiffs learned or should have learned of Defendants' involvement in the massive fraud and money laundering scheme, which did not occur until years later. [*Id.* 1729:16-21]. These dates obviously do not need to be the same, and Defendants do not—and cannot—point to any evidence in the record that would suggest the jury got it wrong. The jury correctly applied the record to the Court's instructions—instructions that Defendants never objected to. *See generally Am Bldg. Maint. Co. of Cal. Inc. v. Federation Bank & Trust Co.*, 213 F. Supp. 412, 420 (S.D.N.Y. 1963) ("[I]t is not necessarily true" that the "period for which interest will be allowed" begins on the same date as "when the period of limitation upon the claim begins to run"); *Van Vliet v. Kanter*, 124 N.Y.S. 63, 64 (1st Dep't 1910) (noting the date of the "running of the statute of limitations" is "not decisive of the question now presented" of the date on which prejudgment interest begins to accumulate).

Indeed, the record is clear that the dates when Defendants first received stolen funds (the "earliest ascertainable dates") are not the same dates when Plaintiffs' causes of action accrued for statute of limitations purposes. Plaintiffs' claims first "existed" under C.P.L.R. § 5001(b) when Defendants began receiving stolen funds in 2013 and thereby profited from their participation in the money laundering scheme. But all evidence in the record proves that Plaintiffs did not learn of

2

Defendants' participation in the global fraud and money laundering scheme until 2017. [*See, e.g.*, Trial. Tr. 317:5-318:3 (Nartay)]. The jury had ample evidence before it to reject Defendants' statute of limitations defense. Defendants offered zero evidence to contradict Plaintiffs' evidence and prove that Plaintiffs "knew or, in the exercise of reasonable diligence, should have known" about Defendants' tortious conduct prior to 2017.

In short, the jury correctly applied the Court's instructions to the facts before it and concluded that Defendants failed to meet their burden of proof on their statute of limitations defense.

**B.    The Jury Did Not "Double Count" Damages.**

Defendants next argue that the jury "double-counted" Plaintiffs' damages because it "awarded the same verdict for all three legal theories: $504,213." [Opp. at 7]. Not so. Plaintiffs proved to the jury the specific amounts of damages they sought, which the jury awarded in full as to each defendant other than Sater, against whom the jury awarded less compensatory but greater punitive damages. The jury's conclusion is amply supported by the record and should not be disturbed. For example, the jury asked for PTX-801—a summary chart prepared by Plaintiffs' forensic accounting expert, which broke down each Defendant's receipt of stolen funds—during its deliberations and then awarded amounts that nearly exactly total those identified in PTX-801 for all Defendants other than Sater.[1] [Trial Tr. 1771:6]. The jury therefore appropriately applied

---

[1]    Defendants' argument is even more absurd as to Sater. He exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiff, as Defendants admit. [*See* Opp. at 2 ("Mr. Sater kept $16.5 million . . .")]. The fact that the jury awarded less than the total amount of converted or retained funds shows that the jury was following the Court's instructions to ensure

3

the Court's repeated instruction to "[r]emember that the amount of damages that you award may not exceed the total amount of damages incurred by the plaintiffs." [*See, e.g.*, Trial Tr. 1753:9-11].

Defendants' argument ignores the simple fact that the jury appears to have determined a total harm to Plaintiffs and, in order to expressly avoid double counting as they were instructed by the Court, divided those damages equally among the counts. This was entirely appropriate. Certainly, Defendants offer no argument or evidence to demonstrate that the amount awarded by the jury exceeded Plaintiffs' total damages. Where, as here, a jury is properly instructed on damages—including not double-counting—and determined an award consistent with the Plaintiffs' evidence of damages, there is no basis on which to overturn the verdict. *See, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 179 (2d Cir. 2012).

### C. The Jury's Punitive Damages Award Was Appropriate.

Defendants' final argument is that the Court should reject the jury's $20 million punitive damages award against Sater as "patently absurd." [Opp. at 8]. No surprise that Defendants fail to cite a single case in support of this argument.

The jury's punitive damages award is well supported by numerous examples of Sater's high degree of moral culpability. As Plaintiffs explained in their brief in opposition to Sater's motion to vacate the verdict, [ECF No. 697 at 18-20], the evidence showed that:

1. Sater did not care whether the money he invested was dirty, and he was indifferent to whether he communicated truthful information about the owners and source of funds to counterparties. [*See* Trial Tr. 797:18-798:7].

---

that dollars were not double counted across claims even as the jury awarded punitive damages (though of course the jury could have awarded punitive damages on top of all compensatory damages without double counting a recovery).

4

2. Sater admitted that he helped Ilyas Khrapunov use shills to trick third parties and conceal Ilyas's involvement in the transactions at issue—particularly in light of ongoing investigations of Ilyas and his family, or which Sater admitted he was well aware. . [*See id.* 754:9-23].

3. Sater admitted to extorting his own co-conspirator, Ilyas, so that he could keep a larger share of Plaintiffs' funds for himself as his own form of "rough justice." [*See id.* 1522:12-14].

4. Sater admitted to his history of money laundering activities, including his experience using offshore accounts. [*See id.* 770:6-11].

5. Sater has a substantial criminal history, including a conviction of racketeering involving fraud and money laundering predicates, with strikingly similar money laundering conduct to his activity in this case. [*See id*. 766:17-770:11].

On this record, it was well within the jury's discretion to award Plaintiffs $20 million in punitive damages against Sater.

Defendants also argue that the jury's punitive damages award is "incompatible with the compensatory damages award." [Opp. at 8]. But courts modify an award of punitive damages "only if it 'shock[s] the judicial conscience.'" *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 269 (S.D.N.Y. 1999) (quoting *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)). Here, the punitive damages award properly reflects that Sater acted with "malice rather than merely negligence," and that he "repeatedly engaged in the misconduct." *Id.* at 269. Further, there is no "disparity between the *harm ... suffered ...* and [the] punitive damages award." *Id.* at 270 (emphasis in original) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). The harm suffered by Plaintiffs far exceeds that $504,213 that the jury awarded in compensatory damages against Sater for conversion, exceeds the approximately $1.5 million in total compensatory damages awarded against Sater across all three claims, and even exceeded the total compensatory damages awarded against all other Defendants as well, including the two entities that were wholly owned and controlled by Sater. *See, e.g.*, *TXO Prod. Corp. v. All. Res. Corp.*, 509

5

U.S. 443, 462 (1993); *Blackledge v. Carlone*, 126 F. Supp. 2d 224, 229 (D. Conn. 2001). Plaintiffs suffered tens of millions of dollars in harm because of Sater, [*see* ECF No. 682 ¶ 182], and the jury was well within its rights to consider that injury in its punitive damages award. Defendants fail to point to *any* authority that would justify overturning the jury's considered verdict.

**II.     Defendants Abandoned Their Affirmative Defenses of Unclean Hands and *In Pari Delicto***

Defendants argue that the Court need not make Findings of Fact and Conclusions of Law. [*See* Opp. at 5]. Plaintiffs agree. After Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law, Defendants withdrew their equitable defenses of unclean hands and *in pari delicto*. [*See id.*; *see also* Sept. 18, 2024 Hr'g Tr. 10:14-16 (on behalf of all defendants, reporting that "Regarding the equitable affirmative defenses, I'm comfortable confirming that we are not pursuing those.")]. Because those defenses have been withdrawn, and the jury necessarily rejected Defendants' other defenses, the Court may enter Plaintiffs' Proposed Judgment without making Findings of Fact and Conclusions of Law. That said, the Court may consider the evidence and trial testimony cited in Plaintiffs' Proposed Findings of Fact and Conclusions of Law in evaluating the sufficiency of the evidence when resolving Defendants' Rule 50 motion.

**III.     Defendants May Not Raise New Arguments on Reply.**

Defendants admit their brief is sparse, yet they represent they will "argue the case law comprehensively in [their] reply brief on [their] Rule 50 motion, once [they] have had the benefit of seeing Plaintiffs' opposition brief." [Opp. at 1]. But it is well-settled that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *see, e.g.*, *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2022 WL 3152572, at *5 n.8 (S.D.N.Y. Aug. 8, 2022) ("This Court, as a general matter, does not consider issues raised in a reply brief for the first time . . ."); *Day Vill. Ltd. P'ship v. CW Cap. L.L.C.*, No. 06CIV.

6

3424(LTS)(HBP), 2006 WL 2572118, at *3 (S.D.N.Y. Sept. 7, 2006) ("[A]rguments cannot be made for the first time in reply papers"). In other words, parties may not strategically omit arguments from their moving papers and raise them for the first time on reply, thereby depriving their opponent of the chance to respond—which is precisely what Defendants say they will do here.

It is Defendants' burden to establish how and why the Court should disturb the jury's verdict. To the extent Defendants raise new arguments on reply—after having failed to raise them in their opening brief in support of their motion to vacate the verdict or in their memorandum in opposition to Plaintiffs' proposed judgment—those arguments should be disregarded by the Court. Alternatively, to the extent the Court may consider new arguments, the Court should grant Plaintiffs an opportunity to respond.

## CONCLUSION

Plaintiffs respectfully request that the Court enter Plaintiffs' Proposed Judgment.

Dated: October 21, 2024
New York, New York

Respectfully,

 /s/     Matthew L. Schwartz
Matthew L. Schwartz
John T. Zach
Craig Wenner
Lindsey Ruff
Sophie Roytblat

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs the City of Almaty, Kazakhstan and BTA Bank JSC*

## **CERTIFICATE OF COUNSEL**

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Brief, excluding the caption, signature block, and this certification is 2,062.

Dated: October 21, 2024                                  */s/ Matthew L. Schwartz*
                                                                          Matthew L. Schwartz