UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

    Plaintiffs,

        -against-

FELIX SATER, DANIEL RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS, INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, and MEM ENERGY PARTNERS LLC,

    Defendants.

19 Civ. 2645 (GJK) (KHP)

## DEFENDANT'S REPLY MEMORANDUM
## IN FURTHER SUPPORT OF OUR RULE 50 MOTION

Dated:   New York, New York
           October 21, 2024

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel: (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.
Brendan C. Kombol, Esq
Kombol Law Group, P.C.
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*

**I.    Defendants Waived Unclean Hands and *In Peri Delicto*
       Defenses – But Nothing Else**

Plaintiffs' opposition brief (ECF 697 at 3-5) starts by claiming – incorrectly – that Defendants have waived our various arguments under Rule 59, which were set forth separately in our Notice of Motion (ECF 676).

For clarity, Defendants did waive our equitable defenses of Unclean Hands and *In Pari Delicto*. That is why the Court should not make any Findings of Fact and Conclusions of Law. They are not necessary because Defendants are not asserting equitable defenses.

Plaintiffs did not waive our Rule 59 arguments. Rule 59 motions come after the Court enters a Judgment. *See* FRCP 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment."). Currently, there is no Judgment for Defendants to move against. We included our intended Rule 59 arguments in our Notice of Motion in order to put the Court and Plaintiffs on notice of what Defendants intend to argue (depending on the Rule 50 rulings).

**II.   Plainitffs' Conversion and Unjust Enrichment Claims
       Are Time-Barred**

As stated in our opening brief (ECF 685 at 4-9), Plaintiffs' claims for Conversion and Unjust Enrichment are time-barred under the applicable three-year statute of limitations. The Jury Verdict clearly reflects that Plaintiffs "had a claim" against Sater on April 2, 2013 – but did not commence this action until March 2019. The Jury Verdict also clearly shows that the Jury did not decide the issue of Equitable Tolling (on which Plaintiffs had the burden). The Court cannot rule in favor of Plaintiffs on this point without making a complete mess of New York law regarding the Statute of Limitations and Equitable Tolling.

### A. Conversion Claims Accrue When Property Is Converted – Not Upon Discovery

A conversion claim accrues at the moment of conversion. The New York Court of Appeals addressed this issue in *Vigilant Ins v. Housing Auth*, 87 N.Y.2d 36 (1995), holding:

> Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. For Statute of Limitations purposes, an action for conversion as well as an action for damages for the taking of a chattel are subject to a three-year limitation period. Since accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover we deem the conversion, as alleged, to have occurred in July 1983.

*Id.* at 44-45 (internal citations and quotes omitted). Subsequent New York appellate cases are consistent. *See Solomon v. Silverstein (In re Asch)*, 83 N.Y.S.3d 307, 310 (2d Dep't 2018) ("[a] conversion cause of action accrues and the limitations period begins to run on the date the conversion allegedly occurred"); *In re Rausman*, 50 A.D.3d 909, 910 (2d Dep't 2008) (the "three-year statute of limitations for actions for conversion . . . normally runs from the date the conversion allegedly took place."); *D'Amico v. First Union Nat. Bank*, 728 N.Y.S.2d 146, 151 (1st Dep't 2001) ("accrual [normally] runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover . . . .").

Federal cases have applied New York law the same way. *See Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 481-82 (S.D.N.Y. 2010) ("Under New York law, the statute of limitations for conversion . . . automatically begins to run against a bad faith possessor on the date of the theft or bad faith acquisition—even if the true owner is unaware the chattel is missing."); *Lennon v. Seaman*, 63 F. Supp. 2d 428, 440 (S.D.N.Y. 1999) ("The statute of limitations on a claim of conversion, however, begins to accrue at the moment of conversion, regardless of when the conversion is discovered.").

2

B.     **Plaintiffs Have Found No Helpful Case Law**

Boies Schiller undoubtedly scoured the earth looking for a case that helps them. Their efforts came up empty. They dutifully present two cases as standing for the proposition that conversion claims accrue upon discovery, but of course, Plaintiffs' cases do not say that.

They cite *American Building Maintenance Co. of Calif., Inc., v. Federation Bank Trust Co.*, 213 F. Supp. 412 (S.D.N.Y. 1963), where a depositor sought to recover money paid by a bank on forged endorsements. *American Building* does not say that conversion claims accrue when the conversion is discovered. To the contrary, the case did not involve a conversion claim – it was a breach of contract claim. Here is the full quote:

> Despite this rule, the Appellate Division for the First Department, in *City of New York v. Fidelity Trust Co. of N.Y.*, 243 App. Div. 46, 276 N.Y.S. 341, a case where a bank had paid checks bearing forged indorsements and rendered statements showing such payments, held that section 15 C.P.A. applied and that the period of limitation began to run only after a subsequent demand by the depositor. ***While it is not necessarily true that the period for which interest will be allowed for a breach of contract cannot antedate the time when the period of limitation upon the claim begins to run***, these New York cases are conclusive on the interest question. By reason of the wording of section 15 C.P.A. they hold for all purposes that, where a bank has rendered statements showing payments on checks bearing forged indorsements, further demand is necessary "to entitle a person to maintain an action".

As the Court can see from reading the quote in context, *American Building* does not even discuss a conversion claim; it is a contract case. Completely irrelevant.

Plaintiffs' other case is *Van Vliet v. Kanter*, 139 A.D. 603 (1st Dep't 1910), which is also a contract case, not a conversion case. *Van Vliet* notes, "[h]ere is a note evidencing a contract in which the parties saw fit to make no provision for interest, and it, therefore, draws no interest until a demand is duly made which puts the maker in default." *Id.* at 604. Also irrelevant.

3

### C. Conversion and Unjust Enrichment Are Dead Without Equitable Tolling

To prove Equitable Tolling, Plaintiffs had to show that they were "induced by fraud, misrepresentations, or deception to refrain from filing the action before the statute of limitations expired."

Plaintiffs, for whatever reason, allowed the Jury to be discharged without getting a verdict on Equitable Tolling on which they had the burden. They failed to prove an essential element. They lose.

Plaintiffs' claims all accrued in 2013. Mr. Schectman, Plaintiffs' expert, testified that every challenged transaction happened in 2013. When Mr. Sater settled his dispute with Ilyas Khraponov in December 2013 and returned the $20 million (keeping the other $16.5 million), that ended Mr. Sater's business relationship with Mr. Khrapounov. That was the latest event potentially giving rise to damages.

Obviously, because money is fungible, one might quibble over whether pre-judgment interest should run from April 2013 or December 2013. The Jury apparently felt that Mr. Sater kept $504,213 more than he should have. Which $504K was objectionable? The first $504K or the last? In calculating pre-judgment interest, it makes a $30,000 difference (8 months at 9% on $504K).

It makes absolutely no difference for Statute of Limitations purposes. Whether we imagine the money was wrongfully taken in April 2013 or December 2013, either way, the claims expired sometime in 2016. They were long expired when Plaintiffs filed this case in 2019.

The law is clear – the only way for a Plaintiff to bring a claim for Conversion or Unjust Enrichment more than three years after the wrongful taking of property is by proving Equitable Tolling. *See Lama v. Malik*, 192 F. Supp. 3d 313, 320 (E.D.N.Y. 2016) ("Without equitable tolling . . . Plaintiff's claim for conversion is time-barred and hereby dismissed.");

*Lawyers' Fund v. Gateway State Bank*, 239 A.D.2d 826, 827 (3d Dep't 1997) ("Without the tolling provision, plaintiff's cause of action for conversion is time barred since the three-year Statute of Limitations commenced running on the date the conversion took place . . . and not from the date of discovery or the exercise of diligence to discover").

Plaintiffs suggest that they did not learn of their claim until 2017. Irrelevant. Equitable Tolling cannot be based upon the same act that forms the basis for the claim. Rather, there must be a separate fraudulent misrepresentation. *Schrull v. Weis*, 87 N.Y.S.3d 228, 232 (2d Dep't 2018) ("In order for the doctrine of equitable estoppel to apply, a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort" (collecting cases)). Without Equitable Tolling, the claims for Conversion and Unjust Enrichment are deader than an Ablyazov hunting guest.

### D. Sater Wins on Conversion

The Jury Verdict establishes that Plaintiffs "had a claim" for conversion on April 2, 2013. Without a finding of Equitable Tolling, the Court is required to enter judgment for Sater on the Conversion claim (which, in turn, eliminates the Punitive award).

### E. Defendants Win on Unjust Enrichment

For the exact same reasons, Sater, Bayrock, GHS, and MeM are all entitled to judgment on Plaintiffs' Unjust Enrichment claims. The Special Verdict Form clearly establishes that Plaintiffs "had a claim" for Unjust Enrichment at various specified dates in 2013. The Jury determined the following dates as the "earliest ascertainable date that the plaintiffs had a claim" against each Defendant:

5

      Felix Sater:    April 2, 2013

      GHS:    April 2, 2013

      Bayrock:    June 3, 2013

      MeM:    August 22, 2013

Unjust Enrichment claims – like conversion claims – do not have a discovery rule. *See Gerschel v. Christensen*, 143 A.D.3d 555, 556 (1st Dep't 2016) ("Plaintiffs' claims for . . . conversion [and] unjust enrichment . . . accrued at the time of their injury; these claims are not subject to a discovery rule."); *Kaufman v. Cohen*, 307 A.D.2d 113, 127 (1st Dep't 2003) ("plaintiffs' unjust enrichment cause of action was properly dismissed as time-barred. . . . [A] claim for unjust enrichment accrues upon the occurrence of the alleged wrongful act giving rise to restitution."); *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 503 (1st Dep't 1993) (statute of limitations for unjust enrichment "starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution").

**III.   No Punitive Damages**

If the Court agrees that the Conversion claim is time-barred, then the punitive damage award (which was based only upon the Conversion claim) falls along with it. Plaintiffs appear not to dispute this.

Even if the Court finds that the Conversion claim was timely, the Court must vacate the Punitive Damages award against Sater. No "aggravating circumstances" exist under New York law, and the verdict is irrational in light of the Jury's small damages verdict.

Plaintiffs' opposition brief recites a boring litany of reasons why Mr. Sater is a terrible person (ECF 697 at 18-20). However, this misses the point. The relevant New York case law makes clear that punitive damages cannot be awarded in a Conversion claim without aggravating circumstances. As stated in *Caballero v. Anselmo*, 759 F. Supp. 144, 153-54 (S.D.N.Y. 1991):

6

> Imposition of punitive damages for conversion of personal property will be justified where circumstances show that the conversion was accomplished with malice, insult, reckless and willful disregard for plaintiff's rights, or by other proof evidencing the aggravated nature of the act.

The evidence is clear that Mr. Sater received $16.5 million. Plaintiffs asked the Jury for a verdict of $16.5 million. The Jury rejected 97% of Plaintiffs' claim, awarding $504,213 against Mr. Sater.

Plaintiffs, in their reply brief, resort to Jury Verdict denialism. On page 20, they insist that "Plaintiffs suffered tens of millions of dollars in harm because of Sater." (No they did not.) Plaintiffs go on to insist on page 21 that Sater "exercised unlawful control over substantially more than $504,213.33 in funds stolen from Plaintiffs…." (Not according to the Jury.)

Plaintiffs never address our main argument. Nobody knew that Mr. Sater had "wrongfully" taken $504,213 until the Jury said so in its verdict. How was Mr. Sater supposed to know in 2013 that eleven years later, a jury would decide that he took 3% too much? Even now, the parties are arguing over whether the verdict was $504,213 or three times that amount. Mr. Sater won't know how much money he "stole" until the Judgment is final.

On these facts, where is the malice? Where is the willful disregard? The Jury agreed with Sater as to 97% of the money. How can you punish Sater for being wrong by 3%? Punish Mr. Schwartz for being wrong by 97%. The punitive award must be vacated because it is patently irrational in view of the small damages award.

**IV.     No Double (or Triple) Counting Damages**

Plaintiffs' opposition brief (pp. 21-22) – continuing the Jury Verdict denialism – asks the Court to read the Jury's mind and assume that the Jury disregarded the Court's instructions.

7

The Court should not assume jury misconduct when a more obvious answer exists. The Jury simply did not buy Plaintiffs' damages case. The Jury rejected 97% of the Sater claim and 50% of the claims against the other Defendants.

We quoted the relevant Jury Instructions in our moving brief (ECF 685 at 17-18). Plaintiff's case alleged a single pot of money. Plaintiffs' three legal theories all sought to recover the same pot of money. Under clearly established law, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery. *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995).

As noted in our opening brief (pp. 17-18), the Jury Instructions were clear: award the full amount of damages. The Court never instructed the Jury to return a verdict of half of the amount of damages. The Court never instructed the Jury to apportion its award across claims. The Court never instructed the Jury to characterize compensatory damages as punitives.

If Plaintiffs believed the Jury had misunderstood the Court's instructions and returned a verdict that was smaller than the Jury intended, Plaintiffs should have asked the Court to re-instruct the Jury. Boies Schiller accepted the Jury Verdict and now they are stuck with it. The Court has no business going back and "fixing" the verdict for Boies Schiller.

## V.     Neither BTA Nor Almaty Proved Its Claim

Plaintiffs' opposition brief (pp. 16-17) talks around but never squarely addresses the point we made in our opening brief regarding the Court's overall approach of treating Almaty and BTA as a single entity (Mem at 11-13).

Put very simply: if the Judgment does not say "Party X owes $___ to Party Y," it is a useless and defective judgment. In *Penn Terra Ltd. v. Dept. of Environ. Resources*, 733 F.2d 267, 275 (3d Cir. 1984), the Third Circuit interpreted "money judgment" as follows:

8

> In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: ***(1) an identification of the parties for and against whom judgment is being entered,*** and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.

*See also Eaves v. County of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001) (same).

Suppose Mr. Sater wanted to pay BTA's judgment, but wanted to litigate against Almaty to the bitter end. How much does he owe BTA? The Jury said that Sater wrongfully took $504K of "plaintiffs" money. How much of that was BTA's money? How much was Almaty's money?

The Jury Verdict did not break out damages by plaintiff. As a result, the Court cannot enter a valid money judgment that identifies which plaintiff is owed what amount of money.

By lumping together BTA and Almaty, the Court improperly relieved both Plaintiffs of the obligation to prove each and every element of its own claim. The Jury never found that Sater took a penny from BTA. The Jury never found that Sater took a penny from Almaty. These are essential elements that remain unproven.

Plaintiffs rely upon *Cargill, Inc. v. WDS, Inc.*, No. 3:16-cv-00848-FDW-DSC, at *24 (W.D.N.C. Mar. 28, 2018). *Cargill* is distinguishable because the two entities referred to collectively as "plaintiffs" were a parent company and its wholly-owned subsidiary. *Cargill* cited *Inter Med. Supplies Ltd. v. EBI Med. Sys., Inc.*, 975 F. Supp. 681, 691 (D.N.J. 1997), which also lumped together a corporate parent and its subsidiary.

This case is completely different. BTA and Almaty are not corporate affiliates. They are not partners or fiduciaries. They are totally separate entities. Almaty and BTA do not "share" money, knowledge, intent, or anything else. This goes far beyond anything in *Cargill.* Plaintiffs have not cited (and we have not discovered) any case where the Court lumped together

9

completely unrelated plaintiffs. Whatever financial injury Almaty and BTA may have suffered, each suffered its own injury.

The Court should enter judgment in favor of all Defendants on each and every claim, including claims for Conversion, Unjust Enrichment, and Money Had and Received, on the grounds that BTA and Almaty are separate parties, and neither proved the elements of its own separate claim against any particular Defendant.

## CONCLUSION

Based upon the foregoing, and upon our opening brief (ECF 685), the Court should grant our Rule 50 motion (ECF 679).

Dated:  New York, New York
        October 21, 2024

By: _____
    John H. Snyder

JOHN H. SNYDER PLLC
157 E. 81st Street, Suite 3A
New York, NY 10028
Tel:  (917) 292-3081
Email: john@jhs.nyc

Thomas C. Sima
102 Park Ridge Lane
White Plains, NY 10603
Tel: (212) 796-6661
Email: tom@tsima.com

*Counsel for the Sater Defendants*

KOMBOL LAW GROUP P.C.

Brendan C. Kombol, Esq
340 Atlantic Avenue
Brooklyn, NY 11201
Email: bkombol@yellenlaw.com

*Counsel for Defendant MEM Energy*

10