**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**CITY OF ALMATY, KAZAKHSTAN, ET AL.,**

                    **Plaintiffs,**          **19-cv-2645 (JGK)**

        **- against -**                      **MEMORANDUM OPINION AND**
                                             **ORDER**
**FELIX SATER, ET AL.,**

                    **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

        The plaintiffs, the City of Almaty, Kazakhstan ("Almaty"),
and BTA Bank JSC ("BTA"), brought this action against various
defendants, including Felix Sater, Bayrock Group Inc.
("Bayrock"), Global Habitat Solutions Inc. ("GHS") (together
with Sater and Bayrock, the "Sater Defendants"), and MeM Energy
Partners LLC ("MeM") (collectively, the "defendants"). After
extensive pre-trial proceedings and a nearly three-week trial,
the jury returned a verdict in favor of the plaintiffs and
against each of the defendants.

        The defendants now move for judgment as a matter of law
dismissing the claims against them pursuant to Federal Rule of
Civil Procedure 50(b) or for a new trial pursuant to Federal
Rule of Civil Procedure 59. In turn, the plaintiffs now move to
enter judgment in accordance with the jury's verdict.

**I.**

The Court assumes familiarity with the history of this case, which has been described in previous opinions. See, e.g., ECF Nos. 244, 323, 392, 396, 625, 673. The following summary sets forth only those facts necessary to contextualize the rulings on the parties' post-verdict motions.[1]

**A.**

The plaintiffs brought this case on March 25, 2019. ECF No. 1. On May 21, 2022, the plaintiffs filed the presently operative Second Amended Complaint ("SAC"), ECF No. 399.

The plaintiffs allege that Victor Khrapunov, the former mayor of Almaty, misappropriated funds from Almaty through fraudulent means. SAC ¶¶ 53-62. The plaintiffs also contend that Mukhtar Ablyazov, the former chairman and controlling shareholder of BTA, misappropriated funds from BTA by causing BTA to make fraudulent loans to companies controlled by Ablyazov. Id. ¶¶ 16-49. According to the plaintiffs, the funds stolen from BTA were then mixed and laundered through the world by Ablyazov and Ilyas Khrapunov ("Ilyas"), Victor Khrapunov's son and Ablyazov's son-in-law. Id. ¶¶ 50-52. Similarly, the funds stolen from Almaty were laundered with the aid of Ablyazov through his control of BTA. Id. ¶ 57.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Against this backdrop, in this case, the plaintiffs brought claims against Sater and several entities allegedly owned and controlled by Sater or his associates. See generally id. The crux of the plaintiffs' complaint is that Sater conspired with Ilyas to launder the funds allegedly stolen from the plaintiffs through at least five separate investment projects in the United States, namely, the World Health Network, the Trump SoHo Hotel, Creacard S.A., the Syracuse Center, and the Tri-County Mall. Id. ¶¶ 2-3, 66-294. The plaintiffs contend that these five schemes took place during 2013. Id. ¶¶ 120-286.

After extensive pre-trial proceedings, on June 10, 2024, the plaintiffs proceeded to a jury trial on three claims: (1) conversion against Sater alone, (2) unjust enrichment against Sater, Bayrock, GHS, and MeM, and (3) money had and received against Sater, Bayrock, GHS, and MeM. See Joint Pretrial Order, ECF No. 586; Trial Transcript ("Tr."), ECF Nos. 649-72.[2]

During the trial, without any objection from the parties, the jury was instructed that "the statute of limitations on the plaintiffs' claim for conversion against defendant Sater is three years," Tr. 1729, and "that the statute of limitations on the plaintiffs' claims for unjust enrichment is also three

---

[2] The plaintiffs' claims against various other defendants were resolved prior to trial. See ECF Nos. 315, 586, 608, 621.

years," id. at 1729-30.[3] The jury was also instructed that "the statute of limitations on the plaintiffs' claims for money had and received is six years." Id. at 1730.[4] Finally, without objection, the jury was instructed that all of the plaintiffs' claims accrued on the date that "the plaintiffs knew or, in the exercise of reasonable diligence, should have known about the defendant's conduct that gave rise to the claim." Id. at 1729.

The jury ultimately returned a verdict in favor of the plaintiffs and against each of the defendants on all three claims. Id. at 1777-97. With respect to the first count, the jury found that the plaintiffs proved, by a preponderance of the evidence, their conversion claim against Sater. Id. at 1777. Accordingly, the jury awarded $504,212.33 in damages and $20,000,000.00 in punitive damages. Id. at 1777-78. The jury also found that "the earliest ascertainable date that the plaintiffs had a claim for conversion" against Sater was April 2, 2013. Id. at 1732, 1778.

---

[3] There is some uncertainty regarding whether a three-year or six-year statute of limitations applies to claims for unjust enrichment under New York law. See Tech. Opp'y Grp. v. BCN Telecom, Inc., No. 16-cv-9576, 2019 WL 4688628, at *12 (S.D.N.Y. Sept. 25, 2019) (collecting cases). Earlier in this case, at the pleadings stage, the Court held "that a three-year limitations period applies." City of Almaty v. Sater, 503 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (Nathan, J.), ECF No. 244. That holding is law of the case. Prisco v. A & D Carting Corp., 168 F.3d 593, 607 (2d Cir. 1999).

[4] Counsel for the Sater Defendants had objected that the statute of limitations on the money had and received claims should be three years. Tr. 1469.

With respect to the second count, the jury found that the plaintiffs proved, by a preponderance of the evidence, their unjust-enrichment claims against Sater, Bayrock, GHS, and MeM. Id. at 1778-82. Accordingly, the jury awarded damages of $504,212.33 against Sater, $2,031,375.00 against Bayrock, $668,926.50 against GHS, and $343,000.26 against MeM. Id. The jury also found that "the earliest ascertainable date[s] that the plaintiffs had a claim for unjust enrichment" against each of the defendants were in 2013. Id. at 1734, 1778-82.[5]

With respect to the third count, the jury found that the plaintiffs proved, by a preponderance of the evidence, their claims of money had and received against Sater, Bayrock, GHS, and MeM. Id. at 1782-84. Accordingly, the jury awarded damages of $504,212.33 against Sater, $2,031,375.00 against Bayrock, $668,926.50 against GHS, and $343,000.26 against MeM. Id. at 1782-84. The jury also found that "the earliest ascertainable date[s] that the plaintiffs had a claim for . . . money had and received" against each of the defendants were in 2013. Id. at 1734, 1782-84.[6]

---

[5] The earliest ascertainable dates for each defendant were: Sater, April 2, 2013; Bayrock, June 3, 2013; GHS, April 2, 2013; and MeM, August 22, 2013. Tr. 1778-82.

[6] The earliest ascertainable dates for each defendant were: Sater, April 2, 2013; Bayrock, June 3, 2013; GHS, April 2, 2013; and MeM, August 22, 2013. Tr. 1782-85.

The jury further found that Sater, Bayrock, and GHS had failed to prove, by a preponderance of the evidence, the affirmative defense of release. Id. at 1777-84. With respect to the conversion and unjust-enrichment claims, the jury also found that each of the defendants had failed to prove, by a preponderance of the evidence, the affirmative defense of a statute of limitations. Id. at 1777-81. Pursuant to the special verdict form, id. at 1752-59, having answered each statute of limitations question in the negative, the jury did not reach the additional question whether the plaintiffs had proved, by a preponderance of the evidence, that equitable tolling applied to the plaintiffs' claims for conversion and unjust enrichment. See id. at 1777-84.

**B.**

Following the trial, the defendants filed a notice of motion pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure. ECF No. 676. The notice of motion listed numerous bases for the motion. Id. The Court thereafter approved the parties' proposed briefing schedule. ECF No. 680.

On August 30, 2024, the defendants filed their Memorandum of Law ("Br."), denominating their motion as only a Rule 50(b) motion. ECF No. 685. The defendants' Memorandum of Law also failed to address many of the grounds raised in their notice of

6

motion. Id.[7] Meanwhile, on August 30, 2024, the plaintiffs submitted a proposed judgment, ECF No. 681, as well as proposed findings of fact and conclusions of law, ECF Nos. 682-84.

At a conference held on September 18, 2024, the defendants expressly withdrew the equitable defenses of unclean hands and in pari delicto. Hearing Transcript ("Hr'g Tr.") 10, ECF No. 692. Accordingly, because the defendants had withdrawn any equitable defenses, the Court determined that it was unnecessary to issue any findings of fact or conclusions of law. Id. at 11.

## II.

### A.

A district court should deny a Rule 50 motion unless, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached." Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994). A trial court considering a motion under Rule 50(b) "must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that

---

[7] To the extent that the defendants raised arguments in support of a Rule 59 motion in their notice of motion and failed to support those arguments in their subsequent briefing, those arguments are abandoned. See Jane Doe v. Kathleen Martucci, No. 20-cv-2331, 2024 WL 5118505, at *12 (S.D.N.Y. Dec. 16, 2024).

the jury might have drawn in its favor." Samuels v. Air Transp. Loc. 504, 992 F.2d 12, 16 (2d Cir. 1993). A jury verdict should be set aside only when "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant." Logan v. Bennington Coll. Corp., 72 F.3d 1017, 1022 (2d Cir. 1995).

**B.**

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Accordingly, "[a] district court may grant a new trial pursuant to Rule 59 even when there is evidence to support the jury's verdict, so long as the court determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009).

**C.**

Treated only as a Rule 50(b) motion, the defendants' motion could be denied because the specific grounds in the Rule 50 motion were not raised "before the case [wa]s submitted to the

jury." Fed. R. Civ. P. 50(a)(2), (b). "A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury." Bracey v. Bd. of Educ. of Bridgeport, 368 F.3d 108, 117 (2d Cir. 2004); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).

Treated as a motion for a new trial pursuant to Rule 59(a)(1)(A), however, there was no requirement to make the motion before the jury retired to deliberate. Fed. R. Civ. P. 59. "A motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b). In other words, parties may file a motion for a new trial pursuant to Rule 59(a) at any time before the deadline specified by Rule 59(b). See id. Accordingly, the grounds raised by the defendants on the current motion are considered only under Rule 59(a)(1)(A) as a request for a new trial.

The defendants assert that they are reserving for after the entry of judgment all grounds raised by the defendants' notice of motion in support of a new trial pursuant to Rule 59. Reply ("Rep.") 1, ECF No. 701. But the defendants have already moved for a new trial under Rule 59. ECF No. 676. Therefore, the grounds raised in the notice of motion and not pursued in the briefing have been waived. See Martucci, 2024 WL 5118505, at *12.

9

### III.

Arguing that the plaintiffs' conversion and unjust-enrichment claims accrued in 2013 and expired in 2016, the defendants contend that the jury award on those claims should be vacated. Br. 4-9; Rep. 1-6. The plaintiffs disagree, arguing that the jury verdict determined only the "earliest ascertainable date" for calculating prejudgment interest under New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 5001(b), and not the date on which the plaintiffs' claims accrued for purposes of the statute of limitations. Pltfs' Mem. of Law in Opp. ("Opp.") 7-9, ECF No. 697. The plaintiffs also underscore that none of the parties objected to the instruction regarding accrual for purposes of the statute of limitations. Id.

### A.

As a threshold matter, the defendants' failure to object affects the standard of review. Pursuant to Rule 51, a party may assign error based on an erroneous jury instruction "if that party properly objected." Fed. R. Civ. P. 51(d)(1). To object properly "to an instruction or the failure to give an instruction," a party "must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "A jury charge is erroneous if it misleads the jury as to the correct legal

10

standard, or if it does not adequately inform the jury of the law." Hathaway v. Coughlin, 99 F.3d 550, 552 (2d Cir. 1996). Where a party has objected properly to an erroneous instruction, courts "grant a new trial if the error is not harmless." Dancy v. McGinley, 843 F.3d 93, 116 (2d Cir. 2016). "If, however, the challenging party failed to object to the charge at trial, [courts] review for plain error, that is 'if the error affects substantial rights.'" Rasanen v. Doe, 723 F.3d 325, 332 (2d Cir. 2013) (quoting Fed. R. Civ. P. 51(d)(2)).

During the trial, the jury was instructed that the plaintiffs' claims accrued on the date that "the plaintiffs knew or, in the exercise of reasonable diligence, should have known about the defendant's conduct that gave rise to the claim." Tr. 1729. No party objected to that instruction, properly or otherwise. See id. Because the defendants failed to object to the jury instruction regarding accrual, the present review is for plain error. Rasanen, 723 F.3d at 332-33.

**B.**

To demonstrate plain error, the defendants must show that "there was '(1) error, (2) that is plain, (3) that affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Keeling v. Hars, 809 F.3d 43, 51 (2d Cir. 2015) (quoting United States v. Weintraub, 273 F.3d 139, 145 (2d Cir.

11

2001)). However, "the plain error exception to Rule 51's
objection requirement 'should only be invoked with extreme
caution in the civil context.'" Rasanen, 723 F.3d at 333
(quoting Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 18
(2d Cir. 1996)). "To constitute plain error" in a civil case, "a
court's action must affect substantial rights, contravene an
established rule of law, and go to the very essence of the
case." Emamian v. Rockefeller Univ., 971 F.3d 380, 388 (2d Cir.
2020).

In this case, the instruction regarding accrual contained
an error that was plain. Namely, the instruction contravened the
established rule under New York law for measuring the accrual
date for conversion and unjust-enrichment claims.

Generally, under New York law, the statute of limitations
"begins to run once a cause of action accrues, that is, when all
of the facts necessary to the cause of action have occurred."
Aetna Life and Cas. Co. v. Nelson, 492 N.E.2d 386, 389 (N.Y.
1986); ACE Sec. Corp. v. DB Structured Prods., Inc., 36 N.E.3d
623, 630 (N.Y. 2015); see also N.Y. C.P.L.R. § 203(a).
Conversion claims accrue on "the date the conversion takes place
and not from discovery or the exercise of diligence to
discover." Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso,
660 N.E.2d 1121, 1126 (N.Y. 1995); Grosz v. Museum of Modern
Art, 772 F. Supp. 2d 473, 481–82 (S.D.N.Y. 2010). Unjust-

enrichment claims likewise accrue "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 364 (2d Cir. 2013) (quoting Coombs v. Jervier, 906 N.Y.S.2d 267, 269 (App. Div. 2010)); Elliott v. Qwest Comms. Corp., 808 N.Y.S.2d 443, 445–46 (App. Div. 2006). In short, under New York law, neither conversion nor unjust enrichment are subject to a discovery rule. Therefore, by providing a discovery rule, the accrual instruction "contravene[d] an established rule of law." See Rasanen, 723 F.3d at 333.

In summation, the plaintiffs' counsel compounded the error. He stressed, incorrectly, that for purposes of the statute of limitations, the defendants had to prove that the plaintiffs knew or should have known about their claims but failed to bring such claims within the statute of limitations. See Tr. 1685–86. Applying that incorrect premise, the plaintiffs' counsel argued that "there is no statute of limitations issue" because the plaintiffs allegedly did not know about their claims against the defendants until 2017. Id. When addressing the earliest ascertainable dates from which the plaintiffs had claims, however, the plaintiffs' counsel provided the jury with the 2013 dates when each of the defendants received the stolen funds. Id. at 1704.

13

The jury ultimately used those precise dates, finding that
the earliest ascertainable dates that the plaintiffs had claims
against each of the defendants were in 2013. Id. at 1778-84.
Therefore, the jury plainly found that the plaintiffs' claims
accrued in 2013. See id. Accordingly, the limitations period to
bring conversion and unjust-enrichment claims expired in 2016.
N.Y. C.P.L.R. § 214; City of Almaty, 503 F. Supp. 3d at 64-66.
The plaintiffs, however, brought this action in 2019, about
three years too late. ECF No. 1.

But because of the erroneous accrual instruction, despite
finding that the earliest ascertainable dates were in 2013, the
jury also found that each of the defendants had failed to prove
the affirmative defense of a statute of limitations on the
conversion and unjust-enrichment claims. Tr. 1777-81.
Consequently, the jury did not reach the issue of whether the
statute of limitations for the plaintiffs' conversion and
unjust-enrichment claims should be equitably tolled against any
of the defendants. See id. at 1777-84.

In short, the error "affect[ed] substantial rights" in a
way that went "to the very essence of the case." See Emamian,
971 F.3d at 388. Entry of judgment in the plaintiffs' favor
would contravene the jury's finding that the earliest
ascertainable dates on which the conversion and unjust-
enrichment claims accrued were in 2013, id. at 1778-82, in

14

violation of New York state law, Vigilant, 660 N.E.2d at 1126;
Cohen, 711 F.3d at 364. On the other hand, entry of judgment in
the defendants' favor would fail to recognize that the error
prevented the jury from reaching the plaintiffs' claim that
equitable estoppel foreclosed each of the defendants from
asserting the statute of limitations defense. Tr. 1777-82.
Hence, the accrual instruction constituted plain error under
Rule 51(d)(2), meriting a new trial on the plaintiffs'
conversion and unjust-enrichment claims.

In response, the plaintiffs contend that the jury
determined the earliest ascertainable dates only with respect to
the date from which pre-judgment interest should accrue pursuant
to N.Y. C.P.L.R. § 5001(b). Armed with that correct observation,
the plaintiffs argue that the 2013 dates determined by the jury
are not the dates of accrual for the plaintiffs' conversion and
unjust-enrichment claims.

But the plaintiffs never defend the proposition that a
discovery rule exists for claims of conversion and unjust
enrichment; instead, the plaintiffs assume that the statute of
limitations for conversion and unjust enrichment accrued when
the plaintiffs discovered or should have discovered those torts.
That is plainly not the law in New York. See Vigilant, 660
N.E.2d at 1126; Cohen, 711 F.3d at 364. The charge asked the
jury to find, and the jury did find, "the earliest ascertainable

15

date that the plaintiffs had a claim for conversion" and "for unjust enrichment" against each of the defendants. Tr. 1732, 1734, 1778-82. Without the discovery rule, the claims accrued when the jury found they did, namely, in 2013. See id. Moreover, the plaintiffs themselves alleged and then maintained throughout this case that the defendants' acts underlying the conversion and unjust-enrichment claims occurred, at the latest, in 2013. See AC ¶¶ 120-286; Tr. 1704. The jury verdict only confirmed that any such acts occurred in 2013.

The cases relied on by the plaintiffs show only that in some cases, pre-judgment interest and the statute of limitations can accrue from different dates. See Am. Bldg. Maint. Co. of Cal. Inc. v. Fed'n Bank & Tr. Co., 213 F. Supp. 412, 416-17, 419-21 (S.D.N.Y. 1963) (finding that interest accrued from the date the plaintiff provided notice of check forgery to the defendant bank, where the applicable statute of limitations barred claims that accrued more than two years prior to the date of notice); Van Vliet v. Kanter, 124 N.Y.S. 63, 64-65 (App. Div. 1910) (holding that, although a contractual claim accrues when the note becomes due, contractual interest accrues only after the plaintiff makes a demand). These cases do not alter the absence of a discovery rule for conversion and unjust-enrichment claims under New York law.

In sum, the jury found in favor of the plaintiffs on the time-barred conversion and unjust-enrichment claims. And the issue of equitable estoppel remains undecided with respect to each of the defendants. Therefore, there must be a new trial on the plaintiffs' conversion and unjust-enrichment claims. Accordingly, the defendants' motion for a new trial pursuant to Rule 59(a)(1)(A) on the claims for conversion and unjust enrichment is **granted.**

### IV.

The defendants raise additional arguments in support of a new trial on the plaintiffs' claims. None of these arguments have merit.[8]

### A.

The Sater Defendants claim that judgment should be entered dismissing all claims against them because those defendants are covered by the "Release" contained in the Confidential Assistance Agreement ("CAA") dated June 12, 2015. Br. 9–10. The CAA was "entered into" by, as relevant here, Litco LLC ("Litco"), Almaty, and BTA. PX-593, ECF No. 684-34 (CAA). The Sater Defendants were not named parties to the CAA. See id.

Pursuant to the CAA, Litco agreed to "provide information, assistance, and cooperation" with respect to "investigative and

---

[8] The defendants previously asserted the affirmative defenses of unclean hands and in pari delicto. See Br. 12–13. The defendants have waived those defenses. Hr'g Tr. 10; Rep. 1.

asset recovery efforts" against entities owned or controlled by Khrapunov and Ablyazov. Id. at 1. Pursuant to the Release, in relevant part, Almaty and BTA released and discharged Litco and its shareholders from all known and unknown claims and liabilities. Id. at 4. In entering the CAA, however, Litco had represented and warranted that "[n]o potential witness which Litco identifies and produces . . . shall have any ownership interest in Litco." Id. at 3.

The Sater Defendants' argument for dismissal based on release fails because the jury rejected the defense of release with respect to each of the Sater Defendants. Tr. 1777-84. For the following reasons, that jury determination was supported amply by the record.

First, the evidence showed that the Release was fraudulently induced. The CAA's terms expressed an intent to exclude from the Release any witness with any ownership interest in Litco. PX-593 at 3. But at trial, the plaintiffs introduced evidence that Sater, a potential Litco witness, concealed that he owned Litco until after the formation of the CAA. See Tr. 310-11. Indeed, during his opening statement, Sater's counsel acknowledged that Sater kept his identity as Litco's owner hidden from "low-level functionaries at" BTA and Almaty by, for instance, having someone else sign the CAA on behalf of Litco. Id. at 114-15; see also id. at 1059-60. Therefore, there was

evidence in the record from which the jury could conclude reasonably that the Release was fraudulently induced.

Moreover, during the trial, Robert Wolf, Litco's lawyer during the negotiation and formation of the CAA, took the witness stand. Tr. 1022, 1073–98. Wolf testified that as recently as the day before the plaintiffs' 2018 deposition of Sater in a related case, Wolf represented to the plaintiffs' counsel that Wolf did not know who owned Litco. Id. at 1326–29. The jury also heard testimony that the Magistrate Judge in the related action found, after an evidentiary hearing, that Sater and Wolf knowingly concealed from the plaintiffs Sater's identity as Litco's owner and made express representations about Litco's ownership that were false. Id. at 1351; see also City of Almaty v. Ablyazov, No. 15-cv-5345, 2020 WL 13558984, at *14 (S.D.N.Y. May 19, 2020), ECF No. 1248, overruled in other part by 2020 WL 5269554 (S.D.N.Y. Sept. 3, 2020), ECF No. 1333. With respect to testimony offered by Sater suggesting anything to the contrary, "[t]he jury was entitled" to find Sater and Wolf "not credible and to disregard anything or everything they said." Exodus Partners, LLC v. Cooke, No. 4-cv-10239, 2007 WL 120053, at *6 (S.D.N.Y. 2007). Accordingly, the record amply supported the jury's rejection of the release defense based on fraudulent inducement.

Second, it was reasonable for the jury to find that the Sater Defendants were not third-party beneficiaries of the Release. During the trial, the jury was instructed specifically that Sater and his companies could not claim the Release's protection if they were not third-party beneficiaries. Tr. 1727–28; see also LaSalle Nat'l Bank v. Ernst & Young LLP, 729 N.Y.S.2d 671, 676 (App. Div. 2001) (finding that a nonparty may sue for breach of contract only when "the parties' intent to benefit the third party [is] apparent from the face of the contract").

It is undisputed that Sater did not negotiate the CAA on Litco's behalf; indeed, Sater had another person sign the CAA on behalf of Litco. Tr. 114–15; see also id. at 428, 1059–60. Because the evidence showed that the plaintiffs did not know about Sater's ownership of Litco when the plaintiffs entered into the CAA, it was reasonable for the jury to find, by a preponderance of the evidence, that the plaintiffs did not intend for the CAA to benefit the Sater Defendants. The jury was not required to accept the self-serving testimony of Sater and Wolf that the parties to the CAA intended for Sater to be released. Exodus Partners, 2007 WL 120053, at *6.

Based on the CAA's plain terms and the evidence in the record, the jury reasonably found that the defendants had failed

20

to prove, by a preponderance of the evidence, the affirmative defense of release. A new trial on that issue is unwarranted.

**B.**

The defendants argue that the testimony of Seth Fliegler, the plaintiffs' forensic-accounting expert witness, "fatally undermined" the plaintiffs' case. Br. 10-11. The defendants contend that Fliegler "'guessed' that the allegedly stolen funds had originally been stolen from BTA depositors." Id. at 11.

Fliegler, however, clearly testified that, whether BTA collected the money from depositors, investments, or some other source, the money that the defendants tortiously obtained was in fact stolen from BTA. See, e.g., Tr. 931 (Fliegler testifying that the jury "should focus on the fact that the source of the funds was from BTA"). When asked how he established that BTA was the source of the funds, Fliegler answered, "through transactional data and agreements." Id. On the other hand, Sater testified merely that the funds he obtained belonged to the Khrapunov family and that Sater did not know and did not care where else the money came from. Id. at 798, 1215. Because Fliegler clearly testified that the money was stolen from BTA, and the jury was entitled to credit that testimony, the defendants' argument is without merit.

21

**C.**

The defendants argue that the charge and the special verdict form erred by failing to distinguish between BTA and Almaty. Br. 11-12; Rep. 8-10.

This argument is without merit. Earlier in this case, the defendants themselves proposed jury instructions that referred to BTA and Almaty together as "Plaintiffs." ECF No. 524 (Sater Defendants); ECF No. 537 (MeM). But at the charge conference, the defendants requested for the first time that the Court treat the plaintiffs separately in the charge and special verdict form. Tr. 1440-41. The plaintiffs objected, arguing that the plaintiffs could present their evidence and receive a verdict jointly. Id. at 1441-42. In support of this argument, the plaintiffs relied on Cargill, Inc. v. WDS, Inc., No. 316-cv-848, 2018 WL 1525352, at *10 (W.D.N.C. Mar. 28, 2018). Id.

The Court agreed with the plaintiffs and ruled that because "the case has been tried with respect to the plaintiffs together" and the evidence showed that the money stolen from the plaintiffs "moved together through the system," "it would be difficult in this case and confusing [to the jury] to try and separate out [the plaintiffs]." Id. at 1443.

The defendants have failed to present any colorable reason to overturn that earlier ruling. The out-of-circuit cases relied on by the defendants are consonant with the Court's earlier

ruling; any judgment for the plaintiffs and against any of the defendants would provide "an identification of the parties for and against whom judgment is being entered." See Penn Terra Ltd. V. Dep't of Env't Res., 733 F.2d 267, 275 (3d Cir. 1984). And the defendants' attempt to distinguish Cargill fails. Although Cargill involved a parent-company plaintiff suing alongside its wholly owned subsidiary, Cargill's reasoning applies with equal force to this case. 2018 WL 1525352, at *1, *10.

Just as in Cargill, the plaintiffs' "claims arose from the same set of facts." 2018 WL 1525352, at *10. The evidence in the record showed that the defendants had tortiously obtained funds that were originally stolen from BTA or Almaty. See Plaintiffs' Proposed Findings of Fact ¶¶ 12-64; 76-78, ECF No. 682 (citing testimony & exhibits). The evidence also showed that the defendants then intermingled the funds originally stolen from Almaty and BTA. See id. ¶¶ 83-225 (citing testimony & exhibits).

It was therefore appropriate to "set out early in the trial that [the p]laintiffs were two separate entities," but thereafter, "reference[] them collectively as [p]laintiffs." Cargill, 2018 WL 1525352, at *10. No legal or practical reason prevented the case from being tried jointly as to the two plaintiffs without distinction as to how much of the total recovery should be appropriated to each plaintiff. Id.; Inter Med. Supplies Ltd. V. EBI Med. Sys. Inc., 975 F. Supp. 681, 691

23

(D.N.J. 1997). Accordingly, the jury properly awarded a total sum to both plaintiffs and against each of the defendants.

**D.**

The defendants argue that the punitive damages award against Sater must be vacated. Br. 13-16; Rep. 6-7. This argument is moot because the jury awarded punitive damages against Sater only on the plaintiffs' conversion claim. See Tr. 1777-84. Because the jury award on that claim must be vacated and a new trial provided, the defendants' request for vacatur of the punitive damages award against Sater is **denied** as moot.

**F.**

Finally, the defendants argue that the award of compensatory damages against the various defendants involved double or triple counting. Br. 16-19; Rep. 7-8. The opposite is true.

The jury was instructed as follows:

> [Y]ou should not award damages more than once for the same injury. For example, if the plaintiffs were to prevail on multiple claims and establish a one dollar injury, you should not award them one dollar compensatory damages on each claim -- the plaintiffs are only entitled to be made whole, not to recover more than they lost.

Tr. 1734. The Court also reiterated, "Remember that the amount of damages that you award may not exceed the total amount of damages incurred by the plaintiffs." Tr. 1753.

During its deliberation, the jury carefully followed that instruction. With respect to Bayrock, GHS, and MeM, and to a lesser extent Sater, the jury accepted Fliegler's testimony regarding the total amount of the plaintiffs' loss attributable to each of the defendants. See PTX-801 at 27, ECF No. 684-39. Then, to avoid double or triple counting damages for the same injury, even if occasioned by separate wrongs, the jury divided up the actual damages among the two or three theories of liability. See Tr. 1777-84.

With respect to the money had and received claim, the jury awarded the plaintiffs compensatory damages in the following amounts: $504,213.33 against Sater; $2,031,375.00 against Bayrock; $668,926.50 against GHS; and $343,000.26 against MeM. Tr. 1782-84. When doubled, the amounts awarded against Bayrock, GHS, and MeM almost exactly equal the total damages attributed by the plaintiffs' expert to each of the three defendants. PTX-801 at 27. Plainly, after finding each of Bayrock, GHS, and MeM liable for nearly the total amount determined by the plaintiffs' expert, the jury spread the totals across unjust enrichment and money had and received, the two theories of liability for which Bayrock, GHS, and MeM were found liable. See Tr. 1782-84.

Similarly, with respect to Sater, the jury found that the appropriate award of damages for the money had and received count was $504,213.33. Id. at 1782. On the other two counts, the

jury likewise found Sater liable for $504,212.33 in nonpunitive damages. Id. at 1777–78. The jury plainly spread the total amount of nonpunitive damages that the jury found against Sater across the three counts for which the jury found Sater liable. See id. at 1777–82.

The jury plainly calculated damages pursuant to the jury charge to avoid awarding additional damages for the same factual injury. See id. at 1753, 1777–82. And although the nonpunitive damages amount that the jury found Sater liable for was considerably less than the amount determined by the plaintiffs' expert, $16,587,640, Sater can hardly complain that the jury awarded less nonpunitive damages than the evidence indicated Sater had caused. See PTX-801 at 27.

Accordingly, the defendants' assertion that the jury double or triple counted damages is without merit. Although the jury awards on the conversion and unjust-enrichment counts must be vacated for the reasons explained above, because a new trial is unwarranted on the money had and received count, the damages award on the that count **remains valid.**

## V.

Because the Court has awarded a new trial on the plaintiffs' claims for conversion and unjust enrichment, the proposed judgment submitted by the plaintiffs is now moot. Moreover, there is no "just reason" to issue a judgment solely

on the money had and received claim. See Fed. R. Civ. P. 54(b).

Therefore, any application to enter the plaintiffs' proposed

judgment is **denied as moot.**

### CONCLUSION

The Court has considered all of the parties' arguments. To

the extent not specifically addressed, those arguments are

either moot or without merit. For the reasons explained above,

the defendants' motion pursuant to Rule 59(a)(1)(A) for a new

trial on the plaintiffs' claims for conversion and unjust

enrichment is **granted.** The defendants' motion for judgment

pursuant to Rule 50(b) on those claims is **denied.** The

defendants' motion for a new trial pursuant to Rule 59 or for

judgment pursuant to Rule 50(b) on the plaintiffs' claim for

money had and received is **denied.**

The parties should submit a joint status report by **January**

**27, 2025.**

The Clerk is directed to close ECF No. 676.

SO ORDERED.

Dated:     New York, New York
           January 15, 2025

                              _____
                                 John G. Koeltl
                         **United States District Judge**

27