UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN, ET AL.,

                        Plaintiffs,                    19-cv-2645 (JGK)

            – against –                                ORDER

FELIX SATER, ET AL.,

                        Defendants.

---

JOHN G. KOELTL, District Judge:

    The plaintiffs have filed motion _in limine_ Number 1 and an
omnibus motion _in limine_. Motion _in limine_ Number 1 seeks to
preclude the Sater defendants and MeM from offering various
categories of evidence related to Litco. The omnibus motion _in
limine_ comprises the plaintiffs' motions _in limine_ Numbers 2
through 5.

## I.

    The plaintiffs' motion _in limine_ Number 1 seeks to
preclude: (1) evidence of meetings between Arcanum and Litco or
Sater after Arcanum signed a non-disclosure agreement; (2)
testimony concerning alleged statements by Nicolas Bourg to
representatives of the plaintiffs; (3) evidence of the alleged
assistance that Litco provided to the plaintiffs; and (4)
evidence regarding the plaintiffs' motives for filing this
lawsuit.

**A.**

First, the plaintiffs move to preclude evidence of meetings between Arcanum and Litco or Sater after Arcanum signed a non-disclosure agreement. This would include evidence of a meeting in July 2015 between Sater and Peder Garske of Arcanum.

Arcanum had been hired by the plaintiffs to conduct asset recovery research. The plaintiffs, Arcanum, and Litco entered into a Confidential Assistance Agreement (the "CAA") dated June 12, 2015. Under the CAA, Litco agreed to provide assistance to Arcanum, "as agent to Kazakhstan, Almaty and BTA," in Arcanum's investigative and asset recovery efforts with respect to the funds that had been stolen from the plaintiffs. Ex. 1 to Schwartz Decl., ECF No. 731-1. Thereafter, Litco secured a Confidentiality and Non-Disclosure Agreement (the "NDA") from Arcanum dated July 8, 2025, which prohibited Arcanum from disclosing to anyone, including the plaintiffs and the plaintiffs' counsel, certain confidential information—namely, "the identities of Litco's members, or other persons having ownership interests in Litco." Ex. 2 to Schwartz Decl., ECF No. 731-2. The NDA also prohibited Arcanum from proffering any person with an ownership interest in Litco as a potential witness in any action contemplated by the CAA. Id.

The plaintiffs argue that the effect of this NDA was to prevent Arcanum from disclosing, and the plaintiffs from

learning, that Sater was the owner of Litco. Although the knowledge of an agent is ordinarily attributed to its principals, see, e.g., Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994), the plaintiffs contend that, in this case, that rule does not apply to attribute Arcanum's knowledge to its principals—namely BTA and Almaty—because Arcanum had the conflicting duty not to disclose any information about Sater's ownership of Litco or to produce Sater as a witness, see Restatement (Third) of Agency § 5.03 (A.L.I. 2006). That is significant, because the defendants claim that Litco produced Sater as a source of significant information for Arcanum, including information about the Tri-County Mall transaction, in the July 2015 meeting between Sater and Garske. The defendants argue that this shows that the plaintiffs had knowledge of the Tri-County Mall transaction, and Sater's role in diverting the proceeds from that transaction, at least as early as July 2015, and that this defeats the application of equitable estoppel. The plaintiffs respond that this is irrelevant because Arcanum's knowledge is not attributable to the plaintiffs in view of Arcanum's obligation under the NDA not to disclose Sater's identity. The plaintiffs contend, therefore, that all of the information about Litco's meetings with Arcanum after the NDA was signed should be excluded. The defendants do not respond to the argument that the

NDA precludes a finding that Arcanum's knowledge is attributable to the plaintiffs.

But the plaintiff's argument about the NDA does not make the evidence with respect to Litco and the meeting between Sater and Garske irrelevant to the issue of equitable estoppel. While Arcanum's knowledge of Sater's identity is not automatically attributable to the plaintiffs, that leaves the question what Arcanum did in pursuing any other information received from Sater, including any information with respect to the Tri-County Mall transaction if, indeed, Sater explained the Tri-County Mall transaction to Garske. That will depend on what the evidence shows with respect to what, if anything, Arcanum did with that information. To the extent that Arcanum learned anything from subsequently following up on the information received from Sater, that knowledge could be imputed to the plaintiffs if not covered by the NDA.

The Court could not find that the evidence is irrelevant to whether the plaintiffs discovered, or with the exercise of due diligence should have discovered, information about the Tri-County Mall transaction within the statute of limitations.

On the other hand, the evidence of the NDA itself is relevant to the defense of equitable estoppel from the plaintiffs' standpoint, because it could be used as evidence

4

that Sater sought to prevent his role in the Tri-County Mall transaction from being discovered.

These are questions for the jury. The Court could not exclude evidence of Litco's meetings with Arcanum after the NDA was signed on a motion in limine, nor should the Court prevent disclosure of what Sater allegedly told Garske in the meeting in July 2015. Therefore, the motion to exclude evidence of meetings between Arcanum and Litco or Sater after Arcanum signed the NDA is **denied.**

**B.**

Second, the plaintiffs move to preclude alleged statements by Bourg to representatives of the plaintiffs as hearsay. It is not clear precisely which statements are referred to in this part of the motion, and the defendants did not respond to this specific part of the motion at all in the opposition.

The basic rules of hearsay are clear. If there is out-of-court testimony about what Bourg allegedly told the plaintiffs, that would be hearsay and excluded if it is a third party recounting what Bourg told the plaintiffs and is offered for the truth of the alleged fact of what Bourg told the plaintiffs. See Fed. R. Evid. 801, 802. However, if Bourg testifies what he told the plaintiffs about the Tri-County Mall, that is not hearsay because it is not being offered for the truth, but rather for the fact that the plaintiffs obtained the knowledge of what

Bourg was saying, irrespective of whether it is true or not. Hearsay statements would be precluded, but non-hearsay statements would not be excluded. Accordingly, this portion of the motion in limine is **denied** without prejudice to the ability of the plaintiffs to object to the admissibility of specific statements at trial.

C.

Third, the plaintiffs seek to exclude evidence of the purported assistance provided by Litco to the plaintiffs. The defendants do not address this issue in their opposition. To the extent that the assistance Litco provided was information about one of the transactions at issue in this case, it should not be excluded, and therefore the motion in limine is **denied** in that respect.

D.

Fourth, the plaintiffs seek to preclude any evidence of the plaintiffs' alleged motives in bringing this case. The defendants appear to concede that they will not offer such evidence, and therefore they are **precluded** from offering such evidence.

E.

In passing, the defendants assert that they will offer evidence of what was communicated to the plaintiffs' counsel in November 2016. See ECF No. 749 at 6. But it is unclear what

6

evidence is being referred to, and the plaintiffs represent that there are no exhibits on the defendants' exhibit list that refer to any such meeting. It is impossible to rule on the admissibility of evidence of any such meeting without further information.

## II.

The plaintiffs' omnibus motion in limine contains motions in limine Numbers 2 through 5, to which the defendants have largely failed to respond.

### A.

In motion in limine Number 2, the plaintiffs seek to admit deposition and trial testimony from the related Triadou case and the first trial in this case. The plaintiffs argue that this testimony is admissible under Federal Rule of Evidence 804(b)(1) on the grounds that the various witnesses are unavailable and the parties with the same interests as the defendants had an opportunity and similar motive to examine the witnesses.

The plaintiffs have established that each of these witnesses is unavailable. Of the fourteen witnesses from the Triadou case whose testimony the plaintiffs seek to admit, one is dead, and the plaintiffs have been unable to secure the attendance of the remaining witnesses for trial. Therefore, the testimony of the witnesses from the Triadou case is admissible under Federal Rule of Evidence 804(b)(1). Similarly, there are

several witnesses who testified at the first trial in this case
who are now unavailable. And there is no dispute that the
defendants had a prior opportunity and similar motive to examine
these witnesses. The testimony of these witnesses is similarly
admissible under Federal Rule of Evidence 804(b)(1).

The only objection raised by the defendants is that the
testimony of these witnesses is unnecessary because the only
issue to be tried is the defense of equitable estoppel, and
particularly whether the plaintiffs acted with reasonable
diligence. But that is plainly wrong. At the new trial, the
plaintiffs have the obligation to prove that the defendants
committed the torts of which they are accused, namely conversion
for Sater and unjust enrichment for the Sater defendants and
MeM. In addition, the plaintiffs have the burden of proving
equitable estoppel to preclude the defense of the statute of
limitations, which would require a showing that the trial
defendants' "fraud, misrepresentation, or deception" prevented
the plaintiffs from filing this action. See ECF No. 711 at 10.

It is unquestionably true that much of the plaintiffs' case
showing that the funds that were eventually traced to the
defendants in this case were stolen from the plaintiffs could be
the subject of reasonable stipulations by reasonable attorneys,
and the trial could be expedited and focus on equitable
estoppel. But no such reasonable efforts have been forthcoming

8

from the parties in this case. Therefore, the Court could not foreclose the plaintiffs from putting on the necessary evidence to prove their claims.

The motion to admit the deposition and trial testimony from the Triadou case and the prior trial in this case is **granted**.

### B.

In motion in limine Number 3, the plaintiffs move to preclude evidence and argument of alleged persecution by non-parties of non-parties. This motion is unopposed. Therefore, the motion is **granted**. The parties should not refer to alleged political persecution by non-parties of non-parties. This instruction applies to all parties in this case.

### C.

In motion in limine Number 4, the plaintiffs seek to admit evidence of Sater's prior conviction for violation of RICO. For all of the reasons that the Court found that this conviction was properly admitted under Federal Rule of Evidence 404(b) in the first trial, it is similarly admissible in this trial. Trial Tr. at 229-32, ECF No. 655. The defendants fail to explain why the Court's prior ruling was incorrect. Similarly, the prior conviction would be admissible to impeach Sater under Federal Rule of Evidence 609, see id. at 232-34, and the defendants fail to explain why the Court's prior ruling was incorrect. Accordingly, the plaintiffs' motion is **granted**.

The plaintiffs also seek to preclude the defendants from introducing evidence of Sater's prior good acts, including his alleged good conduct in assisting the United States Government in various endeavors. The defendants appear to agree, arguing that "[w]hether Felix Sater is a good guy or a bad guy is irrelevant." ECF No. 750 at 2. The admissibility of prior good acts is disfavored under the Federal Rules of Evidence. See Fed. R. Evid. 608(b). Therefore, before attempting to introduce any evidence of Sater's alleged prior good acts, including any work for the United States Government, the defendants are ordered to raise the issue with the Court outside the presence of the jury and explain why the evidence is admissible under the Federal Rules of Evidence.

### D.

In motion in limine Number 5, the plaintiffs seek to prevent any evidence or argument as to Mendel Mochkin's character or character traits. There is no opposition to this motion, and the motion is **granted**. In the first trial, counsel for MeM engaged in plainly improper appeals to prejudice and sympathy by relying on, among other things, Mochkin's religion and attempting to compare his New York roots to the non-United States citizenship of the plaintiffs. The defendants are ordered not to repeat those tactics in the upcoming trial.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the reasons explained above, the plaintiffs' motion *in limine* Number 1 is **granted in part and denied in part**, and the plaintiffs' motions *in limine* Numbers 2-5 are **granted**.

The Clerk is respectfully directed to close ECF Nos. 727 and 729.

The conference scheduled for September 3, 2025 (ECF No. 760) is **canceled**.

SO ORDERED.

Dated:    New York, New York
          August 6, 2025

                                    _____
                                         John G. Koeltl
                                 United States District Judge

11