

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

October 5, 2025

**BY ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***City of Almaty, et. ano., v. Felix Sater, et. al.*****,**
**Case No. 19 Civ. 2645 (JGK) (KHP)**

Dear Judge Koeltl:

We represent Plaintiffs City of Almaty, Kazakhstan and BTA Bank. We write regarding the Sater defendants' application to read into the record aspects of Zhadyra Nartay's prior testimony in their defense case, [ECF No. 776], which we anticipate could begin as soon as Tuesday.

**Background**

As the Court is aware, Ms. Nartay was a witness at the prior trial in this matter who is unavailable now. Months ago, plaintiffs identified Ms. Nartay as a witness for this trial, provided defendants with designations of her prior testimony, and specifically moved *in limine* to admit that prior testimony. Despite having at least nine or ten opportunities to do so, defendants never designated any of her testimony themselves. [*See generally* ECF No. 774].

On October 1, 2025—the day that plaintiffs were to present Ms. Nartay's prior testimony by readback—in response to the defense's last-minute request to "read in the whole thing, for completeness," [Trial Tr. ("Tr.") at 182], Your Honor ruled:

> I set up a process in order to manage the trial efficiently, and with recognition that depositions and prior testimony take some effort to edit in a way that they could be presented to the jury. So, we had to deal with the process of designations, and then there are counter-designations, and there are objections, which I have to resolve in a timely way before the prior testimony or depositions could be presented to the jury.
>
> None of the counter-designations or objections were filed prior to trial, and I indicated in the motion in limine that Ms. Nartay's prior testimony could be admitted. There's nothing about the plaintiffs' letter that the defense disagrees with. The defense has said it has no objections to the portions that were designated, but, apparently, in the course of the discussions, said the defense wanted the cross-examination by Mr. Snyder also read or all or portions of that.



> In terms of counter-designations, that's plainly too late. And there are no objections to the plaintiffs' designations of Ms. Nartay's testimony.
>
> In my mind, that leaves open a question, which the parties don't have to address immediately, which is: If the defense wants, as part of its case, to designate portions of the cross-examination of Ms. Nartay, the defense can ask to do that as part of its case.
>
> Now, is that barred by any of my prior rulings? The parties really haven't briefed that issue, and you can explain it to me, but Ms. Nartay—the portions that have been designated by the plaintiffs for Ms. Nartay's testimony can be read as part of the plaintiffs' case today.
>
> With respect to any application to read any other portions of Ms. Nartay's testimony as part of the defense case, you all can argue that out to me, whether that's sufficient notice and whether it would be in violation of any of my prior rulings, something that really hasn't been addressed yet.

[Tr. at 183-84]. Defense counsel responded: "I'm sure we've defaulted on something, but I'm going to ask your Honor to take it nonetheless." [Tr. at 186].

On October 3, the Sater defendants submitted a letter requesting permission to read portions of Ms. Nartay's prior testimony into the record as part of their defense case. A single sentence was offered in support: "We ask the Court to allow this testimony into evidence for the sake of completeness and because there is no prejudice to Plaintiffs." [ECF No. 776]. Defendants' application should be denied.

**Argument**

**A. Defendants waived any ability to offer affirmative testimony by Ms. Nartay, which is barred by the Court's prior orders.**

As the Court observed, it has put in place "rules that the defendants have chosen not to follow." [Tr. at 178]. And as defense counsel has admitted with respect to Ms. Nartay's proposed testimony, they "defaulted on something." [Tr. at 186].

In fact, the defense defaulted on *numerous* opportunities to offer testimony from Ms. Nartay. As detailed in our September 30 letter [ECF No. 774], defendants did not designate or counter-designate any of Ms. Nartay's testimony in connection with the original May 2025 proposed final pretrial order. [ECF No. 724]. They did not designate any of Ms. Nartay's testimony in connection with the September 2025 amended proposed final pretrial order, either. [ECF Nos. 766, 767]. At the September 24 final pretrial conference, defense counsel indicated



that they objected to the admission of any testimony from the prior trial, but did not say anything about having designations of their own. Defendants also had no designations when we informed defense counsel the week prior to trial that we intended to call Ms. Nartay the first week and provided further cut-down designations. [ECF No. 772-3]. They had no designations when we filed those designations on the docket on September 29, 2025. [*Id.*]. They had no designations when we told them via e-mail that night that we would call Ms. Nartay by designation on Tuesday the 30th. They had no designations when we told them orally at lunch that day that we intended to read Ms. Nartay's testimony that afternoon. When Plaintiffs actually did try to call Ms. Nartay on the 30th, defense counsel objected to her testifying at all; they had no designations of their own. [Tr. at 146-47]. And just prior to Ms. Nartay testifying on October 1, defense counsel also failed to make specific designations but proposed via e-mail that the parties read in all of her prior testimony, including aspects of the direct that Plaintiffs did not designate—leading to the Court's ruling quoted above. (Defense counsel also proposed that plaintiffs be charged for all of the time of reading back the direct, including the portions that plaintiffs never designated).

Further, Ms. Nartay has never been on any version of defendants' witness list. [ECF Nos. 724, 767]. The Court has on multiple occasions set deadlines for the parties to identify any potential witnesses, whether live or by designation, and defendants failed to do so.

Rule V(A) of Your Honor's Individual Practice Rules requires a proposed joint pretrial order to include both "[a] statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition," as well as "[a] designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party." On April 10, 2025, Your Honor ordered that "the parties should submit by May 16, 2025, a proposed joint pre-trial order." [ECF No. 715]. The parties complied, but the proposed joint pretrial order did not identify Ms. Nartay as a defense witness, nor did defendants identify any portion of her prior testimony that it wished to introduce, either by way of counter-designation for completeness or affirmatively. [ECF No. 724].

When trial was adjourned, in a September 12, 2025 order, the Court gave defendants another chance, ruling that "the date for providing revised witness lists and exhibit lists for the Joint Pre-Trial Order is September 19, 2025." [ECF No. 766]. Again, the parties submitted a proposed joint pretrial order on September 19th, with defendants submitting a revised witness list. But defendants still did not identify Ms. Nartay as a potential defense witness or designate any of her testimony in any way. [ECF No. 767].

At the final pretrial conference on September 24, the Court reviewed the proposed joint pretrial order, including specifically observing that defendants' witness list "just includes Mr. Sater." [9/24/2025 Hr'g Tr. at 3]. The Court then turned to the Sater defendants' belated objection to Ms. Nartay's testimony, but defense counsel never suggested that it might wish to designate portions of Ms. Nartay's testimony, even conditionally. Following the conference, without objection, the Court so-ordered the final pretrial order, including its list of witnesses and designations. [ECF No. 769]. Defendants therefore defaulted on numerous opportunities to identify Ms. Nartay as a defense witness, but failed to do so.



      Nor can defendants argue that they were surprised that Ms. Nartay was appearing by designation rather than live. That fact was known to them long before trial, both via plaintiffs' designations but also, and definitively, through plaintiffs' motion *in limine*, which made a specific evidentiary showing of unavailability. [*See* ECF No. 730 at 1, 8]

Simply put, defendants' attempt to now call Ms. Nartay as a defense witness and introduce substantial aspects of her prior examination is too late, and contrary to the Court's procedures and prior rulings. Defendants *never* identified Ms. Nartay, and they offer no justification for doing so now; to the contrary, defendants acknowledged their default. The Court should enforce its prior orders and bar the defendants from calling an undisclosed witness and undisclosed designations in its defense case. [*Cf.* ECF No. 761 at 23-26 (order refusing to allow defendants to call a previously-unidentified witness)].

**B. None of the offered testimony is properly admitted "for the sake of completeness."**

To the extent that defendants rely on the rule of completeness to justify their lateness, that argument is legally and factually misplaced.

To begin with, this application is also too late. Federal Rule of Evidence 106 provides that "If a party introduces all or part of a statement, an adverse party may require the introduction, *at that time*, of any other part—or any other statement—that in fairness ought to be considered at the same time." As the advisory committee notes observe, "The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." If defendants had a valid completeness objection, the time to have made it was when plaintiffs offered Ms. Nartay's testimony—they certainly had at least several weeks to prepare their completeness designations.[1]

More importantly, none of the proffered designations are appropriately admitted under the rule of completeness. As the Second Circuit has explained:

> We have interpreted Rule 106 to require that a document be admitted when it is essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact. Underlying Rule 106, then, is a principle of fairness requiring the introduction of an entire or related document if necessary for the fair and impartial understanding of the admitted portion or document.

*Phoenix Assocs.*, 60 F.3d at 102 (cleaned up); *see also United States v. Ramsey*, No. 23-7211-CR, 2024 WL 5199288, at *2 (2d Cir. Dec. 23, 2024) ("The rule of completeness is violated only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." (cleaned up)); *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007); *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019); *United States v. Castro*,

---

1 To be sure, the Court has discretion to excuse defendants' waiver. *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995). But the argument is waived nonetheless.



813 F.2d 571, 575–76 (2d Cir. 1987); *United States v. Benitez*, 920 F.2d 1080, 1086–87 (2d Cir. 1990)). "[T]he rule 'permits a party to correct an incomplete and misleading impression' but 'does not permit a party to introduce . . . statements to affirmatively advance their own, alternative theory of the case.'" *Ramsey*, 2024 WL 5199288, at *2 (quoting *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021)); *see also, e.g., United States v. Blake*, 195 F. Supp. 3d 605, 610-11 (S.D.N.Y. 2016) ("Blake has not shown how her statements offering an alternative theory of the evidence are necessary to clarify or explain her statements regarding Conspiracy One that the Government intends to present." (citing *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996)).

Defendants fail entirely to identify the aspects of Ms. Nartay's testimony offered by plaintiffs that require completion, or how their designations satisfy the rule—which is by itself sufficient to deny their application. *See, e.g., Stryker v. HSBC Sec. (USA)*, No. 16-CV-9424 (JGK), 2021 WL 5279392, at *2 (S.D.N.Y. Nov. 11, 2021) ("The defendants also object on the grounds of completeness but there are no redactions in the document and it is impossible to know what other portion of the medical record the defendants contend should be considered at the same time for purposes of the rule of completeness.").

Far from it. There is nothing in the portions designated by defendants that is "essential" to explain Ms. Nartay's testimony or to "avoid misleading the trier of fact." *Phoenix Assocs.*, 60 F.3d at 102. To the contrary, the portions designated by defendants cover a variety of topics that were never touched upon by the testimony offered by plaintiffs, including some—such as testimony concerning Sater's release-based defense, or about the former president of Kazakhstan—that have no place in this trial at all and would be deeply misleading. The purpose of defendants' designations is entirely to "affirmatively advance their own, alternative theory of the case," *Glover*, 101 F.3d at 1190. Among the topics designated by defendants are:

- Whether BTA took any steps to figure out who it was releasing in the Litco agreement (a topic on which the witness had no personal knowledge). [ECF No. 776-1 (June 2024 Trial Tr.) at 321-23].
- Whether the witness was aware of "a lawsuit filed against Sater by Triadou in Supreme Court New York County right next door in the year 2013" (she wasn't, and there was in fact no such lawsuit). [*Id.* at 327].
- BTA's practice—"understanding [the witness was] not personally involved in the negotiation or execution" of such contracts—with respect to giving releases in contracts. [*Id.* at 328].
- The meaning of the phrase "Nazarbayev's wallet"—a phrase the witness had never heard before, and could only speculate about. [*Id.* at 328-30].
- Whether Ms. Nartay *personally* had done anything to investigate the "pretty heavy accusation" made by Mukhtar Ablyazov that the English High Court of Justice is corrupt, and that one of the judges involved was influenced by money "received from the Kazakhs." [*Id.* at 330-32; ECF No. 776-2 (June 2024 Trial Tr.) at 365-66].
- How much BTA had "spent on all the consultants and lawyers and Arcanum and all the different efforts to collect money supposedly stolen by Ablyazov" (the witness didn't know). [ECF No. 776-1 at 332-33; ECF No. 776-2 at 366].

- Litco's alleged entitlement to contingent compensation. [*Id.* at 776-2 at 365].
- Whether the witness had, overnight, consulted with others at BTA to obtain hearsay information about how much BTA has recovered via its asset recovery efforts (she hadn't). [*Id.* at 365-66].
- How BTA convinced Nicolas Bourg to "flip"—a topic about which Ms. Nartay had no first-hand information. [*Id.* at 382-86].
- Why BTA sued Ilyas Khrapunov in the United Kingdom when it did. [*Id.* at 388-89].
- A lawsuit filed by the City of Almaty, but not BTA, against Viktor Khrapunov in California in 2014—which, again, the witness didn't know anything about. [*Id.* at 390-91].

As should be clear from this recitation, none of the testimony offered by defendants is genuinely for completeness under Rule 106, and defendants' application certainly makes no effort to show otherwise. To the extent that that is the only justification offered by defendants for their violation of the Court's prior orders on the timing and sequence of witness disclosures and designations—which it is—it should be rejected.

**C. Much of the designated testimony is irrelevant, confusing, and prejudicial.**

Even if the defendants had properly identified Ms. Nartay as a defense witness *and* had timely provided their designations of her testimony, virtually all of their designations would be objectionable and inadmissible. Thus, it is far from true that "there is no prejudice to Plaintiffs." [ECF No. 776].

As set out above, some of the testimony designated by defendants simply has no place in this trial. For example, Sater's release-based defense—which was his leading argument at the first trial—is not at issue in this trial, having been conclusively rejected by the jury. [*See* ECF No. 702 at 6, 18-21]. The testimony identified by defendants concerning whether BTA knew who it was releasing, and its purported failure to ascertain the specific identities of everyone released, in the Litco agreement is thus irrelevant. *Id.* at 21 ("Based on the CAA's plain terms and the evidence in the record, the jury reasonably found that the defendants had failed to prove, by a preponderance of the evidence, the affirmative defense of release. A new trial on that issue is unwarranted.").

Worse, most of the proposed testimony concerns items about which the witness had no personal knowledge and disclaimed any information about. As the Court will (we anticipate) instruct the jury at the end of the case, a lawyer's questions are not evidence; only the witnesses' answers are. Much of the designated testimony concerns topics that the witness did not know anything about, and about which there will be no other evidence at this trial. Allowing the defense to introduce those portions of Ms. Nartay's prior testimony thus seriously risks confusing the jury and prejudicing the plaintiffs. *See Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *5 (S.D.N.Y. July 30, 2021) (holding testimony would "risk … confusing the issues" where witness "has no personal knowledge regarding the events in question").

To take just one example, defendants designate more than a full page of testimony concerning what the questioner describes as a 2014 lawsuit filed by the City of Almaty against

Viktor Khrapunov in California. [ECF No. 776-2 at 390-91]. But that lawsuit did not involve BTA, and the best the witness could say was "I may have heard about that, but I do not know and recollect details." [*Id.* at 390]. The defense did not identify any documents concerning that lawsuit—which has nothing whatsoever to do with Sater—as trial exhibits, and no other witness could testify about it based on personal knowledge. If this designation is permitted, it risks that the *only* information about that lawsuit before the jury would be the designated *questions*—which means that there would be no actual evidence at all. In such circumstances, the designations are incredibly confusing and prejudicial. *See Borgella v. Bell*, No. 1:18-CV-2026, 2019 WL 2527293, at *6 n.7 (E.D.N.Y. June 19, 2019) ("Although [the witness] answered [certain] questions in the negative, and the jury was instructed that 'the questions the attorneys ask during the trial are not evidence,' the jury might nonetheless have inferred that the [questioning attorney] had a basis to ask these questions" (internal citations omitted)); *see also Lee v. City of Troy*, 339 F.R.D. 346, 370 (N.D.N.Y. 2021) (holding that instruction to jury that "arguments of counsel were not evidence" was not sufficient to "undo the prejudice in this case"). So, too, with the defendants' designations about a variety of other matters, noted above, about which the witness denied having any knowledge. A complete chart of evidentiary objections to the designated testimony, of the sort plaintiffs would have submitted had it been timely designated, is attached as Exhibit A.

Further, and relatedly, plaintiffs would be prejudiced by the admission of these designations because it injects evidence and information into this trial about which plaintiffs had no notice, and were unable to prepare for. Had defendants timely provided notice of their intent to designate Ms. Nartay's testimony in accordance with the Court's rules, plaintiffs could and would have prepared differently, including potentially eliciting different testimony from other witnesses, calling additional witnesses, and introducing additional documentary evidence. The Court's rules are designed to avoid trial by surprise, which is exactly what defendants are trying—without any proffered justification—to do.

**Conclusion**

For the foregoing reasons, the Court should exclude the proposed designations by defendants. If the Court is inclined to permit some of the designations, plaintiffs in fairness should be permitted to make appropriate counter-designations and to introduce appropriate other evidence in a rebuttal case.

Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*
Matthew L. Schwartz

# EXHIBIT A

## Plaintiffs' Objections to Defendants' Proposed Designations of the Trial Testimony of Zhadyra Nartay

June 13, 2024 Testimony

| Sater Defendants' Proposed Designations [ECF No. 776-1] | Plaintiffs' Objections |
|---|---|
| 319:3-320:25 | Not genuinely for completeness under Rule 106.<br><br>319:17-24:<br>- Asked and answered in testimony designated at 319:14-16.<br>- Vague and compound as to "something that you would have been told by somebody else, not something that you would have known personally," rendering testimony prejudicial and confusing (403)<br><br>320:2-12:<br>- Asked and answered in testimony designated at 319:5-7.<br>- Vague and compound as to "what the bank might have known or not based on what somebody else might have known or not based on what a piece of paper may have said," rendering testimony prejudicial and confusing (403) |
| 322:2-323:10, 323:23-324:12 | - Not genuinely for completeness (106)<br>- Irrelevant (401), including because the Court already held that Sater's release-based defense is not at issue in this trial. *See* ECF No. 702 at 21 ("A new trial on that issue [the release defense] is unwarranted."); ECF No. 703 at 6 (Court acknowledging that it declined to set aside the jury's verdict on Sater's release defense).<br>- Lacks personal knowledge (602), including because Ms. Nartay specifically testified she was not involved in the negotiation or execution of the Litco agreement.<br>- Prejudicial and misleading (403) |
| 327:7-20 | - Not genuinely for completeness (106)<br>- Lacks personal knowledge (602), including because Ms. Nartay specifically testified she was not aware of the purported filing to which the question refers.<br>- Confusing, vague, and lacks foundation and vague as to "that filing" (403/901) |

| | |
|---|---|
| | - Prejudicial and misleading (403), including because there was no such lawsuit "filed against Sater by Triadou in Supreme Court New York County." |
| 328:5-329:1;<br>329:4-329:13;<br>329:18-330:8 | - Not genuinely for completeness (106)<br>- Irrelevant (401), including because the Court already held that Sater's release-based defense is not at issue in this trial. *See* ECF No. 702 at 21 ("A new trial on that issue [the release defense] is unwarranted."); ECF No. 703 at 6 (Court acknowledging that it declined to set aside the jury's verdict on Sater's release defense).<br>- Lacks personal knowledge (602) and irrelevant (401), including because Ms. Nartay testified she was not involved in the negotiation or execution of the Litco agreement.<br>- Lacks personal knowledge (602) and irrelevant (401), including because Ms. Nartay testified she did not know the meaning of the phrase "Nazarbayev's wallet."<br>- Violates *in limine* ruling regarding political persecution. *See* ECF No. 762 at 9.<br>- Prejudicial and misleading (403) |
| 330:11-331:10; 331:13-331:21 | - Not genuinely for completeness (106)<br>- Lacks personal knowledge (602), including because Ms. Nartay testified she did not "look[] into whether or not Tony Blair and the money he received from the Kazakhs influenced his brother in the administration of justice in the U.K." and she could not testify "whether Mr. Ablyazov's accusations have any weight" (331:13-21).<br>- Violates *in limine* ruling regarding political persecution. *See* ECF No. 762 at 9.<br>- Irrelevant, confusing, and prejudicial (401/403)<br>- Includes a question by counsel (331:8-10) but no answer by the witness. |
| 332:3-332:19;<br>332:21, 333:2-19 | - Not genuinely for completeness (106)<br>- Lacks personal knowledge (602), including because Ms. Nartay testified she did not know how much money has been recovered by BTA.<br>- Irrelevant, confusing, and prejudicial (401/403)<br>- Includes a question by counsel (332:15-19) but no answer by the witness. |

June 14, 2024 Testimony

| **Sater Defendants' Proposed Designations [ECF No. 776-2]** | **Plaintiffs' Objections** |
|---|---|
| 365:5-9; 365:18-367:17 | - Not genuinely for completeness (106)<br>- Lacks personal knowledge (602) and irrelevant (401), including because Ms. Nartay testified she did not know how much money has been recovered by BTA.<br>- Calls for hearsay to the extent the questions ask what Ms. Nartay was able to "find out from your accounting department" (802)<br>- Irrelevant and prejudicial (401/403) |
| 382:25-383:5; 383:11-386:7 | - Not genuinely for completeness (106)<br>- Irrelevant and prejudicial (401/403)<br>- Lacks personal knowledge (602), including because Ms. Nartay testified she did not understand counsel's use of the word "flip" (383:13-18), she could not comment on the reasons Mr. Bourg became a cooperator (385:7-8), and she did "not know specifics of the agreement between BTA and Nicolas Bourg" (385:22-23). |
| 388:15-390:13 | - Not genuinely for completeness (106) |
| 390:16-24; 391:4-25 | - Not genuinely for completeness (106)<br>- Lacks personal knowledge (602), including because Ms. Nartay testified she did not know anything about a lawsuit filed by the City of Almaty against Viktor Khrapunov in 2014 (a time before she even began working at BTA).<br>- Irrelevant and prejudicial (401/403) |