**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CITY OF ALMATY, KAZAKHSTAN
and BTA BANK JSC,

                Plaintiffs,

      v.

FELIX SATER, DANIEL RIDLOFF, BAYROCK
GROUP INC., GLOBAL HABITAT SOLUTIONS,
INC., RRMI-DR LLC, FERRARI HOLDINGS LLC,
and MEM ENERGY PARTNERS LLC,

                Defendants.

No. 19 Civ. 2645 (JGK) (KHP)

## OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 50 AND RULE 59 POST-VERDICT MOTIONS

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Counsel for Plaintiffs*
*City of Almaty, Kazakhstan and*
*BTA Bank JSC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. iii

PRELIMINARY STATEMENT.......................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

I.  THE COURT SHOULD DENY THE SATER DEFENDANTS' MOTION. .................... 4

    A.  The Jury Instructions and Special Verdict Form Were Appropriate. ...................... 4

    B.  The Jury Did Not Double or Triple Count Damages. .............................................. 6

    C.  The Sater Defendants' Belated Evidentiary Objections Do Not Warrant Rule
        59 Relief.................................................................................................................. 8

II.  THE COURT SHOULD DENY DEFENDANT MEM'S MOTION. ............................. 12

    A.  The Jury Properly Decided Whether Equitable Estoppel Applies. ....................... 12

        1.  MeM Consented to a Jury Trial on Equitable Estoppel. .......................... 13

        2.  The Factual Questions Concerning Defendant MeM's Acts of
            Concealment Were Best Decided By a Jury.............................................. 15

        3.  Even If Decided By the Court, the Defendants Are Still Equitably
            Estopped from Raising the Statute of Limitations Defense...................... 16

    B.  MeM's Other Arguments Are Meritless................................................................. 17

        1.  The Court Has Already Upheld the Verdict for Money Had and
            Received..................................................................................................... 17

        2.  MeM Failed to Preserve Its Arguments at Trial for Judgment as a
            Matter of Law............................................................................................ 18

        3.  Even if Preserved, MeM's Arguments Raised in Its Notice of Motion
            Should Be Rejected.................................................................................... 19

CONCLUSION................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Absolute Software, Inc.*,
  744 F. Supp. 3d 277 (W.D.N.Y. 2024) ................................................................. 9

*Broadnax v. City of New Haven*,
  415 F.3d 265 (2d Cir. 2005) .............................................................................. 15

*Cargill Inc v. WDS, Inc.*,
  2018 WL 1525352 (W.D.N.C. Mar. 28, 2018) ................................................. 4, 5

*CF 135 Flat LLC v. Triadou SPV S.A.*,
  No. 156834/2015 (Jul 7, 2015) .......................................................................... 21

*Curtis v. Lother*,
  415 U.S., 189 (1974) ......................................................................................... 22

*General Stencils Inc. v. Chiappa*,
  18 N.Y.2d 125 (N.Y. 1966) ......................................................................... 12, 16

*Grassi v. Lockheed Martin Federal Sys., Inc.*,
  186 F.R.D. 277 (N.D.N.Y 1999) ......................................................................... 8

*Indu Craft, Inc. v. Bank of Baroda*,
  47 F.3d 490 (2d Cir. 1995) .................................................................................. 7

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) .............................................................................. 19

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
  274 F.3d 706 (2d Cir. 2001) .............................................................................. 16

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024) ............................................................... 20

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) ........................................................................ 18, 19

*Manley v. AmBase Corp.*,
  33 F.3d 237 (2d Cir. 2003) .................................................................................. 3

*Mindspirit, LLC v. Evalueserve Ltd.*,
  470 F. Supp. 3d 366 (S.D.N.Y. 2020) ................................................................. 3

*Munn v. Hotchkiss Sch.*,
  24 F. Supp. 3d 155 (D. Conn. 2014) ................................................................. 18

*Pecorino v. Vutec Corp.,*
   6 F. Supp. 3d 217 (E.D.N.Y. 2013) ......................................................................... 21

*Raedle v. Credit Agricole Indosuez,*
   670 F.3d 411 (2d Cir. 2012) ..................................................................................... 3

*Rhee-Karn v. Lask,*
   2025 WL 2450731 (S.D.N.Y. Aug. 26, 2025)................................................... 19, 21

*Rockwell v. United States,*
   549 U.S. 457 (2007).................................................................................................. 22

*Samuels v. Air Transp. Loc. 504,*
   992 F.2d 12 (2d Cir. 1993) ....................................................................................... 3

*Sequa Corp. v. Gbj Corp.,*
   156 F.3d 136 (2d Cir. 1998) ..................................................................................... 3

*Tatum v. City of New York,*
   668 F. Supp. 2d 584 (S.D.N.Y. 2009) ...................................................................... 3

*TSNY Management LLC, v. Partnership 93 L.P.,*
   08 CV 1266 (CLP), 2010 WL 11627255 (E.D.N.Y. Nov. 1, 2010) ......................... 16

*Wade v. Orange Cnty. Sheriff's Off.,*
   844 F.2d 951 (2d Cir. 1988) ................................................................................... 17

**Rules**

Fed. R. Civ. P. 59.................................................................................................... 9, 24

Fed. R. Civ. P. (b) ......................................................................................................... 4

Fed. R. Civ. P. 16(c)(2)(A) .......................................................................................... 22

Fed. R. Civ. P. 16(d) .................................................................................................... 22

Fed. R. Civ. P. 39(c) .............................................................................................. 12, 15

Fed. R. Civ. P. 39(c)(2) .......................................................................................... 12, 13

Fed. R. Civ. P. 50(a)(1) ................................................................................. 3, 18, 19, 24

Fed. R. Civ. P. 59(a) ...................................................................................................... 3

Fed. R. Evid. 608(b)....................................................................................................... 9

Local Rule 7.1(a)(2).................................................................................................. 8, 19

Plaintiffs the City of Almaty, Kazakhstan and BTA Bank JSC (together, "Plaintiffs") respectfully submit this memorandum of law in opposition to defendants' Post-Verdict Motions under Federal Rules of Civil Procedure 50 and 59. [ECF Nos. 801 ("Sater Defs. Mot"), 805 ("MeM Mot."), 802 ("Sater Defs. Br."), 806 ("MeM Br.").]

## PRELIMINARY STATEMENT

Two separate juries concluded that Felix Sater, Bayrock Group, Global Habitat Solutions (together, the "Sater Defendants"), and MeM Energy Partners ("MeM") laundered and misappropriated tens of millions of dollars stolen from Plaintiffs. The evidence at trial and on which the juries relied demonstrated overwhelmingly that these defendants knowingly participated in a global money laundering scheme and profited at Plaintiffs' expense. Both juries carefully applied the Court's legal instructions and parsed the verdict forms, awarding Plaintiffs non-duplicative damages on each claim against each defendant, with additional punitive damages against Sater for his shocking and offensive conduct. The first jury found defendants liable for money had and received, and "the damages award on that count remains valid." [ECF No. 702 at 26.][1] The second jury again found Sater liable for conversion (and punitive damages), and all defendants liable for unjust enrichment. The Court should uphold these verdicts.

Now, following the second verdict, the Sater Defendants raise the exact same arguments they raised after the first trial and which the Court has already rejected. The Sater Defendants' brief makes two arguments, that: (i) Plaintiffs were required to disaggregate damages between Almaty and BTA; and (ii) the juries' separate findings on each of their three claims constitute "double counting." The Court has more than once rejected these arguments, and the Court should

---

[1]    Unless otherwise indicated, in all record and case citations, all internal quotation marks and citations, brackets, and other alterations are omitted, and all emphases are added.

do so again—not least of all because the Sater Defendants have taken additional steps constituting affirmative waiver, including failing to submit jury instructions or a proposed verdict form that treated the Plaintiffs separately. As with the first trial, "the evidence showed that the money stolen from the plaintiffs moved together through the system, it would be difficult in this case and confusing to the jury to try and separate out the plaintiffs. ... Accordingly, the jury properly awarded a total sum to both plaintiffs and against each of the defendants." [ECF No. 702 at 22-24 (Order denying defendants' first post-trial motions).]

And as to damages, like the first jury, the second jury also "carefully followed" the instruction—repeated numerous times on the verdict form itself—that "the amount of damages that you award may not exceed the total amount of damages incurred by the plaintiffs." *Id.* at 24-25. As explained below and in Plaintiffs' motion in support of their proposed judgment, [ECF No. 792], both juries "plainly calculated damages pursuant to the jury charge to avoid awarding additional damages for the same factual injury." [ECF No. 702 at 26.] And as to the combined effect of the two verdicts, the defendants entirely fail to respond to Plaintiffs' proposed judgment and the Court's ability to use remittitur to reduce any possibility of a duplicative recovery.

MeM's motion fares no better. MeM argues that the jury was not permitted to decide equitable estoppel, but MeM itself advocated for this to be decided by the jury and never objected to a jury trial on this issue. Furthermore, equitable estoppel depends on facts that were deeply intertwined with the underlying claims, making a jury trial entirely appropriate on all claims and this defense.

The Court should deny both motions.

## **LEGAL STANDARD**

Under Rule 50, a movant must show that, after full hearing on an issue at trial, "a reasonable jury would not have a legally sufficient evidentiary basis" to resolve that issue in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1). Where, as here, the jury deliberated and returned its verdict, a motion to set aside that verdict "should be denied unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 14 (2d Cir. 1993). In other words, a court may set aside a jury's verdict "only when there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against him." *Id*.

For the Court "to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or [that] the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." *Tatum v. City of New York*, 668 F. Supp. 2d 584, 598 (S.D.N.Y. 2009) (citing *Manley v. AmBase Corp.*, 33 F.3d 237, 244 (2d Cir. 2003)). Furthermore, "it is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *Mindspirit, LLC v. Evalueserve Ltd.*, 470 F. Supp. 3d 366, 377 (S.D.N.Y. 2020). "[T]rial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

3

I.      **THE COURT SHOULD DENY THE SATER DEFENDANTS' MOTION.**

The Sater Defendants argue, under Rule 50(b), that Plaintiffs were required to "separately" prove which Plaintiff lost each dollar and that the jury's damages award constitutes "double counting." Neither argument is correct, let alone sufficient to warrant vacating the jury's verdict.

A.      **The Jury Instructions and Special Verdict Form Were Appropriate.**

The Sater Defendants contend that the verdict must be overturned because the jury did not make separate findings as to the exact amount stolen from each Plaintiff individually, and because the Jury Instructions and Special Verdict Form did not refer to Plaintiffs as separate, individual parties, rather than as a "single entity." Sater Defs. Br. at 7. Not so.

The Court has already considered and rejected this argument several times. Before the first trial, the defendants submitted proposed jury instructions that did not break out the Plaintiffs individually. [ECF No. 524.] It was not until the charge conference at the first trial that the Sater Defendants raised this issue for the first time, and the Court rejected their application. *See* First Trial Tr. at 1441-43. The Court "agree[d] with the plaintiffs that the case has been tried with respect to the plaintiffs together and the money that was taken which then moved together through the system as the expert testified to. So it would be difficult in this case and confusing to try and separate out the City of Almaty and BTA Bank." *Id.* at 1443.

Then, the Sater Defendants submitted a post-trial brief making a nearly identical argument as that in their present motion. The Court disagreed and held "the jury properly awarded a total sum to both plaintiffs and against each of the defendants." *See* [ECF No. 702 (Memorandum Opinion and Order) at 22-24.] Relying on *Cargill Inc v. WDS, Inc.*, 2018 WL 1525352, at *10 (W.D.N.C. Mar. 28, 2018), the Court determined that the trial evidence demonstrated "that the defendants had tortiously obtained funds that were originally stolen from BTA or Almaty" and

"that the defendants then intermingled the funds originally stolen from Almaty and BTA."  [ECF No. 702 at 23.]

Prior to the second trial, no defendant submitted proposed jury instructions at all, nor did any defendant raise this issue in connection with Joint Pretrial Order or at the Final Pretrial Conference, or otherwise.  [ECF No. 769 (Joint Pretrial Order) at 5]; PTC Tr. at 12:11-12 (defendants agreeing with the Courts proposed description of equitable estoppel to the jury).  It was not until the Court invited the parties to submit proposed Special Verdict Sheets, Trial Tr. at 337, that the Sater Defendants finally re-raised the issue—and even then, they did not submit their own verdict form, but raised the issue in a letter in response to Plaintiffs' proposal, arguing in a single paragraph without benefit of citation that "[t]he jury should be asked to make a determination regarding, for instance, how much money belonging to BTA was taken by Sater (etc) and how much money belonging to Almaty was taken."  [ECF No. 783.]

The Court again rejected this request, noting the Sater Defendants' waiver:

First, the request to separate on the verdict form BTA and the City of Almaty is denied, for the reasons that I've already explained, including the fact that it would be unnecessary and confusing to the jury, not required, and any request is waived because it was not included in any proposed special verdict form until the close of the evidence. And the defendants knew that from the first trial.

Trial Tr. at 803. *See Cargill*, 2018 WL 1525352, at *10 ("[C]ollective references to Plaintiffs was appropriate and necessary to avoid jury confusion and to avoid the possibility of an excessive or duplicative award of damages.").

Now, for a fourth time, the Sater Defendants "have failed to present any colorable reason to overturn that earlier ruling," not citing even one legal authority to support their argument. [ECF No. 702 at 22.] Plaintiffs proved (and the jury found) that the defendants received funds traceable to both Plaintiffs. *Compare* Trial Tr. at 1048 (instructing the jury that "the plaintiffs must demonstrate that the defendants knowingly received the benefit of the funds that were

misappropriated from the plaintiffs."), *with* October 10, 2025 Trial Tr. at 17-24 (jury verdict finding all defendants liable for unjust enrichment).[2] Plaintiffs' expert also testified about the asset tracing, which showed that funds misappropriated by Mukhtar Ablyazov from BTA and by Viktor Khrapunov from Almaty were commingled, laundered, and coinvested in the U.S. by the defendants. *See, e.g.*, Trial Tr. at 714-15.

Defendants' claim that the jury "never considered Almaty and BTA as separate, individual parties," Sater Defs. Br. at 4, is therefore pure speculation. If anything, apportionment is an issue for Plaintiffs to resolve among themselves—not a defense to liability. The important thing is that the jury evaluated the individual liability of each *defendant* for no more than the injuries each defendant caused. *See* Trial Tr. at 1042 (instructing the jury that "[e]ach defendant is entitled to your separate consideration.").

**B.    The Jury Did Not Double or Triple Count Damages.**

The Sater Defendants next argue that the Court should "limit" damages to a single award because Plaintiffs presented "three legal theories" aimed at "the same pot of money." Sater Defs. Br. at 5. This is the same argument, almost verbatim, that the Sater Defendants raised following the first trial. *Compare* Sater Defs. Br. at 5, *with* Sater Defs. 2024 Br. at 16-19 [ECF No. 685 at 19-22.] The Sater Defendants' argument for this proposed "limit" misstates the law and wholly disregards the fact that the jury was specifically instructed to, and already did, avoid double counting. The Court should reject this argument as it did the first time, *see* [ECF No. 702 at 26], particularly in light of the efforts that Plaintiffs have made in their proposed judgment—totally

---

[2]    The transcript for the ninth day of trial begins its pagination at page 1, rather than continuing the numbering from the previous day. To avoid confusion, we cite the day nine transcript as "October 10, 2025 Tr. at _."

ignored in the Sater Defendants' motion—to ensure that the jury's verdicts do not result in an even arguably outsized award.

The Sater Defendants cite no adequate authority to support their proposed "maximum judgment" against each defendant. The one case they cite—*Indu Craft, Inc. v. Bank of Baroda*—makes clear that "[a] jury's award is not duplicative simply because it allocates damages under two distinct causes of action." 47 F.3d 490, 497 (2d Cir. 1995). In *Indu Craft*, a jury awarded the plaintiff damages on a tort claim and a breach of contract claim. *Id.* The Second Circuit rejected the trial court's holding that the awards were duplicative for the same injury and found no impermissible double recovery. *Id.* ("A jury's award is not duplicative simply because it allocates damages under two distinct causes of action.").

So too here. The Sater Defendants have "made no showing other than the allocation of the award" to support their motion. *Indu Craft*, 47 F.3d at 497. Plaintiffs' memorandum in support of the Proposed Judgment explains that each of Plaintiffs' three claims are distinct causes of action with distinct elements—not "legal theories." *See* [ECF No. 792 at 5-8]; *see also* [ECF No. 791 (Proposed Judgment).] And Plaintiffs proved to the jury the specific amounts of damages they suffered for each claim. *See, e.g.*, [ECF No. 792-1 (PTX-801 excerpted).] The Court also already determined that—in both trials—the jury appropriately applied the Court's repeated instructions to avoid double counting. *See, e.g.*, [ECF No. 702 at 26 (the first jury "plainly calculated damages pursuant to the jury charge to avoid awarding additional damages for the same factual injury")]; October 10, 2025 Trial Tr. at 30 (Court acknowledging that "The [second] jury returned a verdict. I instructed them correctly on the issue of not double-counting").

Plaintiffs' Proposed Judgment also reconciles any arguable overlap between the first and second verdicts. *See* [ECF No. 791 at 2-5.] The Sater Defendants chose to ignore the Court's

specific instruction to "include in their post-verdict, pre-judgment motions ... any motions for remittitur," [ECF No. 794], and instead fail to point to *any* authority that would justify replacing the juries' considered verdicts with their proposed damages amounts. As set out in Plaintiffs' brief in support of their proposed judgment, the figures reflected in the proposed judgment are entirely consistent with the trial evidence and the damages available under the three claims on which defendants have been found liable, and harmonizes the verdicts to ensure that there can be no legitimate claim of double-counting.

### C.    The Sater Defendants' Belated Evidentiary Objections Do Not Warrant Rule 59 Relief.

The Sater Defendants' Notice of Motion lists four evidentiary grounds on which the Sater Defendants urge "the Jury Verdict must be vacated."  Sater Defs. Mot. at 2-4.  These are literally the same arguments—cut and pasted—that the Sater Defendants raised in their notice of motion pursuant to Rule 59 following the first trial. *Compare id.*, *with* 2024 Sater Defs. Notice of Mot. at 5-7 [ECF No. 676 at 5-7.] Like in the first trial, the Court should reject these arguments. *See* [ECF No. 702 at 27.]

To start, the Sater Defendants did not explain these arguments in their brief. *See* [ECF No. 802 at 2 (making clear that the "portion of the Notice of Motion addressed to Rule 59 are not covered in this Memorandum" and reserving "the right to raise Rule 59 issues, and any other appropriate issues, in response to the entry of a final judgment").] The Court should deny the Sater Defendants' Rule 59 motion as abandoned. *See* Local Rule 7.1(a)(2) (mandating a "memorandum of law, setting forth the cases and other authorities relied on in support of the motion"); *see also, e.g.*, *Grassi v. Lockheed Martin Federal Sys., Inc.*, 186 F.R.D. 277, 278 (N.D.N.Y 1999). Certainly, the Sater Defendants should not be permitted to raise certain Rule 59 issues now, and others later, if and when the Court does not rule in their favor the first time around.

Further, Rule 59 is not a vehicle to relitigate evidentiary rulings. *See Van Brunt-Piehler v. Absolute Software, Inc.*, 744 F. Supp. 3d 277, 286 (W.D.N.Y. 2024) (denying Plaintiffs motion for a new trial because it "largely seek[s] to relitigate certain evidentiary rulings that were resolved at trial"). Here, the Court properly excluded, across two trials, evidence that was irrelevant and prejudicial. The Sater Defendants should not be permitted to recast the Court's evidentiary rulings as purported legal defects in the jury verdicts.

But even if the Court were to find that the Sater Defendants' Rule 59 arguments are not abandoned or improper (they are), none of the excluded evidence is probative of whether Sater and his entities laundered stolen funds and its exclusion—to the extent it was actually excluded— does not warrant vacatur.

*First*, the Sater Defendants claim they were "completely hamstrung" because the Court excluded evidence of Sater's "full experience with money laundering" and "his professional biography"—specifically, evidence of Sater's purported cooperation with the U.S. government. Sater Defs. Mot. ¶¶ 3-4. The first problem with this argument is that the Court never excluded this evidence. To the contrary, in response to Plaintiffs' motion in limine seeking to exclude Sater's "prior good acts, including his alleged good conduct in assisting the United States government in various endeavors," the Court declined to issue such an order. [ECF No. 762 at 10.] Instead, noting that such evidence is disfavored under Federal Rule of Evidence 608(b), the Court required Sater to "raise this issue outside of the presence of the jury and explain why the evidence is admissible" before attempting to introduce it. [*Id.*] Sater never took advantage of this opportunity, failing at any point before or during trial to identify specific evidence or argument concerning his alleged "experience with money laundering." The specific items mentioned in Sater's notice of motion— his alleged assistance concerning Mafia pump-and-dump schemes, Al Qaeda, Russian hacking

rings, and assassination attempts against American leaders—are things that in many cases he has literally never mentioned in the more than five years that this case has been litigated, let alone precluded from advancing due to an order from the Court. While it would have been entirely appropriate for the Court to exclude such evidence as irrelevant, unduly prejudicial, and improper rehabilitation, the fact that Sater never actually sought to introduce this evidence at trial is fatal to his (abandoned) argument.

*Second*, Sater's argument that such evidence was necessary to explain the "circumstances under which" Plaintiffs "would hire Sater to lead the hunt for Ablyazov money" fails for the same reason. Sater Defs. Mot. ¶ 4. Moreover, the evidence was overwhelming that the Plaintiffs did not at any point knowingly hire Sater; Sater deliberately hid his identity as Litco's owner from Plaintiffs. *See, e.g.*, Trial Tr. at 215 (Nartay: BTA did not "have any reason to believe that Litco had any association with Felix Sater whatsoever"). That being so, Sater's purported background in money laundering could not have been a reason why Plaintiffs entered into a contract with Litco. And regardless, any evidence of Plaintiffs' reasons for contracting with Litco would not be probative of whether Sater and his entities laundered and stole Plaintiffs' funds, and the Sater Defendants offer no argument otherwise.

*Third*, the Court was not inconsistent in its rulings on post-CAA evidence and Sater was not prevented "from putting on a robust defense." Sater Defs. Mot. ¶ 5. In the first trial, Sater could and did argue his release-based defense, which the jury rejected. *See, e.g.*, First Trial Tr. at 1777. The release was not part of the second trial. *See, e.g.*, [ECF No. 702 at 20-21 (stating "[b]ased on the CAA's plain terms and the evidence in the record, the jury reasonably found that the defendants had failed to prove, by a preponderance of the evidence, the affirmative defense of release. A new trial on that issue is unwarranted.").] But that did not stop defendants from using

post-CAA evidence. *See, e.g.*, Trial Tr at 632, 830, 842. In fact, at one point, Plaintiffs and the Court agreed for Sater's counsel to elicit testimony about the releases in the CAA for a limited purpose. *See* Trial Tr. at 809-10. And, other than Sater's description of his summer 2015 meeting with Peder Garske and limited excerpts of the recording of that meeting—which were introduced exactly as Sater wished—Sater never attempted to introduce any other post-CAA evidence. There was in fact not a single exhibit or area of testimony that Sater sought to introduce about his post-CAA work at the second trial that the Court rejected. In fact, the Court expressly denied Plaintiffs' first motion in limine, which sought to exclude most post-CAA evidence. [ECF No. 762 at 5.]

*Fourth*, the Sater Defendants' "alternative theory" that Plaintiffs "knew all along" that Sater owned Litco is unsupported by any admissible evidence, and in any event the Sater Defendants were not prevented from advancing this theory. To the contrary, they opened on the notion that Sater "made the money [for Khrapunov] and then when he realized what was going on, he started to work with the plaintiffs to recover the money." Trial Tr. at 61. And Sater himself testified that Plaintiffs "1,000 percent" knew "who they were doing business with," including because Peder Garske supposedly told him so. Trial Tr. at 854-55; *see also, e.g., id.* at 857 ("Q. So the purpose of having Mr. Kam sign this first agreement was to not disclose that you were actually Litco, right, sir? A. Well, to the rest of the world, yes. Not to the parties that I was dealing with, obviously, because they knew who I was."). Sater's notice of motion does not point to any evidence that he was actually precluded from offering, nor to any specific ruling with which he takes issue.

In short, very little of what Sater is currently complaining about was actually the subject of an order excluding evidence, and to the extent it was, such order was entirely appropriate and certainly not a basis on which to overturn the jury's verdict.

## II.        THE COURT SHOULD DENY DEFENDANT MEM'S MOTION.

### A.        The Jury Properly Decided Whether Equitable Estoppel Applies.

MeM argues that the jury was not empowered to decide equitable matters and that the jury's determination that MeM is equitably estopped from raising a statute of limitations defense should be disregarded. Instead, according to MeM, the Court must decide whether Plaintiffs proved equitable estoppel. *See* MeM Br. at 2-5.

The Court should reject this argument for multiple reasons. *First*, and most fundamentally, MeM waived this argument. At the first trial, MeM affirmatively *asked* for a jury trial on equitable estoppel.  *See* 2024 Joint Pretrial Order at 7 [ECF No. 586 at 8 ("MEM Energy Partners' Statement": "The jury should decide any claim or the application of equitable estoppel.").] That issue having been decided in MeM's favor, [ECF No. 586 at 14], MeM unsurprisingly did not object to the Court's proposed charge on equitable estoppel—either the substance of the specific charge, or to the fact that the issue was being put to the jury—at the second trial.  In fact, when the parties discussed the equitable estoppel instruction at the charge conference, in response to some proposed edits that would have the charge conform to the language of the verdict sheet, MeM's lawyer not only failed to object—he called the instruction "Doubly perfect."  Trial Tr. at 911. MeM therefore consented to have the question of equitable estoppel decided by a jury and not the Court. *See generally* Fed. R. Civ. P. 39(c)(2).

*Second,* equitable estoppel was properly put to the jury because the defendants' conduct giving rise to equitable estoppel raises factual questions best answered by a jury, and many of the defendants' acts of concealment were bound up with the same underlying transactions giving rise to their liability. *See General Stencils Inc. v. Chiappa*, 18 N.Y.2d 125, 128-29 (N.Y. 1966) (remanding for a new trial to litigate equitable estoppel because defendant's conduct is an issue of fact).

*Finally*, the jury necessarily concluded that Plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired. Based on that factual record, even if equitable estoppel were not left to the jury, the Court should reach the same conclusion.[3]

### 1.    MeM Consented to a Jury Trial on Equitable Estoppel.

Rule 39(c)(2) of the Federal Rules of Civil Procedure provides that, "In an action not triable of right by a jury, the court, on motion or on its own:" "(2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right[.]"

Here, MeM evidenced its consent to a jury trial on equitable estoppel in a variety of ways. To start, MeM *asked* for the jury to decide equitable estoppel in the first trial. *See* 2024 Joint Pretrial Order at 7 [ECF No. 586 at 8] (MeM: "The jury should decide any claim or the application of equitable estoppel."). At the pretrial conference for the first trial, the Court again stated that the Defendants' statute of limitations defense and Plaintiffs' assertion of equitable estoppel "are for the jury." PTC Tr. at 20:23-21:5. MeM did not object to submitting the issue of equitable estoppel to the jury. PTC Tr. at 21:13-22:25. Then, following the first trial, when Plaintiffs submitted proposed findings of fact and conclusions of law, MeM and the other defendants moved to strike that document as "unnecessary." [ECF No. 689 at 6.] The Court, without striking the filing, agreed that it was not necessary to issue findings of fact or conclusions of law because no equitable claim or defense needed to be decided by the Court—precisely as the defendants argued. *See* 9/18/2024 Tr. at 7-8, 11.

---

[3]    Should the Court determine that equitable estoppel is an issue to be decided by the Court, Plaintiffs respectfully request the opportunity to submit proposed findings of fact and conclusions of law on that issue.

MeM never changed its position and then failed to participate in submitting the parties' proposed pretrial order for the second trial. *See* 2025 Joint Pretrial Order at 1 n.1 [ECF No. 769 at 2 (noting that "Defendant MeM Energy Partners LLC did not respond to requests from Plaintiffs' counsel for its contribution to the pretrial order").] MeM's failure to submit a revised position in connection with the second joint pretrial order was also in violation of the Court's Individual Practice Rule V(A)(5), which required MeM to provide a "statement by each party as to whether the case is to be tried with or without a jury." Nor did MeM submit proposed jury instructions that might have surfaced any disagreement on this issue. And indeed, there was no disagreement— having successfully convinced the Court at the first trial that equitable estoppel was a jury issue, MeM said nothing when the Court proposed to charge the jury on that issue—other than to call the language of the proposed charge "Doubly perfect."  Trial Tr. at 911.

MeM also evidenced its consent to a jury trial on equitable estoppel by failing to object in other ways. For example, Plaintiffs specifically requested in the pretrial order that "the jury should be instructed to decide both the application of the statute of limitations and equitable tolling." *Id.* at 4 [ECF No. 769 at 5.] At the pretrial conference, the Court then stated, "I will sign the proposed joint pretrial order." Sept. 24, 2025 Hr'g Tr. at 2:20. The Court also described its initial statement to the jury, which included that the Plaintiffs contend that the statute of limitations defense "is barred by the doctrine of equitable estoppel." *Id.* at 11:18-22. Far from objecting, MeM's counsel stated "Your Honor, I agree with the above." *Id.* at 12:12. Then, as noted, MeM affirmatively agreed with the Court's proposed equitable estoppel charge to the jury.

In short, there were numerous opportunities for MeM to raise this objection; it never did. "Where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence

may be deemed 'consent' under Rule 39(c)." *Broadnax v. City of New Haven*, 415 F.3d 265, 272 (2d Cir. 2005) (upholding a trial court's determination that mutual implied consent supports the jury's authority to resolve equitable issues).

### 2. The Factual Questions Concerning Defendant MeM's Acts of Concealment Were Best Decided By a Jury.

Equitable estoppel was properly decided by the jury because it depended on fact-finding, and fact-finding that was bound up with the merits of Plaintiffs' claims. The Court instructed the jury on the standard for equitable estoppel as follows:

> To establish equitable estoppel, the plaintiffs must prove by a preponderance of the evidence that the plaintiffs were induced by fraud, misrepresentations, or deception to refrain from filing the action before the statute of limitations expired.
>
> The plaintiffs contend that, because the defendants concealed their roles in the transactions and the receipt of the stolen funds, the plaintiffs did not learn, despite diligent investigation, that the defendants had received stolen funds within the limitations period, and as a result their unjust enrichment and conversion claims are not time-barred.
>
> The defendants deny these allegations.
>
> If you find by a preponderance of the evidence that the plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired, you must find that the defendants are estopped from arguing the defense of statute of limitations, and that the plaintiffs' claims are timely.

Trial Tr. at 1050-51. In other words, the question of whether equitable estoppel applied depended on a *factual* determination of whether "the plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired." *Id.* If the answer to that question was yes, which it was, then Plaintiffs' claims necessarily were timely because the Defendants "are estopped" from arguing otherwise.

Plaintiffs proved multiple ways in which the defendants concealed their receipt of stolen funds. Specific to MeM, Defendants used fake broker commissions and concealed kickbacks to

hide their own theft of money from Ilyas Khrapunov. MeM was enriched in connection with the Syracuse and Tri-County transactions through payments concealed by attorney escrow accounts, though MeM was not a disclosed broker on the deals. *See, e.g.,* Trial Tr. at 307-308. MeM also allowed its own bank account to be used to pass payments on to Sater. *See id.* at 307.

In situations like this—where the application of equitable estoppel depends on disputed factual questions that are closely bound up with the underlying claims—the jury should decide. *See General Stencils Inc. v. Chiappa*, 18 N.Y.2d 125, 128-29 (N.Y. 1966) (remanding the case for a new trial to litigate the issue of equitable estoppel because defendant's conduct was an issue of fact); *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (finding that it is ultimately a question of fact whether equitable estoppel applies in a given case); *TSNY Management LLC, v. Partnership 93 L.P.,* 08 CV 1266 (CLP), 2010 WL 11627255 at *11 (E.D.N.Y. Nov. 1, 2010) (holding that the fact intensive inquiry of equitable estoppel is best left to a jury).

There was, therefore, no error in submitting the question of equitable estoppel to the jury.

### 3. Even If Decided By the Court, the Defendants Are Still Equitably Estopped from Raising the Statute of Limitations Defense.

Even if the question of equitable estoppel remained for the Court—which it does not—the facts determined by the jury that are implicit in the Verdict require the Court to reach the same conclusion.

As explained above, based on the Court's instructions and the jury's Verdict, in finding that Plaintiffs proved equitable estoppel by a preponderance of the evidence, the jury necessarily concluded that "the plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired." And "when the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact

issue in a different way." *Wade v. Orange Cnty. Sheriff's Off.*, 844 F.2d 951, 954 (2d Cir. 1988). Since the jury has found facts which entirely support the application of equitable estoppel, the Court, in applying the jury's findings of fact to the law, should likewise find that equitable estoppel precludes Defendants from asserting a statute of limitations defense. But even if the Court considers the issue *de novo*, the record overwhelmingly supports the application of equitable estoppel, and Plaintiff is prepared to submit proposed findings of fact and conclusions of law addressing that issue.

### B.    MeM's Other Arguments Are Meritless.

Between its brief and notice of motion, MeM raises a host of other arguments that are barely argued, lack any merit, and were abandoned or waived in any event.

#### 1.    The Court Has Already Upheld the Verdict for Money Had and Received.

MeM asserts in a single, albeit long, sentence in its brief that "[g]iven that there is no dispute that any payments to MEM were funded from the profits realized by those transactions, in light of the Jury's finding on the date of accrual, Plaintiffs' claims for money had and received are now rendered non-actionable." MeM Br. at 4. But whether the payments to MeM were funded by profits or principal has no relevance. Money is fungible and regardless, as the jury charge correctly instructed, the profits are still the stolen property of the Plaintiffs. Trial Tr. at 1049.

Furthermore, the Court has already affirmed the first jury's money had and received verdict against defendants. Plaintiffs' money had and received claims were not at issue in this trial. MeM failed to raise this argument in its post-trial briefing following the first trial, when Plaintiffs' money had and received claims were at issue. *See* [ECF Nos. 676, 685.] MeM cannot now invoke the jury's verdict in the second trial to advance new arguments about the jury's findings in the first. The argument is waived.

17

## 2.    MeM Failed to Preserve Its Arguments at Trial for Judgment as a Matter of Law.

With regard to MeM's arguments raised in its Notice of Motion, MeM seeks "Judgment" "as a matter of law" on seven different bases. [ECF No. 805 (listing points (a) through (g), with a reservation of rights in (h) for "such other and further relief").] But MeM failed to properly preserve all but one of these arguments prior to submitting the case to the jury under Rule 50. "A party may only assert a renewed claim for judgment as a matter of law under Rule 50(b) if it previously raised that *specific* issue during trial in a Rule 50(a) motion." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 182 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018). "A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter." *Lore v. City of Syracuse*, 670 F.3d 127, 152-53 (2d Cir. 2012).

At trial, the Sater Defendants moved under Rule 50(a) on three separate bases: (1) "[t]he [P]laintiff has failed to introduce any competent evidence establishing that this action was timely filed within the statute of limitations" because "all the evidence is that the claims accrued in 2013;" (2) "the underlying financial records, notably Plaintiffs' Exhibit 10…have not been authenticated by any competent testimony;" (3) "[t]here has been no proof that could support a jury finding that any of the defendants stole BTA's money in particular or Almaty's in particular," because "[a]ll the evidence has been effectively commingled." Trial Tr. at 790-91. MeM joined the Sater Defendants' application and raised one additional argument, stating in total: "Your Honor, I join the application in its entirety, and ask the Court to also pay attention to the fact that, to my knowledge, not a single witness was offered by the City of Almaty in connection with any of the allegations, and I add that as a further basis." Trial Tr. at 791. MeM raised no other issues as part of its Rule 50 motion. The Rule 50 motions by both the Sater Defendants and MeM were denied. Trial Tr. at 794.

18

The Court should decline to entertain MeM's motion as insufficiently preserved at trial. *See Lore,* 670 F.3d at 152-53 (denying Rule 50(b) motion where it was "not a renewal of any argument made in the [defendant's] Rule 50(a) motion," so the defendant "plainly did not give [plaintiff] the requisite opportunity to cure any perceived deficiency in her proof before the case was submitted to the jury"); *see also, e.g.*, *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998); *Rhee-Karn v. Lask*, 2025 WL 2450731, at *4 (S.D.N.Y. Aug. 26, 2025) (stating that "failure to preserve a basis for a Rule 50(b) motion results in forfeiture of that basis for relief.").[4]

### 3.    Even if Preserved, MeM's Arguments Raised in Its Notice of Motion Should Be Rejected.

The only argument contained in MeM's Notice of Motion that is arguably preserved is in paragraph (b). Paragraph (b) asks the court to enter judgment that "as a matter of law, [] the causes of action relating to unjust enrichment, as asserted by the Plaintiffs herein, accrued no later than April 2, 2013, as alleged with respect to Defendant Felix Sater, and all other Defendants under his ownership or control, and no later than August 22, 2013, as alleged with respect to MEM." MeM Mot. at ¶ (b). The Sater Defendants' Rule 50(a) motion, which MeM joined, included the argument that "all the evidence is that the claims accrued in 2013." Trial Tr. at 790-91. But there was no dispute that the claims accrued in 2013, and the jury was specifically instructed that "the plaintiffs' claims would otherwise be untimely" if it were not for equitable estoppel. Trial Tr. at 1050. MeM's

---

[4]    MeM also abandoned all but two of the arguments in its Notice of Motion by failing to explain them in its brief. *See* Local Rule 7.1(a)(2). MeM's brief only argues that the jury was not permitted to decide equitable tolling and that profits could not be the subject of a money had and received claim.

Notice of Motion does not explain how entering judgment that the claims accrued in 2013 could change the jury's verdict, nor does it address the jury's determination that the defendants are estopped from asserting a statute of limitations defense.

MeM's other arguments are equally meritless. Paragraph (c) argues that "the jury empaneled in the trial conducted in this matter failed to make any findings relating to either the basis, duration, and extent of any equitable tolling periods benefiting the Plaintiffs." MeM Mot. at ¶ (c). This is true. Equitable *tolling* was not at issue in this case and the jury made no equitable *tolling* determination. October 10, 2025 Trial Tr. at 24. However, that has no relevance here because the jury determined that the Plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired and thus the defendants were *estopped* from asserting a statute of limitations defense. *See* October 10, 2025 Trial Tr. at 24; *see Levin v. Sarah Lawrence Coll.,* 747 F. Supp. 3d 645, 673 (S.D.N.Y. 2024) (stating "[e]quitable tolling is distinct from equitable estoppel in that it does not require that the defendant against whom it is asserted have engaged in any form of bad act to delay suit"). Further, MeM waived this argument by failing to submit a proposed verdict sheet, failing to object to Plaintiffs' proposed verdict sheet, and failing to otherwise ever request that the jury make the specific findings that it now claims were required. *See* [ECF No. 783 (Defendants' letter re Plaintiffs' proposed verdict sheet)].

Paragraph (d) appears to be arguing that the jury verdict was not sufficiently specific for the Court to determine equitable tolling or estoppel. MeM Mot. at ¶ (d). Once again, equitable tolling is not at issue in this case. October 10, 2025 Trial Tr. at 24. And as explained above, the jury properly decided equitable estoppel. In any event, the jury was asked specifically to determine whether Plaintiffs proved that they "were induced by fraud, misrepresentations, or deception to

refrain from filing the action before the statute of limitations expired," Trial Tr. at 1076-77, based on the Plaintiffs' contention that "the defendants concealed their roles in the transactions and the receipt of the stolen funds." Trial Tr. at 1051.

Paragraph (e) asserts a laches defense. MeM Mot. at ¶ (e). Defendant MeM never asserted a laches defense at trial, and no such defense appears in the joint pretrial order. [ECF No. 769.] MeM is not entitled to judgment as a matter of law on an affirmative defense it did not assert at trial. *See Rhee-Karn v. Lask*, No. 2025 WL 2450731, at *4 (S.D.N.Y. Aug. 26, 2025) (finding that pleading an affirmative defense in the answer is not sufficient to overcome the procedural defect of failing to raise the issue at trial). Setting aside this fatal procedural defect, MeM fails to prove the defense of laches. The doctrine of laches requires a defendant to show that "(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *Pecorino v. Vutec Corp*., 6 F. Supp. 3d 217, 221 (E.D.N.Y. 2013). MeM fails to show that Plaintiffs knew or should have known of their claims against MeM on its asserted date of August 15, 2015. MeM points to an interpleader complaint filed by Joseph Chetrit against Triadou SPV S.A. and the City of Almaty—which was removed to federal court and became the related action against Triadou, Case No. 15 Civ. 5345—but nothing in that interpleader complaint mentions MeM Energy. *CF 135 Flat LLC v. Triadou SPV S.A.*, No. 156834/2015, at entry 3 (Jul 7, 2015). And the evidence at trial showed that Plaintiffs did not learn of Sater's receipt of stolen money until the deposition of Cesare Cerrito in 2017. Trial Tr. at 215 (Nartay testimony). .

Paragraph (f) asks the court to hold that "all affirmative defenses asserted by MEM in its filed answer are properly interposed ... and that as a result of said affirmative defenses all limitation

periods of relevance were limited to no more than three (3) years, rendering this action time barred when commenced." MeM Mot. at ¶ (f). MeM appears to be referencing the answer it attempted to have accepted on the eve of the first trial. *See* First Trial Tr. at 19-60. The Court correctly held that MeM could not use its answer to add previously unasserted defenses and that the answer was accepted "except to the extent that it's inconsistent with any of the Court's prior rulings on motions to dismiss or for summary judgment against MeM and inconsistent with the joint pretrial order." First Trial Tr. at 54.

Rule 16 allows a court to "formulat[e] and simplify[] the issues, and eliminat[e] frivolous claims or defenses," Fed. R. Civ. P. 16(c)(2)(A), and establishes that the pretrial order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). MeM knew this from the first trial, and yet still failed to add any of the defenses from its answer to the pretrial order in the second trial. The final pretrial order "supersed[s] all prior pleadings." *Curtis v. Lother*, 415 U.S., 189, at n. 1, (1974); *see also Rockwell v. United States* 549 U.S. 457 (2007). MeM cannot now raise defenses from its answer, that were rejected in the first trial and that it failed to include— even just for issue preservation purposes—in the pretrial order or present at the second trial. First Trial Tr. at 54; [ECF No. 769.]

Even if MeM could modify its defenses and even accepting a three year statute of limitations, it would make no difference.[5] The jury properly found that MeM is equitably stopped

---

[5]    It is worth recalling that the statute of limitations MeM contends is controlling is the Kazakh law statute of limitations, which operates on a discovery rule. *See generally* [ECF Nos. 590 and 594]. If MeM were correct, the verdict from the first trial—at which the jury was instructed

from asserting a statute of limitations defense—whatever that limitations period might be. *See* October 10, 2025 Trial Tr. at 24.

Lastly, paragraph (g) of MeM's Notice of Motion is particularly difficult to parse, and not accompanied by any citation to evidence or law that might shed light on its intentions. MeM Mot. at ¶ (e). MeM begins by pointing out that the jury in the first trial found that the earliest ascertainable date that Plaintiffs had a claim for money had and received against MeM was August 22, 2013, and the jury in the second trial found that the unjust enrichment accrued on the same date. *Id*. MeM's notice of motion then seems to make some distinction between principal and profits, asserts that MeM never came into possession or control of certain funds, and concludes "any claims for monies had and/or received or unjust enrichment have now been rendered non-actionable."

It is nearly impossible to make sense of MeM's contention, but the premise that either claim distinguishes between principal and profit is false. As reflected in the jury charge, the money had and received claims were directed towards money belonging to Plaintiffs that MeM received and benefited from. First Trial Tr. at 1724. Plaintiffs' unjust enrichment claims were directed against "money or the benefit of investments in property using funds that the plaintiffs claim were wrongfully taken." Trial Tr. at 1047. In each trial the jury was instructed that "[t]he property that you may consider for purposes of the plaintiffs' claims should include the proceeds, or fruits, of the plaintiffs' property." First Trial Tr. at 1726; Trial Tr. at 1049. MeM failed ever to object to this instruction. *See, e.g.*, First Trial Tr. at 1454-55 (no objection from MeM and Court recognizing

---

that the claims accrued upon discovery, and at which the jury found all claims timely—would be controlling.

"It's plainly right to add 'money or the benefit of investments'"). And to the extent that MeM might be trying to make some point about double counting, Plaintiffs' proposed judgment reduces the unjust enrichment award to account for the damages already awarded for money had and received in the first trial. *See* [ECF No. 792 at 2.]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny both the Sater Defendants' and MeM's Rule 50 and Rule 59 motions in their entirety and enter judgment in the form previously proposed.

Dated: November 24, 2025
      New York, New York

<div style="margin-left:40%">

Respectfully,

/s/    *Matthew L. Schwartz*   
Matthew L. Schwartz
Craig Wenner
Sophie Roytblat
Connor Coupe

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

*Counsel for Plaintiffs*
*City of Almaty, Kazakhstan and*
*BTA Bank JSC*

</div>

## <u>CERTIFICATION OF COUNSEL</u>

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum, excluding the caption, signature block, and this certification is 7,855.

Dated: November 24, 2025
New York, New York

/s/    *Matthew L. Schwartz*
Matthew L. Schwartz

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone:  (212) 446-2300

*Counsel for Plaintiffs*
*City of Almaty, Kazakhstan and*
*BTA Bank JSC*