PAAKALM1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
      CITY OF ALMATY, KAZAKHSTAN,
 3    et al.,

 4                  Plaintiffs,

 5          v.                              19-CV-2645 (JGK)
      FELIX SATER, et al.,
 6
                  Defendants.              Jury Trial
 7    ------------------------------x
                                           New York, N.Y.
 8                                         October 10, 2025
                                           9:35 a.m.
 9

10    Before:
                        HON. JOHN G. KOELTL,
11
                                           District Judge
12                                          -And A Jury-
                            APPEARANCES
13
      BOISE SCHILLER & FLEXNER LLP
14         Attorneys for Plaintiffs
      BY:  CRAIG A. WENNER
15         MATTHEW L. SCHWARTZ
           JONATHAN T. ZACH
16         SOPHIE ROYTBLAT
           LINDSEY RUFF
17
      RICHARD L. YELLEN & ASSOCIATES, LLP
18         Attorneys for Defendant MeM ENERGY PARTNERS LLC
      BY:  BRENDAN C. KOMBOL
19
      LAW FIRM OF THOMAS C. SIMA
20         Attorneys for Defendant Felix Sater
      BY:  THOMAS C. SIMA
21         -and-
      JOHN H. SNYDER PLLC
22    BY:  JOHN H. SNYDER

23

24

25
```

PAAKALM1

1          (In open court; jury not present; trial resumed)

2          THE COURT:  Good morning, all.  Please be seated.

3          Mr. Sima, can we proceed without Mr. Snyder?

4          MR. SIMA:  I believe we can.  We've already examined

5     the exhibits, yes.

6          THE COURT:  And without Mr. Sater?

7          MR. KOMBOL:  Yes.

8          MR. SIMA:  Yes, your Honor.

9          THE COURT:  Okay.

10         Mr. Fletcher informed me that the parties have agreed

11    on the exhibits to be sent to the jury.

12         MR. SCHWARTZ:  That's correct.

13         THE COURT:  Mr. Fletcher, can I have the note.

14         And can the parties pass up to me the exhibits that

15    they've agreed on.

16         MR. SCHWARTZ:  These are the exhibits and the

17    testimony.

18         (Pause)

19         THE COURT:  There are two copies of Plaintiffs'

20    Exhibit 595 in the folder for 595.

21         Is there some reason?  Let me pass it down to you.

22         MR. SNYDER:  Good morning, your Honor.  Pardon my

23    tardiness.

24         THE COURT:  Good morning.

25         Mr. Sima said we could proceed without you.

PAAKALM1

1            MR. SNYDER:  Of course, yes.

2            MR. SCHWARTZ:  I'm not sure I understand the question.

3    We did put multiple copies in the folders.  If you want only

4    one copy, we can take them out.

5            THE COURT:  Oh, yes.

6            MR. SCHWARTZ:  So we'll pare that down, so there's

7    only one copy of each.

8            THE COURT:  I hadn't noticed before that.

9            So, here.

10            And the parties have checked that each of the exhibits

11    that the jury is asking for is in evidence?

12            MR. SCHWARTZ:  Yes.

13            MR. SNYDER:  Yes, that's my understanding.

14            THE COURT:  Mr. Kombol?

15            MR. KOMBOL:  Yes, my understanding as well.

16            THE COURT:  You say it's your understanding.  Do the

17    parties agree?

18            MR. KOMBOL:  Yes, we agree.

19            MR. SNYDER:  No dispute.

20            (Pause)

21            THE COURT:  With respect to the transcripts of Nicolas

22    Bourg and Kalsom Kam, I can just tell them we're providing the

23    transcripts of the testimony of Nicolas Bourg and Kalsom Kam.

24    I can also add that if they wish to see the video, we can make

25    arrangements for that.

PAAKALM1

1          I'm informed that the jurors are here.  They're early.

2          MR. SCHWARTZ:  Either way is fine with plaintiffs.

3          If you do inform them about the ability to see video,

4    either here or back there, Mr. Kam was by readback, so it would

5    only pertain to Mr. Bourg.

6          THE COURT:  Oh.  So there is no video of Kam?

7          MR. SCHWARTZ:  Correct.

8          THE COURT:  Defendants, do you have anything?

9          MR. SNYDER:  No comments or objections.  That's fine.

10          THE COURT:  So I'll just leave it, without suggesting

11    to them that if they want to see the video -- and wait for a

12    question.

13          MR. KOMBOL:  No objection.

14          MR. SNYDER:  That's fine, your Honor.

15          THE COURT:  Included in the materials that you passed

16    up are a couple of pages from Mr. Fliegler's --

17          MR. SCHWARTZ:  Yes, because that recounts Mr. Bourg's

18    testimony.

19          THE COURT:  I'm sorry?

20          MR. SCHWARTZ:  Because it recounts Mr. Bourg's

21    testimony, which was, I think, otherwise not in the

22    designation.

23          THE COURT:  You included that as part of the jury's

24    request for Nicolas Bourg's testimony?

25          MR. SCHWARTZ:  That's right.

PAAKALM1

1          THE COURT:  And defendants agree?

2          MR. SNYDER:  I'm sorry, what is it we're agreeing on?

3          THE COURT:  I thought the parties had gone over all of

4    this.

5          As part of the request for Nicolas Bourg's testimony

6    there is the addition of two pages from Mr. Fliegler's direct

7    testimony:

8    "Q.  As part of your review of the documents and testimony in

9    this case, did you review the deposition of Mr. Bourg?

10   "A.  Yes, I did.

11   "Q.  In that deposition testimony, did he invoke the

12   confidentiality provisions?

13   "A.  That is my recollection.

14   "Q.  And that was at a deposition that took place in September

15   of 2017, right?

16   "A.  That is my recollection as well.

17   "Q.  And at that deposition, Mr. Bourg was represented by

18   Robert Wolf, right?

19   "A.  Yes, that's true."

20          MR. SNYDER:  That testimony was given.

21          THE COURT:  That testimony was Mr. Fliegler's

22   testimony.

23          MR. SNYDER:  I recall.

24          THE COURT:  The jury requested Nicolas Bourg's

25   testimony.

PAAKALM1

1             MR. SNYDER:  Oh, well, then we should give them

2   Nicolas Bourg's testimony, not Fliegler's.

3             THE COURT:  We are giving them Nicolas Bourg's

4   testimony.  But let me just pass down the folders.

5             MR. SNYDER:  So, obviously, no objection to Bourg, as

6   asked for, but I don't see any reason why we need to add

7   Fliegler if it wasn't asked for.

8             MR. SCHWARTZ:  Well, we included it.  We thought it

9   was appropriate because they asked for Mr. Bourg's testimony;

10  and Mr. Fliegler, an expert, is describing Mr. Bourg's

11  testimony, which is otherwise not part of the designation.

12  That was our thinking.

13            MR. SNYDER:  I'm sorry, that's not what they asked

14  for.  They should get Bourg but not Fliegler.

15            THE COURT:  I agree with that.  And I thought the

16  parties had gone over this.  To receive, then, a folder this

17  morning that says "Bourg Testimony" and it includes a section

18  from Fliegler testimony about Bourg is not reasonable.

19            MR. SNYDER:  I'll take the hit for that, your Honor.

20  Sorry about that.

21            THE COURT:  I agree with the defense.  I'm not

22  including Fliegler's testimony about what he reviewed from

23  Bourg.

24            I received a note from the jurors.  I believe it's

25  Court Exhibit 4.  The parties are welcome to inspect.  It says:

PAAKALM1

```
 1   "Confirming all ten jurors are in the juror room.
 2            "Thank you.
 3            "Respectfully, Susana Mirabedini.  October 10, 2025.
 4   10:00 a.m."
 5            The parties should inspect.
 6            Mr. Fletcher.
 7            MR. SNYDER:  So, Judge, to confirm, we are giving them
 8   the Bourg they requested but we are not giving them the
 9   Fliegler, right?
10            THE COURT:  We're giving them the Bourg testimony that
11   they requested and not the Fliegler testimony, about what he
12   reviewed from Bourg.
13            MR. SNYDER:  Thank you.
14            (Pause)
15            THE DEPUTY CLERK:  Counsel, do you want to view the
16   note?
17            MR. SNYDER:  I'm sorry.
18            (Pause)
19            MR. SNYDER:  Thank you.
20            THE COURT:  The jury then asked for:  The consulting
21   agreement between Felix and Ilyas.
22            Second, both Litco agreements, confidentiality
23   agreement, and the NDA, and Tri-County-Triadou-Sater settlement
24   and dispute.
25            I believe all of those documents are included in the
```

1    specific plaintiffs' exhibits they requested, right?

2         MR. SCHWARTZ:  By number?  No, they weren't.  Some of

3    them were and some of them were not.  But it was obvious what

4    they were referring to, so the folder that we handed up

5    included those.

6         So, to be clear, the June confidential assistance

7    agreement is 593 --

8         THE COURT:  Hold on.  I'm sorry.

9         The consulting agreement between Felix and Ilyas is

10   what?

11        I thought I saw all of these when I went through --

12        MR. SCHWARTZ:  It was.  The consulting agreement is

13   438, which, for example, was not one that they asked for by

14   number but it was obvious what they were referring to.  So 438

15   is the consulting agreement.

16        THE COURT:  Okay.

17        MR. SCHWARTZ:  Then the two Litco agreements that they

18   did ask for by number as well, that's 593 and 594.

19        THE COURT:  Right.

20        MR. SCHWARTZ:  And then the Tri-County-Sater

21   settlement and dispute, so the settlement, they actually asked

22   for two versions by number — that's 311 and 359 — the

23   difference being that one has exhibits.  And then the dispute

24   the parties understood to mean the complaint, which has been

25   included at 294.

PAAKALM1

1          THE COURT:  So I will add to the note, if the parties

2     agree:  "The additional documents that you requested are

3     included in the specific exhibits that you requested that are

4     being provided, with the exception of two documents that you

5     requested, namely, the consulting agreement between 'Felix and

6     Ilyas,' which is Plaintiffs' Exhibit 438, and the

7     Tri-County-Sater dispute, which is Plaintiff Exhibit 294.  We

8     are providing Plaintiffs' Exhibit 438 and Plaintiffs' Exhibit

9     294 to you."

10          MR. SCHWARTZ:  That's fine.  Thank you.

11          MR. SNYDER:  That's fine.  Thank you.

12          (Pause)

13          THE COURT:  Okay.

14          I have a note for the jury.  It will be Court Exhibit

15     5.

16          "Members of the jury, we are providing to you the

17     exhibits that you requested; namely, PTX 264, 265, 270, 163,

18     509, 408, 542, 595, 359, 593, 594, 311.

19          "As you requested, we are also providing the

20     transcripts of the testimony of Nicolas Bourg and Kalsom Kam.

21          "The additional documents that you requested are

22     included in the specific exhibits that you requested that are

23     being provided, with the exception of two documents that you

24     requested, namely, the consulting agreement between 'Felix and

25     Ilyas,' which is Plaintiff Exhibit 438, and the

PAAKALM2

1   Tri-County-Sater dispute, which is Plaintiffs' Exhibit 294.

2          "We are providing PTX 438 and PTX 294 to you."  Signed

3   and dated.

4          And the parties are welcome to inspect the note and

5   the documents.

6          We're also sending to the jury the menus for lunch,

7   which the parties are welcome to look at.

8          MR. SNYDER:  No objection to the lunch menu.

9          THE COURT:  Please look at the documents.

10          (Pause)

11          MR. SCHWARTZ:  Thank you.

12          THE COURT:  Satisfactory to all sides?

13          MR. SNYDER:  Satisfactory, Judge.

14          THE COURT:  Mr. Kombol, do you delegate Mr. Snyder?

15          MR. KOMBOL:  Yes, he's delegated.

16          THE DEPUTY CLERK:  I'm giving this to the marshal.

17          THE COURT:  Okay.  Mr. Fletcher is taking the note and

18   the documents to the marshal to give to the jury.

19          See you later.

20          MR. SCHWARTZ:  Thank you.

21          THE COURT:  I'm returning to the plaintiff the two

22   pages from Mr. Fliegler.

23          (Recess pending verdict)

24          THE COURT:  Please be seated.

25          I have a note from the jury.  It will be marked as

PAAKALM2

```
 1   Court Exhibit 7.
 2               THE DEPUTY CLERK:  No, this is 6.
 3               THE COURT:  I'm sorry, Court Exhibit 6.
 4               It reads:  "May we please get a copy of the transcript
 5   of the trial and Plaintiffs' Exhibit 800?"
 6               "Thank you.  Susana Mirabedini.  October 10, 2025,
 7   10:55 a.m."
 8               And then there's another note, which is Plaintiffs'
 9   Exhibit 7:  "May we please also request Plaintiffs' Exhibit
10   801.
11               "Thank you.  Susana Mirabedini.  October 10, 2025,
12   10:55 a.m."
13               The parties are welcome to inspect the notes.
14               I would tell the jurors:  We are providing you
15   Plaintiff's Exhibits 800 and 801, as you requested.  Could you
16   please be more specific as to what portions of the trial
17   transcript you wish to review?
18               MR. SCHWARTZ:  No objection.
19               MR. KOMBOL:  Just to be clear, 800 was the Seth
20   Fliegler -- what was 800 -- David Schechtman, but it was the
21   PowerPoint?
22               MR. SCHWARTZ:  It was the summary exhibit that was
23   admitted into evidence.
24               MR. KOMBOL:  Okay.  It was admitted into evidence?  I
25   just wanted to make sure it wasn't a demonstrative.
```

PAAKALM2

 1              That's fine.

 2              MR. SNYDER:  No objection to what your Honor just

 3   said.

 4              MR. SCHWARTZ:  And we'll have those exhibits in just a

 5   few moments.

 6              (Pause)

 7              MR. SCHWARTZ:  Judge, I'm going to hand up one copy of

 8   the two requested exhibits, which have been inspected by the

 9   defense lawyers.

10              THE DEPUTY CLERK:  Counsel, observe the notes.

11              MR. SCHWARTZ:  Oh.  Thank you.

12              (Pause)

13              THE COURT:  All right.  My note to the jury will be

14   Court Exhibit 8.  It reads:  "Members of the jury, we are

15   providing to you Plaintiffs' Exhibit 800 and 801, as you

16   requested.  Could you be more specific as to which portions of

17   the trial transcript you wish to review?"

18              Signed by me, October 10, 2025, 11:25 a.m.

19              The parties should inspect the note and the exhibits.

20              (Pause)

21              MR. SNYDER:  Your Honor, I've reviewed -- the defense

22   has reviewed it, and we're satisfied with both the note and the

23   exhibits that are going back.

24              MR. SCHWARTZ:  Likewise.

25              THE COURT:  Okay.

PAAKALM2

1              MR. KOMBOL:  Your Honor, I have reviewed and approved,

2    as well.  My only question is whether or not we should make a

3    note under Rule 106 that these are summary exhibits so that

4    they reference other exhibits?

5              MR. SNYDER:  They are what they are.

6              THE COURT:  No.  The jury asked for specific exhibits.

7    The exhibits are in evidence.

8              I take it the exhibits have been received in evidence,

9    yes?

10             MR. SCHWARTZ:  Yes.

11             THE COURT:  Okay.

12             MR. KOMBOL:  Your Honor, with respect to the nature of

13   this exhibit, it's a summary exhibit, so the Federal Rules say

14   it refers to other exhibits, just to give the jury that

15   indication.

16             THE COURT:  I'm equally familiar with the Federal

17   Rules of Evidence.  There's nothing in any rules that requires

18   that when I respond to the jurors with a note, providing them

19   with exhibits that they ask for, I explain to them what the

20   full Federal Rules of Evidence provide with respect to those

21   exhibits.

22             So the request to give them an instruction about the

23   exhibits is denied.

24             MR. KOMBOL:  Okay.  Thank you, your Honor.

25             (Recess pending verdict)

PAAKALM3

1            THE COURT:  I have a note from the jury.  It will be

2   marked as -- Court Exhibit 9, I think?

3            THE DEPUTY CLERK:  9, yes.

4            THE COURT:  It reads:  "Judge Koeltl:  The jury has

5   reached a verdict and filled out and signed the special verdict

6   form.  Please let us know further instructions.

7            "Thank you.  Respectfully, Susana Mirabedini,

8   October 10, 2025, 1:05 p.m."

9            The parties are welcome to inspect.

10           (Pause)

11           THE COURT:  I'll send a note to the jury, which says:

12  "Members of the jury, the jury should return to the courtroom,

13  and the foreperson should hand the verdict form to the Court."

14           MR. KOMBOL:  That's acceptable, your Honor.

15           THE COURT:  That will be Court Exhibit No. 10.

16           The parties should inspect it.

17           (Pause)

18           MR. SNYDER:  All is in order.

19           THE COURT:  All right.

20           Both parties, on behalf of all parties, have inspected

21  the note?

22           MR. SCHWARTZ:  Yes.

23           MR. SNYDER:  Yes, on behalf of defense.

24           MR. KOMBOL:  I am trusting -- I am trusting in

25  Mr. Snyder, but I approve it regardless.

PAAKALM3

1          THE COURT:  I'm sorry, you?

2          MR. KOMBOL:  I am fine with it, your Honor.

3          THE COURT:  Okay.

4          It's satisfactory to both sides?

5          MR. SCHWARTZ:  Yes.

6          MR. SNYDER:  Yes.

7          THE DEPUTY CLERK:  Should they let the marshal know,

8     or should they put a note --

9          THE COURT:  You can let the marshal know, but you can

10    give the note to the marshal to give to the jury, and let the

11    marshal know that the jurors will be returning to the courtroom

12    shortly.

13         THE DEPUTY CLERK:  Okay.

14         (Pause)

15         (Jury present)

16         THE COURT:  Please be seated, all.

17         Madam Foreperson, I've received your note.

18         Has the jury reached a verdict?

19         THE FOREPERSON:  Yes.

20         THE COURT:  Please pass it up to Mr. Fletcher.

21         (Pause)

22         THE DEPUTY CLERK:  Would the foreperson please rise.

23         She's already ready.

24         Will the foreperson answer the questions after I put

25    each question to you in the matter of City of Almaty,

PAAKALM3

1  Kazakhstan, et al. v. Felix Sater, 19 CV 2645 (JGK).

2             Question 1(a).  Do you find that the plaintiffs have

3  proven by a preponderance of the evidence their claim of

4  conversion against the Defendant Felix Sater, as that claim is

5  defined for you in the Court's instructions?

6             THE FOREPERSON:  Yes.

7             THE DEPUTY CLERK:  Question 1(b).  Do you find that

8  the plaintiffs have proven by a preponderance of the evidence

9  that Defendant Sater is equitably estopped from raising a

10 statute of limitations defense as to the plaintiffs' claim for

11 conversion, as collateral estoppel is defined for you in the

12 Court's instructions?

13            THE FOREPERSON:  Yes.

14            THE DEPUTY CLERK:  Question 1(c).  What amount of

15 damages do you find should be awarded to the plaintiffs for

16 conversion against Defendant Sater?

17            THE FOREPERSON:  $26,221,387.

18            THE DEPUTY CLERK:  Question 1(d).  What do you find

19 was the earliest ascertainable date that the plaintiffs had a

20 claim for conversion against Defendant Sater?

21            THE FOREPERSON:  April 2, 2013.

22            THE DEPUTY CLERK:  Question 1(e).  Do you find that

23 the plaintiffs have proven by a preponderance of the evidence

24 that the plaintiffs should be awarded punitive damages against

25 Defendant Sater?

PAAKALM3

1          THE FOREPERSON:  Yes.

2          THE DEPUTY CLERK:  Question 1(f).  What amount of

3    punitive damages do you find should be awarded to the

4    plaintiffs against Defendant Sater?

5          THE FOREPERSON:  $3 million.

6          THE DEPUTY CLERK:  Question 2(a).  Do you find that

7    the plaintiffs have proven by a preponderance of the evidence

8    their claim of unjust enrichment against Defendant Sater, as

9    that claim is defined for you in the Court's instructions?

10          THE FOREPERSON:  Yes.

11          THE DEPUTY CLERK:  Question 2(b).  Do you find that

12    the plaintiffs have proven by a preponderance of the evidence

13    that Defendant Sater is equitably estopped from raising a

14    statute of limitations defense as to the plaintiffs' claim for

15    unjust enrichment, as collateral estoppel is defined for you in

16    the Court's instructions?

17          THE FOREPERSON:  Yes.

18          THE DEPUTY CLERK:  Question 2(c).  What amount of

19    damages do you find should be awarded to the plaintiffs for

20    unjust enrichment against Defendant Sater?

21          THE FOREPERSON:  $16,587,640.

22          THE DEPUTY CLERK:  Question 2(d).  What do you find

23    was the earliest ascertainable date that the plaintiffs had a

24    claim for unjust enrichment against Defendant Sater?

25          THE FOREPERSON:  April 2, 2013.

PAAKALM3

1              THE DEPUTY CLERK:  Question 3(a).  Do you find that

2    the plaintiffs have proven by a preponderance of the evidence

3    their claim of unjust enrichment against Defendant Bayrock

4    Group, Incorporated (Bayrock), as that claim is defined for you

5    in the Court's instructions?

6              THE FOREPERSON:  Yes.

7              THE DEPUTY CLERK:  Question 3(b).  Do you find that

8    the plaintiffs have proven by a preponderance of the evidence

9    that Defendant Bayrock is equitably estopped from raising a

10   statute of limitations defense as to the plaintiffs' claim for

11   unjust enrichment, as collateral estoppel is defined for you in

12   the Court's instructions?

13             THE FOREPERSON:  Yes.

14             THE DEPUTY CLERK:  Question 3(c).  What amount of

15   damages do you find should be awarded to the plaintiffs for

16   unrest enrichment against Defendant Bayrock?

17             THE FOREPERSON:  $4,062,750.

18             THE DEPUTY CLERK:  Question 3(d).  What do you find

19   was the earliest ascertainable date that the plaintiffs had a

20   claim for unjust enrichment against Defendant Bayrock?

21             THE FOREPERSON:  June 3, 2013.

22             THE DEPUTY CLERK:  Question 4(a).  Do you find that

23   the plaintiffs have proven by a preponderance of the evidence

24   their claim of unjust enrichment against Defendant Global

25   Habitat Solutions (GHS), as that claim is defined for you in

PAAKALM3

1    the Court's instructions?

2              THE FOREPERSON:  Yes.

3              THE DEPUTY CLERK:  Question 4(b).  Do you find that

4    the plaintiffs have proven by a preponderance of the evidence

5    that Defendant GHS is equitably estopped from raising a statute

6    of limitations defense as to the plaintiffs' claim for unjust

7    enrichment, as collateral estoppel is defined for you in the

8    Court's instructions?

9              THE FOREPERSON:  Yes.

10             THE DEPUTY CLERK:  Question 4(c).  What amount of

11   damages do you find should be awarded to the plaintiffs for

12   unjust enrichment against Defendant GHS?

13             THE FOREPERSON:  $1,337,857.

14             THE DEPUTY CLERK:  Question 4(d).  What do you find

15   was the earliest ascertainable date that the plaintiffs had a

16   claim for unjust enrichment against Defendant GHS?

17             THE FOREPERSON:  April 2, 2013.

18             THE DEPUTY CLERK:  Question 5(a).  Do you find that

19   the plaintiffs have proven by a preponderance of the evidence

20   their claim of unjust enrichment against Defendant MeM Energy

21   Partners, LLC, or MeM, as that claim is defined for you in the

22   Court's instructions?

23             THE FOREPERSON:  Yes.

24             THE DEPUTY CLERK:  Question 5(b).  Do you find that

25   the plaintiffs have proven by a preponderance of the evidence

PAAKALM3

1    that Defendant MeM is equitably estopped from raising a statute

2    of limitations defense as to the plaintiffs' claim for unjust

3    enrichment, as collateral estoppel is defined for you in the

4    Court's instructions?

5             THE FOREPERSON:  Yes.

6             THE DEPUTY CLERK:  Question 5(c).  What amount of

7    damages do you find should be awarded to the plaintiffs for

8    unjust enrichment against Defendant MeM?

9             THE FOREPERSON:  $686,052.

10            THE DEPUTY CLERK:  Question 5(d).  What do you find

11   was the earliest ascertainable date that the plaintiffs had a

12   claim for unjust enrichment against Defendant MeM?

13            THE FOREPERSON:  August 22, 2013.

14            THE DEPUTY CLERK:  Shall we poll the jury?

15            THE COURT:  Yes, please.

16            THE DEPUTY CLERK:  Ladies and gentlemen of the jury,

17   please listen to your verdict as it stands recorded.

18            Question 1(a).  Do you find that the plaintiffs have

19   proven by a preponderance of the evidence their claim of

20   conversion against Defendant Felix Sater, as that claim is

21   defined for you in the Court's instructions?

22            Your answer is yes.

23            Question 1(b).  Do you find that the plaintiffs have

24   proven by a preponderance of the evidence that Defendant Sater

25   is equitably estopped from raising a statute of limitations

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

PAAKALM3

1   defense as to the plaintiffs' claim for conversion, as

2   collateral estoppel is defined for you in the Court's

3   instructions?

4        Your answer is yes.

5        Question 1(c).  What amount of damages do you find

6   should be awarded to the plaintiffs for conversion against

7   Defendant Sater?

8        Your answer is $26,221,387.

9        Question 1(d).  What do you find was the earliest

10  ascertainable date that the plaintiffs had a claim for

11  conversion against Defendant Sater?

12       Your answer is April 2, 2013.

13       Question 1(e).  Do you find that the plaintiffs have

14  proven by a preponderance of the evidence that the plaintiffs

15  should be awarded punitive damages against Defendant Sater?

16       Your answer is yes.

17       Question 1(f).  What amount of punitive damages do you

18  find should be awarded to the plaintiffs against

19  Defendant Sater?

20       Your answer is $3 million.

21       Question 2(a).  Do you find that the plaintiffs have

22  proven by a preponderance of the evidence their claim of unjust

23  enrichment against Defendant Sater, as that claim is defined

24  for you in the Court's instructions?

25       Your answer is yes.

PAAKALM3

1            Question 2(b).  Do you find that the plaintiffs have

2    proven by a preponderance of the evidence that Defendant Sater

3    is equitably estopped from raising a statute of limitations

4    defense as to the plaintiffs' claim for unjust enrichment, as

5    collateral estoppel is defined for you in the Court's

6    instructions?

7            Your answer is yes.

8            Question 2(c).  What amount of damages do you find

9    should be awarded to the plaintiffs for unjust enrichment

10   against Defendant Sater?

11           Your answer is $16,587,640.

12           Question 2(d).  What do you find was the earliest

13   ascertainable date that the plaintiffs had a claim for unjust

14   enrichment against Defendant Sater?

15           Your answer is April 2, 2013.

16           Question 3(a).  Do you find that the plaintiffs have

17   proven by a preponderance of the evidence their claim of unjust

18   enrichment against Defendant Bayrock Group, Incorporated, or

19   Bayrock, as that claim is defined for you in the Court's

20   instructions?

21           Your answer is yes.

22           Question 3(b).  Do you find that the plaintiffs have

23   proven by a preponderance of the evidence that

24   Defendant Bayrock is equitably estopped from raising a statute

25   of limitations defense as to the plaintiffs' claim for unjust

PAAKALM3

 1    enrichment, as collateral estoppel is defined for you in the

 2    Court's instructions?

 3           Your answer is yes.

 4           Question 3(c).  What amount of damages do you find

 5    should be awarded to the plaintiffs for unjust enrichment

 6    against Defendant Bayrock?

 7           Your answer is $4,062,750.

 8           Question 3(d).  What do you find was the earliest

 9    ascertainable date that the plaintiffs had a claim for unjust

10    enrichment against Defendant Bayrock?

11           Your answer is June 3, 2013.

12           Question 4(a).  Do you find that the plaintiffs have

13    proven by a preponderance of the evidence their claim of unjust

14    enrichment against Defendant Global Habitat Solutions, or GHS,

15    as that claim is defined for you in the Court's instructions?

16           Your answer is yes.

17           Question 4(b).  Do you find that the plaintiffs have

18    proven by a preponderance of the evidence that Defendant GHS is

19    equitably estopped from raising a statute of limitations

20    defense as to the plaintiffs' claim for unjust enrichment, as

21    collateral estoppel is defined for you in the Court's

22    instructions?

23           Your answer is yes.

24           Question 4(c).  What amount of damages do you find

25    should be awarded to the plaintiffs for unjust enrichment

PAAKALM3

1  against Defendant GHS?

2          Your answer is $1,337,857.

3          Question 4(d).  What do you find was the earliest

4  ascertainable date that the plaintiffs had a claim for unjust

5  enrichment against Defendant GHS?

6          Your answer is April 2, 2013.

7          Question 5(a).  Do you find that the plaintiffs have

8  proven by a preponderance of the evidence their claim of unjust

9  enrichment against Defendant MeM Energy Partners, LLC, or MeM,

10  as that claim is defined for you in the Court's instructions?

11          Your answer is yes.

12          Question 5(b).  Do you find that the plaintiffs have

13  proven by a preponderance of the evidence that Defendant MeM is

14  equitably estopped from raising a statute of limitations

15  defense as to the plaintiffs' claim for unjust enrichment, as

16  collateral estoppel is defined for you in the Court's

17  instructions?

18          Your answer is yes.

19          Question 5(c).  What amount of damages do you find

20  should be awarded to the plaintiffs for unjust enrichment

21  against Defendant MeM?

22          Your answer is $686,052.

23          Question 5(d).  What do you find was the earliest

24  ascertainable date that the plaintiffs had a claim for unjust

25  enrichment against Defendant MeM?

PAAKALM3

```
 1              Your answer is August 22, 2013.

 2              This verdict form is dated October 10, 2025, and

 3    signed by the foreperson, Susana Mirabedini Jaramillo, and the

 4    remaining jurors:  James Parker, Audra Ireland, Suzanne Chin,

 5    Maria Hayes, Vanessa Jacobs, Andrew Taffe, Felvin Recio,

 6    Holly Mari Dmitry-Dolan, and Gerard Christophers.

 7              Ms. Jaramillo, is that your verdict?

 8              JUROR:  Yes.

 9              THE DEPUTY CLERK:  Mr. Parker, is that your verdict?

10              JUROR:  Yes, sir.

11              THE DEPUTY CLERK:  Ms. Ireland, is that your verdict?

12              JUROR:  Yes.

13              THE DEPUTY CLERK:  Ms. Chin, is that your verdict?

14              JUROR:  Yes.

15              THE DEPUTY CLERK:  Ms. Hayes, is that your verdict?

16              JUROR:  Yes.

17              THE DEPUTY CLERK:  Ms. Jacobs, is that your verdict?

18              JUROR:  Yes.

19              THE DEPUTY CLERK:  Mr. Taffe, is that your verdict?

20              JUROR:  Yes.

21              THE DEPUTY CLERK:  Mr. Recio, is that your verdict?

22              JUROR:  Yes.

23              THE DEPUTY CLERK:  Ms. Dmitry-Dolan, is that your

24    verdict?

25              JUROR:  Yes.
```

PAAKALM3

```
 1              THE DEPUTY CLERK:  Mr. Christophers, is that your
 2   verdict?
 3              JUROR:  Yes.
 4              THE DEPUTY CLERK:  Let the record reflect that the
 5   jury has been polled, and the verdict is unanimous.
 6              Your Honor.
 7              THE COURT:  All right.
 8              Let me talk to the lawyers, please.
 9              (At sidebar)
10              THE COURT:  I always show the lawyers the special
11   verdict form.
12              MR. SNYDER:  Pardon me, I just need to get the exact
13   number.
14              (Pause)
15              MR. SNYDER:  Thank you.
16              MR. KOMBOL:  I'm good with it, yes.
17              MR. SCHWARTZ:  Thank you.
18              (Pause)
19              MR. ZACH:  Thanks, Judge.
20              (Pause)
21              MR. SNYDER:  So it is.
22              MR. KOMBOL:  I see it.  And reservation of all rights,
23   obviously.  It is what it is.
24              MR. SNYDER:  Well --
25              THE COURT:  Anything before I discharge the jury?
```

PAAKALM3

1           MR. SNYDER:  Yes, your Honor.

2           This verdict — here we go again — this verdict, to my

3    mind, and I just received it, and so I haven't had the benefit

4    of living with it yet, but it seems to me that it is the

5    product of double-counting of compensatory damages, and I would

6    like the jury to be reinstructed and sent back, and emphasized

7    that the portions about double-counting be read to them, and

8    that it be emphasized that their verdicts cannot double count

9    damages across the two claims.

10          MR. SCHWARTZ:  Obviously, we disagree.  The jury was

11   properly instructed on damages.  They were properly instructed

12   not to double count.  And in summations, Mr. Zach specifically

13   reminded them not to double count as they considered the

14   claims.

15          MR. SNYDER:  As your Honor knows, there will be

16   posttrial proceedings, and always at posttrial, we say to

17   ourselves what we should have done before we discharged the

18   jury.  So, I am making this request, because I think it's a

19   double count, and I think the jury should be strongly cautioned

20   on that.  If your Honor chooses not to give that instruction,

21   I've made my record.

22          THE COURT:  There is only one issue that I see, and

23   that is the question of whether there is anything further that

24   should be asked of this jury with the question of money had and

25   received, for which there is a separate finding already.

PAAKALM3

```
 1              MR. SCHWARTZ:  The jury thought about that, obviously.
 2    And from plaintiffs' perspective, the answer is no.  The last
 3    jury was properly instructed on the damages across three
 4    different claims.  They were properly instructed not to double
 5    count across those three different claims, and they issued
 6    their verdict.
 7              So, the verdict that they received on the money had
 8    and received was not a double count of whatever unjust
 9    enrichment conversion damages may have been.  This jury was
10    properly instructed on the measure of damages for those two
11    claims and told not to double count.
12              MR. SNYDER:  Your Honor, this raises an issue of
13    substantial complexity that I'm not prepared to have a final
14    resolution or position on.  However, I think not only does
15    this, on its own, bespeak double-counting, but the money had
16    verdict would, on top of that, be triple counting, and the jury
17    should certainly be instructed to reduce their number by
18    whatever amount we decide the money had claim was, and I think
19    it was either a half a million or a million and a half,
20    depending on how you looked at it.
21              THE COURT:  All right.
22              The parties haven't asked me, before now, to -- first
23    of all, with respect to the verdict that was returned now, the
24    jury was specifically instructed not to double count, and the
25    jury was repeatedly told that the total amount of compensatory
```

PAAKALM3

1    damages cannot exceed the total amount of compensatory damages.

2    So the request for sending the jury back to determine whether

3    what they've already returned is correct or not is not a

4    reasonable request.  You can make all of your postverdict

5    motions with respect to whether the jury was properly

6    instructed and whether the jury verdict is in any way

7    defective.

8            Plaintiffs say that it's unnecessary to have this jury

9    make any determinations with respect to how to mesh this

10   verdict with the prior verdict on money had and received.

11   Plaintiff doesn't want it; defendants haven't given me any

12   instructions with respect to that.  And so the parties can

13   address that in postjudgment or post -- either postverdict or

14   postjudgment motions.

15           MR. SNYDER:  The only issue that I think -- your

16   Honor, of course, is spot on in saying most of these issues can

17   be dealt with by lawyers posttrial.  So I'm thinking about what

18   the jury could possibly do, and my only -- I strongly believe

19   this is a double count, and I strongly believe that this

20   verdict is a misapplication of your Honor's instructions.  And

21   I've made my position known on that.

22           So, there we are.

23           THE COURT:  Okay.

24           Anything else before I discharge the jury?

25           MR. SNYDER:  So I formally request that you instruct

PAAKALM3

1    the jury on double-counting again.  That's my request.

2            THE COURT:  Okay.  Well, that would truly be

3    extraordinary.  The jury returned a verdict.  I instructed them

4    correctly on the issue of not double-counting.  It's an unusual

5    verdict form, in which I repeatedly said that instruction —

6    after every finding of damages, that compensatory damages

7    cannot exceed the total amount of compensatory damages.

8            So, that request to ask them, yet again, on that

9    subject is denied.

10            MR. SNYDER:  Thank you, your Honor.

11            THE COURT:  Okay.

12            MR. ZACH:  Thank you.

13            MR. SCHWARTZ:  Thank you.

14            (In open court)

15            THE COURT:  Ladies and gentlemen, now that you have

16    returned your verdict, there are just a few things left for me.

17            First of all, I will discharge you as jurors in this

18    case, now that you have returned your verdict.

19            So, having been discharged as jurors in this case,

20    you're no longer subject to all of my instructions not to talk

21    about the case, don't look at or listen to anything to do with

22    the case.  But I always ask jurors, as a matter of prudence,

23    not to talk about their deliberations.  The reason for that is

24    to protect the confidentiality of the jury deliberation

25    process — for yourselves and for all future jurors.  But, as I

1    said, you're no longer subject to my instructions not to talk

2    about the case, but as a matter of prudence, I ask you not to

3    talk about your deliberations.

4          Many judges use this opportunity, after a jury has

5    returned a verdict, to thank the jurors for their deliberations

6    and for their service.  But many years ago — many years ago — I

7    clerked for a great judge of this court, who made it a practice

8    never to thank jurors, because he told jurors that what they

9    had done was to perform one of the highest and noblest

10   obligations of citizenship — they had acted as finders of fact,

11   they had participated in the administration of justice — and by

12   doing that, they had performed a public service, a public

13   service equal to that of the judge or any other public

14   official, whether it be the mayor or the police or any other

15   public servant.  They had performed a public service.  And for

16   doing that, the jurors are entitled to a deep personal

17   satisfaction of knowing that they had performed a public

18   service.  And that deep personal satisfaction is far more

19   important than the ephemeral thanks of the Court or the

20   parties.

21          And, so, having sat with you for about two weeks, and

22   having observed your extraordinary participation — your

23   promptness, your attention, your diligence — I believe that all

24   of you take away from this process that deep personal

25   satisfaction of knowing that you have performed a public

PAAKALM3

1    service.  And that gives me satisfaction.

2              And, so, there are just a few more technical things to

3    take care of.

4              I'm quite confident the checks are not in the mail for

5    all of you, but I can also say with confidence that I believe

6    the checks will come in the mail, hopefully at some soon future

7    time.

8              I also know that you don't have to go back downstairs

9    to the central jury room.  All of your paperwork will be taken

10   care of by mail.

11             And, so, there's only one last thing for me to do, and

12   that is to ask everyone in the courtroom to stand as a sign of

13   respect to all of you.

14             All rise, please.

15             And the jurors may now go to the jury room and go

16   home.

17             JURY MEMBERS:  Thank you.

18             (Jury excused)

19             THE COURT:  Please be seated, all.

20             You can follow the deadlines for postverdict and

21   postjudgment motions.  I think the motions are generally

22   postjudgment, but if there are any motions available to you, by

23   all means, make them under the timelines in the rules.  If you

24   need extra time, just send me a letter to extend the times.

25             Similarly, you can send me a letter with respect to

PAAKALM3

1    your proposals with respect to entering a final judgment, which

2    would cover the last verdict, or the remainder of the last

3    verdict, as well as this verdict.

4         Okay?

5         MR. SCHWARTZ:  Yes.  Thank you, Judge.

6         When we do that, we will also ask you to enter

7    judgment, finally, against Ferrari Holdings.  Ferrari Holdings

8    has been in default for years.  Judge Nathan, long ago, said

9    that the entry of the judgment should await trial, and now that

10   I think that is complete, we'll make that motion.

11        THE COURT:  I'm sorry, I'm not following you.

12        MR. SCHWARTZ:  So, there is a defendant, Ferrari

13   Holdings.  Ferrari Holdings defaulted many years ago.  When we

14   sought entry of a default judgment, Judge Nathan deferred entry

15   of the default judgment until trial on the merits because the

16   claims of the various defendants were so closely bound up in

17   one another.

18        Now that we have final judgment here, we'll ask for a

19   final entry of judgment on that.  I'm just telling you that's

20   coming.

21        THE COURT:  If all that's been decided against Ferrari

22   is a default, there has to be an inquest.

23        MR. SCHWARTZ:  You will see that there is sufficient

24   evidence before you to make a finding with respect to damages.

25        THE COURT:  We'll see.

PAAKALM3

1      I often refer the determination of damages after a

2  default to the magistrate judge.  So you can send me the

3  letter.

4      Anything else for you?

5      Yes, Mr. Kombol.

6      MR. KOMBOL:  Just briefly.  Obviously, there remain

7  questions about the interplay between law and equity and the

8  ability for the jury to rule on questions of equity, but we

9  will be briefing that, as well, in our posttrial applications.

10      THE COURT:  I'm sorry?

11      MR. KOMBOL:  We'll be addressing those, as well, at

12  least the MeM Defendants will, in the posttrial applications.

13      MR. SNYDER:  MeM is going to file a brief.

14      THE COURT:  Mr. Snyder, I didn't get what you said.

15      MR. SNYDER:  MeM Energy intends to file something in

16  the future.  That's the point.  We're done here today, Judge, I

17  think.

18      THE COURT:  Okay.  All right.

19      MR. KOMBOL:  I thank Mr. Snyder for offering that,

20  but, yes, just for the record, we raise that now, but we will

21  address it in posttrial motions and briefs.

22      THE COURT:  Yes, I welcomed posttrial letters with

23  respect to entering a judgment and any postverdict or

24  postjudgment motions that any of the parties want to make.

25  I've urged you to look at the timing for the motions, and said

PAAKALM3

1    that if you want more time, just write me a letter, and I'm

2    happy to give more time.

3              Anything else today?

4              MR. KOMBOL:  No, your Honor.

5              MR. SCHWARTZ:  Not from the plaintiffs.

6              MR. SNYDER:  No, your Honor.  Thank you very much.

7              THE COURT:  Okay.

8              COUNSEL:  Thank you, your Honor.  Have a good weekend.

9              THE COURT:  Good afternoon, all.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25