

CRAIG A. WENNER
Tel: (212) 909-7625
Email: cwenner@bsfllp.com

February 5, 2026

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *City of Almaty, Kazakhstan, et ano. v. Felix Sater, et al.*,
   Case No. 19 Civ. 2645 [rel. 15 Civ. 5345] (JGK) (KHP)

Dear Judge Koeltl:

We represent Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC and write to in response to Court's request for Plaintiffs to file a letter brief "addressing whether any damages award against Defendant Felix Sater should be reduced by (1) the amount of any award against Defendant Ferrari Holdings LLC ("Ferrari") and (2) the amount paid to the plaintiffs pursuant to their settlement agreement with Defendant Daniel Ridloff ("Ridloff")." [ECF No. 828].

## RELEVANT BACKGROUND

Immediately prior to the first trial, Plaintiffs settled with defendants Daniel Ridloff and his company RRMI-DR LLC. [ECF No. 620].[1] Judgment was entered against RRMI-DR LLC in the amount of $758,606.00 [ECF No. 609], and the claims against Daniel Ridloff were voluntarily dismissed. [ECF No. 621]. As noted in the request for voluntary dismissal, Ridloff was "in the process of making a separate payment to Plaintiffs," and "the judgment amount and payment represent a return of all funds received by Mr. Ridloff and RRMI-DR LLC that are traceable to the thefts from BTA and Almaty by Mukhtar Ablyazov, Viktor Khrapunov, and their coconspirators." [ECF No. 620]. To be clear, the entire judgment amount against RRMI-DR remains outstanding and unpaid, but Mr. Ridloff made the separate payment as agreed.

At the second trial, the jury carefully followed the Court's instructions and the evidence when rendering its verdict. For unjust enrichment, the jury awarded $16,587,640 against Sater, $4,062,750 against Bayrock Group, $1,337,857 against Global Habitat Solutions, and $686,052 against MeM Energy Partners. *See* Oct. 10, 2025 Trial Tr. 17:18-20:9. These are the precise amounts that Plaintiffs proved each of these defendants retained. *See* PTX 801 at 24 (showing a summary of payments matching the verdict on unjust enrichment).

---

[1]   A copy of the confidential settlement agreement with Ridloff can be made available to the Court under seal if needed.

For conversion damages, the jury very clearly added up all of the stolen money that was in accounts controlled by Sater and subtracted the amount of funds the jury already awarded on the unjust enrichment claims against Sater, his companies, and MeM Energy. Plaintiffs proved that the total amount of conversion damages against Sater were $48,895,686.31, which was based on: (1) the $42,720,529.55 that Sater diverted from the sale of the Tri-County Mall asset; (2) the $1,900,000 that was sent to Sater's escrow account for the Syracuse Center deal; (3) the $1,200,000 that was sent to Sater from the returned deposit on the Creacard deal; (4) the $75,000 sent to Sater by Ridloff from the Trump Soho deal; and (5) the $3,000,156.76 that Sater exercised control over in connection with the World Health Networks deal. *See* Trial Tr. 1028:1-9 (closing argument); *see also* Trial Tr. 258:2-20 (Herz testimony); Trial Tr. 825:7-14 (Sater testimony); PTX 359; PTX 595; PTX 542; PTX 408; PTX 509; PTX 510, Kudryashova 09/17/2020 Dep. 67:07-72:18 (testifying that Sater controlled the RPM bank accounts used for WHN). The jury awarded $26,221,387 for conversion damages against Sater. *See* Oct. 10, 2025 Trial Tr. 16:14-17. That amount, $26,221,387, reflects the total conversion amount, $48,895,686.31, minus $22,674,299 (which is the sum of the unjust enrichment damages). *See* PTX 800 at 24.

As to Ferrari, the judgment sought by Plaintiffs reflects funds that are not included at all in the jury's verdict. In May 2013, $1,080,000 in stolen money was transferred into Ferrari's bank account as a purported "finder's fee" relating to the purchase of the Tri-County Mall asset. PTX-376 (escrow statement showing payment to Ferrari); *see also* PTX 800 at 2 (expert summary chart). Ferrari then immediately forwarded $540,000 of that sum to co-conspirator RRMI-DR LLC, controlled by Ridloff, who then transferred $345,000 to co-conspirator Bayrock Group, Inc., controlled by Sater. PTX-572 (Ferrari bank statement showing payment to RRMI-DR LLC); PTX 265; PTX 800 at 2. The $540,000 that remained in Ferrari's bank account was never transferred to Sater, Ridloff, or any other defendant. *Id*. In other words, no other defendant, including Ridloff and Sater, had control over or benefited from Ferrari's remaining $540,000, and the jury verdict against Sater did not include this $540,000, either in the unjust enrichment award or the conversion award. Plaintiffs' renewed motion for entry of a default judgment against Ferrari seeks a damage award of $540,000 plus interest—the money retained by Ferrari from the Tri-County Mall deal. [ECF No. 798].

The evidence at trial also demonstrated that Ridloff and his entity, RRMI-DR LLC, received payments that no other defendant kept, meaning the unjust enrichment award against Sater and the other defendants concerns entirely different funds from those sought to be recovered from Ridloff:

- First, RRMI-DR received $195,000 in connection with the purchase of the Tri-County Mall asset, reflecting Ridloff's portion of the Ferrari kickback that he did not pass on to Sater. *See* PTX 800 at 3.

- Second, Ridloff received $827,276 dollars from the sale of the Tri-County Mall asset. *See* PTX 407 (an email exchange between Arnie Herz and Ridloff confirming a wire of $827,276); Trial Tr. 275:5-17 (Herz testimony describing payments from the MeM Energy escrow account). As reflected in Plaintiffs' expert's summary chart, the amount



retained by Sater (and MeM Energy) from the sale of the Tri-County Mall does not include the amount retained by Ridloff. *See* PTX 800 at 4-5 (summary chart).

- Third, Ridloff also received $151,250 as a purported "commission" for the sale of Trump-Soho units bought with stolen funds, but he paid $75,000 of that to Sater. *See* PTX-408 (a 2013 Form 1099-MISC to Ridloff); Trial Tr. 742:5-14 (expert testimony). Plaintiffs did not seek or include the $76,250 retained by Ridloff in their damages for unjust enrichment against Sater in connection with the Trump Soho deal. *See* PTX 801 at 23 (seeking only $75,000 from Sater).

- Fourth, Ridloff received $20,080 in payments from the RPM company accounts controlled by Sater and used in connection with the WHN deal. *See* PTX 801 at 27.

- Lastly, Ridloff received $40,000 for participation in the Syracuse Center deal. *See* PTX-266 (a check from Bayrock Group Inc. to Ridloff for $40,000 with memo line "Syracuse"). Plaintiffs deducted this $40,000 from the amount sought from Bayrock Group in unjust enrichment damages for the Syracuse deal. *See* PTX 801 at 20, 27 (showing a total amount paid to Bayrock's account of $571,448 for Syracuse but damages from Bayrock for $40,000 less in the amount of $531,448).

In total, Ridloff and RRMI-DR retained $1,158,606 in stolen funds that no other defendant kept. *See* PTX 801 at 26 (adding together the amounts retained by Ridloff and RRMI-DR). Of that amount, $867,276 flowed through accounts controlled by Sater that were the subject of Plaintiffs' conversion claim and award against Sater. This amount includes the $40,000 paid to Ridloff for the Syracuse deal (paid from the $1,900,000 that Sater controlled for that investment) and the $827,276 paid to Ridloff in the sale of the Tri-County Mall asset (paid from the $42,720,529.55 sales proceeds that Sater diverted from the deal to an account he controlled). The other amount of stolen funds that Ridloff kept were paid from accounts not directly controlled by Sater.

## ARGUMENT

### I. The award against Sater should not be reduced by any award against Ferrari.

The $540,000 proposed damage award against Ferrari represents a discrete sum retained by Ferrari alone and not reflected in any claim against Sater or any other defendant. Neither Sater nor Ferrari have demonstrated or even argued otherwise. As set forth in the record supporting Plaintiffs' application for default judgment and described above, Ferrari received $1.08 million in stolen funds in connection with the Tri-County Mall transaction but retained only $540,000, passing the remainder to other co-conspirators. Both of Plaintiffs' experts were careful to separate the $540,000 that was sent to Ridloff and Sater from the amount that remained with Ferrari. *See e.g.*, PTX 800 at 2; PTX-801 at 19-24. The conversion damages that Plaintiffs sought against Sater also do not include any amount paid to Ferrari, as Plaintiffs sought conversion damages based only on the amount Sater diverted from the *sale* of the Tri-County Mall, not the *purchase* of the mall from which Ferrari was compensated.

3

Case 1:19-cv-02645-JGK-KHP    Document 829    Filed 02/05/26    Page 4 of 5



Reducing the jury's damage award against Sater by the $540,000 Ferrari retained would therefore not prevent double recovery but ensure an under-recovery.

## II. The award for unjust enrichment against Sater should not be reduced because of the settlement with Ridloff.

Under no circumstances should the award for unjust enrichment against Sater be reduced because of the settlement with Ridloff. Like with Ferrari, the amount of money reflected in the settlement with Ridloff represents a discreet, non-overlapping injury from the award against Sater for unjust enrichment. As explained above, the jury awarded damages against Sater for unjust enrichment representing precisely the amounts he retained which no other defendant, including Ridloff or RRMI-DR, kept. To take one example, looking at PTX 800 at 4, the jury understood that of the $43 million that was received from the proceeds of the sale of the Tri-County Mall, Ridloff received $827,276. And the amounts the jury was asked to award for unjust enrichment against Sater in connection with that deal did not include the sum retained by Ridloff. *See* PTX 800 at 5-6 (totaling the sum received by Sater). Therefore, there is no basis in the record to reduce the unjust enrichment award against Sater by any amount paid by Ridloff.

As to conversion, Sater has never requested an offset based on the amount paid by Ridloff in his settlement. For this reason alone, there should be no offset. The Court's Order also does not identify on what basis Sater could be entitled to one. To the extent it is based on New York General Obligations Law § 15-108(a), concerning offsets for a settlement with one out of multiple defendants, Sater waived that right. "Because such an offset is an affirmative defense under New York law, the non-settling defendant bears the burden to prove that that defendant is entitled to it and, if so, to show how much of that defendant's liability should be reduced." *Trott v. Platinum Mgmt. (NY) LLC*, 694 F. Supp. 3d 304, 308 (S.D.N.Y. 2023). Sater also never sought leave to amend his answer to raise that defense during or after trial. *Cf. Whalen v. Kawasaki Motors Corp.*, 703 N.E.2d 246, 249 (N.Y. 1998). Once again, Sater presented no evidence at trial that damages sought against him represent damages common with those covered by the Ridloff settlement. Sater presented no common damages defense or argument in closings with respect to Ridloff. Sater presented no common damages defense regarding Ridloff in his post-trial briefing, including his opposition to Plaintiffs proposed judgment. And the Court already provided Sater multiple opportunities in post-trial submissions to argue for a reduction in damages, but he never once asked to reduce damages based on the Ridloff settlement. [ECF Nos. 789 (extending time for Sater to make "any proper post-verdict, pre-judgment motions," including on the issue of how to "assure that the plaintiffs are only made whole"), 794 ("The defendants should include in their post-verdict, pre-judgment motions due November 7, 2025, any motions for remittitur.").] Thus, Sater is not entitled to have any award reduced by the Ridloff settlement payment.[2]

---

[2]    Though the Court asked specifically about the payment in connection with Ridloff's settlement, Plaintiffs have not collected any of the $758,606 reflected in the judgment against RRMI-DR LLC. Reducing the damage award against Sater would deprive Plaintiffs of an alternative path of recovery and actually work to keep Plaintiffs from being made whole.

4



## **CONCLUSION**

The award against Sater should not be reduced.

> Respectfully,
>
> /s/ *Craig Wenner*
> Craig A. Wenner
>
> BOIES SCHILLER FLEXNER LLP
> 55 Hudson Yards
> New York, New York 10001
> Telephone: (212) 446-2300
>
> *Counsel for Plaintiffs*
> *City of Almaty, Kazakhstan and*
> *BTA Bank JSC*