UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

CITY OF ALMATY, ET AL.,

                    Plaintiffs,          19-cv-2645 (JGK)

        - against -            **MEMORANDUM OPINION
AND ORDER**

FELIX SATER, ET AL.,

                    Defendants.
─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiffs, the City of Almaty, Kazakhstan ("Almaty"), and BTA Bank JSC ("BTA"), brought this action against various defendants, including Felix Sater ("Sater"), Bayrock Group Inc. ("Bayrock"), Global Habitat Solutions Inc. ("GHS") (together with Sater and Bayrock, the "Sater Defendants"), and MeM Energy Partners LLC ("MeM") (collectively, the "defendants"). After a nearly three-week trial beginning June 10, 2024 (the "first trial"), the jury returned a verdict in favor of the plaintiffs and against each of the defendants. Following post-trial briefing, the Court granted the defendants' motion for a new trial on two of the plaintiffs' claims. The parties proceeded to trial for a second time on September 29, 2025 (the "second trial"), and the jury again returned a verdict in favor of the plaintiffs and against each of the defendants.

The Sater Defendants now move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).[1] MeM moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or for a new trial pursuant to Federal Rule of Civil Procedure 59. For the reasons that follow, the defendants' motions are **denied**.

### I.

The Court assumes familiarity with the history of this case, which has been described in previous opinions. See, e.g., ECF Nos. 244, 323, 392, 625, 673. The following summary sets forth only those facts necessary to contextualize the rulings on the parties' post-verdict motions.

The plaintiffs brought this case on March 25, 2019. The plaintiffs allege that Victor Khrapunov, the former mayor of Almaty, misappropriated funds from Almaty through fraudulent means. Second Amended Complaint ("SAC") ¶¶ 53-62, ECF No. 399. The plaintiffs also contend that Mukhtar Ablyazov ("Ablyazov"), the former chairman and controlling shareholder of BTA, misappropriated funds from BTA by causing BTA to make fraudulent loans to companies controlled by Ablyazov. Id. ¶¶ 16-49.

---

[1] The Sater Defendants originally also moved for a new trial pursuant to Federal Rule of Civil Procedure 59, see Notice of Mot., ECF No. 801, but later withdrew that motion, see Sater Defs.' Reply Mem. of Law of in Supp. of Mot. ("Sater Reply") 4, ECF No. 808.

According to the plaintiffs, the funds stolen from BTA were then mixed and laundered throughout the world by Ablyazov and Ilyas Khrapunov ("Ilyas"), Victor Khrapunov's son and Ablyazov's son-in-law. Id. ¶¶ 50-52. Similarly, the funds stolen from Almaty were laundered with the aid of Ablyazov through his control of BTA. Id. ¶ 57.

Against this backdrop, in this case, the plaintiffs brought claims against Sater and several entities allegedly owned and controlled by Sater or his associates. See generally id. The crux of the plaintiffs' complaint is that Sater conspired with Ilyas to launder the funds allegedly stolen from the plaintiffs through at least five separate investment projects in the United States: the World Health Network, the Trump SoHo Hotel, CreaCard S.A., the Syracuse Center, and the Tri-County Mall. Id. ¶¶ 2-3, 66-294. The plaintiffs contend that these five schemes took place in 2013. Id. ¶¶ 120-286.

After extensive pre-trial proceedings, on June 10, 2024, the plaintiffs proceeded to a jury trial on three claims: (1) conversion against Sater alone, (2) unjust enrichment against Sater, Bayrock, GHS, and MeM, and (3) money had and received against Sater, Bayrock, GHS, and MeM. See Joint Pretrial Order, ECF No. 586; First Trial Tr., ECF Nos. 649-72. The jury ultimately returned a verdict in favor of the plaintiffs and against each of the defendants on all three

3

claims. First Trial Tr. 1777-97. On January 15, 2025, the Court granted the defendants' motion for a new trial on the plaintiffs' conversion and unjust enrichment claims. City of Almaty v. Sater, No. 19-cv-2645, 2025 WL 218838, at *10 (S.D.N.Y. Jan 15, 2025).

On September 29, 2025, the plaintiffs proceeded to a new jury trial on the conversion and unjust enrichment claims. During the jury charge, the Court instructed the jurors that the defendants had raised an affirmative defense of the statute of limitations to the plaintiffs' conversion and unjust enrichment claims, and that while the plaintiffs' claims were otherwise time-barred, the plaintiffs contended that the defendants were equitably estopped from asserting that defense. See Second Trial Tr. 1049-50, ECF Nos. 811-826.

The jury ultimately returned a verdict in favor of the plaintiffs and against each of the defendants on the two claims. The jury found that the plaintiffs proved, by a preponderance of the evidence, their conversion claim against Sater, and that Sater was equitably estopped from asserting a statute of limitations defense to that claim. Oct. 10, 2025, Tr. 16.[2] Accordingly, the jury awarded $26,221,387 in compensatory

---

[2] The transcript for the ninth day of trial begins at page 1, rather than continuing numbering from the previous day. The transcript for the ninth day of trial is cited as "October 10, 2025, Tr."

4

damages and $3 million in punitive damages against Sater on the conversion claim. Id. at 16-17. The jury also found that the plaintiffs proved by a preponderance of the evidence their unjust enrichment claims against each of the defendants, and that the defendants were equitably estopped from asserting a statute of limitations defense to those claims. Id. at 17-20. Accordingly, the jury awarded damages of $16,587,640 against Sater, $4,062,750 against Bayrock, $1,337,857 against GHS, and $686,052 against MeM on the unjust enrichment claim. Id.

Following the trial, the plaintiffs filed a proposed judgment and a supporting memorandum of law. ECF Nos. 791-93. Pursuant to the Court's order, the defendants then filed their Rule 50 and 59 motions. ECF Nos. 794, 801, 805.

## II.

A district court should deny a Rule 50 motion unless, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached."[3] Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Cir. 1994). A trial court considering a motion under Rule 50(b) "must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." Samuels v. Air Transp. Loc. 504, 992 F.2d 12, 16 (2d Cir. 1993). A jury verdict should be set aside when "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant." Logan v. Bennington Coll. Corp., 72 F.3d 1017, 1022 (2d Cir. 1995).

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). To order a new trial under Rule 59(a), a court "must conclude that the jury has reached a seriously erroneous result . . . [that] the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or

6

otherwise taking a second bite at the apple." Sequa Corp. v. Gbj Corp., 156 F.3d 136, 144 (2d Cir. 1998).

### III.

In support of their Rule 50 motion, the Sater Defendants argue that the jury charge and special verdict form erred by failing to distinguish between BTA and Almaty. The Sater Defendants also argue that the Court must limit the jury's damages award because it awards the plaintiffs far more than their actual loss. In support of its Rule 50 and 59 motions, MeM principally argues that it was error for the jury to decide the issue of equitable estoppel. Each argument is addressed in turn.

### A.

The Sater Defendants first argue that the jury charge and special verdict form erred by failing to distinguish between BTA and Almaty. See Sater Defs.' Mem. of Law in Supp. of Mot. ("Sater Br.") 3-4, ECF No. 802. The Court previously rejected this argument when the defendants raised it in their Rule 50 motion following the first trial. See City of Almaty, 2025 WL 218838, at *8-9. In rejecting this argument after the first trial, the Court concluded that, "[t]he evidence in the record showed that the defendants had tortiously obtained funds that were originally stolen from BTA or Almaty. The evidence also shows that the defendants then intermingled the funds originally stolen from Almaty and BTA. It was therefore appropriate to set

7

out early in the trial that the plaintiffs were two separate entities, but thereafter, reference them collectively as [the] plaintiffs." Id. at *9. The same was true at the second trial. See Second Trial Tr. 714-15 (testimony showing that funds stolen from the plaintiffs were comingled by the defendants). Therefore, as in the first trial, "[n]o legal or practical reason prevented the case from being tried jointly as to the two plaintiffs without distinction as to how much of the total recovery should be appropriated to each plaintiff. Accordingly, the jury properly awarded a total sum to both plaintiffs and against each of the defendants." City of Almaty, 2025 WL 218838, at *9; see also Second Trial Tr. 803 (rejecting the Sater Defendants' argument to separate BTA and Almaty on the special verdict form because "it would be unnecessary and confusing for the jury" and "not required.")[4]

**B.**

The Sater Defendants next argue that the jury's damages calculation reflects "double counting" and must be reduced. See

---

[4] As the Court noted at the second trial, the Sater Defendants' argument also fails because it was waived. See Second Trial Tr. 803. At the second trial, none of the defendants submitted proposed jury instructions or special verdict forms, and no defendant raised an objection in the joint pretrial order to the plaintiffs proceeding together, see Joint Pre-Trial Order, ECF No. 769. In fact, the Sater Defendants raised their objection to the plaintiffs' proceeding collectively only after the close of evidence. See Second Trial Tr. 803 ("[A]ny request is waived because it was not included in any proposed special verdict form until the close of the evidence.").

Sater Br. 6. According to the Sater Defendants, the maximum judgment that could be awarded is $26,221,387 for Sater, $3,797,202 for Bayrock, and $1,285,300 for GHS. See id. This argument misunderstands both the trial record and the law.

The damages awards for the three relevant causes of action across the two trials — conversion, unjust enrichment, and money had and received — compensate the plaintiffs for distinct injuries. While the unjust enrichment and money had and received claims compensate the plaintiffs for the defendants' retention of the plaintiffs' funds, the conversion claim compensates the plaintiffs for Sater's interference with the plaintiffs' possessory rights and control over the funds, regardless of whether Sater retained those funds. See Pappas v. Tozlis, 982 N.E.2d 576, 580 (N.Y. 2012) (the "two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights"); Middle E. Banking Co. v. State Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (money had and received depends on the defendant's receiving money belonging to the plaintiff and the defendant's benefitting from the receipt of that money); Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1110 (N.Y. 2011) (unjust enrichment requires the plaintiff to prove that the defendant was enriched at the plaintiff's expense).

Before beginning deliberations, the jury was instructed as follows:

> [Y]ou should not award damages more than once for the same injury. For example, if the plaintiffs were to prevail on multiple claims and establish a one-dollar injury, you should not award them one-dollar compensatory damages on each claim — the plaintiffs are only entitled to be made whole, not to recover more than they lost.

Second Trial Tr. 1054. The Court also reiterated, "[r]emember, that the amount of compensatory damages that you award may not exceed the total amount of damages incurred by the plaintiffs." Second Trial Tr. 1072.

During its deliberation, the jury carefully followed its instructions. The jury clearly accepted the testimony of the plaintiffs' expert witness, Seth Fliegler, regarding the amount of the plaintiffs' loss attributable to each of the defendants. Then, to avoid double or triple counting damages for the same injury, even if occasioned by separate legal wrongs, the jury divided up the actual damages among the relevant theories of liability.

The jury's damages award for unjust enrichment at the second trial reflects the funds actually retained by the defendants.[5] Indeed, the $22,674,299 in unjust enrichment damages

---

[5] The plaintiffs' proposed judgment reconciles the verdicts from the first and second trials and avoids duplicative recovery by reducing the amount of unjust enrichment damages from the second trial by the amount of money had and received damages from the

10

awarded in the second trial reflects Fliegler's testimony detailing the sums of stolen funds actually retained by each of the defendants, as follows:

- Sater: $16,587,640. See PTX-801, at 20, 22, 23 (showing that Sater retained a payment of $16,195,892 related to the Tri-County Mall transaction, another payment for $75,000 payment related to the Trump SoHo Hotel, and a third payment for $316,748 related to the World Health Network/CreaCard S.A. transaction); see also Second Trial Tr. 744-45.

- GHS: $1,337,857. See PTX-801, at 19 (showing that GHS retained two payments, one for $401,469 and another for $936,388, related to a consulting agreement); see also Second Trial Tr. 744-45.

- Bayrock: $4,062,750. See PTX-801, at 20-21 (showing that Bayrock retained a payment of $3,531,302 related to the Tri-County Mall transaction and another payment of $531,448 related to the Syracuse Center transaction); see also Second Trial Tr. 744-45.

- MeM: $686,052. See PTX-801, at 20-21 (showing that MeM retained a payment of $650,052 related to the Tri-County Mall transaction, and another payment of $36,000 related to the Syracuse Center transaction); see also Second Trial Tr. 744-45.

The $26,221,387 in conversion damages the jury awarded against Sater reflects testimony the jury heard regarding sums stolen from the plaintiffs over which Sater exercised control, less the unjust enrichment damages in order to avoid double-counting. The jury heard testimony that Sater exercised control

---

first trial. See Mem. of Law in Supp. of Proposed Judgment 3, ECF No. 792.

11

over approximately $48,895,685.76 of funds stolen from the

plaintiffs, as follows:

- $42,720,529.55 from the Tri-County Mall transaction,[6] which the jury heard that Sater diverted into an account that he controlled. Second Trial Tr. 306-07; PTX-359.

- $3,000,156.76 from the World Health Network transaction, which the jury heard testimony was deposited into a bank account controlled by Sater. Second Trial Tr. 386, 389, PTX-163; PTX-509.

- $1,900,000 from the Syracuse Center transaction, which the jury heard testimony that Sater controlled through his lawyer, Robert Wolf. Second Trial Tr. 739-40.

- $1,200,000 from the CreaCard S.A. transaction, which the jury heard testimony was deposited into an account controlled by Sater. Second Trial Tr. 256.

- $75,000 from the Trump SoHo transaction. Second Trial Tr. 742.

The $26,221,387 in conversion damages represents the

$48,895,685.76 over which Sater exercised control, less the

$22,674,299 in unjust enrichment damages awarded against Sater

and the other defendants. In other words, to calculate Sater's

liability on the conversion claim, the jury: (1) calculated the

total sum of stolen funds controlled by Sater at any point in

---

[6] The Tri-County Mall transaction involved the purchase and subsequent sale of debt associated with the mall. The jury heard testimony that the defendants purchased the debt for approximately $28 million and subsequently sold it for nearly $42,720,529.55. Second Trial Tr. 819-20. As the jury was instructed, the property that may be considered for a conversion claim includes "the proceeds, or fruits, of the plaintiffs' property." Id. at 1049.

order to determine his potential liability on the conversion claim; (2) calculated the amount of stolen funds actually retained by each of the defendants, and awarded those amounts as unjust enrichment damages; and then (3) calculated the conversion damages award by subtracting the unjust enrichment damages from the potential conversion liability. Thus, far from double or triple counting damages, the jury meticulously compensated the plaintiffs for their distinct injuries while also ensuring that the plaintiffs did not recover in damages more than they were entitled to based on the injuries they suffered.[7]

### C.

MeM principally argues that it was error for the jury to consider the issue of equitable estoppel because a jury "lacks authority to render judgment in matters of equity." MeM's Mem. of Law in Supp. of Mot. ("MeM Br.") 3, ECF No. 806. MeM's argument fails for numerous reasons. First, the argument was waived. Federal Rule of Civil Procedure 39(c)(2) provides, in relevant part, that "[i]n an action not triable of right by a jury, the court . . . may, with the parties' consent, try any

---

[7] The plaintiffs also reached a separate settlement with defendant Daniel Ridloff ("Ridloff"). ECF No. 620-21. No party has suggested that the settlement should affect the judgment to be entered according to the jury verdict. The plaintiffs have also obtained a default judgment against defendant Ferrari Holdings LLC. No party has suggested that judgment duplicates any part of the judgment against the Sater Defendants or MeM.

issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right." MeM did not object either to the portion of the pre-trial order indicating that the issue of equitable estoppel was for the jury to decide, see Joint Pre-Trial Order 1 n.1 ("Defendant MeM Energy Partners LLC did not respond to requests from Plaintiffs' counsel for its contribution to the pretrial order."), or to the jury instruction on equitable estoppel, see Second Trial Tr. 911 (describing the Court's proposed charge on equitable estoppel as "[d]oubly perfect"). MeM thus consented to the jury's consideration of the issue of equitable estoppel and may not challenge it now. See Broadnax v. City of New Haven, 415 F.3d 265, 272 (2d Cir. 2005) ("[W]here a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence may be deemed 'consent' under Rule 39(c).").

MeM's argument also fails on the merits. MeM cites the Seventh Amendment to the United States Constitution in support of its contention that the jury could not have been tasked with resolving the issue of equitable estoppel. That amendment reads, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-

14

examined in any Court of the United States, than accordingly to the rules of the common law." U.S. Const. amend. VII. Thus, the Seventh Amendment protects the right to a jury trial, not the right to <u>not</u> have a jury decide an issue. In any event, the issue of equitable estoppel was properly decided by the jury because it was inextricably intertwined with the facts of the torts to be proved. As reflected in the jury charge, the question of whether the defendants were equitably estopped from raising a statute of limitations defense required a factual determination of whether "the plaintiffs were induced by fraud, misrepresentation, or deception to refrain from filing the action before the statute of limitations expired." Second Trial Tr. 1050-51. Thus, it was proper for the jury to decide the issue. <u>See</u> <u>Kosakow v. New Rochelle Radiology Assocs.</u>, 274 F.3d 706, 725 (2d Cir. 2001) ("Whether equitable estoppel applies in a given case is ultimately a question of fact.").

### D.

In its papers, MeM raises several additional arguments in support of its motion. For example, MeM argues that the plaintiffs' money had and received claims have been "rendered non-actionable" MeM Br. 4, and that the plaintiffs' claims are barred by the doctrine of laches, MeM Notice of Mot., ECF No. 805. MeM does not support these arguments with citations to the record or to case law, nor did MeM preserve these arguments

15

at trial by either objecting contemporaneously at trial or making a pre-verdict motion pursuant to Rule 50(a). This dooms MeM's Rule 50(b) motion. See Dalessandro v. Cnty. of Nassau, 758 F. App'x 165, 168 (2d Cir. 2019) (summary order) (ruling that the plaintiffs "forfeited their right to move for post-verdict judgment as a matter of law pursuant to Rule 50(b) because they failed to make a pre-verdict Rule 50(a) motion"). With respect to MeM's Rule 59 motion, "[a]bsent plain error, failure to object to an issue during trial precludes review of that issue on a motion for a new trial." Rhee-Karn v. Lask, 797 F. Supp. 3d 343, 366 (S.D.N.Y. 2025). Because MeM points to no legal authority or record evidence in support of its arguments, it has failed to establish any error, let alone a plain one, sufficient to warrant a new trial pursuant to Rule 59.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motions are **denied**.

The Clerk is respectfully requested to close ECF Nos. 801, 805, and 806.


**SO ORDERED.**
Dated:    New York, New York
         February 27, 2026

                                    _____
                                         John G. Koeltl
                              United States District Judge

17